## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>　　　　Plaintiff,<br><br>v.<br><br>BENISTAR, BENISTAR ADMIN SERVICES, INC., TPG GROUP, INC., GRIST MILL PARTNERS, LLC, MOONSTONE PARTNERS, LLC, ALLIANCE CHARITABLE TRUST, PHOENIX CHARITABLE TRUST, ATLANTIC CHARITABLE TRUST, AVON CHARITABLE TRUST, CARPENTER CHARITABLE TRUST, DONALD TRUDEAU, MOLLY CARPENTER, JANE DOE ENTITIES UNDER CONTROL OF MOLLY CARPENTER AND/OR DONALD TRUDEAU, AND JANE DOE ENTITIES UNDER CONTROL OF JUDGMENT DEBTORS<br><br>　　　　Defendants. | CIVIL ACTION NO. _____<br><br><br><br>MAY 28, 2020 |

## COMPLAINT

Plaintiff Universitas Education, LLC ("Universitas") through the undersigned counsel, hereby files this Complaint and alleges as follows:

### PARTIES

1.　　Universitas is a limited liability company with its primary place of business at 404 East 55th Street, New York, NY. All of Universitas' members are citizens of New York.

2.　　Upon information and belief Benistar Admin Services, Inc. ("BASI") is a Delaware corporation with its principal place of business at 10 Tower Lane, Avon, CT.

3.　　Upon information and belief TPG Group, Inc. ("TPG") is a Delaware corporation with its principal place of business at 10 Tower Lane, Avon, CT.

4.　　Upon information and belief Grist Mill Partners, LLC ("GM Partners") is a

limited liability company with its primary place of business at 35 Tower Lane, Avon, CT. GM Partners's members are citizens of Connecticut and Delaware.

5.      Upon information and belief Moonstone Partners, LLC ("Moonstone") is a limited liability company with its principal place of business at 10 Tower Lane, Avon, CT. Moonstone's members are citizens of Connecticut and Delaware.

6.      Upon information and belief Alliance Charitable Trust (a/k/a Alliance Charitable Remainder Trust and/or Alliance Trust) is a Delaware Trust with its principal place of business at 10 Tower Lane, Avon, CT. The trustee is a citizen of Connecticut. Upon information and belief there are numerous Alliance Charitable Trusts, all of which are citizens of Connecticut.

7.      Upon information and belief Phoenix Charitable Trust (a/k/a Phoenix Charitable Remainder Trust and/or Phoenix Trust) is a Delaware Trust with its principal place of business at 10 Tower Lane, Avon, CT. The trustee is a citizen of Connecticut. Upon information and belief there are numerous Phoenix Charitable Trusts, all of which are citizens of Connecticut.

8.      Upon information and belief Atlantic Charitable Trust (a/k/a Atlantic Charitable Remainder Trust and/or Atlantic Trust) is a Delaware Trust with its principal place of business at 10 Tower Lane, Avon, CT. The trustee is a citizen of Connecticut. Upon information and belief there are numerous Atlantic Charitable Trusts, all of which are citizens of Connecticut.

9.      Upon information and belief Avon Charitable Trust (a/k/a Avon Charitable Remainder Trust and/or Avon Trust) is a Delaware Trust with its principal place of business at 10 Tower Lane, Avon, CT. The trustee is a citizen of Connecticut. Upon information and belief there are numerous Avon Charitable Trusts, all of which are citizens of Connecticut.

10.      Upon information and belief Carpenter Charitable Trust (a/k/a Carpenter

Charitable Remainder Trust, Carpenter Charitable Remainder Unitrust, Carpenter Trust, Daniel E. Carpenter Trust, Carpenter Family Trust, and/or Daniel E. Carpenter Charitable Remainder Trust) is a Delaware Trust with its principal place of business at 10 Tower Lane, Avon, CT. The trustee is a citizen of Connecticut. Upon information and belief there are numerous Carpenter Charitable Trusts, all of which are citizens of Connecticut.

11.     Upon information and belief, Donald Trudeau is an individual with his principal place of residence at 1061 King Street, Greenwich, CT.

12.     Upon information and belief, Molly Carpenter is an individual with her principal place of residence at 18 Pondside Lane, West Simsbury, CT.

JURISDICTION AND VENUE

13.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Universitas and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.

14.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to these claims occurred in this district, and alternatively, because Defendants are subject to this Court's personal jurisdiction.

INTRODUCTION

15.     This is an action to enforce a judgment entered in the United States District Court for Southern District of New York.

16.     This case revolves around convicted felon Daniel Carpenter, a prolific fraudster who has been convicted on seventy-six felony counts including, *inter alia*, the theft of $30 million from Universitas.

17.     Mr. Carpenter developed an extensive criminal network to facilitate his criminal

activity and fraudulent behavior. This network is comprised of Judgment Debtors, Defendants, and numerous additional entities and persons. This network collectively constitutes a single economic entity known as "Benistar."

18.     Benistar is controlled by Daniel Carpenter, Molly Carpenter and Donald Trudeau. Benistar is operated for the personal financial benefit of these three persons.

19.     The underlying litigation involved the fraudulent transfer and criminal usage of $30 million rightfully belonging to Universitas. This money was wrongfully taken from Universitas and used to purchase life insurance portfolios, a luxury vacation property for Daniel and Molly Carpenter, provide cash payments to members of the Carpenter criminal organization, and to further Benistar's criminal activity and fraudulent behavior.

20.     Daniel Carpenter is currently incarcerated for, *inter alia*, his role in the events surrounding the litigation underlying Universitas' judgment.

21.     Universitas has spent over a decade seeking to recover its criminally misappropriated money. Benistar has obstructed such recovery through fraud, perjury, obstruction of justice, and other wrongful acts.

22.     Universitas' Judgment remains largely unpaid. Through numerous years of post-judgment discovery Universitas has identified entities and persons within the Benistar criminal enterprise with assets capable of satisfying Universitas' judgment, in whole or in part. These entities and persons are the named Defendants in this suit.

## FACTUAL BACKGROUND

23.     Universitas is the research and development arm of its subsidiary, Destination Universitas Foundation, a charitable foundation dedicated to promoting global philanthropy and wellness. Universitas has plans to develop holistic wellness programs for leaders to support

4

global philanthropic and humanitarian efforts – plans that have been largely frustrated by convicted felon Daniel Carpenter, his wife Molly Carpenter, his business partner Donald Trudeau, and the Carpenter criminal enterprise.

24.     In 2007, Universitas began development of a sanctuary for global leaders to gather and recharge during multi-day retreats.

25.     Within a year, the project was receiving international attention and exposure. Universitas executed a letter of intent for the purchase of a property at Lake Las Vegas in Henderson, Nevada, solicited design proposals, completed a strategic development plan, and was in the process of completing a strategic development plan and funding proposal.

26.     The major contributor to the project was Sash Spencer. Mr. Spencer chaired a private investment firm and was a financial partner to Universitas. Mr. Spencer named Universitas the sole irrevocable beneficiary of two life insurance policies worth $30 million in his retirement plan.

27.     Mr. Spencer's life insurance policies were owned and managed by the Charter Oak Trust ("COT"). COT was purportedly an employer welfare benefit plan operating under Section 419 of the Internal Revenue Code. COT was obligated to pay the proceeds from Mr. Spencer's life insurance policies to Universitas upon Mr. Spencer's death.

28.     COT was managed by Nova Group, Inc. ("Nova Group"). Nova Group was the trustee, sponsor, and administrator of COT.

29.     Daniel Carpenter controlled both Nova Group and COT.

30.     Mr. Spencer unexpectedly died in June 2008.

31.     On or about July 7, 2008 the COT Declaration of Trust ("Trust Document") was fraudulently altered by Daniel Carpenter, with the full knowledge of Don Trudeau, and upon

information and belief, Molly Carpenter, to provide for a holdback provision permitting COT to retain twenty percent of Mr. Spencer's life insurance proceeds. This alteration was performed for the sole purpose of enabling COT to improperly keep twenty percent of the Spencer death benefits which rightfully belonged to Universitas.

32.     The Trust Document required all changes to be approved by the insurance trustee – Christiana Bank, which was later acquired by WSFS Financial Corporation ("WSFS"). It was conceded in a subsequent proceeding that the insurance trustee did not approve this fraudulent change in the Trust Document.

33.     COT received the Spencer life insurance proceeds on or about May 18, 2009 and disbursed $10.8 million of these proceeds within eight days. The Southern District of New York found the conveyances comprising the $10.8 million disbursal to be fraudulent transfers.

34.     Universitas promptly filed a claim for the Spencer life insurance proceeds – Nova Group denied Universitas' claim on fraudulent grounds and refused to transfer the Spencer death benefits to Universitas.

35.     Universitas promptly appealed the denial of its claim, and Nova Group denied Universitas' appeal on fraudulent grounds. COT disbursed the remaining Spencer death benefits to entities owned and controlled by Daniel Carpenter during the appeal. The Southern District of New York found this disbursal to be a fraudulent transfer.

36.     On or about June 17, 2010 Universitas commenced arbitration against Nova Group and its affiliates to recover the Spencer death benefits.

37.     On or about November 18, 2010 Mr. Carpenter sent an email notifying his associate Donald Trudeau that he intended to submit falsified evidence to the arbitrator unless Mr. Trudeau objected. Upon information and belief, the evidence was altered to make it appear

as though the twenty percent holdback provision was added to the Trust Document prior to the acquisition of the second Spencer life insurance policy.

38.    Mr. Trudeau did not object to the submission of falsified evidence and the falsified evidence was provided to the arbitrator.

39.    Nova Group's representative falsely testified during the arbitration proceedings to corroborate this falsified evidence.

40.    Throughout the arbitration Nova Group representatives submitted multiple sworn statements indicating that Nova Group was capable of satisfying an award in Universitas' favor. These statements were false – the Spencer death benefits were fraudulently disbursed before the arbitration commenced.

41.    During the arbitration Universitas sought discovery from Ridgewood Finance, Inc. ("Ridgewood"). On or about December 6, 2010 Daniel Carpenter emailed Ridgewood and threatened it against compliance with Universitas' subpoena. On or about December 7, 2010 Nova Group's general counsel emailed Ridgewood and threatened against compliance with Universitas' subpoena.

42.    On or about January 24, 2011 the arbitrator found that Nova Group breached its fiduciary duty to Universitas by denying Universitas' claim to the Spencer death benefits on fraudulent grounds and further found that Universitas was entitled to $25.7 million of the Spencer insurance proceeds. In addition to awarding COT certain costs and fees to COT, the arbitrator erroneously applied the twenty percent holdback provision to the proceeds from Mr. Spencer's second life insurance policy thereby wrongfully awarding COT $4.02 million of the Spencer death benefits. The arbitrator further found that Universitas was entitled to attorneys' fees and costs and entered a total award in favor of Universitas and against Nova Group in the

amount of $26.5 million.

43.     Nova Group subsequently informed the arbitration tribunal that it refused to comply with the arbitrator's decision and that it would not transfer the Spencer death benefits to Universitas.

44.     Universitas then sought post-judgment discovery from TD Bank, N.A. ("TD Bank"). On or about April 13, 2011 Nova Group's general counsel sent a letter to TD Bank threatening against compliance with Universitas' subpoena.

45.     On or about June 5, 2012 the Southern District of New York confirmed the arbitration award and interest thereon from January 24, 2011, at the rate of ten percent per annum, for a total outstanding judgment of $30,181,880.30.

46.     Nova Group subsequently moved to dismiss the case for lack of subject matter jurisdiction. Nova Group's brief stated that COT's insurance trustee was M&T Bank and argued that there was not complete diversity because M&T Bank and Universitas were both citizens of New York. However, M&T Bank was not COT's insurance trustee – Christiana Bank was. Nova Group knowingly and purposefully provided false information concerning the identity of the insurance trustee in order to deceive Universitas and misdirect post-judgment discovery efforts.

47.     Nova Group continued to file motions constituting "bad faith" litigation tactics and warranting sanctions under Rule 11 of the Federal Rules of Civil Procedure. Eleven of Nova Group's motions were ultimately found sanctionable. One such motion was a second motion to dismiss for lack of subject matter jurisdiction predicated on demonstrably false facts. The Southern District of New York warned Nova Group in advance that this motion was meritless and sanctionable – Nova Group filed the motion anyway and appealed the court's

denial of the motion.

48.     The Southern District of New York noted that Nova Group's "litigation strategy [was] motivated not by legal merit, but rather by dilatory purposes." Upon information and belief, Nova Group's diversionary, dilatory, and bad faith litigation tactics were intended to delay litigation, increase Universitas' legal fees, and hinder Universitas' collection efforts.

49.     On or about August 30, 2012 Nova Group sent a letter to Universitas stating that Nova Group "will not be providing responses or documents" in accordance with court ordered discovery. The Southern District of New York found, *inter alia*, Daniel Carpenter in contempt of court for this refusal to comply with court ordered discovery.

50.     Universitas again sought post-judgment discovery from TD Bank. On or about September 28, 2012 Mr. Carpenter and his attorneys sent letters to TD Bank threatening against compliance with Universitas' subpoena. The Southern District of New York *sua sponte* suggested that Mr. Carpenter's actions likely constituted felony witness intimidation and obstruction of justice.

51.     After finally receiving document production from TD Bank, Universitas filed a turnover application against the recipients of the fraudulently disbursed Spencer death benefits. On or about February 26, 2013 Daniel Carpenter sent an email to Universitas' counsel threatening against proceeding with this turnover motion.

52.     As part of the turnover proceedings the court issued a TRO enjoining Mr. Carpenter and his entities from transferring assets and explicitly directed that settlement proceeds payable to Mr. Carpenter be held in escrow pending determination of the turnover application.

53.     On or about May 1, 2014 Mr. Carpenter sent his attorneys an email instructing

them to ignore the court order and pay him the settlement money. Mr. Carpenter fired his attorneys when they refused to do so.

54.     On or about May 1, 2014 Mr. Carpenter sent an email to his settlement counterparty stating that the attorneys insisting that the settlement payment be held in escrow no longer represented him and thus had no authority over the proceeds. Mr. Carpenter demanded that the settlement counterparty make payment to BPETCO Litigation Group, LLC, an entity under Mr. Carpenter's control, and threatened against defiance of his demands.

55.     On or about August 7, 2014, the Southern District of New York found the recipients of the fraudulently transferred Spencer death benefits to be jointly and severally liable for Universitas' judgment. The Southern District of New York found the following parties liable for the corresponding amounts:

- Daniel E. Carpenter - $30,600,000.00

- Grist Mill Capital, LLC - $30,600,000.00

- Grist Mill Holdings, LLC - $21,000,000.00

- Carpenter Financial Group - $11,140,000.00

- Avon Capital, LLC - $6,710,065.92

- Phoenix Capital Management, LLC - $5,000,000.00

- Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereof insofar as they hold Grist Mill Trust assets - $4,487,007.81

- Hanover Trust Company - $1,200,000.00

56.     On or about August 12, 2014 the Southern District of New York entered judgement against these Judgment Debtors.

57.     Daniel Carpenter was criminally prosecuted in the District of Connecticut for

his role with COT and Nova Group. Mr. Carpenter was charged with thirty-two counts of mail and wire fraud, ten counts of money laundering, thirteen counts of illegal monetary transactions, conspiracy to commit money laundering, and conspiracy to commit mail and wire fraud. All of the charges for money laundering and illegal monetary transactions in Mr. Carpenter's indictment were predicated upon the fraudulent disbursal and improper use of the Spencer death benefits.

58.     Mr. Carpenter was found guilty on all fifty-seven counts in his indictment. The District of Connecticut's findings support the Southern District of New York's findings, and further detail the fraudulent and criminal behavior of Mr. Carpenter and his associates.

59.     The District of Connecticut also found that Mr. Carpenter's testimony in the Universitas litigation was false, self-serving, perjurious, and constituted obstruction of justice.

60.     Over the course of post-judgment discovery and other related proceedings, Universitas has learned of various fraudulent transfers by the Judgment Debtors and additional facts showing that the Judgment Debtors and the Defendants in this action have disregarded their separate existence to the harm and detriment of Universitas, making each of the Defendants jointly and severally liable for the amount remaining unpaid under the judgment.

61.     Upon information and belief, Daniel Carpenter, Donald Trudeau, and Molly Carpenter control and own – directly or indirectly – all Defendants and Judgment Debtors. Upon information and belief, Daniel Carpenter, Molly Carpenter, and Donald Trudeau used their pervasive control over the Judgment Debtors and Defendants to conduct the frauds and other criminal conduct for which the Judgment Debtors have been found liable, including actions to the detriment of Universitas.

62.     Defendants caused certain Judgment Debtors to fraudulently divest assets in

order to preserve value for Benistar and to prevent lawful collection by Universitas. Such transfers violated the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. Section 522-552a (the "CUFTA"). These fraudulent transfers were undertaken for the personal benefit of Mr. Carpenter, Mrs. Carpenter, and Mr. Trudeau, and to the detriment of Universitas.

63.     The Southern District of New York found that Daniel Carpenter caused Judgment Debtors to fraudulently transfer Spencer death benefits with knowledge of pending litigation concerning these funds.

64.     On or about November 16, 2011 (during the underlying arbitration), COT conveyed substantial assets to third party investors. Upon information and belief, this conveyance was arranged by Donald Trudeau and left COT and/or Nova Group with no assets capable of recovery by Universitas. Upon information and belief, this transfer was undertaken for the personal financial benefit of Mr. Trudeau, Mr. Carpenter, and Molly Carpenter and was intended to hinder, delay, defraud, and otherwise prevent Universitas from enforcing its judgment.

65.     Judgment Debtors and Defendants continued to transfer Spencer death benefits with an actual intent to hinder, delay, defraud, and otherwise prevent Universitas from enforcing its judgment after Universitas issued restraining notices prohibiting such transfers. The Southern District of New York stated that "Mr. Carpenter's entities have continued to seek to transfer assets from the judgment-debtor to [non judgment-debtor Benistar entities], despite the Judgment and the service of restraining notices."

66.     On or about March 29, 2013 Nova Group instructed a third party insurance carrier to transfer COT assets to Grist Mill Capital, LLC (prior to the entry of judgment against Grist Mill Capital, LLC) in violation of a restraining order. The insurance carrier declined to

do so and Nova Group consequently ceased payment of the policy premiums, thereby rendering these assets valueless. Upon information and belief, these actions were intended to hinder, delay, defraud, and otherwise prevent Universitas from enforcing its judgment.

<u>BACKGROUND ON BENISTAR</u>

67.     Benistar is a single economic entity comprised of hundreds of corporations, LLCs, trusts, and other entities. Any distinction between Benistar entities is fictitious – Benistar entities are operated such that they lack any separate identity and in a manner that is abusive to the corporate form. The supposedly separate entities operating under the Benistar umbrella are effectively branches, divisions, and/or departments within a singular entity.

68.     The Benistar entities operate as a single integrated economic entity. The District of Connecticut found that the dissolution of Benefit Plan Advisors, LLC ("BPA") and creation of U.S. Benefits Group, Inc. was created in an attempt to create an appearance of distinction between the various Benistar offices and entities. On or about February 12, 2010 Daniel Carpenter sent an email to various Benistar personnel instructing them to "[g]et rid of BPA everywhere" and further stating that "remember you are US Benefits Group, Inc now…. No more BPA."

69.     Individual entities are identified as Defendants because, despite their actual unity, as a formal matter they have been given fictitious separate identities in order to obfuscate the actual, unified economic entity that encompasses them and which is an intended defendant. Benistar entities have confusingly similar names and/or have been formed in multiple jurisdictions – entities will have the same names but be "distinguished" by adding/deleting a comma from its name, or changing from an LLC to an Inc. to Ltd. and/or to a Corp. For example, Benistar operates both Benistar, Ltd. and Benistar Ltd., as well as Benistar Property

Exchange Trust Company and Benistar Property Exchange Trust Company, Inc.

70.     Benistar has such a unity of interest that its constituent entities have no independent significance from one another, the interests of some can be and have been subordinated to the interests of others and, ultimately, all are operated as a single entity with a common purpose and course of conduct – the personal enrichment of Mr. Carpenter, Mrs. Carpenter, and Mr. Trudeau.

71.     Benistar's constituent entities have a unity of ownership that is evidenced, *inter alia*, by their consistent disregard of corporate formalities and their shared management, phone numbers, computer network, offices, and employees.

72.     It is the regular course of business for Benistar to disregard the separateness and independent obligations and duties of the various constituent members of Benistar, to the detriment of Benistar creditors and for the overriding goal of enriching Daniel Carpenter, Molly Carpenter, and Donald Trudeau. The District of Connecticut found that "the formal corporate structure of the various Benistar Entities had little meaning for the people involved."

73.     Benistar is a criminal enterprise. The District of Connecticut found that the furtherance of Benistar business interests sufficed for the criminal intent element of Mr. Carpenter's money laundering charges because the furtherance of Benistar business is a perpetuation of fraud. Benistar's criminal nature is further evidenced, *inter alia*, by the fact that Mr. Trudeau's work emails constituted nine counts of mail and wire fraud and two counts of money laundering in Mr. Carpenter's indictment and conviction.

74.     Benistar operated a property exchange under Section 1031 of the Internal Revenue Code. Mr. Carpenter fraudulently defalcated money from the Benistar property exchange to himself, and subsequently lost this money in the stock market. On or about

February 4, 2004, Mr. Carpenter was indicted for his usurpation and use of the Benistar property exchange funds and was subsequently convicted on fourteen counts of wire fraud and five counts of mail fraud.

75.     Benistar has operated a series of employer welfare benefit plans under Section 419 of the Internal Revenue Code. An Internal Revenue Service ("IRS") investigation into these plans determined that they provide "a blueprint, and the means, for business owners and individuals to criminally underreport their taxes." The IRS investigation further found that Benistar helps its employer welfare benefit plan participants to "obstruct[] the IRS in the ascertainment, computation, assessment, and collection of taxes." The Second Circuit Court of Appeals affirmed a Tax Court decision finding one such trust to be "a thinly disguised vehicle for unlimited tax-deductible investments" and penalizing participants in the trust.

76.     In September of 2003 numerous Benistar entities were found to be alter egos of Daniel Carpenter in litigation concerning the Benistar property exchange. Daniel Carpenter purportedly resigned from Benistar in January of 2004 as a result of his forthcoming federal indictment.

77.     Mr. Carpenter's purported resignation was a ruse. On or about April 21, 2004 a Benistar executive sent an email concerning his personal resignation stating, *inter alia*, that "Dan's decision to step down as an officer, director, and employee of [a particular Benistar entity] has proven to be nothing more than a smoke screen. He has continued to dictate ALL aspects of the running of [this same Benistar entity]."

78.     Daniel Carpenter's legal problems were a cause for concern for many businesses and financial institutions, which in turn refused to do business with Mr. Carpenter and/or any companies associated with Mr. Carpenter. Mr. Carpenter's phony resignation was intended to

conceal his involvement in Benistar from judgment creditors and enable Benistar to work with businesses and financial institutions that would not do so if Mr. Carpenter's involvement was known.

79.     Benistar has engaged in a massive corporate shell game intended to frustrate judgment creditors and obfuscate the true ownership of its constituent entities, thereby concealing Daniel Carpenter's involvement in Benistar. The District of Connecticut found that "the corporate entities were created and discarded at Mr. Carpenter's direction when it suited his purposes." Benistar regularly utilizes tactics reliant upon the formality of supposedly separate corporate identities to avoid liability and obscure justice.

80.     The contempt of court, intimidation, fraud, perjury, obstruction of justice, and abuse of process demonstrated by Benistar throughout the underlying proceedings is emblematic of a consistent pattern of behavior spanning more than twenty years.

81.     Mr. Carpenter and his associates routinely threaten persons opposing Benistar's interests. The Southern District of New York stated in an unrelated proceeding that "Mr. Carpenter's conduct toward the plaintiffs and others has been characterized by threats of retribution whenever someone takes a position that he perceives as contrary to his interests."

82.     It is standard procedure for Benistar to threaten third parties against compliance with discovery. On or about June 9, 2011 Mr. Carpenter's attorney sent a letter to JP Morgan threatening against compliance with a subpoena in an unrelated matter. The court found the legal basis of this threat to be nonsensical and inapplicable. Less than a year later, Nova Group's general counsel sent an almost identical letter to TD Bank threatening against compliance with Universitas' subpoena. Mr. Carpenter and additional attorneys followed suit shortly thereafter. Upon information and belief, the threatening letters to TD Bank were sent with knowledge that

these threats lacked any legal foundation.

83.   Benistar regularly refuses to comply with discovery. The Commonwealth of Massachusetts made negative inferences against Benistar in an unrelated proceeding because it produced "absolutely nothing" in response to basic discovery requests.

84.   Benistar regularly makes meritless legal arguments with dilatory purpose. In an unrelated proceeding the Southern District of New York issued a five-sentence Memorandum and Order finding a motion filed by Daniel Carpenter to be "entirely frivolous."

85.   Benistar routinely provides courts with false and self-serving testimony. The District of Massachusetts stated in an unrelated proceeding that it had "serious reservations about the credibility of" an affidavit submitted by a Benistar executive because, *inter alia*, his affidavit was explicitly contradicted by his deposition in another matter.

86.   It is standard procedure for Benistar to impede the efforts of judgment creditors. Mr. Carpenter bragged to the Benistar property exchange victims that they could not enforce their judgment against him and the judgment debtor Benistar entities because he made them "completely judgment proof," and further boasted to these same victims that they "would never see a penny because all of his assets were safely protected in other people's names."

87.   Benistar routinely frustrates judgment creditors through fraud. After judgment was entered against Nova Group, it instructed that settlement proceeds payable to Nova Group instead be made to a Benistar entity wholly uninvolved in that proceeding. Upon information and belief, this payment was made without consideration or proper purpose and was intended to hinder, delay, defraud, and otherwise prevent Universitas from enforcing its judgment.

88.   Similarly, Benistar repeatedly transferred the interest in settlement proceeds subject to a reach and apply proceeding amongst various Benistar entities. The District of

17

Massachusetts found that these transfers of interest in the settlement proceeds were fraudulent transfers and further found that Benistar "is using the corporate form to perpetrate a fraud."

89.    Benistar is an alter ego of Daniel Carpenter.

<u>BENISTAR ADMIN SERVICES, INC. ("BASI")</u>

90.    BASI is the "hub" of the Benistar criminal network. BASI provides administrative support and clerical services to other Benistar entities, including entities that operate employer welfare benefit trusts such as COT.

91.    All Benistar trusts have shell-company trustees which contract out all services to BASI. Benistar operates in this manner, *inter alia*, to provide BASI with complete control over all operations while precluding BASI from incurring a fiduciary duty to any trust participants.

92.    The Commonwealth of Massachusetts previously found BASI to be an alter ego of both Daniel Carpenter and Molly Carpenter. This finding was upheld on appeal by the Supreme Court of Massachusetts, which stated that "[t]his case is one in which piercing the corporate veil was so obviously appropriate…."[1]

93.    The District of Massachusetts found BASI to be Mr. Carpenter's alter ego in a reach-and-apply action brought by Benistar judgment creditors and joined by the federal government. This finding was affirmed on appeal.

94.    The arbitrator in the underlying arbitration found that BASI breached its duties to Universitas.

95.    The Southern District of New York found that Universitas could subject BASI's assets to restraining notices because BASI was previously found to be Mr. Carpenter's alter

---

[1] *See Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*, Case No. SJC-10041 (Mass. June 26, 2008).

ego. However, the court stated that it did not have jurisdiction to permit Universitas to directly enforce the Carpenter judgment against BASI.

96.    The District of Connecticut found that Mr. Carpenter controlled BASI and consequently that he was responsible for the criminal activity of BASI employees performed without his knowledge or approval.

97.    BASI is purportedly owned by an Employee Stock Ownership Program ("ESOP"). Upon information and belief, the BASI ESOP is a sham. The Commonwealth of Massachusetts found the BASI ESOP to be illegitimate – in truth BASI is a wholly owned subsidiary of Benistar Ltd. and/or Benistar Group, Ltd. This finding was upheld on appeal by the Supreme Court of Massachusetts.

98.    Upon information and belief, the BASI ESOP remains unchanged since the court determined it was an illegitimate entity and that it did not own BASI.

99.    Upon information and belief, BASI is an alter ego of Daniel Carpenter.

TPG

100.    TPG is the Benistar entity responsible for collecting sales commission payments from life insurance carriers and distributing them to the appropriate agents and brokers throughout Benistar.

101.    Upon information and belief, TPG is instrumental to Benistar's operations. Upon information and belief TPG is the primary revenue generator within Benistar and is responsible for the majority of Benistar's profits.

102.    Upon information and belief, TPG is owned by BASI, Mrs. Carpenter, and Mr. Trudeau, but controlled by Mr. Carpenter.

103.    Upon information and belief, at least $1,075,124.68 was transferred from TPG

to Judgment Debtor Grist Mill Holdings, LLC for the purpose of enabling Daniel Carpenter to profit from TPG's operations whilst keeping his name off of official TPG financial records and corporate documents.

104.    The District of Connecticut found that Mr. Carpenter "exercised control" over TPG. The District of Connecticut further found Mr. Carpenter's testimony that Molly Carpenter and Donald Trudeau controlled TPG was perjurious and constituted obstruction of justice.

105.    Upon information and belief, TPG is an alter ego of Daniel Carpenter.

<u>GM PARTNERS</u>

106.    GM Partners is the Benistar entity that owns and operates the building located at 100 Grist Mill Road, Simsbury, Connecticut.

107.    Upon information and belief, 100 Grist Mill Road was Benistar's headquarters – every Judgment Debtor and Defendant operated from this address, with the exception of Mr. Trudeau.

108.    Upon information and belief, Benistar purchased the building so that Daniel Carpenter had a reason to physically be in the building unrelated to Benistar operations. Upon information and belief, Benistar sought to create a reason for Daniel Carpenter to be in the building unrelated to Benistar operations in order to conceal Mr. Carpenter's role in Benistar.

109.    Agents from the Department of Labor ("DOL") raided the offices of 100 Grist Mill Road in connection with DOL's criminal investigation into Benistar.

110.    Agents from IRS raided the offices of 100 Grist Mill Road in connection with IRS' criminal investigation into the Benistar employer welfare benefit plans.

111.    Upon information and belief, Benistar relocated after the DOL and IRS raids in an attempt to distance itself from the federal raids at their old address. Upon information and

belief, Benistar now primarily operates from 10 Tower Lane, Avon, CT and Benistar's accountant, who has a limited power of attorney over certain Benistar entities while Mr. Carpenter is incarcerated, operates from 35 Tower Lane, Avon, CT.

112.    Upon information and belief, GM Partners is a pass-through entity intended to shield its assets from Daniel Carpenter's judgment creditors.

113.    Upon information and belief, GM Partners is 99% owned by Carpenter Financial Group. Carpenter Financial Group is a Judgment Debtor in this proceeding and pays Mr. Carpenter's personal credit card bills.

114.    Upon information and belief, GM Partners is 1% owned by Caroline Financial Group, Inc. Upon information and belief, Caroline Financial Group, Inc. is a shell company under Mr. Carpenter's control that pays Mr. Carpenter's personal credit card bills.

115.    Upon information and belief, GM Partners is an alter ego of Mr. Carpenter.

<u>MOONSTONE</u>

116.    Upon information and belief, Moonstone is a shell company created to purchase and manage a vacation property for Daniel Carpenter and Molly Carpenter.

117.    On or about July 15, 2009 Moonstone received $1.1 million of the Spencer death benefits. The Southern District of New York found this to be a fraudulent transfer.

118.    The purchase of the vacation property owned by Moonstone was the basis for all thirteen counts of illegal monetary transactions in Mr. Carpenter's criminal indictment. Mr. Carpenter was found guilty on all thirteen counts of illegal monetary transactions.

119.    Upon information and belief, the vacation property was purchased solely for the benefit of Mr. and Mrs. Carpenter and was made with an actual intent to hinder, delay, or defraud Universitas and impede Universitas' collection efforts.

120.    The Southern District of New York found that because the Moonstone property was acquired through fraud and purchased entirely with money stolen from Universitas, that Universitas' "interest in the Property and any insurance proceeds is superior to those of the insurance company … and those of all the Moonstone Respondents."

121.    Upon information and belief, Moonstone is an alter ego of Daniel Carpenter.

<u>THE CHARITABLE TRUSTS</u>

122.    Upon information and belief, Daniel Carpenter transferred the majority of his personal assets and Benistar ownership rights to various LLCs and trusts in order to conceal his involvement in Benistar and to shield his assets from judgment creditors.

123.    Upon information and belief, most of Mr. Carpenter's assets and ownership rights in Benistar are ultimately owned by the Alliance Charitable Trust, Phoenix Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, and Carpenter Charitable Trust (collectively the "Charitable Trusts"). Upon information and belief, the Charitable Trusts were expressly created to shield Mr. Carpenter's assets from judgment creditors.

124.    Upon information and belief, there are multiple incarnations and/or versions of all Charitable Trusts and all Charitable Trusts are known by multiple names.

125.    Upon information and belief, all of the Charitable Trusts share the same structure – the beneficiaries are Molly Carpenter and (her daughter) Caroline Carpenter during their lifetime, and upon their death, payable to the Avon Old Farms School. Upon information and belief, Daniel Carpenter is the sole grantor for all Charitable Trusts, and the Charitable Trusts' sole assets are Mr. Carpenter's personal assets and distributions from Benistar entities.

126.    Upon information and belief, Mr. Carpenter is the sole trustee for all Charitable Trusts and the Charitable Trusts are operated as creditor-proof piggy banks for the Carpenter

family. Upon information and belief Mr. Carpenter is the true owner of the Charitable Trusts'

assets and retains beneficial ownership of these assets.

127.    On or about March 2, 2013 Daniel Carpenter sent an email boasting that the

Charitable Trusts contain assets worth tens of millions of dollars.

128.    Between November 2, 2009 and November 12, 2009 Daniel Carpenter caused

Judgment Debtor Grist Mill Holdings, LLC to make eleven transfers of the Spencer death

benefits to the Charitable Trusts. Upon information and belief these eleven transfers combined

for $1.76 million of the Spencer death benefits.

129.    Upon further information and belief, all transfers from Judgment Debtor Grist

Mill Holdings, LLC to the Charitable Trusts were fraudulent transfers undertaken for the benefit

of Mr. and Mrs. Carpenter and were intended to hinder, delay, defraud, and otherwise prevent

Universitas from enforcing its judgment.

130.    Upon information and belief, the Charitable Trusts are alter egos of Mr.

Carpenter.

<u>DONALD TRUDEAU</u>

131.    Donald Trudeau is the President of BASI and TPG, and an executive of

numerous other Benistar entities. Upon information and belief, Mr. Trudeau is a top lieutenant

in the Benistar criminal enterprise and uses his executive status to facilitate Benistar's

fraudulent and criminal activities. Upon information and belief, Donald Trudeau is a figurehead

who is formally listed as an executive but who cedes full control and authority over Benistar

entities to Daniel Carpenter, thereby facilitating Benistar's fraudulent and criminal activity

whilst concealing Mr. Carpenter's involvement in Benistar. The Commonwealth of

Massachusetts found that "[t]he depositions of Donna Wayne, BASI's assistant secretary and

23

the head of administrative services, and Donald Trudeau, BASI's president, both of whom are also directors of the company, reveals in painful fashion that they are essentially in the dark about the management of the company, at least from any perspective tied to finances and financial control."

132.    Upon information and belief, Mr. Trudeau regularly provides courts with false, misleading, and self-serving testimony. In arbitration concerning the sale of COT life insurance policies the arbitrator found that "Mr. Trudeau's testimony is not credible." Likewise, the Commonwealth of Massachusetts expressly found Mr. Trudeau's testimony to not be credible.

133.    Mr. Trudeau operated from 300 First Stamford Place, Stamford, Connecticut. Upon information and belief, operations at this address were a continuation of the operations at 100 Grist Mill Road.

134.    DOL agents raided the offices of 300 First Stamford Place in connection with DOL's investigation. Mr. Trudeau was a named target in this criminal investigation.

135.    Upon information and belief, Mr. Trudeau actively and willingly participated in Benistar's fraudulent and criminal activities. The District of Connecticut explicitly stated that Mr. Carpenter conspired with Mr. Trudeau to commit mail and wire fraud.

136.    Upon information and belief, Mr. Trudeau was heavily involved in Benistar's criminal activities. Upon information and belief, such involvement included, *inter alia*, negotiations with a third party financier, submitting and underwriting all COT policies, and the sale of COT policies to third party investors.

137.    Upon information and belief, Mr. Trudeau participated in the Benistar's criminal operations with full knowledge that it was a violation of federal law as evidenced, *inter alia*, by the numerous emails Mr. Trudeau sent Daniel Carpenter concerning criminal prosecutions

for activities similar to Benistar operations and an email sent from Mr. Trudeau to Daniel Carpenter on or about January 4, 2008 wherein Mr. Trudeau expressly stated that COT was engaged in fraud.

138.   Upon information and belief, Mr. Carpenter caused Judgment Debtor Grist Mill Capital, LLC to fraudulently transfer $6.4 million of the Spencer death benefits to entities controlled by Mr. Trudeau for use in Mr. Trudeau's business ventures. Upon information and belief, this transfer was undertaken solely for the benefit of Mr. Carpenter and Mr. Trudeau and to the detriment of Universitas.

139.   Upon information and belief, Mr. Trudeau directed the transfer of assets from Nova Group to entities under his control during the underlying arbitration. Upon information and belief, this transaction was fraudulent and intended solely for the benefit of Mr. Carpenter and Mr. Trudeau and to the detriment of Universitas.

140.   Upon information and belief, Mr. Trudeau participated in the submission of falsified evidence to the arbitration tribunal, thereby depriving Universitas of $4.02 million to which it was rightfully entitled. Upon information and belief, Mr. Trudeau had prior knowledge that the Trust Document had been altered and understood that COT did not have a valid basis to claim twenty percent of the Spencer death benefits.

141.   Upon information and belief, BASI is an alter ego of Mr. Trudeau and Mr. Carpenter.

142.   Upon information and belief, TPG is an alter ego of Mr. Trudeau and Mr. Carpenter.

143.   Upon information and belief, Benistar is an alter ego of Mr. Trudeau and Mr. Carpenter.

## MOLLY CARPENTER

144.    Molly Carpenter is Daniel Carpenter's wife. She holds his primary power of attorney while he is incarcerated.

145.    Mrs. Carpenter is the Chairman of BASI, Secretary of TPG and Moonstone, and an executive, director, and/or officer of numerous other Benistar entities. Upon information and belief, Mrs. Carpenter uses these positions to facilitate Benistar's fraudulent and criminal activities – Mrs. Carpenter defers all executive decisions to Mr. Carpenter, thereby providing Mr. Carpenter with control over Benistar while helping to conceal his involvement in Benistar.

146.    Upon information and belief, Mrs. Carpenter was heavily involved with COT as evidenced, *inter alia*, by an email sent from Molly Carpenter on or about January 18, 2007 to Daniel Carpenter and other Benistar personnel outlining COT's operating procedure. Federal prosecutors specifically identified Molly Carpenter as one of Daniel Carpenter's co-conspirators in his mail and wire fraud conspiracy.

147.    Molly Carpenter was a signatory on COT's bank account.

148.    Upon information and belief, Mrs. Carpenter is a signatory on more than thirty-three Benistar bank accounts, including at least two TPG accounts and a BASI account. Upon information and belief, Mrs. Carpenter regularly disbursed money from these accounts to Daniel Carpenter in a manner designed to keep Mr. Carpenter's name off of official financial records and thereby conceal his involvement in Benistar.

149.    Upon information and belief, Mrs. Carpenter regularly provides courts with false, misleading, and self-serving testimony. The Commonwealth of Massachusetts noted that Mrs. Carpenter "falsely stated in her affidavit that she never 'exercised ownership of, dominion,

or control over [Benistar property exchange participants'] money.'" Likewise, the Southern District of New York noted that Mrs. Carpenter's testimony was "wholly self-serving and unreliable."

150.    Upon information and belief, Judgment Debtor Carpenter Financial Group transferred at least $160,300 of the Spencer death benefits to Mrs. Carpenter. Upon further information and belief, all transfers from Judgment Debtor Carpenter Financial Group to Mrs. Carpenter were fraudulent transfers undertaken for the sole benefit of Mrs. Carpenter and were intended to hinder, delay, defraud, and otherwise prevent Universitas from enforcing its judgment.

151.    Mrs. Carpenter personally owns 99% of Moonstone, and thereby owns 99% of the luxurious vacation property fraudulently acquired with the Spencer death benefits. Upon information and belief, Moonstone used the fraudulently transferred Spencer death benefits, *inter alia*, to pay Mrs. Carpenter's personal credit card bills.

152.    The Commonwealth of Massachusetts found BASI to be an alter ego of Molly Carpenter.

153.    Upon information and belief, TPG is an alter ego of Mrs. Carpenter and Mr. Carpenter.

154.    Upon information and belief, the Charitable Trusts are alter egos of Mrs. Carpenter and Mr. Carpenter.

155.    Upon information and belief, Moonstone is an alter ego of Mrs. Carpenter and Mr. Carpenter.

156.    Upon information and belief, Benistar is an alter ego of Mrs. Carpenter and Mr. Carpenter.

COLLECTION EFFORTS

157.    Universitas' judgment remains substantially unsatisfied, even after years of post-judgment litigation seeking to enforce the judgment.

158.    Universitas' judgment against Nova Group has been accruing interest at a rate of ten percent per annum since January 24, 2011, for a total of approximately $24.8 million in accrued interest.

159.    On or about August 12, 2014 the Southern District of New York entered judgment against Daniel Carpenter in the amount of $30.6 million. The court expressly stated that this judgment was less than Universitas' total loss.

160.    On or about May 6, 2020 Carpenter Financial Group paid $7,858.14 toward its outstanding judgment.

161.    Upon information and belief, Mr. Carpenter has not paid anything else towards the judgment against him and claims to have no money. Mr. Carpenter nonetheless paid an army of lawyers millions of dollars to defend him in an array of criminal and civil proceedings and sought permission from the court to take an extravagant international vacation involving a trip to London and the World Cup in South Africa.

162.    As a result of a turnover proceeding against Moonstone, Universitas recovered proceeds from an insurance policy on the Moonstone property. Upon information and belief, such proceeds amounted to $343,031.52.

163.    Universitas settled with Judgment Debtor Grist Mill Trust for approximately $4.2 million.

164.    Universitas filed a related proceeding against the COT insurance trustee that

resulted in the settlement of $12 million. That recovery was for breach of fiduciary duty and was not an offset to the judgments for the stolen funds that have remained largely unsatisfied.

165.    Universitas' total recovery is substantially less than the interest accrued on Universitas' judgment.

166.    Benistar's improper litigation tactics, bad faith, fraud, obstruction of justice, contempt of court, falsification of evidence, and witness intimidation harmed Universitas by forcing the closure of the foundation, and further harmed Universitas by causing it to incur considerable expenses attempting to enforce its judgment. Universitas has spent over $10 million on attorneys' fees and legal costs seeking to locate assets and enforce its judgment. Benistar's recalcitrance has caused Universitas difficulty in paying its legal fees and costs, which caused litigation with its former counsel regarding fees.

<u>CAUSES OF ACTION</u>

167.    Connecticut common law dictates that decisions concerning the disregard of the corporate form are made in accordance with the law of the state of incorporation. *See Wells Fargo Bank, N.A. v. Konover*, Case No. 3:05-cv-01924 (CFD), 2011 U.S. Dist. LEXIS 32079, at *19 n. 21 (D. Conn. Mar. 28, 2011) (citations omitted). The corporate Defendants in this proceeding are all Delaware companies.

168.    Delaware common law allows judgment creditors to pierce the corporate veil and satisfy their judgment with corporate assets when the corporation is an alter ego of the judgment debtor. *See Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 385-88 (4th Cir. 2018).

169.    An alter ego finding under Delaware law requires that the dominant shareholder and corporation be operated as a single economic entity and that there be an overall element of fraud or injustice. *See Fletcher v. Atex*, 68 F.3d 1451, 1457 (2d Cir. 1995) (citations omitted).

170.     Connecticut common law permits judgment creditors to impose a constructive trust upon property and/or assets misappropriated from the creditor through fraud or other unconscionable conduct. *See Cadle Co. v. Gabel*, 69 Conn. App. 279, 288-89 (2002).

171.     Connecticut common law permits judgment creditors to impose a constructive trust upon property and/or assets that the debtor has placed in the name of a third party while retaining beneficial ownership of the property and/or assets. *See New Falls Corp. v. O'Brien*, Case No. 01-cv-807193, 2005 Conn. Super. LEXIS 857, at *11 (Super. Ct. Mar. 23, 2005) (citations omitted).

<u>FIRST COUNT – ALTER EGO LIABILITY (AGAINST ALL DEFENDANTS)</u>

172.     Universitas incorporates paragraphs 1-171 above as paragraphs 1-171 of the First Count.

173.     On or about June 5, 2012 the Southern District of New York confirmed the arbitration award entered against Nova Group in the amount of $26.5 million, plus interest thereon from January 24, 2011 at the rate of ten percent per annum. On or about August 12, 2014 the Southern District of New York entered judgment against Daniel Carpenter in the amount of $30.6 million, plus statutorily allowed post-judgment interest.

174.     Upon final determination of all accrued interest and post-judgment credits applied to the outstanding indebtedness and initial judgment entered against Nova Group, the remaining unpaid and unsatisfied balance will be approximately $46.7 million, plus continued post-judgment interest.

175.     Upon determination of all accrued interest and post-judgment credits applied to the judgment entered against Daniel Carpenter, the remaining unpaid and unsatisfied balance will be approximately $26 million, the amount of the judgment entered against Mr. Carpenter

less the portion of the judgment that has been settled, plus continued post-judgment interest.

176.    At all relevant times, there was such a unity of interest and ownership among the Defendants and Judgment Debtors that the independence of the Judgment Debtors had in effect never ceased or never begun, and an adherence to the fiction that the Judgment Debtors were separate identities would serve only to defeat justice and equity by permitting the economic entities to escape liability arising out of an operation conducted by the Judgment Debtors and Defendants.

177.    At all relevant times, Defendants and Judgment Debtors, *inter alia*, operated as a single economic entity that worked to criminally misappropriate Universitas' money, defraud Universitas, and conceal the stolen funds.

178.    Defendants completely dominated the financial, policy, and business practices of the Judgment Debtors such that the Judgment Debtors had no separate mind, will, or existence of their own.

179.    Defendants' aforesaid control and acts were used to commit the aforesaid dishonest, criminal, fraudulent and unjust acts, which proximately caused damages to Universitas and for which the Southern District of New York issued the Judgment against the Judgment Debtors.

180.    As a result of the aforesaid unity of interest, unity of ownership, and Defendants' control and acts, Defendants are jointly and severally liable for the full amount of the Southern District of New York Judgment against the Judgment Debtors.

### SECOND COUNT – LIABILITY FOR ATTORNEYS' FEES (AGAINST ALL DEFENDANTS)

181.    Universitas hereby incorporates paragraphs 1-180 above as paragraphs 1-180 of the Second Count.

182.     Judgment Debtors' dilatory and diversionary litigation tactics, fraud, obstruction of justice, contempt of court, and additional bad faith caused Universitas to expend unnecessarily large amounts of money on attorneys' fees and legal costs in an attempt to locate assets and enforce its judgment.

183.     Despite years of litigation and more than $10 million in attorneys' fees and legal costs, Universitas' judgment remains largely unsatisfied.

184.     Judgment Debtors' and Defendants' dilatory and diversionary litigation tactics, fraud, obstruction of justice, contempt of court, and additional bad faith are the proximate cause of Universitas inability to locate assets and enforce its judgment and the consequential attorneys' fees and legal costs related to such efforts.

185.     The Trust Document provides that the non-prevailing party shall pay all costs of the prevailing party, including attorneys' fees and costs. Universitas was the prevailing party in all prior disputes with Judgment Debtors and Defendants.

186.     As a result of Defendants' actions and/or Defendants' aforesaid control of Judgment Debtors, Defendants are jointly and severally liable for the attorneys' fees and legal costs incurred by Universitas in post-judgment proceedings.

THIRD COUNT – CONSTRUCTIVE TRUST (AGAINST MOONSTONE, MOLLY CARPENTER, AND THE CHARITABLE TRUSTS)

187.     Universitas hereby incorporates paragraphs 1-186 above as paragraphs 1-186 of the Third Count.

188.     Daniel Carpenter criminally defalcated the Spencer death benefits and caused these funds to be fraudulently transferred throughout the Benistar criminal enterprise.

189.     Mr. Carpenter fraudulently transferred Spencer insurance proceeds to the Charitable Trusts.

190.    Mr. Carpenter fraudulently transferred Spencer insurance proceeds to Molly Carpenter, and further caused Spencer death benefits to be used as payment for Mrs. Carpenter's personal credit card bills.

191.    Mr. Carpenter caused Moonstone to purchase the Carpenters' vacation property with fraudulently conveyed Spencer insurance proceeds. Moonstone continues to own the fraudulently acquired Carpenter vacation. Courts have determined that Universitas has an interest in the Carpenter vacation property "superior" to Moonstone's interest in the property and/or the Carpenters' interest in the property.

192.    Defendants Molly Carpenter, Moonstone, and the Charitable Trusts were unjustly enriched and benefitted from the Spencer insurance proceeds, and such unjust enrichment caused Universitas harm.

193.    Whereas Defendants obtained property rightfully belonging to Universitas through fraudulent and wrongful conduct, and Defendant should not, in good conscience, be permitted to retain such property, Universitas is entitled to a constructive trust upon the Spencer insurance proceeds fraudulently transferred to Defendants.

FOURTH COUNT – CONSTRUCTIVE TRUST (AGAINST THE CHARITABLE TRUSTS)

194.    Universitas hereby incorporates paragraphs 1-193 above as paragraphs 1-193 of the Fourth Count.

195.    Daniel Carpenter is a judgment debtor and is insolvent because title to Mr. Carpenter's assets is held by trusts and LLCs in order to conceal and/or shield his assets from creditors.

196.    Mr. Carpenter is the sole grantor and sole trustee for the Charitable Trusts and is in complete control of the Charitable Trusts and the Charitable Trusts' assets. Mr. Carpenter

uses his control over the Charitable Trusts to cause the Charitable Trusts' assets to be used for his personal benefit.

197.    Whereas Daniel Carpenter is an insolvent judgment debtor who placed assets in the Charitable Trusts to avoid paying his creditors, Mr. Carpenter has a confidential relationship with the Charitable Trusts, and Mr. Carpenter retains beneficial ownership in the Charitable Trusts' property, Universitas is entitled to impose a constructive trust upon the Charitable Trusts in the amount of Mr. Carpenter's outstanding judgment.

FIFTH COUNT – CONSTRUCTIVE TRUST (AGAINST GM PARTNERS)

198.    Universitas hereby incorporates paragraphs 1-197 above as paragraphs 1-197 of the Fifth Count.

199.    Carpenter Financial Group is an insolvent judgment debtor and is insolvent.

200.    GM Partners holds title to Carpenter Financial Group assets in order to shield such assets from Daniel Carpenter's creditors.

201.    Daniel Carpenter controls GM Partners.

202.    Whereas insolvent Judgment Debtors have placed assets in GM Partners to avoid paying creditors, Judgment Debtors have a confidential relationship with GM Partners, and Judgment Debtors retain beneficial ownership in GM Partners' property, Universitas is entitled to impose a constructive trust upon GM Partners in the amount of Daniel Carpenter's outstanding judgment and/or in the amount of Carpenter Financial Group's outstanding judgment.

SIXTH COUNT – CONSTRUCTIVE TRUST (AGAINST MOONSTONE)

203.    Universitas hereby incorporates paragraphs 1-202 above as paragraphs 1-202 of the Sixth Count.

204.   Daniel Carpenter placed property within Moonstone for the purpose of concealing and/or shielding such property from his creditors.

205.   Daniel Carpenter controls Moonstone.

206.   Whereas Daniel Carpenter is an insolvent judgment debtor who placed assets in Moonstone to avoid paying his creditors, Mr. Carpenter has a confidential relationship with Moonstone, and Mr. Carpenter retains beneficial ownership in Moonstone's assets, Umiversitas is entitled to impose a constructive trust upon Moonstone in the amount of Mr. Carpenter's outstanding judgment.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment that:

(a)   Defendants be held jointly and severally liable for the full amount of the Southern District of New York Judgment for which Judgment Debtors are liable;

(b)   Defendants be held liable for damages for the additional claims and damages as outlined above;

(c)   Defendants be held jointly and severally liable for the reasonable and necessary attorneys' fees, expenses, and collection costs to the full extent of the Judgment Debtors' liability;

(d)   Defendants be held jointly and severally liable for pre- and post-judgment interest at the applicable rates to the full extent of the Judgment Debtors' liability under the Southern District of New York Judgment;

(e)   Defendants be held jointly and severally liable for all compensatory damages;

(f)   Defendants be held jointly and severally liable for any other relief, in law and in equity, to which Universitas may be justly entitled.

JURY DEMAND

Universitas demands trial by jury as to all claims.


Dated:  New Haven, CT
        May 28, 2020

                          THE PLAINTIFF, UNIVERSITAS
                          EDUCATION, LLC


                          By: /s/Michael G. Caldwell
                          Ilan Markus (ct26345)
                          Michael G. Caldwell (ct26561)
                          Barclay Damon, LLP
                          545 Long Wharf Drive
                          New Haven, CT 06511
                          Tel. (203) 672-2658
                          Fax (203) 654-3265
                          Em. imarkus@barclaydamon.com

                          *Attorneys for Plaintiff Universitas Education,
                          LLC*

                          *Pro Hac Motion to Be Filed:*
                          Joseph L. Manson III
                          Law Offices of Joseph L. Manson III
                          600 Cameron Street
                          Alexandria, VA 22314
                          Tel. 202-674-1450
                          Em. jmanson@jmansonlaw.com