UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>    Plaintiff,<br><br>v.<br><br>BENISTAR, BENISTAR ADMIN SERVICES, INC., TPG GROUP, INC., GRIST MILL PARTNERS, LLC, MOONSTONE PARTNERS, LLC, ALLIANCE CHARITABLE TRUST, PHOENIX CHARITABLE TRUST, ATLANTIC CHARITABLE TRUST, AVON CHARITABLE TRUST, CARPENTER CHARITABLE TRUST, DONALD TRUDEAU, MOLLY CARPENTER, JANE DOE ENTITIES UNDER CONTROL OF MOLLY CARPENTER AND/OR DONALD TRUDEAU, AND JANE DOE ENTITIES UNDER CONTROL OF JUDGMENT DEBTORS<br><br>    Defendants. | CIVIL ACTION NO. 3:20-cv-00738<br><br>JUNE 1, 2020 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR *EX PARTE* PREJUDGMENT REMEDY AND MOTION FOR DISCLOSURE OF ASSETS**

# TABLE OF CONTENTS

I. INTRODUCTION/FACTUAL BACKGROUND......................................................1

II. **PLAINTIFF IS ENTITLED TO AN *EX PARTE* PREJUDGMENT REMEDY**.....4

    A. Legal Standard................................................................................................4

    B. There is a Reasonable Likelihood that Defendants are about to Fraudulently Dispose of, or have Fraudulently Disposed of, Property with an Intent to Frustrate Universitas...................................................................................................5

    C. There is Probable Cause that a Judgment will be Granted in Plaintiff's Favor..........7

        i. Universitas is Likely to Succeed on its Alter Ego Claims.............................7

        ii. Universitas is Likely to Succeed on its Constructive Trust Claim...............11

III. **DEFENDANTS SHOULD DISCLOSE THEIR ASSETS**......................................12

IV. **CONCLUSION**.................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*,
    Case No. 01-00075 (Mass. Sup. Ct. Nov. 21, 2001)..................................................................6

*Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*,
    Case No. 01-0116BLS2 (Mass. Super. Ct. Sep. 23, 2003).........................................3, 6, 10

*Feeley v. NHAOCG, LLC*, 62 A.3d 649 (Del. Ch. 2012)................................................................12

*Fletcher v. Atex*, 68 F.3d 1451 (2d Cir. 1995)..............................................................................8, 10

*Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602 (D. Del. 2018)..............................................8, 11

*Iantosca v. Benistar Admin Services, Inc.*,
    Case No. 08-cv-11785 (NMG) (D. Mass. Nov. 21, 2008).......................................................6

*Iantosca v. Benistar Admin Services, Inc.*,
    Case No. 08-cv-11785 (NMG) (D. Mass. June 21, 2013)..........................................5, 6, 10

*In re Kilroy*, 357 B.R. 411 (Bankr. S.D. Tex. 2006).......................................................................8, 10

*Martin v. D.B. Martin Co.*, 88 A. 612 (Del. Ch. 1913).......................................................................9

*Martin Hilti Family v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319 (S.D.N.Y. 2019).....................8

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D. Del. 1989)....................................9, 11

*New Falls Corp. v. O'Brien*, Case No. 01-cv-807193,
    2005 Conn. Super. LEXIS 857 (Super. Ct. Mar. 23, 2005)............................................11, 12

*Pashaian v. Eccelston Props.*, 88 F.3d 77 (2d. Cir. 1996).................................................................6

*Qualitative Reasoning Sys., Inc. v. Computer Scis. Corp.*, Case No. 3:98 CV 554 (AWT),
    2000 U.S. Dist. LEXIS 17283 (D. Conn. Mar. 31, 2000).........................................................5

*Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375 (4th Cir. 2018).....................................................8

*Starzec v. Kida*, 183 Conn. 41 (1981)..........................................................................................11, 12

*Success, Inc. v. Curcio*, 124 A.3d 563 (Conn. App. 2015).............................................................11, 12

*Three S. Dec. Co. v. Santore*, 193 Conn. 174 (1984).........................................................................5

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016)............................................*passim*

*Universitas Educ., LLC v. Nova Group, Inc.*,
  Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP),
  2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013)..........................................4, 5, 11

*Universitas Educ., LLC v. Nova Group, Inc.*,
  Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP),
  2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014)................................................1, 4

*Wallace v. Wood*, 752 A.2d 1175 (Del. Ch. 1999)............................................................8

*Wells Fargo Bank, N.A. v. Konover*, Case No. 3:05-cv01924 (CFD),
  2011 U.S. Dist. LEXIS 32079 (D. Conn. Mar. 28, 2011).......................................................7

**<u>Statutes</u>**

Connecticut General Statute § 52-278e(a)........................................................................4

Connecticut General Statute § 52-278n(a)......................................................................12

Connecticut General Statute § 52-278n(c)......................................................................12

**<u>Rules</u>**

Fed. R. Civ. P. 64...............................................................................................................4

I.  INTRODUCTION/FACTUAL BACKGROUND

The facts relevant to this Application for Prejudgment Remedy ("PJR App.") are set forth in the Complaint filed by Plaintiff Universitas Education, LLC ("Universitas"), and are further supplemented by the affidavits of Sharon Siebert and Benjamin Chernow in support of this motion. Universitas has an outstanding judgment against Daniel Carpenter for approximately $26 million. (Siebert Aff. ¶¶ 9, 24.) Daniel Carpenter has purposefully rendered himself "judgment proof." (*See* PJR App. Ex. 20.) Mr. Carpenter has controlled over two hundred bank accounts, but none of these accounts were in his own name. (*See* PJR App. Ex. 8.) Mr. Carpenter holds all of his property and assets in trusts and shell companies in order to conceal and/or shield his assets from his creditors. (*See* PJR App. Ex. 8.) Universitas' attempts to enforce its judgment against judgment debtors aside from Daniel Carpenter have been foiled by continued fraudulent transfers intended to frustrate Universitas' collection efforts. (Siebert Aff. ¶¶ 10-11.) Consequently, Universitas filed this case so that it may collect its judgment from parties believed to have assets capable of satisfying its judgment and which should rightly be liable for the judgment against Daniel Carpenter. Universitas brings this PJR Application pursuant to Connecticut General Statute § 52-278e in order to attach property belonging to defendants before such property can be fraudulently transferred elsewhere.

Universitas' judgment is the result of Daniel Carpenter's theft of $30.6 million from Universitas. *See Universitas Educ., LLC v. Nova Group, Inc.*, Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP), 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014). Daniel Carpenter was subsequently prosecuted for, *inter alia*, the theft of Universitas' money. *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016). The court found that Daniel Carpenter controlled hundreds of corporate entities from his offices at 100 Grist Mill Road that he operated

as part of a criminal conspiracy (hereinafter, "Benistar") to, *inter alia*, fraudulently defalcate Universitas' money and launder these proceeds. *See id.* The court explicitly found that Defendants TPG Group, Inc. ("TPG"), Benistar Admin Services, Inc. ("BASI"), and Donald Trudeau were part of this criminal conspiracy. *See id.* The court further found that Judgment Debtors Grist Mill Capital, LLC ("GMC"), Avon Capital, LLC ("Avon"), Grist Mill Trust, and Charter Oak Trust ("COT") were part of this same criminal conspiracy. *See id.* The court also explained that "the formal corporate structure of the various Benistar Entities had little meaning for the people involved" and that "corporate entities were created and discarded at Mr. Carpenter's direction when it suited his purposes." *See id.* at 274.

As explained further in the affidavit of Benjamin Chernow, Mr. Carpenter and his associates have been involved in numerous criminal and civil suits, including prior suits with Universitas. The findings from these cases support the District of Connecticut's findings in *United States v. Carpenter*, and uniformly hold that Daniel Carpenter controlled a vast network of companies from his offices at 100 Grist Mill Road that he operated as a single business entity for the personal benefit of himself and his associates. This control was often indirect – formal positions within Benistar entities are held by persons who defer authority to Mr. Carpenter and thereby enable Mr. Carpenter to conceal his involvement. For example, Mr. Carpenter holds no formal position with BASI, (*see* PJR App. Ex. 37,) but courts consistently find that Mr. Carpenter controls BASI. *See e.g.*, *Carpenter*, 190 F. Supp. 3d at 273-74 (noting that Don Trudeau was President of BASI and Molly Carpenter was Chairman of BASI, and nonetheless, the court found that Mr. Carpenter controlled all "Benistar Entities," including BASI). Courts consistently conclude that Benistar constituent entities are operated such that they have no independence from one another and that the interests of some entities can be and have been subordinated to the interests of others.

The prior cases involving Benistar further demonstrate a pattern whereby Benistar entities frequently transfer and/or assign assets to other Benistar entities with an intent to hinder, delay, or otherwise defraud creditors.

Universitas seeks to attach the property at 100 Grist Mill Road, Simsbury, CT, (hereinafter "Benistar Plaza"). This property is owned by Defendant Grist Mill Partners, LLC ("GM Partners") and has an appraisal value of $2.4 million. (*See* PJR App. Ex. 33.) GM Partners is a Delaware entity. (*See* PJR App. Ex. 45.) GM Partners operated from Benistar Plaza and used the phone number (860) 408-7000.[1] (*See* PJR App. Ex. 35.) Daniel Carpenter is the Managing Member of GM Partners, (*see* PJR App. Ex. 47,) and he controls GM Partners. (*See* PJR App. Ex. 17.) Mr. Carpenter is a signatory on GM Partners' bank accounts. (*See* PJR App. Ex. 35.) Daniel Carpenter also clearly considers Benistar Plaza to be "**his**" property. (*See* PJR App. Ex. 21 ¶¶ 20, 23, 25, 28.)

Universitas also seeks to attach the property at 18 Pond Side Lane, Simsbury, CT. This property is owned by Molly Carpenter and has an appraisal value of $430,780. (*See* PJR App. Ex. 32.) Mrs. Carpenter listed Benistar Plaza as both her residence and business address. (*See* PJR App. Ex. 37.) Molly Carpenter is the Chairman and sole Director for BASI. (*See* PJR App. Ex. 37.) BASI is a Delaware company that operated from Benistar Plaza, (*see* PJR App. Ex. 37,) and used the phone number (860) 408-7000. (*See* PJR App. Ex. 36.) Both Molly Carpenter and Daniel Carpenter were previously found to be alter egos of BASI. *See Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*, Case No. 01-0116BLS2 (Mass. Super. Ct. Sep. 23, 2003). Mrs. Carpenter is also a member of Moonstone Partners, LLC ("Moonstone") and owns ninety-nine percent of Moonstone. (*See* PJR App. Ex. 46.) Moonstone is a Delaware LLC, (*see* PJR App. Ex. 46,) that operated from

---

[1] This phone number was also used, *inter alia*, by GMC, (PJR App. Ex. 38,) Avon, (PJR App. Ex. 38,) COT, (PJR App. Ex. 38,) Carpenter Financial Group, (PJR App. Ex. 40,) Nova Group, Inc., (PJR App. Ex. 39,) Grist Mill Holdings, LLC, (PJR App. Ex. 44,) and Grist Mill Trust. (PJR App. Ex. 43.) All of these entities are Judgment Debtors in this proceeding.

Benistar Plaza and used the phone number (860) 408-7000. (*See* PJR App. Ex. 41.) Moonstone is a shell company that was created to hold title to the Carpenter family's vacation property and to shield the property from Mr. Carpenter's personal creditors. *See Universitas Educ., LLC v. Nova Group, Inc.*, Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP), 2013 U.S. Dist. LEXIS 165803, at *18, *27 (S.D.N.Y. Nov. 20, 2013). Mr. Carpenter caused $1.1 million of the money stolen from Universitas to be fraudulently transferred to Moonstone. *See id.* at *15-*16, *39-*40. Moonstone used $1.04 million of the stolen Universitas money to purchase the Carpenter vacation property located at 392B Cards Pond Road in South Kingston, Rhode Island. *See Carpenter*, 190 F. Supp. 3d at 296. The remaining $60,000 of Universitas' money was used, *inter alia*, to pay Mrs. Carpenter's personal credit card bills. (*See* PJR App. Ex. 18.) Mrs. Carpenter also received at least $160,300 from Carpenter Financial Group, (*see* PJR App. Ex. 19,) a Judgment Debtor in this proceeding that was fraudulently transferred $11.14 million of stolen Universitas money prior to making the payments to Mrs. Carpenter. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at *11-*12.

## II. PLAINTIFF IS ENTITLED TO AN *EX PARTE* PREJUDGMENT REMEDY

### A. Legal Standard

Fed. R. Civ. P. 64 provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." In turn, Connecticut General Statute § 52-278e(a) permits plaintiffs to attach defendants' property *ex parte* and without a hearing when: (i) there is "probable cause" that a judgment in the amount of the prejudgment remedy sought will be rendered in plaintiff's favor, taking into account defenses, counterclaims and set-offs, and (ii) there is reasonable likelihood that the defendant: (1) has hidden or will hide himself so that process cannot be served on him, (2) is

4

about to remove himself or his property from this state, (3) is about to fraudulently dispose of or has fraudulently disposed of any of his property with intent to hinder, delay or defraud his creditors, or (4) has fraudulently hidden or withheld money, property or effects which should be liable to the satisfaction of his debts.

"Probable cause" is simply "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Three S. Dec. Co. v. Santore*, 193 Conn. 174, 175 (1984) (citations omitted). Probable cause is "a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." *Qualitative Reasoning Sys., Inc. v. Computer Scis. Corp.*, No. 3:98 CV 554 (AWT), 2000 U.S. Dist. LEXIS 17283, at *27 (D. Conn. Mar. 31, 2000) (internal quotations & multiple citations omitted).

> B. There is a Reasonable Likelihood that Defendants are about to Fraudulently Dispose of, or have Fraudulently Disposed of, Property with an Intent to Frustrate Universitas.

As outlined in the Complaint and accompanying affidavits, Daniel Carpenter has a protracted history of fraudulently transferring assets with an intent to hinder, delay or defraud his creditors, including Universitas. Mr. Carpenter uses entities under his control to fraudulently transfer assets and to subsequently conceal and/or shield these assets from his creditors. For example, Moonstone created a fraudulent mortgage and a fraudulent promissory note against the Carpenter vacation property solely to shield the property from Mr. Carpenter's personal creditors. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803 at *31, *39. BASI fraudulently transferred its interest in settlement proceeds in order to conceal and/or shield these proceeds from Mr. Carpenter's creditors. *See Iantosca v. Benistar Admin Services, Inc.*, Case No. 08-cv-11785 (NMG) (D. Mass. June 21, 2013). Mr. Carpenter's lengthy history of intentionally frustrating his

5

creditors' collection efforts indicates that he is likely to continue fraudulently dissipating assets. *See Pashaian v. Eccelston Props.*, 88 F.3d 77, 87 (2d. Cir. 1996).

Daniel Carpenter controls GM Partners. (*See* PJR App. Ex. 17.) Thus there is a reasonable likelihood that Daniel Carpenter will cause GM Partners to fraudulently dispose of its property with an intent to hinder, delay or defraud Universitas if it has not already done so. Mr. Carpenter's control over GM Partners further creates a reasonable likelihood that GM Partners has fraudulently hidden or withheld money, property or effects which should be liable to the satisfaction of his debts.

Molly Carpenter is a high-ranking official of a fraudulent criminal organization. *See Carpenter*, 190 F. Supp. 3d at 266, 299-300 (explaining that intent to conduct Benistar business sufficed for intent to conduct criminal activity element of money laundering charges). Mrs. Carpenter has personally engaged in fraud by, *inter alia*, converting Benistar investors' money for her personal benefit. *See Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*, Case No. 01-00075 (Mass. Sup. Ct. Nov. 21, 2001). Courts previously enjoined Molly Carpenter, *inter alia*, as a result of the "substantial risk that, unless enjoined, defendants will dissipate or conceal the assets…." *See Iantosca v. Benistar Admin Services, Inc.*, Case No. 08-cv-11785 (NMG) (D. Mass. Nov. 21, 2008). Molly Carpenter is also an alter ego of BASI. *See Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*, Case No. 01-0116BLS2 (Mass. Super. Ct. Sep. 23, 2003). In turn, BASI has fraudulently transferred assets in order to frustrate Mr. Carpenter's creditors. *See Iantosca v. Benistar Admin Services, Inc.*, Case No. 08-cv-11785 (NMG) (D. Mass. June 21, 2013). BASI was also identified as one of "the most significant" Benistar entities within the criminal conspiracy operated from Benistar Plaza. *See Carpenter*, 190 F. Supp. 3d at 273. Thus there is a reasonable likelihood that Mrs. Carpenter is about to fraudulently dispose of or has fraudulently disposed of property with

an intent to hinder, delay or defraud her creditors, if she has not already done so. There is also a reasonable likelihood that Mrs. Carpenter has fraudulently hidden or withheld money, property or effects which should be liable to the satisfaction of her debts.

    C. <u>There is Probable Cause that a Judgment will be Granted in Plaintiff's Favor</u>.

For the purposes of this PJR Application, Universitas' claims consist of alter ego claims against Molly Carpenter and GM Partners for approximately $26 million, and a constructive trust claim against GM Partners for approximately $26 million. Universitas seeks to attach property belonging to GM Partners with a value of approximately $2.4 million and property belonging to Molly Carpenter with a value of approximately $430,780. There is probable cause that judgment will be granted in Universitas' favor on the relevant claims in an amount significantly exceeding the amount sought in this PJR Application.

The District of Connecticut previously found beyond a reasonable doubt that Daniel Carpenter controlled hundreds of corporate entities from his offices at Benistar Plaza that he operated as part of a criminal conspiracy to, *inter alia*, fraudulently defalcate Universitas' money and launder these proceeds. *See Carpenter*, 190 F. Supp. 3d 260. Courts have consistently found that Mr. Carpenter controlled a vast network of companies from his offices at Benistar Plaza that he operated as a single business entity to personally enrich himself and his associates to the detriment of creditors. Courts are also in agreement that Benistar constituent entities are operated such that they have no independence from one another, and that the interests of some entities can be and have been subordinated to the interests of others.

    i. <u>Universitas is Likely to Succeed on its Alter Ego Claims.</u>

Alter ego determinations are made in accordance with the law of the state of incorporation. *Wells Fargo Bank, N.A. v. Konover*, Case No. 3:05-cv01924 (CFD), 2011 U.S. Dist. LEXIS 32079,

at *19 n. 21 (D. Conn. Mar. 28, 2011). The relevant entities for purposes of this PJR App. are Moonstone, BASI, and GM Partners. All three of these entities are Delaware entities.[2] (*See* PJR App. Exs. 37, 45-46.) An alter ego finding under Delaware law, which permits courts to pierce the corporate veil, requires that: (i) the dominant shareholder and corporation are operated as a single economic entity, and (ii) an overall element of fraud, injustice, or unfairness is present. *Martin Hilti Family v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 355 (S.D.N.Y. 2019) (citations omitted). A single economic entity exists when a company is subjected to such "exclusive domination and control" that it has no independent significance of its own. *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). Factors relevant to this determination include: (i) adequate capitalization, (ii) solvency, (iii) dividend payments, (iv) adequacy of corporate records, (v) observance of corporate formalities, (vi) independence of officers and directors, (vii) whether the dominant shareholder siphoned funds, and (ix) whether the corporation generally functioned as façade for the dominant shareholder. *Fletcher v. Atex*, 68 F.3d 1451, 1458 (2d Cir. 1995) (citations omitted).

Under Delaware law, alter ego liability can be subject to issue preclusion, even when the proceeding involves different plaintiffs in an unrelated proceeding. *See In re Kilroy*, 357 B.R. 411, 426-28 (Bankr. S.D. Tex. 2006) ("[T]his Court, under Delaware offensive collateral estoppel, can-and-does hold that the Debtor is estopped from denying that [company] is his alter ego."); *see also Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 625-26 (D. Del. 2018) (explaining that an alter ego finding is beneficial to all creditors because all creditors can subsequently recover from the debtors' alter ego, who is collaterally estopped from disputing alter ego liability).

---

[2] Delaware law permits courts to reverse pierce the corporate veil and allow judgment creditors to pierce the corporate veil in order to satisfy their judgment with corporate assets when the corporation is an alter ego of a judgment debtor. *See Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 385-88 (4th Cir. 2018).

There is probable cause to believe that GM Partners is an alter ego of Daniel Carpenter. All judgment debtors operated from Benistar Plaza. (Chernow Aff. ¶ 58.) GM Partners operated from this same address. (*See* PJR App. Ex. 35.) GM Partners used the phone number (860) 408-7000. (*See* PJR App. Ex. 35.) This phone number was shared by numerous judgment debtors. (*See* PJR App. Exs. 38-40, 43-44.) Mr. Carpenter holds his property in trusts and LLCs in order to shield and/or conceal his property from his creditors. (*See* PJR App. Ex. 8.) GM Partners owns Benistar Plaza. (*See* PJR App. Ex. 17.) Mr. Carpenter clearly considers Benistar Plaza to be "**his**" property, not the property of GM Partners. (*See* PJR App. Ex. 21 ¶¶ 20, 23, 25, 28.) Daniel Carpenter controls GM Partners, (*see* PJR App. Ex. 17,) and is a signatory on its bank accounts. (*See* PJR App. Ex. 35.) Thus, there is probable cause to believe Universitas' claim that GM Partners is a shell company designed to conceal and/or shield Mr. Carpenter's assets from his creditors, which in turn would render GM Partners an alter ego of Daniel Carpenter. *See Martin v. D.B. Martin Co.*, 88 A. 612, 614-16 (Del. Ch. 1913) (explaining that Delaware law prohibits use of the corporate form to shield assets from creditors); *see also Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 (D. Del. 1989) (explaining that use of corporation to defraud creditors satisfies the requisite element of unfairness).

There is also probable cause to believe that Molly Carpenter is liable for the judgment against her husband through alter ego liability. Mrs. Carpenter listed Benistar Plaza as both her residence and her business address. (*See* PJR App. Ex. 37.) All judgment debtors operated from Benistar Plaza. (Chernow Aff. ¶ 58.) Benistar Plaza was the site of a criminal conspiracy to, *inter alia*, fraudulently defalcate money from Universitas money and launder these proceeds. *See Carpenter*, 190 F. Supp. 3d 260. Judgment Debtors GMC, Avon, COT, and Grist Mill Trust were part of this conspiracy. *See id.* BASI was also part of this same conspiracy. *See id.* BASI operated

from Benistar Plaza, (*see* PJR App. Ex. 37,) and used the phone number (860) 408-7000. (*See* PJR App. Ex. 36.) Numerous judgment debtors shared this phone number, (*see* PJR App. Exs. 39-40, 44,) including the judgment debtors operating in the same criminal conspiracy as BASI. (*See* PJR App. Exs. 38, 43.) Moonstone also operated from Benistar Plaza and used the phone number (860) 408-7000. (*See* PJR App. Ex. 41.)

Mrs. Carpenter is the Chairman and sole Director of BASI, (*see* PJR App. Ex. 37,) and BASI is an alter ego of Mrs. Carpenter. *See Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*, Case No. 01-0116BLS2 (Mass. Super. Ct. Sep. 23, 2003). BASI is also an alter ego of Daniel Carpenter. *See Iantosca v. Benistar Admin Services, Inc.*, Case No. 08-cv-11785 (NMG) (D. Mass. June 21, 2013); *Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*, Case No. 01-0116BLS2 (Mass. Super. Ct. Sep. 23, 2003). Consequently, there is probable cause to support Universitas' claim that BASI is an alter ego of Daniel Carpenter, and that in turn, Molly Carpenter is an alter ego of BASI. *See In re Kilroy*, 357 B.R. at 426-28. Mrs. Carpenter is therefore liable for the judgment against her husband on the basis of alter ego liability.

Mrs. Carpenter is a Member of Moonstone and owns ninety-nine percent of Moonstone. (*See* PJR App. Ex. 46.) Mr. Carpenter caused $1.1 million of the money stolen from Universitas to be transferred to Moonstone, which in turn used $1.04 million of the stolen Universitas money to purchase the Carpenter vacation property. *See Carpenter*, 190 F. Supp. 3d at 296. Moonstone used the remaining stolen funds to, *inter alia*, pay Mrs. Carpenter's personal credit card bills. (*See* PJR App. Ex. 18;) *see also Fletcher*, 68 F.3d at 1458 (providing that siphoning funds to dominant shareholder is evidence of alter ego). The series of transfers conveying stolen Universitas money to Moonstone was the basis for thirteen counts in Mr. Carpenter's conviction. *See Carpenter*, 190 F. Supp. 3d at 300-01. Every transaction in this series of transactions was found to be fraudulent,

including Moonstone's acquisition of the Carpenter vacation property. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803 at *11-*12, *39. Moonstone is a shell company created to hold title to the Carpenter family vacation property so that the property was shielded from Mr. Carpenter's personal creditors. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803 at *18, *27. Accordingly, there is probable cause to believe Universitas' claim that Moonstone is an alter ego of Daniel Carpenter, and that in turn, Molly Carpenter is an alter ego of Moonstone, and thus Mrs. Carpenter is liable for the judgment against her husband on the basis of alter ego liability. *See Harrison*, 320 F. Supp. 3d at 614 (explaining that a company is an alter ego if it is a shell company that exists for no reason other than as a vehicle for fraud); *see also Mobil Oil*, 718 F. Supp. at 269.

ii. <u>Universitas is Likely to Succeed on its Constructive Trust Claim.</u>

Judgment creditors may invoke the constructive trust doctrine to reach property that the judgment debtor has placed in the name of a third party with whom the debtor has a confidential relationship while the debtor retains beneficial ownership in the property and that results in the avoidance of the debt. *See New Falls Corp. v. O'Brien*, Case No. 01-cv-807193, 2005 Conn. Super. LEXIS 857, at *11 (Super. Ct. Mar. 23, 2005) (citations omitted). A confidential relationship includes situations where one party is dominated by another and/or is a legal fiduciary. *See Starzec v. Kida*, 183 Conn. 41, 43 n. 1 (1981). An individual who owns and/or controls a corporate entity holding legal title to property is a beneficiary owner of that property. *See Success, Inc. v. Curcio*, 124 A.3d 563, 567 n. 5 (Conn. App. 2015).

There is probable cause to believe Universitas' claim that it can impose a constructive trust upon GM Partners to enforce its judgment upon Benistar Plaza. Daniel Carpenter placed the entirety of his personal assets in LLCs and trusts in order to conceal and/or shield these assets from his creditors. (*See* PJR App. Ex. 8.) Mr. Carpenter performed these transfers as part of a conscious

11

effort to render himself "judgment proof." (*See* PJR App. Ex. 20.) GM Partners owns Benistar Plaza. (*See* PJR App. Ex. 33.) Daniel Carpenter clearly considers Benistar Plaza to be "**his**" property, not GM Partners' property. (*See* PJR App. Ex. 21 ¶¶ 20, 23, 25, 28.) Daniel Carpenter controls GM Partners, (*see* PJR App. Ex. 17,) and thus is a beneficiary owner of Benistar Plaza. *See Success*, 124 A.3d at 567 n. 5. Daniel Carpenter is the managing member of GM Partners, (*see* PJR App. Ex. 47,) and thus owes a fiduciary duty to GM Partners. *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012) (explaining that managing members of Delaware LLCs owe fiduciary duty to LLC). In turn, Mr. Carpenter has a confidential relationship with GM Partners. *See Starzec*, 183 Conn. at 43 n. 1. In summation, Mr. Carpenter caused GM Partners to own Benistar Plaza in order to conceal and/or shield Benistar Plaza from his creditors, treats Benistar Plaza as his personal property, maintains a confidential relationship with GM Partners, and is a beneficial owner of Benistar Plaza. Accordingly, there is probable cause to believe that Universitas will be entitled to invoke the doctrine of constructive trust and enforce its judgment upon Benistar Plaza. *See New Falls Corp.*, 2005 Conn. Super. LEXIS 857 at *11.

### III. DEFENDANTS SHOULD DISCLOSE THEIR ASSETS

Plaintiffs can attach a motion to disclose property to a PJR Applicaton and ask the court to order defendants to disclose property in which they have an interest sufficient to satisfy a prejudgment remedy. *See* Conn. Gen. Stat. § 52-278n(a). The court should grant the motion to disclose property if the plaintiff has demonstrated the probable cause necessary to grant the PJR Application. *See* Conn. Gen. Stat. § 52-278n(c). As set forth above, Universitas is entitled to a PJR because there is probable cause that judgment will be entered in Universitas' favor. *See* § II, *infra.* As such, in conjunction with the issuance of the PJR, the Court should also order defendants to disclose the nature and extent of their assets in an amount sufficient to satisfy the PJR.

## IV. CONCLUSION

The Court should grant Universitas' PJR Application in the amount of $2,830,730, and further grant Universitas' motion to disclose property. There is probable cause that Universitas will obtain a judgment approximating $26 million, and the requested attachment should be granted to secure such a judgment.

Dated:  New Haven, CT
        June 1, 2020

PLAINTIFF UNIVERSITAS EDUCATION, LLC,

By: /s/ Michael G. Caldwell          /
Ilan Markus, ct 26345
Michael G. Caldwell, ct 26561
Barclay Damon, L.P.
545 Long Wharf Drive
New Haven, CT 06511
Ph. (203) 672-2658
Fax (203) 654-3265
IMarkus@barclaydamon.com

*Pro Hac Motion to Be Filed:*
Joseph L. Manson III
Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
Tel. 202-674-1450
Em. jmanson@jmansonlaw.com

*Its Attorneys*