# EXHIBIT 11

Subj:     **RE: Attorney-Client Communication-Re: Moonstone**
Date:     3/2/2013 10:28:04 A.M. Eastern Standard Time
From:     dcarpenter@usbgi.com
To:       TonySiano@aol.com, cbernsteinesq@gmail.com, mjb@briefjustice.com, labelle@halloran-sage.com, rbrown@bpslawyers.com, MCGRATH@halloran-sage.com

Tony:

Thanks for your email.......I will help you to put together a timeline so everyóne realizes that the Carpenters contracted to buy Moonstone before COT even received the Lincoln proceeds.......and almost a year before Univ filed a claim and well before the Arbitration.....much less the judgment of 2012 that we are fighting.....none of these new parties listed are judgment creditors of Univ....or have anything to do with COT......

Please take care of your other clients and I will keep feeding you information......I will also point out exhibits that blow their case apart

Despite LaBelle being a worry wart......Grist Mill HOLDINGS received between $6-9 Million in Commissions meant for me......and no one else......I lent that money to GMC for the purchase of policies......GMC as well as other entities still owe Holdings a ton of money .....GMC has only paid back a fraction of what is owed to Holdings

Let us assume the money for Hanover Trust came from Holdings.......what difference does it make??? Neither is a judgment debtor of Univ and the transaction was done long before Univ ever made a claim or filed anything with the COT.....well before Loeb was even involved......and if Holdings earned $6MM in commissions and they have one payment from GMC to Holdings of $1.2MM and there are MORE payments from Holdings to GMC than from GMC to Holdings......isn't it easy to say the money was NOT attributable to the Lincoln proceeds.....which we had to sue Lincoln for and did not receive until we were already under contract for Moonstone....

Holdings is owned by a group of Charitable Remainder Trusts and has no relation to GMC or COT or Avon Capital......and yet they include extraneous emails where we are fighting with Bank of A......after being thrown out of BOA.... that Avon Capital did $20MM in transactions with BOA.....none of which had anything to do with COT or Ridgewood etc etc But it shows why we had to start opening so many new accounts at TD.....because we were thrown out of BOA.......and June 8 2010 we would be thrown out of TD.......

WADR for Dan LaBelle......the Reyhani exhibits show that the Carpenter family of companies had more than enough wherewithal to finance the purchase of a Million dollar house......which we AGREED to purchase 3 months before the SETTLEMENT with Lincoln Life was even entered into.....remember we had Halloran suing Lincoln for more than a year to get the Sash Spencer proceeds.....

I will help you to put together a timeline.....plus Reyhani Exhibits to hoist them on their own petards .......and just so you know.....your client was the most successful agent in the history of the insurance business and there is rumored to be tens of millions of dollars in the cash value of life insurance policies held in the Carpenter family charitable trusts......which I will neither confirm nor deny......but when you have been fighting the most powerful nation on Earth for more than a decade and have had your bank accounts frozen.....your bank accounts and tax refunds seized. . .and your office violated not once but twice by that same government.....you do things that ordinary citizens don't do........I know exactly where all the money comes from and goes to and I have accounted for everything to the penny......and Moonstone did not come from the Sash Spencer death proceeds......believe Reyhani or believe me......Dan LaBelle doubts everything I say.....but his job is to protect Molly....and Bill McGrath knows that every word I speak is the truth because I always end up having to back it up......ask Dick Brown how many times we have had that conversation that no one believes me.......My companies.....and me..... have been audited 6 times in the past ten years . ..all received "No Change" letters and tax refunds....

In any event I see Monday as a great time for a dress rehearsal for a future contempt hearing.....and if we embarrass them here and now....there will be no contempt hearing. .....ever......

Let me know what you need for Monday.....and help your other clients ... we will get you loaded for

60

JLM020905

bear......

Thanks,

Dan

From: TonySiano@aol.com [mailto:TonySiano@aol.com]
Sent: Saturday, March 02, 2013 8:40 AM
To: DCarpenter US Benefits; cbernsteinesq@gmail.com; mjb@briefjustice.com; labelle@halloran-sage.com; rbrown@bpslawyers.com
Subject: Attorney-Client Communication-Re: House

Dan:

Yes.

Yes, Matt will be there. I will be there and Dan LaBelle will be there.

I think that is enough lawyers for a hearing I tried to avoid having.

Carole needs to be in Meriden (along with Ira and Mr. Goldman). That is of critical importance.

I am engaged with a personal matter this morning and am working on another matter Saturday afternoon and all day Sunday. Frankly, that client had her meetings with me for last week postponed until the weekend and are non-moveable.

I was on trial Thursday and Friday and got back to my office about 4:30 pm yesterday. I then saw that the papers filed by the creditor's attorneys are different from those sent to you and me on Tuesday.

I will review them today, probably tonight. Dan LaBelle informs me that their papers include a paper trail regarding the Universitas money from COT through two Grist Mill entities to Hanover Bank Trust. What he told me was a bit disturbing since on Wednesday you pointed me at the Hanover Trust as the source of the money.

Needless to say, if this is so, the entire effort I made on Wednesday to put forward what you told me--i.e. that the money used to buy the house was independent of the Spencer insurance proceeds--now appears to have been a waste of time and a dissipation of my credibility.

In one of your e-mails last week you wrote that the creditor's counsel didn't know where the money came form and that ONLY you know where the money for the house came from. Perhaps it is now time for you to share the full details of that transaction with your attorney.

I will not be reachable until about 1:00 pm today.

Again, counsel will be present for the hearing.

AJ Siano

In a message dated 3/2/2013 6:49:42 A.M. Eastern Standard Time, dcarpenter@usbgi.com writes:

> Tony:
>
> Are you on top of this????
>
> Should we have Matt and Ira there as well???
>
> None of these parties are judgment debtors.........do they need to post a bond?????
>
> How do you want to handle???? Molly and I can be there if you want ......or is it better that we just have you point out lies in BR memo of law......prefer not to be there so judge does not ask: "SO

JLM020906

WHERE"S THE MONEY??????"   see high shrill shriek with your own imagination......

Let's go after these guys with extreme prejudice.....

The Client

From: RobinsonEsq@aol.com [RobinsonEsq@aol.com]
Sent: Friday, March 01, 2013 9:31 PM
To: DCarpenter US Benefits; Molly Carpenter; Wayne Bursey; Don Trudeau
Subject: Fwd: Universitas v. Nova - OSC and TRO Papers (Email 2 of 2) [Hearing Schedul...

From: bryan@rnlawfirm.com
To: labelle@halloran-sage.com, tonysiano@aol.com, pcolbath@loeb.com, robinsonesq@aol.com,
ik@briefjustice.com, mjb@briefjustice.com, usaaclaims16841@usaa.com
Sent: 3/1/2013 1:29:39 P.M. Eastern Standard Time
Subj: Re: Universitas v. Nova - OSC and TRO Papers (Email 2 of 2) [Hearing Scheduled]

All:

Please be advised that Judge Swain will hear the TRO this Monday, March 4, at 10:00am.

Thank you.

Bryan I. Reyhani

[cid:X.MA1.1362191489@aol.com]
200 Park Ave., FL 17 | New York, NY 10166
Direct: (212) 897-4022 | Cell: (917) 748-6580
Main: (212) 897-4030 | Fax: (212) 897-4031
bryan@mlawfirm.com<mailto:bryan@rnlawfirm.com> | mlawfirm.com<http://rnlawfirm.com/>

On Feb 28, 2013, at 7:58 PM, Bryan Reyhani <bryan@mlawfirm.com<mailto:bryan@mlawfirm.com>>
wrote:

All:

Per the prior email, attached are the referenced exhibits.

Thank you.

Bryan I. Reyhani

<image001.png>

200 Park Ave., FL 17 | New York, NY 10166
Direct: (212) 897-4022 | Cell: (917) 748-6580
Main: (212) 897-4030 | Fax: (212) 897-4031
bryan@rnlawfirm.com<mailto:bryan@mlawfirm.com> | mlawfirm.com<http://rnlawfirm.com/>

<universitas - usaa exhibits.pdf>

Confidentiality Notice: The information in this email (including attachments, if any) is considered
confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure,
distribution or copying this email is prohibited except by or on behalf of the intended recipient. If you
have received this email in error, please notify me immediately by reply email, delete this email, and do
not disclose its contents to anyone.

JLM020907

# EXHIBIT 12

## Matthew J. Brief

**From:** DCarpenter US Benefits [dcarpenter@usbgi.com]

**Sent:** Tuesday, October 15, 2013 7:09 PM

**To:** 'ik@briefjustice.com'; TonySiano@aol.com; cbernsteinesq@gmail.com; gduhl@siegeloconnor.com; iabelle@halloran-sage.com; Matthew J. Brief

**Cc:** DCarpenter US Benefits

**Subject:** RE: Statements

Ira:

With all due respect.....Dan Carpenter will not be depositing anything into any Court......Unlike you, I have read the Constitution many times.....and one reason people use CRTs is because money in them is secure from the hands of creditors......and there has been no due process on the CRT or jurisdiction established under International Shoe, much less any "fraudulent conveyance" action established....so we will not be contributing any money anywhere anytime soon.....

If you are looking to ANY CARPENTER ENTITY to turn over money to the Court.....you must have been sleeping through the Columbus Day meeting that we had. I am shocked and appalled by your Point 3 below .... still cannot get over it. What were you thinking?????

I know you live in fear of Judge Swain.....but I don't. ...and I would suggest that you do not send in copies of Grist Mill Trust bank statements or the extraneous pages until asked to do so by the Judge. Rather....say you talked to counsel and he says he is not a transferee and so will not be turning anything over. ....

Money to CRT came through GM Holdings which got money from GMC.......do not submit ANY of my entity bank documents to anyone without my express written permission. You asked to SEE them....you have now seen them, and you can report there is no money there.....and no one is willing to turn it over to you if there was.

Now that the case against DEC has begun.... please suggest that there is no reason for Nova to be involved anymore....the sanctions order is being appealed and there is nothing more that you can do......BECAUSE the money was GONE 4 years ago and Colbath knew it......for once, please put that in your letter to the Judge.....Colbath had all the bank statements.....and she knew the money was gone 4 years ago.....and SHE dismissed DEC and GMC from Arbitration.....please put that in the letter as well.......and the Statute of Limitations on CT fraudulent conveyance actions is 4 years......same with Delaware and RI..... not that Colbath can prove any of the FOUR necessary elements that she needs to prove once she makes the allegations which I have not seen yet.....have you. Please send me copy of letter to Judge so that I can help you with it.......and could be perfect timing for you guys to ask the Court for permission to leave instead of you asking for Carpenter to turn over money to the Court. Seriously......I really cannot get over your points below.

Thanks,

Dan

---

**From:** Ira Kleiman [mailto:ik@briefjustice.com]
**Sent:** Tuesday, October 15, 2013 6:27 PM
**To:** TonySiano@aol.com; cbernsteinesq@gmail.com; gduhl@siegeloconnor.com; iabelle@halloran-sage.com; Matthew J. Brief
**Cc:** DCarpenter US Benefits; Molly Carpenter
**Subject:** Statements

Attached are the statements Molly sent over, which date from May through September. A few observations:

1.     The Phoenix statements stop in March when, I am advised, the account was closed.

2.     The GMT statements end with $94,000, but show a deposit and payment of $2M. Obviously, this is a

11/5/2013

JLM032336

death benefit payment, but that will have to be explained, along with why GMT should not be included at all.

3.     The CRT statements show a consistent balance of close to $50,000. While may be negative tax implications of removing these monies, in view of the $200K deposit from the Spencer proceeds into this account, I don't see how we can avoid depositing this money into Court.

4.     The Avon statements show consistent negligible activity.

5.     The CFG statements end with $15,000, and show consistent in and out activity. This will have to be explained in our letter in order to avoid the suggestion that whatever is in the Account should be deposited. Dan (Carpenter) I will need to get a more detailed explanation as to the uses of this account. (I believe you use it for payroll and that the source of the funds are commissions. )

6.     The GMC statements show negligible activity.

I will work on and circulate a draft letter to the Court in the AM.

ira

Ira Kleiman, Esq.
Brief Carmen & Kleiman, LLP
805 Third Avenue, 12th Floor
New York, NY 10022
Tel. 212-758-6160
Fax 212-832-1747
ik@briefjustice.com

27
DEC15

JLM032337

# EXHIBIT 13

# TD Bank

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

GRIST MILL HOLDINGS LLC
100 GRIST MILL ROAD
SIMSBURY CT 06070

Page: 1 of 4
Statement Period: Nov 01 2009-Nov 30 2009
Cust Ref #: [redacted]7136-720-T-###
Primary Account #: [redacted]7136

## REG GG/INTERNET GAMBLING NOTIFICATION

PURSUANT TO THE UNLAWFUL INTERNET GAMBLING ENFORCEMENT ACT OF 2006 AND REGULATION GG, "RESTRICTED TRANSACTIONS" SUCH AS THOSE IN WHICH A PERSON ACCEPTS CREDIT, FUNDS, INSTRUMENTS OR OTHER PROCEEDS FROM ANOTHER PERSON IN CONNECTION WITH UNLAWFUL INTERNET GAMBLING ARE PROHIBITED FROM BEING PROCESSED THROUGH YOUR ACCOUNT OR RELATIONSHIP WITH OUR INSTITUTION.

Business Convenience Checking
GRIST MILL HOLDINGS LLC

Account # [redacted]7136

## THE PERFECT GIFT FOR EMPLOYEES AND CUSTOMERS!

GIVE THE TD BANK VISA GIFT CARD. YOU CHOOSE THE AMOUNT AND THEY DECIDE WHERE TO USE IT. AVAILABLE FROM $25-$500. BULK ORDERS AND FREE PERSONALIZATION WITH YOUR BUSINESS NAME WHEN YOU PURCHASE 25 CARDS OR MORE. NO PURCHASE FEE FOR CUSTOMERS. ASK FOR IT TODAY AT ANY TD BANK OR CALL 1-888-751-9000.

### ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 16,724,493.35 | Average Collected Balance | 7,029,079.17 |
| Deposits | 69,380.68 | | |
| Electronic Payments | 4,140,000.00 | | |
| Other Withdrawals | 11,220,230.92 | | |
| Ending Balance | 1,433,643.11 | | |

### DAILY ACCOUNT ACTIVITY

**Deposits**

| POSTING DATE | DESCRIPTION | SERIAL NO. | AMOUNT |
|---|---|---|---|
| 11/3 | DEPOSIT | | 2,310.50 |
| 11/12 | DEPOSIT | | 45,660.58 |
| 11/24 | DEPOSIT | | 21,409.60 |
| | | Subtotal: | 69,380.68 |

**Electronic Payments**

| POSTING DATE | DESCRIPTION | SERIAL NO. | AMOUNT |
|---|---|---|---|
| 11/12 | eTransfer Debit<br>Online Xfer<br>Transfer to CK[redacted]697 | | 4,140,000.00 |
| | | Subtotal: | 4,140,000.00 |

**Other Withdrawals**

| POSTING DATE | DESCRIPTION | SERIAL NO. | AMOUNT |
|---|---|---|---|
| 11/2 | WIRE TRANSFER OUTGOING<br>Alliance Charitable Remainder Trust | | 10,000.00 |
| 11/2 | WIRE TRANSFER FEE | | 15.00 |

Call 1-800-YES-2000 for 24-hour Direct Banking service

Begin by adjusting your account register as follows:

- Subtract any services charges shown on this statement.

- Subtract any automatic payments, transfers or other electronic withdrawals not previously recorded.

- Add any interest earned if you have an interest-bearing account.

- Add any automatic deposit or overdraft line of credit.

- Review all withdrawals shown on this statement and check them off in your account register.

- Follow instructions 2-5 to verify your ending account balance.

1. Your ending balance shown on this statement is:

2. List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

3. Subtotal by adding lines 1 and 2.

4. List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

5. Subtract Line 4 from 3. This adjusted balance should equal your account balance.

| | |
|---|---|
| ❶ Ending Balance | $433,643.11 |
| ❷ Total Deposits | |
| ❸ Subtotal | |
| ❹ Total Withdrawals | |
| ❺ Adjusted Balance | |

| ❷ DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Total Deposits ❷ | | |

| ❹ WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Total Withdrawals ❹ | | |

**FOR CONSUMER ACCOUNTS ONLY   IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

If you need information about an electronic fund transfer or if you believe there is an error on your bank statement or receipt relating to an electronic fund tnsfer, telephone the bank immediately at the phone number listed on the front of your statement or write to

TD Bank,N .A., Deposit Operations Dept,P O B ox 1377,L ewiston,M aine 04243-1377

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared. When contacting the Bank, please explain as clearly as you can why you believe there is an error or why more information is needed. Please include:

- Your name and account number
- A description of the error or transaction you are unsure about.
- The dollar amount and date of the suspected error

When making a verbal inquiry the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error, so that you have the use of the money during the time it takes to complete our investigation.

**INTEREST NOTICE**

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

**FOR CONSUMER LOAN ACCOUNTS ONLY   BILLING RIGHTS SUMMARY**

In case of Errors or Questions About Your Bill:

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible We must hear from you no later than sixty (60) days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights in your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error
- Describe the error and explain  if you can, why you believe there is an error If you need more information  describe the item you are unsure about

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

FINANCE CHARGES: Although the Bank uses the Daily Balance method to calculate the finance charge on your MoneyLine/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge.  The finance charge begins to accrue on the date advances and other debits are posted to your account and will continue until the balance has been paid in full.  To compute the finance charge, multiply the Average Daily Balance times the Days in Period times the Daily Periodic Rate (as listed in the Account Summary section on the front of the statement).  The Average Daily Balance is calculated by adding the balance for each day of the billing cycle, then dividing the total balance by the number of Days in the Billing Cycle.  The daily balance is the balance for the day after advances have been added and payments or credits have been subtracted plus or minus any other adjustments that might have occurred that day.  There is no grace period during which no finance charge accrues.  Finance charge adjustments are included in your total finance charge.


**Bank**

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

GRIST MILL HOLDINGS LLC

Page: 3 of 4
Statement Period: Nov 01 2009-Nov 30 2009
Cust Ref #:                    7136-720-T-###
Primary Account #:              7136

---

## DAILY ACCOUNT ACTIVITY

**Other Withdrawals (continued)**

| POSTING DATE | DESCRIPTION | SERIAL NO. | AMOUNT |
|---|---|---|---|
| 11/12 | DEBIT | | 6,710,065.92 |
| 11/12 | DEBIT | | 1,000,000.00 |
| 11/12 | DEBIT | | 1,000,000.00 |
| 11/12 | DEBIT | | 750,000.00 |
| 11/12 | WIRE TRANSFER OUTGOING | | 250,000.00 |
| | Avon Charitable Remainder Trust | | |
| 11/12 | WIRE TRANSFER OUTGOING | | 250,000.00 |
| | Phoenix Charitable Remainder Trust | | |
| 11/12 | WIRE TRANSFER OUTGOING | | 250,000.00 |
| | Alliance Charitable Remainder Trust | | |
| 11/12 | WIRE TRANSFER OUTGOING | | 250,000.00 |
| | Atlantic Charitable Remainder Trust | | |
| 11/12 | WIRE TRANSFER OUTGOING | | 250,000.00 |
| | Carpenter Charitable Remainder Trst | | |
| 11/12 | WIRE TRANSFER OUTGOING | | 100,000.00 |
| | Avon Charitable Remainder Trust | | |
| 11/12 | WIRE TRANSFER OUTGOING | | 100,000.00 |
| | Atlantic Charitable Remainder Trust | | |
| 11/12 | WIRE TRANSFER OUTGOING | | 100,000.00 |
| | Carpenter Charitable Remainder Trst | | |
| 11/12 | WIRE TRANSFER OUTGOING | | 100,000.00 |
| | Phoenix Charitable Remainder Trust | | |
| 11/12 | WIRE TRANSFER OUTGOING | | 100,000.00 |
| | Alliance Charitable Remainder Trust | | |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| 11/12 | WIRE TRANSFER FEE | | 15.00 |
| | | Subtotal: | 11,220,230.92 |

## DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 10/31 | 16,724,493.35 | 11/3 | 16,716,788.85 |
| 11/2 | 16,714,478.35 | 11/12 | 1,412,233.51 |

Call 1-800-YES-2000 for 24-hour Direct Banking service

BANK DEPOSITS FDIC INSURED     ©     WWW.TDBANK.COM



**Bank**

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

GRIST MILL HOLDINGS LLC

---

DAILY BALANCE SUMMARY

| DATE | BALANCE |
|------|---------|
| 11/24 | 1,433,643.11 |

---

BANK DEPOSITS FDIC INSURED                WWW.TDBANK.COM        

JLM025324

# EXHIBIT 14

## Matthew J. Brief

**From:** DCarpenter US Benefits [dcarpenter@usbgi.com]
**Sent:** Wednesday, October 16, 2013 6:22 PM
**To:** 'mjb@briefjustice.com'
**Cc:** TonySiano@aol.com; 'Carole Bernstein'; gduhl@siegeloconnor.com; 'LaBelle, Dan E.'; Ira Kleiman

**Subject:** RE: Response

Matt:

Really not impressed with the way you guys practice law.....hope you are happy that you had Molly in tears all day. Let me know if you know of any attorneys in NYC that are truly client advocates......And on Monday you said that you had no idea what the Judge meant by "transferee entity".....but if you are now certain that the Charitable Remainder Trust is one or Grist Mill Trust is one.....then please turn over to the Court all of the money you and Tony were paid because it came from the same Grist Mill Capital account that all of the other alleged "transferees" were paid from....so why don't you show some good faith and turn over your money to the Court as a "sign of good faith"??? I will of course be happy to deposit your outstanding bills to the Court and if you are right..... then you will get your money back, someday.   is that not the advice that you are giving me????

Please do not bother sending any letter to the court if it is just to criticize us.......been there done that.....please give us time to find good legal counsel that puts the welfare of the client above their own petty interests  I would never want to embarrass you by not obeying a court order.  Heaven forbid.

Thanks

Dan

---

**From:** Matthew J. Brief [mailto:mjb@briefjustice.com]
**Sent:** Wednesday, October 16, 2013 12:38 PM
**To:** DCarpenter US Benefits; Molly Carpenter
**Cc:** TonySiano@aol.com; 'Carole Bernstein'; gduhl@siegeloconnor.com; 'LaBelle, Dan E.'; Ira Kleiman
**Subject:** RE: Response

Hi Dan. We understand your position (I assume you also will not authorize the production of bank statements) but will await your response. It seems that we're at a final impasse.
Our letter would be pointless given the divergence of viewpoint so perhaps you should draft one. It will have to be for your signature.
Ira and I will undertake the appropriate measures to withdraw. Since it is probable that we cannot follow your instructions should we cite termination among the reasons for our withdrawal?
Again, we'll await your response later but I think we have to move on. We do wish you the best under trying circumstances.

---

**From:** DCarpenter US Benefits [mailto:dcarpenter@usbgi.com]
**Sent:** Wednesday, October 16, 2013 12:24 PM
**To:** 'mjb@briefjustice.com'; Molly Carpenter; DCarpenter US Benefits
**Cc:** TonySiano@aol.com; 'Carole Bernstein'; gduhl@siegeloconnor.com; 'LaBelle, Dan E.'; Ira Kleiman
**Subject:** RE: Response

Matt.

Totally disagree with your letter.... and I will respond at length...later

You are wrong on 6 separate points

But no money will be deposited with the Court from any company or entity that I control

34
DEC15

JLM032344

# EXHIBIT 15

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____

JOSEPH IANTOSCA, et al.,          )
                                  )
     Plaintiffs,                  )08-11785-NMG
                                  )
v.                                )
                                  )
BENISTAR ADMIN SERVICES, INC.,)
et al.,                           )
                                  )
     Defendants,                  )
v.                                )
                                  )
TRAVELERS INSURANCE COMPANY       )
and UNDERWRITERS AT LLOYDS,       )
LONDON,                           )
                                  )
     Reach and Apply Defendants.)
                                  )
_____

DEPOSITION OF:  DANIEL E. CARPENTER
DATE:           April 6, 2011
TIME:           2:30 p.m.
HELD AT:        Halloran & Sage, LLP
                One Goodwin Square
                225 Asylum Street
                Hartford, Connecticut  06103

By:             Sarah J. Miner, LSR #238
          BRANDON SMITH REPORTING SERVICE
                249 Pearl Street
          Hartford, Connecticut  06103
                (203) 316-8591
                (800)852-4589

Iantosca v. Benistar Admin Services

4/6/2011

Daniel Carpenter

---

### Page 46

```
15:03:47   1   BY MR. EVANS:
15:03:51   2       Q. Why did you choose not to be a plaintiff in
15:03:54   3   the action against John Koresko that was eventually
15:03:58   4   settled in 2008 in Pennsylvania?
15:04:00   5       MR. SILVERSTEIN: Same instruction.
15:04:01   6   BY MR. EVANS:
15:04:01   7       Q. Did you choose not to be a plaintiff so that
15:04:03   8   any settlement proceeds would not be subject to any
15:04:07   9   judgments that were currently outstanding against you?
15:04:11  10       MR. SILVERSTEIN: Same instruction.
15:04:12  11   BY MR. EVANS:
15:04:14  12       Q. Was the decision as to how to allocate the
15:04:17  13   settlement proceeds of the Pennsylvania action taken
15:04:21  14   in order to avoid the Cahaly plaintiffs attempts to
15:04:29  15   collect those settlement proceeds in order to
15:04:33  16   partially satisfy the outstanding judgment that Cahaly
15:04:38  17   plaintiffs held against Benistar companies?
15:04:42  18       MR. SILVERSTEIN: Same instruction.
15:04:43  19   BY MR. EVANS:
15:04:49  20       Q. Are you aware of the existence of any Board
15:04:52  21   of Directors meeting minutes of Benistar Admin
15:04:58  22   Services, Inc.?
15:04:58  23       MR. SILVERSTEIN: Same instruction.
15:04:59  24   BY MR. EVANS:
15:04:59  25       Q. Are you aware of the existence of any Board
```

### Page 47

```
15:05:02   1   of Directors meeting minutes of Step Plan Services,
15:05:05   2   Inc.?
15:05:05   3       MR. SILVERSTEIN: Same instruction.
15:05:06   4   BY MR. EVANS:
15:05:06   5       Q. Are you aware of any Board of Directors
15:05:08   6   meeting minutes of Benistar 419 Plan services, Inc.?
15:05:13   7       MR. SILVERSTEIN: Same instruction.
15:05:14   8   BY MR. EVANS:
15:05:15   9       Q. Are you aware of Board of Directors meeting
15:05:17  10   minutes of Benistar, Ltd.?
15:05:25  11       MR. SILVERSTEIN: Same instruction.
15:05:26  12   BY MR. EVANS:
15:05:26  13       Q. Are you aware of the existence or location of
15:05:29  14   Board of Directors meeting minutes of Benistar Group,
15:05:32  15   Ltd.?
15:05:33  16       MR. SILVERSTEIN: Same instruction.
15:05:34  17   BY MR. EVANS:
15:05:38  18       Q. To your knowledge, does Jack Robinson know
15:05:42  19   who owns Benistar Group, Ltd.?
15:05:44  20       MR. SILVERSTEIN: Same instruction.
15:05:46  21   BY MR. EVANS:
15:05:49  22       Q. Have you received any payments from Jack
15:05:55  23   Robinson in the last 10 years?
15:06:00  24       MR. SILVERSTEIN: Same instruction.
15:06:03  25   BY MR. EVANS:
```

### Page 48

```
15:06:03   1       Q. In 2004 did you ask your wife, Molly, to take
15:06:07   2   over management of Benistar Admin Services, Inc., from
15:06:11   3   you?
15:06:12   4       MR. SILVERSTEIN: Same instruction.
15:06:12   5   BY MR. EVANS:
15:06:24   6       Q. Did you sign a release of claims against John
15:06:30   7   Koresko at any time?
15:06:32   8       MR. SILVERSTEIN: Same instruction.
15:06:35   9   BY MR. EVANS:
15:06:58  10       Q. Where did you go high school?
15:06:59  11       A. Avon Old Farms School.
15:07:02  12       Q. Have you set up any charitable trust of which
15:07:06  13   the Avon Old Farms School is a beneficiary?
15:07:09  14       A. Yes.
15:07:09  15       Q. What trust have you set up?
15:07:11  16       A. There is two.  There is a Daniel E. Carpenter
15:07:16  17   Trust, and then there is the Avon Trust.
15:07:21  18       Q. When did you set up that first one?
15:07:23  19       MR. SILVERSTEIN: Same instruction.
15:07:25  20   BY MR. EVANS:
15:07:26  21       Q. When did you set up the second one?
15:07:28  22       MR. SILVERSTEIN: Same instruction.
15:07:29  23   BY MR. EVANS:
15:07:30  24       Q. What assets does that first trust own?
15:07:33  25       MR. SILVERSTEIN: Same instruction.
```

### Page 49

```
15:07:34   1   BY MR. EVANS:
15:07:35   2       Q. What assets does the second trust own?
15:07:37   3       MR. SILVERSTEIN: Same instruction.
15:07:40   4   BY MR. EVANS:
15:07:40   5       Q. Who serves as the trustee of the first trust?
15:07:44   6       MR. SILVERSTEIN: Same instruction.
15:07:45   7   BY MR. EVANS:
15:07:46   8       Q. Who serves as the trustee of the Avon Trust
15:07:49   9   you referred to?
15:07:50  10       MR. SILVERSTEIN: Same instruction.
15:07:51  11   BY MR. EVANS:
15:07:51  12       Q. Where are copies of the trust documents
15:07:54  13   located?
15:07:55  14       MR. SILVERSTEIN: Same instruction.
15:07:55  15   BY MR. EVANS:
15:07:56  16       Q. Who at Avon Old Farms School, if anyone, is
15:08:00  17   aware the school is the beneficiary of those trusts?
15:08:06  18       MR. SILVERSTEIN: Same instruction.
15:08:06  19   BY MR. EVANS:
15:08:06  20       Q. What law firm or lawyer was involved in the
15:08:08  21   formation of the first trust you mentioned?
15:08:11  22       MR. SILVERSTEIN: Same instruction.
15:08:11  23   BY MR. EVANS:
15:08:11  24       Q. What law firm or lawyer was involved in the
15:08:14  25   formation of the Avon trust you mentioned?
```

13  (Pages 46 to 49)

Iantosca v. Benistar Admin Services

4/6/2011                                          Daniel Carpenter

## Page 50

| 15:08:16 | 1 | MR. SILVERSTEIN: Same instruction. |
| 15:08:17 | 2 | BY MR. EVANS: |
| 15:08:17 | 3 | Q. When were those trusts formed? |
| 15:08:19 | 4 | MR. SILVERSTEIN: Same instruction. |
| 15:08:24 | 5 | BY MR. EVANS: |
| 15:08:24 | 6 | Q. Have those trusts made any distributions or |
| 15:08:25 | 7 | payments to the Avon Old Farms School since they were |
| 15:08:29 | 8 | formed? |
| 15:08:29 | 9 | MR. SILVERSTEIN: Same instruction. |
| 15:08:32 | 10 | Q. Is either of those trusts the ultimate owner |
| 15:08:32 | 11 | Q. Is either of those trusts the ultimate owner |
| 15:08:36 | 12 | of Benistar 419 Plan Services, Inc.? |
| 15:08:39 | 13 | MR. SILVERSTEIN: Same instructions. |
| 15:08:40 | 14 | BY MR. EVANS: |
| 15:08:40 | 15 | Q. Is either of those trust the ultimate owner |
| 15:08:42 | 16 | of Step Plan Services, Inc.? |
| 15:08:44 | 17 | MR. SILVERSTEIN: Same instruction. |
| 15:08:45 | 18 | BY MR. EVANS: |
| 15:08:45 | 19 | Q. Has either of those trusts ever owned |
| 15:08:48 | 20 | Benistar, Ltd.? |
| 15:08:50 | 21 | MR. SILVERSTEIN: Same instructions. |
| 15:08:51 | 22 | BY MR. EVANS: |
| 15:08:51 | 23 | Q. Has either of those trusts ever owned |
| 15:08:55 | 24 | Benistar Group, Ltd.? |
| 15:08:58 | 25 | MR. SILVERSTEIN: Same instruction. |

## Page 51

| 15:09:08 | 1 | BY MR. EVANS: |
| 15:09:08 | 2 | Q. Have you used either of those trusts to |
| 15:09:10 | 3 | shield assets of Benistar Admin Services, Inc., from |
| 15:09:17 | 4 | collection by the Cahaly plaintiffs? |
| 15:09:20 | 5 | MR. SILVERSTEIN: Same instruction. |
| 15:09:21 | 6 | BY MR. EVANS: |
| 15:09:21 | 7 | Q. Have you used either of those trusts to |
| 15:09:23 | 8 | shield assets of Benistar 419 Plan Services, Inc., |
| 15:09:26 | 9 | from collection by the Cahaly plaintiffs? |
| 15:09:29 | 10 | MR. SILVERSTEIN: Same instruction. |
| 15:09:30 | 11 | BY MR. EVANS: |
| 15:09:31 | 12 | Q. Have you used either trust to shield your own |
| 15:09:34 | 13 | assets from collection by the Cahaly plaintiffs? |
| 15:09:39 | 14 | MR. SILVERSTEIN: Same instruction. |
| 15:09:41 | 15 | BY MR. EVANS: |
| 15:09:41 | 16 | Q. Have you used either trust to shield assets |
| 15:09:43 | 17 | of Step Plan Services, Inc., from collection by the |
| 15:09:47 | 18 | Cahaly plaintiffs? |
| 15:09:49 | 19 | MR. SILVERSTEIN: Same instructions. I want |
| 15:09:50 | 20 | to take a break. |
| 15:13:09 | 21 | (Off-the-record discussion.) |
| 15:13:23 | 22 | MR. SILVERSTEIN: Same instruction. |
| 15:13:26 | 23 | BY MR. EVANS: |
| 15:13:28 | 24 | Q. Is Benistar 419 Plan Services, Inc., your |
| 15:13:32 | 25 | alter ego? |

## Page 52

| 15:13:34 | 1 | MR. SILVERSTEIN: Same instruction. |
| 15:13:34 | 2 | BY MR. EVANS: |
| 15:13:34 | 3 | Q. Is Step Plan Services, Inc., your alter ego? |
| 15:13:38 | 4 | MR. SILVERSTEIN: Same instruction. |
| 15:13:39 | 5 | BY MR. EVANS: |
| 15:13:39 | 6 | Q. Was Benistar 419 Plan Services, Inc., your |
| 15:13:42 | 7 | alter ego in 2008 when it settled litigation brought |
| 15:13:48 | 8 | against Koresko? |
| 15:13:49 | 9 | MR. SILVERSTEIN: Same instruction plus |
| 15:13:49 | 10 | objection to the last series of questions, called for |
| 15:13:53 | 11 | a legal conclusion. |
| 15:13:54 | 12 | BY MR. EVANS: |
| 15:13:54 | 13 | Q. Was Step Plan Services, Inc., your alter ego |
| 15:13:57 | 14 | in 2008 when it settled claims against John Koresko in |
| 15:14:02 | 15 | Pennsylvania? |
| 15:14:02 | 16 | MR. SILVERSTEIN: Same instruction and same |
| 15:14:03 | 17 | objection. |
| 15:14:04 | 18 | BY MR. EVANS: |
| 15:14:05 | 19 | Q. Was Benistar Admin Services, Inc., your alter |
| 15:14:08 | 20 | ego when it settled litigation against John Koresko in |
| 15:14:10 | 21 | 2008? |
| 15:14:11 | 22 | MR. SILVERSTEIN: Same instruction and same |
| 15:14:13 | 23 | objection. |
| 15:14:13 | 24 | BY MR. EVANS: |
| 15:14:13 | 25 | Q. Was Benistar Admin Services, Inc., your |

## Page 53

| 15:14:17 | 1 | ego in 2008 when it settled litigation against John |
| 15:14:23 | 2 | Koresko? |
| 15:14:24 | 3 | MR. SILVERSTEIN: Same instruction and same |
| 15:14:25 | 4 | objection. |
| 15:14:26 | 5 | BY MR. EVANS: |
| 15:14:26 | 6 | Q. Is Benistar Admin Services, Inc., currently |
| 15:14:29 | 7 | your alter ago? |
| 15:14:34 | 8 | MR. SILVERSTEIN: Same instruction and same |
| 15:14:34 | 9 | objection. |
| 15:14:34 | 10 | BY MR. EVANS: |
| 15:14:36 | 11 | Q. Has Benistar 419 Plan Services, Inc., |
| 15:14:38 | 12 | maintained proper corporate formalities in the last 10 |
| 15:14:42 | 13 | years? |
| 15:14:43 | 14 | MR. SILVERSTEIN: Same instruction and same |
| 15:14:44 | 15 | objection. |
| 15:14:48 | 16 | BY MR. EVANS: |
| 15:14:54 | 17 | Q. In October of 2008, were you knowledgable |
| 15:14:56 | 18 | about the affairs of the Benistar Insurance Group, |
| 15:15:00 | 19 | Inc. |
| 15:15:01 | 20 | MR. SILVERSTEIN: Same instruction. |
| 15:15:02 | 21 | BY MR. EVANS: |
| 15:15:02 | 22 | Q. Have you served as an officer of Benistar |
| 15:15:05 | 23 | Insurance Group, Inc.? |
| 15:15:06 | 24 | MR. SILVERSTEIN: Same instruction. |
| 15:15:14 | 25 | BY MR. EVANS: |

14 (Pages 50 to 53)

Iantosca v. Benistar Admin Services

4/6/2011                                                    Daniel Carpenter

---

### Page 54

15:15:14  1     Q. Does Carpenter Financial Group transact any
15:15:17  2  business in Massachusetts?
15:15:18  3        MR. SILVERSTEIN: Same instruction.
15:15:22  4  BY MR. EVANS:
15:15:22  5     Q. Has Step Plan Services, Inc., contracted to
15:15:25  6  supply services or things in Massachusetts?
15:15:29  7        MR. SILVERSTEIN: Same instruction.
15:15:30  8  BY MR. EVANS:
15:15:32  9     Q. Has Benistar Admin Services, Inc., transacted
15:15:37  10  any business in Massachusetts over the last five
15:15:39  11  years?
15:15:39  12        MR. SILVERSTEIN: Same instruction.
15:15:40  13  BY MR. EVANS:
15:15:41  14     Q. Do any of the plan participants in the
15:15:44  15  Benistar 419 Plan, any of the employers, have
15:15:50  16  corporate offices Massachusetts?
15:15:51  17        MR. SILVERSTEIN: Same instruction.
15:15:52  18  BY MR. EVANS:
15:15:53  19     Q. Do any of employees that are participants in
15:15:56  20  the Step Plan reside in Massachusetts?
15:15:59  21        MR. SILVERSTEIN: Same instruction.
15:16:00  22  BY MR. EVANS:
15:16:15  23     Q. Did Benistar, Ltd., appoint you as an
15:16:18  24  authorized representative in connection in any way
15:16:21  25  with this litigation?

---

### Page 55

15:16:22  1        MR. SILVERSTEIN: Same instruction.
15:16:28  2  BY MR. EVANS:
15:16:28  3     Q. Did Benistar Property Exchange Trust Company,
15:16:32  4  Inc., appoint you as an authorized representative in
15:16:35  5  any capacity in connection with this litigation?
15:16:37  6        MR. SILVERSTEIN: Same instruction.
15:16:40  7  BY MR. EVANS:
15:16:40  8     Q. Did Step Plan Services, Inc., appoint you as
15:16:44  9  its authorized representative in connection with this
15:16:47  10  litigation in any way?
15:16:48  11        MR. SILVERSTEIN: Same instruction.
15:16:49  12  BY MR. EVANS:
15:16:49  13     Q. Did Benistar 419 Plan Services, Inc., appoint
15:16:52  14  you as its authorized representative in connection
15:16:56  15  with any capacity in this litigation?
15:16:59  16        MR. SILVERSTEIN: Same instruction.
15:17:00  17  BY MR. EVANS:
15:17:05  18     Q. Have you ever set up a rabbi trust?
15:17:08  19        MR. SILVERSTEIN: Same instruction.
15:17:10  20  BY MR. EVANS:
15:17:10  21     Q. Have you ever set up a rabbi trust to shield
15:17:12  22  assets from your creditors?
15:17:16  23        MR. SILVERSTEIN: Same instructions.
15:17:17  24  BY MR. EVANS:
15:17:17  25     Q. Have you set up any trust for the purpose of

---

### Page 56

15:17:20  1  shielding assets from creditors?
15:17:23  2        MR. SILVERSTEIN: Same instruction.
15:17:24  3  BY MR. EVANS:
15:17:24  4     Q. Were you the person with the most control
15:17:26  5  over each of the entities that formed the Benistar
15:17:31  6  family as of January of 2008?
15:17:34  7        MR. SILVERSTEIN: Same instruction.
15:17:36  8  BY MR. EVANS:
15:17:36  9     Q. Were you the person who had ultimate control
15:17:40  10  over all of the entities in the Benistar family
15:17:43  11  between the year -- between January of 2000 and the
15:17:53  12  present?
15:17:53  13        MR. SILVERSTEIN: Same instruction and calls
15:17:54  14  for a legal conclusion.
15:17:55  15  BY MR. EVANS:
15:17:56  16     Q. Is there anybody you can identify that has
15:17:58  17  more authority over all of the Benistar entities
15:18:02  18  currently than you do?
15:18:03  19        MR. SILVERSTEIN: Same instruction.
15:18:04  20  BY MR. EVANS:
15:18:07  21     Q. Other than attorneys, have you spoken with
15:18:10  22  anyone about the plaintiff's claims in this case?
15:18:13  23        MR. SILVERSTEIN: Same instruction.
15:18:14  24  BY MR. EVANS:
15:18:17  25     Q. Did you participate in the decision to

---

### Page 57

15:18:20  1  challenge whether a final settlement had been reached
15:18:27  2  in 2008 in the Pennsylvania action?
15:18:29  3        MR. SILVERSTEIN: Same instruction.
15:18:31  4  BY MR. EVANS:
15:18:35  5     Q. Did anybody represent your personal interests
15:18:37  6  in connection with the Pennsylvania litigation that
15:18:39  7  was brought by various Benistar entities against
15:18:44  8  Koresko?
15:18:45  9        MR. SILVERSTEIN: Same instruction.
15:18:51  10  BY MR. EVANS:
15:18:51  11     Q. This may be clear on the record already. I
15:18:59  12  am not trying to be controversial, but who represents
15:19:02  13  you in connection with today's deposition?
15:19:04  14        MR. SILVERSTEIN: You can answer that.
15:19:06  15        THE WITNESS: Ira Silverstein.
15:19:08  16  BY MR. EVANS:
15:19:08  17     Q. Any other lawyers representing you in
15:19:10  18  connection with this deposition?
15:19:12  19     A. With the deposition?
15:19:13  20     Q. Yes, today's deposition.
15:19:14  21     A. No, Bill McGrath is my personal attorney, but
15:19:18  22  Ira is representing me today for purposes of today's
15:19:22  23  deposition.
15:19:26  24     Q. What's the current status of the criminal
15:19:29  25  charges against you in Massachusetts?

---

Brandon Smith Reporting & Video
860-549-1850     production@brandonreporting.com     249 Pearl Street

# EXHIBIT 16

**1**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

--------------------------------x

JOSEPH IANTOSCA, ET AL.,

    Plaintiffs,

  -versus-

BENISTAR ADMIN SERVICES, INC.,

ET AL.,                          08-11785-NMG

    Defendants.

  -versus-

TRAVELERS INSURANCE COMPANY and

UNDERWRITERS AT LLOYDS, LONDON,

    Reach and Apply Defendants.

--------------------------------x

DEPOSITION OF MOLLY CARPENTER

Taken pursuant to the Federal Rules of Civil Procedure,
at the law offices of Halloran & Sage,
One Goodwin Square, 225 Asylum Street, Hartford,
Connecticut, before Vicki S. McManus, a Licensed

Shorthand Reporter and a Notary Public in and for the

State of Connecticut, Shorthand Reporter License

No. 00152, on Tuesday, July 19, 2011, at 9:52 a.m.

**2**

1  A P P E A R A N C E S :
2
3  For the Witness Molly Carpenter:
4  BALLARD SPAHR LLP
   1735 Market Street, 51st Floor
5  Philadelphia  PA 19103-7599
   By:  IRA B. SILVERSTEIN, Esquire
6
7  For the Plaintiffs Joseph Iantosca, et al.:
8  ZELLE, McDONOUGH & COHEN
   101 Federal Street, 14th Floor
9  Boston MA  02110
   By:  ANTHONY R. ZELLE, Esquire
10      THOMAS W. EVANS, Esquire
11
   For the United States (Plaintiff by Intervention):
12
   U.S. DEPARTMENT OF JUSTICE
13 P.O. Box 55, Ben Franklin Station
   Washington DC  20044
14 By:  AUSTIN L. FURMAN, Esquire
15
   For the Defendants Benistar Admin Services, et al.:
16
   FOX ROTHSCHILD LLP
17 One Landmark Square, 21st Floor
   Stamford CT  06901
18 By:  JOSEPH M. PASTORE, Esquire
19
20
21
22 A L S O  P R E S E N T :
23
24 Wayne Bursey
25 Mauricio Agudelo, Esquire

**3**

1           S T I P U L A T I O N S
2
3
4      IT IS HEREBY STIPULATED AND AGREED by and between
5  counsel for the respective parties hereto that all
6  technicalities as to proof of the official character
7  before whom the deposition is to be taken are waived.
8
9
10     IT IS FURTHER STIPULATED AND AGREED by and
11 between counsel for the respective parties hereto that
12 the reading and signing of the deposition by the
13 deponent are required.  Instructions, errata and jurat
14 were sent to Attorney Silverstein.
15
16
17     IT IS FURTHER STIPULATED AND AGREED by and
18 between counsel for the respective parties hereto that
19 all objections, except as to form, are reserved to the
20 time of trial.
21
22
23
24
25          * * * * *

**4**

1           M O L L Y  C A R P E N T E R ,
2  called as a witness, having been first duly sworn by
3  Vicki S. McManus, a Notary Public in and for the State
4  of Connecticut, was examined and testified as follows:
5  DIRECT EXAMINATION
6  BY MR. EVANS:
7  Q   Could you state your name please.
8  A   Molly Carpenter.
9  Q   What is your home address?
10 A   18 Pondside Lane, Simsbury, Connecticut.
11 Q   Who is your employer?
12     MR. SILVERSTEIN:  At this point, I am going
13 to interject.  Mrs. Carpenter is the target of a
14 criminal investigation in Wisconsin.  And in
15 addition -- and if you wish, you can ask her
16 questions on what I'm about to say now to
17 establish that she is, but I'm sure you'll agree,
18 the wife of Daniel Carpenter, who is under
19 criminal jeopardy in a number of contexts.  And
20 so Mrs. Carpenter will be invoking both her own
21 Fifth Amendment privileges and a testimonial
22 privilege against having to testify with respect
23 to any matters that might touch upon her
24 husband's criminal exposures.
25     As a consequence, other than if you'd like

Toll Free: 866.619.3925
Facsimile: 866.557.0041



ESQUIRE
an Alexander Gallo Company

Suite 804
99 Summer Street
Boston, MA 02110
www.esquiresolutions.com

Molly Carpenter                                              July 19, 2011

121

1        MR. SILVERSTEIN:  Instruct you not to
2     answer.
3   BY MR. FURMAN:
4     Q   Are you going to follow your attorney's
5   instruction?
6     A   Yes.
7     Q   Has Daniel Carpenter performed services for the
8   Benistar 419 Plan and Trust?
9        MR. SILVERSTEIN:  Instruct you not to
10     answer.
11   BY MR. FURMAN:
12     Q   Are you going to follow your attorney's
13   instruction?
14     A   Yes.
15     Q   Is there anyone more knowledgeable than
16   Daniel Carpenter with respect to the workings of the
17   Benistar 419 Plan and Trust?
18        MR. SILVERSTEIN:  Instruct you not to
19     answer.
20   BY MR. FURMAN:
21     Q   Are you going to follow your attorney's
22   instruction?
23     A   Yes.
24     Q   Has Daniel Carpenter provided consulting services
25   to BASI?

122

1        MR. SILVERSTEIN:  Instruct you not to
2     answer.
3   BY MR. FURMAN:
4     Q   Are you going to follow your attorney's
5   instruction?
6     A   Yes.
7        THE WITNESS:  But, Ira, could I talk to you
8     for a second?
9        MR. SILVERSTEIN:  Sure.
10        (Luncheon recess taken:  12:15-1:13 p.m.)
11        MR. FURMAN:  Before the break, there was a
12     question pending and Ms. Carpenter asked to
13     consult with Mr. Silverstein.  I was wondering if
14     we can have that question read back.
15        (Testimony read back.)
16   BY MR. FURMAN:
17     Q   Ms. Carpenter, are you familiar with entities
18   known as Benefit Concepts International Inc., Benefit
19   Concepts Inc., Benefit Concepts of New York, Carpenter
20   Group LTD Inc., Carpenter Financial Group Inc.?
21        Are you familiar with any of those entities?
22        MR. SILVERSTEIN:  Instruct you not to
23     answer.
24   BY MR. FURMAN:
25     Q   Are you going to follow your attorney's

123

1   instruction?
2     A   Yes.
3     Q   Does Daniel Carpenter control those entities?
4        MR. SILVERSTEIN:  Instruct you not to
5     answer.
6   BY MR. FURMAN:
7     Q   Are you going to follow your attorney's
8   instruction?
9     A   Yes.
10     Q   Is Daniel Carpenter chairman of those entities?
11        MR. SILVERSTEIN:  Instruct you not to
12     answer.
13   BY MR. FURMAN:
14     Q   Are you going to follow your attorney's
15   instruction?
16     A   Yes.
17     Q   Are you familiar with a trust known as The Avon
18   Trust?
19        MR. SILVERSTEIN:  Instruct you not to
20     answer.
21   BY MR. FURMAN:
22     Q   Are you going to follow your attorney's
23   instruction?
24     A   Yes.
25     Q   Are you a beneficiary of that trust?

124

1        MR. SILVERSTEIN:  Instruct you not to
2     answer.
3   BY MR. FURMAN:
4     Q   Are you going to follow your attorney's
5   instruction?
6     A   Yes.
7     Q   Who is the trustee of that trust?
8        MR. SILVERSTEIN:  Instruct you not to
9     answer.
10   BY MR. FURMAN:
11     Q   Are you going to follow your attorney's
12   instruction?
13     A   Yes.
14     Q   Who is the settler of that trust?
15        MR. SILVERSTEIN:  Instruct you not to
16     answer.
17   BY MR. FURMAN:
18     Q   Are you going to follow your attorney's
19   instruction?
20     A   Yes.
21     Q   Are you familiar with a Daniel E. Carpenter
22   Trust?
23        MR. SILVERSTEIN:  Instruct you not to
24     answer.
25



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.619.3925
Facsimile: 866.557.0041

Suite 804
99 Summer Street
Boston, MA 02110
www.esquiresolutions.com

125

1 BY MR. FURMAN:
2    Q   Are you going to follow your attorney's
3 instruction?
4    A   Yes.
5    Q   Are you a beneficiary of that trust?
6        MR. SILVERSTEIN:  Instruct you not to
7    answer.
8 BY MR. FURMAN:
9    Q   Are you going to follow your attorney's
10 instruction?
11    A   Yes.
12    Q   Is Daniel Carpenter the trustee of that trust?
13        MR. SILVERSTEIN:  Instruct you not to
14    answer.
15 BY MR. FURMAN:
16    Q   Are you going to follow your attorney's
17 instruction?
18    A   Yes.
19    Q   Is Daniel Carpenter the settler of that trust?
20        MR. SILVERSTEIN:  Instruct you not to
21    answer.
22 BY MR. FURMAN:
23    Q   Are you going to follow your attorney's
24 instruction?
25    A   Yes.

126

1    Q   Are there any other charitable trusts set up by
2 Daniel Carpenter?
3        MR. SILVERSTEIN:  Instruct you not to
4    answer.
5 BY MR. FURMAN:
6    Q   Are you going to follow your attorney's
7 instruction?
8    A   Yes.
9    Q   Does BASI provide services for the STEP Plan?
10        MR. SILVERSTEIN:  Instruct you not to
11    answer.
12 BY MR. FURMAN:
13    Q   Are you going to follow your attorney's
14 instruction?
15    A   Yes.
16    Q   What percentage of BASI's business comes from
17 business related to the STEP Plan?
18        MR. SILVERSTEIN:  Instruct you not to
19    answer.
20 BY MR. FURMAN:
21    Q   Are you going to follow your attorney's
22 instruction?
23    A   Yes.
24    Q   Is there a contract between BASI and STEP Plan
25 Services Inc. with respect to any services that BASI

127

1 performs for the STEP Plan?
2        MR. SILVERSTEIN:  Instruct you not to
3    answer.
4 BY MR. FURMAN:
5    Q   Are you going to follow your attorney's
6 instruction?
7    A   Yes.
8    Q   What is the relationship between BASI and
9 Benistar 419 Plan Services Inc.?
10        MR. SILVERSTEIN:  Instruct you not to
11    answer.
12 BY MR. FURMAN:
13    Q   Are you going to follow your attorney's
14 instruction?
15    A   Yes.
16    Q   Is there a written contract between BASI and
17 Benistar 419 Plan Services Inc. with respect to
18 services that BASI performed for the Benistar 419 Plan
19 and Trust?
20        MR. SILVERSTEIN:  Instruct you not to
21    answer.
22 BY MR. FURMAN:
23    Q   Are you going to follow your attorney's
24 instruction?
25    A   Yes.

128

1    Q   Can Benistar Admin Services Inc. -- are they
2 authorized to delegate duties with respect to the
3 Benistar 419 Plan and Trust to BASI?
4        MR. SILVERSTEIN:  Instruct you not to
5    answer.
6 BY MR. FURMAN:
7    Q   Are you going to follow your attorney's
8 instruction?
9    A   Yes.
10    Q   Was Benistar 419 Plan Services Inc. always the
11 sponsor of the Benistar 419 Plan and Trust?
12        MR. SILVERSTEIN:  Instruct you not to
13    answer.
14 BY MR. FURMAN:
15    Q   Are you going to follow your attorney's
16 instruction?
17    A   Yes.
18    Q   Did BESTCO, B-E-S-T-C-O, step down as sponsor of
19 the Benistar 419 Plan and Trust due to litigation
20 brought by the plaintiffs in this case?
21        MR. SILVERSTEIN:  Instruct you not to
22    answer.  And question assumes facts not
23    necessarily true and certainly not of record.
24 BY MR. FURMAN:
25    Q   Are you going to follow your attorney's



Toll Free: 866.619.3925
Facsimile: 866.557.0041

Suite 804
99 Summer Street
Boston, MA 02110
www.esquiresolutions.com

# EXHIBIT 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

                Judgment Creditor,

        -against-

NOVA GROUP, INC., as trustee, sponsor and
fiduciary of THE CHARTER OAK TRUST
WELFARE BENEFIT PLAN,

                Judgment Debtor,

-----------------------------------------------------------------X

:
:
:
:
:
:
:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **FEB 1 1 2014**

Case Nos. 11 CV 1590-LTS-HBP and
11-8726-LTS

**[PROPOSED] ORDER MODIFYING THE COURT'S**
**PRELIMINARY INJUNCTION AGAINST DANIEL E. CARPENTER**

    For good cause shown as stated herein and in a letter to the Court submitted by counsel
for Curaleaf, LLC (Docket Entry Number 260 in Case No. 11-8726), and with the consent of
Petitioner/Judgment Creditor Universitas Education, LLC ("Universitas"), the Court hereby
modifies its Preliminary Injunction issued in this case as follows:

    **WHEREAS**, on January 13, 2014, a preliminary injunction was issued against
Respondent Daniel E. Carpenter ("Carpenter") by the United States District Court, Southern
District of New York, in the matter of *Universitas Education LLC v. Nova Group, Inc.*, 11 Civ.
1590 (LTS) ("the Injunction," at pages 15-16 of Docket Entry Number 366 in Case No. 11 Civ.
1590(LTS));

    **WHEREAS**, the Injunction, in pertinent part, restrains Carpenter and his agents from
transferring or assigning the assets of any company that he owns or controls, directly or
indirectly, with a limited exception for ordinary expenses not applicable here;

    **WHEREAS**, it appears that GMP owns certain real property at 100 Grist Mill Road in
Simsbury, Connecticut ("the Property");

    **WHEREAS**, based on the Letters of Intent furnished to the Court, as well as Mr.
Carpenter's testimony before this Court, the Court finds that Carpenter controls or owns GMP,
directly or indirectly (see Universitas Educ., LLC v. Nova Grp., Inc., 2013 U.S. Dist. LEXIS
165803 (S.D.N.Y. Nov. 20, 2013));

**WHEREAS**, Curaleaf has represented to the Court that GMP and Curaleaf, LLC ("Curaleaf") intend to enter into a certain Lease and Purchase Option Agreement pertaining to the Property ("the Transaction");

**WHEREAS**, Curaleaf represents to the Court that the written terms contained in the Lease and Purchase Option Agreement constitute the entire contemplated agreement between GMP and Curaleaf, and that no consideration has been paid or will be paid by Curaleaf except to GMP in accordance with the Lease and Purchase Option Agreement, the Injunction and this Order;

**WHEREAS**, Curaleaf represents to the Court that it has no agreement (oral or written) with Carpenter or any entity owned or controlled by him other than GMP;

**WHEREAS**, Curaleaf represents to the Court that it will not complete the Transaction without the limited modification to the Injunction being provided herein;

**WHEREAS**, Curaleaf represents to the Court that it faces immediate and irreparable damage if the Injunction is not modified;

**WHEREAS**, Curaleaf has represented to the Court that the Transaction will improve the Property and will not lead to a diminution in value of the assets owned or controlled by Carpenter;

**WHEREAS**, Carpenter and GMP have been provided advanced notice that Universitas would seek the entry of this Order, and were afforded an opportunity to comment on the Order; and

**WHEREAS**, the Court finds that Carpenter, being subject to the Injunction, will not be prejudiced by the limited exception to the Injunction provided herein;

**IT IS HEREBY ORDERED** that:

Relief is granted from the Injunction so that Curaleaf and GMP may enter the Transaction, and they are ordered to comply with the following conditions at all relevant times if the Transaction is completed:

1. Curaleaf will provide Universitas' counsel with copies of the final draft of the Lease and Purchase Option Agreement, and all Exhibits and Schedules thereto, and with copies of these documents as executed. No material changes will be made between the final draft documents and the executed documents without prior review by Universitas' counsel. Curaleaf must give Universitas at least 2 days' advance notice of any change, amendment, revision or addition to the Purchase and Lease Option Agreement.

2.  All payments and transfers to be made by Curaleaf to GMP under the terms of the Lease and Purchase Option Agreement shall be made by wire transfer to the GMP account at TD Bank, Account No. 424-0166-200 (the "Account"). No payments shall be made by Curaleaf to GMP except to the Account and except with notice to Universitas.

3.  GMP must provide Universitas' counsel with a copy of each statement for the Account as it becomes available, or permit Universitas to obtain these statements directly from TD Bank.  GMP must authorize and permit Universitas' counsel to communicate with TD Bank, in order to verify the authenticity of each monthly statement as well as any other information or transactions taking place through the Account. GMP must authorize TD Bank to provide Universitas' counsel with a copy of each mortgage statement.

4.  GMP, acting solely in its capacity as Landlord of the Property, may disburse funds from the Account only to pay necessary landlord expenses for the Property, as those expenses are set out in the Lease and Purchase Option Agreement and/or under the existing mortgage on the Property (the "Disbursements").  These Disbursements include property taxes, insurance premiums, maintenance and repair costs. No Disbursement exceeding $5,000.00 may be made from the Account without five days' advance written notice to Universitas.

5.  Under no circumstances will GMP transfer any money out of the Account, directly or indirectly, to Carpenter or any person or entity subject to the Injunction.

6.  Upon request, and within 5 business days of the request, GMP must provide Universitas' counsel with copies of any documents requested by Universitas pertaining to any Disbursement.

7.  If Curaleaf decides to take any action concerning its Purchase Option, Curaleaf must give 5 days' advance written notice to Universitas' counsel.

8.  Except as expressly provided herein, the Injunction is in full force and effect.

9.  This Order may only be modified by the Court, upon motion by Universitas, Curaleaf, GMP and/or Carpenter, with all non-movants provided notice of a motion and at least 3 business days to respond. ~~it or the injunction is~~ ~~in relevant respect~~

10. This Order will remain in effect until modified or vacated by the Hon. Laura Taylor Swain or another judge of the United States District Court for the Southern District of New York.

This Order does not have any bearing on the validity or legality of any transaction completed or contemplated by Curaleaf, GMP and/or Carpenter.  This Order does not affect any person or entity's interest in or rights to the Property.  This Order only modifies the Injunction, and only to the extent necessary to permit Curaleaf and GMP to enter into the Transaction if they choose to do so and the provisions of this Order are complied with at all relevant times.

Dated: February 11, 2014
New York, NY

SO ORDERED:

_____
The Hon. Laura Taylor Swain
USDJ

4

# EXHIBIT 18



**MOONSTONE PARTNERS LLC**
100 GRIST MILL LANE
SIMSBURY, CT 06070

51-309 507
111
4242275455

1010

DATE Aug 9, 2009

PAY TO THE
ORDER OF _CASH_ | $ 250.00

Two Hundred Fifty ——— ONLY ——— DOLLARS

**TD Banknorth**

MEMO Jersey Moving Expenses          Daniel E Carpelt

⑆011103093⑆  5455⑈  1010  ⑈00000 25000⑈

Account: ████5455
Amount: 250.00
PostDate: 20090812
Tran_ID: 0
CheckNum: 1010
DIN: 302040751
ReturnReasonCode:
ReturnReasonDescription:



Account: ████7455
Amount: 250.00
PostDate: 20090812
Tran_ID: 0
CheckNum: 1010
DIN: 302040751
ReturnReasonCode:
ReturnReasonDescription:



**MOONSTONE PARTNERS LLC**
100 GRIST MILL LANE
SIMSBURY, CT 06070

1011

DATE Aug 15 2009

PAY TO THE
ORDER OF _American Express_ | $ 10,287.09

Ten Thousand Two Hundred Eighty Seven DOLLARS

**TD Banknorth**

MEMO Monthly Corporate          3-8000          Daniel E Carpelt

⑆011103093⑆ 424  5455⑈  1011

Account: ████5455
Amount: 10,287.09
PostDate: 20090821
Tran_ID: 0
CheckNum: 1011
DIN: 301032640
ReturnReasonCode:
ReturnReasonDescription:



Account: ████5455
Amount: 10,287.09
PostDate: 20090821
Tran_ID: 0
CheckNum: 1011
DIN: 301032640
ReturnReasonCode:
ReturnReasonDescription:

TD-UNIVERSITAS 1037

# EXHIBIT 19



**CARPENTER FINANCIAL GROUP, INC.**
GRIST MILL PLAZA
100 GRIST MILL ROAD
SIMSBURY, CT 06070
(860) 408-7003

1080

TD BANKNORTH
51-309-111

DATE

AMOUNT

1080    May 17 2010    $ ***********$2,000.00

PAY
TO THE Two Thousand and 00/100 Dollars
ORDER
OF:    REMAX

AUTHORIZED SIGNATURE

⑈001080⑈ ⑈011103093⑈ 4    4697⑈

---

>211170318< 20100525
ROCKVILLE BANK
203  49

FOR DEPOSIT ONLY
RE/MAX
EAST OF THE RIVER
Acct. # 0026001465 2

---

Account: 4697
Amount: 2,000.00
PostDate: 20100526
Tran_ID: 0
CheckNum: 1080
DIN: 305026669
ReturnReasonCode:
ReturnReasonDescription:

---

Account: 4697
Amount: 2,000.00
PostDate: 20100526
Tran_ID: 0
CheckNum: 1080
DIN: 305026669
ReturnReasonCode:
ReturnReasonDescription:

---

**CARPENTER FINANCIAL GROUP, INC.**
GRIST MILL PLAZA
100 GRIST MILL ROAD
SIMSBURY, CT 06070
(860) 408-7003

1087

TD BANKNORTH
51-309-111

DATE

AMOUNT

$ 5,000.⁰⁰

PAY
TO THE    FIVE THOUSAND AND 00/100 DOLLARS
ORDER
OF:

MOLLY D. CARPENTER
18 PONDSIDE LANE
SIMSBURY, CT 06070

AUTHORIZED SIGNATURE

⑈001087⑈ ⑈011103093⑈    4697⑈

---

Molly D. Carpenter

---

Account: 4697
Amount: 5,000.00
PostDate: 20100528
Tran_ID: 402038682
CheckNum: 1087
DIN: 402038683
ReturnReasonCode:
ReturnReasonDescription:

---

Account: 4697
Amount: 5,000.00
PostDate: 20100528
Tran_ID: 402038682
CheckNum: 1087
DIN: 402038683
ReturnReasonCode:
ReturnReasonDescription:

TD-UNIVERSITAS 0966



-$5,000.00                1032                05032011

-$15,790.00               1033

-$15,000.00               1034                05132011

-$5,000.00                1035

-$9,933.07                1036                05162011

-$160.00                  1037

**People's United Bank**

**Misc. Checking Debit**

Date 5-24-17    Authorized By _____

Account Number _____ 1040    $    Charge To Your Account    600000

Description: Trans to Molly Carpenters acct #

**Please subtract this amount from your checkbook balance.**

_____ 6324

TR-A3   175-17502 05/24/12    03:59 FR
A175152
6500051040 MiscDebtCk    $6,600.00
Member FDIC  TK 013

⑈5136⑈0828⑈

Duplicate

---

Pocket:18 Pattern:3003 Account: ████ 1040 Serial:0 Amount:$6,000.00 Sequence:3736956655 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:05/24/2012 PostAcct: ████ 1040

---

05/24/2012 3736956655
2-2211-721S-BEX P.B. BPT, CT
PBT

 **People's United Bank**

Member FDIC  TK-016

**Cash Out**

**Credit**

$6,000.00

TR:61   175-17502 05/24/12   03:39 PM
A1361B6

████ 1000 MiscDebtCk

CASH OUT

⑈5⏐36⏐5045⑈ ████ 7502⑈

---

Pocket:15 Pattern:3003 Account:███7502 Serial:0 Amount:$6,000.00 Sequence:3736956650 TR:51365045 BOFD TR:0 TranCode:0
CUID:1615 Date:05/24/2012 PostAcct:███7502

05/24/2012 3736956650
5-52211-7218-0<< P.B. BPT,
PCT

**People's United Bank**

Date 6-29-12

Cash ▸

Name MOLLY CAAPWIOR

checks

**Select Type:** ☐ Checking ☐ Savings ☐ Money Market ☐ CD ☐ HSA

Deposit

**Bank Use Only**
Tran Code

Deposit to Account Number

Total from other side ▸

Less cash back ▸

644 ████ 6324

**Deposits may not be available for immediate withdrawal**

Net Deposit $ 100,000 00

⑈5⑈36⑈9999⑉

Member FDIC TK-001

Pocket:19 Pattern:3003 Account:███6324 Serial:0 Amount:$100,000.00 Sequence:3740490155 TR:51369999 BOFD TR:0
TranCode:644 CUID:1615 Date:06/29/2012 PostAcct:███6324

NextTran

This total must be entered on other side ▸

$100,000.00   CHKMONOHLD  6324████   06/29/2012  3740490155
                                     ░2311-7218-6<<  P.B. BPT. C`
                         A13601D
TR:11  175-17501 06/29/13  12:33 PM

Additional Check Listing Space
(list checks separately)

**People's United Bank**

Date 6-29-12    Authorized By T G

Account Number

1040

Charge To Your Account

$ 100,000 00

**Please subtract this amount from your checkbook balance.**

Description _____

TR:10   175-17501 06/29/12      12:32 PM
A1369TD
1040 MiscDebtCk        ‡100,000.00

Member FDIC TK-013

NextTran

⑈5136⑈0828⑈

Pocket:18 Pattern:3003 Account: 1040 Serial:0 Amount:$100,000.00 Sequence:3740490160 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:06/29/2012 PostAcct: 1040

06/29/2012 3740490160
>>2211-7213-6<< P.B. DPT. CT
EST

# Deposit

People's United Bank

Date 8-7-12

Cash ▶ 200000

Name _Molly Carpenter_

**Select Type:** ☐ Checking ☐ Savings ☐ Money Market ☐ CD ☐ HSA

Checks

**Bank Use Only**
Tran Code

**Deposit to Account Number**

600 ████ 6324

Total from other side ▶

Less cash back ▶

**Deposits may not be available for immediate withdrawal**

Net Deposit $ 2000 00

Deposit

⑆5136⑈9999⑈

Member FDIC  TK-001

Pocket:19 Pattern:3003 Account:████6324 Serial:0 Amount:$2,000.00 Sequence:3743845050 TR:51369999 BOFD TR:0
TranCode:600 CUID:1615 Date:08/07/2012 PostAcct:████6324

This total
must be
entered on
other side
▼

08/07/2012 3743845050
>>2211-7218-6<< P.6. BPT, C1
PBT

Additional Check Listing Space
(List checks separately)

TR:2   175-17501 08/07/12   08:06 AM
A1360TD
████6324 Chk to Chk   $2,000.00

**People's United Bank**

**Misc. Checking Debit**

Date _8-7-12_    Authorized By _____

Account Number

/*000*

$    *2000 00*

Description _move to Molly_

**Please subtract this amount from your checkbook balance.**

TR:2    175-17501 08/07/12    08:06 AM
A1360TD
1040 Chk to Chk    $2,000.00

Member FDIC TK-013

⑈513608 28⑈

---

Pocket:18 Pattern:3003 Account:███ 1040 Serial:0 Amount:$2,000.00 Sequence:3743845055 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:08/07/2012 PostAcct:███ 1040

08/07/2012 3743845055
>>2211-7218-5<< P.B. EPT, CT
PBT

**People's United Bank**

Date 8-23-12

Cash ▸

Name Molly Carpenter

Select Type: ☑ Checking ☐ Savings ☐ Money Market ☐ CD ☐ HSA

**Bank Use Only**
Tran Code

Deposit to Account Number

Total from other side ▸

Less cash back ▸

6 4 4     ████████ 6324

**Deposit**

Deposits may not be available for immediate withdrawal

Net Deposit $     2000000

⑈5136⑈9999⑈

Member FDIC TK-001

---

Pocket:19 Pattern:3003 Account:████6324 Serial:0 Amount:$20,000.00 Sequence:3745081750 TR:51369999 BOFD TR:0
TranCode:644 CUID:1615 Date:08/23/2012 PostAcct:████6324

---

This total must be entered on other side ▾

08/23/2012 3745081750
A22211-7218-6<< P.B. BPT, CT
PBT

Additional Check Listing Space (List checks separately)

TR:23   175-17507 03/23/12      03:33 P
A13010R
████6324 C1 DEPosita      $20,000.00

Residual

**People's United Bank**

**Misc. Checking Debit**

Date _8-23-12_   Authorized By _Amanda Rossi_

Account Number _____ _1040_

Charge To Your Account

$ _20000 00_

Description _trans to_
_molly carpenter_

Please subtract this amount from your
checkbook balance.

175-1750: 08-23-12   6:24 PM
1174405
040 MiscDebit CK   $20,000.00

Partiran   Member FDIC TK-013

⑈5136⑈0828⑈

---

Pocket:18 Pattern:3003 Account ████1040 Serial:0 Amount:$20,000.00 Sequence:3745081755 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:08/23/2012 PostAcct: ████1040

08/23/2012 3745081755
>>2211-7218-6<< P.O. DPT, CT
P&T

**People's United Bank**

Name _Molly Carpenter_                Date _9/13/12_         Cash ▸

Select Type: ☑ Checking  ☑ Savings  ☐ Money Market  ☐ CD  ☐ HSA

Bank Use Only
Tran Code            Deposit to Account Number              Total from
                                                            other side ▸

_600_        ████████ 6324                     Less cash ▸
                                                back

**Deposits may not be available for immediate withdrawal**        Net
                                                                 Deposit $    _5000 —_

⑆5136⑈9999⑆

Member FDIC  TK-001

---

Pocket:19 Pattern:3003 Account: ██ 6324 Serial:0 Amount:$5,000.00 Sequence:3747224810 TR:51369999 BOFD TR:0
TranCode:600 CUID:1615 Date:09/13/2012 PostAcct ██ 6324

**People's United Bank**

**Misc. Checking Debit**

Date 9/13/12 — Authorized By _R Hemond_

Account Number

████ 1040

$ 5000 —

Charge To Your Account

Description _Carpenter Fees Strays._
_Transfer to_
████ 6324

**Please subtract this amount from your checkbook balance.**

Member FDIC TK-013

�semicolon5136⑤0828⑥

Pocket:18 Pattern:3003 Account: ████1040 Serial:0 Amount:$5,000.00 Sequence:3747224815 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:09/13/2012 PostAcct ████ 1040

**People's United Bank**

Date __11|13|12__   Cash ▸

Name __Molly Carpenter__

**Select Type:** ☐ Checking ☐ Savings ☐ Money Market ☐ CD ☐ HSA

Deposit

checks

**Bank Use Only**
Tran Code

**Deposit to Account Number**

Total from other side ▸

644      6324

Less cash back ▸

**Deposits may not be available for immediate withdrawal**

Net Deposit $      1 0 0 0 0

⑆5136⑈99991⑆

Pocket:19 Pattern:3003 Account: ▓6324 Serial:0 Amount:$100.00 Sequence:2711852695 TR:51369999 BOFD TR:0
TranCode:644 CUID:1615 Date:11/13/2012 PostAcct ▓6324

This total must be entered on other side ▼

11/13/2012 2711852695
AX22211-7210-644 P.B. EPT. CT
PBT

Additional Check Listing Space
(List checks separately)

TR:44    175-17507 11/13/12       03:21 PM
A1361K1
        6324 CkDPNoHld          $100.00

NextTran

**People's United Bank**

**Misc. Checking Debit**

Date 11/13/12     Authorized By _____ (4) 18001

Account Number

1 0 4 0                          Charge To Your Account

$                    1 0 0   0 0

Description _____

Carpenter Financial
X-fer to Molly

Please subtract this amount from your
checkbook balance.

TR:43    175-17507 11/13/12     03:21 PM
A1361K1
1040 MiscDebtCk          $100.00

⑊5136⑊0828⑊                    NextTran    Member FDIC TX-013

Pocket:18 Pattern:3003 Account: █1040 Serial:0 Amount:$100.00 Sequence:2711852700 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:11/13/2012 PostAcct: █1040

11/13/2012 2711852700
>>2211-7218-6<< P.B. BPT. CT
PBT

**Misc. Checking Debit**

**People's United Bank**

Date _11-26-12_    Authorized By _____

Account Number _____ 7040

Charge To Your Account

$ 600000

Please subtract this amount from your checkbook balance.

Description _____

```
TR:7    175-17501 11/26/12    11:26 am
A135010
         1040 MiscDabtCk    $6,000.00
                            Member FDIC  TX-013
         NextTran
```

⑈5136⑈0828⑈:

```
Pocket:18 Pattern:3003 Account:    1040 Serial:0 Amount:$6,000.00 Sequence:3754385450 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:11/26/2012 PostAcct:    1040
```

```
11/26/2012 3754385450
>>2211-7218-6<<. P.B. BPT, CT
PBT
```

**People's United Bank**

Date 11-26-12    Cash ▸

Name _Molly Carpeter_

Select Type: ☐ Checking ☐ Savings ☐ Money Market ☐ CD ☐ HSA

**Deposit** (vertical, left margin)

**Bank Use Only**
Tran Code

Deposit to Account Number

Total from other side ▸

Less cash back ▸

*644*    ████████ *6324*

**Deposits may not be available for immediate withdrawal**

Net Deposit $    *6000 00*

⑆5136⑈99991⑆

Member FDIC TK-001

Pocket:19 Pattern:3003 Account:████5324 Serial:0 Amount:$6,000.00 Sequence:3754385445 TR:51369999 BOFD TR:0
TranCode:644 CUID:1615 Date:11/26/2012 PostAcct:████5324

NextTran

This total must be entered on other side ▸ $6,000.00

6324 CARPENTER ████

A134010

175-17301 11/26/12   11:05 AM   TR:8

11/26/2012 3754385445
>>2211-7218-6<< P.B. BPT, CT
PBT

Additional Check Listing Space
(List checks separately)

**People's United Bank**

Date 12-11-12          Cash ▸

Name _____ MOLLY CARPENTER _____

Select Type: ☐ Checking ☐ Savings ☐ Money Market ☐ CD ☐ HSA

Bank Use Only
Tran Code          Deposit to Account Number _____          Total from ▸
                                                             other side

644          ▉          6324          Less cash ▸
                                       back

**Deposits may not be available for immediate withdrawal**          Net
                                                                    Deposit $          2 0 0 0 0

⑆5136⑈9999⑆

Member FDIC  TX-001

Pocket:19 Pattern:3003 Account:▉6324 Serial:0 Amount:$200.00 Sequence:3755940250 TR:51369999 BOFD TR:0
TranCode:644 CUID:1615 Date:12/11/2012 PostAcct:▉6324

**People's United Bank**

**Misc. Checking Debit**

Date _12-11-12_    Authorized By _____

Account Number

**1040**    $ **20000**

Charge To Your Account

Please subtract this amount from your
checkbook balance.

Description _____

TR:2    175-17501 12/11/12    10:11 AM
A1360TD
1040 MiscDebtCk    $200.00
Member FDIC TK-013

NextTran

⑆5136⑈0828⑆

Pocket:18 Pattern:3003 Account: 1040 Serial:0 Amount:$200.00 Sequence:3755940255 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:12/11/2012 PostAcct 1040

12/11/2012 3755940255
>>2211-7218-6<<< P.B. BPT, CT
PBT

# Deposit

**People's United Bank**

Date **1-2-13**

Cash ►

Name **HOLLY CARPENTER**

**Select Type:** ☐ Checking ☐ Savings ☐ Money Market ☐ CD ☐ HSA

Checks

**Bank Use Only
Tran Code**

**Deposit to Account Number**

Total from ►
other side

Less cash ►
back

~~600~~
644

■■■■■ **6324**

Net ►
Deposit **$**    **1 0 000 00**

**Deposits may not be available for immediate withdrawal**

⑈5136⑈9999⑈

Member FDIC TK-001

---

Pocket:19 Pattern:3003 Account: ■■■ 6324 Serial:0 Amount:$10,000.00 Sequence:3757476820 TR:51369999 BOFD TR:0
TranCode:644 CUID:1615 Date:01/02/2013 PostAcct: ■■■ 6324

# People's United Bank

**Misc. Checking D**

Date _1-2-13_     Authorized By _[signature]_

**Account Number**     **Charge To Your Account**

████████ *1040*     $ *10 000,00*

Description _____

Please subtract this amount from your checkbook balance.

TP:18    175-17501 01/02/13    02:47 PM
AT3s0iD
████ 040 MiscDebtCk    $10,000.00
Member FDIC TX-013
NextTren

⑈513608 28⑈

---

Pocket:18 Pattern:3003 Account:████1040 Serial:0 Amount:$10,000.00 Sequence:3757476825 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:01/02/2013 PostAcct:███1040

01/02/2013 3757476825
>>2211-7218-6<< P.B. BPT, CT
PBT

**People's United Bank**

**Misc. Checking Credit**

Date 1/10/13    Authorized By

Account Number    Credit To Your Account

█████ 6324    $    1 0 0 0   00

Description _____

**Please add this amount to your checkbook balance.**

TR:46  175-17504 01/10/13    11:50 AM
A1341K1
█████6324 MiscCrCk    $1,000.00

Member FDIC TK-010

⑆5136⑈0628⑆    NextTran

Pocket:19 Pattern:3003 Account:████6324 Serial:0 Amount:$1,000.00 Sequence:3758132565 TR:51360628 BOFD TR:0
TranCode:0 CUID:1615 Date:01/10/2013 PostAcct:████6324

01/10/2013 3758132565
>>2211-7218-8<< P.S. BPT, CT
PBT

**People's United Bank**

**Misc. Checking Debit**

Date __1__ | __10__ | __13__     Authorized By _____

Account Number

[REDACTED] 1 040               $   1000 00

Description _____

**Please subtract this amount from your checkbook balance.**

TR:45    175-17504 01/10/13     11:50 AM
A1361K1
[REDACTED] 1040 MiscDebtCk      $1,000.00

Member FDIC TK-013

⑆5136⑆0828⑆                          NextTran

---

Pocket:18 Pattern:3003 Account:[REDACTED]1040 Serial:0 Amount:$1,000.00 Sequence:3758132570 TR:51360828 BOFD TR:221172186
TranCode:0 CUID:1615 Date:01/10/2013 PostAcct:[REDACTED]1040

01/10/2013 3758132570
>>2211-7218-6<< P.B. BPT, CT
PBT

# EXHIBIT 20

<pre>
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2
      * * * * * * * * * * * * * *
 3    UNITED STATES OF AMERICA      *
                                    *
 4              vs.                 *      CRIMINAL ACTION
                                    *      No. 04-10029-GAO
 5    DANIEL E. CARPENTER           *
                                    *
 6    * * * * * * * * * * * * * *

 7          BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
                    UNITED STATES DISTRICT JUDGE
 8                          SENTENCING

 9    A P P E A R A N C E S

10            UNITED STATES ATTORNEY'S OFFICE
              1 Courthouse Way, Suite 9200
11            Boston, Massachusetts 02210
              for the United States
12            By:  Jack W. Pirozzolo, AUSA

13
              MARTIN G. WEINBERG, PC
14            20 Park Plaza, Suite 1000
              Boston, Massachusetts 02116
15            for the defendant
              By:  Martin G. Weinberg, Esq.
16                 Robert M. Goldstein, Esq.

17

18
                                   Courtroom No. 9
19                                 John J. Moakley Courthouse
                                   1 Courthouse Way
20                                 Boston, Massachusetts 02210
                                   February 26, 2014
21                                 2:00 p.m.

22

23                 CAROL LYNN SCOTT, CSR, RMR
                       Official Court Reporter
24            One Courthouse Way, Suite 7204
                 Boston, Massachusetts 02210
25                     (617) 330-1377
</pre>

1    appropriately takes into account the wrongfulness of those

2    series of choices that he made.

3         There has been a number of statements in the PSR

4    and elsewhere that the defendant has taken responsibility

5    for his actions and he has said repeatedly.  Now, there is a

6    very telling comment in one of the victim, in one of the

7    victim's statements that I think I'd like to read,

8    Mr. Iantosca.

9         Mr. Iantosca -- and this is in -- well, I can just

10   read a portion.  It is in the package that was submitted by

11   Probation to the Court.  In fact, it is attached to a

12   2005 -- excuse me -- a two thousand, yeah, a 2005, March 30,

13   30 of March 2005 submission within the package.

14        And Mr. Iantosca says, "For the last five years

15   after Carpenter stole my money he's done everything he can

16   do to prevent me from getting the money back and he has

17   spent millions of dollars on lawyers doing it.  His actions

18   speak louder than his words.  If he has said he has done

19   anything to help his victims, he will be lying."

20        I want to focus here on the "actions speaking

21   louder than words."

22        After the events in this case, it is a fair

23   characterization of Mr. Carpenter's conduct that he has done

24   absolutely everything in his power to avoid responsibility

25   and avoiding the consequences of his conduct.  Everything

1    includes what can fairly be characterized as scorched earth

2    litigation against the exchangers.

3            And what did these people do?  All these people did

4    was give him the money so they could engage in a tax-free

5    exchange.  That's all they did.  And when it didn't come --

6    and when he couldn't come up with the money, they sued him

7    for it but they are blameless.

8            And there is a section in Exhibit 2 of the

9    government's sentencing memorandum that I think is telling

10   about the characteristics of this defendant in connection

11   with this event.  There is a quote from a letter that was

12   sent by Mr. Carpenter's counsel to the plaintiffs.  And I am

13   not going to read the whole thing.  It's in the record.  But

14   I will read one portion of it.  This is a defendant who is

15   saying he's taking responsibility for his actions, okay.

16   This is what the defendant is now saying, okay.  This is

17   what he is now saying.  Let's see what he was telling the

18   plaintiffs in connection with their lawsuit against him to

19   try to get back their money.

20           "Once Dan Carpenter beats his criminal rap, which

21   Professor Dershowitz assures us will happen, your clients

22   will have nothing but another three to four years of appeals

23   to fight and most likely eventually lose.  As you probably

24   know, Botsford," that's Judge, Justice Botsford, "just got

25   reversed today on the *School* case and Professor Miller is

1    highly confident that the appeals court or the SJC will

2    throw out all of your phase two and phase three claims plus

3    all your phase one claims except for breach of contract.

4    Plus, even if you ultimately prevail on appeal three to four

5    years from now, you will hold a 19 million dollar judgment

6    against persons/entities that are completely judgment

7    proof."

8              It is relevant to consideration of the recommended

9    sentence and the characteristics of the defendant how

10   Mr. Carpenter has treated the victims in this case from the

11   beginning.  It is relevant to assessing his culpability.  It

12   is relevant to assessing the degree to which he has accepted

13   responsibility for that culpability and the degree to which

14   he -- and I'm about to mention this in a moment -- he

15   appropriately can be deterred from the conduct for which he

16   engaged in here.

17             That type of strategy, which is, of course, there

18   is a right, we don't quarrel with that.  However, the

19   question is here what's the appropriate sanction and how do

20   you understand the characteristics of this defendant.  These

21   are choices he made.  He made the decision to have that

22   letter sent to those victims.  He made that decision through

23   counsel to have that kind of language going towards people

24   who did nothing other than give him money for a tax-free

25   exchange.

1          And the emotional cost of this, I would also point

2     out Mr. Schneider's letter, again, in the package of

3     materials submitted to the Court.

4          "I've worked hard for the last 65 years to provide

5     for my family and give them a life of which they can be

6     proud, to continue the legacy of my father's successful

7     company and particularly in my latter years to offer

8     extensive philanthropic gifts of my time and money to

9     others.  Now I find I must sit and watch while a smug,

10    arrogant, selfish man not only betrays the simple trust I

11    put in his company but I must endure the shame and

12    humiliation of watching him laugh about it in court and

13    create appeal after hollow appeal to delay the justice due

14    him."

15         Mr. Iantosca elsewhere in his 2008 submission, his

16    August 12, 2008 submission to the Court has another I think

17    particularly poignant vignette of how Carpenter has treated

18    the victims since this event.

19         "But even more than the financial effect of the

20    loss, I have been battered by -- I have been battered by

21    Carpenter's criminal conduct emotionally and mentally.  I

22    sat for hours on end as one of Carpenter's lawyers took my

23    deposition and essentially blamed me for the collapse of his

24    pyramid scam because I refused to lend him more money after

25    he stole my money.  Carpenter has threatened me through his

1    lawyers specifically saying that he would appeal the civil

2    case for years and years and years.  As it turns out, this

3    is what he did.  Carpenter has further threatened that no

4    matter what the result, at the end of the day I would never

5    see a penny because all of his assets were safety protected

6    in other people's names."

7          These reports of Carpenter's, of Mr. Carpenter's

8    conduct are highly telling of the characteristics of this

9    defendant for this crime.  And they overwhelm, they

10   overwhelm the other works that are documented in the papers,

11   in the defendant's papers as to good works that he has done,

12   including giving money to a prep school, giving money for a

13   field supporting a soccer program.  Whatever those things

14   are, we're here today because of the conduct Mr. Carpenter

15   exhibited and has continued to exhibit the last ten years

16   towards, the venom that has been directed towards these

17   victims.

18         Again, not to repeat the loss and departure

19   arguments, I'm going to turn to the nature and seriousness

20   of the offenses and the need to promote respect for the law.

21         The departure arguments that I've made with respect

22   to the loss, why the loss does not overstate the seriousness

23   here at all applies in terms of understanding the need to

24   reflect the seriousness of this offense.

25         Also, as I mentioned, he could have stopped at any

1    time.  This was avoidable.  And as you just heard, as I just

2    mentioned, there is lots of bad judgment proof, he's

3    judgment proof, he's judgment proof.  This loss has been

4    paid here but not a lot has been paid by Mr. Carpenter.

5    That's the record in this case.

6          And one of the fundamental tenets of criminal law

7    is that when you're dealing with a judgment-proof person is

8    to deal with that.  You have an incarcerative sentence so

9    there is a cost, so there is a price to be paid for taking

10   people's money, for defrauding people, even if they can't

11   get their money back from that person.

12         That's why, among other things, in order to show

13   just punishment for this offense the five-year sentence is

14   appropriate.

15         I am going to turn now to the issue of deterrence.

16   The Court has in the sentencing papers and elsewhere in the

17   record, during the ten years that Mr. Carpenter has been on

18   pretrial release in this matter it's not as if he has, it's

19   not as if the evidence shows that he his tried the straight

20   and narrow.

21         In addition to the crime that is documented with

22   respect to the unique (ph.) type civil litigation in

23   connection with this case, Mr. Carpenter now stands indicted

24   in the District of Connecticut for an insurance fraud scam.

25   He is currently under investigation for tax offenses in the