UNIVERSITAS EDUCATION, LLC,                    No. 3:20-CV-00738 (JAM)

V.

BENISTAR, ET AL.                               JUNE 25, 2020

## Objection to Plaintiff's Application for a Prejudgment Remedy and Motion for Disclosure of Assets

The defendants, Molly Carpenter, Donald Trudeau, Benistar Admin Services, Inc., TPG Group, Inc., and Moonstone Partners, LLC hereby object to the plaintiff's Application for a Prejudgment Remedy [Doc. #9] and its attendant Motion for Disclosure of Assets [Doc. #15].

# Table of Contents

**Page**

**Background**

A.      Universitas' first post-judgment enforcement proceeding sought the turnover of insurance proceeds payable to Moonstone Partners, LLC ........................................1

B.      Universitas' second post-judgment enforcement proceeding in 2014 nets a judgment against entities that do not include the defendants......................................3

C.      Six years later, Universitas improperly attempts to drag Molly Carpenter, Moonstone and BASI into the fray ...............................................................................4

**Argument**

A.      Because the district court's judgments are "final" under Connecticut law, Universitas cannot obtain a prejudgment remedy.........................................................5

B.      Even if a prejudgment remedy were available, Universitas cannot establish "probable cause" that it will prevail on its claims .........................................................7

     1.      Delaware does not recognize "reverse" piercing the corporate veil .......................8

     2.      Universitas' "alter ego" theory also fails because Daniel Carpenter was not an owner of any of the corporate defendants............................................11

     3.      Universitas also cannot use collateral estoppel to prove its "alter ego" theory of liability...................................................................................................12

C.      The doctrine of laches also bars Universitas' claims ....................................................18

D.      Even if Universitas were entitled to a constructive trust, it would not justify a $26 million prejudgment remedy ..........................................................................20

# Table of Authorities

**Cases**                                                                                                          **Page**

*Agee v. Newtek Bus. Servs. Holdco 5, Inc.*, No. 118 CV 02641JRSTAB,
2019 WL 4737070 (S.D. Ind. Sept. 27, 2019) ........................................................................11

*Alpha Beta Capital Partners, L.P. v. Pursuit Inv. Mgmt., LLC*,
193 Conn. App. 381 (2019), *cert. denied*, 334 Conn. 911 (2020) ...........................................7

*Am. Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir. 1988) ..................................................15

*Bakalar v. Vavra*, 550 F. Supp. 2d 548 (S.D.N.Y. 2008) ......................................................18

*Baltas v. Frenis*, No. 3:18 CV 1168 (WWE), 2019 WL 1552915
(D. Conn. Apr. 10, 2019) ...............................................................................................7–8, 22

*Base Optics Inc. v. Liu*, No. CV 9803-VCG, 2015 WL 3491495
(Del. Ch. May 29, 2015) .............................................................................................................8

*Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 n.10 (D. Del. 2010)............................8

*Berry v. Loiseau*, 223 Conn. 786 (1992)....................................................................................8

*Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74 (2d Cir. 2019) ...................................13, 14, 15

*Cahaly v. Benistar Prop. Exh. Trust Co., Inc.*, No. 01-0116BLS2
(Mass. Super. Ct. Sept. 23, 2003) .............................................................................................12

*Cahaly v. Benistar Prop. Exch. Tr. Co.*, 451 Mass. 343 (2008) ........................................15, 16

*Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377 (D. Conn. 2007) .............................................8

*Clark Rigging & Rental Corp. v. Liberty Mut. Ins. Co.*, 179 A.D. 3d 1510
(N.Y.A.D. 4th Dept. 2020) .........................................................................................................17

*Chapco, Inc. v. Woodway USA, Inc.*, 282 F. Supp. 3d 472 (D. Conn. 2017) ............................9

*Chro ex rel. Doe v. Travel & Tour Servs., Inc.*, No. CV 92 0519557,
1994 WL 386082 (Conn. Super. Ct. July 12, 1994) ...................................................................5

*Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79 (3d Cir. 2018)................9

*E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000).........................................11

ii

*Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26 (2d Cir.),
*cert. denied*, 546 U.S. 1076 (2005) ..................................................................................14

*Fireman's Fund Ins. Co. v. Fraund*, No. 88 Civ. 2765(MBM),
1989 WL 31490 (S.D.N.Y. Mar. 31, 1989) ...........................................................................18

*Garlington v. Clifford*, No. 3:17-CV-00726 (VAB), 2018 WL 3520498
(D. Conn. July 19, 2018)................................................................................................10

*Gagne v. Vaccaro*, 80 Conn. App. 436 (2003), *cert. denied*, 268 Conn. 920 (2019) ...............6

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38 (2d Cir. 1986),
*cert. denied*, 480 U.S. 948 (1987) ..................................................................................13

*Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784 (Del. Ch. 1992) ..............................................11

*Harrison v. Soroof Intn'l, Inc.*, 320 F. Supp. 3d 602 (2018) .............................................10, 13

*Hyundai-Wia Mach. Am. Corp. v. Rouette*, No. 3:10-CV-2020 JCH,
2013 WL 395474 (D. Conn. Jan. 31, 2013)...........................................................................15

*Iantosca v. Benistar Admin. Services, Inc.*, No. 08-cv-11785 (NMG)
(D. Mass. June 21, 2013) ...........................................................................................12, 15

*In re ALT Hotel, LLC*, 479 B.R. 781 (Bankr. N.D. Ill. 2012)................................................10

*In re Cohen*, 435 Mass. 7 (2001) .....................................................................................14

*In re Glick*, 568 B.R. 634 (Bankr. N.D. Ill. 2017) ..................................................................10

*In re Kilroy*, 357 B.R. 411 (Bankr. S.D. Tex. 2006)..............................................................13

*In re Sokol*, 113 F.3d 303 (2d Cir. 1997) ............................................................................13

*In re Opus E., L.L.C.*, 480 B.R. 561 (Bankr. D. Del. 2012) .............................................11, 12

*Intermed, Inc. v. Alphamedica, Inc.*, No. CIVA3:09CV00762 (JCH),
2009 WL 5184195 (D. Conn. Dec. 21, 2009)...........................................................................8

*Kertesz v. Korn*, 698 F.3d 89 (2d Cir. 2012)....................................................................11, 15

*Martin v. D.B. Martin Co.*, 88 A. 612 (Del.Ch.1913)........................................................11–12

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D. Del. 1989) ................................10

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168 (2d Cir. 2008)..........................9

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)..............................................................17

*Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131 (2d Cir. 1991).........5

*Ratha v. Phatthana Seafood Co.*, No. CV 16-4271-JFW (ASX),
2017 WL 8292391 (C.D. Cal. Dec. 21, 2017) .........................................................................11

*Robins Island Pres. Fund v. Southold Dev. Corp.*, 959 F.2d 409 (2d Cir.1992)....................18

*S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999) ...........................................16

*Shea v. Millett*, No. 17-CV-12233-ADB, 2019 WL 184074 (D. Mass. Jan. 14, 2019)...........16

*Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 385 (4th Cir. 2018).............................9, 10

*Stafford v. Intn'l Harvester Co.*, 668 F.2d 142 (2d Cir. 1981) ...............................................18

*Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505 (2d Cir. 2020).........................................13

*Stone v. Williams*, 873 F.2d 620 (2d Cir. 1989)......................................................................18

*Stuart & Sons, L.P. v. Curtis Pub. Co.*, 456 F. Supp. 2d 336 (D. Conn. 2006)......................18

*TES Franchising, LLC v. Feldman*, 286 Conn. 132 (2008).......................................................6

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995)............................15

*United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave.
Greenwich, Connecticut*, 718 F. Supp. 2d 215 (D. Conn. 2010)......................................20–21

*United States v. Benitez*, 779 F.2d 135 (2d Cir. 1985)............................................................21

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016) ........................................13

*United States v. Garcia*, 938 F.2d 12 (2d Cir. 1991) ..............................................................10

*United States v. Schwimmer*, 968 F.2d 1570 (2d Cir. 1992).....................................................21

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590-LTS-HBP,
2012 WL 2045942 (S.D.N.Y. June 5, 2012) .......................................................................1, 7

*Universitas Educ., LLC v. Nova Grp., Inc.*, 513 F. App'x 62 (2d Cir. 2013).......................1, 7

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590-LTS-HBP,
2013 WL 6123104 (S.D.N.Y. Nov. 20, 2013)......................................................................1–3

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
2014 WL 3883371  (S.D.N.Y. Aug. 7, 2014)...................................................3–4, 7, 18–19

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP
(Mar. 31, 2020 S.D.N.Y.) ..................................................................................................4

*UOP v. Andersen Consulting*, No. CV 950145753, 1997 WL 219820
(Conn. Super. Ct. Apr. 24, 1997)........................................................................................8

*Weber v. FujiFilm Med. Sys. U.S.A., Inc.*, 2013 WL 6592592 (D. Conn. Dec. 16, 2013) ........6

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................11

Fed. R. Civ. P. 69(a)(1)..................................................................................................5–6

Fed. R. Civ. P. 64(a) ..........................................................................................................6

Fed. R. App. P. 4(a) ...........................................................................................................7

**Statutes**

26 U.S.C. § 1031..............................................................................................................16

Conn. Gen. Stat. § 33-673c.............................................................................................10

Conn. Gen. Stat. § 52-278a(d) ..........................................................................................6

Conn. Gen. Stat. § 52-278b................................................................................................6

Conn. Gen. Stat. § 52-278d(a) ..........................................................................................7

**Restatement**

Restatement (Second) of Conflict of Laws, § 142 cmt. d (1971) ...........................................18

**Background**

This action is Universitas' latest attempt to further enforce a money judgment it obtained eight years ago in the Southern District of New York against Nova Group, Inc. *See Universitas Educ., LLC v. Nova Grp., Inc*., No. 11 CIV. 1590-LTS-HBP, 2012 WL 2045942 (S.D.N.Y. June 5, 2012). None of the undersigned defendants were parties in that action, which can be summarized as follows:

Nova Group, Inc. was the trustee, sponsor, and fiduciary of the Charter Oak Welfare Benefit Plan. *Id*. at *1. Holdings Capital Group, the employer of Sash Spencer, became a participating employer in the Plan, and two insurance policies on Spencer's life, totaling $30 million, were placed into the Plan. *Id*. Spencer named Universitas as the sole, irrevocable beneficiary of the proceeds as Plan benefits. *Id*. In May 2009, after Spencer's death, the life insurance carrier paid out $30 million in insurance proceeds to the Plan. *Id*. Nova, however, denied Universitas' claim to the Plan death benefit. *Id*. The parties submitted their dispute to binding arbitration, after which the arbitrator issued an award finding Nova liable to Universitas in the amount of $26,558,308. *Id*. On June 5, 2012, the district court for the Southern District of New York granted Universitas' petition to confirm the arbitration award (plus interest) and entered final judgment. *Id*. Thereafter, in March 2013, the Second Circuit affirmed the district court's judgment. *Universitas Educ., LLC v. Nova Grp., Inc*., 513 F. App'x 62, 63 (2d Cir. 2013).

**A.      Universitas' first post-judgment enforcement proceeding sought the turnover of insurance proceeds payable to Moonstone Partners, LLC.**

In 2013, in accordance with New York law, Universitas moved the district court for a post-judgment turnover order to enforce its judgment and invalidate alleged fraudulent transfers that Nova had made to third parties. *See Universitas*

*Educ., LLC v. Nova Grp., Inc*., No. 11 CIV. 1590-LTS-HBP, 2013 WL 6123104, at *7 (S.D.N.Y. Nov. 20, 2013). After a hearing, the district court issued findings of fact, which focused on the actions of two of Nova's officers: Daniel Carpenter and Wayne Bursey. *See id*. at *1–2.[1] The district court found that Daniel Carpenter, in particular, "directly controlled material aspects of the affairs of Nova and the Charter Oak Trust during the relevant period." *Id*. at *3. The district court also found that Daniel Carpenter and Wayne Bursey transferred the Spencer life insurance proceeds from the Charter Oak Trust to Grist Mill Capital, LLC—a third-party company that Carpenter owned and Bursey managed. *Id*.

From there, the district court found, the Spencer life insurance proceeds were transferred in various amounts to other third-party companies that Daniel Carpenter also controlled, including Moonstone Partners, LLC. *Id*. at *4. Notably, neither Benistar Admin Services, Inc., TPG Group, Inc., Molly Carpenter nor Donald Trudeau were recipients of any of the funds. *See id*. The district court found that Moonstone had received only $1.1 million of the Spencer life insurance proceeds, which it used to purchase a property in Rhode Island in 2009. *Id*. at *4–5. The Moonstone property later suffered storm damage in 2012 but was protected by flood insurance and property/casualty insurance. The insurer, USAA, was about to make a payment under the flood insurance policy, so Universitas sought an order requiring USAA to turn over to it the flood insurance proceeds otherwise payable to Moonstone. *Id*. at *3, 6. This payment equaled approximately $350,000.[2] Moonstone, as the district court found, only existed to purchase the Rhode Island

---

[1]  Wayne Bursey died in March 2015. (*See* Death Cert.)(Ex. 1 to Labelle Aff.)**(Ex. A.)**

[2]  Because USAA paid Universitas directly, the exact amount of the payment is unknown.

property. *Id.* at *5. Because the district court found that the property was "purchased and insured through fraudulent conveyances" of the Spencer life insurance proceeds, it granted Universitas' turnover petition. *Id.* at *12–13.

The district court did not, however, make any finding that any of the undersigned defendants (including Moonstone) or any other entity, *e.g.*, Grist Mill Capital, LLC, are liable for Universitas' judgment as debtors or as "alter egos" of Nova Group, Inc., Charter Oak Trust, or Daniel Carpenter. Further, after the district court's November 2013 turnover order, Moonstone reached an agreement with Universitas to split any insurance proceeds paid by USAA under the property and casualty policy. Moonstone bore the expense of the coverage litigation with USAA and Universitas eventually received another $103,484.24 from USAA.

**B.     Universitas' second post-judgment enforcement proceeding in 2014 nets a judgment against entities that do not include the defendants.**

In October 2013, before the district court issued its first turnover order, Universitas filed a second motion for a turnover order against Daniel Carpenter himself and "his affiliated entities": Grist Mill Capital, LLC; Grist Mill Holdings, LLC; the Grist Mill Trust Welfare Benefit Plan; Avon Capital, LLC; Hanover Trust Co.; Carpenter Financial Group; and Phoenix Capital Management, LLC. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 WL 3883371, at *1 (S.D.N.Y. Aug. 7, 2014). In August 2014, the district court issued its decision after an evidentiary hearing. Relying on the factual findings in its first turnover order, the district court found that Daniel Carpenter had controlled and used those "affiliate entities" to fraudulently transfer among themselves the Spencer life insurance proceeds out of the Charter Oak Trust. *Id.* at *2–3. The district court again focused on the actions of Daniel Carpenter and Wayne Bursey. *See id.* The district

court thus found that Daniel Carpenter and the subject affiliate entities were joint and severally liable for "a sum of money equal to the portion of the [Spencer] Insurance Proceeds of which it was a transferee." *Id*. at *5.[3]

The undersigned defendants—including Moonstone Partners, LLC—were never parties to that proceeding. Further, the district court did not enter judgment against them or make any finding that they are liable to pay Universitas' judgment as "alter egos" of Nova Group, Inc., Daniel Carpenter, or any of the "affiliated entities" subject to the district court's judgment.

**C.      Six years later, Universitas improperly attempts to drag Molly Carpenter, Moonstone and BASI into the fray.**

In March 2020, six years after the district court's 2014 judgment against Daniel Carpenter et al., Universitas filed improper letter motions with the district court, seeking additional money judgments against non-parties Molly Carpenter, Moonstone Partners, LLC and Benistar Admin Services, Inc. ("BASI") as alleged "alter egos" of the judgment debtors. (*See* Order No. 661) *Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11CV1590-LTS-HBP (March 31, 2020 S.D.N.Y.)**(Ex. B.)** Unsurprisingly, the defendants objected, and the district court denied Universitas' letter motions as improper, albeit without prejudice to refile using proper motions practice. *Id*. The district court further stated:

> Any such motion must address the legal basis, if any, for the Court's exercise of personal jurisdiction over the non-party entities named in the above-referenced letter motions, whether such a motion is the appropriate procedural mechanism by which the Court can enforce its Memorandum Order confirming the arbitration award in this case

---

[3]      "New York law permits a judgment creditor to obtain a money judgment in lieu of turnover of specific property where, as here, recipients of fraudulent conveyances have dissipated the transferred assets." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 WL 3883371, at *9 (S.D.N.Y. Aug. 7, 2014).

(Docket Entry No. 40) against non-parties to the underlying litigation, and whether such motion practice is consistent with the limitations of ancillary jurisdiction as described in *Peacock v. Thomas*, 516 U.S. 349 (1996), and the Court's order interpreting *Peacock* and denying Plaintiff's prior turnover motion in this case. *See* Docket Entry No. 545. Any such motion must also address the legal and factual basis for the requested judgment amount in light of any recoveries Plaintiff has already obtained.

*Id.*

Universitas declined the district court's invitation to file another turnover motion under New York law. Instead, it commenced this enforcement action and filed the instant Application for a Prejudgment Remedy under Connecticut law. For the reasons stated below, this Court must deny Universitas' application.

## Argument

### A.  Because the district court's judgments are "final" under Connecticut law, Universitas cannot obtain a prejudgment remedy.

Universitas concedes that "this is an action to enforce a judgment entered in the United States District Court for the Southern District of New York." (Compl. [#1] ¶ 15.) When, like here, a plaintiff seeks to enforce a previous judgment against the judgment debtor's alleged "alter egos," a new judgment is not entered; rather, "the previous judgment is … being enforced against entities who were, in essence, parties to the underlying dispute; the alter egos are treated as one entity." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc*., 933 F.2d 131, 142–43 (2d Cir. 1991); *accord, Chro ex rel. Doe v. Travel & Tour Servs., Inc*., No. CV 92 0519557, 1994 WL 386082, at *3 (Conn. Super. Ct. July 12, 1994)(stating that claim to enforce previous judgment against debtor's alter ego seeks to impose liability by showing that, as the alter ego, it "was, in essence, a party to the original action.")

A party enforcing a money judgment in a federal court must follow the execution procedures of "the state where the court is located." Fed. R. Civ. P.

69(a)(1). The same is true for a party seeking a prejudgment remedy to enforce a judgment. *See* Fed. R. Civ. P. 64(a); *Weber v. FujiFilm Med. Sys. U.S.A., Inc.*, 2013 WL 6592592, at *5 (D. Conn. Dec. 16, 2013)(recognizing that Rule 64 requires a party to follow Connecticut law when seeking a prejudgment remedy to enforce a judgment in this district).

Connecticut General Statutes §§ 52-278a to 52-278n govern prejudgment remedies in Connecticut. "[N]o prejudgment remedy shall be available to a person in any action at law or equity … unless he has complied with the provisions of sections 52-278a to 52-278g, inclusive …." Conn. Gen. Stat. § 52-278b. "Because the right to a prejudgment remedy is in derogation of the common law, the statutory scheme governing prejudgment remedies must be strictly construed." *TES Franchising, LLC v. Feldman*, 286 Conn. 132, 147 (2008). A "prejudgment remedy" is defined as:

> any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property **prior to final judgment** but shall not include a temporary restraining order.

Conn. Gen. Stat. § 52-278a(d)(emphasis added).

A "final judgment" in the prejudgment remedy context occurs when the appeal process has expired. *Gagne v. Vaccaro*, 80 Conn. App. 436, 454 (2003), *cert. denied*, 268 Conn. 920 (2019)(holding that "a prejudgment remedy is available to a party who has prevailed at the trial level and whose case is on appeal."); *accord, Weber*, 2013 WL 6592592, at *6 (D. Conn. Dec. 16, 2013). "It is well established that the prejudgment remedy statutes apply and are applicable subsequent to the rendering of a judgment in the trial court, which trial court judgment is pending

appeal." *Alpha Beta Capital Partners, L.P. v. Pursuit Inv. Mgmt., LLC*, 193 Conn. App. 381, 451, (2019), *cert. denied*, 334 Conn. 911 (2020).

Here, the district court entered judgment against Nova Group, Inc. on June 5, 2012, and the Second Circuit affirmed that judgment on March 4, 2013. *Universitas Educ., LLC*, 2012 WL 2045942 at *1, *aff'd*, 513 F. App'x 62. Further, the district court entered judgment against Daniel Carpenter and his "affiliated entities" on August 7, 2014. *Universitas Educ., LLC*, 2014 WL 3883371 at *11. No appeal of that judgment was taken, and the 30-day appeal period has expired. *See* Fed. R. App. P. 4(a). Because both judgments are now "final," Universitas cannot obtain a prejudgment remedy to enforce them here. Thus, the Court must deny Universitas' application and its motion for disclosure of assets.

**B.      Even if a prejudgment remedy were available, Universitas cannot establish "probable cause" that it will prevail on its claims.**

Under Connecticut law, a plaintiff seeking a prejudgment remedy must prove that there is "probable cause" that it will obtain a judgment in its favor in an amount equal to, or greater than, the prejudgment remedy it is seeking, "taking into account any defenses, counterclaims or set-offs …." Conn. Gen. Stat. § 52-278d(a). Probable cause is defined as:

> a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Probable cause is a flexible common-sense standard. It does not demand that a belief be correct or more likely true than false.

*Baltas v. Frenis*, No. 3:18 CV 1168 (WWE), 2019 WL 1552915, at *7 (D. Conn. Apr. 10, 2019)(Spector, Mag. J.)(citation omitted).

The district court will "consider not only the validity of the plaintiff's claim but also the amount that is being sought." *Id*. at *6. "The Court's decision must be

based on its appraisal of the legal issues and the credibility of the witnesses and other evidence." *Id.* (citation omitted).

Universitas asserts two claims: (1) piercing the corporate veil; and (2) constructive trust. (Compl. [#1], Counts 1, 3, 6).[4] "[T]here is no separate cause of action under Connecticut law for constructive trust, but rather a constructive trust is a remedial device designed to prevent unjust enrichment." *Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 383 (D. Conn. 2007)(citation omitted). Likewise, "[p]iercing the corporate veil is not a cause of action; it is an equitable remedy." *Intermed, Inc. v. Alphamedica, Inc.*, No. CIVA3:09CV00762 (JCH), 2009 WL 5184195, at *8 (D. Conn. Dec. 21, 2009)(citation omitted); *accord*, *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 n.10 (D. Del. 2010); *Base Optics Inc. v. Liu*, No. CV 9803-VCG, 2015 WL 3491495, at *23 (Del. Ch. May 29, 2015).

Universitas cannot succeed on its claims for the following reasons:

### 1. Delaware does not recognize "reverse" piercing the corporate veil.

Universitas limits the scope of its PJR application to the "alter ego claims against Molly Carpenter and GM Partners for approximately $26 million, and a constructive trust claim against GM Partners for approximately $26 million." (Pl's Mem. [#9-1] at 7.) Universitas contends that Molly Carpenter is liable for the August 2014 judgment against Daniel Carpenter "through alter ego liability." (*Id.* at 9). To make this leap, Universitas argues first—using a "reverse" piercing theory—that defendants Moonstone Partners, LLC and Benistar Admin Services,

---

[4]  Universitas also asserts in Count Two a purported cause of action for "attorneys' fees." However, "[t]here is no independent cause of action for attorneys' fees in Connecticut." *UOP v. Andersen Consulting*, No. CV 950145753, 1997 WL 219820, at *7 (Conn. Super. Ct. Apr. 24, 1997)(citing *Berry v. Loiseau*, 223 Conn. 786, 825–27 (1992)).

Inc. ("BASI") are liable for the judgment against Daniel Carpenter as his "alter egos." (*Id*. at 10, 11.) Then, using a traditional veil-piercing approach, Universitas argues that Molly Carpenter, in turn, is liable for Moonstone and BASI's alter-ego liability for Daniel Carpenter. (*See id*.) This leap-frog approach to reach Molly Carpenter, however, fails as a matter of law.

Universitas argues that Delaware law applies to the issue of corporate veil piercing. Because BASI and Moonstone are incorporated in Delaware, they concede that Delaware law applies when determining whether to pierce their corporate veils. *Chapco, Inc. v. Woodway USA, Inc*., 282 F. Supp. 3d 472, 481 (D. Conn. 2017). Delaware recognizes the traditional approach to corporate veil piercing, whereby the court may disregard the corporate fiction to "require an owner to answer for the entity's debts." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008)(applying Delaware law). "The shareholders of a corporation and the members of an LLC generally are not liable for the debts of the entity, and a plaintiff seeking to persuade a Delaware court to disregard the corporate structure faces 'a difficult task.'" (*Id*. at 176)(citation omitted). "Delaware public policy does not lightly disregard the separate legal existence of corporations." *Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A*., 879 F.3d 79, 86 (3d Cir. 2018)(stating that Delaware honors the corporate form unless the "*traditional* law of piercing the corporate veil is met," which is "rare.")(emphasis added).

Indeed, Delaware does not recognize "reverse" veil piercing, *i.e*., when the court "attaches liability to the *entity* for a judgment against the individuals who hold an ownership interest in that entity." *Sky Cable, LLC v. DIRECTV, Inc*., 886 F.3d 375, 385, 386 (4th Cir. 2018)(stating that "no Delaware court to date has recognized reverse veil piercing …."). "Not only has Delaware never accepted reverse piercing,

but the general tenor of Delaware corporate law suggests its acceptance would be doubtful. Delaware has an exceptionally strong policy of respecting the corporate form." *In re ALT Hotel, LLC*, 479 B.R. 781, 802 (Bankr. N.D. Ill. 2012). *See In re Glick*, 568 B.R. 634, 661 (Bankr. N.D. Ill. 2017)("Nothing has changed since 2012. The Delaware courts still have not recognized reverse piercing."). No court in the Second Circuit—or the District Court of Delaware or the Third Circuit for that matter—has held otherwise.[5]

Universitas' veil-piercing theory thus fails in its first stage. That is, under Delaware law, the district court cannot "reverse pierce" the corporate veil to hold Moonstone or BASI (or defendant TPG Group, Inc.) liable for the August 2014 judgment against Daniel Carpenter. And because Moonstone, BASI and TPG Group are not liable for the judgment against Daniel Carpenter, there is no basis to pierce their corporate veils under the traditional approach to hold Molly Carpenter (or defendant Donald Trudeau) liable for that same judgment. In fact, Universitas does not cite—and the defendants have not found—a single case allowing such a sequential finding of liability, even if reverse piercing were allowed.[6] For these reasons, not only does Universitas lack probable cause for a prejudgment remedy,

---

[5]     Universitas relies on the Fourth Circuit's decision in *Sky Cable, LLC,* 886 F.3d at 385, *infra*, which only *predicted* on scant evidence that Delaware would recognize reverse veil piercing. (*See* Pl.'s Mem. 8 n.2.) Decisions by the Fourth Circuit—which does not even include Delaware—"are not binding on this Court." *Garlington v. Clifford*, No. 3:17-CV-00726 (VAB), 2018 WL 3520498, at *2 (D. Conn. July 19, 2018)(rejecting reliance on Fourth Circuit case); *see also United States v. Garcia*, 938 F.2d 12, 15 (2d Cir. 1991)("we are, of course, not bound by a holding of a sister circuit."). Of note, Connecticut abolished reverse veil piercing in July 2019. *See* Conn. Gen. Stat. § 33-673c.

[6]     Universitas' cited cases (Pl's Mem. at 11), *Harrison v. Soroof Intn'l, Inc*., 320 F. Supp. 3d 602 (2018) and *Mobil Oil Corp. v. Linear Films, Inc*., 718 F. Supp. 260 (D. Del. 1989) both stand for the unremarkable traditional approach to veil piercing by holding a parent company liable for the acts of its subsidiary. Neither took the additional step of piercing the veil of the parent company to reach its owners.

but its claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6) for a failure to state a claim upon which relief could be granted.

> **2. Universitas' "alter ego" theory also fails because Daniel Carpenter was not an owner of any of the corporate defendants.**

Under Delaware law, the alter ego theory of liability "[only] comes into play in piercing the corporate veil when one seeks to hold liable an individual *owner* who controls the [company]." *In re Opus E., L.L.C*., 480 B.R. 561, 570 (Bankr. D. Del. 2012)(quoting *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 333 n.7 (3d Cir. 2000))(dismissing "alter ego" claim against company because it did not have any ownership interest in debtor company). *Accord, Ratha v. Phatthana Seafood Co*., No. CV 16-4271-JFW (ASX), 2017 WL 8292391, at *4 (C.D. Cal. Dec. 21, 2017)(same) (applying Delaware law); *Agee v. Newtek Bus. Servs. Holdco 5, Inc*., No. 118 CV 02641JRSTAB, 2019 WL 4737070, at *6 (S.D. Ind. Sept. 27, 2019)(same)(applying Delaware law).

As the Second Circuit has recognized, an action to pierce the corporate veil under Delaware law "charges that the corporation's *owners* used the corporation as 'a mere instrumentality or alter ego' and disregarded corporate formalities." *Kertesz v. Korn*, 698 F.3d 89, 91 (2d Cir. 2012)(quoting *Geyer v. Ingersoll Publ'ns Co*., 621 A.2d 784, 793 (Del. Ch. 1992)(emphasis added). "Where a corporation's *owners* abuse the corporation's legally limited liability to effect injustice, the corporation may be 'considered as an agency, adjunct or instrumentality of' its *owner* … and a court may exercise its equitable power to disregard the legal privilege of the corporate form to reach the *owner's* assets." *Id*. (quoting *Martin v. D.B. Martin Co*., 88 A. 612, 615 (Del.Ch.1913)(emphasis added). "The alter-ego claim thus turns on

the facts of the *owner's* operation of the corporation and its relationship to the alleged victim." *Id.* (emphasis added).

Here, Daniel Carpenter does not have any ownership interest in BASI, Moonstone Partners, LLC, or TPG Group, Inc. BASI is owned by an Employee Stock Ownership Plan ("ESOP"), which became effective on February 1, 2000. (*See* copies of the ESOP and the Favorable Determination Letter that the ESOP received from the IRS)(Ex. 2 to Labelle Aff.)**(Ex. A.)** Moonstone Partners, LLC is a limited liability company whose members are Molly Carpenter and Caroline Financial Group, Inc.[7] 9 (*See* Operating Agreement)(Ex. 3 to Labelle Aff.) TPG Group, Inc. is a stock corporation whose shareholders are Molly Carpenter, Donald Trudeau and BASI. (*See* TPG's Cert. of Inc. and stock certificates)(Ex. 4 to Labelle Aff.) Thus, even if Delaware recognized reverse veil piercing, which it does not, Moonstone, BASI and TPG Group could not be held liable as Daniel Carpenter's "alter egos" as a matter of law.

> **3.      Universitas also cannot use collateral estoppel to prove its "alter ego" theory of liability.**

Universitas argues that, under Delaware offensive collateral estoppel, Daniel Carpenter and Molly Carpenter are estopped from denying that BASI and Moonstone are their "alter egos." (*See* Pl.'s Mem. [#9-1] at 8, 10). Universitas relies on the findings in three cases: (1) *Cahaly v. Benistar Prop. Exh. Trust Co., Inc.*, No. 01-0116BLS2 (Mass. Super. Ct. Sept. 23, 2003); (2) *Iantosca v. Benistar Admin. Services, Inc.*, No. 08-cv-11785 (NMG)(D. Mass. June 21, 2013); and (3) *United*

---

[7]      "In Delaware, a member of a limited liability company is the equivalent of a shareholder of a corporation." *In re Opus E., L.L.C.*, 480 B.R. 561, 570 (Bankr. D. Del. 2012)(citing 6 Del. C. § 18–302).

*States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016). None of these cases satisfies the requirements for collateral estoppel.

To start, Delaware law does not apply here. "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred." *In re Sokol*, 113 F.3d 303, 306 (2d Cir. 1997). Likewise, "[t]he preclusive effect of a judgment rendered by a federal court sitting in diversity is determined by the law of the state in which the rendering court sat." *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 n.3 (2d Cir. 2020). However, "federal law governs the collateral estoppel effect of a federal criminal conviction in a subsequent diversity action." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986), *cert. denied*, 480 U.S. 948 (1987).[8]

Nonmutual offensive collateral estoppel, a form of issue preclusion, "preclude[s] a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79 (2d Cir. 2019)(citation omitted). To invoke this doctrine, a plaintiff must satisfy four conditions:

1. the issues in both proceedings must be identical,

2. the issue in the prior proceeding must have been actually litigated and actually decided,

3. there must have been a full and fair opportunity for litigation in the prior proceeding, and

4. the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

---

[8]     Thus, contrary to Universitas' argument (Pl. Mem. at 8),  *In re Kilroy*, 357 B.R. 411 (Bankr. S.D. Tex. 2006)(applying Delaware law) and *Harrison v. Soroof Int'l, Inc.* 320 F. Supp. 3d 602 (D. Del. 2018)(same) do not apply.

*Id.* (citation omitted).[9]

Use of offensive collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 37 (2d Cir.), *cert. denied*, 546 U.S. 1076 (2005). Further, "in order to blunt the fear that nonmutual offensive collateral estoppel may be unfair to a defendant or fail to promote judicial economy, district courts must ensure that application of the doctrine is not unfair." *Bifolk,* 936 F.3d at 80. Thus, when applying the doctrine would be unfair to the defendant, "a trial judge should not allow [it]." *Id.* (citation omitted). *See In re Cohen*, 435 Mass. 7, 16 (2001)(stating that, under Massachusetts law, fairness to the opponent is "the decisive consideration" in determining whether to apply offensive collateral estoppel.)

The courts' findings in *Cahaly*, *Iantosca*, and *Carpenter* do not satisfy the requisite elements for offensive collateral estoppel. To start, Donald Trudeau, TPG Group, Inc. and Moonstone Partners, LLC were not parties or judgment debtors in any of those cases. And Molly Carpenter was certainly not a defendant in Daniel Carpenter's criminal case. These defendants did not "actually litigate," nor did the respective courts "actually decide," the specific issue of whether the court should pierce the corporate veil to reach them *under the facts of those cases*. Identicality of issues "is concerned not with claims or ... causes of action as a whole, … but with

---

[9]    The Massachusetts law of nonmutual collateral estoppel is substantially similar. There must be "an identity of issues, a finding adverse to the party against whom it is being asserted, and a judgment by a court or tribunal of competent jurisdiction…. A defendant must also have a full and fair opportunity to litigate the issue in the first action." *In re Cohen*, 435 Mass. 7, 15, 805 (2001).

*issues*—single, certain and material point[s] arising out of the allegations and contentions of the parties ….” *Bifolk*, 936 F.3d at 80–81 (citations and quotation marks omitted). “[D]isregarding corporate separateness as an equitable remedy is one that differs with the circumstances of each case.” *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988).

For this reason, Universitas also cannot rely on the *Cahaly* court’s finding that BASI should be held liable as an “alter ego” of the judgment debtor in that case, Benistar Property Exchange Trust Co. (“Benistar Trust”), under the facts of that case.[10] Nor can Universitas rely on the jury’s finding in *Iantosca*—a federal action initiated by the same *Cahaly* plaintiffs to enforce their state judgment—that “Benistar 419 Plan Services, Inc. is the alter ego of Daniel Carpenter or [BASI], such that it is appropriate to disregard their separate corporate identities.” *Iantosca*, No. 08-cv-11785 (NMG) at 2)(Pl.’s Ex. 4.)

An alter-ego claim “turns on the facts of the owner’s operation of the corporation and its relationship *to the alleged victim*.” *Kertesz v. Korn*, 698 F.3d 89, 91 (2d Cir. 2012)(emphasis added). Further, veil piercing determinations are fact specific, complex, and often “involve questions of motive and intent.” *Hyundai-Wia Mach. Am. Corp. v. Rouette*, No. 3:10-CV-2020 JCH, 2013 WL 395474, at *8 (D. Conn. Jan. 31, 2013)(citation omitted); *see Thomson-CSF, S.A. v. Am. Arbitration Ass’n*, 64 F.3d 773, 777 (2d Cir. 1995). “[S]o too the results of an earlier

---

[10]     *See Cahaly v. Benistar Prop. Exch. Trust Co.*, No. SJC-10041 at 2 (Mass. June 26, 2008)(Pl.’s Ex. 3)(denying rehearing)(noting that it had affirmed the trial court’s finding that “it was appropriate to pierce the corporate veil (disregard the corporate form) of Benistar Trust.”) The court did not, as Universitas implies, “reverse pierce” the corporate veil to hold BASI liable for Daniel Carpenter or Molly Carpenter.

resolution of an issue may simply be wrong." *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999).

Universitas was not a plaintiff, party, or judgment creditor in *Cahaly* or *Iantosca.* The plaintiffs in those cases were investors who had contracted with a different Benistar entity as a qualified intermediary "to hold their funds in escrow while they engaged in tax-advantaged 'like-kind' property exchanges in accordance with Internal Revenue Code, 26 U.S.C. § 1031." *Cahaly v. Benistar Prop. Exch. Tr. Co.*, 451 Mass. 343, 345 (2008). The plaintiffs claimed that the defendants had breached their contractual and fiduciary duties by depositing the funds in margin accounts and then using those funds to engage in uncovered option trading that resulted in losses. *Id.* None of these facts and transactions involved Universitas, Sash Spencer or the insurance proceeds at issue here. Further, the transactions at issue in *Cahaly* occurred nearly ten years before the vastly different transactions at issue in this case between Nova Group, Inc., Sash Spencer and Universitas.

Further, as noted, the *Cahaly* court applied Massachusetts' traditional "alter ego" approach to hold a parent company liable for the acts of a subsidiary; it did not as Universitas is trying to do here, "reverse pierce" the corporate veil to hold the undersigned defendants liable for Daniel Carpenter. Like Delaware, "[t]he Massachusetts Supreme Judicial Court has never explicitly, or even inferentially, adopted reverse veil piercing in any form." *Shea v. Millett*, No. 17-CV-12233-ADB, 2019 WL 184074, at *3 (D. Mass. Jan. 14, 2019).

Last, even if Universitas could satisfy the enumerated elements for offensive collateral estoppel, it would be unfair and inequitable to apply it here. Universitas was not a judgment creditor in *Cahaly* or *Iantosca*. Those courts did not determine Universitas' rights or the defendants' obligations and liability to Universitas. Further,

the specific equities allowing the plaintiffs in those cases to pierce the corporate veil are not the same; Universitas cannot coopt those equities, which must be determined here on their own facts, to skip that factual inquiry and impose on innocent parties a $26+ million judgment that dwarfs the one in *Cahaly* (approximately $8.7 million). *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979)(stating that offensive collateral estoppel is unfair and should not be allowed where amount in controversy in the first case is far less than amount at stake in second case, and thus, defendant may have had "little incentive to defend [the first suit] vigorously, particularly if future suits are not foreseeable.").

To establish alter ego liability, a party seeking to pierce the corporate veil must establish that "(1) the owners exercised complete domination of the corporation in respect to *the transaction attacked*; and (2) that such domination was used to commit a fraud or wrong *against the plaintiff* which resulted in the *plaintiff's* injury." *Clark Rigging & Rental Corp. v. Liberty Mut. Ins. Co.*, 179 A.D. 3d 1510, 1511 (N.Y.A.D. 4th Dept. 2020)(emphasis added).  The transaction that Universitas attacks in this litigation is the misappropriation of the Spencer life insurance proceeds and the resulting loss of approximately $30 million. Universitas misplaces its reliance on certain litigation in Massachusetts (Doc. 659, Exhibit 1/Exhibit A and *Iantosca v. Benistar Admin. Services.*, 567 Fed. Appx. 1 (2014))("the Cahaly Litigation").  The Cahaly Litigation involved different plaintiffs and arose from tortious conduct occurring nearly twenty years ago that had nothing to do with Universitas or its loss. Neither this Court nor any other has ever made an alter ego liability finding against BASI or Molly Carpenter with respect to the transaction at issue in this litigation.  This Court should therefore reject Universitas' attempt to use offensive collateral estoppel here.

**C.** **The doctrine of laches also bars Universitas' claims.**

Under Connecticut law, "a party seeking equitable relief is barred by laches if it has engaged in unreasonable delay and if the delay has prejudiced the party against whom such relief is sought." *Stuart & Sons, L.P. v. Curtis Pub. Co.*, 456 F. Supp. 2d 336, 347 (D. Conn. 2006).[11] A plaintiff's delay is unreasonable if the plaintiff "discovers or by the exercise of reasonable diligence could have discovered the wrong of which he complains." *Id.* (citation omitted). A district court may decide the issue of laches when "the subordinate facts found make such a conclusion inevitable as a matter of law." *Id.* (citation omitted).

A plaintiff's delay in bringing a claim results in prejudice to the defendant if "it would be inequitable, in light of a change in [the defendant's] position, to allow [the] claim to proceed or because the delay makes it difficult to garner evidence to vindicate his or her rights." *Robins Island Pres. Fund v. Southold Dev. Corp.*, 959 F.2d 409, 423 (2d Cir.1992). Prejudice can result from many things, such as "the death of witnesses or on account of fading memories or stale evidence." *Stone v. Williams*, 873 F.2d 620, 625 (2d Cir. 1989).

Here, Wayne Bursey, a seminal witness, integral to Nova's disbursement of the Spencer insurance proceeds and well-known to Universitas, died in 2015. Indeed, the district court for the Southern District of New York concluded in its August 2014 judgment against Daniel Carpenter that Bursey, who was President of Nova and Trustee of the Charter Oak Trust, "was Mr. Carpenter's *confederate in the fraudulent*

---

[11]  In a federal diversity action "the forum state's rule for choosing a statute of limitations is used to determine the timeliness of all claims for relief, no matter what substantive law governs those claims." *Fireman's Fund Ins. Co. v. Fraund*, No. 88 Civ. 2765(MBM), 1989 WL 31490, at *5 (S.D.N.Y. Mar. 31, 1989)(citing *Stafford v. Intn'l Harvester Co.*, 668 F.2d 142, 147 (2d Cir. 1981). "[T]he local law of the forum determines whether an action is barred by laches." *Bakalar v. Vavra*, 550 F. Supp. 2d 548, 551 (S.D.N.Y. 2008)(quoting Restatement (Second) of Conflict of Laws, § 142 cmt. d (1971)).

*transfers* found in the [district court's first transfer order]." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 WL 3883371, at *2 (S.D.N.Y. Aug. 7, 2014)(emphasis added).

The Court noted further:

> Despite the fact that Mr. Bursey had earlier acknowledged a fiduciary duty to pay [Universitas] the trust funds, he proceeded to transfer the entire amount of the Insurance Proceeds to Grist Mill over a period of six months while wrongly denying [Universitas'] claims." (November Order at 18.) The Court further found that this transfer was designed to fraudulently benefit Mr. Carpenter.

*Id.*

While Universitas is attempting to hold the undersigned defendants responsible for the fraudulent transfer of the Spencer insurance proceeds, the district court's findings in the Southern District of New York strongly suggest that the funds transfer was, simply put, a private deal between Wayne Bursey and Daniel Carpenter that had nothing to do with the undersigned defendants. If Mr. Bursey were alive to tell it, he would likely testify that his transfer of the insurance proceeds from the Charter Oak Trust to Grist Mill Capital was done without the knowledge, consent or involvement of any of the undersigned defendants.

The Spencer insurance proceeds were paid to the Charter Oak Trust in May 2009. In advance of that payment, Wayne Bursey opened a new bank account in the name of "The Charter Oak Trust, Wayne H. Bursey Trustee." Attached as Exhibit 5 to Attorney Dan Labelle's Affidavit (**Ex. A**) is a copy of the account opening paperwork for this account at TD Northbank. Wayne Bursey was the only authorized signatory on this account. Lincoln National Life paid the Spencer policy proceeds to Wayne Bursey by checks delivered on May 18, 2009. Attached as Exhibit 6 to Attorney Labelle's Affidavit is an e-mail communication between

Daniel Carpenter and Wayne Bursey on the same day. In this email, Mr. Carpenter tells Mr. Bursey, "check mail and speak only to me … only to me," to which Mr. Bursey responds, "You bet." The evidence adduced at the various hearings in the Southern District demonstrated that, after Mr. Bursey transferred the insurance proceeds from the COT account, all of the banking transactions which resulted in the disbursement of those proceeds were executed solely by Mr. Carpenter.

Universitas litigated the turnover motions in the Southern District of New York in 2013 and, thus, was aware then of all the relevant banking transactions involving the Spencer insurance proceeds. Universitas could have brought the instant claims then. Instead, Universitas delayed bringing the instant claims for seven years. Consequently, the undersigned defendants have been deprived of the testimony of the central figure in this controversy, the man who transferred the Spencer insurance proceeds from the Charter Oak Trust into the control of Daniel Carpenter. Likely, Mr. Bursey would testify that the undersigned defendants had nothing to do with the subject fund transfers. This testimony would lend strong support to the defendants' position that there is no reason in law or equity that BASI, TPG, Molly Carpenter or Donald Trudeau should be held responsible for what happened.

**D.    Even if Universitas were entitled to a constructive trust, it would not justify a $26 million prejudgment remedy.**

Universitas does not seek a prejudgment remedy to secure its constructive trust claim against Molly Carpenter and Moonstone. Even so, the defendants address that claim out of an abundance of caution.

Under Connecticut law, a constructive trust is an equitable remedy. "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a

trustee." *United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave. Greenwich, Connecticut*, 718 F. Supp. 2d 215, 227 (D. Conn. 2010) (citation omitted). A constructive trust thus arises "where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Id*. (citation omitted). Once the court determines that a constructive trust *could* be imposed, "the question then becomes whether this equitable remedy *ought* to be imposed." *Id*. (emphasis added). "The trial court may recognize the existence of the constructive trust and, nevertheless, decline to order the conveyance or other disposition of the property in satisfaction of the debt." *Id*. (citation omitted)

Before a constructive trust may be imposed, the party seeking the constructive trust "must trace his own property into a product in the hands of the wrongdoer." *Id*. at 228. (quoting *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985)). "The beneficiary of a constructive trust does not have an interest superior to the trustee's in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets." *Id*. at 227–28 (quoting *United States v. Schwimmer*, 968 F.2d 1570, 1583 (2d Cir. 1992)). Thus, "an entity who wishes to have a constructive trust established on its behalf must be able to trace its funds to the property over which the trust will be established." *Id*.

Here, the district court in Universitas' first turnover proceeding in the Southern District of New York found that Moonstone had received only $1.1 million of the Spencer insurance proceeds. As a result of that turnover order, Moonstone reached an agreement with Universitas to split any insurance proceeds paid by USAA under the property and casualty policy. Moonstone bore the expense of the coverage litigation with USAA and Universitas eventually received another

$103,484.24 from USAA. Further, as part of the Cahaly litigation settlement, Universitas received another $900,000. Thus, even if the Court were to grant a prejudgment remedy on the constructive trust claim, it would not even remotely justify one for $26 million. *See Baltas v. Frenis*, No. 3:18 CV 1168 (WWE), 2019 WL 1552915, at *6 (D. Conn. Apr. 10, 2019)(Spector, Mag. J.)(district court considering prejudgment remedy will "consider not only the validity of the plaintiff's claim but also the amount that is being sought."). Further, before the Court even considers entering a prejudgment remedy, which it should not, Universitas should be required to fully account for everything it has already recovered.

**Wherefore,** the defendants respectfully request that this Court deny the plaintiff's Application for a Prejudgment Remedy and Motion to Disclose Assets.

THE DEFENDANTS,
MOLLY CARPENTER, DONALD
TRUDEAU, BENISTAR ADMIN SERVICES,
INC., TPG GROUP, INC., AND
MOONSTONE PARTNERS, LLC.

By:   /s/ Dan E. Labelle
Dan E. LaBelle, Esq. (ct01984)
labelle@halloransage.com
HALLORAN SAGE, LLP
315 Post Road West
Westport, CT 06880
Tel: (203) 227-2855
Fax: (203) 227- 6992

Michael R. McPherson, Esq. (ct24082)
mcpherson@halloransage.com
HALLORAN SAGE, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06880
Tel: (860) 241-4079
Fax: (860) 548-0006

**Certification**

I hereby certify that on June 25, 2020 a copy of foregoing Objection was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Daniel E. Labelle (ct01984)