**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff | : | 3:20-cv-00738-JAM |
| | : | |
| v. | : | |
| | : | |
| BENISTAR, et al. | : | |
| | : | |
| Defendants | : | JULY 31, 2020 |

---

**DEFENDANT GRIST MILL PARTNERS, LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

RESPECTFULLY SUBMITTED,

THE DEFENDANT
GRIST MILL PARTNERS, LLC

Lawrence S. Grossman (ct15790)
Jeffrey M. Sklarz (ct20938)
Green & Sklarz LLC
One Audubon Street, Third Floor
New Haven, CT 06511
(203) 285-8545
Fax: (203) 823-4546
lgrossman@gs-lawfirm.com
jsklarz@gs-lawfirm.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ..................................................................................................... 1

II.     ALLEGATIONS SET FORTH IN COMPLAINT ..................................................... 2

III.    LAW AND ARGUMENT ......................................................................................... 6

        A.  Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) Generally ............... 6

        B.  The First Count Fails to State a Claim for "Veil Piercing" Against
            Grist Mill Partners, LLC ................................................................................. 7

            1.  Connecticut Law ...................................................................................... 7

            2.  Delaware Law ........................................................................................... 8

            3.  Plaintiff Does Not Allege Sufficient Facts to Support Any Veil
                Piercing Claims ........................................................................................ 8

                a.  Plaintiff Does Not Allege Facts to Satisfy
                    Fed. R. Civ. P. 9(b) ....................................................................... 8

                b.  Regardless of the Pleading Standard Applied, the First Count
                    Does Not Allege the Elements of a Veil Piercing Claim .............. 10

        C.  The Second Count Does Not Assert a Cognizable Cause of Action .......................... 12

        D.  The Fifth Count Fails to State a Legally Cognizable Action for "Constructive
            Trust" or Unjust Enrichment ......................................................................... 12

            1.  "Constructive Trust" is Not a Cause of Action ............................................. 12

            2.  Even if the Court Were to Treat the Fifth Count as a Claim for
                Unjust Enrichment, It Fails to State Any Legal Entitlement to Relief .......... 13

IV.     CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................... 6, 8

*Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
    296 F.3d 164 (3d Cir. 2002) .............................................................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 6, 7

*Carney v. Lopez*, 933 F. Supp. 2d 365 (D. Conn. 2013) .......................................... 12

*Coan v. Dunne*, 2019 WL 1976146 (D. Conn. May 3, 2019) ................................... 12

*Comm. Of Environmental Protection v. State Five Industrial Park, Inc.*,
    304 Conn. 128 (2012) ........................................................................................ 7

*David v. Mast*, 1999 WL 135244 (Del. Ch. Mar. 2, 1999) ....................................... 10

*Harco Nat. Ins. Co. v. Green Farms. Inc.*, 1989 WL 110537 (Del. Ch. Sept. 19, 1989) ............. 11

*In re A.N. Frieda Diamonds, Inc.*, 2020 WL 2059907 (Bankr. S.D.N.Y. Apr. 29, 2020)........... 14

*In re ALT Hotel, LLC*, 479 B.R. 781 (Bankr. N.D. Ill. 2012) ......................................... 8

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003)............... 8

*In re Glick*, 568 B.R. 634 (Bankr. N.D. Ill. 2017) ......................................................... 7

*In re Handy & Harman Ref. Group*, 266 B.R. 24 (Bankr. D. Conn. 2001)................................. 14

*LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385 (D. Md. 2014) ...................... 7

*Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74 (D. Del. 2003) ........................ 9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)............. 9

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005) ................................ 15

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168 (2d Cir. 2008)...................... 10, 11

*NovaFund Advisors, LLC v. Capitala Group, LLC*, 2020 WL 230089
    (D. Conn. Jan. 14, 2020) .................................................................................. 9

*Pauley Petroleum Inc. v. Cont'l Oil Co.*, 43 Del.Ch. 516, 239 A.2d 629 (1968)........................ 10

*Phillips v. City of Allegheny*, 515 F.3d 224 (3d Cir. 2008)........................................... 6

*Reed v. McCready*, 2014 WL 2854001 (Conn. Super. May 16, 2014)........................ 12

*Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433 (2009) ............................ 13

*Towns of New Hartford v. Connecticut Res. Recovery Auth.*, 2007 WL 1977151 (Conn. Super. Jun. 19, 2007), *appeal dismissed sub nom. Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 502, *aff'd sub nom. Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433 (2009) .................................................................................. 15

*U.S. Elec. Services v. Zolla*, No. MMXCV146012106, 2015 WL 9948202 (Conn. Super. Dec. 17, 2015); 76 Am. Jur. 2d Trusts § 274 (2020) ........................................ 15

*UCF I Tr. 1 v. Dimenna*, No. 16-CV-00156 (VAB), 2016 WL 3620716 (D. Conn. Jun. 29, 2016) .......................................................................................................... 13

*United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave. Greenwich, Connecticut*, 718 F. Supp. 2d 215 (D. Conn. 2010) ................................................ 14

*United States v. Benitez*, 779 F.2d 135 (2d Cir. 1985) ............................................................ 14, 15

*United States v. Golden Acres, Inc.* 702 F. Supp. 1097 (D. Del.1988), *aff'd* 879 F.2d 857 & 879 F.2d 860 (3d Cir.1989) .................................................... 11

*United States v. Schwimmer*, 968 F.2d 1570 (2d Cir. 1992) ........................................................ 14

*Universitas Educ., LLC v. Nova Group, Inc.*, 2012 WL 2045942 (S.D.N.Y. Jun. 5, 2012), *aff'd,* 513 Fed. Appx. 62 (2d Cir. 2013) .......................................................... 2

*Universitas Educ., LLC v. Nova Group, Inc.*, 2013 WL 6123104 (S.D.N.Y. Nov. 20, 2013) ....... 2

*Vertex, Inc. v. City of Waterbury*, 278 Conn. 557 (2006) .......................................................... 13

*Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286 (S.D.N.Y. 2011) ........................................ 10

**Statutes**

Conn. Gen. Stat. § 33-673c ...................................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 6

Fed. R. Civ. P. 9(b) ............................................................................................................ 8, 10

**Treatises**

A. Scott, *Law of Trusts,* § 521 (3d ed. 1967) .......................................................................... 15

Defendant Grist Mill Partners, LLC ("GMP"), submits the following memorandum of law in support of its *Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* (the "Motion"), regarding the complaint ("Complaint") filed by plaintiff, Universitas Education, LLC (the "Plaintiff" or "Universitas").

## I.  __INTRODUCTION__

The Court should dismiss the three counts of the Complaint directed at GMP because each fails to state a claim upon which relief can be granted.[1]  The  First Count seeks a recovery based upon a theory of reverse veil piercing, i.e., seeking to hold a business liable for its owner's debts, even though, neither Connecticut nor Delaware recognizes such a claim.  It makes no difference that Plaintiff characterized this claim as one seeking traditional veil piercing, because Plaintiff has failed to plead sufficient facts to allege a cognizable cause of action for veil piercing.  Plaintiff did not allege any facts, which if proven, would establish that GMP (or anyone controlling GMP) did anything illegal or fraudulent or that its corporate form was abused.

The Second Count is a claim for payment of attorneys' fees, which is not an independent cause of action.  Similarly, the Fifth Count, alleges a constructive trust, a remedy, not a cause of action.  And, even if the Court were to construe the Fifth Count as one for unjust enrichment, Plaintiff has not pled any facts explaining how GMP was unjustly enriched.

In sum, Plaintiff's Complaint is long on rhetoric, but short on well-pleaded facts.  Because Plaintiff does not allege any cognizable causes of action against GMP, the Complaint should be dismissed.

---

[1] Only the First, Second and Fifth Counts are directed at GMP.

## II.      ALLEGATIONS SET FORTH IN COMPLAINT

The underlying facts that led to Plaintiff's judgment are set forth in *Universitas Educ., LLC v. Nova Group, Inc.*, 2013 WL 6123104, at *1 (S.D.N.Y. Nov. 20, 2013) (the "Nova Case").[2]  In short, in the Nova Case, the United States District Court for the Southern District of New York (Swain, U.S.D.J.), confirmed an arbitration award in favor of Plaintiff in the amount of $26,525,535.98 (the "Judgment").  The crux of Plaintiff's case during the arbitration was that it should have received insurance proceeds (based on life insurance policies purchased on the life of Sash A. Spencer), which were determined to have been wrongfully diverted by Daniel Carpenter through a series of transfers.  The District Court also held that "Mr. Carpenter caused the Life Insurance Proceeds to be transferred to and through entities that he controlled, either directly or indirectly, including Moonstone, for the personal benefit of Mr. Carpenter and his affiliates."  *Id.* at *7.  Beginning in 2013, Plaintiff commenced post-judgment collection proceedings.  Complaint at ¶¶ 27-56, 173.

While there are numerous court rulings and orders addressing Plaintiff's claims, there are no allegations in the Complaint alleging that GMP played any role in the wrongful conduct. Indeed, the material "factual" allegations against GMP were limited to the following:

| Pgf. No. | Text from Complaint | Why allegation is insufficient |
|---|---|---|
| 18 | Benistar is controlled by Daniel Carpenter, Molly Carpenter and Donald Trudeau. Benistar is operated for the personal financial benefit of these three persons. | No allegation that GMP is part of "Benistar," how Daniel Carpenter, Molly Carpenter and Donald Trudeau control GMP, or what improper conduct such control was used for. |
| 60 | Over the course of post-judgment discovery and other related proceedings, Universitas has learned of various | The term "Judgment Debtors" is not defined in the |

---

[2] Previously Judge Swain had confirmed the underlying arbitration award. *See Universitas Educ., LLC v. Nova Group, Inc.*, 2012 WL 2045942 (S.D.N.Y. Jun. 5, 2012), *aff'd*, 513 Fed. Appx. 62 (2d Cir. 2013).  The arbitration was originally commenced in 2010 and heard in January 2011. *Id*. at *1.

| Pgf. No. | Text from Complaint | Why allegation is insufficient |
|---|---|---|
|  | fraudulent transfers by the Judgment Debtors and additional facts showing that the Judgment Debtors and the Defendants in this action have disregarded their separate existence to the harm and detriment of Universitas, making each of the Defendants jointly and severally liable for the amount remaining unpaid under the judgment. | Complaint, thus, it is unclear what the term means or to whom it refers. "Defendants" is also not a defined term but it is assumed to refer only to the defendants named in the Complaint. Moreover, despite its allegation that it "learned of various fraudulent transfers by the Judgment Debtors," Plaintiff has not alleged any transfer(s) to GMP. Plaintiff likewise failed to allege any facts concerning how any unspecified "Defendants" disregarded GMP's "separate existence." |
| 61 | Upon information and belief, Daniel Carpenter, Donald Trudeau, and Molly Carpenter control and own – directly or indirectly – all Defendants and Judgment Debtors. Upon information and belief, Daniel Carpenter, Molly Carpenter, and Donald Trudeau used their pervasive control over the Judgment Debtors and Defendants to conduct the frauds and other criminal conduct for which the Judgment Debtors have been found liable, including actions to the detriment of Universitas. | Plaintiff has made vague and conclusory allegations that Daniel Carpenter, Donald Trudeau and Molly Carpenter controlled "all Defendants and Judgment Debtors" but alleged no facts as to how they controlled GMP, or used such control for illegal purposes. Stated differently, Plaintiff alleged no facts related to GMP's role in any fraud or criminal activity. |
| 62 | Defendants caused certain Judgment Debtors to fraudulently divest assets in order to preserve value for Benistar and to prevent lawful collection by Universitas…. | No allegation of specific assets that GMP allegedly diverted or caused "certain [unspecified] Judgment Debtors" to divert, in accordance with any asset diversion scheme. |
| 65 | Judgment Debtors and Defendants continued to transfer Spencer death benefits with an actual intent to hinder, delay, defraud, and otherwise prevent Universitas from enforcing its judgment after Universitas issued restraining notices prohibiting such transfers…. | *See comment regarding Paragraph 62.* In addition, Plaintiff failed to allege that GMP received any of the Spencer life insurance |

| Pgf. No. | Text from Complaint | Why allegation is insufficient |
|---|---|---|
| | | proceeds or further transferred them. |
| 71 | Benistar's constituent entities have a unity of ownership that is evidenced, *inter alia*, by their consistent disregard of corporate formalities and their shared management, phone numbers, computer network, offices, and employees. | Plaintiff failed to allege that GMP is a "constituent" entity of "Benistar" or that GMP acted improperly in any way. Paragraphs 72-89 discuss the "Benistar" entities as being in the insurance and employee welfare benefit business. There are no factual allegations concerning GMP' role in any wrongdoing. |
| 106 | [GMP] is the Benistar entity that owns and operates the building located at 100 Grist Mill Road, Simsbury, Connecticut [the "Property"]. | Not a material allegation that could support a finding of veil piercing. |
| 107 | Upon information and belief, 100 Grist Mill Road was Benistar's headquarters – every Judgment Debtor and Defendant operated from this address, with the exception of Mr. Trudeau. | Not a material allegation that could support a finding of veil piercing. |
| 108 | Upon information and belief, Benistar purchased the building so that Daniel Carpenter had a reason to physically be in the building unrelated to Benistar operations. Upon information and belief, Benistar sought to create a reason for Daniel Carpenter to be in the building unrelated to Benistar operations in order to conceal Mr. Carpenter's role in Benistar. | This paragraph alleges that the building owned by GMP was "unrelated to Benistar operations." If anything, this allegation undermines Plaintiff's theory of liability concerning GMP. |
| 109 | Agents from the Department of Labor ("DOL") raided the offices of 100 Grist Mill Road in connection with DOL's criminal investigation into Benistar. | Not a material allegation that could support a finding of veil piercing. |
| 110 | Agents from IRS raided the offices of 100 Grist Mill Road in connection with IRS' criminal investigation into the Benistar employer welfare benefit plans. | Not a material allegation that could support a finding of veil piercing. |
| 111 | Upon information and belief, Benistar relocated after the DOL and IRS raids in an attempt to distance itself from the federal raids at their old address. Upon information and belief, Benistar now primarily operates from 10 Tower Lane, Avon, CT and Benistar's accountant, who has a limited power of attorney over certain Benistar entities while Mr. Carpenter is incarcerated, operates from 35 Tower Lane, Avon, CT. | Benistar left the Property. Not a material allegation that could support a finding of veil piercing. |

| Pgf. No. | Text from Complaint | Why allegation is insufficient |
|---|---|---|
| 112 | Upon information and belief, [GMP] is a pass-through entity intended to shield its assets from Daniel Carpenter's judgment creditors. | This is a legal conclusion unsupported by factual allegations.  There are no factual allegations as to how GMP was used to "shield its assets."  Moreover, the Plaintiff did not identify that specific asset or assets that GMP purportedly sought to "shield" from Daniel Carpener's judgment creditors. |
| 113 | Upon information and belief, [GMP] is 99% owned by Carpenter Financial Group. Carpenter Financial Group is a Judgment Debtor in this proceeding and pays Mr. Carpenter's personal credit card bills. | Not a material allegation that could support a finding of veil piercing. |
| 114 | Upon information and belief, [GMP] is 1% owned by Caroline Financial Group, Inc. Upon information and belief, Caroline Financial Group, Inc. is a shell company under Mr. Carpenter's control that pays Mr. Carpenter's personal credit card | Not a material allegation that could support a finding of veil piercing. |
| 115 | Upon information and belief, [GMP] is an alter ego of Mr. Carpenter. | This is a legal conclusion unsupported by allegations of fact. |
| 199 | Carpenter Financial Group is an insolvent judgment debtor and is insolvent. | Assumed true for purposes of this Motion.  But, not a material allegation that could support a finding of veil piercing. |
| 200 | [GMP] holds title to Carpenter Financial Group assets in order to shield such assets from Daniel Carpenter's creditors. | Plaintiff does not allege the specific "Carpenter Financial Group assets" that are being held by GMP. |
| 201 | Daniel Carpenter controls [GMP]. | This is a legal conclusion.  No facts are pled concerning how Mr. Carpenter "controls" GMP. |
| 202 | Whereas insolvent Judgment Debtors have placed assets in [GMP] to avoid paying creditors, Judgment Debtors have a confidential relationship with [GMP], and Judgment Debtors retain beneficial ownership in [GMP's] property, Universitas is entitled to impose a constructive trust upon [GMP] in the amount of Daniel | Plaintiff does not allege which specific assets are being held by GMP that have been diverted to it from the "Judgment Debtors."  If it is Spencer life insurance proceeds, there are no |

| Pgf. No. | Text from Complaint | Why allegation is insufficient |
|---|---|---|
| | Carpenter's outstanding judgment and/or in the amount of Carpenter Financial Group's outstanding judgment. | allegations concerning the amount or where they came from. |

Thus, the Complaint merely alleges, and then, only in a conclusory manner, that Mr. Carpenter "controls" GMP, parked unknown "assets" there, and uses GMP for some unexplained nefarious purpose.

## III.   LAW AND ARGUMENT

### A.   Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) Generally

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The standard is one of "plausibility" and not "probability." *Twombly*, 550 U.S at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips v. City of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal citations omitted). However, "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.' ... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385, 387 (D. Md. 2014). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ..., a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do,..." *Twombly*, 550 U.S. at 555.

**B.      The First Count Fails to State a Claim for "Veil Piercing"
         Against Grist Mill Partners, LLC**

Plaintiff's First Count fails to state a legally cognizable claim.  Reverse veil piercing is not recognized as a cause of action or remedy under either Delaware or Connecticut law.[3] "Traditionally, [veil] piercing is aimed at holding corporate shareholders liable." *In re Glick*, 568 B.R. 634, 659 (Bankr. N.D. Ill. 2017).  Reverse veil piercing seeks to hold a business liable for the debt of its owner.  *Id.*; *see Comm. Of Environmental Protection v. State Five Industrial Park, Inc.*, 304 Conn. 128, 131 n.4, 139-142 (2012).[4]  Here, Plaintiff seeks to hold GMP liable for the debts of Mr. Carpenter (or some other, undefined and unspecified Judgment Debtor), meaning it must be construed as reverse veil piercing.

**1.      Connecticut Law**

Connecticut law bars reverse veil piercing claims.  Conn. Gen. Stat. § 33-673c ("No domestic entity shall be responsible for a debt, obligation or other liability of an interest holder of

---

[3] Arguably, either Delaware or Connecticut law could apply in this case.  Plaintiff asserts that Delaware law applies because GMP is a Delaware LLC.  However, all of the events took place in Connecticut, and GMP is located in Connecticut.  For purposes of this case, a choice of law analysis is not necessary as the result is the same under both Delaware and Connecticut law.

[4] "In a traditional veil piercing case, a litigant requests that a court disregard the existence of a corporate entity so that the litigant can reach the assets of a corporate insider, usually a majority shareholder.  In a reverse piercing action, however, the claimant seeks to reach the assets of a corporation or some other business entity ... to satisfy claims or a judgment obtained against a corporate insider."  *Id.* at 139 (internal punctuation omitted).

such entity based upon a reverse veil piercing doctrine, claim or remedy.")  Thus, if Connecticut law applies, this case must be dismissed.

### 2. <u>Delaware Law</u>

No Delaware court has ever recognized reverse veil piercing to be a cognizable cause of action.  "Not only has Delaware never accepted reverse piercing, but the general tenor of Delaware corporate law suggests its acceptance would be doubtful. Delaware has an exceptionally strong policy of respecting the corporate form."  *In re ALT Hotel, LLC*, 479 B.R. 781, 802 (Bankr. N.D. Ill. 2012).  Because no cause of action for reverse veil piercing exists, Plaintiff did not allege any entitlement to relief under a reverse veil piercing theory.  However, while Plaintiff simply claims to assert an action for traditional veil piercing, it has failed to allege facts sufficient to state such a claim.

### 3. **Plaintiff Does Not Allege Sufficient Facts to Support Any Veil Piercing Claims**

Even if the Court decides that the First Count could be construed as something other than a reverse veil piercing claim, it is still legally insufficient.  The First Count does not comply with Fed. R. Civ. P. 9(b)'s requirements for fact pleading and, in any event, does not meet the pleading requirements set forth in *Iqbal's* either.

#### a. <u>Plaintiff Does Not Allege Facts to Satisfy Fed. R. Civ. P. 9(b)</u>

Fed. R. Civ. P. 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Furthermore, Fed. R. Civ. P. 9(b) requires a heightened pleading standard when allegations of veil piercing, are based on allegedly fraudulent conduct.  *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003) ("Where the veil-piercing claims are based on allegations of fraud, however, the

heightened pleading standard of Rule 9(b) is the lens through which those allegation must be examined."); *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 (3d Cir. 2002) (Fed. R. Civ. P. 9(b) applies to alter ego claims). "The Second Circuit has noted that Rule 9(b) requires fraud plaintiffs to plead not only the particular 'circumstances of the fraud'—the who, what, where, when, and why of the false statements—but also 'the defendant's mental state.' *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015)." *NovaFund Advisors, LLC v. Capitala Group, LLC*, 2020 WL 230089, at \*10 (D. Conn. Jan. 14, 2020). In the context of a veil piercing action, a plaintiff must plead the who, what, where, when, and why of the improper use of the corporate form. *See Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 84 n. 8 (D. Del. 2003) (*citing Foodtown, Inc.*, 296 F.3d at 173 n. 10).

In this case, Plaintiff was required to allege not only Mr. Carpenter's alleged control of GMP, but *how* that control over GMP was used to perpetrate his fraud. The Complaint contains no such facts. Instead, the Complaint simply alleges that GMP was controlled by Mr. Carpenter and used to for nefarious purposes, without any factual allegations of *how* or *when* such control was used to achieve a nefarious end. For example, there are no allegations that GMP: received any of the Spencer life insurance proceeds; was a transferee of Spencer life insurance proceeds; made improper payments; obtained the Property illegally or at a discount (or from a related party); did not charge rent to its tenants, or engaged in any other wrongful conduct. Plaintiff does not allege the date(s) on which GMP participated in any of the alleged fraudulent/illegal activity.

Plaintiff bases its entire claim on GMP's proximity to Mr. Carpenter. However, as stated above, there are no allegations of fact concerning *how* Mr. Carpenter used his alleged "control" over GMP to do *anything,* let alone something fraudulent or illegal. Further, as set forth below

"control" is not the only required element of a veil piercing claim.  In sum, without the basic allegations required by Fed. R. Civ. P. 9(b), the First Count of Plaintiff's Complaint must be dismissed.

> **b.      Regardless of the Pleading Standard Applied, the First Count Does Not Allege the Elements of a Veil Piercing Claim**

Assuming, *arguendo*, the Court elects to apply a traditional veil-piercing analysis under Delaware law to this case, as advocated by Plaintiff, the case should still be dismissed.  "In … an appropriate case, a party wronged by actions taken by an owner shielded by the veil of a corporate shell may exercise its equitable right to pierce that screen and skewer the corporate owner."  *David v. Mast*, 1999 WL 135244 (Del. Ch. Mar. 2, 1999) (internal quotations omitted).  The Delaware Supreme Court has stated that the corporate form may be disregarded "in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved."  *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 43 Del.Ch. 516, 239 A.2d 629, 633 (1968) (distinction between the entity and its owner "may be disregarded" to require an owner to answer for the entity's debts).  A court may impose personal liability on a corporation's owner when there is fraud or the corporation "is in fact a mere instrumentality or alter ego of its owner."  *Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286, 294 (S.D.N.Y. 2011), *citing NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008).

As for the alter ego test, the Second Circuit, in *NetJets Aviation*, applied Delaware law and condensed the standard for an alter-ego piercing claim into a two-pronged test, which asks "(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness." *Id.* at 177.  "[A] plaintiff need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an overall

element of injustice or unfairness." *Id.* at 176 (internal quotation marks and citations omitted); *see also id.* at 177 (plaintiff is not required to show that the entity "was created with fraud or unfairness in mind;" rather, it is "sufficient to prove that it was so used").

A court's analysis under the alter ego theory of corporate veil piercing should begin with "an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation." *Id.* at 176–77 (internal quotation marks omitted). To that end, the court should consider the following factors:

> whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Harco Nat. Ins. Co. v. Green Farms. Inc.*, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989) (quoting *United States v. Golden Acres, Inc.* 702 F. Supp. 1097, 1104 (D. Del.1988), *aff'd* 879 F.2d 857 & 879 F.2d 860 (3d Cir.1989)). No single factor can justify a finding of alter ego sufficient to pierce the corporate veil, but instead, "some combination of them [is] required" and "an overall element of injustice or unfairness must always be present, as well." *Id.*

For the second part of the alter ego test under Delaware law, courts look at whether there was an overall element of injustice or unfairness sufficient to pierce the corporate veil. The claimed injustice must consist of more than merely the tort or breach of contract that forms the basis for a complaint. *NetJets Aviation*, 537 F.2d at 183 (citations omitted).

Here, Plaintiff alleged GMP owns the Property. That is all. Complaint ¶ 106. Nothing in the Complaint suggests GMP had anything to do with, or received any money from, the Spencer life insurance proceeds. Plaintiff has not alleged any facts consistent with the *Harco* factors to

even *suggest* that GMP was not a *bona fide*, independent company.  Further, there are no factual allegation (as opposed to a legal conclusion) that GMP was used to perpetrate any fraud or fraud-like activities.  Accordingly, since Plaintiff has not alleged that GMP was used in any improper manner, any veil piercing, or reverse veil piercing, claim against it should fail.

### C.        The Second Count Does Not Assert a Cognizable Cause of Action

"Liability for Attorneys' Fees" is not a legally cognizable cause of action.  Rather, it is properly included in a prayer for relief when Plaintiff has a valid basis to recover attorneys' fees on a legally viable cause of action.  According to Plaintiff, a trust document (*see* Complaint ¶¶ 185-86) allows for recovery for attorneys' fees by a prevailing party, but it is entirely unclear what independent cause of action Plaintiff has asserted in Count Two.[5]

### D.        The Fifth Count Fails to State a Legally Cognizable Claim for "Constructive Trust" or Unjust Enrichment

### 1.        "Constructive Trust" is Not a Cause of Action

Numerous federal and state courts in Connecticut have dismissed complaints alleging constructive trust as a cause of action.  This is because constructive trust is a *remedy,* not an independent claim for relief: "[c]onstructive trust is an equitable remedy which may be imposed in circumstances where unjust enrichment has occurred and certain other requirements are met." *Reed v. McCready*, 2014 WL 2854001, at *3, 7 (Conn. Super. May 16, 2014) (dismissing constructive trust pled as a cause of action: "a constructive trust is deemed to arise or be imposed as a result of actions which constitute unjust enrichment or fraud."); *Coan v. Dunne*, 2019 WL 1976146, at *5 (D. Conn. May 3, 2019) ("[a] constructive trust is a remedy, not an independent substantive cause of action."); *Carney v. Lopez*, 933 F. Supp. 2d 365, 384 (D. Conn. 2013)

---

[5] The undersigned's research has revealed no independent cause of action for attorneys' fees.  GMP reserves its right to further move to dismiss if it has misconstrued the cause of action or if case law to support such a claim is provided.

(dismissing claim for constructive trust and converting it to a request for a remedy). "Constructive trusts are designed to prevent unjust enrichment, and '[a] claimant entitled to restitution from property may obtain restitution from any traceable product of that property, without regard to subsequent changes of form." *Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433, 466 (2009).

Therefore, the Court should dismiss the Fifth Count, which does not state any legally cognizable cause of action.

> **2.      Even if the Court Were to Treat the Fifth Count as a Claim for Unjust Enrichment, It Fails to State Any Legal Entitlement to Relief**

Assuming, *arguendo*, that the Court treats the Fifth Count (constructive trust) as a claim for unjust enrichment, independent of Plaintiff's veil piercing claims, this count should still be dismissed because Plaintiff has failed to allege any facts that Spencer life insurance proceeds (or other assets) were transferred to GMP, or that GMP was unjustly enriched to the detriment of Plaintiff.

"Unjust enrichment is 'a broad and flexible remedy… [w]ith no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable.' *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006); *UCF I Tr. 1 v. Dimenna*, No. 16-CV-00156 (VAB), 2016 WL 3620716, at *4 (D. Conn. Jun. 29, 2016). The elements of an unjust enrichment claim are: "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Id.*

To impose constructive trust as a remedy for unjust enrichment, additional facts must be pled and proven. A constructive trust arises "where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he

were permitted to retain it." *United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave. Greenwich, Connecticut*, 718 F. Supp. 2d 215, 227 (D. Conn. 2010) (citation omitted).  Once the court determines that a constructive trust *could* be imposed, "the question then becomes whether this equitable remedy *ought* to be imposed." *Id*. (emphasis added).  "The trial court may recognize the existence of the constructive trust and, nevertheless, decline to order the conveyance or other disposition of the property in satisfaction of the debt." *Id*. (citation omitted). "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."  *Id*.

"It is hornbook law before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his property into a product in the hands of the wrongdoer." *In re Handy & Harman Ref. Group*, 266 B.R. 24, 27 (Bankr. D. Conn. 2001); *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985). "The beneficiary of a constructive trust does not have an interest superior to the trustee's in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets." *Id*. at 227–28 (*quoting United States v. Schwimmer*, 968 F.2d 1570, 1583 (2d Cir. 1992)). Thus, "an entity who wishes to have a constructive trust established on its behalf must be able to trace its funds to the property over which the trust will be established." *Id*.; *In re A.N. Frieda Diamonds, Inc.*, 2020 WL 2059907, at *19 (Bankr. S.D.N.Y. Apr. 29, 2020) (same; collecting cases).

Here, Plaintiff has not alleged facts, which if proven, would establish that GMP received any of the Spencer life insurance proceeds.  In addition, Plaintiff has not alleged that GMP was unjustly enriched by its receipt of any other property.  Rather, the Fifth Count alleges only that: "Judgment Debtors have placed assets in GMP to avoid paying creditors…."  Complaint at ¶ 202. The Complaint *never* identifies what the "assets" are or which of the Judgment Debtors placed

those assets in GMP. Thus, Plaintiff has not alleged facts consistent with the basic elements of unjust enrichment.

Moreover, because constructive trust as a remedy is claimed, the amount of the remedy would be limited to amount of transfers of the Spencer life insurance proceeds *traceable* to GMP. *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005);[6] *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985);[7] *Towns of New Hartford v. Connecticut Res. Recovery Auth.*, 2007 WL 1977151, at *31 (Conn. Super. Jun. 19, 2007),[8] *appeal dismissed sub nom. Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 502, *aff'd sub nom. Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433 (2009); *U.S. Elec. Services v. Zolla*, No. MMXCV146012106, 2015 WL 9948202, at *9 (Conn. Super. Dec. 17, 2015);[9] 76 Am. Jur. 2d Trusts § 274 (2020).[10]

Accordingly, Plaintiff must allege the specific assets, in this case, the Spencer insurance proceeds, that were in fact transferred to GMP. Plaintiff, however, has not alleged the transfer of any specific property or money to GMP.

[6] "[A] constructive trust or equitable lien is imposed when, in the eyes of equity, a plaintiff is the true owner of funds or property, and *the money or property identified* as belonging in good conscience to the plaintiff *can clearly be traced back to particular funds or property in the defendant's possession*.") (internal citations and punctuation omitted, emphasis added."

[7] "It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer. 5 A. Scott, *Law of Trusts,* § 521 (3d ed. 1967)."

[8] "The essential element of a constructive trust action is the existence of specific identifiable property to serve as *res* which can be clearly traced in assets of the defendant."

[9] "The plaintiff is therefore entitled to obtain restitution in the form of a constructive trust to the extent that it can trace the embezzled funds to mortgage payments made on the property and payments made for the improvement of the property."

[10] "Where money is the asset upon which the constructive trust is based, it is necessary that specific amounts be identified and located, either by tracing the money to a specific and existing account, or where the funds have been converted into another type of asset such as by the purchase of real property, the money must be traced into the item of property."

## IV.    <u>**CONCLUSION**</u>

For the above stated reasons, the Court should grant the Motion and dismiss the First, Second, and Fifth Counts as against GMP and enter such other relief as is just and proper.

<div style="margin-left: 40%">

THE DEFENDANT
GRIST MILL PARTNERS, LLC


By:    /s/ Jeffrey M. Sklarz
        Lawrence S. Grossman (ct15790)
        Jeffrey M. Sklarz (ct20938)
        Green & Sklarz LLC
        One Audubon Street, Third Floor
        New Haven, CT 06511
        (203) 285-8545
        Fax: (203) 823-4546
        lgrossman@gs-lawfirm.com
        jsklarz@gs-lawfirm.com

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the date set forth below a copy of the foregoing was served by CMECF and/or mail on anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF System.

Date: July 31, 2020

/s/ Jeffrey M. Sklarz