## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNIVERSITAS EDUCATION, LLC** )<br><br>**Plaintiff** )<br><br>**vs.** )<br><br>**BENISTAR, et al** )<br><br>**Defendants** ) | **CIVIL ACTION NO.**<br>**3:20-cv-00738-JAM**<br><br><br>**AUGUST 3, 2020** |

### Defendants Alliance Charitable Trust, Phoenix Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, and Carpenter Charitable Trusts Memorandum in Support of their Motion to Dismiss Plaintiff's Complaint

Pursuant to Rules 12(b)(1), 12(b),(2),(5) and (6) of the Federal Rules of Civil Procedure,

the Defendants Trusts move to dismiss the Plaintiff, Universitas's, allegations against it.

Respectfully Submitted
THE DEFENDANTS,

By: _/s/ Grayson Colt Holmes_
Grayson Colt Holmes
Federal Bar No.: ct30111
Ouellette, Deganis, Gallagher & Grippe LLC
143 Main Street
Cheshire, CT 06410
Phone: (203) 272-1157
Fax: (203) 250-1835
Email: gholmes@odglaw.com

# TABLE OF CONTENTS

I.      INTRODUCTION  ………………………………………………………..1

II.     LAW AND ARGUMENT ……………………………………………………1

    A.  THE PLAINTIFF HAS FAILED TO PROPERLY SERVE PROCESS ON THE
       DEFENDANT TRUSTS  ……………………………………………........ 1

    B.  THE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
       GRANTED    ……………………………………..……………………........ 6

    C.  "CONSTRUCTIVE TRUST" IS NOT A CAUSE OF ACTION …………………… 9

    D.  PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT, FAILS TO STATE ANY
       ENTITLEMENT TO RELIEF ………………………………………………... 10

    E.  "LIABILITY FOR ATTORNEYS' FEES" IS NOT A COGNIZABLE CAUSE OF
       ACTION    …………………………………………………………........ 12

    F.  THE COMPLAINT MUST BE DISMISSED FOR A LACK OF DIVERSITY
       JURISDICTION  …………………………………………………………  13

III.    CONCLUSION……………………………………………………………… 15

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Watt,* 138 U.S. 694 (1891). ................................................................ 14, 15

*Arbaugh v. Y&H Corp.,* 546 U.S. 500 (2006). ............................................................ 13

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868  (2009) .................................. 6

*Baltas v. Frenis, 2019 WL 1552915, (D. Conn. Apr. 10, 2019)* .................................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............... 6, 7

*Bender v. Williamsport Area Sch. Dist., 475 U.S. 534,*
*106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)* ...................................................... 8

*Capron v. Van Noorden,* 6 U.S. 126, 2 Cranch 126 (1804). ......................................... 14

*Carney v. Lopez*, 933 F. Supp. 2d 365 (D. Conn. 2013).............................................. 9

*Coan v. Dunne,* 2019 WL 1976146 (D. Conn. May 3, 2019)........................................... 9

*City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, (2d Cir.2011). ............................. 8

*Cohen v. Bayne,* 28 Conn.Sup. 233, 257 A.2d 38 (1969) ............................................. 3

*Conolly v. Taylor, 27 U.S. 556, 2 Pet. 556, (1829),*…………………………......…………..………14

*Crawford v. Cuomo,* 796 F.3d 252 (2d Cir. 2015)........................................................ 6

*Dickerson v. Napolitano,* 604 F.3d 732(2d Cir. 2010) …………..………………………..…………1

*East Lyme v. Huntington, 22 Conn.Sup. 288, 169 A.2d 752 (1961)*…………………………………3

*Epperson v. Entm't Express, Inc.,* 242 F.3d 100 (2d Cir.2001)………….……..…………….8-9

*Harris v. American Legion, 162 F. Supp. 700 (1958)*…………..……………………….……….13

*Hibner v. Bruening, 7*8 Conn.App. 456, 828 A.2d 150 (2003). .................................... 2

*Grayson v. Wofsey, Rosen, Kweskin & Kuriansky,* 40 Conn.Sup. 1, 478 A.2d 629 (1984) ........... 3

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.,* 438 F.3d 298, (3d Cir. 2006)................ 7

*In re A.N. Frieda Diamonds, Inc.,* 2020 WL 2059907, (Bankr. S.D.N.Y. Apr. 29, 2020)........... 11

*In re Handy & Harman Ref. Group*, 266 B.R. 24 (Bankr. D. Conn. 2001) .................................... 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ....................................................................................................................................... 9

*Lange v. Bianco, 2004 Conn. Super. LEXIS 2850 (Sept. 30, 2004)* ................................................. 2

*Loubier Irrevocable Trust v. Loubier, et al, 858* F.3d 719, (2d Cir. 2017) .................................. 14

*McNutt v. General Motors Acceptance,* 298 U.S. 178 (1936) ..................................................... 13

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560 (2d Cir. 1996). ..........................1

*Mollan v. Torrance*, 22 U.S. 537, 9 Wheat. 537, 539 (1824) .......................................14

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987) .............................................................................................................................................1

*Peacock v. Thomas*, 516 U.S. 349, 116 S. Ct. 862 (1996) ...................................................... 7,8,9

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549 (1987) .......................................... 8

*Plonski v. Halloran,* 36 Conn.Sup. 335, 420 A.2d 117 (1980) .................................................... 3

*Reed v. McCready, 2014 WL 2854001 (Conn. Super. May 16, 2014)* ........................................... 9

*Reid v. Dan Yant, Inc., 2018 WL 8014197* ................................................................................... 5

*Romita v. Anchor Tank Lines, LLC,* No. 11 Civ. 9641 (DAB), 2013 WL 432903, (S.D.N.Y. Feb. 1, 2013) ...................................................................................................................................... 7

*Smith v. Smith, 150 Conn. 15, 183 A.2d 848 (1962)* ................................................................. 2

*The State of Rhode Island v. The State of Massachusetts, 37 U.S. 657, 9 L. Ed. 1233 (1838),* .... 13

*Torres v. Gaines,* 130 F. Supp. 3d 630 (D. Conn. 2015) .........................................................2

*Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433 (2009) ........................... 10

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.,* *843 F.3d 561 (2d Cir. 2016).* ................................................................................................... 6

*United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave. Greenwich, Connecticut*, 718 F. Supp. 2d 215 (D. Conn. 2010) ............................................ 10

*United States v. Benitez*, 779 F.2d 135 (2d Cir. 1985) ................................................................. 11

*United States v. Schwimmer*, 968 F.2d 1570 (2d Cir. 1992) ....................................................... 11

*Universitas Educ., LLC v. Nova Group, Inc.*, No 11 CIV. 1590-LTS-HBP, 2012 WL 204592
   (S.D.N.Y. June 5, 2012).................................................................................................. 2

*Williamsport Area Sch. Dist.,* 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)................. 8

**Statutes**

28 U.S.C. § 1962.................................................................................................................... 8

29 U.S.C. § 1144(a);.............................................................................................................. 8

Conn. Gen. Stat. § 34-508..................................................................................................... 2

Conn. Gen. Stat. § 52-57................................................................................................. 2, 3, 4

Conn. Gen. Stat. § 52-59b..................................................................................................... 4

N.Y. CPLR § 5018................................................................................................................. 8

**Rules**

Fed. R. Civ. P. 4 (e)(1)........................................................................................................... 2

Fed. R. Civ. P. 4(m).............................................................................................................. 5

Fed. R. Civ. P. 5(a)(1))........................................................................................................... 5

Fed. R. Civ. P. 5(b)(2)........................................................................................................... 5

Fed. R. Civ. P. 9(b) ............................................................................................................. 11

Fed. R. Civ. P. 12(b)(1)......................................................................................................... 5

Fed. R. Civ. P. 12(b)(5)......................................................................................................... 5

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 6,7

**Treatises**

*Moore's Federal Practice* § 5.03 (3d ed. 2018)...................................................................... 5

## INTRODUCTION

The Plaintiff, Universitas, has brought this action against the Defendant Trusts in an attempt to enforce a money judgment it obtained nine years ago in the Southern District of New York against Nova Group, Inc. *See Universitas Educ., LLC v. Nova Grp., Inc.,* No 11 CIV. 1590-LTS-HBP, 2012 WL 204592 (S.D.N.Y. June 5, 2012). The Defendant Trusts were not parties to that action, nor has any court determined the Defendant Trusts to be judgment debtors in the Universitas case. Significantly, Judge Swain in the Southern District of New York has continually rejected the arguments made here that have been made repeatedly over the last nine years. *See Judge Swain's Order Dismissing Plaintiff's Complaint attached as Exhibit One.*

As argued below, the Plaintiff's Complaint should be dismissed because service of process as to the Defendant Trusts is insufficient, Plaintiff has failed to state a claim for which relief may be granted, and this Court lacks diversity jurisdiction of the parties.

## LAW AND ARGUMENT

### A.  THE PLAINTIFF HAS FAILED TO PROPERLY SERVE PROCESS ON THE DEFENDANT TRUSTS

Valid service is required before a federal court may exercise personal jurisdiction over a defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987). It is the plaintiff's burden to prove valid service when a defendant moves to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure. *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). Prior to discovery, a plaintiff may establish personal jurisdiction with a prima facie showing. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). In assessing a motion to dismiss for insufficient service of process, a court must look to matters outside the complaint, such as the steps taken by the plaintiff to

effectuate service, to determine whether it has jurisdiction. *Torres v. Gaines*, 130 F. Supp. 3d 630, 635 (D. Conn. 2015).

FRCP Rule 4(h) further authorizes a party to effectuate service by "following state law for service a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." See *Id*.; Fed. R. Civ. P. 4(e)(1). Connecticut General Statutes § 52-57 governs service of process upon individuals, municipalities, corporations, partnerships and voluntary associations. The statute does not provide for a method of service on a trustee, and therefore, the proper method of service should fall within the "catch all" provision of C.G.S § 52-57(a).[1] *See e.g. Lange v. Bianco, 2004 Conn. Super. LEXIS 2850.* There are two methods of service on a defendant within the state: (1) personal, "in hand" service, by actual manual delivery to the defendant himself or (2) abode service, by leaving a copy of the process at the defendant's usual place of abode. *See Smith v. Smith*, 150 Conn. 15, 19, 183 A.2d 848 (1962).

The Plaintiff in this case has not claimed "in hand" service. Therefore, the inquiry for effect service of process must be whether process was served at the Defendant's "usual place of abode."

"Abode service . . . serves . . . the dual function of conferring jurisdiction and giving notice . . . Its chief purpose is to ensure actual notice to the defendant that the action is pending." *Smith v. Smith*, 150 Conn. 15, 19, 183 A.2d 848 (1962). It requires that "process be served by leaving it at the usual place of [the defendant's) abode." (Internal quotation marks omitted.) *Hibner v. Bruening*, 78 Conn.App. 456, 463, 828 A.2d 150 (2003). "Abode service is not

---

[1] General Statutes § 34-508 addresses service of process on statutory trustees, however, it cannot be determined based on the pleadings, whether the Defendant Trusts qualify as a statutory trust. Further, that statute does not expand on the permissible methods of service articulated under General Statutes § 52-57(a).

effective if it is left at an address that is not the usual address of the party served, and an action commenced by such improper service must be dismissed." *Id.*

"Abode for purposes of General Statutes § 52-57(a) is the place where the defendant would most likely have knowledge of service of process and is generally recognized as the place where he is living at the time of service." *Grayson v. Wofsey, Rosen, Kweskin & Kuriansky*, 40 Conn.Sup. 1, 3, 478 A.2d 629 (1984). Connecticut courts are reluctant to recognize abode service where process is not left for the defendant at the place he is living at the time service is made, even in cases where the defendant receives actual notice of the action. *See East Lyme v. Huntington*, 22 Conn.Sup. 288, 169 A.2d 752 (1961) (determining dwelling where defendant maintained an office is not equivalent of defendant's usual place of abode); see also *Grayson v. Wofsey, Rosen, Kweskin & Kuriansky*, 40 Conn.Sup. 1, 3, 478 A.2d 629 (refusing to acknowledge service left at defendant's law firm address as proper abode service); *Cohen v. Bayne*, 28 Conn.Sup. 233, 257 A.2d 38 (1969) (finding improper abode service where process was left at defendant's previous residence even though defendant had actual notice of action). Service of process has been found where a copy of process was left for an out of state defendant in a hotel room where he was temporarily staying. *See Plonski v. Halloran*, 36 Conn.Sup. 335, 420 A.2d 117 (1980).

In its complaint, the Plaintiff has alleged that "Daniel Carpenter is the sole trustee "for all" the Defendant Trusts and that the Defendant Trusts "are alter egos of Mr. Carpenter" *See Plaintiff's Complaint, ¶¶ 126, 130*. In an effort to serve the Complaint on the Defendant Trusts, the Plaintiff had Robert W. Arsenault, a Connecticut State Marshal,:(1) "leave two verified true and attested copies" of the Summons, Complaint, and other materials at "the office of the Secretary of State, whom is the duly authorized Statutory agent to accept service on behalf of the

within named Defendant;" (2) "deposit[] at the post office of West Hartford a verified true and attested copy" of the Summons, Complaint, and other materials "postage paid, certified mail, return receipt requested, addressed to" the Defendant Trusts "At 10 Tower Lane, Avon, CT 06001-4211;" and (3) "by special direction of the Plaintiff's Attorney, and pursuant to Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure, . . . made due and legal service" of the Summons, Complaint, and other materials, "by leaving a verified true and attested copy at the Clerk's Office of the United States District Court, whom is the duly authorized to accept service on behalf of" the Defendant Trusts. *See Summons*, pp 3-9.

This is not, however, the usual place of abode of Daniel Carpenter. *See Declaration of Molly Carpenter attached as Exhibit Two.* In fact, the property where the Plaintiff served process is not a residential property at all. *Id.* The Plaintiff's failure to leave copies of the process at the abode of Daniel Carpenter, as the sole trustee of the Defendant Trusts renders ineffective any attempted abode service on the Defendant Trusts.

Likewise, depositing the summons and complaint with the Secretary of State's Office in Hartford is insufficient to establish personal jurisdiction over the Defendant Trusts. The Plaintiff has alleged that the Defendant Trusts are "citizens of Connecticut." *See Plaintiff's Complaint ¶¶ 6-10.* General Statutes § 52-59b provides that a *nonresident individual* who transacts business within the state or commits a tortious act within the state "shall be deemed to have appointed the Secretary of the State as its attorney and to have agreed that any process in any civil action brought against the nonresident individual . . . may be served upon the Secretary of the State." Therefore, this court does not have jurisdiction over the Defendant Trusts pursuant to § 52-59b, because the Defendant Trusts are alleged to be Connecticut Citizens. General Statutes §52-57(d) and (e) provide that service may be made upon the Secretary of the State in actions against

*Connecticut partnerships and voluntary associations*, respectively. However, the Plaintiff has not alleged that the Defendant Trusts are partnerships or voluntary associations.

The Plaintiff further advised the court that "Pursuant to Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure" that it "is unable to complete service by the means listed in Rule 5(b)(2)(A-C) or (E-F)," and the Defendant Trusts "ha[ve] no known address." It therefore left the Summons, Complaint and other service materials with the Clerk's Office, 141 Church Street, New Haven, Connecticut. *See Docket Entry No. 30, 39-42.*

However, the Plaintiff cannot rely on Rule 5 to effect service of process, because "Rule 5 applies only to appearing parties." *Moore's Federal Practice* § 5.03[1] (3d ed. 2018) ("The service provisions in Rule 5 apply only after a party has made an appearance in the proceeding."); § 5.03[4] ("Rule 5 does not apply to this category of claims [those against non-appearing parties] because the Rule 5 service provisions assume that the court has personal jurisdiction over the party and that the party is already aware of the proceedings and is keeping abreast of new developments."). "Rule 5 provides the means to serve a party, short of the time consuming and expensive means required by Rule 4, for all documents after the initial complaint." *Reid v. Dan Yant, Inc.*, 2018 WL 8014197. Rule 5(a)(1)(B), specifically articulates that "each of the following papers must be served on every party: . . . a pleading filed after the initial complaint."

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant . . . ." Fed. R. Civ. P 4(m). Similarly, Rule 12(b)(5) provides for dismissal of a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). Therefore, as to the Defendant Trusts, the undersigned

respectfully moves that this motion be granted in regards to the allegations against them based upon lack of personal jurisdiction over the Defendant Trusts because of lack of service of process.

## B. THE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

When determining "a Rule 12(b)(6) motion to dismiss for failure to state a claim, [the court accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). "To survive a 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, plausibly to give rise to an entitlement to relief." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). Although a complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The standard is one of "plausibility" and not "probability." *Twombly*, 550 U.S at 556. A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and we "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly* at 555 (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to does not need detailed factual allegations, …, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do,…" *Id.* The Plaintiff has failed to satisfy the *Iqbal* and *Twombly* standards and therefore the Complaint must be dismissed with prejudice.

The Charter Oak Trust was a welfare benefit plan and therefore was an ERISA plan. The Supreme Court long ago decided that federal post-judgment proceedings may not be utilized to enforce ERISA-based liability against another person on successor liability or alter ego-type theories. In *Peacock v. Thomas*, 516 U.S. 349, 351 (1996), the Supreme Court considered whether a judgment under ERISA may be enforced in a subsequent federal proceeding against another person not otherwise liable for the judgment, based on an independent theory of liability. *Id.* It squarely held that claims of veil piercing, post-judgment fraudulent conveyance, and civil conspiracy may not be raised against another party in an ancillary judgment enforcement proceeding. *Id.* at 358. The Court concluded that the district court lacked subject matter and ancillary jurisdiction over the subsequent action seeking to enforce the ERISA judgment because, inter alia, it was "founded upon entirely new theories of liability." *Id.* at 354, 358; see *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298, 312 (3d Cir. 2006) ("Veil-piercing [in the ERISA context] does not make a party secondarily liable. Rather, it collapses corporate distinctions to make for joint primary liability."); see also *Romita v. Anchor Tank Lines, LLC*, No. 11 Civ. 9641 (DAB), 2013 WL 432903, at *3 (S.D.N.Y. Feb. 1, 2013)

7

("Although Plaintiffs' claim is one of successor liability, and not veil-piercing, the strictures of Peacock apply.").

Nor may an ERISA judgment be enforced in state court based on such theories. Generally, federal money judgments may be enforced in any state court. 28 U.S.C. § 1962; N.Y. CPLR § 5018(b) (duly filed federal judgment of "the same effect as a judgment entered in the supreme court within the county."). But ERISA's preemption of state law is broad: it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a); see *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive."). State enforcement proceedings imposing ERISA-based successor or alter ego liability on a third person or entity in its individual capacity would be inconsistent with ERISA preemption.

"[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (internal quotation marks omitted). "When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." Id. (internal quotation marks and alterations omitted). "We review the question of subject-matter jurisdiction de novo." *City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 126 (2d Cir.2011).

Where a new substantive theory is advanced to establish liability as to a new party, some independent ground is necessary to assume federal jurisdiction over the claim. *Epperson v.*

*Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir.2001) (recognizing need for independent jurisdictional hook where a claim "raise[s] an independent controversy with a new party in an effort to shift liability"); see also *Peacock*, 516 U.S. at 357. No such independent ground has been established here. See *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" (internal citations omitted)). The Plaintiff therefore has failed to state a claim upon which relief may be granted and as such the allegations against the Defendant Trusts should be dismissed.

## C.  "CONSTRUCTIVE TRUST" IS NOT A CAUSE OF ACTION

Numerous Connecticut federal and state courts have dismissed complaints alleging constructive trust as a cause of action.  This is because a "constructive trust" is a *remedy,* not an independent claim for relief: "[c]onstructive trust is an equitable remedy which may be imposed in circumstances where unjust enrichment has occurred and certain other requirements are met." *Reed v. McCready*, 2014 WL 2854001, at *3, 7 (Conn. Super. May 16, 2014) (dismissing constructive trust pled as a cause of action: "a constructive trust is deemed to arise or be imposed as a result of actions which constitute unjust enrichment or fraud."); *Coan v. Dunne*, 2019 WL 1976146, at *5 (D. Conn. May 3, 2019) ("[a] constructive trust is a remedy, not an independent substantive cause of action.  *Carney v. Lopez*, 933 F. Supp. 2d 365, 384 (D. Conn. 2013) (dismissing claim for constructive trust and  converting  it  to  a  request  for  a remedy). Constructive trusts are designed to prevent unjust enrichment, and '[a] claimant entitled to restitution from property may obtain restitution from any traceable product of that property,

without regard to subsequent changes of form.' *Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433, 466 (2009).'"

Therefore, the Court should dismiss the Fourth Count as to the Defendant Trusts, because it fails to state any legally cognizable cause of action.

## D. PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT, FAILS TO STATE ANY ENTITLEMENT TO RELIEF

Assuming, *arguendo*, that the Court treats the Fourth Count (constructive trust) as a claim for unjust enrichment, the Complaint should still be denied because Plaintiff has failed to allege any facts that the Spencer life insurance proceeds (or other assets) were ever transferred to any of the Trusts, or that they received an unjust benefit. Moreover, Judge Swain has repeated the trail of money that came from the Charter Oak Trust to Grist Mill Capital, and from there to the various Carpenter-related entities many times, and has determined the Judgment Debtors years ago in 2012 and again in 2014. Furthermore, contrary to the Plaintiff's Complaint, the sole and primary beneficiary of the Spencer's policy was Grist Mill Capital. *See Spencer Beneficiary Designation Form attached as Exhibit Three and Judge Swain's Order Dismissing Plaintiff's Complaint attached as Exhibit One.*

To impose a constructive trust as a remedy for unjust enrichment, additional facts must be pled and proven. A constructive trust only arises "where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave. Greenwich, Connecticut*, 718 F. Supp. 2d 215, 227 (D. Conn. 2010). Once a court determines that a constructive trust *could* be imposed, "the question then becomes whether this equitable remedy *ought* to be imposed." *Id.* (emphasis added). "The trial court may recognize the existence of the constructive trust and, nevertheless, decline to order the

conveyance or other disposition of the property in satisfaction of the debt." *Id.* "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.*

"It is hornbook law before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his property into a product in the hands of the wrongdoer." *In re Handy & Harman Ref. Group*, 266 B.R. 24, 27 (Bankr. D. Conn. 2001); *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985)). "The beneficiary of a constructive trust does not have an interest superior to the trustee's in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets." *Id.* at 227–28 (*quoting United States v. Schwimmer*, 968 F.2d 1570, 1583 (2d Cir. 1992)). Thus, "an entity who wishes to have a constructive trust established on its behalf must be able to trace its funds to the property over which the trust will be established." *Id.*; *In re A.N. Frieda Diamonds, Inc.*, 2020 WL 2059907, at *19 (Bankr. S.D.N.Y. Apr. 29, 2020) (same; collecting cases).

Here, Plaintiff has not alleged any facts that the Trusts received any of the Spencer life insurance proceeds, and certainly has not satisfied the heightened standard for fraud pursuant to Rule 9(b). Plaintiff has not alleged that any of the Trusts improperly received any other property. Rather, the Fourth Count merely alleges that: "Between November 2, 2009 and November 12, 2009 Daniel Carpenter caused Judgment Debtor Grist Mill Holdings, LLC to make eleven transfers of the Spencer death benefits to the Charitable Trusts. Upon information and belief these eleven transfers combined for $1.76 million of the Spencer death benefits." Complaint at ¶ 128. The Complaint, however, *never* explains how transfers done in 2009 are somehow fraudulent conveyances anticipating Judge Swain's decision in 2014, nor does the Complaint satisfy the strict rules of Rule 9(b) showing the "who, what, where, when" of fraud

that is required to even allege the basic elements consistent with unjust enrichment or the requirements for a constructive trust or what the "assets" are. Thus, Plaintiff has not alleged facts consistent with the basic elements of unjust enrichment.

Moreover, because a constructive trust as a "remedy" is claimed, the amount of the remedy would be limited to amount of transfers of the Spencer life insurance proceeds *traceable* to the Trusts. *Baltas v. Frenis*, 2019 WL 1552915, at *6 (D. Conn. Apr. 10, 2019) (district court considering prejudgment remedy will "consider not only the validity of the plaintiff's claim but also the amount that is being sought."). Since they admit they have received $12 million from Christiana Bank, even if the $1.7 million was fraudulent conveyance, which it is not, there is no proof that the money actually came as a part of the Sash Spencer proceeds. But, even assuming *arguendo*, that they were from the Sash Spencer proceeds, the amount from Christiana Bank erases any claim they may have against any Trusts. See Complaint ¶164, recognizing $12 million paid by Christiana Bank, the Insurance Trustee of the Charter Oak Trust. Therefore, there is no possible claim that can be established against any the Defendant Trusts in this case.

## E. "LIABILITY FOR ATTORNEYS' FEES" IS NOT A COGNIZABLE CAUSE OF ACTION

"Liability for Attorneys' Fees" is not a legally cognizable cause of action in the state of Connecticut or anywhere else in the United States for that matter. Rather, it is a prayer for relief that, according to Plaintiff, an unnamed trust document (*see* Complaint ¶¶ 185-86) allegedly allows for recovery for attorneys' fees by a prevailing party. Therefore, it is entirely unclear what independent cause of action Plaintiff asserts in Count Two. The undersigned's research has revealed no independent cause of action for attorneys' fees. Therefore, the Trusts reserve the right to further move to dismiss if it has misconstrued Plaintiff's cause of action or case law to

support such a claim is provided by the Plaintiffs rather than these naked claims of this unnamed trust.

## F. THE COMPLAINT MUST BE DISMISSED FOR A LACK OF DIVERSITY JURISDICTION

Before it can do anything else, a federal court must determine that it has subject matter jurisdiction to hear a case. Federal courts are courts of limited jurisdiction, and it is incumbent upon the Court to determine if a federal question exists, and if the parties are actually diverse for the purposes of federal jurisdiction, as this case should have been brought in state court if at all. The federal courts have consistently held to the principle that once jurisdiction is challenged, the District Court has no authority to do anything but to take action on the motion to determine whether or not it has jurisdiction to proceed. As the Supreme Court held in *The State of Rhode Island v. The State of Massachusetts*, 37 U.S. 657 (1838), the Court is powerless to consider a claim over which it lacks subject-matter jurisdiction. Arguments about the parties' purported motives are irrelevant. *Id.* at 714. Once the question of jurisdiction is raised *"it must be considered and decided before the court can move one step further"* (emphasis added) *Id.* at 718. "Jurisdiction cannot be assumed by a district court nor conferred by agreement of parties, but it is incumbent upon [the Plaintiff] to allege in clear terms, the necessary facts showing jurisdiction *which must be proved by convincing evidence.*" *Harris v. American Legion*, 162 F. Supp. 700 (1958) (emphasis added), see also *McNutt v. General Motors Acceptance*, 298 U.S. 178 (1936).

Subject matter jurisdiction can be challenged even after the entry of judgment. "The objection that a federal court lacks subject-matter jurisdiction, see FRCP Rule 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). It has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the

action brought." *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824). This time-of-filing rule is hornbook law (quite literally according to Justice Scalia) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal. "Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment." See *Capron v. Van Noorden*, 6 U.S. 126,2 Cranch 126 (1804).

"Traditional trusts, establishing only fiduciary relationships, … are incapable of being haled into court except through their trustees. Thus, it is the trustees' citizenship that must determine diversity, not the citizenship of trust beneficiaries." *Loubier Irrevocable Trust v. Loubier, et al*, 858 F.3d 719, 731 (2017). The Supreme Court has adhered to the time-of-filing rule regardless of the costs it imposes. For example, in *Anderson v. Watt*, 138 U.S. 694 (1891), two executors of an estate, claiming to be New York citizens, had brought a diversity-based suit in federal court against defendants alleged to be Florida citizens. When it later developed that two of the defendants were New York citizens, the plaintiffs sought to save jurisdiction by revoking the letters testamentary for one executor and alleging that the remaining executor was in fact a British citizen. The Court rejected this attempted post-filing salvage operation, because at the time of filing the executors included a New Yorker. Id. at 708. It dismissed the case for want of jurisdiction, even though the case had been filed about 5 ½ years earlier, the trial court had entered a decree ordering land to be sold 4 years earlier, the sale had been made, exceptions had been filed and overruled, and the case had come to the Court on appeal from the order confirming the land sale. *Id*. at 698. Writing for the Court, Chief Justice Fuller adhered to the principle set forth in *Conolly v. Taylor*, 27 U.S. 556,2 Pet. 556, 565 (1829), that "jurisdiction

14

depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." "[J]urisdiction," he reasoned, "could no more be given ... by the amendment than if a citizen of Florida had sued another in that court and subsequently sought to give it jurisdiction by removing from the State." *Anderson* at 708.

As in *Anderson*, in this case, Sharon Siebert is clearly a resident of Florida as she owns a home and spends all of her time there. *See Sharon Seibert's Declaration sign in Florida with a Florida Notary attached as Exhibit Four.* Similarly, Mr. Carpenter was a resident of MDC Brooklyn on May 28th at the time of the filing, which is when residency and domicile are determined for the purposes of federal jurisdiction, as Plaintiff Donna Vassar was also a resident of New York at the time of filing. Mr. Carpenter has been a long-term resident of Florida, and will return there upon termination of his sentence of incarceration. Prior to his incarceration, he maintained a Florida driver's license, was registered to vote there, and has bank accounts and safety deposit boxes in Florida. For purposes of diversity jurisdiction, Mr. Carpenter is a resident of Florida as is Sharon Siebert. *See Sharon Seibert's Filing with Florida Secretary of State listing her address as Florida, attached as Exhibit 5.* Additionally, Mr. Carpenter is under the New York Residential Re-entry Management in Brooklyn as required by the Bureau of Prisons' regulations. *See CorrLinks email showing Carpenter as resident of MDC Brooklyn* and *BOP Locator showing Carpenter as a resident of New York RRM attached as Exhibit Six.*

## CONCLUSION

Because of the aforesaid arguments, this Court lacks personal jurisdiction over the Defendant Trusts and the Plaintiff has failed to state a claim for which relief may be granted, the Defendants move this Honorable Court to dismiss the allegations against them with prejudice.

Respectfully Submitted
THE DEFENDANTS,

By:  _/s/ Grayson Colt Holmes_
Grayson Colt Holmes
Federal Bar No.: ct30111
Ouellette, Deganis, Gallagher & Grippe LLC
143 Main Street
Cheshire, CT 06410
Phone: (203) 272-1157
Fax: (203) 250-1835
Email: gholmes@odglaw.com

## <u>CERTIFICATION</u>

I hereby certify that on this 3rd day of August, 2020, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.


By: */s/ Grayson Colt Holmes*
      Grayson Colt Holmes
      Federal Bar No.: ct03111