## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC | |
| Plaintiff, | CASE NO. 3:20-cv-00738-JAM |
| v. | AUGUST 24, 2020 |
| BENISTAR, ET AL. | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS ALLIANCE CHARITABLE TRUST, PHOENIX CHARITABLE TRUST, ATLANTIC CHARITABLE TRUST, AVON CHARITABLE TRUST, AND CARPENTER CHARITABLE TRUST'S MOTION TO DISMISS COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

FACTUAL BACKGROUND.................................................................................2

ARGUMENT.......................................................................................................5

    I.    Universitas Appropriately Served the Charitable Trusts with Process............5

    II.   The Court Has Subject Matter Jurisdiction Over this Proceeding..................8

    III.  Universitas' Claims are Cognizable Causes of Action.................................12

        **a.  Universitas Properly Pleads a Claim for Liability for Attorneys' Fees**............12

        **b.  Universitas Properly Asserts Constructive Trust Claims**................................13

            i.     Fraud Underlying Count Three of Universitas' Complaint...........16

            ii.    Fraud Underlying Count Four of Universitas' Complaint..............18

        **c.  Unjust Enrichment**........................................................................20

    IV.  The Charitable Trusts Submit Evidence from Outside the Pleadings, thus Converting their Motion to Dismiss into a Motion for Summary Judgment which in turn Fails on the Merits................................................................................21

CONCLUSION.................................................................................................26

# TABLE OF AUTHORITIES

**Cases:**

*Arnold v. Air Midwest, Inc.*, 100 F.3d 857 (10th Cir. 1996)............................................................22

*Ayotte Brothers Construction Co. v. Finney*, 680 A.2d 330 (Conn. App. 1996)............................20

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)..................................................................................25

*C.F. Trust, Inc. v. First Flight Ltd. P'Ship*, 306 F.3d 126 (4th Cir. 2002).....................................11

*Cadle Co. v. Gabel*, 794 A.2d 1029 (Conn. App. 2002).......................................................14, 17, 18

*Cadle Co. v. Jones*, Nos. 3:00cv316(WWE) and 3:00cv317(WWE),
    2004 U.S. Dist. LEXIS 18300 (D. Conn. Aug. 20, 2004)......................................19, 20, 21

*Cadle Co. v. Steiner*, No. CV054018721S,
    2011 Conn. Super. LEXIS 348 (Conn. Super. Ct. Feb. 10, 2011)........................18, 19, 21

*Cadle Co. v. Zubretsky*, No. CV040832477S,
    2008 Conn. Super. LEXIS 244 (Conn. Super. Ct. Jan. 28, 2008)......................................21

*Cadle Co. of Conn. v. Benevento*, No. 12-81115-CIV,
    2013 U.S. Dist. LEXIS 137491 (S.D. Fla. Sep. 25, 2013).................................................19

*Cahaly v. Benistar Prop. Exch. Tr. Co.*, 451 Mass. 343 (2008)...................................................3, 10

*Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001).......................................................................16

*Carney v. Lopez*, 933 F. Supp. 2d 365 (D. Conn. 2013)................................................................16

*Car-Freshner Corp. v. Scented Promotions, LLC*, No. 5:19-CV-1158(GTS/ATB),
    2020 U.S. Dist. LEXIS 42902 (N.D.N.Y. Mar. 12, 2020)...................................................8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..............................................................................23

*Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377 (D. Conn. 2007)............................................16, 20

*Collier v. City of Chicopee*, 158 F.3d 601 (1st Cir. 1998)..............................................................22

*CSX Transp., Inc. v. Filco Carting Corp.*, No. 10-CV-1055 (NGG) (JMA),
    2011 U.S. Dist. LEXIS 74625 (E.D.N.Y. July 7, 2011).....................................................11

*Dudek v. Dudek*, No. HDSP150182,
    2011 Conn. Super. LEXIS 273 (Conn. Super. Ct. Feb. 9, 2011).......................................15

*Dugan v. Estate of Mariani*, Case No. 12-cv-6019901S,
2014 Conn. Super. LEXIS 2396 (Conn. Super. Ct. Sep. 23, 2014)..............14, 15

*Eberle v. Ohlheiser*, Case No. 12-CV-6029172,
2012 Conn. Super. LEXIS 2452 (Conn. Super. Ct. Sep. 27, 2012).................14, 15, 18, 20

*Geriatrics, Inc. v. McGee*, 208 A.3d 1197 (Conn. 2019)...............................20

*Glob. Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150 (2d Cir. 2006)..........................23, 26

*Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013).......................................23

*Gulack v. Gulack*, 620 A.2d 181 (Conn. App. 1993).......................................................14

*Gurary v. Winehouse*, 190 F.3d 37 (2d Cir. 1999).......................................22, 23, 26

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276 (Conn. 1994).......18

*Iantosca v. Benistar Admin Servs.*, 765 F. Supp. 2d 79 (D. Mass. 2011)...................................4, 10

*Iantosca v. Benistar Admin Servs.*, 567 Fed. Appx. 1 (1st Cir. 2014)..............................................25

*IM Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503 (D. Conn. 2005)........................................18

*In re Flanagan*, 415 B.R. 29 (D. Conn. 2009)...................................................................20

*In re G. & A. Books, Inc.*, 770 F.2d 288 (2d Cir. 1985)...................................................21

*In re Hoff*, 644 F.3d 244 (5th Cir. 2011)......................................................................12

*In re Ogalin*, 303 B.R. 552 (Bankr. D. Conn. 2004).......................................................19

*Infra-Metals, Co. v. Topper & Griggs Grp., Inc.*,
No. 3:05-cv-559 (JCH), 2005 U.S. Dist. LEXIS 31385 (D. Conn. Nov. 29, 2005)............16

*Israel v. Carpenter*, 95 Civ. 2703 (DAB) (JCF),
2001 U.S. Dist. LEXIS 15571 (S.D.N.Y. Oct. 1, 2001)......................................................22

*J.D.C. Enters. v. Sarjac Partners, LLC*, No. HHDCV146048285,
2017 Conn. Super. LEXIS 4042 (Conn. Super. Ct. July 13, 2017)......................................20

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991).......................................21

*Krepps v. Reiner*, 377 F. App'x 65 (2d Cir. 2010).......................................................23

*Lafayette Bank & Trust Co. v. Branchini & Sons Constr. Co.*,
  342 A.2d 916 (Conn. Super. Ct. 1975)...........................................................................6, 7

*Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253 (4th Cir. 1998)......................22

*Lange v. Bianco*, No. CV030198017,
  2004 Conn. Super. LEXIS 2850 (Conn. Super. Ct. Sep. 30, 2004)................................5, 6

*Lechner v. Ustjanauskas*, No. CV075008306,
  2007 Conn. Super. LEXIS 2423 (Conn. Super. Ct. Sep. 19, 2007)................................7, 8

*Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.*,
  259 F. Supp. 2d 172 (D. Conn. 2003)..........................................................................16

*New Falls Corp. v. O'Brien*, Case No. 01-cv-807193,
  2005 Conn. Super. LEXIS 857 (Conn. Super. Ct. Mar. 23, 2005)......................................14

*O'Leary v. Welles*, No. CV126026336,
  2012 Conn. Super. LEXIS 1802 (Conn. Super. Ct. July 16, 2012)....................................14

*Palazzo v. Corio*, 232 F.3d 38 (2d Cir. 2000).............................................................9, 10

*PHL Variable Ins. v. Charter Oak Tr.*, No. HHDCV106012621,
  2015 Conn. Super. LEXIS 2774 (Conn. Super. Ct. Nov. 4, 2015)......................................12

*PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059 (Del. 2011)..............................6

*Plonski v. Halloran*, 420 A.2d 117 (Conn. Super. Ct. 1980)...............................................7

*Psomas v. DeRaffele Mfg. Co.*, Case No. 97-cv-0339594,
  1997 Conn. Super. LEXIS 3510 (Conn. Sup. Ct. Jan. 2, 1998) ........................................12

*Randolph Found. v. Appeal from Prob. Court of Westport*, XO5CV980167903S,
  2001 Conn. Super. LEXIS 953 (Conn. Super. Ct. Apr. 3, 2001)..........................................5

*RWP Consol., L.P. v. Salvatore*, 460 F. Supp. 2d 351 (D. Conn. 2006)...........................12, 13, 14

*San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470 (9th Cir. 1998)....................................22

*Scholastic Corp. v. Kassem*, 389 F. Supp. 2d 402 (D. Conn. 2005)....................................12, 13, 18

*SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80 (2d Cir. 2002)...................................................15

*Shaw v. AAA Eng'g & Drafting Inc.*, 138 Fed. Appx. 62 (10th Cir. 2005)....................................11

*Sheehan v. Gustafson*, 967 F.2d 1214 (8th Cir. 1992)...............................................9, 10, 11

*Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004)...................................................................21

*Starzec v. Kida*, 183 Conn. 41 (1981)..........................................................................15

*Stifel v. Hopkins*, 477 F.2d 1116 (6th Cir. 1973)...........................................................10

*Sylvester v. Walmart Real Estate Bus. Trust*, Case No. KNLCV176028893S,
    2017 Conn. Super. LEXIS 3959 (Conn. Super. Ct. July 12, 2017)................................6, 7

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016)...........................*passim*

*United States v. Carpenter*, No. 3:13-CR-226(RNC),
    2015 U.S. Dist. LEXIS 171646 (D. Conn. Dec. 24, 2015)..................................24

*United States v. Waesche*, Case No. 3:13-cr-00224 (D. Conn. Jan. 4, 2014)..................25

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP),
    2014 U.S. Dist. LEXIS 1720 (S.D.N.Y. Jan. 3, 2014)........................................8

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667 (S.D.N.Y. Oct. 8, 2014).........12

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP),
    2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014).....................................14, 22, 24

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    Case Nos. 11-cv-1590 (LTS) (HBP) and 11-cv-8726 (LTS)(HBP),
    2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20 2013)...........................................17, 19

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    Case Nos. 11-cv-1590 (LTS) (HBP) and 11-cv-8726 (LTS)(HBP),
    2013 U.S. Dist. LEXIS 142901 (S.D.N.Y. May 21, 2013)..................................22

*Universitas Educ., LLC v. Nova Grp., Inc.*, 513 Fed. App'x 62 (2d Cir. 2013)...........8, 9

*Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99 (2d Cir. 2015)....................8, 23

**Statutes:**

Conn. Gen. Stat. § 34-533...................................................................................6, 7

Conn. Gen. Stat. § 34-508......................................................................................7

Conn. Gen. Stat. § 52-59b......................................................................................7

12 Del. C. § 3804................................................................................................6, 7

28 U.S.C. § 1332.................................................................................................11

**Federal Rules of Civil Procedure:**

Fed. R. Civ. P. 12(b).................................................................................*passim*

Fed. R. Civ. P. 12(d)........................................................................................21, 23

Plaintiff, Universitas Education, LLC ("Universitas"), respectfully submits this Memorandum of Law, together with the accompanying declaration and exhibits, in opposition to the motion to dismiss filed on behalf of the defendants Alliance Charitable Trust, Phoenix Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, and Carpenter Charitable Trust (the "Charitable Trusts").

## INTRODUCTION

The Charitable Trusts' motion to dismiss seeks dismissal of the complaint under Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).[1] The Charitable Trusts argue that the complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because their sole trustee is domiciled in two different states. Conveniently, the two states where the Charitable Trusts claim to be domiciled are (i) New York – the state where Universitas' members are domiciled and (ii) Florida – where a Universitas member has a second home. Therefore, the Charitable Trusts argue that the Court has no subject matter jurisdiction because there is not complete diversity between the parties. Basic civil procedure mandates that a person can only be domiciled in one state. The Charitable Trusts' sole trustee is not domiciled in either state, and he testified under oath that he is not domiciled in Florida. The Charitable Trusts then argue that the complaint should be dismissed under Fed. R. Civ. P. 12(b)(5) because their sole trustee is actually domiciled in Connecticut. The Charitable Trusts incorrectly claim that service of process upon the Connecticut Secretary of State was invalid because their trustee is a Connecticut citizen. Therefore, the Charitable Trusts argue that their trustee was not sufficiently served with process and thus the complaint should be dismissed.

---

[1] The Charitable Trusts claim to seek dismissal under Fed. R. Civ. P. 12(b)(2). (Defs. Mot. to Dismiss [#74].) However, the Charitable Trusts' supporting brief does not make any arguments concerning Fed. R. Civ. P. 12(b)(2). Accordingly, Universitas is unable to analyze any arguments concerning Fed. R. Civ. P. 12(b)(2). Universitas does not agree that dismissal under Fed. R. Civ. P. 12(b)(2) is appropriate, and believes the Court clearly has personal jurisdiction over the Charitable Trusts.

The Charitable Trusts' arguments concerning Fed. R. Civ. P. 12(b)(6) mostly recycle failed arguments from the litigation underlying the judgment Universitas is seeking to enforce. The Charitable Trusts' arguments concerning Fed. R. Civ. P. 12(b)(6) also attempt to challenge the determination of liability against Daniel Carpenter and re-litigate the facts underlying this determination. Unable to disprove the facts underlying Universitas' judgment from the information contained within the pleadings, the Charitable Trusts submit evidence outside the pleadings in an attempt to support their arguments for dismissal under Fed. R. Civ. P. 12(b)(6). In so doing, the Charitable Trusts convert their motion to dismiss into a motion for summary judgment, which in turn fails on the merits.

## FACTUAL BACKGROUND

The Charitable Trusts' motion to dismiss is predicated upon a self-serving and fabricated factual narrative. The Charitable Trusts' claim that 10 Tower Lane is not a residence relies upon the declaration of Molly Carpenter, (Defs. Mem. [#74-1] at 4,) which in turn states that nobody lives at 10 Tower Lane. (Defs. Mem., Ex. 2 [#74-3].) This testimony is undermined by the Secretary of State's records for Benistar Admin. Services, Inc. ("BASI"), which indicate that every BASI executive resides at 10 Tower Lane, including Molly Carpenter. (Declaration of Benjamin Chernow, dated August 24, 2020 (hereinafter ("Chernow Decl."), Ex. 3.) Mrs. Carpenter also lists 10 Tower Lane as her official residence in additional Secretary of State filings, thus indicating that 10 Tower Lane was not mistakenly listed as her residence. (Chernow Decl., Ex. 4.)

Nor did Judge Swain "continually reject[] the arguments made here that have been repeated over the last nine years." (Defs. Mem. [#74-1] at 1.) Judge Swain denied an informal request for judgment against certain parties as improper letter motions, without prejudice to formal motion practice. (Defs. Mem., Ex. 1 [#74-2].) Judge Swain did not hear any of the claims within the letter

motions, let alone "continually reject" them. (Defs. Mem., Ex. 1 [#74-2].) Nor were the Charitable Trusts included in the letter motions or in any way involved in those proceedings. (Defs. Mem., Ex. 1 [#74-2].)

Daniel Carpenter is the sole trustee of the Charitable Trusts. (Defs. Mem. [#74-1] at 4 ("The Plaintiff's failure to leave copies of the process at the abode of Daniel Carpenter, as the sole trustee of the Defendant Trusts renders ineffective any attempted abode service on the Defendant Trusts.").) The Charitable Trusts assert that Daniel Carpenter is domiciled in both Florida and New York. (Defs. Mem. [#74-1] at 15.) The Charitable Trusts submit no evidence to suggest that Mr. Carpenter is domiciled in Florida, and Mr. Carpenter testified during his criminal trial that he is not domiciled in Florida. (Chernow Decl., Ex. 10.) Nor does Mr. Carpenter have bank accounts in Florida – he does not have any bank accounts. (PJR App., Ex. 8 [#10].)

Daniel Carpenter is domiciled in Connecticut. In 2005 Mr. Carpenter was served process in Connecticut and commanded to appear before the State Grievance Committee for the bar of the State of Connecticut. (Chernow Decl., Ex. 15.) Mr. Carpenter received this service of process, appeared before the State Grievance Committee, and was suspended from the bar of the State of Connecticut. (Chernow Decl., Ex. 15.) In 2008 Mr. Carpenter submitted a declaration swearing that he resides in Connecticut and that he is a citizen of Connecticut. (Chernow Decl., Ex. 5 ¶ 3.) In 2008 a court found that Mr. Carpenter was a Connecticut resident. *See Cahaly v. Benistar Prop. Exch. Tr. Co.*, 451 Mass. 343, 347 (2008) ("…controlled by [Daniel] Carpenter, a tax attorney and Connecticut resident."). In 2009 Mr. Carpenter was served with process at three different Connecticut addresses and commanded to appear before the Federal Grievance Committee for the bar of the District of Connecticut. (Chernow Decl., Ex. 12.) Mr. Carpenter received this service of process, appeared before the Federal Grievance Committee, and was suspended from the bar of

the District of Connecticut. (Chernow Decl., Ex. 13.) In 2011 a different court found that Mr. Carpenter, along with all of his co-defendants in that proceeding, were domiciled in Connecticut. *See Iantosca v. Benistar Admin Servs.*, 765 F. Supp. 2d 79, 85-86 (D. Mass. 2011) ("all of the defendants are domiciled in Connecticut …. [P]laintiffs offered to conduct the depositions in Hartford, Connecticut where the defendants are domiciled."). In 2013 Mr. Carpenter filed a complaint in federal district court asserting that he resides in Connecticut. (Chernow Decl., Ex. 14 ¶ 7.) In 2014 Mr. Carpenter filed a complaint in federal district court asserting that he is a resident of Connecticut. (Chernow Decl., Ex. 6 ¶ 3.) In 2017 Mr. Carpenter filed a complaint in federal district court asserting that he is a resident of Connecticut. (Chernow Decl., Ex. 7 ¶ 3.)

Mr. Carpenter also operated a criminal conspiracy from multiple addresses in Connecticut. *United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016). Mr. Carpenter then testified at his criminal trial that he has lived in Connecticut for his entire life except for a brief stint in New York City, (Chernow Decl., Ex. 10,) and that he has resided in Connecticut since 2006 and continues to do so. (Chernow Decl., Ex. 11.) Mr. Carpenter also testified that he intends to return to Connecticut upon the termination of his sentence and his release from incarceration. (Chernow Decl., Ex. 8.) In 2020 alone Mr. Carpenter made six filings seeking to be released from prison and/or transferred to a facility in Connecticut.[2] The gist of all these filings is the same – Mr. Carpenter seeks to return to Connecticut in order to be near his "home," his family, and his doctors. (*See e.g.*, Chernow Decl., Ex. 9 at 3-5.) Mr. Carpenter's wife lives in Connecticut, (Report of Rule 26(f) Meeting [#82] at 4,) and Mr. Carpenter has a substantial businesses presence in Connecticut.

---

[2] Mr. Carpenter filed a Writ of Habeas Corpus in the Eastern District of New York, *see Carpenter v. Sawyer*, Case No. 1:20-cv-00810 (E.D.N.Y.), a Writ of Habeas Corpus in the District of Connecticut, *see Carpenter v. Sawyer*, Case No. 3:20-cv-644 (RNC) (D. Conn.), a Motion for Bail with the Second Circuit Court of Appeals, *see United States v. Carpenter*, No. 19-70 (2d Cir.), and an Emergency Motion to Reduce Sentence, Emergency Petition for Release, and a Motion to Reconsider the Denial of his Motion to Reduce Sentence in the District of Connecticut. *See United States v. Carpenter*, No. 3:13-cr-226 (RNC) (D. Conn.).

(Chernow Decl., Exs. 6 ¶¶ 3-4, 7 ¶ 4.)

Furthermore, Mr. Carpenter wrote a letter to the Honorable Judge Laura T. Swain demanding that she, *inter alia*, amend all of the orders issued in the underlying litigation and remove any mention of his dishonesty and/or improper litigation tactics. (Chernow Decl., Ex. 16.) This letter was written on Mr. Carpenter's personal letterhead, which provides a Connecticut address. (Chernow Decl., Ex. 16 at 1.) The letter also implored Judge Swain to "make [it] a fair fight." (Chernow Decl., Ex. 16 at 3.) Mr. Carpenter then elaborated upon what he meant by this – "[i]f Universitas thinks I have done anything wrong, let them come to Connecticut to sue me." (Chernow Decl., Ex. 16 at 3.)

**ARGUMENT**

I. <u>Universitas Appropriately Served the Charitable Trusts with Process.</u>[3]

The Charitable Trusts concede that Connecticut General Statute § 52-57 governs service of process upon "individuals, municipalities, corporations, partnerships and voluntary associations." (Defs. Mem. [#74-1] at 2.) A trust is not an individual, municipality, corporation, partnership, or a voluntary association. The Charitable Trusts recite *Lange v. Bianco* verbatim for precedent that a trust must be served in accordance with C.G.S. § 52-57. (Defs. Mem. [#74-1] at 2.) *Lange* is inapplicable to these proceedings because it involved claims against individual trustees rather than the trust itself. *See Lange v. Bianco*, No. CV030198017, 2004 Conn. Super. LEXIS 2850 (Conn. Super. Ct. Sep. 30, 2004). *Lange* involved non-statutory Connecticut Trusts, which have no standing to sue or be sued in their own name, and thus the suit must be brought against the trustee(s). *See Randolph Found. v. Appeal from Prob. Court of Westport*,

---

[3] Universitas did not serve the Charitable Trusts with process under Fed. R. Civ. P. 5. (Order [#38].) The Charitable Trusts' arguments concerning service under Fed. R. Civ. P. 5 are thus irrelevant, (Defs. Mem. [#74-1] at 4-5,) and Universitas is not responding to these arguments.

XO5CV980167903S, 2001 Conn. Super. LEXIS 953, at *30-*31, *41-*43 (Conn. Super. Ct. Apr. 3, 2001). Thus, in *Lange*, the defendant was the trustee rather than the trust itself, and because the trustee was an individual, service was dictated by C.G.S. § 52-57, which controls service upon individuals. *See Lange*, 2004 Conn. Super. LEXIS 2850.

The Charitable Trusts are Delaware Trusts. (Compl. [#1] at ¶¶ 6-10.) When determining the sufficiency of service of process upon a foreign trust, the court first ascertains the nature of the trust in accordance with the laws of the state where the trust is organized, and then applies the appropriate Connecticut statute for service of process. *See Lafayette Bank & Trust Co. v. Branchini & Sons Constr. Co.*, 342 A.2d 916, 916-17 (Conn. Super. Ct. 1975). Delaware law considers trusts to be distinct from an individual, municipality, corporation, partnership, and/or voluntary association. *See* 12 Del. C. § 3804. Delaware law also provides trusts with standing to sue or be sued in their own name. *See e.g.*, *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059 (Del. 2011) (case with trust serving as defendant). Accordingly, Universitas was required to serve the Charitable Trusts with process, not their trustee, and thus service under C.G.S. § 52-57 is inapposite.[4]

The Charitable Trusts are foreign trusts that operate in Connecticut. (PJR App, Ex. 23 [#12] (Charitable Trust bank account with Connecticut address).) The Charitable Trusts did not appoint an agent for service of process in Connecticut. Accordingly, the relevant statute for serving the Charitable Trusts with process is C.G.S. § 34-533(c), which requires only that process be served upon the Connecticut Secretary of State. *See Sylvester v. Walmart Real Estate Bus. Trust*, Case No. KNLCV176028893S, 2017 Conn. Super. LEXIS 3959 (Conn. Super. Ct. July 12, 2017) (finding service of process under C.G.S. § 34-533(c) appropriate for foreign trusts with no agent

---

[4] Delaware law also provides that Delaware Trusts may be served process in accordance with the methods permitted by this Court. *See* 12 Del. C. § 3804(f).

for service). It is undisputed that Universitas served the Connecticut Secretary of State with process. (Defs. Mem. [#74-1] at 3-4.) The Charitable Trusts were thus properly served under C.G.S. § 34-533(c). *See Sylvester*, 2017 Conn. Super. LEXIS 3959.

It is also undisputed that Universitas served the Charitable Trusts with process at the offices at 10 Tower Lane. (Defs. Mem. [#74-1] at 3-4.) The Charitable Trusts do not dispute that their offices are located at 10 Tower Lane. (*See also* Compl. [#1] ¶¶ 6-10.) Service upon both the Connecticut Secretary of State and the Charitable Trusts' offices constitutes service of process under both C.G.S. § 34-533(b) (alternative methods of service upon foreign statutory trusts) and C.G.S. § 34-508 (service of process upon domestic statutory trusts) and removes any question about the efficacy of the service of process upon the Charitable Trusts. *See* Conn. Gen. Stat. §§ 34-508, 34-533(b).

The Charitable Trusts' erroneously argue that C.G.S. § 52-59b renders service of process upon the Secretary of State insufficient. (Defs. Mem. [#74-1] at 4-5.) C.G.S. § 52-59b is limited to "nonresident individuals, foreign partnerships, and foreign voluntary associations." *See* Conn. Gen. Stat. § 52-59b. The Charitable Trusts are not individuals, partnerships, or voluntary associations. *See* 12 Del. C. § 3804. Therefore, C.G.S. § 52-59b is inapposite to service of process upon the Charitable Trusts. Furthermore, C.G.S. § 52-59b has explicitly been deemed inapplicable for serving process upon foreign trusts. *See Lafayette Bank*, 342 A.2d 916.

The rules concerning service of process are also construed more liberally when the defendant received actual notice of the complaint, as they "cannot be heard to say that [they were] prejudiced in any manner whatsoever." *See Plonski v. Halloran*, 420 A.2d 117, 118 (Conn. Super. Ct. 1980); *Lechner v. Ustjanauskas*, No. CV075008306, 2007 Conn. Super. LEXIS 2423, *9-*10 (Conn. Super. Ct. Sep. 19, 2007). Indeed, the Charitable Trusts concede that the "chief purpose [of

abode service] is to ensure actual notice to the defendant that the action is pending." (Defs. Mem. [#74-1] at 2.) Mr. Carpenter is the sole trustee of the Charitable Trusts.[5] (Defs. Mem. [#74-1] at 4.) Mr. Carpenter participated in settlement discussions on behalf of defendant Grist Mill Partners, LLC ("GM Partners") weeks before the Charitable Trusts entered a notice of appearance in this proceeding.[6] (Chernow Aff., dated August 17, 2020 [#83-1].) Thus, Mr. Carpenter had notice of this proceeding and the claims against the Charitable Trusts. *See Car-Freshner Corp. v. Scented Promotions, LLC*, No. 5:19-CV-1158(GTS/ATB), 2020 U.S. Dist. LEXIS 42902, at *6-*7 (N.D.N.Y. Mar. 12, 2020) (explaining that participation in settlement discussions indicates notice of complaint). The fact that the sole trustee received actual notice of the complaint "weighs heavily" in finding that the Charitable Trusts were adequately served with process. *See Lechner*, 2007 Conn. Super. LEXIS 2423 at *9-*10.

## II. The Court Has Subject Matter Jurisdiction Over this Proceeding.

The Charitable Trusts do not dispute that the citizenship of a trust is determined by the citizenship of its trustee.[7] (Defs. Mem. [#74-1] at 14-15.) The Charitable Trusts contest diversity jurisdiction by arguing the citizenship of both Universitas and Mr. Carpenter. (Defs. Mem. [#74-

---

[5] This is an **explicit violation** of the supervised release imposed in Mr. Carpenter's sentence. Mr. Carpenter is currently located at "New York RRM," (Defs. Mem., Ex. 6 [#74-7],) which is a halfway house in New York. (Chernow Decl., Ex. 1.) In order to "protect people against Mr. Carpenter's proclivity to engage in fraud," the court imposed a three-year supervised release with special conditions as part of his sentence, during which time Mr. Carpenter cannot engage in for-profit business, cannot be involved with the finances of any non-profit organizations, and cannot "act[] in a fiduciary capacity with regard to other people's property without the advance permission of the probation office." (Chernow Decl., Ex. 2.) As the sole trustee of the Charitable Trusts, Mr. Carpenter is acting in a fiduciary capacity with regard to other people's property and must be involved with the Charitable Trusts' finances. This is a violation of Mr. Carpenter's supervised release and further illustrates his "absence of respect for … [the] Court." *See Universitas Educ., LLC v. Nova Grp., Inc.*, Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP), 2014 U.S. Dist. LEXIS 1720, at *13 (S.D.N.Y. Jan. 3, 2014) (explaining that "[t]he evidence received by this Court concerning the actions of Mr. Carpenter and his affiliates demonstrates an absence of respect for distinctions among his business entities, his obligations to creditors, and for the orders of this Court.").

[6] Mr. Carpenter's involvement in GM Partners is also an explicit violation of his supervised release, as GM Partners is a for-profit business enterprise. *See supra* at n. 5.

[7] Mr. Carpenter and his associates were sanctioned, *inter alia*, for arguing otherwise in the underlying litigation. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 513 Fed. App'x 62 (2d Cir. 2013) (rejecting Daniel Carpenter's arguments concerning subject matter jurisdiction); *Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99 (2d Cir. 2015) (upholding sanctions against Carpenter-controlled entity for same arguments concerning citizenship of trust).

1] at 14-15.) The Charitable Trusts first argue that Ms. Siebert, one of Universitas' members, is domiciled in Florida, and Daniel Carpenter is domiciled in Florida, and thus there is not complete diversity between the parties and this Court does not have diversity jurisdiction. (Defs. Mem. [#74-1] at 15.) The Charitable Trusts then argue that Ms. Vassar, Universitas' other member, is domiciled in New York, and Daniel Carpenter is domiciled in New York, and thus there is not complete diversity and this Court does not have diversity jurisdiction. (Defs. Mem. [#74-1] at 15.) As previously stated, a person can have only one domicile for purposes of federal diversity jurisdiction. *See Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Sheehan v. Gustafson*, 967 F.2d 1214, 1215-16 (8th Cir. 1992).

Ms. Siebert is domiciled in New York. *See Universitas Educ.*, 513 Fed. App'x at 63 ("Universitas is a citizen of New York because it is a limited liability company whose members are domiciled in New York."). To the extent that the Charitable Trusts contend that Ms. Siebert changed her domicile to Florida, they must demonstrate that she: (i) changed her domicile from New York to Florida, and (ii) that she intends to remain in Florida indefinitely. *See Palazzo*, 232 F.3d at 42. Universitas does not dispute that Ms. Siebert owns a second home in Florida, signed two affidavits in Florida, and/or that she listed her Florida address on a single form. This does not demonstrate a change in domicile from New York to Florida. *See Sheehan*, 967 F.2d at 1215-16 (finding litigant domiciled in Nevada when they had bank account, investments, property, and vehicles in Minnesota, had office and secretary in Minnesota, received mail in Minnesota, and had physician, dentist, and attorney in Minnesota). Nor does it have any bearing on Ms. Siebert's intent – Ms. Siebert intends is to maintain her primary residence in New York, and thus she is domiciled in New York. (*See* Compl. ¶ 1.) Even if the Court found Ms. Siebert to be domiciled in Florida, this would be inconsequential to diversity jurisdiction because Mr. Carpenter is not domiciled in

Florida. (Chernow Decl., Ex. 10.)

Nor is Mr. Carpenter domiciled in New York. Mr. Carpenter's residency in New York is a result of his involuntary incarceration in a New York prison facility. (Defs. Mem., Ex. 6 [#74-7].) An involuntary incarceration does not constitute a domicile. *See Stifel v. Hopkins*, 477 F.2d 1116, 1121 (6th Cir. 1973). Mr. Carpenter has repeatedly demonstrated that he is in New York against his will, and that he does not intend to remain in New York, by continually filing for a release from the New York prison facility and/or a transfer to a Connecticut prison facility. (*See e.g.*, Chernow Decl., Ex. 9.) Thus, Mr. Carpenter never obtained domicile in New York for purposes of federal diversity jurisdiction. *See Stifel*, 477 F.2d at 1121; *see also Sheehan*, 967 F.2d at 1215 (explaining that domicile requires "an intention to remain [in the state] indefinitely").

Mr. Carpenter has consistently represented to the courts that he was domiciled in Connecticut, (Chernow Decl., Exs. 5 ¶ 3, 6 ¶ 3, 7 ¶ 3, 14 ¶ 7,) and the courts have found that Mr. Carpenter was domiciled in Connecticut. *See Iantosca*, 765 F. Supp. 2d at 85-86; *Cahaly*, 451 Mass. at 347. Mr. Carpenter also testified that he has resided in Connecticut since 2006, (Chernow Decl., Ex. 11,) further testified that he intends to return to Connecticut upon his release from incarceration, (Chernow Decl., Ex. 8,) and is actively seeking to return to Connecticut. (*See e.g.*, Chernow Decl., Ex. 9.)[8] Mr. Carpenter was served with process in Connecticut on numerous occasions, (Chernow Decl., Exs. 12-13, 15,) and then operated a criminal conspiracy from Connecticut. *See Carpenter*, 190 F. Supp. 3d 260. Mr. Carpenter's personal letterhead provides a Connecticut address, and he represented that Connecticut is the appropriate state to file suit against him. (Chernow Decl., Ex. 16.) Mr. Carpenter's "home" is in Connecticut, as are his wife, his

[8] Mr. Carpenter's unequivocal intent to return to Connecticut, as demonstrated by his sworn testimony and numerous court filings seeking to return to Connecticut, *ipso facto* precludes Mr. Carpenter from being domiciled in Florida and/or New York for purposes of federal diversity jurisdiction. *See Palazzo*, 232 F.3d at 42 (explaining that domicile is the place where one "has the intention of returning").

family, his doctors, and his businesses. *See Sheehan*, 967 F.2d at 1215-16 (identifying business presence and presence of doctors as evidence of domicile). Mr. Carpenter's Connecticut domicile makes the Charitable Trusts citizens of Connecticut, and thus the Court has diversity jurisdiction over this proceeding. *See* 28 U.S.C. § 1332.

The Charitable Trusts' argument that this Court has no jurisdiction over this proceeding as a result of *Peacock v. Thomas* is entirely meritless. (Defs. Mem. [#74-1] at 7-9.) *Peacock* is concerned with ancillary jurisdiction and, as the Charitable Trusts concede, the Court has jurisdiction over this proceeding so long as there is "some independent ground … to assume federal jurisdiction…." (Defs. Mem. [#74-1] at 8-9.) This Court's subject matter jurisdiction over this proceeding is a result of diversity jurisdiction. (Compl. [#1] ¶ 13; Report of Rule 26(f) Meeting [#82] at 2.) It is straightforward and uncontroverted that *Peacock* is not implicated when claims to impose liability for a money judgment on a party not otherwise liable for the judgment are filed in a new proceeding where the court has diversity jurisdiction. *See C.F. Trust, Inc. v. First Flight Ltd. P'Ship*, 306 F.3d 126, 133 (4th Cir. 2002); *Shaw v. AAA Eng'g & Drafting Inc.*, 138 Fed. Appx. 62, 68 (10th Cir. 2005); *see also CSX Transp., Inc. v. Filco Carting Corp.*, No. 10-CV-1055 (NGG) (JMA), 2011 U.S. Dist. LEXIS 74625, at *3-*5 (E.D.N.Y. July 7, 2011) (explaining that *Peacock* is inapplicable when plaintiff establishes federal subject matter jurisdiction by means of diversity jurisdiction).

The Charitable Trusts claim that Universitas' judgment is an ERISA judgment because the Charter Oak Trust ("COT") was an ERISA plan, and then argue that ERISA judgments cannot be enforced in either federal court or state court. (Defs. Mem. [#74-1] at 7-8.) ERISA has no bearing on this proceeding. *See CSX Transp.*, 2011 U.S. Dist. LEXIS 74625 at *3-*5 (explaining that *Peacock* is inapplicable when plaintiff establishes federal subject matter jurisdiction by means of

diversity jurisdiction). Even if ERISA judgments were unenforceable, this would have no bearing on Universitas' judgment because COT was a sham and not an ERISA plan – COT was a fraudulent entity created for the sole purpose of defrauding life insurance carriers. (Chernow Decl., Ex. 2 ("I think that Mr. Carpenter showed his culpability most clearly with regard to the Spencer policies. Having defrauded Lincoln into issuing policies under the guise of the Charter Oak Trust, a corrupted welfare benefit plan formed for the very purpose of doing STOLI fraud …."); ) *see also Carpenter*, 190 F. Supp. 3d at 281 (explaining that purpose of COT was to perpetrate fraud upon insurance carriers); *PHL Variable Ins. v. Charter Oak Tr.*, No. HHDCV106012621, 2015 Conn. Super. LEXIS 2774, at *4 (Conn. Super. Ct. Nov. 4, 2015) ("There is voluminous evidence to support the plaintiff's statement that "the Charter Oak Trust was a fraud."").

III.     Universitas' Claims are Cognizable Causes of Action.

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all material allegations in the complaint. *See Scholastic Corp. v. Kassem*, 389 F. Supp. 2d 402, 404 (D. Conn. 2005). The complaint should only be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See RWP Consol., L.P. v. Salvatore*, 460 F. Supp. 2d 351, 353 (D. Conn. 2006) (internal citations omitted).

**a.   Universitas Properly Pleads a Claim for Liability for Attorneys' Fees**

A party can assert a cause of action to recover attorneys' fees and costs in accordance with a contract providing for the recovery of such fees and costs. *See Psomas v. DeRaffele Mfg. Co.*, Case No. 97-cv-0339594, 1997 Conn. Super. LEXIS 3510, at *3-*5 (Conn. Super. Ct. Jan. 2, 1998). Trust Documents are effectively contracts and courts treat them as such. *See In re Hoff*, 644 F.3d 244, 248 (5th Cir. 2011); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667, at *4-*6 (S.D.N.Y. Oct. 8, 2014) (referring to section for attorneys' fees within COT Trust Document as "contractual provision" and awarding

Universitas attorneys' fees in accordance with Trust Document). Universitas clearly alleged that "[t]he Trust Document provides that the non-prevailing party shall pay all costs of the prevailing party, including attorneys' fees and costs." (Compl. [#1] ¶ 185.) Universitas further alleged that "Universitas was the prevailing party in all prior disputes with Judgment Debtors and Defendants." (Compl. [#1] ¶ 185.) Accepting these allegations as true provides Universitas with a valid claim for attorneys' fees against Nova Group, Inc. ("Nova"). *See Scholastic*, 389 F. Supp. 2d at 404. Universitas also alleged that Nova is an alter ego of Mr. Carpenter, (Compl. [#1] ¶¶ 17, 28-29, 60-61, 67-73, 89,) and further alleged that Mr. Carpenter is an alter ego of the Charitable Trusts. (Compl. [#1] ¶¶ 122-130.) Accepting these allegations as true, the Charitable Trusts are alter egos of Nova and thus are liable for Universitas' attorneys' fees. *See Scholastic*, 389 F. Supp. 2d at 404. Thus, Universitas' claim for attorneys' fees from the Charitable Trusts is a cognizable cause of action and survives a Rule 12(b)(6) motion to dismiss. *See RWP Consol.*, 460 F. Supp. 2d at 353.

**b. Universitas Properly Asserts Constructive Trust Claims**

Universitas asserts two constructive trust claims against the Charitable Trusts. Count Three asserts that Daniel Carpenter fraudulently transferred Spencer insurance proceeds to the Charitable Trusts and in turn Universitas is entitled to a constructive trust against the Charitable Trusts in the amount of the Spencer insurance proceeds that Mr. Carpenter fraudulently transferred to the Charitable Trusts. (Compl. [#1] ¶¶ 187-193.) Count Four asserts that Mr. Carpenter uses the Charitable Trusts to fraudulently conceal assets from creditors and in turn Universitas is entitled to a constructive trust against the Charitable Trusts in the amount of the outstanding judgment against Mr. Carpenter. (Compl. [#1] ¶¶ 194-197.)

A constructive trust is imposed "against one who, by fraud, actual or constructive, by duress or by abuse of confidence or by commission of wrong, or by any form of unconscionable

conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold or enjoy." *RWP Consol.*, 460 F. Supp. 2d at 357. A constructive trust is created, as a matter of law, when: (i) there is a transfer of property acquired through fraud or other wrongful means, (ii) the transferor has a confidential relationship with the plaintiff and the transferee, and (iii) the transferee is unjustly enriched by the receipt of the such property. *See Gulack v. Gulack*, 620 A.2d 181, 184-85 (Conn. App. 1993); *Eberle v. Ohlheiser*, Case No. 12-CV-6029172, 2012 Conn. Super. LEXIS 2452, at *28-*29 (Conn. Super. Ct. Sep. 27, 2012); *RWP Consol.*, 460 F. Supp. 2d at 358. A transfer intended to hinder and/or delay a creditor's collection efforts is a fraudulent transfer. *See Universitas Educ., LLC v. Nova Grp., Inc.*, Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP), 2014 U.S. Dist. LEXIS 109077, at *6 (S.D.N.Y. Aug. 7, 2014). Therefore, a constructive trust is created when a debtor avoids payment of their debts by placing property in the name of a third party with whom the debtor has a confidential relationship while the debtor retains beneficial ownership of the property. *See New Falls Corp. v. O'Brien*, Case No. 01-cv-807193, 2005 Conn. Super. LEXIS 857, at *11 (Conn. Super. Ct. Mar. 23, 2005) (citations omitted).

A constructive trust claim is a distinct cause of action. *See O'Leary v. Welles*, No. CV126026336, 2012 Conn. Super. LEXIS 1802, at *16 (Conn. Super. Ct. July 16, 2012) ("…a claim for a constructive trust can be brought as an independent cause of action."); *see also Dugan v. Estate of Mariani*, Case No. 12-cv-6019901S, 2014 Conn. Super. LEXIS 2396, at *3-*5 (Conn. Super. Ct. Sep. 23, 2014) (denying motion to strike claim for constructive trust); *RWP Consol.*, 460 F. Supp. 2d 351 (denying motion to dismiss constructive trust claim); *Cadle Co. v. Gabel*, 794 A.2d 1029 (Conn. App. 2002) (upholding damages awarded pursuant to count for constructive

trust). In *Eberle v. Ohlheiser*, the court surveyed Connecticut case law concerning constructive trusts and determined that constructive trust must be an independent cause of action because it involves additional elements and a substantively different remedy than unjust enrichment. *See Eberle*, 2012 Conn. Super. LEXIS 2452 at *24-*30.

Universitas alleged facts constituting all of the necessary elements for its constructive trust claims against the Charitable Trusts. Universitas has a judgment against Mr. Carpenter and numerous Carpenter-controlled entities as a result of Mr. Carpenter's fraudulent defalcation of money rightfully belonging to Universitas. (Compl. [#1] ¶¶ 55-56.) As a matter of law, Mr. Carpenter therefore became a constructive trustee obligated to return the money he stole from Universitas, thereby establishing a confidential relationship between Mr. Carpenter and Universitas. *See Dugan*, 2014 Conn. Super. LEXIS 2396 at *3-*5 (explaining that when property is acquired in a manner such that the holder of legal title cannot in good conscience retain the beneficial interest of that property, a trust is imposed upon the property and equity converts the holder of legal title to a trustee and imposes an equitable duty upon the trustee to convey the property to its rightful owner); *see also SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88 (2d Cir. 2002) ("[A]ssets acquired by fraud are subject to a constructive trust for the benefit of the defrauded party.") (internal citations omitted). Mr. Carpenter is the sole trustee of the Charitable Trusts, (Compl. [#1] ¶ 126,) and thus has a confidential relationship with the Charitable Trusts. *See Starzec v. Kida*, 183 Conn. 41, 43 n. 1 (1981) (explaining that a legal fiduciary relationship suffices for a confidential relationship).[9] The particular fraud and unjust enrichment relating to Universitas' constructive trust claims are discussed *infra*.

---

[9] Mr. Carpenter's status as the Charitable Trusts' sole trustee also renders him the beneficial owner of assets owned by the Charitable Trusts. *See Dudek v. Dudek*, No. HDSP150182, 2011 Conn. Super. LEXIS 273, at *9-*10 (Conn. Super. Ct. Feb. 9, 2011) (explaining that "the trustee is the legal owner of trust property").

i.        Fraud Underlying Count Three of Universitas' Complaint

Universitas alleged that courts have already determined that Mr. Carpenter fraudulently transferred $21 million of the Spencer insurance proceeds to Grist Mill Holdings, LLC ("GM Holdings"),[10] (Compl. [#1] ¶ 55,) and that Mr. Carpenter then fraudulently transferred $1.76 million of the Spencer insurance proceeds from GM Holdings to the Charitable Trusts. (Compl. [#1] ¶¶ 128-129, 189.) The Charitable Trusts countered that these allegations fail to meet the heightened pleading standard for fraud under Fed. R. Civ. P. 9(b).[11] (Defs. Mem. [#74-1] at 11-12.) Fed. R. Civ. P. 9(b) only requires that the requisite mental state be pleaded with particularity for claims involving fraudulent transfers, and this is satisfied by a conclusory allegation of scienter supported by facts providing an inference of fraudulent intent. *See Infra-Metals, Co. v. Topper & Griggs Grp., Inc.*, No. 3:05-cv-559 (JCH), 2005 U.S. Dist. LEXIS 31385, at *10-*11 (D. Conn. Nov. 29, 2005); *Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.*, 259 F. Supp. 2d 172, 179 (D. Conn. 2003); *Carney v. Lopez*, 933 F. Supp. 2d 365, 376 (D. Conn. 2013); *Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 380-81 (D. Conn. 2007).

Universitas provided a conclusory allegation of scienter by pleading that "… all transfers to the Charitable Trusts … were intended to hinder, delay, defraud, and otherwise prevent Universitas from enforcing its judgment." (Compl. [#1] ¶ 129.) Universitas then pleaded facts through which fraudulent intent can be inferred, such as the courts' determination that Mr. Carpenter's use of the Spencer insurance proceeds constituted money laundering and illegal monetary transactions, (Compl. [#1] ¶¶ 57-58,) Mr. Carpenter's operation of a criminal conspiracy

---

[10] GM Holdings is also a judgment debtor in the amount of $21 million. (Compl. [#1] ¶ 55.)

[11] Should the Court find that Universitas' claim fails to meet the heightened threshold of Fed. R. Civ. P. 9(b), Universitas requests that the Court permit Universitas to amend the Complaint. *See Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (explaining that when plaintiffs "specifically request leave to amend in the event that the court is inclined to dismiss on Rule 9(b) grounds, the failure to grant leave to amend is an abuse of discretion unless the plaintiff has acted in bad faith or the amendment would be futile.").

to defalcate the Spencer insurance proceeds, (Compl. [#1] ¶¶ 57-58,) the courts' determination that Mr. Carpenter's other conveyances of Spencer insurance proceeds were fraudulent, (Compl. [#1] ¶¶ 33, 35, 55,) and the courts' finding that Mr. Carpenter obstructed justice and offered self-serving, false, and perjurious testimony throughout the underlying litigation concerning the Spencer insurance proceeds. (Compl. [#1] ¶ 59.)

The Charitable Trusts then argue that Universitas failed to state a claim because Universitas has already recovered an amount in excess of its claim against the Charitable Trusts. (Defs. Mem. [#74-1] at 12.) Mr. Carpenter made this same argument in the underlying litigation – as summarized by the court:

> [T]he Moonstone Respondents argue that, because $4.02 million was payable to Grist Mill under the arbitration award, and because Moonstone was provided with only $1.1 million to purchase the Property, the Court must trace the Property to the $4.02 million rather than to the remainder of the $10.8 million that was transferred out of Charter Oak Trust in June 2009.

*Universitas Educ., LLC v. Nova Grp., Inc.*, Case Nos. 11-cv-1590 (LTS) (HBP) and 11-cv-8726 (LTS)(HBP), 2013 U.S. Dist. LEXIS 165803, at *38-*39 (S.D.N.Y. Nov. 20 2013). The court stated that "this argument is illogical," and further rejected it on the basis that it "would lead to the inequitable result of permitting Mr. Carpenter and his affiliates to perpetuate their evasion of the legal obligation to pay the Life Insurance Proceeds to [Universitas]…." *See id.* The Charitable Trusts' argument is equally illogical. Even if Universitas' recovery from Christiana Bank for breaching its fiduciary duty as trustee of COT offset the judgment against Mr. Carpenter, which it does not, there would still be an $18 million outstanding judgment against Mr. Carpenter, an amount well above the $1.76 million constructive trust claim against the Charitable Trusts. Furthermore, a constructive trust is equally intended to both prevent unjust enrichment to the defendant and restore property to the plaintiff. *See Cadle Co. v. Gabel*, 794 A.2d at 1037. Mr.

Carpenter transferred $1.76 million of the money he stole from Universitas to the Charitable Trusts – the Charitable Trusts do not get to keep this money, irrespective of Universitas' recovery. *See id.* at 1037-38; *Eberle*, 2012 Conn. Super. LEXIS 2452 at *30-*31; *see also Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 284 (Conn. 1994) ("the measure of damages in an unjust enrichment case ordinarily is not the loss to the plaintiff but the benefit to the defendant.").

The Charitable Trusts further complain that Universitas must trace the Spencer insurance proceeds. (Defs. Mem. [#74-1] at 11-12.) No such tracing requirement exists. *See IM Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503, 520 (D. Conn. 2005) ("Connecticut courts do not seem to apply this 'tracing' requirement in their own treatment of constructive trusts."). Even if tracing is necessary, tracing is a fact-specific inquiry that is unnecessary at the motion to dismiss stage. *See Scholastic*, 389 F. Supp. 2d at 414-15. Universitas further contends that courts have already traced the Spencer insurance proceeds, and the Charitable Trusts are collaterally estopped from arguing that the transfers from GM Holdings to the Charitable Trusts did not consist of Spencer insurance proceeds. (*See* Compl. [#1] ¶¶ 55, 128-129.)

ii.    Fraud Underlying Count Four of Universitas' Complaint

Universitas alleged that Mr. Carpenter structured his personal and business financial affairs so as to hinder his creditors' collection efforts by transferring title to all of his assets and future income to trusts and LLCs. (Compl. [#1] ¶¶ 67-69, 79, 86, 122-123, 177.) This constitutes the fraud of "diversion of the fruit of one's labor." *See Cadle Co. v. Steiner*, No. CV054018721S, 2011 Conn. Super. LEXIS 348, at *1-*7 (Conn. Super. Ct. Feb. 10, 2011). To the extent Mr. Carpenter transferred title to his assets and future income to third parties with an intent to keep these assets and/or income from the reach of creditors, this constitutes fraud upon Universitas as a matter of

law, even if the transfers occurred before Universitas obtained a judgment against Mr. Carpenter. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803 at *28 ("A debtor's conveyance made with the 'actual intent, as distinguished from the intent presumed in law, to hinder, delay, or defraud present **or** future creditors, is fraudulent as to both present **and** future creditors.'") (emphasis added). A constructive trust is imposed upon any such diverted assets and/or income so long as the debtor retains an interest in the diverted "fruit of their labor." *See Cadle Co. v. Steiner*, 2011 Conn. Super. LEXIS 348 at *8-*10; *Cadle Co. v. Jones*, Nos. 3:00cv316(WWE) and 3:00cv317(WWE), 2004 U.S. Dist. LEXIS 18300, at *25-*30 (D. Conn. Aug. 20, 2004); *see also Cadle Co. of Conn. v. Benevento*, No. 12-81115-CIV, 2013 U.S. Dist. LEXIS 137491, at *5 (S.D. Fla. Sep. 25, 2013) (explaining that debtor must retain an interest in the "diverted fruits").

The *In re Ogalin* court found that a debtor committed the fraud of "diversion of the fruit of one's labor" when the debtor: (i) transferred title to stock in his company to his wife and children, (ii) appointed figureheads to run his company, (iii) funneled the company's income to these figureheads, (iv) derived a benefit from the figureheads' use of this money, and (v) retained actual control over the company. *See In re Ogalin*, 303 B.R. 552, 557-59 (Bankr. D. Conn. 2004). Universitas alleged all of these same elements. (Compl. [#1] ¶¶ 76-79, 96, 102, 104, 122-123, 126, 131, 145, 195-197.) Universitas has accordingly pleaded the elements necessary for a constructive trust upon the Charitable Trusts in the amount of the "fruits of labor" diverted from Mr. Carpenter to the Charitable Trusts. *See In re Ogalin*, 303 B.R. at 557-59; *Cadle Co. v. Steiner*, 2011 Conn. Super. LEXIS 348 at *8-*10; *Cadle Co. v. Jones*, 2004 U.S. Dist. LEXIS 18300, at *25-*30. Universitas also alleged that the Charitable Trusts' assets are comprised solely of the "diverted fruits" of Mr. Carpenter's labor, (Compl. [#1] ¶ 125,) and thus Universitas pleaded a constructive trust claim against the Charitable Trusts in the amount of the Charitable Trusts' total assets, up to

the amount of the outstanding judgment against Mr. Carpenter.

### c. Unjust Enrichment[12]

Unjust enrichment is a broad and flexible doctrine that seeks to prevent a defendant from retaining a benefit at the plaintiff's expense. *See J.D.C. Enters. v. Sarjac Partners, LLC*, No. HHDCV146048285, 2017 Conn. Super. LEXIS 4042, at *17-*18 (Conn. Super. Ct. July 13, 2017) (internal citations omitted). The necessary elements of unjust enrichment are that: (i) the defendant benefitted, (ii) the defendant did not pay the plaintiffs for the benefit, and (iii) the failure to pay was to the plaintiff's detriment. *See id.*; *Ayotte Brothers Construction Co. v. Finney*, 680 A.2d 330, 332 (Conn. App. 1996). Unjust enrichment may arise indirectly when a plaintiff has a superior equitable entitlement to property, and that property is transferred to the defendant. *See Geriatrics, Inc. v. McGee*, 208 A.3d 1197, 1121 (Conn. 2019) (internal citations omitted).

Universitas has a judgment against Daniel Carpenter because Mr. Carpenter stole $30.6 million from Universitas. (Compl. [#1] ¶ 55.) Mr. Carpenter then transferred $1.76 million of the stolen funds from GM Holdings to the Charitable Trusts. (Compl. [#1] ¶¶ 128-129.) Universitas was not compensated for this transfer, (Compl. [#1] ¶¶ 157, 161,) and this transfer conveyed a benefit of $1.76 million to the Charitable Trusts to the detriment of Universitas. *See In re Flanagan*, 415 B.R. 29, 46 (D. Conn. 2009) (explaining that defendant is benefitted when it receives "something of value"). The Charitable Trusts were thus unjustly enriched in the amount of $1.76 million. *See Ayotte Brothers Construction*, 680 A.2d at 332.

Mr. Carpenter also transferred title to all of his assets and future income to various trusts

---

[12] Some courts have converted a constructive trust claim into an unjust enrichment claim seeking the remedy of a constructive trust. *See Cadle Co. v. Jones*, 2004 U.S. Dist. LEXIS 18300 at *1-*2 n. 1; *Cendant Corp.*, 474 F. Supp. 2d at 383. Unjust enrichment is also a necessary element of a constructive trust claim. *See Eberle*, 2012 Conn. Super. LEXIS 2452 at *28-*29. This analysis is intended for both possible applications – an element of Universitas' constructive trust claims and/or an unjust enrichment claim should the Court convert Universitas' constructive trust claim into an unjust enrichment claim seeking the remedy of a constructive trust.

and LLCs including the Charitable Trusts, (Compl. [#1] ¶¶ 67-69, 79, 86, 122-123, 125, 177,) in order to keep said property from the reach of creditors, including Universitas. The result of Mr. Carpenter's transfers to the Charitable Trusts has been avoidance of the debt owed to Universitas – Daniel Carpenter has contributed nothing toward the debt owed to Universitas and claims to have no assets with which to do so. (Compl. [#1] ¶¶ 22, 157, 161, 195-197.) Accordingly, the Charitable Trusts were unjustly enriched in the amount received from Mr. Carpenter. *See Cadle Co. v. Zubretsky*, No. CV040832477S, 2008 Conn. Super. LEXIS 244, at *21-*24 (Conn. Super. Ct. Jan. 28, 2008); *Cadle Co. v. Jones*, 2004 U.S. Dist. LEXIS 18300 at *29-*30; *Cadle Co. v. Steiner*, , 2011 Conn. Super. LEXIS 348 at *9-*11.

IV.   The Charitable Trusts Submit Evidence from Outside the Pleadings, thus Converting their Motion to Dismiss into a Motion for Summary Judgment which in Fails on the Merits.

A court deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is limited to the information contained within the pleadings. *See Sira v. Morton*, 380 F.3d 57, 66 (2d Cir. 2004); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). The Charitable Trusts submit evidence outside the pleadings, (Defs. Mem., Ex. 3 [#74-4],) and implore the Court to consider this evidence as part of its Rule 12(b)(6) analysis. (Defs. Mem. [#74-1] at 10.) To the extent the Court considers this evidence, it must convert the Charitable Trusts motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also Sira*, 380 F.3d at 66; *Kramer*, 937 F.2d at 773. Universitas does not object to the Court considering the Charitable Trusts' evidence from outside the pleadings, and the Charitable Trusts cannot complain of inadequate notice that their 12(b)(6) motion could be converted into a motion for summary judgment. *See In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) (explaining that submission of evidence outside the pleadings puts parties on notice of potential conversion of

12(b)(6) motion into summary judgment motion); *see also Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (finding that party who submits evidence outside the pleadings is on notice that 12(b)(6) motion might be converted into a motion for summary judgment); *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998) (same); *Collier v. City of Chicopee*, 158 F.3d 601, 603 (1st Cir. 1998) (same); *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998) (same); *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n.2 (10th Cir. 1996) (same).

The Charitable Trusts submit evidence outside the pleadings in order to suggest that Grist Mill Capital, LLC ("GMC") was "the sole and primary beneficiary of the Spencer[] policy." (Defs. Mem. [#74-1] at 10.) Universitas already obtained a $30.6 million judgment against Daniel Carpenter, and thus the beneficiary of the Spencer policies is not relevant. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077. It is unclear why the Charitable Trusts seek to re-litigate the fraud underlying Universitas' judgment against Mr. Carpenter. *But see Universitas Educ., LLC v. Nova Grp., Inc.*, Case Nos. 11-cv-1590 (LTS) (HBP) and 11-cv-8726 (LTS)(HBP), 2013 U.S. Dist. LEXIS 142901, at *24-*36 (S.D.N.Y. May 21, 2013) (explaining that Daniel Carpenter's litigation strategy is predicated upon knowingly frivolous and meritless filings intended to delay and proliferate the litigation); *see also Israel v. Carpenter*, 95 Civ. 2703 (DAB) (JCF), 2001 U.S. Dist. LEXIS 15571 (S.D.N.Y. Oct. 1, 2001) ("[Daniel Carpenter's] motion is entirely frivolous. It is devoted primarily to challenges to the determination of liability, a determination that has already been affirmed by the Second Circuit.").

To the extent the identity of the Spencer policies' beneficiary does matter, the Charitable Trusts' assertion that GMC was "the sole and primary beneficiary of the Spencer[] policy," (Defs. Mem. [#74-1] at 10,) is demonstrably false – the beneficiary designation form submitted into

evidence by the Charitable Trusts demonstrates that Universitas was the sole, irrevocable beneficiary of the Spencer policies. (Defs. Mem., Ex. 3 [#74-4].) This argument was also rejected by numerous courts. *See e.g.*, *Universitas Educ.*, 784 F.3d at 100 ("Spencer named Universitas as the sole, irrevocable beneficiary of the proceeds from the policies as Plan benefits."). The Charitable Trusts are collaterally estopped from re-litigating the issue of the Spencer policy beneficiary. *See Krepps v. Reiner*, 377 Fed. App'x 65, 66 (2d Cir. 2010) (explaining issue preclusion).

The converted motion for summary judgment is subject to the standard of Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d); *see also Glob. Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150, 154-55 (2d Cir. 2006); *Gurary*, 190 F.3d at 43. Accordingly, the Court cannot grant the Charitable Trusts' motion for summary judgment unless the Charitable Trusts demonstrate that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The record contains sufficient evidence supporting Universitas' claims, and thus the Charitable Trusts cannot demonstrate that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. For instance, the Charitable Trusts were located at 100 Grist Mill Road, (PJR App. Ex. 23 [#12],) the same address used by every Judgment Debtor. (Chernow Aff., dated June 1, 2020 [#9-3] ¶ 58.) Mr. Carpenter also operated a criminal conspiracy to wrongfully defalcate and launder the Spencer insurance proceeds from this address. *See Carpenter*, 190 F. Supp. 3d 260.

The transfer of $1.76 million from GM Holdings to the Charitable Trusts was clearly fraudulent. Mr. Carpenter transferred $8.67 of the Spencer insurance proceeds to GMC on May

21, 2009. *See Carpenter*, 190 F. Supp. 3d at 295. The next day, Mr. Carpenter transferred $2.1 million of the Spencer insurance proceeds from GMC to a GM Holdings account ending in 7136. *See id.* On October 27, 2009, Mr. Carpenter orchestrated the transfer of another $19.8 million of the Spencer insurance proceeds to GMC, and one day later transferred $19 million of these proceeds to the GM Holdings account ending in 7136. *See id.* at 296. All of these transfers constituted fraudulent transfers of the Spencer insurance proceeds rightfully belonging to Universitas. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at *10-*12. Mr. Carpenter then transferred $1.76 million from the GM Holdings account ending in 7136 to the Charitable Trusts. (PJR App., Ex. 13 [#11].) When Mr. Carpenter's lawyers discovered these transfers, he explicitly forbade his attorneys from divulging this information to the court, (PJR App., Ex. 12 [#11],) and further threatened to fire his attorneys if they informed the court of the Charitable Trusts' receipt of Spencer insurance proceeds.[13] (PJR App., Ex. 14 [#11].)

There is also evidence supporting Universitas' claim that Mr. Carpenter uses the Charitable Trusts to conceal assets from his creditors. Mr. Carpenter boasted that he has concealed "tens of millions of dollars" in the Charitable Trusts, and further claimed that he was forced to do so because he "had [his] bank accounts frozen….. [his] bank accounts and tax refunds seized….. and [his] office violated not once but twice by the same government."[14] (PJR App. Ex. 11 [#11].) Mr. Carpenter then stated that people use charitable trusts "because money in [charitable trusts] is secure from the hands of creditors." (PJR App. Ex. 12 [#11].) Mr. Carpenter also asserted his Fifth

---

[13] Mr. Carpenter's efforts to conceal these transfers further evidences that the transfers were fraudulent. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at *12.

[14] Daniel Carpenter's offices were raided by the Internal Revenue Service in 2010 in conjunction with a criminal investigation concerning "abusive section 419 welfare benefit plans involving Nova Benefit Plans LLC (also known as Benistar) and related entities in which [Daniel Carpenter] also has an interest." *See United States v. Carpenter*, No. 3:13-CR-226(RNC), 2015 U.S. Dist. LEXIS 171646, at *2-*3 (D. Conn. Dec. 24, 2015). Mr. Carpenter's offices were again raided in 2011 by the Department of Labor in conjunction with a separate and distinct criminal investigation regarding STOLI fraud concerning "Charter Oak Trust (COT) and related entities in which Carpenter has an interest." *See id.*

Amendment right in a civil suit in response to questions concerning the creation of the Charitable Trusts, the Charitable Trusts' assets, and transactions involving the Charitable Trusts. (PJR App. Ex. 15 [#11].) In the same proceeding Mr. Carpenter also asserted his Fifth Amendment right against self-incrimination in response to questions specifically asking whether he created trusts in order to shield assets from creditors and whether he used the Charitable Trusts to shield assets from creditors. (PJR App. Ex. 15 [#11].) Mr. Carpenter's wife also asserted her Fifth Amendment right in response to all questions concerning the Charitable Trusts in that same proceeding. (PJR App. Ex. 16 [#11].) Mr. Carpenter's business associate Edward Waesche also identified the Charitable Trusts as "Carpenter Entities" and asserted his Fifth Amendment right against self-incrimination in response to all questions concerning the Charitable Trusts in a civil proceeding.[15] (PJR App. Ex. 22 [#12].) An adverse inference can be drawn from the assertion of the Fifth Amendment right against self-incrimination in a civil proceeding. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). The First Circuit Court of Appeals also affirmed the propriety of drawing adverse inferences from the testimony in which the Carpenters asserted their Fifth Amendment rights in response to questions about the Charitable Trusts. *See Iantosca v. Benistar Admin Servs.*, 567 Fed. Appx. 1, 6-7 (1st Cir. 2014).

The Charitable Trusts submit no evidence to suggest that the $1.76 million transfer from GM Holdings was not comprised of Spencer insurance proceeds, and submit no evidence to suggest that Mr. Carpenter did not transfer assets to the Charitable Trusts in order to conceal his assets from his creditors. In light of the evidence supporting Universitas' claims, the Charitable Trusts cannot demonstrate that there is no genuine dispute of material fact. Therefore, the

---

[15] Edward Waesche was a Benistar employee, s*ee Carpenter*, 190 F. Supp. 3d at 274, who pled guilty to conspiracy to commit mail and wire fraud for his role in the Benistar criminal enterprise. *See United States v. Waesche*, Case No. 3:13-cr-00224 (D. Conn. Jan. 4, 2014).

Charitable Trusts fail to meet their burden for summary judgment under Fed. R. Civ. P. 56. *See Glob. Network Communs.*, 458 F.3d at 154-55, *Gurary*, 190 F.3d at 43.

## CONCLUSION

The Charitable Trusts submit evidence outside the pleadings to support their motion to dismiss under Fed. R. Civ. P. 12(b)(6). For the aforementioned reasons, Universitas respectfully requests that the Court convert the Charitable Trusts' motion to dismiss into a motion for summary judgment and deny the Charitable Trusts' motion for summary judgment. Should the Court decline to consider the Charitable Trusts' evidence outside the pleadings, Universitas respectfully requests, for the aforementioned reasons, that the Court deny the Charitable Trusts' motion to dismiss in its entirety and grant any other relief that this Court deems just and proper.

Dated:  New Haven, CT
       August 24, 2020

PLAINTIFF UNIVERSITAS EDUCATION, LLC,

By: /s/ Michael G. Caldwell    /
Ilan Markus, ct 26345
Michael G. Caldwell, ct 26561
Barclay Damon, L.P.
545 Long Wharf Drive
New Haven, CT 06511
Ph. (203) 672-2658
Fax (203) 654-3265
IMarkus@barclaydamon.com


*Admitted Pro Hac Vice:*
Joseph L. Manson III
Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
Tel. 202-674-1450
Em. jmanson@jmansonlaw.com

*Its Attorneys*

## CERTIFICATION

I hereby certify that on August 24, 2020 a copy of foregoing motion was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Joseph L. Manson III