DANIEL E. CARPENTER
18 PONDSIDE LANE
WEST SIMSBURY, CT 06092

June 13, 2014

Honorable Laura Taylor Swain
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007



RECEIVED
JUN 19 2014
CHAMBERS OF
LAURA TAYLOR SWAIN
U.S.D.J.

Re:  Please Remove Carpenter Injunction

Dear Judge Swain:

Next week I am scheduled to report to prison for a non-crime, that I certainly did not commit fourteen years ago because I allegedly did not tell people that I never met how their funds would be invested. The reason? Simply because the prosecutors in Boston have used **your** negative words about me in two opinions to convince Judge O'Toole in Boston to revoke my bail pending appeal because I am a "danger to society" simply because counsel for Universitas has falsely accused me of effectively stealing life insurance proceeds from their specious charity. So that I may properly defend myself, I would respectfully beseech the Court to immediately do three things:

1. Please amend and reissue the Court's orders without the negative language about me, which is both unwarranted and based on false statements and misrepresentations given to the Court by Counsel for Universitas.

2. Please rescind and revoke the letter order to Attorney Pastore dated March 12, 2014, holding up payment of the Merrill Lynch settlement proceeds, because Attorney

Case 1:11-cv-08726-LTS-HBP   Document 309   Filed 06/19/14   Page 3 of 113
Case 3:20-cv-00738-JAM   Document 85-17   Filed 08/24/20   Page 2 of 9

Honorable Laura Taylor Swain
United States District Judge
June 13, 2014
Page 2

Pastore has withdrawn from the case, settled with Universitas, and left me and my company Boston Property Exchange Transfer Company, Inc. (BPETCO) defenseless and unrepresented. Attorney Pastore had no basis for sending his letter to Your Honor in the first place, because the Universitas Injunction is very clear that it prevents me from **spending** more than $20,000 per month, which I have abided by religiously, but nowhere in the Injunction does it prohibit any Carpenter-controlled company from **receiving** money. Universitas has now twice tortiously interfered with companies not even listed in the original petition by simply sending letters to Your Honor. No service of process, no summons and complaint, and certainly no jurisdictional analysis. These are the fundamental cornerstones of due process.

3. I would also beg Your Honor to rescind and revoke the Injunction Order of January 13, 2014 for the reasons I will share with you below. As Your Honor knows well by now, all of the Charter Oak Trust money was spent by October of 2009. The last of the money was transferred to Grist Mill Capital, LLC, pursuant to a Confidential Settlement and Indemnity Agreement dated October 26, 2009 attached here as Exhibit One. Universitas has a copy of this document; as does the AUSA who recently indicted me on "money-laundering" charges because of the Sash Spencer death proceeds. The investigation of the Charter Oak Trust began on May 26, 2011 with a commando raid on our peaceful office in Simsbury, Connecticut. Judge Stefan Underhill of Connecticut remarked that there were three times as many **armed** federal agents at our offices than were used to take out Osama bin Laden.

Honorable Laura Taylor Swain
United States District Judge
June 13, 2014
Page 3

      I would respectfully ask Your Honor to do these three things immediately in the interests of justice pursuant to the Court's own supervisory powers, if for no other reason than so that I might provide for my family and take care of any outstanding business issues before I have to report. Moreover, let's make this a fair fight. If Universitas thinks I have done anything wrong, let them come to Connecticut to sue me. Tony Zelle and the Boston Exchangors will not come to Connecticut because I received a unanimous victory in the Connecticut Supreme Court against them in 2006.

      Also, please extend my sincerest apologies to Magistrate Pitman, who I know believes that the people associated with the Charter Oak Trust were dilatory in every way possible throughout discovery. But, it really wasn't anyone's fault, and now that Wayne Bursey and I have both been indicted regarding the Charter Oak Trust and the government has threatened to indict several other people, I feel that you could tell Magistrate Pitman that this is one time where people were wise to take the Fifth. And, I totally understand why you feel that my testimony was "self-serving" and "incredible" after me taking the Fifth, because that is what has happened to me for 14 years in Boston. In fact, the same Exchangor clients that I lost $8 million for in the stock market crash of 2000 have now been repaid over $50 million in my legal victories against PaineWebber and Merrill Lynch. Merrill's attorney John Snyder referred to me as the "Master of Deception," and Universitas had you quoting John Snyder's lies from 12 years ago in Boston. Now, as of last Friday, Snyder and Bingham are facing $120 million in damages and sanctions for their lies, withholding evidence, destruction of evidence, and coaching all the Merrill witnesses to lie about me and the nature of BPETCO. It is clear from the Massachusetts

Case 1:11-cv-08726-LTS-HBP   Document 309   Filed 06/19/14   Page 5 of 113
Case 3:20-cv-00738-JAM   Document 85-17   Filed 08/24/20   Page 4 of 9

Honorable Laura Taylor Swain
United States District Judge
June 13, 2014
Page 4

decision that Merrill's John Snyder is the real "Master of Deception." I have attached a copy of the appeals court's decision as Exhibit Two.

In the same light, please read the Exchangors' lawsuit against Merrill filed in February of 2008 attached as Exhibit Three that I did not receive a copy of until July of 2009, a year after my second trial in Boston ended in 2008. You will see my name is not even mentioned, and that we were totally up front in our dealings with Merrill in saying that we were investing other people's money – not our own. This is important evidence that was withheld from us by not only the government, but the Exchangors, and Merrill Lynch as well. I never appeared at or testified at the trials in Boston, so it was easy for Merrill's attorneys to make me out as the "bad guy" and Universitas literally copied all of the bad things said about me by the Exchangors and Merrill Lynch. Suffice it to say, my indictment from 10 years ago would not pass the *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), tests for even a breach of contract. You yourself would dismiss the complaint for failure to plead fraud with particularity as required by Rule 9(b) – "the who, what, where, when" of fraud. Do you see any fraud in the Exchangors' February 2008 lawsuit? Neither do I.

The simple truth is that I was a victim of prosecutorial misconduct in my first trial in 2005 that was a part of the USA Today study of September 22, 2010 (*see Prosecutors' Conduct Can Tip Justice Scales*, USA Today, September 22, 2010). The prosecutorial misconduct was even more egregious in my second trial in 2008. So much so that I was awarded a new trial for a second time in 2011, which the government appealed and after several trips to the Supreme Court over a two year period, the government was able to overturn my new trial order at the end

Case 1:11-cv-08726-LTS-HBP   Document 300   Filed 06/19/14   Page 6 of 13
Case 3:20-cv-00738-JAM   Document 85-17   Filed 08/24/20   Page 5 of 9

Honorable Laura Taylor Swain
United States District Judge
June 13, 2014
Page 5

of November 2013. This gave the AUSA in Connecticut courage to indict me for another non-crime a month later in December 2013 for events happening between 2006-2008.

My arraignment was on January 17, 2014, just days after Your Honor's Injunction of January 13th. As Your Honor knows well, most arraignments take 5-10 minutes. My arraignment took three hours because Mr. Barnett, counsel for Universitas, was passing up notes to the AUSA as if they were still in High School together. Moreover, Ms. Colbath had sent a letter, attached as Exhibit Four, which literally threatened the government to not allow my own wife to post her family's old homestead, which she owns 100% of, as surety for her husband's bail. When the AUSA demanded more collateral for my bail, my daughter volunteered her newly-purchased home, bought by her new husband as collateral for my bail. Your Honor, there was not a dry eye in the courtroom. When the AUSA rose to demand more, Magistrate Martinez told him to sit down, and promptly said: "I refuse to believe that Mr. Carpenter is a flight risk that would leave his wife of 32 years or his only daughter homeless. Bail is satisfied."

Mr. Barnett then sent up more notes to the AUSA in order to make sure that Your Honor's Injunction was included as one of the court orders I had to obey, as in all court orders by a federal court – and I have dutifully reported all expenditures according to the Injunction order. But, that did not satisfy the counsel for Universitas.

The reason I am forced to correspond with Your Honor in this unorthodox manner is that I have no one helping me in New York. My wife is paying for my legal representation in Boston and in Hartford, but **no one** will even speak to her, much less take money from her to represent me in New York for fear of being sued by Ms. Colbath and Loeb & Loeb.

Honorable Laura Taylor Swain
United States District Judge
June 13, 2014
Page 6

Because of the Universitas Injunction, I am unable to pay for **any** legal counsel and, more significantly, because of all of the restraining letters sent threatening legal action to recover any money paid to any of the 30 law firms that Ms. Colbath and Mr. Barnett have contacted, I cannot even get a return phone call from firms that I have paid significant sums to in the past. I have included one such letter (attached as Exhibit Five) to Gregory Garre of Latham & Watkins, who was a former Solicitor General of the United States. I tried several other Washington, D.C. firms to represent me in the Supreme Court appeal of the government overturning my new trial order, but it is clear that the Supreme Court community is small and tight-knit, and if Carpenter had used Latham four times in the past, why aren't they helping him now. Even attorneys who are friends of mine at big firms have politely turned me down.

I am not exaggerating that good friends at major law firms do not return my phone calls. Neither my wife nor I are kept up to date with the proceedings in Your Honor's own Court, even though the case is supposedly all about me. Please feel free to ask the attorneys that show up, whenever the hearing about my Injunction is, when was the last time you sat down with or talked to Mr. Carpenter? I believe Your Honor will be surprised to learn that I am not the "Master of Deception" that controls all of the companies of the world. I do not have PACER or ECF and no one returns my phone calls.

Finally, Your Honor, let me say that I am doubly hurt by the negative comments that you have made about me in your findings. First, because I believe with every fiber of my being that I am an honest businessman who has done nothing wrong, much less illegal. Second, I was the only person that testified at that hearing and I testified for four hours without anyone contradicting anything that I said. I even believe that Your Honor smiled at me several times

Case 1:11-cv-08726-LTS-HBP Document 300 Filed 06/19/14 Page 8 of 13
Case 3:20-cv-00738-JAM Document 85-17 Filed 08/24/20 Page 7 of 9

Honorable Laura Taylor Swain
United States District Judge
June 13, 2014
Page 7

believing what I said, and nodding at me with judicial approval. I swore to tell the truth, and I believe that I have told the God's honest truth. Now it appears that I failed in Your Honor's estimation, and the government has used Your Honor's words against me in several different proceedings.

Therefore, if Your Honor would be kind enough to hit the "RESET" button and let us start over. Please rescind the Attorney Pastore letter as well as the January 13, 2014 Injunction order, I will then be happy to file a series of Rule 60(b)(1) motions to show the information that may have been incomplete or missing; a Rule 60(b)(3) Motion to show the blatant frauds on the Court committed by Ms. Colbath and Mr. Barnett, and finally a Rule 60(b)(4) motion based on the Supreme Court's January 2014 decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), because this Court does not have jurisdiction over **any** of the Carpenter Companies listed in the original petition – Carpenter Financial Group, Inc., and Grist Mill Capital, LLC. But, there is no way that Universitas can claim to have jurisdiction to interfere with the business dealings of Grist Mill Partners, LLC or BPETCO, which had nothing to do with Sash Spencer, the Charter Oak Trust, or Nova Group, Inc., or any other company not listed on the original petition.

This type of "vicarious jurisdiction" that Universitas recommends, i.e., Carpenter is a bad guy everywhere, so we can "pierce the corporate veil" for all of his companies, and we have jurisdiction over his companies anywhere, is not favored or approved anywhere in the United States, especially after *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011), and now *Daimler*. For an excellent discussion on this subject, see the Journal of International Law article by Lonny Hoffman, *Further Thinking About Vicarious Justification:*

Case 1:11-cv-08726-LTS-HBP Document 300 Filed 06/19/14 Page 9 of 113
Case 3:20-cv-00738-JAM Document 85-17 Filed 08/24/20 Page 8 of 9

Honorable Laura Taylor Swain
United States District Judge
June 13, 2014
Page 8

*Reflecting on Goodyear v. Brown and Looking Ahead to Daimler Ag v. Bauman*, 34 J. Int'l L. 765 (). Available at: http://scholarship.law.upenn.edu/jil/vol34/iss4/4.

Therefore, just to remind the Court, the evidence adduced thus far is as follows:

1. I was not an officer of Nova Group, Inc. – See Exhibit Six.

2. Grist Mill Capital, LLC, the company that provided over $100 million in funding for the Charter Oak Trust to pay premiums, was dismissed from the Charter Oak Trust arbitration by Ms. Colbath. See Exhibit Seven.

3. I was dismissed from the arbitration after it was over, so I, and not Universitas, should have the benefit of "*res judicata*" and "collateral estoppel." See Exhibit Eight.

4. Grist Mill Capital, LLC was the **primary beneficiary** of the Sash Spencer policies. See the beneficiary form attached as Exhibit Nine. The small print says: "I hereby designate Grist Mill Capital, LLC as primary beneficiary of any sums which remain unpaid pursuant to any other agreements I might have with Nova Group, Inc., and acknowledge that my beneficiaries as designated above will receive all death benefit proceeds in excess of the sums payable to Grist Mill Capital, LLC."

5. Sash Spencer agreed that Grist Mill Capital was a secured, collateralized funder. See Funding Agreement attached as Exhibit Ten.

6. Spencer agreed to the two amounts taken out in May of 2009. See Exhibit Eleven.

7. The remaining $19 million was covered by the Confidential Settlement Indemnity Agreement. See Exhibit One.

8. It is Universitas' own fault that it did not take the $18 million when it was originally offered. See Exhibit Eleven.

Case 1:11-cv-08726-LTS-HBP Document 300 Filed 06/19/14 Page 10 of 13
Case 3:20-cv-00738-JAM Document 85-17 Filed 08/24/20 Page 9 of 9

Honorable Laura Taylor Swain
United States District Judge
June 13, 2014
Page 9

9. Universitas then renounced all of its claims to the death benefit for a payment of $5 million from Mary Spencer, who had no idea the insurance policies were even taken out on her husband. See Exhibit Twelve.

10. Sash Spencer had a detailed agreement with Grist Mill Capital that he not only signed, but initialed in several places, laying out the terms of the agreement between the parties. See Exhibit Thirteen.

Therefore, in conclusion, I would respectfully ask the Court to reconsider its previous opinions, rescind the letter order to Attorney Pastore and to end the Universitas reign of terror over me and my family.

Thank you for your time and thoughtful consideration on this matter.

Respectfully Submitted,

Daniel E. Carpenter