United States District Court
District of Connecticut
FILED AT NEW HAVEN

October 21 ,20 20

By  Y. Gutierrez
Deputy Clerk

October 15, 2020

The Honorable Jeffrey A. Meyer
United States District Court Judge
Richard C. Lee United States Courthouse
141 Church Street
New Haven, CT 06510

   *Re: Disbarment Referral for Attorneys Ilan Markus and Michael Caldwell*

Dear Judge Meyer:

  I am not a party to the action entitled *Universitas v. Benistar, et al.*, Case No. 3:20-cv-00738, nor am I personally represented by counsel, and I have not been served as the Trustee of the named Defendant Trusts in this matter as required by Rule 4 of the Federal Rules of Civil Procedure. Therefore, it came as a shock to me that Attorneys Ilan Markus and Michael Caldwell would start their latest filing in the above-captioned case with: "Daniel Carpenter controls a criminal enterprise (hereinafter "Benistar"), that stole $30.6 million from Universitas. *See United States v. Carpenter*, 190 F.Supp.3d 260 (D. Conn. 2016)." See Dkt. 99 attached as Exhibit 1.

  Not only is this libel *per se* as they are accusing me of a crime, it is extremely ironic that the Money Laundering Counts of my indictment in the Connecticut case are based on the fact that the proceeds Universitas accuses me of stealing are actually the "proceeds of fraud" from a life insurance application that I did not fill out, sign, or send in. Not only do I still contend that am I innocent of any theft, the insurance proceeds that Universitas keeps accusing me of stealing have been determined by this Court (the Honorable Robert N. Chatigny) to be the proceeds of fraud. So, not only did I not "steal" these proceeds, the Second Circuit has affirmed Judge Chatigny's determination that the proceeds were the result of a fraud perpetrated against Lincoln by Sash Spencer, his broker Bruce Mactas, and even the principals of Universitas (as will be discussed later). Suffice it to say, Sash Spencer was a billionaire who did not contribute any money to the

Charter Oak Trust to pay for the policies, and his widow Mary Spencer did not know anything about the $30 million of insurance on his life.

But, for the purposes of this request for Your Honor to recommend these two attorneys to the Bar Association for disbarment, anyone doing even a cursory search on Google or PACER would see that I have been under a constant state of investigation by the USDOJ, the FBI, the IRS, and the DOL since 2001 after I lost $8 million of client funds in the NASDAQ stock market crash of 2000 (The Dotcom Bubble). I was indicted in 2004 in Boston despite doing all of my trading in Connecticut and Manhattan, and then suffered through two trials in Boston in 2005 and 2008, and had two jury guilty verdicts overturned for egregious prosecutorial misconduct. In November 2013, my Second New Trial Order was overturned by the First Circuit and the Honorable Judge George A. O'Toole sentenced me in 2014 to 36 months based on the size of the alleged loss. Ironically, in that case, my alleged victims have now received about $50 million on their $8 million loss based on my legal victories over PaineWebber and Merrill Lynch, which I paid over to the Exchangors. Universitas actually "extorted" $900,000 from the Exchangors from one of those settlements while I was in prison, and I have since been released by the Exchangors, and even forgiven by some, for which I am eternally grateful.

Suffice it to say, I appear to be the only person in recent history to have current appeals pending before the First Circuit, Second Circuit, and the Supreme Court at the same time. It is very easy to Google my cases or read the dockets on PACER. But, if I really did run a "criminal enterprise," the FBI, SEC, IRS, and DOL would have found it by now. Benistar is 100% owned by its employees through an Employee Stock Ownership Plan (ESOP), and neither my Wife nor I own any stock in Benistar. Therefore, accusing my Wife, Daughter, or my Sister of fraud or being

2

an "alter ego" is not just absurd, it is defamation *per se*, and as Your Honor knows, the litigation privilege does not extend to protect attorneys of frivolous and vexatious filings.

Attorneys Markus and Caldwell do not just accuse me of theft in the vexatious motion, they accuse me of running a criminal enterprise. The allegedly false Sash Spencer applications were filled out and submitted to Lincoln in 2006. The Charter Oak Trust paid for the policies in 2007 with money from my company, Grist Mill Capital, LLC, and Sash Spencer died in 2008. Wayne Bursey, the Administrative Trustee of the Charter Oak Trust, had to sue Lincoln in 2009 to collect those proceeds. Eventually Lincoln paid the $30 million death benefit to the Trust, which in turn paid the proceeds to Grist Mill Capital. Contrary to Attorney Caldwell's lies, the beneficiary of the Sash Spencer policies was Grist Mill Capital, LLC, the company that supplied all of the premium payments. See the Beneficiary Form signed by Sash Spencer attached as Exhibit 2.

The Charter Oak Trust denied the Universitas claim for several reasons, not the least of which was that Universitas actually had an agreement with Mary Spencer to disclaim all payments from the Trust in exchange for a $5 million payment from ***her*** and not the Trust. See Agreement by and between Mary Spencer and Universitas as Exhibit 3. Following that denial came a long and drawn-out arbitration process, but for the purposes of these spurious and scurrilous allegations, Universitas voluntarily dismissed Grist Mill Capital ***before*** the Arbitration began (see Exhibit 4), and then proceeded to dismiss me after the Arbitration was over (see Exhibit 5).The reasons for this is discussed in detail in a motion before Judge Thompson eight years ago in 2012. See Motion to Dismiss attached as Exhibit 6.

Once again, this Exhibit shows that Mary Spencer did not know anything about these policies, and the policies were meant to be sold by Lincoln's broker, Bruce Mactas, to secretly pay Sash Spencer's mistress who ran the bogus "charity" known as Universitas. See Exhibit 6, page 2,

3

FN 1. For the purposes of *res judicata* or waiver and laches, this most recent claim by Universitas is fatally late and untimely. In fact, Universitas filed a charging order with Judge Chatigny against Carpenter Financial Group in October of 2015. See Exhibit 7. Despite the fact that I was in prison at the time, there was no mention of running a "criminal enterprise" in those filings.

But, if I truly "stole" the money, what was the basis for Universitas to go after the Charter Oak Trust's Insurance Trustee, Christiana Bank in 2015? Judge Vanessa Bryant does an excellent job of describing the history of this case in her decision in *WSFS v. Universitas*, which is attached as Exhibit 8. The original action was brought in 2015 and Judge Bryant denied reconsideration in March of 2017. WSFS, who bought Christiana Bank, settled the Universitas claim in February 2018 for $12 million. See Press Release attached as Exhibit 9. Once again, why is WSFS/Christiana Bank paying anything if I "stole" the money, and why is Universitas entitled to the "proceeds of fraud" 11 years after Lincoln begrudgingly paid the death benefits to the Charter Oak Trust and then the Trust paid the primary beneficiary of the policies listed on the Beneficiary Form that Sash Spencer himself signed, Grist Mill Capital, after Universitas had disclaimed all of the proceeds from the Trust in favor of Mary Spencer?

What makes the Markus-Caldwell filing even more egregious and offensive is that my offices were raided by the IRS-CID in April 2010 and the DOL in May of 2011. In the first raid, over 300 boxes were taken, and in the second raid, 200 boxes were taken. Both the Rule 41(g) motions and the *Bivens* actions are still *sub judice* in this Court in front of different judges, but the underlying investigations have been closed. The IRS investigation that was the basis of the April 20, 2010 raid was closed on June 9, 2016. The DOL investigation that was the subject of the May 26, 2011 raid was just closed in September 2020 by the Government in a letter sent to my attorney

in Washington, Jim Cole, the former Attorney General under President Obama and who has been representing me since he left the Government in 2017.

Moreover, as I recently filed in a new appeal in the First Circuit, a Massachusetts Judge recently determined that everyone at Merrill Lynch that testified at both of my trials lied in SEC investigations that I never heard about and which happened in 2001 and 2002, but which I obviously passed. That means I have been under a ***virtually continuous*** state of investigation by various agencies of the Government since 2001. I have endured multiple raids and investigations, three trials and numerous appeals, and yet none of these federal investigations have accused me of "stealing" anything, or running a criminal organization; and the Government has certainly not proven that I lied to anyone about anything at any time. Instead, my alleged crimes are ones of "nondisclosure," i.e. allegedly "what I did not tell" the Exchangors in Boston or the insurance carriers in Connecticut. However, as Your Honor knows, in *Skilling v. United States*, 561 U.S. 358 (2010), the Supreme Court stated that for there to be fraud, "the victim's loss of money or property suppl[ied] the mirror image of defendant's gain," and omissions and nondisclosures are "outside the bounds" of the fraud statutes." *Id.* at 400, 410.

For that reason, I am confident that I will eventually be exonerated, if not vindicated, in both cases. But, even if I am exonerated and victorious in the Courts of Appeals or the Supreme Court, I will still be branded by the lies and libel *per se* of Attorneys Markus and Caldwell for years to come. Litigating parties say all sorts of slanderous things in the heat of litigation, but the words of an attorney should be held to a higher standard because they necessarily carry more weight than the rantings of litigants in heated discussions. Although I am not a practicing lawyer, I graduated from law school and was a member of the Connecticut Bar until I resigned because of my legal difficulties. I am not a party to the current lawsuit, so I cannot ask for Rule 11 sanctions

or even Rule 1927 sanctions, but as an aggrieved innocent party, I can ask this Court to utilize Your Honor's inherent powers to sanction Officers of the Court when they happen to not govern themselves in a proper or appropriate manner. There is no doubt in my mind that if I had accused Universitas of being a criminal enterprise, I would have been sanctioned.

Therefore, I respectfully ask this Court to sanction Attorney Caldwell and Attorney Markus, strike their frivolous and vexatious filings, and dismiss their motions with prejudice under the Doctrines of Waiver and Laches and Res Judicata, and grant any other relief this Court deems just and proper.

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

# EXHIBIT
# 1

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

UNIVERSITAS EDUCATION, LLC

                       Plaintiff,

v.

BENISTAR, ET AL.

                       Defendants.

CASE NO. 3:20-cv-00738-JAM

OCTOBER 9, 2020

### PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF CONTINGENT MOTION TO AMEND THE COMPLAINT

Daniel Carpenter controls a criminal enterprise (hereinafter "Benistar"), that stole $30.6 million from Universitas Education, LLC ("Universitas"). *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016). The defendants in the above-captioned proceeding are Mr. Carpenter's co-conspirators and alleged alter egos. Universitas filed a Contingent Motion to Amend the Complaint in order to bring new claims against additional parties and an existing defendant should the Court instruct Universitas to replead its claims in conjunction with the defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b). (Plf.'s Mot. [#88].) The defendants acknowledge that (with a single exception) they are unaffected by Universitas' proposed claims. (Def.'s Mem. [#93] at 4-5; Defs. Mem. [#95] at 3-4.) Nonetheless, every single defendant chose to spend valuable resources opposing the proposed claims.

The defendants' arguments in opposition to Universitas' Contingent Motion to Amend are specious. The defendants argue that:

> As a result of [Universitas'] failure to include the proposed the amended complaint to its motion, the Defendant Trusts cannot address any specific amendments the Plaintiff may be contemplating because is not clear what claims or parties the Plaintiff may seek to add in any future amended complaint.

arguments are necessarily inapplicable, and thus these arguments are entirely irrelevant.

IV.     Conclusion

For the reasons stated above, Universitas respectfully requests that this Court grant its Contingent Motion to Amend the Complaint in all respects should Universitas be instructed to replead its claims in response to the defendants' motions to dismiss.

Dated:  New Haven, CT
        October 9, 2020

                                PLAINTIFF UNIVERSITAS EDUCATION,
                                LLC,

                                By: /s/ Michael G. Caldwell            /
                                Ilan Markus, ct 26345
                                Michael G. Caldwell, ct 26561
                                Barclay Damon, LLP
                                545 Long Wharf Drive
                                New Haven, CT 06511
                                Ph. (203) 672-2658
                                Fax (203) 654-3265
                                IMarkus@barclaydamon.com


                                *Admitted Pro Hac Vice:*
                                Joseph L. Manson III
                                Law Offices of Joseph L. Manson III
                                600 Cameron Street
                                Alexandria, VA 22314
                                Tel. 202-674-1450
                                Em. jmanson@jmansonlaw.com

                                *Its Attorneys*

9

# EXHIBIT 2

Apr 26 06 01:55p                                           212-319-6823          p.2



**LINCOLN # 7320809**
**$20,000,000**



CHARTER OAK TRUST

## ELECTION OF PARTICIPATION &
## BENEFICIARY DESIGNATION FORM

NAME OF EMPLOYER: HOLDINGS CAPITAL GROUP, INC.

NAME OF COVERED EMPLOYEE: SASH A. SPENCER           SSN: 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

To: Administrator of the CHARTER OAK PLAN & TRUST

To participate in the Plan, place your initials in the space provided next to "A" below and insert the names of your beneficiaries.  To make such beneficiary designation irrevocable, place your initials in the space next to "B" below and insert the names of your beneficiaries.  Please do not forget to designate at least one beneficiary.

A. _____    I wish to participate in the Plan and name the following persons or entities as the Beneficiaries of any death benefit payable under the Plan:

Name of Beneficiaries: _____

Contact Person: _____   Phone: _____
Address: _____

I understand that I may change this designation at any time by submitting a new Beneficiary Designation Form to the Plan Administrator, and that such new designation will become effective when accepted by the Plan Administrator.

B. _____✓_____    I wish to participate in the Plan and name the following persons or entities as the Irrevocable Beneficiaries of any death benefit payable under the Plan:

Name of Beneficiaries: UNIVERSITAS EDUCATION, LLC

Contact Person: SHARON SIEBERT        Phone: 212-826-0056
Address: 404 E. 55th STREET, SUITE 13A, NY NY

I hereby elect that the foregoing designation of my beneficiary or beneficiaries of any death benefit that becomes payable pursuant to the Plan is irrevocable and non-amendable, and I shall have no right whatsoever to change such beneficiary designation for any reason. (If you have chosen option B, your signature must be notarized.)

NOTE:  I hereby designate Grist Mill Capital, LLC as primary beneficiary of any sums which remain unpaid pursuant to any other agreements I might have with Nova Group, Inc. and acknowledge that my beneficiaries as designated above will receive all death benefit proceeds in excess of the sums payable to Grist Mill Capital, LLC.

X _____              X _____
Signature of Employer's Authorized Person          Signature of Covered Employee

SASH A. SPENCER , CEO                      SASH A. SPENCER
Name and Title of Authorized Person (Print or Type)    Name of Employee (Print or Type)

_____
Date of this Designation    May 9th, 2008

The foregoing instrument was acknowledged
before me this 9th day of May 2008

_____
Notary Public

Commission Expires: 10/31/2010

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED.  REV. 02/27/07

BARBARA A. KNIFFEN
Notary Public, State of New York
No. 31-4826043
Qualified in New York County
Commission Expires 2010

10/31 -

# EXHIBIT
# 3

## SETTLEMENT AGREEMENT AND RELEASES

This SETTLEMENT AGREEMENT AND RELEASES is made as of the 11th day of · November, 2008 by and between Holding Capital Group, Inc., a Connecticut corporation having an office at 7 Ridgewood Drive, Bridgewater, Connecticut 06752 ("Holding Capital"), and Universitas Education, LLC, having an office at 404 East 55th Street, Suite 13A, New York, New York 10022 ("UE LLC").

A.    Background – which all parties hereto acknowledge:

1.    Through the offices of Bruce Mactas, on or about December 22, 2006, two life insurance policies in the aggregate principal amount of $30,000,000, issued by The Lincoln National Life Insurance Company ("Lincoln National") were purchased by Charter Oak Trust (the "Trust") on the life of Holding Capital's principal, the late Sash A. Spencer, who passed away on June 10, 2008.

2.    The Trust is the owner and beneficiary of those policies (hereinafter the "Policies"). ·

3.    UE LLC is the sole named beneficiary of the Trust. However, differences have arisen among the parties as to their respective rights and claims causing a review of the Trust documentation. Certain contingencies were not addressed and clarification is needed to accurately reflect the intended beneficiary designations.

4.    Holding Capital, UE LLC and their principals have now settled all differences and claims and agree as follows.

{ 60017/010/01178485:1-CRS}

**EXHIBIT 106**

AAA Case No. 13195 Y 1558 10

UNIV-000180

B.    Agreement:

1.      (a)   UE LLC and Holding Capital shall be equal beneficiaries of the Trust. Accordingly, the net proceeds of the Policies shall belong to, and be disbursed directly by the Trust in equal shares, as follows: (a) one-half to UE LLC, and (b) one-half to Holding Capital or its designee as indicated in writing to the trustee of the Trust and to UE LLC. The parties shall execute and deliver such documentation as shall be necessary for that purpose, with any necessary copies thereof provided to the Trust.

(b)    The net proceeds of the Policies shall consist of all amounts distributed by the Trust and/or its affiliates in respect of the Policies, it being understood that the net proceeds shall be (i) after offset for a claim of the Trust and its affiliates, which claim is being jointly disputed by the parties hereto, and (ii) after deduction of compensation of $200,000 payable to Bruce Mactas, whether payable directly by the Trust or jointly by the parties, but only to the extent that the net proceeds after such reductions shall, as intended, exceed $23,000,000. Bruce Mactas hereby agrees that he has no further claim against the parties as a result of this transaction.

(c)    It is understood and agreed that the receipt of proceeds from Lincoln National is not a certainty in any amount whatsoever. Each party hereto shall take all reasonable actions to fulfill the intent and purpose of this agreement and the transactions contemplated hereby, including prompt compliance with all reasonable requests made by or on behalf of Lincoln National in connection with the parties' claims under the Policies. No party hereto makes any warranty or representation, direct or implied, as to receipt of proceeds. Each party specifically disclaims any obligation or liability of any other party with respect thereto, provided, however, that in the unexpected event that net proceeds received from Lincoln National are

- 2 -

{ 60017/010/01178485 1-CRS}

UNIV-000181

reduced, even if by refund, Holding Capital and UE LLC shall each be responsible for one-half of the reduction.  If outside counsel or other professionals are retained by the parties in case of dispute with Lincoln National or the Trust, the selection shall be made jointly by Holding Capital and UE LLC (in case of dispute with Lincoln National such selection shall be recommended to the trustee of the Trust), and the costs shall be borne equally.  Any decision to commence, continue or settle litigation shall be made jointly by the parties.

(d)  It is the intention of the parties that insofar as possible, neither UE LLC nor Holding Capital nor any other person be at risk for any sums greater than the net sums received by them after reduction for all expenses, taxes of any nature resulting therefrom payable on the proceeds, or any other costs relating to this matter.

2.  (a)  Subject to the terms of this agreement, the parties hereto, for themselves and on behalf of their owners, members, partners, employees, shareholders, officers, agents, trustees, beneficiaries, sponsors, administrators, attorneys, assigns, any heirs or successors thereof and any others claiming by, from or through them, hereby release, remise and discharge the other parties hereto (together with Mary Spencer, wife of the late Sash A. Spencer, the Estate of Sash A. Spencer, Holding Capital Group, Inc. (a Florida corporation), Donna J. Vassar, Sharon E. Siebert, Arnold Broser, Bruce Mactas and Mactas, Alper Szrolovits, Inc.) and their owners, employees, agents, consultants, assigns and attorneys, and any heirs, successors and affiliates, from all claims, demands, causes of action, damages, judgments and executions and liabilities which any of them have or may have, known and unknown, foreseen or unforeseen, including but not limited to the potential claims underlying this agreement and in connection with any business or other dealings among such parties, including the introduction of a real estate project on Grand Bahama Island, but excepting any documented investment (e.g., by Mr. Spencer in

- 3 -

{ 60017/010/01178485:1-CRS}

Sage Sound, LLC). The releases hereunder shall be applicable (i) from Holding Capital only as to UE LLC and those of the above persons associated with it, and (ii) from UE LLC only to Holding Capital and those of the above persons associated with it. The foregoing releases shall be effective only after receipt by the parties of any net proceeds of the Policies.

(b)   Contemporaneously herewith Mary Spencer and the Estate of Sash A. Spencer, Donna J. Vassar and Sharon E. Siebert have delivered releases running to the parties hereto and to persons named in subparagraph "(a)" above.

3.      Each of the parties to this agreement has had access to the advice of counsel in entering into this agreement, and each of the parties acknowledges that it has received the benefit of access to such advice or has declined same and requires no further access to counsel incident to agreeing to being bound by this agreement.

4.      Upon the reasonable request of either party hereto, following the date hereof, the other party hereto will execute and deliver to the requesting party such other documents, assignments and other instruments as may be required to give effect to this agreement and consummate the transactions contemplated hereby.

5.      Each of the parties recognizes and acknowledges that the subject matter and the terms of this Agreement are private and confidential. Each party therefore agrees that it will not disclose this agreement or any of the terms hereof to any third party for any reason or purpose whatsoever except (i) on a confidential basis insofar as possible, as may be necessary to conduct its business or perform its obligations, or (ii) as may be required by law.

6.      This agreement shall be enforced only in, governed by, and construed in accordance with, the laws of the State of New York. The undersigned hereby consent to the

- 4 -

{ 60017/010/01178485:1-CRS}

jurisdiction of the courts of the State of New York and agree that any action or proceeding in connection with this agreement shall be brought in New York County.

    7.    This agreement may be executed in counterparts by the parties.

    8.    This agreement may be modified only in writing signed by the parties to be bound by such modification.

Dated: _NOVEMBER 11_, 2008

HOLDING CAPITAL GROUP, INC.,
a Connecticut Corporation

By: _____
    James Donaghy

Dated: _NOVEMBER 11_, 2008

UNIVERSITAS EDUCATION, LLC

By: _____
    Sharon E. Siebert

CONSENTED TO:

_____
Donna J. Vassar

_____
Sharon E. Siebert, in her individual capacity

ESTATE OF SASH A. SPENCER

By: _____
    Mary M. Spencer, Personal Representative

_____
Bruce Mactas

- 5 -

{ 60017/010/01178485·1-CRS}

UNIV-000184

RELEASE

WHEREAS, contemporaneously herewith the following persons have entered into a "Settlement Agreement and Releases" dated as of the date hereof (the "Settlement Agreement"):

A.      HOLDING CAPITAL GROUP, INC:, a Connecticut Corporation having an office at 7 Ridgewood Drive, Bridgewater, Connecticut 06752, and

B.      UNIVERSITAS EDUCATION, LLC, having an office at 404 East 55th Street, Suite 13A, New York, New York 10022, and

WHEREAS, pursuant to the Settlement Agreement and in consideration thereof, it has been agreed that the undersigned and others are to deliver releases as therein provided,

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

DONNA J. VASSAR, residing at 404 East 55th Street, New York, New York 10022, for herself and on behalf of her heirs and successors, and any others claiming by, from or through her, subject to the terms of the Settlement Agreement and effective only after receipt by the parties thereto of any net proceeds thereunder, hereby releases, remises and discharges Holding Capital Group, Inc. (a Connecticut corporation), Holding Capital Group, Inc. (a Florida corporation), Mary M. Spencer, the Estate of Sash A. Spencer, Arnold Broser, Bruce Mactas, and Mactas, Alper Szrolovits, Inc., their heirs, successors, affiliates, employees, agents, consultants, assigns and attorneys from all claims, demands, causes of action, damages, judgments and executions and liabilities which any of them have or may have, known and unknown, foreseen or unforeseen.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Release as of this ___11TH___ day of __NOVEMBER__, 2008

_Donna J. Vassar_
Donna J. Vassar

{ 60017/010/01178500:1-CRS}

RELEASE

WHEREAS, contemporaneously herewith the following persons have entered into a "Settlement Agreement and Releases" dated as of the date hereof (the "Settlement Agreement"):

A.    HOLDING CAPITAL GROUP, INC:, a Connecticut Corporation having an office at 7 Ridgewood Drive, Bridgewater, Connecticut 06752, and

B.    UNIVERSITAS EDUCATION, LLC, having an office at 404 East 55th Street, Suite 13A, New York, New York 10022, and

WHEREAS, pursuant to the Settlement Agreement and in consideration thereof, it has been agreed that the undersigned and others are to deliver releases as therein provided,

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

SHARON E. SIEBERT, having an office at 404 East 55th Street, New York, New York 10022, for herself and on behalf of her heirs and successors, and any others claiming by, from or through her, subject to the terms of the Settlement Agreement and effective only after receipt by the parties thereto of any net proceeds thereunder, hereby releases, remises and discharges Holding Capital Group, Inc. (a Connecticut corporation), Holding Capital Group, Inc. (a Florida corporation), Mary M. Spencer, the Estate of Sash A. Spencer, Arnold Broser, Bruce Mactas, and Mactas, Alper Szrolovits, Inc., their heirs, successors, affiliates, employees, agents, consultants, assigns and attorneys from all claims, demands, causes of action, damages, judgments and executions and liabilities which any of them have or may have, known and unknown, foreseen or unforeseen.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Release as of this _____11th_____ day of NOVEMBER , 2008

Sharon E. Siebert

{ 60017/010/01178495:1-CRS}

UNIV-000188

CONSENT TO SETTLEMENT AGREEEMENT AND RELEASES

The undersigned, being all the members of UNIVERSITAS EDUCATION, LLC (the "Company") having an office at 404 East 55th Street, Suite 13A, New York, New York 10022 do hereby consent to the execution and carrying out by and on behalf of the Company of a Settlement Agreement and Releases and all further actions thereunder relating to the division of certain life insurance proceeds directly or indirectly receivable from The Lincoln National Life Insurance Company on the life of the late Sash A. Spencer.

The names and addresses of the members of the Company are as follows:

| Name | Address |
|------|---------|
| Donna J. Vassar | 404 East 55th Street, NY, NY 10022 |
| Sharon E. Siebert | 404 East 55th Street, NY, NY 10022 |

Dated: November 11, 2008

Donna J. Vassar

Dated: November 11, 2008

Sharon E. Siebert

{ 60017/010/01178860:1-CRS}

jurisdiction of the courts of the State of New York and agree that any action or proceeding in connection with this agreement shall be brought in New York County.

  7.  This agreement may be executed in counterparts by the parties.

  8.  This agreement may be modified only in writing signed by the parties to be bound by such modification.

Dated: _NOVEMBER 11_, 2008

HOLDING CAPITAL GROUP, INC.,
a Connecticut Corporation

By: _____
   James Donaghy

Dated: _NOVEMBER 11_, 2008

UNIVERSITAS EDUCATION, LLC

By: _____
   Sharon E. Siebert

CONSENTED TO:

_____
Donna J. Vasser

_____
Sharon E. Siebert, in her individual capacity

ESTATE OF SASH A. SPENCER

By: _____
   Mary M. Spencer, Personal Representative

_____
Bruce Macias

-5-

{ 60017010/01178485:1-CRS}

UNIV-000191

# EXHIBIT
# 4



**PAULA K. COLBATH**
Partner

345 Park Avenue          **Direct** 212.407.4905
New York, NY 10154       **Main** 212.407.4000
                         **Fax** 212.937.3189
                         pcolbath@loeb.com

Via E-mail

August 19, 2010

Ms. Karen Fontaine
Manager of ADR Services
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Re:   13 195 Y 1558 10, Universitas Education, LLC v. Nova Group, Inc., Wayne Bursey,
      Benistar Admin. Services, Inc., Donald Trudeau, Grist Mill Capital, LLC and Daniel E.
      Carpenter

Dear Ms. Fontaine:

As you know, we represent Universitas Education, LLC ("Universitas") in the above matter.

Pursuant to Rule R-6, Universitas is dropping all claims against and involving Grist Mill Capital
LLC for, among other reasons, no arbitration agreement exists between Universitas and Grist
Mill Capital.

We will be filing an amended statement reflecting this change shortly.

Sincerely,

Paula Collath / gru

Paula K. Colbath
Partner

cc:   William McGrath, Esq.
      Joseph Pastore III, Esq.
      Paul Dehmel, Esq.
      Richard S. Order, Esq.

# EXHIBIT
# 5



PAULA K. COLBATH
Partner

345 Park Avenue          **Direct**  212.407.4905
New York, NY  10154      **Main**    212.407.4000
                         **Fax**     212.937.3189
                         pcolbath@loeb.com

Via E-mail

March 22, 2011

Peter Altieri, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue, 14th Floor
New York, NY 10177

Re:   AAA No. 13 195 Y 1558 10 — Universitas Education, LLC v. Nova Group, Inc., et. al.

Dear Arbitrator Altieri:

We write on behalf of Universitas Education, LLC ("Universitas") to report that Nova Group, Inc. ("Nova Group") failed to deposit $26,525,535.98 into escrow (by March 19), as required by your January 24, 2011 Arbitration Award (the "Award"). We thus request that you begin Phase II of the Arbitration.

As you will recall, your Award required Nova Group to "deposit $26,525,535.98 in escrow with the law firm of Updike Kelly and Spellacy on or before the later of 30 days following the date of [the] Award or 30 days after determination of any motion for reconsideration under Rule 46[.]" 1/24/11 Award at 13. Universitas submitted a motion for reconsideration, that your Honor denied on **February 17, 2011** (Nova Group did not submit a motion for reconsideration). Nova Group was thus required to comply with the Award's escrow deposit requirement by no later than March 19, 2011.

Yesterday I wrote to Richard Order, Nova Group's counsel, requesting that he provide me with documentary proof of Nova Group's compliance with the escrow deposit provision. 3/21/11 E-mail from Paula Colbath, attached as Ex. 1. Mr. Order did not provide any proof that the monies were deposited, as required by the Award.

Pursuant to your Honor's Order of December 1, 2010 (attached as Ex. 2), Universitas plans to contact TD Bank and request the immediate production of the originally subpoenaed documents for Phase II of this Arbitration.

*Further, in view of Nova Group's failure to deposit the required monies into escrow, Universitas* requests that you:

> 1.  Set a date for an Initial Scheduling Conference for Phase II of this Arbitration, in which Universitas will proceed against (a) Benistar Administrative Services, Inc. ("BASI"); (b) Nova Benefit Plans, LLC; and (c) Wayne Bursey ("Bursey").[1]

---

[1] Universitas withdraws its arbitration claims against Daniel Carpenter ("Carpenter") and Donald Trudeau ("Trudeau") without prejudice.

Los Angeles   New York   Chicago   Nashville   www.loeb.com

A limited liability partnership including professional corporations



LOEB&
LOEB

<div align="right">Peter Altieri, Esq.
March 22, 2011
Page 2</div>

2. Allow Universitas to submit a Second Amended Statement of Claim against Nova Group, Inc., BASI, Bursey and Nova Benefit Plans -- including a claim of statutory theft under Connecticut law -- within two (2) weeks following the occurrence of the Initial Scheduling Conference for Phase II of this Arbitration.

3. Determine whether BASI, Nova Benefit Plans and Bursey are bound to arbitrate (as you will recall, they claim they are not). This issue has already been fully briefed.[2]  Universitas also requests that your Honor take judicial notice of the testimony at the December 2010 hearings pertaining to the activities of BASI, Nova Benefit Plans and Bursey in administering and operating the Charter Oak Trust. See pp. 469-479, 484-490, 674-675, 704-705, 760, 814-815, 830-831 and 1055-1056 of the Hearing Transcript. Should your Honor require additional briefing on this issue, Universitas would be happy to supplement its prior submissions.

4. Dismiss Carpenter's pending motion to strike, which is moot in view of Universitas' decision not to proceed against Carpenter in this Arbitration.

5. Authorize Universitas to immediately take the depositions of Nova Group, Inc. and the Phase II Parties on Phase II issues.

We are prepared to participate in a telephone conference at your earliest convenience so that Phase II can begin expeditiously.

Respectfully submitted,

Paula K. Colbath

Attachments

cc:     Richard S. Order, Esq. (via e-mail w/ attachments)
        Joseph M. Pastore III, Esq. (via e-mail w/ attachments)
        Daniel P. Scapellati, Esq. (via email w/ attachments)
        Karen Fontaine (AAA) (via e-mail w/ attachments)

---

[2] Universitas refers your Honor to Respondents' 10/6/10 Motion to Dismiss; Universitas' 10/15/10 Opposition to Respondents' Motion to Dismiss; Respondents' 10/22/10 Reply; and Universitas' 12/16/10 Post-Hearing Legal Brief at 35-36.

# EXHIBIT
# 6

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

------------------------------------------------------------------------

UNIVERSITAS EDUCATION, LLC,                          :
                                                     :       No.: 12-mc-00102-AWT
                        Petitioner,                  :
                                                     :
        -v-                                          :
                                                     :
NOVA GROUP, INC., as Trustee, Sponsor                :
and Named Fiduciary of the CHARTER OAK               :
TRUST WELFARE BENEFIT PLAN,                          :       JULY 25, 2012
                                                     :
                        Respondent.                  :

------------------------------------------------------------------------ :

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1963, respondents Nova Group, Inc.

("Nova") and the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust") hereby submit

this memorandum in support of their motion to dismiss this action for lack of subject matter

jurisdiction.

Subject matter jurisdiction is lacking because petitioner Universitas Education, LLC

("Universitas") "jumped the gun" and prematurely and improperly registered a foreign judgment

in this Court in flagrant violation of 28 U.S.C. § 1963. Assuming the action is not dismissed on

this basis alone, the action should be dismissed for the additional reason that the rendering court

lacked subject matter jurisdiction over the original action.

Furthermore, because counsel for Universitas failed to comply with the strict

requirements of 28 U.S.C. § 1963, Nova and the Charter Oak Trust seek an award of their

attorneys' fees and costs incurred in this action to be paid by counsel for Universitas *personally*

as required by 28 U.S.C. § 1927.

## BACKGROUND

Nova, as the Plan Sponsor and Named Fiduciary of the Charter Oak Trust, denied Universitas' claim for death benefits from the Charter Oak Trust. As required by the express provisions of the Charter Oak Trust, the parties submitted their dispute to binding arbitration. On January 24, 2011, the arbitrator issued an award ("Award") finding that Universitas was entitled to death benefits from the Charter Oak Trust.[1]

On January 25, 2011, Nova (for and on behalf of the Charter Oak Trust) commenced an action to vacate the Award in Connecticut state court. Universitas subsequently removed that action to the District of Connecticut based *solely* on diversity of citizenship. See Universitas Education, LLC v. Nova Group, Inc., No. 11-cv-00342-AWT, Dkt. No. 1 (D. Conn. Mar. 3, 2011). In its Notice of Removal, Universitas alleged that Nova is a Delaware corporation with its principal place of business in Connecticut (meaning that Nova is a citizen of both Delaware and Connecticut) and that all members of Universitas reside and are domiciled in New York (meaning that Universitas is a citizen of New York). Id. at 2. However, and not recognized by the parties at that time, Universitas failed to address the citizenship of the Charter Oak Trust.

On February 11, 2011, Universitas commenced a separate action to confirm the Award in New York state court. Relying on the representations made by Universitas in its removal papers

---

[1] Universitas and its affiliate Destination Universitas Foundation both comprise a sham and now defunct charity, as Universitas has recently admitted that Destination Universitas lost its 501(c)(3) federal tax exempt status. Universitas is headed by the former mistress of decedent S.A. "Sash" Spencer, a successful hedge fund manager who died unexpectedly in June 2008 at the time that he was a participant in the Charter Oak Trust. When Mr. Spencer's widow, Mary Spencer, discovered that a "charity" operated by her late husband's mistress was slated to split a substantial death benefit with Mr. Spencer's former employer Holding Capital Group, Inc. ("Holding Capital"), Mary Spencer threatened to sue Universitas, the former mistress, and Holding Capital. As a result, Mrs. Spencer, Universitas and Holding Capital negotiated a settlement agreement in July 2008 *that they requested the Charter Oak Trust to sign* whereby Mary Spencer would receive the *entire* death benefit in return for making a comparatively small "charitable contribution" to Universitas.

2

in Connecticut, Nova removed the New York action to the Southern District of New York on March 8, 2011 based on diversity jurisdiction.  See Universitas Education, LLC v. Nova Group, Inc., No. 11 Civ. 1590, Dkt. No. 1 at 2-3 (S.D.N.Y. Mar. 8, 2011).  However, Nova inadvertently failed to consider or address the citizenship of the Charter Oak Trust.  Nova also attempted to remove the action to the Southern District on the basis of a federal question, alleging that the action "necessarily depends on the resolution of a *substantial* question of federal law."  Id. at 3 (quoting Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 26 (2d Cir. 2000) (emphasis added)).

On December 1, 2011, the Connecticut action was transferred from the District of Connecticut to the Southern District.  See Universitas Education, LLC v. Nova Group, Inc., No. 11-cv-00342-AWT, Dkt. No. 22 (D. Conn. Dec. 1, 2011).  On January 19, 2012, the two cases were procedurally consolidated in the Southern District.  See Nova Group, Inc. v. Universitas Education, LLC, No. 11 Civ. 1590 (S.D.N.Y. Jan. 19, 2012).

Before the Southern District, Universitas moved to confirm the Award and have judgment entered thereon, whereas Nova (for and on behalf of the Charter Oak Trust) cross-moved to vacate the Award.  In a *Memorandum Order* dated June 5, 2012, the Southern District confirmed the Award in favor of Universitas.  See Universitas Education, LLC v. Nova Group, Inc., No. 11 Civ. 1590, 2012 WL 2045942 (S.D.N.Y. Jun. 5, 2012).  In its *Memorandum Order*, the Southern District of New York stated that it "has jurisdiction of this action pursuant to 28 U.S.C. §§ 1332 and 1331," id. at *1, but did not elaborate on the jurisdictional specifics.  On June 7, 2012, the Southern District entered judgment in favor of Universitas (the "Judgment").  On June 21, 2012, Nova (for and on behalf of the Charter Oak Trust) filed a motion for reconsideration of the Judgment pursuant to Fed R. Civ. P. 59(e), which remains pending.

Universitas commenced the instant action by registering the Judgment in this Court on

July 10, 2012.  See Universitas Education, LLC v. Nova Group, Inc., No. 12-mc-00102-AWT,

Dkt. No. 1 (D. Conn. Jul. 10, 2012).  The clerk's certificate attached to the Judgment incorrectly

stated that "no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending."  Id. at 1.  This statement

is incorrect because on June 21, 2012, Nova had filed a motion under Fed. R. Civ. P. 59(e).  A

Rule 59 motion is expressly listed as a motion that tolls the appeal period under Fed. R. App. P.

4(a)(4)(A).  Accordingly, because the time to appeal the Judgment has not yet expired, it was

premature for Universitas to register the Judgment in this Court.[2]

Shortly after the Judgment was entered, Universitas began aggressively to take post-

judgment actions against third parties.  For example, Universitas issued numerous restraining

notices to third parties advising them of the Judgment and instructing them not to transfer any

property belonging to Nova or the Charter Oak Trust.  One of the first notices issued was sent to

the M&T Bank Corporation ("M&T"), a New York corporation with its principal place of

business in New York.  The restraining notice sent to M&T was addressed to M&T's offices

located at 350 Park Avenue in New York City, *which is directly across the street from the offices

of Universitas' lead attorneys at Loeb & Loeb*.  See Exhibit A ("**TAKE FURTHER NOTICE**

that this notice also covers all property in which Nova Group and/or the Charter Oak Trust

Welfare Benefit Plan has an interest") (emphasis in original).[3]

---

[2]  The clerk's certificate was originally dated June 12, 2012, *before* Nova filed its Rule 59
motion on June 21, 2012.  For some reason, the original date was manually crossed out and a
date of July 9, 2012 was inserted in its place.  Evidently, whoever crossed out the old date and
inserted the new date failed to check the docket before doing so, thereby failing to detect Nova's
Rule 59 motion filed in the interim.  Counsel for Universitas should have alerted the SDNY clerk
to this mistake and rectified it, rather than prematurely registering the Judgment here.

[3]  M&T is a publicly held company and its state of incorporation and principal place of business
are routinely listed in its Securities and Exchange Commission ("SEC") filings.

Once Nova and the Charter Oak Trust saw a copy of the restraining notice sent to M&T, they informed their own counsel that M&T had previously acquired and merged with the Wilmington Trust Corporation ("Wilmington Trust"). Such counsel was also informed that Wilmington Trust had become a trustee of the Charter Oak Trust before the Award was issued. Thus, as a result of M&T's merger with Wilmington Trust, M&T became a trustee of the Charter Oak Trust.[4]

Universitas is a beneficiary of the Charter Oak Trust and M&T is a trustee of the Charter Oak Trust. Both Universitas and M&T are New York citizens. The Charter Oak Trust is a named party to this action and is an indispensable party because the death benefit awarded to Universitas would be paid by and from the Charter Oak Trust. Because the citizenship of a trust is determined by the citizenship of its beneficiaries *and* trustees, the Charter Oak Trust is a New York citizen for diversity purposes. As a result, complete diversity is lacking because the petitioner (Universitas) shares New York citizenship with a respondent (Charter Oak Trust).[5]

---

[4] Lead counsel for Universitas (Loeb & Loeb) obviously knew that M&T became a trustee of the Charter Oak Trust, or they would not have issued a restraining notice to M&T in the first place. Moreover, Loeb & Loeb issued the notice to M&T at its offices located directly across the street from Loeb & Loeb's offices. Thus, Loeb & Loeb clearly knew (or should have known) that the Charter Oak Trust has a New York trustee and, therefore, is considered to be a New York citizen for diversity purposes.

[5] In November 2008, Universitas and Holding Capital entered into an illicit agreement to split the death benefit between themselves and pay an illegal $200,000 rebate to their insurance broker. Given the complete lack of transparency regarding the true nature of Universitas and its intentions regarding the death benefit, it is likely that Holding Capital is a "secret" member of Universitas or beneficiary of the Charter Oak Trust and the death benefit. As a result, Holding Capital is a real party in interest pursuant to Fed. R. Civ. P. 17(a). According to its web site (www.holdingcapital.com), public records and evidence in this case, at all material times Holding Capital was a Connecticut corporation with its principal place of business located in New York City, meaning that it is a citizen of Connecticut and New York. Thus, Holding Capital's citizenship also destroys diversity both with respect to Nova and the Charter Oak Trust.

## ARGUMENT

### I.   Legal Standard

Subject matter jurisdiction can be challenged at this late date, even after the entry of judgment.  "The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. R. Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, *even after trial and the entry of judgment*."  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) (emphasis added).

"A federal court's lack of subject matter jurisdiction is not waivable by the parties." Leveraged Leasing Admin Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 47 (2d Cir. 1996). "Even the party who invoked the jurisdiction of the federal court is not estopped from raising lack of subject matter jurisdiction after a trial on the merits."  Thomas v. District of Columbia, 82 F.R.D. 93, 94 (D.D.C. 1979), citing American Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18 (1951).

### II.   Registration is Premature

Pursuant to 28 U.S.C. § 1963:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district . . ., **when the judgment has become final by appeal or expiration of the time for appeal** . . .

Id. (emphasis added).

Clearly, the expiration of the time for appeal of the Judgment has not yet occurred because of Nova's pending Rule 59 motion.  See Fed. R. App. P. 4(a)(4)(A)(iv).  Thus, it was premature for Universitas to have registered the Judgment in this Court.  See F.D.I.C. v. McFarland, 243 F.3d 876, 892 (5th Cir. 2001) ("By the plain language of the statute, registration may occur only where a judgment or order is final for purposes of appeal."); In re Grand Jury

Proceedings, 95 F.2d 226, 230 (1st Cir. 1986) ("A judgment may not be certified for registration, therefore, if the time for appeal has not yet expired."); cf. In re PATCO, 699 F.2d 539, 545 n.22 (D.C. Cir. 1983) ("Congress might have written a statute making a judgment registrable, and thereby immediately enforceable in all federal district courts, at the time it becomes collectible in the rendering forum [but it did not]."). Thus, this case must be dismissed.

Moreover, "[a]ny attorney . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy **personally** the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added). Because counsel for Universitas knew, or should have known, that registration of the Judgment was premature and improper, counsel for Universitas should be required to pay all attorneys' fees and costs incurred by Nova and the Charter Oak Trust to obtain the dismissal of this action. See Ohio Hoist Mfg. Co. v. LiRocchi, 490 F.2d 105, 107 (6th Cir. 1974) (allowing damages for "egregious" violation of registration statute where judgment was registered even though motion for new trial was pending).

## III. The Southern District Did Not Have Subject Matter Jurisdiction

Assuming, *arguendo*, that the registration of the Judgment was proper (which it was not), the registration statute provides that once a federal court judgment is registered in another federal court, "[a] judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963. Thus, the Judgment is deemed to be a judgment entered by this Court, and can be attacked on that basis for lack of subject matter jurisdiction.

A.      **There Was No Diversity Jurisdiction in the Southern District**

Pursuant to 28 U.S.C. § 1332(c)(1), Nova (a corporation) is a citizen of the state of its incorporation (Delaware) and where it has its principal place of business (Connecticut). "[F]or purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership." Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000). Universitas is a citizen of New York because its members reside and are domiciled in New York. If Holding Capital is a "secret" or undisclosed member of Universitas, then Universitas is also a citizen of Connecticut. See note 6, supra. Even if Holding Capital is not considered, diversity is still ruined because of the Charter Oak Trust. As a named party to this action and because it is also an indispensable party, since the death benefit at issue would be paid by and from the Charter Oak Trust, the citizenship of the Charter Oak Trust must also be taken into account.

Courts have held that the citizenship of the trustee and the beneficiary determine the citizenship of a trust. See Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 205 (3d Cir. 2007) ("the citizenship of both the trustee and the beneficiary should control in determining the citizenship of a trust."); Quantlab Financial, LLC v. Tower Research Capital, LLC, 715 F. Supp. 2d 542, 547, n.2 (S.D.N.Y. 2010) ("While the citizenship of a trust may also depend on the citizenship of the trust's beneficiary or beneficiaries, this action does not present an occasion to address this issue."); Yueh-Lan Wang ex rel. Wong v. New Mighty US Trust, 2012 WL 251919, at *3 (D.D.C. Jan. 27, 2012) ("the citizenship of a trust -- for purposes of deciding whether diversity jurisdiction exists -- requires consideration of the citizenship of the trust's beneficiaries."). Because the citizenship of a beneficiary dictates the citizenship of a trust, the New York (and perhaps Connecticut) citizenship of Universitas flows to the Charter Oak Trust and thereby destroys diversity.

Likewise, a review of the citizenship of the Charter Oak Trust's trustees also points to New York. "While neither the Supreme Court nor the Court of Appeals for the Second Circuit has squarely addressed the question of how to determine the citizenship of a trust for diversity jurisdiction purposes, precedent suggests that a court must look, at least in part, to the citizenship of the trust's trustee or trustees." Quantlab, 715 F. Supp. 2d at 547. "[C]ourts of appeals in other circuits have held that the citizenship of a trust depends, at least in part, on the citizenship of the trustee or trustees." Id. (citing cases). "Likewise, courts in this district have held that a trust's citizenship depends on the citizenship of its trustee or trustees." Id. at 548. Moreover, "a trustee's powers have no bearing on the citizenship of the trust." Id. at 549; see also Greentech Capital Advisors Securities, LLC v. Enertech Environmental, Inc., No. 11 Civ. 451, 2011 WL 1795318, at *2 (S.D.N.Y. Apr. 29, 2011) ("the citizenship of [the trustee] governs, and that there is no complete diversity between the parties."). Because M&T – a citizen of New York for diversity purposes – is the Insurance Trustee of the Charter Oak Trust, the Charter Oak Trust is also deemed to be a New York citizen. Accordingly, because Universitas is also a New York citizen, complete diversity is lacking. [6]

Whether considering the citizenship of the beneficiary (Universitas) or the Insurance Trustee (M&T) of the Charter Oak Trust, the result points to a citizenship of the Charter Oak Trust as New York. Because Petitioner Universitas is also a citizen of New York, the Judgment

---

[6] Defense counsel in Quantlab who argued *against* jurisdiction was the arbitrator in this case (Peter L. Altieri, Esq. of Epstein, Becker & Green, P.C.). It is indeed ironic that the arbitrator's law firm also successfully argued to deprive hundreds of deserving Lucent widows death benefits, see In re Lucent Death Benefits ERISA Litig., 541 F.3d 250 (3d Cir. 2008), yet in this case ignored clear and convincing evidence of illegality and fraud on the part of Universitas, Holding Capital and their insurance broker, and instead awarded death benefits to a sham charity operated by and for the benefit of the decedent's former mistress.

9

could not properly be rendered by the Southern District judge because she did not have subject matter jurisdiction over the dispute.

**B.      There Was No Federal Question Jurisdiction in the Southern District**

Although Respondents also removed the New York action to the Southern District of New York on the basis of a federal question, it turns out that such removal was improvident. Respondents' removal on the basis of a federal question was dependant upon the assertion of a defense by Respondents grounded in the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132 *et seq.* ("ERISA").  But a defense asserting a federal question is alone insufficient to confer federal jurisdiction, as it is the well-pleaded complaint that is the benchmark.[7]  See, e.g., Rivet v. Regions Bank of Lousiana, 522 U.S. 470, 475 (1998) (stating that under "well-pleaded complaint rule," federal jurisdiction only exists when clearly pleaded in complaint and cannot be invoked by an anticipated defense).  Accordingly, because neither Universitas' Summons with Notice filed in New York state court nor its Petition to Confirm the Award reference any federal question, Respondents' efforts to invoke federal question jurisdiction on the basis of an ERISA defense were ineffective.

Because the Southern District did not have federal question jurisdiction, it could not properly render Judgment, as it did not have subject matter jurisdiction over the dispute.

---

[7] Universitas' invocation of the Federal Arbitration Act "does not independently confer subject matter jurisdiction on the federal courts." Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir. 2009).

10

## <u>CONCLUSION</u>

WHEREFORE, because registration is premature and, in any event, because diversity and federal question jurisdiction are both lacking, the Judgment entered in the Southern District and registered with this Court is invalid, and therefore this Court lacks subject matter jurisdiction. Accodingly, this case must be dismissed forthwith and sanctions ordered.

<div style="margin-left: 40%">

NOVA GROUP, INC. and
THE CHARTER OAK TRUST

By:  <u>*/s/Joseph M. Pastore III*</u>
     Joseph M. Pastore III (ct11431)
     SMITH, GAMBRELL & RUSSELL LLP
     One Stamford Plaza
     263 Tresser Blvd., 9th Floor
     Stamford, CT 06901
     Telephone:  (203) 564-1485
     jpastore@sgrlaw.com

*Their Attorneys*

</div>

# EXHIBIT
# 7

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------ X
UNIVERSITAS EDUCATION, LLC,                    :          2015 ---- --- 7 --- 11: 48

        Plaintiff,                              :

      -against-                                : Case No. 14-mc-00125-RNC

NOVA GROUP, INC., et al.,                      : Hon. Robert N. Chatigny

        Defendant.                             :

                                      :
------------------------------------------------------------ X

## CHARGING ORDER

Plaintiff/Judgment Creditor Universitas Education, LLC ("Universitas") having moved for a Charging Order pursuant to CGS Section 34-171, to charge the membership interest of the Judgment Debtor, Carpenter Financial Group ("CFG"), in Grist Mill Partners, LLC, and in any and all other limited liability companies in which CFG may have an interest, with the unsatisfied portion of the Judgment entered in Universitas' favor against CFG for $11,140,000.00 on August 12, 2014 in the Southern District of New York, and filed with this Court on November 6, 2014;

NOW, upon the motion of Loeb & Loeb LLP, attorneys for Plaintiff Universitas, dated October 16, 2015; it is hereby

ORDERED, that the membership interests of CFG in Grist Mill Partners, LLC, and in any and all other limited liability companies, is charged with payment of the unpaid judgment debt herein awarded to Universitas, including interest. Within 10 days of the entry of this Order, CFG is ordered to provide the complete name and address of any and all other limited liability companies in which CFG has a membership interest;

ORDERED, that until Universitas' judgment against CFG is satisfied in full, Grist Mill Partners, LLC shall make no loans, directly or indirectly, to or for the benefit of CFG or anyone else for the benefit of CFG without further Order of this Court;

ORDERED, that within twenty days of service of a copy of this Order upon any members of Grist Mill Partners, LLC, Grist Mill Partners, LLC shall supply Universitas with full, complete and accurate copies of Grist Mill Partners, LLC's Operating Agreements including any and all amendments or modifications thereto; true, complete and accurate copies of any and all Federal and State income tax or informational income tax returns filed within the past three years; balance sheets and profit and loss statements for the past three years; balance sheet and profit and loss statements for the most recent present period for which same have been computed; and complete and accurate copies of banking and other brokerage statements for the past three years. Further, upon twenty days' notice from Universitas to Grist Mill Partners, LLC, all books and records shall be produced for inspection, copying and examination in Universitas' counsel's office;

ORDERED, that until Universitas' Judgment against CFG is satisfied in full, including interest thereon, Grist Mill Partners, LLC shall supply Universitas within thirty days of the close of the respective accounting period for which said data is or may be generated, all future statements reflecting cash position, balance sheet position, and profits and losses.

/s/ Robert N. Chatigny
U.S.D.J.

10/27/15

1368435.1

2

# EXHIBIT
# 8

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILMINGTON SAVINGS FUND SOCIETY,      :
FSB, as successor-in-interest to                       :
Christiana Bank & Trust Company,                   :
                                                                          :
             Plaintiff,                                            :               CIVIL CASE NUMBER:
                                                                          :
                     v.                                             :               3:15-cv-911 (VLB)
                                                                          :
UNIVERSITAS EDUCATION, LLC, and           :               March 3, 2017
RIDGEWOOD FINANCE II, LLC, as              :
successor-in-interest to Ridgewood            :
Finance, Inc.                                                   :
                                                                          :
             Defendants.                                      :

### MEMORANDUM OF DECISION

The Court granted Universitas Education, LLC's ("Universitas") Motion to

Compel Arbitration between Universitas and Wilmington in a Memorandum of

Decision dated February 17, 2016.  [Dkt. No. 105.]  Wilmington Savings Fund

Society ("Wilmington") timely moved for reconsideration.  [Dkt. No. 107; Local R.

Civ. P. 7(c).]  For the reasons set forth below, the Motion for Reconsideration is

DENIED.

I.    Facts

The Court assumes the parties are familiar with the facts underlying this

case.  For the purpose of this Decision, the Court briefly states the facts relevant

to the disputed arbitration agreement.  Universitas' arbitration demand asserts

that Holding Capital Group, Inc., a participating employer in a Multiple Employer

Welfare Arrangement ("MEWA") named Charter Oak Trust ("COT"), purchased

1

Dockets.Justia.com

two life insurance policies totaling $30 million for its chief executive officer, Sash A. Spencer. [Dkt. No. 1-1 at ¶ 48.] Universitas also asserts Spencer selected Universitas, the research and development arm of a charitable foundation, as his insurance beneficiary. *Id.* at ¶¶ 9, 48. Spencer died in 2008, and the insurance company tendered his death benefits to COT in 2009. *Id.* at ¶ 50. Universitas's demand for those benefits was unsuccessful. *Id.* at ¶ 51.

Wilmington agreed to serve as insurance trustee for what Wilmington refers to as the Grist Mill COT.[1] [Dkt. No. 31-5 (Appointment Agreement).] By the terms of the Appointment Agreement, Wilmington agreed to arbitrate any and all disputes relating to its performance of its duties as trustee of the purported Grist Mill COT. [Dkt. No. 31-5 (Grist Mill COT).] As insurance trustee for the purported Grist Mill COT, Wilmington opened a corporate trust account with the identification number CH125161-0. [Dkt. Nos. 31-8 (Letter); 31-9 (New Account Form).] One of the Spencer policies was placed in the trust account numbered CH125161-0, opened by Wilmington incident to its appointment as insurance trustee. [Dkt. Nos. 31-11 (Trust Vault Receipt); 31-12 (Account Statement).] Both policies were monitored by Wilmington. *Id.*

In its Memorandum of Decision, the Court concluded from the aforementioned evidence that Wilmington acted as insurance trustee for the Spencer policies. [Dkt. No. 107-1 at 30-32.] The Court also concluded Wilmington

---

[1] Wilmington asserts two separate trusts existed – the "Grist Mill COT" and the "Nova COT" – and that Nova COT held the Spencer policies. The Court did not determine in its Memorandum of Decision whether one or two trusts existed, nor does it do so now, because there is no evidence demonstrating that a trust named COT and sponsored by Nova held the Spencer policies.

2

agreed to arbitrate any and all disputes relating to its performance of its duties as insurance trustee, as evidenced by the Appointment Agreement. *Id*. Wilmington disputes this finding in its Motion for Reconsideration.

II. <u>Statement of Law</u>

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). There are three grounds for granting a motion for reconsideration: intervening change in controlling law, the availability of newly discovered evidence or a need to correct a clear error or avoid manifest injustice. *Virgin Atl. Airways Ltd. v. National Mediation Board*, 956 F2d. 1245, 1255 (2d Cit. 1992). Evidence is "newly discovered" for the purpose of a motion for reconsideration if the movant "could not have discovered the new evidence earlier had he exercised due diligence." *Patterson v. Bannish*, 3:10-cv-1481, 2011 WL 2518749, at *1 (D. Conn. June 23, 2011); *Robinson v. Holland*, 3:02-cv-1943, 2008 WL 1924971, at *1 (D. Conn. Apr. 30, 2008) (same). If the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion," reconsideration is appropriate. *Wiseman v. Greene*, 204 F3d 393, 395 (2d Cir. 2000) (per curium).

III. <u>Analysis</u>

Wilmington raises three arguments for reconsideration. Each fails to meet any of the three grounds for granting a motion for reconsideration.

First, Wilmington disingenuously asserts the Court "ignore[d]" evidence that Universitas admitted in a 2010 arbitration that Universitas has no arbitration agreement with Grist Mill Capital.  [Dkt. No. 107-1 at 8.]  Wilmington supports this argument with a letter from Universitas to an arbitrator in the matter *Universitas Education, LLC v. Nova Group, Inc., Wayne Bursey, Benistar Admin. Services, Inc., Donald Trudeau, Grist Mill Capital, LLC and Daniel E. Carpenter*, dated August 19, 2010.  [Dkt. No. 107-2.]  In the letter, Universitas states "no arbitration agreement exists between Universitas and Grist Mill Capital."  *Id*.  The letter was publicly filed on November 20, 2013 in a case pending in the Southern District of New York.  *Id*.  However, Wilmington asserts it did not discover the letter until January 2016.  [Dkt. No. 107-1 at 4.]  The letter was not filed with the Court in this case and thus the Court could not have "ignore[d]" evidence that Universitas admitted in the 2013.

The letter Wilmington offers to assert Universitas has no arbitration agreement with Grist Mill is not "newly discovered" evidence for the purpose of a motion for reconsideration, as Wilmington has not established why it "could not have discovered the new evidence earlier had he exercised due diligence." *Patterson*, 2011 WL 2518749 at *1.  Wilmington discovered the letter in 2016 on a public docket, where it had been available since November 2013.  Wilmington does not indicate why it could not have discovered the letter sooner with due diligence.   Wilmington also asserts no intervening change in law or controlling legal decisions which made the letter relevant after the Court rendered its decision.  Wilmington's first argument for reconsideration fails.

4

Wilmington next argues the Court failed to resolve material factual disputes in its Decision, including whether Wilmington agreed to act as insurance trustee for the owner of the Spencer policies and whether any such agreement includes a binding arbitration clause. [Dkt. No. 107-1 at 11.] In its Order compelling arbitration, the Court addressed both of these issues.

First, the Court found that Wilmington "agreed to serve as insurance trustee for the purported Grist Mill COT" based on (1) Wilmington's Appointment Agreement, (2) a New Account Form indicating Wilmington opened a corporate trust account as "Grist Mill's" trustee, and (3) trust vault receipts and account statements showing Wilmington monitored the Spencer policies placed in that trust account. [Dkt. No. 105 at 31 (citing Dkt. Nos. 31-5 (Appointment Agreement), 31-9 (New Account Form), 31-11 (Trust Vault Receipt, 31-12 (Account Statement)).] The Court also found Wilmington "agreed to arbitrate any and all disputes relating to the purported Grist Mill COT by virtue of its appointment as insurance trustee," as evidenced by the Appointment Agreement. [Dkt. No. 105 at 31 (citing Dkt. No. 31-5).] Based on those findings, the Court concluded that "Wilmington acted as insurance trustee for the Spencer policies pursuant to the appointment agreement in which it admittedly agreed to arbitrate any and all disputes relating to its performance of its insurance trustee duties." [Dkt. Nos. 105 at 32; 107-1 at 12.]

Wilmington raises no newly discovered evidence or overlooked evidence presented in the initial briefing which would require the Court to reconsider its findings. Wilmington asserts "the Grist Mill COT limited [Wilmington's] authority

5

as the Insurance Trustee to only those policies that were controlled by Grist Mill Capital." [Dkt. No. 107-1 at 12.] However, Wilmington offers no evidence – new or overlooked – establishing the Spencer policy placed in the Grist Mill COT was not "controlled by" Grist Mill, rendering Wilmington its trustee.

Rather, Wilmington raises a new legal argument that its possession of the Spencer policies constituted a "constructive bailment . . . since [the Spencer] policies were not owned by the Grist Mill COT and such possession was by mistake or accident." [Dkt. No. 107-1 at 13.] Wilmington cites one Connecticut Superior Court case from 2008 for the premise that "constructive bailment arises when possession of personal property passes from one person to another by mistake or accident," but offers no intervening change in controlling law necessitating reconsideration of the Court's Order. *Id.* (citing *H.J. Kelly & Assocs. v. Meriden*, No. CV030285781, 2008 WL 496688, at \*7 (Conn. Super. Ct. Jan. 17, 2008). To the extent that Wilmington obtained the Spencer Policies accidently, it dealt with the policies under the mistaken understanding that it had authority to do so incident to the Appointment Agreement, thus making its conduct subject to arbitration under the Appointment Agreement.

Wilmington's constructive bailment is not a proper argument to raise in a motion for reconsideration. Wilmington did not raise a constructive bailment argument at all in its initial briefing, the ruling on which it now seek reconsideration. Wilmington raises no "intervening change in controlling law" or "controlling decisions . . . hat were put before [the Court] on the underlying motion." *Virgin Atl. Airways Ltd.*, 956 F2d. at 1255; *Patterson*, 2011 WL 2518749

6

at *1.  Nor does Wilmington argue that some intervening law of bailment, not relevant at the time its original motion, has emerged to warrant consideration of this omitted theory on a motion for _re_consideration.  As a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple,'" **Wilmington's second argument for reconsideration fails.** *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, **684 F.3d 36, 52 (2d Cir. 2012). To rule otherwise is inconsistent with the principles of fairness, finality, and judicial efficiency.  Were this not the law, every loosing party could scour every obscure legal source to scrounge for arcane theories indefinitely and file motions for reconsideration in perpetuity in hopes of either finding a winning argument or either exhausting or bankrupting its opponent into capitulation.**

Finally, Wilmington asserts "the best evidence as to which Charter Oak declaration of trust (if any) owned the Spencer policies are the Spencer policies themselves and their respective applications for insurance.  [Dkt. No. 107-1 at 13.] Wilmington asserts the policies state the owner of the policies was "Wayne Bursey, Trustee of the Charter Oak Trust." *Id.* at 14.  From this evidence, Wilmington concludes neither Grist Mill nor Nova owned the Spencer policies, but rather a third, distinct trust called Charter Oak Trust owned the policies.  *Id.* Wilmington asserts it did not consent to act as trustee for the "Charter Oak Trust." *Id.* at 14-15.  Wilmington asserts "there is no evidence before the Court as to the identity of the owner of the Spencer policies."  [Dkt. No. 107-1 at 13.]  These Arguments are not only improper to raise on a motion for reconsideration, they

7

ignore the uncontested facts which the Court does know. They ignore the fact that Wilmington acted as though it was the trustee of the trust which was entitled to the Spencer Policies.  They also ignore the fact that Wilmington failed in its original briefing to identify any capacity, other than as trustee of the Grist Mill COT, under which Wilmington would have acted in respect to the Spencer Policies. While this Court will be the first to say the underlying facts are murky, that in and of itself does not entitle Wilmington a second bite the apple it has already devoured.  Further, for the reason stated above, any attempt would be unavailing.

Wilmington tacitly admits that it is attempting to re-litigate the matter by admitting "none of the[] documents" on which Wilmington bases this argument were presented to the Court with the Motion to Compel Arbitration.  *Id.* at 13.  This is patently impermissible.

IV.   <u>Conclusion</u>

For the foregoing reasons, the Court DENIES Wilmington's motion for reconsideration of the Court's Order Compelling Arbitration.

IT IS SO ORDERED.

<div style="text-align:center">

_____/s/_____<br>
Vanessa L. Bryant<br>
United States District Judge

</div>

Dated at Hartford, Connecticut, March 9, 2017.

8