UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| **UNIVERSITAS EDUCATION, LLC,** | : | |
| **Plaintiff,** | : | **Case No. 20-cv-00738-JAM** |
| | : | |
| **-against** | : | |
| | : | |
| **BENISTAR, et al.,** | : | **November 12, 2020** |
| **Defendants.** | : | |

---

## REPLY IN SUPPORT OF SANCTIONS
## AGAINST ATTORNEYS MARKUS AND CALDWELL

Great thanks and hopeful gratitude to the Court for posting the Complaint against Attorneys Markus and Caldwell. Once again, as they have done for 12 years since Sash Spencer's untimely death, the various attorneys for Universitas continue to make baseless accusations against Mr. Carpenter's family and associates in an effort to hide their own crimes. Make no mistake, Attorneys Markus and Caldwell should be investigated and disbarred for aiding and abetting Attorneys Manson and Chernow in their attempts to defraud the two women that run Universitas.

As the Court is well aware, all of the current claims made by new counsel for Universitas are barred by the Statute of Limitations under ERISA, the Doctrine of *Res Judicata*, Waiver and Laches, and the lack of subject matter jurisdiction as described by Judge Swain herself in citing *Peacock v. Thomas*, 516 U.S. 349 (1996). See Exhibit One. The only reason for Universitas to continue making these frivolous and vexatious claims that are clearly sanctionable under Rule 11 and Rule 1927, is to over-charge and plunder the $4 million remaining in Attorney Manson's Attorney Trust Account after he already took $4 million off-the-top from the WSFS settlement involving Christiana Bank, which was the Insurance Trustee for the Charter Oak Trust. See Attorney Manson's Motion for Interpleader attached as Exhibit Two.

The only way that the attorneys for Universitas can hide their crimes is to use the age-old "Orwellian" tactic of making Mr. Carpenter the ultimate villain, and to accuse him of being the "thief" while it is they who are plundering the accounts of the clueless and defenseless ladies of Universitas by filing baseless and meritless claims that have no hope of recovery in courts across the nation, including this Court. In their Response, Attorneys Markus and Caldwell miss the mark. Contrary to their claims, they are not being sued for defamation, but rather they are being accused of conduct unbecoming of an attorney and an officer of this Court. In this regard, the Second Circuit's conclusion in its recent decision in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) is very instructive:

> "District courts should exercise the full range of their substantial powers to ensure their files do not become vehicles for defamation." *Brown* at 53.

To be clear, not only are Attorneys Markus and Caldwell defaming Mr. Carpenter, his Wife, his Daughter, and his Sister and the company Benistar – which is wholly owned by its employees through an Employee Stock Ownership Plan – they are also engaged in a conspiracy to use mailings and wires to deprive the principals of Universitas from the $19 million they have received in settlement payments from various entities. Attached as Exhibit Three is Government Exhibit 2225 in Mr. Carpenter's own handwriting from May of 2009 showing his calculation of being willing to pay $19,800,000 to Universitas literally two weeks after the Sash Spencer insurance proceeds had been received by the Charter Oak Trust. These emails were unlawfully seized from Mr. Carpenter's office and computer in violation of the Fourth Amendment, and were used against him in his trial in front of Judge Chatigny in violation of the Fifth Amendment. But, as can be clearly seen, as of May 2009, Mr. Carpenter had the intent to pay Universitas $19,800,000 and that is certainly not the action or intent of a "thief," as everyone knows that his company Grist Mill Capital was the intended beneficiary of the insurance proceeds. See the Sash Spencer

Beneficiary Designation Form signed by Sash Spencer himself attached as Exhibit Four. Similarly, attached as Exhibit Five is the dismissal by Universitas of Grist Mill Capital before the Arbitration began. Also, attached as Exhibit Six is the dismissal of Mr. Carpenter after the Arbitration was over.

So, clearly, based on the ERISA three years Statute of Limitations and the requirement of establishing separate jurisdiction under *Peacock v. Thomas*, none of these claims brought by Universitas and their attorneys have any merit, so the question is why do they keep bringing these baseless actions? The simple reason is that Sharon Siebert and her partner Donna Vassar are being lied to by their attorneys and convinced to file these baseless actions against Mr. Carpenter when it is clear they have no hope of winning, and instead just keep draining the money from Attorney Manson's Attorney Trust Account. As evidence of this, please see attached as Exhibit Seven the Affidavit of Sharon Siebert from September 6, 2019 in another obviously baseless action against the Estate of Jack Robinson. Attorney Robinson died in 2017, and in September 2019 Ms. Siebert is saying under oath that Universitas has only received $4,703,621.64 million. See paragraph 18. In paragraph 17, she said she has spent more than $10 million on attorney's fees. While we will not accuse Ms. Siebert of outright perjury because the affidavit was probably drafted by her attorneys, it is very clear that, in addition to the $12 million they have received from WSFS, they received another $4,487,007.81 on or about June 19, 2018 from the Grist Mill Trust (see Exhibit Nine); $900,333.61 from BPETCO (see Exhibit Ten); and over $500,000 from USAA (see Exhibits Eleven and Twelve).

All told, Universitas has collected well over $19 million, so pursuant to the "One Satisfaction Rule" of the Second Circuit, there is no one they are suing now in the present action before this Court that they could collect from anyway. *See, e.g., Gerber v. MTC Elec. Techs. Co.,*

*Ltd.*, 329 F.3d 297, 303 (2d Cir. 2003) (*citing Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)). *See, also, In re Facebook, Inc.*, 674 F. App'x 37, 39-40 (2d Cir. 2016). Therefore, the reason for these baseless filings that have no hope of recovery is that Attorneys Manson and Chernow can feed off the WSFS trough from Attorney Manson's Attorney Trust Account, where they have already siphoned off $8 million and are continuing to siphon through this action.

Once again, if we take a look at the Siebert Affidavit paragraph 13, she says that she knew that the Charter Oak Trust ("COT") was amended in January 2007 so that 20% of the death proceeds could be withheld by the COT. That means another $6 million that must come off of the judgment, but that is not the point of this Reply. The point is to show that in the Government Exhibit 2225, Mr. Carpenter puts in writing the 80% rule of Section 6.01; the very section that Sharon Siebert cites in her Affidavit of September 2019 in paragraph 13 - ten years after Mr. Carpenter hand-wrote the calculations of the Sash Spencer proceeds and notated them as the "amount to pay to Universitas." Cleary, this is not the writing and intention of a thief, but rather someone involved in the administration of an ERISA Welfare Benefit Trust. So, why is it that Universitas was never satisfied with that $19 million and instead has wasted the better part of 12 years on fruitless litigation where their attorneys have profited while they have collected nothing according to Ms. Siebert's Affidavit? Clearly this Court should be considering not just disbarment proceedings, but it should also order an investigation and full audit and accounting of Attorney Manson's Attorney Trust Account and all of the fees paid to Attorneys Markus and Caldwell, because they are not performing legal services; they are participating in a Mail and Wire Fraud Conspiracy pursuant to 18 US.C. §1349 to defraud the principals of Universitas.

Respectfully speaking, since Mr. Carpenter has been indicted four separate times in the past 20 years for alleged mail and wire fraud, he can state as an expert that what Attorneys Markus,

Caldwell, Manson, and Chernow have done is far worse than anything Mr. Carpenter has been accused of doing in his Boston or Connecticut cases, both of which are still on appeal. The reason that this is obvious, is that the Widow Mary Spencer never knew anything about these death proceeds or the insurance proceeds being paid out, and it was only afterwards that Mr. Carpenter learned why this was the case. See Motion to Dismiss filed in front of Judge Thompson eight years ago attached as Exhibit Thirteen, which stated in FN1 on page 2:

> Universitas and its affiliate Destination Universitas Foundation both comprise a sham and now defunct charity, as Universitas has recently admitted that Destination Universitas lost its 501(c)(3) federal tax exempt status. Universitas is headed by the former mistress of decedent S.A. "Sash" Spencer, a successful hedge fund manager who died unexpectedly in June 2008 at the time that he was a participant in the Charter Oak Trust. When Mr. Spencer's widow, Mary Spencer, discovered that a "charity" operated by her late husband's mistress was slated to split a substantial death benefit with Mr. Spencer's former employer Holding Capital Group, Inc. ("Holding Capital"), Mary Spencer threatened to sue Universitas, the former mistress, and Holding Capital. As a result, Mrs. Spencer, Universitas and Holding Capital negotiated a settlement agreement in July 2008 that they requested the Charter Oak Trust to sign whereby Mary Spencer would receive the entire death benefit in return for making a comparatively small "charitable contribution" to Universitas.

It wasn't until after the insurance proceeds were paid in 2009 and 2010 that Mr. Carpenter discovered there was an agreement between the Widow and Universitas, where Universitas would give up all claims to the $30 million in exchange for a "charitable" gift from Mary Spencer in the amount of $5 million. See Exhibit Fourteen. The important thing about this agreements is that Mrs. Spencer was questioning if Universitas had any right to the proceeds, and her attorneys threatened Wayne Bursey and Jack Robinson that they would be sued if even one dime was paid to the "two floozies" – those were the words of the attorneys for Mary Spencer, and not Wayne Bursey or Jack Robinson. Unfortunately, Mr. Bursey died in 2015 and could not speak in defense of Mr. Carpenter at Mr. Carpenter's trial, and Mr. Robinson died in 2017 and could not speak in Mr. Carpenter's defense at his sentencing. Interestingly enough, the Government does have copies of the emails

sent from Mr. Bursey and Mr. Robinson discussing meetings with attorneys for Spencer, so it is very clear that Mr. Spencer never expected to die in 2008, and the attorneys for Mary Spencer put pressure on Universitas to give up its claim on the funds in July 2008.

Now that we are in November of 2020, which is 12 years after the death of Sash Spencer and 12 years after Universitas made a deal with Mary Spencer, and a year after Ms. Siebert said she knew the Charter Oak Trust document was amended in January 2007, it is positively outrageous that Attorneys Markus and Caldwell are calling Mr. Carpenter a criminal, thief, and liar, when it is they who are defrauding their unsuspecting client into thinking that it's ok for the attorneys to collect $15 million and leave the client with only $4 million. So, who are the real criminals here? Once again, the Second Circuit's ruling in *Brown* is instructive, because not only does the Second Circuit quote Justice Sotomayor in her law review article (*Returning Majesty to the Law and Politics: A Modern Approach*, 30 Suffolk U. L. Rev. 35, 47 n.52 (1996) discussing the fact that courts should be aware of perjurious statements in filings, it goes on to state:

> "While common law courts have generally interpreted the litigation privilege broadly, they nevertheless maintain an important (if rarely implemented) limitation on its scope: to qualify for the privilege, a statement must be "material and pertinent to the questions involved." *Front*, 24 N.Y.3d at 718 (*quoting Youmans v. Smith*, 153 N.Y. 214, 219-20 (1897)). It follows, then, that immaterial and impertinent statements are (at least nominally) actionable, particularly when they are "so needlessly defamatory as to warrant the inference of express malice." *Id.* (same). It seems to us that when a district court strikes statements from the record pursuant to Fed.R.Civ.P. 12(f) on the ground that the matter is "impertinent" and "immaterial," it makes the very same determination that permits a defamation action under the common law. We think the judicial system would be well served were our common law courts to revitalize this crucial qualification to the litigation privilege." *Brown* at 53, FN47.

They go on to state that the defamation claims against the attorneys can go forward because it has been the rule for over 100 years that if you say something that is defamatory, it must be pertinent and material to the matters at hand. So, assuming Mr. Carpenter really was the head of a notorious crime family, which the Government has never alleged in the 20 years he has been under

investigation and supervised release, not only is that defamation *per se*, it is not pertinent or material to the case at hand. The key here is that Mr. Carpenter does not need to sue either Universitas or Attorneys Markus and Caldwell, even though he could under *Brown*, it is a much more fitting punishment that this court send this case to the Connecticut Bar Grievance Committee, and also send a copy of the order to the US attorney's office so they may investigate Attorneys Markus, Caldwell, Manson, and Chernow for mail and wire fraud crimes against their client Universitas. Since we know that every filing they have done in the last six years is time-barred and fraudulent, that means the massive bills they have charged Universitas and Universitas has paid as the client are equally fraudulent and deserving of punishment.

Therefore Mr. Carpenter respectfully requests that this Court order a full accounting and investigation, and grant any other penalties and sanctions against Attorneys Markus and Caldwell that this Court deems proper and appropriate including a referral for disbarment and a referral to the Department of Justice.

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

# EXHIBIT ONE

**Judge Swain March 31, 2020 Order**

The following transaction was entered on 4/1/2020 at 9:48 AM EDT and filed on 3/31/2020
**Case Name:**        Universitas Education, LLC v. Nova Group, Inc.
**Case Number:**      1:11-cv-01590-LTS-HBP
**Filer:**
**WARNING: CASE CLOSED on 06/07/2012**
**Document Number:** 661

Docket Text:
**ORDER: The Court has received and reviewed in their entirety Plaintiff's March 23, 2020, letter motions requesting entry of judgment against Moonstone Partners, LLC, Benistar Admin Services, Inc. ("BASI"), and Molly Carpenter, (Docket Entry Nos. 658, 659), as well as the March 30, 2020, letter from counsel for those entities opposing entry of judgment (Docket Entry No. 660). Plaintiff's letter motions request relief that is not enumerated in NYSD Local Civil Rule 7.1(d), which describes applications which may be brought by letter motion. Accordingly, the motions are DENIED without prejudice to formal motion practice in compliance with the relevant federal, local, and individual procedural rules of Court. Any such motion must address the legal basis, if any, for the Court's exercise of personal jurisdiction over the non-party entities named in the above-referenced letter motions, whether such a motion is the appropriate procedural mechanism by which the Court can enforce its Memorandum Order confirming the arbitration award in this case (Docket Entry No. 40) against non-parties to the underlying litigation, and whether such motion practice is consistent with the limitations of ancillary jurisdiction as described in Peacock v. Thomas, 516 U.S. 349 (1996), and the Court's order interpreting Peacock and denying Plaintiff's prior turnover motion in this case. See Docket Entry No. 545. Any such motion must also address the legal and factual basis for the requested judgment amount in light of any recoveries Plaintiff has already obtained. (Signed by Judge Laura Taylor Swain on 3/31/2020) (mro)**

# EXHIBIT TWO

**Attorney Manson Motion for Interpleader**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSEPH L. MANSON III,<br>    d/b/a LAW OFFICES OF<br>JOSEPH L. MANSON III<br><br>    Plaintiff/Stakeholder,<br><br>v.<br><br>UNIVERSITAS EDUCATION, LLC, et al.<br><br>    Defendants/Claimants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     CA No. 1:18-cv-219-CMH/JFA |

## FIRST AMENDED COMPLAINT FOR INTERPLEADER

Interpleader-Plaintiff Joseph L. Manson, III, d/b/a Law Offices of Joseph L. Manson III, by and through counsel, pursuant to F.R.Civ.P. 15(a)(1)(B)[1], files this First Amended Complaint for Interpleader against Interpleader-Defendants Universitas Education, LLC ("Universitas"); Loeb & Loeb, LLP ("Loeb"); Sturm Law PLLC ("Sturm"); and Lang & Associates, PLLC ("Lang"). This Complaint for Interpleader is brought pursuant to Rule 22 of the Federal Rules of Civil Procedure, and, in the alternative, pursuant to 28 U.S.C. § 1335.

As and for his Complaint, Interpleader-Plaintiff pleads as follows:

1.      Interpleader-Plaintiff is an attorney doing business as the Law Offices of Joseph L. Manson III. He is a citizen of Virginia.

---

[1] Rule 15(a)(1)(B) allows a party to amend a pleading within 21 days after service of a responsive pleading or Rule 12 motion. All defendants except Sturm filed answers on May 18, 2018, and Sturm filed a Rule 12 motion on that same date. Accordingly, this amendment is timely and filed as a matter of right.

2.      Universitas is a Delaware limited liability company with its principal place of business in New York.  Its only members, Sharon Siebert and Donna Vassar, are both citizens of New York.

3.      Loeb is a law firm and a California limited liability partnership.  Upon information and belief at the time of the filing of the original complaint, Plaintiff understood Loeb's partners to be citizens of California, Illinois, New York, Tennessee, and Washington, D.C.  Loeb has denied these allegations in its Answer to the original Complaint, but has not specified on what grounds.

4.      Sturm is a law firm and a Texas professional limited liability company located at 712 Main Street, Suite 900, Houston, Texas 77002.  Upon information and belief, Sturm's sole member, Charles A. Sturm, is a citizen of Texas.

5.      Lang is a law firm and a Texas professional limited liability company located at 440 Louisiana Street, Suite 900, Houston, Texas 77002.  Upon information and belief, all Lang's members, including Shannon A. Lang, are citizens of Texas.

6.      Universitas is the beneficiary of the proceeds of two life insurance policies issued by Lincoln Life Insurance Company ("Lincoln") on the life of Sash A. Spencer. The Charter Oak Trust (the "COT") was the beneficiary of the Spencer policies, which were held in the COT.

7.      Mr. Spencer died in June of 2008. In May of 2009, Lincoln paid the Spencer policy proceeds, plus interest, to the COT.  The COT denied Universitas's claims to the proceeds.

8.      Universitas subsequently commenced an arbitration against Nova Group, Inc. ("Nova"), the Named Trustee of the COT.

2

9.      Universitas obtained an arbitration award against Nova, which was confirmed by the United States District Court for the Southern District of New York, Case No. 1:11-cv-01590-LTS-HBP.  Nova failed to pay the award, prompting Universitas to engage in collection efforts.  Universitas was represented by Loeb in the arbitration against Nova and in the related collection efforts.

10.     On or about April 6, 2015, Universitas also commenced arbitration against Wilmington Savings Fund Society, FSB ("WSFS"), the Insurance Trustee of the COT, with the American Arbitration Association, Case No. 01-15-003-1194 (the "Arbitration"). At the time, Universitas was represented by Shannon A. Lang and Charles A. Sturm. Universitas subsequently terminated that representation and engaged the Law Offices of Joseph L. Manson III.

11.     On or about February 26, 2018, Universitas and WSFS reached a full and final settlement of the Arbitration.  Universitas agreed to dismiss its claims against with WSFS with prejudice in exchange for, among other things, compensation in the amount of Twelve Million Dollars ($12,000,000.00 USD).

12.     As described therein, the Settlement Agreement required WSFS to wire the sum of Eight Million Dollars (the "Settlement Payment") to an escrow account at Branch Bank & Trust in the name of Interpleader-Plaintiff (Account Number 0000258221575, the "Escrow Account").[2]

---

[2] The Settlement Agreement also required WSFS to wire the additional sum of Four Million Dollars ($4,000,000.000), which constitute Interpleader-Plaintiff's attorneys' fees for representing Universitas in the Arbitration, to a trust account in the name of Interpleader-Plaintiff. These funds are not the subject of this dispute.

13.     Within two days of receiving the Settlement Payment to the Escrow Account, the Settlement Agreement required Interpleader-Plaintiff to commence this interpleader action naming all lienholders who may have a claim to any portion of the Settlement Payment.

14.     All Defendants have asserted a claim to some portion of the Settlement Payment funds.

15.     Sturm has claimed an attorneys' lien against 35% of the proceeds, if any, recovered in the Arbitration. As alleged by Sturm, Sturm's claim to the Settlement Payment amounts to $4,200,000.00.

16.     Loeb has also asserted a claim to the Settlement Payment. As alleged by Loeb, Loeb's claim to the Settlement Payment amounts to at least $4,109,906.52.

17.     Lang has asserted a claim to the proceeds, if any, recovered in the Arbitration. On information and belief, Lang's alleged claim to the Settlement Payment amounts to at least $200,000.00.

18.     On information and belief, Universitas also has a substantial claim to the Settlement Payment.

19.     Pursuant to the Settlement Agreement, on February 27, 2018, the Settlement Payment was wired to the Escrow Account.

20.     Pursuant to the Settlement Agreement, and because Interpleader-Plaintiff reasonably believes that the competing claims for payment exceed the amount of the Settlement Payment, Interpleader-Plaintiff brings this Complaint for Interpleader.

21.     Interpleader-Plaintiff believes that Interpleader-Defendants' collective claims exceed the Settlement Payment, so that any attempt to make payment may result

4

in multiple litigation and expose Interpleader-Plaintiff to conflicting and multiple liabilities.

22.     Interpleader-Plaintiff is neutral regarding each party's entitlement to the Settlement Payment, including the entitlement of the Interpleader-Defendants, and therefore seeks discharge from this action and from any liability with respect to the Settlement Payment.

## COUNT I
### (Rule Interpleader Pursuant To F.R.Civ.P. 22)

23.     Interpleader-Plaintiff incorporates the allegations of Paragraphs 1 through 22 above.

24.     In the event that there are no Interpleader-Defendants that are citizens of Virginia by virtue of the citizenship of one of their members, this Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity between the Interpleader-Plaintiff and the various Interpleader-Defendants, and the amount in controversy exceeds $75,000.

25.     Venue is proper under 28 U.S.C. § 1391, because the property that is the subject of this dispute, the Settlement Payment, is situated in Interpleader-Plaintiff's escrow account in the City of Alexandria in this judicial district.

## COUNT II
### (Statutory Interpleader Pursuant To 28 U.S.C § 1335)

26.     Pleading in the alternative, Interpleader-Plaintiff incorporates the allegations of Paragraphs 1 through 22 above.

27.     There are two or more adverse claimants of diverse citizenship who are claiming or may claim to be entitled to the Settlement Payment, which exceeds $500 in value.

28.     This Court has jurisdiction pursuant to 28 U.S.C. § 1335, which requires only diversity between any two of the Interpleader-Defendants (which exists, for example, between Universitas, a citizen of New York, and Lang, a citizen of Texas).

29.     In the event that an Interpleader-Defendant, such as Loeb, is a citizen of Virginia by virtue of the citizenship of one of its members, then a claimant resides in this district, and this matter may be brought in this court under 28 U.S.C. § 1379.

30.     Interpleader-Plaintiff prays the Court issue an Order granting leave to deposit the entirety of the Settlement Payment pursuant to 28 U.S.C § 1335, amounting to $8,000,000.00, into the registry of the Court.

### PRAYER FOR RELIEF

WHEREFORE, Interpleader-Plaintiff respectfully requests this Court:

a.  issue an Order requiring the Interpleader-Defendants to interplead all of their claims under or with respect to the Settlement Payment;

b.  issue an Order granting the Interpleader-Plaintiff leave to have the entirety of the Settlement Payment, amounting to $8,000,000.00, deposited into the registry of the Court, and providing that, upon such deposit, the Interpleader-Plaintiff and its employees and agents shall be discharged from all liability to the Interpleader-Defendants under or in connection with the Settlement Payment;

c.  enter a preliminary and permanent injunction enjoining the Interpleader-
    Defendants from instituting or prosecuting any action in any court, state or
    federal, against the Interpleader-Plaintiff and its agents or employees asserting
    any claims, rights, causes of action, or demands of any nature, known or
    unknown, under or in connection with the Settlement Payment;

d.  enter judgment discharging the Interpleader-Plaintiff and its agents and
    employees from all further liability relating in any way to the Settlement
    Payment or any demands that may be made in connection with the Settlement
    Payment;

e.  award to Interpleader-Plaintiff his costs and attorneys' fees; and

f.  grant any further relief as this Court may deem just and proper.

Dated: May 23, 2018

LAW OFFICES OF JOSEPH L. MANSON III
By Counsel


_____/dib/_____
David I. Bledsoe
VSB 29826
600 Cameron Street, Suite 203
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2018, the foregoing was filed with the

Clerk of Court through the Court's CM/ECF system, which will then send a notice of the

filing (NEF) to all counsel of record.

_____/s/_____
David I. Bledsoe

# EXHIBIT THREE

### Government Exhibit 2225
### Carpenter Handwritten Calculations

| | |
|---|---|
| From: | DCarpenter US Benefits <FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCUS> |
| Sent: | Tuesday, May 26, 2009 8:55 AM |
| To: | Wayne Bursey; RobinsonEsq@aol.com |
| Cc: | Dan Carpenter US Benefits |
| Subject: | Sash Spencer |
| Attachments: | Sblzhub09052608380.pdf |

Please check my math......

Jack let's think of letter.....



100GMR_CMP_SVR1-0573283

SASH   SPENCER
DEATH CLAIM

Insurance Proceeds  Policy 7305475                    Policy 7320809

Death Benefit           10,000,000                      20,000,000
(80% (Section 6.1))      8,000,000                      16,000,000
of Proceeds
Premiums Paid   779,000                                 1,543,105.79

Origination Fee
(20% of Premium)  155,840                          @ 308,621.16

Placement Fee
(2% of Death Benefit).  N/A                         @ 400,000

Placement Fee
(6% of Death Benefit)  600,000                      N/A

Premium Funding Fee
(3% of Death Benefit)  300,000                      N/A

Termination Fee                                          N/A
(1% of Death Benefit)  100,000

Total Fees and Charges  1,934,840                  2,251,726.95

                        $ 6,065,160                  13,749,273.05
                                                      6,065,160.00
                                                     19,813,433.05

100GMR_CMP_SVR1-0573284

# EXHIBIT
# FOUR

**Sash Spencer Beneficiary Designation Form showing Grist Mill Capital as Primary Beneficiary**

Apr 26 06 01:55p                                          212-319-6823                    p.2

LINCOLN # 7320809
$20,000,000



CHARTER OAK TRUST

## ELECTION OF PARTICIPATION &
## BENEFICIARY DESIGNATION FORM

NAME OF EMPLOYER: HOLDINGS CAPITAL GROUP, INC.

NAME OF COVERED EMPLOYEE: SASH A. SPENCER     SSN: 065·30·4914

To: Administrator of the CHARTER OAK PLAN & TRUST

To participate in the Plan, place your initials in the space provided next to "A" below and insert the names of your beneficiaries. To make such beneficiary designation irrevocable, place your initials in the space next to "B" below and insert the names of your beneficiaries. Please do not forget to designate at least one beneficiary.

A. _____      I wish to participate in the Plan and name the following persons or entities as the
                    Beneficiaries of any death benefit payable under the Plan:

                    Name of Beneficiaries: _____

                    Contact Person: _____     Phone: _____
                    Address: _____
                    I understand that I may change this designation at any time by submitting a new Beneficiary Designation Form to the Plan Administrator, and that such new designation will become effective when accepted by the Plan Administrator.

B.    ✓             I wish to participate in the Plan and name the following persons or entities as the
                    Irrevocable Beneficiaries of any death benefit payable under the Plan:

                    Name of Beneficiaries: UNIVERSITAS EDUCATION, LLC

                    Contact Person: SHARON SIEBERT     Phone: 212· 826· 0056
                    Address: 404 E. 55TH STREET, SUITE 13A, NY NY
                    I hereby elect that the foregoing designation of my beneficiary or beneficiaries of any death benefit that becomes payable pursuant to the Plan is irrevocable and non-amendable, and I shall have no right whatsoever to change such beneficiary designation for any reason. (If you have chosen option B, your signature must be notarized.)

NOTE: I hereby designate Grist Mill Capital, LLC as primary beneficiary of any sums which remain unpaid pursuant to any other agreements I might have with Nova Group, Inc. and acknowledge that my beneficiaries as designated above will receive all death benefit proceeds in excess of the sums payable to Grist Mill Capital, LLC.

x _____          x _____
Signature of Employer's Authorized Person      Signature of Covered Employee

SASH A. SPENCER, CEO                        SASH A. SPENCER
Name and Title of Authorized Person (Print or Type)   Name of Employee (Print or Type)

May 9th 2008                                The foregoing instrument was acknowledged
Date of this Designation                    before me this 9th day of May 2008

                                            _____
                                            Notary Public
                                                    Commission Expires: 10/31/2010

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07                                        4

                                            BARBARA A. KNIFFEN
                                        Notary Public, State of New York
                                            No. 31-4826643
                                        Qualified in New York County
                                        Commission Expires 10/31/2010
                                            10/31

# EXHIBIT

# FIVE

**Letter from Counsel for
Universitas Dismissing Grist Mill
Capital before the Arbitration**



PAULA K. COLBATH
Partner

345 Park Avenue          Direct  212.407.4905
New York, NY  10154      Main   212.407.4000
                         Fax    212.937.3189
                         pcolbath@loeb.com

Via E-mail

August 19, 2010

Ms. Karen Fontaine
Manager of ADR Services
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Re:    13 195 Y 1558 10, Universitas Education, LLC v. Nova Group, Inc., Wayne Bursey,
       Benistar Admin. Services, Inc., Donald Trudeau, Grist Mill Capital, LLC and Daniel E.
       Carpenter

Dear Ms. Fontaine:

As you know, we represent Universitas Education, LLC ("Universitas") in the above matter.

Pursuant to Rule R-6, Universitas is dropping all claims against and involving Grist Mill Capital
LLC for, among other reasons, no arbitration agreement exists between Universitas and Grist
Mill Capital.

 We will be filing an amended statement reflecting this change shortly.

Sincerely,

Paula Colbath /Jon

Paula K. Colbath
Partner

cc:    William McGrath, Esq.
       Joseph Pastore III, Esq.
       Paul Dehmel, Esq.
       Richard S. Order, Esq.

Los Angeles   New York   Chicago   Nashville   www.loeb.com                    NY859848.1
                                                                               214560-10001
A limited liability partnership including professional corporations

# EXHIBIT

# SIX

**Letter from Counsel for Universitas Dismissing
Daniel Carpenter after the Arbitration**



**PAULA K. COLBATH**
Partner

345 Park Avenue
New York, NY 10154

**Direct** 212.407.4905
**Main** 212.407.4000
**Fax** 212.937.3189
pcolbath@loeb.com

Via E-mail

March 22, 2011

Peter Altieri, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue, 14th Floor
New York, NY 10177

Re:   AAA No. 13 195 Y 1558 10 — Universitas Education, LLC v. Nova Group, Inc., et. al.

Dear Arbitrator Altieri:

We write on behalf of Universitas Education, LLC ("Universitas") to report that Nova Group, Inc. ("Nova Group") failed to deposit $26,525,535.98 into escrow (by March 19), as required by your January 24, 2011 Arbitration Award (the "Award"). We thus request that you begin Phase II of the Arbitration.

As you will recall, your Award required Nova Group to "deposit $26,525,535.98 in escrow with the law firm of Updike Kelly and Spellacy on or before the later of 30 days following the date of [the] Award or 30 days after determination of any motion for reconsideration under Rule 46[.]" 1/24/11 Award at 13. Universitas submitted a motion for reconsideration, that your Honor denied on **February 17, 2011** (Nova Group did not submit a motion for reconsideration). Nova Group was thus required to comply with the Award's escrow deposit requirement by no later than March 19, 2011.

Yesterday I wrote to Richard Order, Nova Group's counsel, requesting that he provide me with documentary proof of Nova Group's compliance with the escrow deposit provision. 3/21/11 E-mail from Paula Colbath, attached as Ex. 1. Mr. Order did not provide any proof that the monies were deposited, as required by the Award.

Pursuant to your Honor's Order of December 1, 2010 (attached as Ex. 2), Universitas plans to contact TD Bank and request the immediate production of the originally subpoenaed documents for Phase II of this Arbitration.

*Further, in view of Nova Group's failure to deposit the required monies into escrow, Universitas* requests that you:

> 1. Set a date for an Initial Scheduling Conference for Phase II of this Arbitration, in which Universitas will proceed against (a) Benistar Administrative Services, Inc. ("BASI"); (b) Nova Benefit Plans, LLC; and (c) Wayne Bursey ("Bursey").[1]

---

[1] Universitas withdraws its arbitration claims against Daniel Carpenter ("Carpenter") and Donald Trudeau ("Trudeau") without prejudice.

Los Angeles   New York   Chicago   Nashville   www.loeb.com

A limited liability partnership including professional corporations



Peter Altieri, Esq.
March 22, 2011
Page 2

2. Allow Universitas to submit a Second Amended Statement of Claim against
   Nova Group, Inc., BASI, Bursey and Nova Benefit Plans -- including a claim
   of statutory theft under Connecticut law -- within two (2) weeks following the
   occurrence of the Initial Scheduling Conference for Phase II of this
   Arbitration.

3. Determine whether BASI, Nova Benefit Plans and Bursey are bound to
   arbitrate (as you will recall, they claim they are not). This issue has already
   been fully briefed.[2]  Universitas also requests that your Honor take judicial
   notice of the testimony at the December 2010 hearings pertaining to the
   activities of BASI, Nova Benefit Plans and Bursey in administering and
   operating the Charter Oak Trust. See pp. 469-479, 484-490, 674-675, 704-
   705, 760, 814-815, 830-831 and 1055-1056 of the Hearing Transcript. Should
   your Honor require additional briefing on this issue, Universitas would be
   happy to supplement its prior submissions.

4. Dismiss Carpenter's pending motion to strike, which is moot in view of
   Universitas' decision not to proceed against Carpenter in this Arbitration.

5. Authorize Universitas to immediately take the depositions of Nova Group, Inc.
   and the Phase II Parties on Phase II issues.

We are prepared to participate in a telephone conference at your earliest convenience so that
Phase II can begin expeditiously.

Respectfully submitted,

Paula K. Colbath

Attachments

cc:    Richard S. Order, Esq. (via e-mail w/ attachments)
       Joseph M. Pastore III, Esq. (via e-mail w/ attachments)
       Daniel P. Scapellati, Esq. (via email w/ attachments)
       Karen Fontaine (AAA) (via e-mail w/ attachments)

---

[2] Universitas refers your Honor to Respondents' 10/6/10 Motion to Dismiss; Universitas'
10/15/10 Opposition to Respondents' Motion to Dismiss; Respondents' 10/22/10 Reply; and
Universitas' 12/16/10 Post-Hearing Legal Brief at 35-36.

# EXHIBIT SEVEN

**Sharon Siebert Affidavit**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

|  |  |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>Plaintiff,<br><br>v.<br><br>JACK E. ROBINSON, III a/k/a JACK E. ROBINSON,<br><br>Defendant. | Civil Action No.<br>1:15-CV-11848 (DPW) |

## AFFIDAVIT OF SHARON E. SIEBERT

SHARON E. SIEBERT, under penalty of perjury, declares and says as follows:

1.      My name is Sharon E. Siebert, and I am a founder and member of Universitas Education, LLC ("Universitas"). I have personal knowledge of the facts set forth herein.

2.      Universitas is a Delaware limited liability company, with its headquarters at 404 East 55th Street, Apartment 13A, New York, New York 10022.

3.      Universitas was previously the research and development arm of the now-defunct Destination Foundation Universitas ("Destination Universitas").

4.      Destination Universitas was a charitable foundation based in New York. Destination Universitas had its charitable designation administratively revoked because Universitas was unable to continue to fund it. Universitas's hardships were a direct result of the costly litigation efforts to enforce Universitas' judgment against the Charter Oak Trust and Nova Group.

5.      Universitas aims to develop and provide programs for leaders and educators around the world to support global philanthropic and humanitarian efforts.

6.       Universitas is operated by myself and my colleague, Donna Vassar.

7.       Ms. Vassar and I are Universitas' only members.

8.       In 2007, Universitas had negotiated for, and had prepared a letter of intent for the purchase of land for the development of a sanctuary on 69.59 acres in Lake Las Vegas, Nevada, for global leaders to gather and recharge during multi-day retreats.

9.       Universitas had discussed the purchase of the Lake Las Vegas property, solicited and selected a design proposal, completed a strategic development plan, and was in the process of finalizing proposals.

10.      One contributor to the project was Mr. Sash Spencer. Mr. Spencer chaired a private investment firm and was a financial partner to Universitas and Destination Universitas. Mr. Spencer died unexpectedly in June 2008. Prior to his death, he named Universitas the sole irrevocable beneficiary of two life insurance policies worth $30,000,000.

11.      Universitas has still not obtained the life insurance proceeds that Mr. Spencer endowed it.

12.      I received and reviewed the correspondence from Jack E. Robinson, Wayne Bursey, and others sent on behalf of the Charter Oak Trust ("COT") and its affiliates. I discussed these communications with Universitas' various representatives, including its attorney when appropriate.

13.      I initially believed that COT's accurately conveyed the provisions of the COT Declaration of Trust and would abide by the provisions thereof. I believed that the COT Declaration of Trust as amended in January 2007 included a provision within Section 6.01 that allowed COT to retain twenty percent of the death benefits of a participant who dies while participating in COT. However, I did not believe that the provision applied to Universitas'

2

circumstances because Mr. Spencer enrolled in COT prior to this alleged amendment, and COT never notified myself or anybody else about this alleged change in the Trust document.

14.    Universitas also undertook the arbitration against COT and its affiliates in good faith. Universitas relied upon Mr. Bursey's affidavit and Mr. Robinson's declaration asserting that COT had the assets to satisfy a judgement against it. Had I known that the proceeds from Mr. Spencer's life insurance proceeds had already been disbursed and spent on things such as a vacation home for Daniel Carpenter, Universitas would have altered its litigation strategy and would likely have sought civil remedies against Carpenter and his affiliates sooner. Universitas likewise would have adopted a much different litigation strategy had I known that the money in dispute had been improperly conveyed and used for criminal purposes. Instead, the misrepresentations and continuing bad faith by Robinson (before his death), Carpenter, and the rest of their affiliates have forced us to engage in protracted litigation that eventually contributed to the dissolution of Destination Universitas.

15.    The arbitration awarded Universitas a judgment against COT and its trustee, Nova Group, Inc. for $26,525,535.98.[1] Universitas' received this award on January 24, 2011, and the award remains largely unsatisfied.

16.    Universitas' effort to enforce its judgement has caused Universitas to become involved in numerous cases across the country. Attached as **Exhibit A** is a list of cases wherein Universitas has made filings concerning its award.

17.    The cost of this litigation has been high. To date, Universitas been billed for legal fees in excess of $10,000,000.

---

[1] This award was broadened during the subsequent litigation to confirm and enforce the award. The court provided Universitas with a money judgment on August 7, 2014. The money judgment is for $30,181,880.30, to account for interest on the unpaid judgment. The judgment is also enforceable against Daniel Carpenter and some of his companies, in addition to the original judgment debtors.

18.     The judgment debtors and their affiliates have been recalcitrant and obstructive. To date, Universitas has recovered only $4,703,621.64 of its $30,181,880.30 judgment.

19.     The judgment debtors' refusal to satisfy Universitas' judgment has caused Universitas hardship. Universitas has had difficulty paying the excessive legal fees accrued in trying to recover the proceeds from the Spencer policies, and this has led to disputes with former counsel regarding fees.


Dated: New York, New York  *West Palm Beach, Fla.*
September ___, 2019

_Sharon E. Siebert_
Sharon E. Siebert


Sworn to me on this _6_ day
of _September_, 20_19_

_Notary Public_
Notary Public

DARLENE A. BROWN
MY COMMISSION # GG 213365
EXPIRES: May 11, 2022
Bonded Thru Notary Public Underwriters

4

# EXHIBIT

# EIGHT

**WSFS Pays $12 Million to Universitas for Christiana Bank being Insurance Trustee of Charter Oak Trust**



Banking      Borrowing      Wealth                                    Login ▾

Business Services      About      Help & Guidance        Open an Account

🔍

# Press Release

f  g  in  t  ℝ

<< Back

Feb 27, 2018

## WSFS Reaches Settlement with Universitas Education, LLC

WILMINGTON, Del., Feb. 27, 2018 (GLOBE NEWSWIRE) -- WSFS Financial Corporation (NASDAQ:WSFS), the parent company of WSFS Bank, announced today that it has entered into a settlement agreement with Universitas Education, LLC (Universitas), to resolve claims related to services provided by Christiana Bank & Trust Company (Christiana Trust) prior to WSFS' acquisition of Christiana Trust in December 2010.  WSFS previously disclosed the claims in its quarterly filings on Forms 10-Q in 2017.

The claims relate to Christiana Trust's role as "insurance trustee" of the Charter Oak Trust Welfare Benefit Plan (Charter Oak), and Universitas' alleged loss after funds from certain life insurance benefits were misappropriated by certain individuals unaffiliated with Christiana Trust or WSFS. Universitas sought damages in excess of $54.0 million.

WSFS settled the case for $12.0 million to avoid the uncertainties of arbitration and to end the expense of ongoing litigation.  Separately, WSFS will pursue all of its rights and remedies to recover this settlement payment and all related costs, including by enforcing the indemnity right in the 2010 Stock Purchase Agreement by which WSFS acquired Christiana Trust.  Additionally, WSFS has already taken measures to recover expenses from various insurance carriers.  WSFS intends to pursue all claims it has for full restitution for this settlement.

"We are pleased to have reached an agreement on this years-old matter involving events alleged to have occurred prior to WSFS' acquisition of Christiana Trust," said Rodger Levenson, Executive Vice President and Chief Operating Officer, WSFS Bank.  "With this agreement completed, we will focus on pursuing a full reimbursement for these costs."

The settlement for $12.0 million requires WSFS to update its previously reported fourth quarter 2017 earnings, reducing reported after-tax earnings by approximately $9.3 million, or $0.29 per share for the fourth quarter.  The settlement will be reflected in the upcoming filing of our 2017 Form 10-K.

### About WSFS Financial Corporation
WSFS Financial Corporation is a multi-billion dollar financial services company. Its primary subsidiary, WSFS Bank, is the oldest and largest locally-managed bank and trust company headquartered in Delaware and the Delaware Valley. As of December 31, 2017, WSFS Financial Corporation had $7.0 billion in assets on its balance sheet and $18.9 billion in assets under management and administration. WSFS operates from 76 offices located in Delaware (46), Pennsylvania (28), Virginia (1) and Nevada (1) and provides comprehensive financial services including commercial banking, retail banking, cash management and trust and wealth management. Other subsidiaries or divisions include Christiana Trust, WSFS Wealth Investments, Cypress Capital Management, LLC, West Capital Management, Powdermill Financial Solutions, Cash Connect®, WSFS Mortgage and Arrow Land Transfer. Serving the Delaware Valley since 1832, WSFS Bank is one of the ten oldest banks in the United States continuously operating under the same name. For more information, please visit wsfsbank.com.

**Investor Contact:**Dominic C. Canuso
302-571-6833
dcanuso@wsfsbank.com

**Media Contact:** Jimmy A. Hernandez
302-571-5254
jhernandez@wsfsbank.com



# EXHIBIT

# NINE

**Satisfaction of Judgment for the Grist
Mill Trust in the Amount of $4,487,007.81**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,

                    Plaintiff,

          -against-

NOVA GROUP, INC.,

                 Defendants.

------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/19/18
```

No. 11-CV-01590 (LTS)(HBP)

**SATISFACTION OF JUDGMENT**
**ONLY AS TO JUDGMENT DEBTOR**
**GRIST MILL TRUST WELFARE**
**BENEFIT PLAN**

      **WHEREAS**, a Judgment was entered in the above action on August 12, 2014 in favor of Judgment Creditor UNIVERSITAS EDUCATION LLC ("Universitas") and against Judgment Debtor Grist Mill Trust Welfare Benefit Plan ("GMT"), in the amount of $4,487,007.81 (the "GMT Judgment"), and said GMT Judgment having been fully paid; and it is certified that there are no outstanding executions with any Sheriff or Marshall as to said GMT Judgment; and

      **WHEREAS**, to the extent Universitas issued restraining notices to third party garnishees directed at the assets of Judgment Debtor GMT, such restraining notices are hereby immediately lifted, but only insofar as such restraining notices related to the assets of GMT. **All restraining notices served by Universitas to third-party garnishees remain in full force and effect as to all Judgment Debtors, except GMT.**

      **THEREFORE**, full and complete satisfaction of said GMT Judgment is hereby acknowledged, and the Clerk of the Court is hereby authorized and directed to make an entry of the full and complete satisfaction on the docket of ONLY said GMT Judgment.

Dated: June 19, 2018
     New York, New York

                           LOEB & LOEB LLP

                           By: _____
                               Paula K. Colbath
                               345 Park Avenue
                               New York, New York  10154

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

    On the 19th day of June, 2018, before me personally came Paula K. Colbath, to me known and known to be a member of the law firm of Loeb & Loeb LLP, attorneys for Universitas Education, LLC in the above entitled action, and to be the same person described in and who executed the within satisfaction of judgment and acknowledged to me that she executed the same.

_____
Notary Public

ANTOINETTE PEPPER
Notary Public, State of New York
No. 01PE4973633
Qualified in Nassau County
Certificate filed in New York County
Commission Expires January 7, 2019

16386931.2

# EXHIBIT TEN

**Email Showing Universitas Receipt of $900,333.61 from BPETCO**

**From:** Paul S Samson [mailto:PSamson@riemerlaw.com]
**Sent:** Monday, December 28, 2015 5:30 PM
**To:** Elkind, Thomas I.; Tony Zelle (tzelle@zelmcd.com); tevans@zelmcd.com; 'Paula Colbath' (pcolbath@loeb.com) (pcolbath@loeb.com); Lindsay Feuer (lfeuer@loeb.com) (lfeuer@loeb.com)
**Subject:** RE: Satisfaction of Judgment

Universitas has been paid $900,333.06 as a result of the settlement and that amount will be credited against the Universitas judgment against Mr. Carpenter in accordance with Universitas' agreement with BPETCO and Mr. Carpenter.

Regards, have a happy and healthy New Year.  Paul.

Paul S. Samson
(admitted in MA and NY)
Riemer & Braunstein LLP
psamson@riemerlaw.com

From: TElkind@foley.com [mailto:TElkind@foley.com]
Sent: Monday, December 28, 2015 5:25 PM
To: Tony Zelle (tzelle@zelmcd.com); tevans@zelmcd.com; Paul S Samson; 'Paula Colbath' (pcolbath@loeb.com) (pcolbath@loeb.com); Lindsay Feuer (lfeuer@loeb.com) (lfeuer@loeb.com)
Subject: Satisfaction of Judgment

Counsel:

        Attached is a copy of the Satisfaction of Judgment that was filed today in the original Cahaly action pursuant to Section 11 of the Release and Settlement Agreement.

        The settlement between the Cahalys and BPETCO has now been completed. The settlement documents have all been signed and the $125,000 payment from BPETCO has been wired to counsel for the Cahalys.

        Please let me know the total amount that is paid to Universitas, including interest,  pursuant to its settlement with the Cahalys, as this is the amount that will be credited against the judgment held by Universitas against Dan Carpenter and others.

        Thank you for your cooperation regarding this matter.

Regards,

Thomas I. Elkind
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199
Tel:  617-342-4010
Fax: 617-342-4001
telkind@foley.com

1

# EXHIBIT ELEVEN

**Funds Received by Universitas from USAA
in the amount of $343,031.52**

USAA NR: 00100 95 38

POL HOLDER: DANIEL E CARPENTER

LOB/CLAIM NR: FL  / 000000

LOSS DATE: 10/29/12

UNIT: 00962

CHECK NR:   35-00928045

PAYEE:   LOEB & LOEB, ATTORNEY TRUST

USAA DATE:   12/04/13

USAA REP:   00050

| EXPLANATION OF PAYMENT | AMOUNT |
|---|---|
| FLOOD BUILDING<br>PAYMENT C/O<br>ABRAMS, GORELICK, FR<br>IEDMAN<br>ATTN:<br>MICHAEL GOERLI | |
| *214560—*<br>*10001*<br>*TRUST*<br>*Acct* | |
| TOTAL PAYMENT AMOUNT | $155,782.92 |



USAA NR: 00166-95-36
POL HOLDER: DANIEL E CARPENTER
LOB/CLAIM NR: FL  / 000000
LOSS DATE: 10/29/12
UNIT: 00962

CHECK NR: 35-00928130    XXXXXX
PAYEE: LOEB & LOEB, ATTORNEY TRUST AC
USAA DATE: 12/04/13
USAA REP: 00050

| | UNITED SERVICES AUTOMOBILE ASSOCIATION<br>PO BOX 33490<br>SAN ANTONIO, TX 78265 |
|---|---|

| EXPLANATION OF PAYMENT | AMOUNT |
|---|---|
| FLOOD BUILDING<br>PAYMENT<br>C/O ABRAMS, GORELICK<br>FIEDMAN<br>ATTN:<br>MICHAEL GORELICK | |
| TOTAL PAYMENT AMOUNT | $187,248.60 |

*214560 -*
*10001*
*TRUST Acct*



Universitas 000005

# EXHIBIT TWELVE

**Funds Received by Universitas from USAA
in the amount of $450,000**

D59FUNIH                              Hearing

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNIVERSITAS EDUCATION, LLC,
3
                    Plaintiff,
4
                v.                              11 CV 1590 (LTS)
5
    NOVA GROUP, INC. et al,
6
                    Defendants.
7   ------------------------------x
                                                New York, N.Y.
8                                               May 9, 2013
                                                9:30 a.m.
9
    Before:
10                      HON. LAURA TAYLOR SWAIN,

11                                              District Judge

12                              APPEARANCES

13  LOEB & LOEB LLP
         Attorneys for Plaintiff
14  PAULA K. COLBATH, ESQ.

15  BRYAN I. REYHANI, ESQ.
         Attorney for Plaintiff
16
    ANTHONY J. SIANO, ESQ.
17       Attorney for Defendant D. Carpenter and Moonstone Partners
    LLP
18
    HALLORAN & SAGE LLP
19       Attorneys for Defendant M. Carpenter
    DAN E. LaBELLE, ESQ.
20
    BRIEF CARMEN & KLEIMAN, LLP
21       Attorneys for Defendant Nova Group
    IRA KLEIMAN, ESQ.
22
    CAROLE R. BERNSTEIN, ESQ.
23       Attorney for Defendant Grist Mill Capital

24  ABRAMS, GORELICK, FRIEDMAN & JACOBSON, LLP
         Attorneys for Defendant USAA
25  ALEXANDRA E. RIGNEY, ESQ.

D59FUNIH                              Hearing

1    Trust to purchase of this home.

2            So the relief that we seek here is we would like the

3    insurance proceeds and we were told before we filed this

4    application, we were told by USAA, the casualty insurer

5    involved, that they were imminently ready to pay approximately

6    $450,000 to Moonstone Partners LLC and Mr. Carpenter who owned

7    the property in South Kingstown.  We also seek a turnover of

8    that property, the ownership of that property to our client

9    since our client's funds were used to purchase it.

10           Since the claim, at Mr. Carpenter's deposition he

11   advised us that he had not officially filed a claim for damage

12   yet.  We would also ask that that claim be assigned to

13   Universitas so we could step into his shoes and have direct

14   contact with the carrier in resolving that claim.

15           THE COURT:  Now, the order to show cause that I signed

16   referred to insurance proceeds in connection with, quote, "any

17   structure or property owned at any point in time by Moonstone,

18   Daniel Carpenter and/or Molly Carpenter or any entity owned by

19   the Carpenters including any properties at a Cards Pond Road

20   address in South Kingstown, Rhode Island and it seeks a

21   constructive trust on such insurance proceeds in Universitas'

22   favor.  So this is the first I'm hearing of a request that this

23   Court also order turnover of real property or an assignment of

24   the claim.

25           MS. COLBATH:  Your Honor, I believe the TRO that you

# EXHIBIT THIRTEEN

**Motion to Dismissed in front of Judge Thompson**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

----------------------------------------------------------------

UNIVERSITAS EDUCATION, LLC,       :

                        :     No.: 12-mc-00102-AWT

          Petitioner,     :

                        :

       -v-               :

                        :

NOVA GROUP, INC., as Trustee, Sponsor  :

and Named Fiduciary of the CHARTER OAK  :

TRUST WELFARE BENEFIT PLAN,     :     JULY 25, 2012

                        :

          Respondent.     :

---------------------------------------------------------------- :

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u><br><u>FOR LACK OF SUBJECT MATTER JURISDICTION</u>

Pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1963, respondents Nova Group, Inc. ("Nova") and the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust") hereby submit this memorandum in support of their motion to dismiss this action for lack of subject matter jurisdiction.

Subject matter jurisdiction is lacking because petitioner Universitas Education, LLC ("Universitas") "jumped the gun" and prematurely and improperly registered a foreign judgment in this Court in flagrant violation of 28 U.S.C. § 1963. Assuming the action is not dismissed on this basis alone, the action should be dismissed for the additional reason that the rendering court lacked subject matter jurisdiction over the original action.

Furthermore, because counsel for Universitas failed to comply with the strict requirements of 28 U.S.C. § 1963, Nova and the Charter Oak Trust seek an award of their attorneys' fees and costs incurred in this action to be paid by counsel for Universitas *personally* as required by 28 U.S.C. § 1927.

## BACKGROUND

Nova, as the Plan Sponsor and Named Fiduciary of the Charter Oak Trust, denied Universitas' claim for death benefits from the Charter Oak Trust. As required by the express provisions of the Charter Oak Trust, the parties submitted their dispute to binding arbitration. On January 24, 2011, the arbitrator issued an award ("Award") finding that Universitas was entitled to death benefits from the Charter Oak Trust.[1]

On January 25, 2011, Nova (for and on behalf of the Charter Oak Trust) commenced an action to vacate the Award in Connecticut state court. Universitas subsequently removed that action to the District of Connecticut based *solely* on diversity of citizenship. See Universitas Education, LLC v. Nova Group, Inc., No. 11-cv-00342-AWT, Dkt. No. 1 (D. Conn. Mar. 3, 2011). In its Notice of Removal, Universitas alleged that Nova is a Delaware corporation with its principal place of business in Connecticut (meaning that Nova is a citizen of both Delaware and Connecticut) and that all members of Universitas reside and are domiciled in New York (meaning that Universitas is a citizen of New York). Id. at 2. However, and not recognized by the parties at that time, Universitas failed to address the citizenship of the Charter Oak Trust.

On February 11, 2011, Universitas commenced a separate action to confirm the Award in New York state court. Relying on the representations made by Universitas in its removal papers

---

[1] Universitas and its affiliate Destination Universitas Foundation both comprise a sham and now defunct charity, as Universitas has recently admitted that Destination Universitas lost its 501(c)(3) federal tax exempt status. Universitas is headed by the former mistress of decedent S.A. "Sash" Spencer, a successful hedge fund manager who died unexpectedly in June 2008 at the time that he was a participant in the Charter Oak Trust. When Mr. Spencer's widow, Mary Spencer, discovered that a "charity" operated by her late husband's mistress was slated to split a substantial death benefit with Mr. Spencer's former employer Holding Capital Group, Inc. ("Holding Capital"), Mary Spencer threatened to sue Universitas, the former mistress, and Holding Capital. As a result, Mrs. Spencer, Universitas and Holding Capital negotiated a settlement agreement in July 2008 *that they requested the Charter Oak Trust to sign* whereby Mary Spencer would receive the *entire* death benefit in return for making a comparatively small "charitable contribution" to Universitas.

# EXHIBIT FOURTEEN

**Agreement between Universitas and Mary Spencer**

DRAFT – 7/10/08

## SETTLEMENT AGREEMENT AND RELEASES

This SETTLEMENT AGREEMENT AND RELEASES is made as of the ___ day of July, 2008 by and among Mary M. Spencer, residing at 251 Crandon Boulevard, Unit 164, Key Biscayne, Florida 33149 ("Mary"), Mary M. Spencer as named Executrix of the Estate of Sash A. Spencer (the "Estate"), Holding Capital Group, Inc., having an office at 630 Third Avenue, 7th Floor, New York, New York ("Holding Capital"), Universitas Education, LLC, having an office c/o Sharon Siebert, 404 East 55th Street, Suite 13A, New York, New York (the "Charity"), Donna Silvo, residing at _____, New York, New York, administrator of the charity ("Administrator"), Grist Mill Capital, LLC, having an office at 100 Grist Mill Road, Simsbury, Connecticut 06070 ("Grist Mill") and Charter Oak Trust, having an office at 100 Grist Mill Road, Simsbury, Connecticut 06070 by Wayne Bursey, Trustee (the "Trust").

A.     Background – which all parties hereto acknowledge:

1.     Through the offices of Bruce Mactas, on or about December 22, 2006, life insurance in the principal amount of approximately $30,000,000 issued by The Lincoln National Life Insurance Company ("Lincoln National") was purchased by the Trust on the life of Holding Capital's principal, the late Sash A. Spencer, who passed away on June 10, 2008.

2.     The Trust is the owner and beneficiary of those policies (hereinafter the "Policies").



EXHIBIT
414
AAA Case no
13A5Y1558 10
ALL-STATE LEGAL®

3.     The Charity is the named beneficiary of the Trust in respect of the Policies, having been so designated by the participant, Sash A. Spencer, for consideration which has been questioned by Mary and the Estate.

4.     Mary, the Estate, the Charity and Holding Capital have settled all such questions and all differences, and have agreed as follows.

B.     Agreement:

1.     The designated beneficiary of the Trust shall be "Hofheimer Gartlir & Gross, LLP as escrow agent" (the "escrow agent"). The parties shall execute and deliver such documentation as shall be necessary for that purpose, with copies thereof provided to the Trust. An escrow agreement shall be executed contemporaneously herewith requiring the escrow agent to disburse such proceeds of the policies as it may receive, only in accordance with this agreement.

2.     The net proceeds of the policies shall belong to and be disbursed to Mary subject to the reductions and offsets set forth in paragraph "3" below.

3.     If and only if proceeds of the policies are received in the amount of $30,000,000 (less expenses which had been agreed upon between Holding Capital and Grist Mill and less reasonable legal and administrative expenses), there shall be paid to the charity the sum of $5,000,000. As this sum is intended as a charitable contribution by Mary, it is contemplated that the sum may be disbursed by the escrow agent to Mary with contemporaneous arrangements satisfactory to the charity for the contribution by Mary of that sum to the charity.

4.     Subject to the terms of this agreement, all parties hereto, for themselves and on behalf of their heirs, successors, members, partners, employees, shareholders, officers, agents, trustees, beneficiaries, sponsors, administrators, attorneys and assigns, and any others claiming by, from or through them, hereby release, remise and discharge all other parties, their heirs,

- 2 -

NOVA000006

successors, employees, agents, assigns and attorneys (together with Arnold Broser, Bruce Mactas, Mactas, Alper Szrolovits, Inc., Arthur M. Michaelson, Esq. and the escrow agent, hereinafter collectively the "Additional Releasees"), from all claims, demands, causes of action, damages, judgments and executions which any of them have or may have, known and unknown, foreseen or unforeseen, in connection with the subject matter of this agreement. The Additional Releases and their firms and affiliates shall be jointly and severally fully held harmless and indemnified against any and all claims, liabilities and related costs and expenses arising out of the subject matter of this agreement, such indemnifications to be paid as joint and several obligations of the recipients of the net proceeds of the policies (as between them, in proportion to the proceeds received).

5.      Each of the parties to this agreement has had access to the advice of counsel in entering into this agreement, and each of the parties acknowledges that it has received the benefit of access to such advice or has declined same and requires no further access to counsel incident to agreeing to being bound by this agreement.

6.      Upon the reasonable request of any party hereto, following the date hereof, any other party hereto will: (a) execute and deliver to the requesting party such other documents, releases, assignments and other instruments as may be required to give effect to this agreement and consummate the transactions contemplated hereby; and (b) take all other reasonable actions to fulfill the intent and purpose of this agreement and the transactions contemplated hereby.

7.      This agreement may be executed in counterparts by the parties.

8.      This agreement may be modified only in writing signed by the parties to be bound by such modification.

- 3 -

NOVA000007

9.     This agreement shall be enforced only in, governed by, and construed in accordance with, the laws of the State of New York. The undersigned hereby consents to the jurisdiction of the courts of the State of New York and agrees that any action or proceeding in connection with this guaranty shall be brought in New York County.

Dated: _____, 2008        _____
                                              Mary M. Spencer

Dated: _____, 2008        _____
                                   Mary M. Spencer as named Executrix
                                   of the Estate of Sash A. Spencer

Dated: _____, 2008        HOLDING CAPITAL GROUP, INC.

                                   By: _____

Dated: _____, 2008        UNIVERSITAS EDUCATION, LLC

                                   By: _____

Dated: _____, 2008        _____
                                              Donna Silvo

Dated: _____, 2008        GRIST MILL CAPITAL, LLC

                                   By: _____

Dated: _____, 2008        CHARTER OAK TRUST

                                   By: _____
                                          Wayne Bursey, Trustee

- 4 -

NOVA000008