UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC, : | |
|               Plaintiff, : | Case No. 20-cv-00738-JAM |
| -against : | |
| : | |
| BENISTAR, et al., : | December 28, 2020 |
|               Defendants. : | |

---

**MOTION FOR COURT TO TAKE JUDICIAL NOTICE OF JUDGE SCHEINDLIN'S ORDER IN *UNIVERSITAS EDUCATION, LLC, individually and on behalf of THE CHARTER OAK TRUST v. TD BANK, N.A.,* 2015 WL 9304551 (S.D.N.Y. DEC. 21, 2015)**

TO THE HONORABLE JUDGE JEFFERY A. MEYER, MAY IT PLEASE THE COURT:

NOW COMES the Petitioner and nonparty, Daniel E. Carpenter, to move this Honorable Court to take judicial notice of the Honorable Judge Shira Scheindlin's Order of December 21, 2015, dismissing the Universitas lawsuit against TD Bank allegedly brought on behalf of the Charter Oak Trust. Mr. Carpenter only recently discovered that in 2015, Judge Scheindlin summarily dismissed one of the many suits filed by Universitas (this one, allegedly on behalf of the Charter Oak Trust and against TD Bank) because of a violation of the Statute of Limitations, stating that no action brought by Universitas after October 2012 could be timely. As this Court is aware, Mr. Carpenter was incarcerated at the time of this filing in 2015, and Wayne Bursey had died in March of 2015, and therefore, no one could contest these claims on behalf of Nova or the Charter Oak Trust, nor did anyone have knowledge or notice of this lawsuit. In dismissing the lawsuit, Judge Scheindlin articulated that the claims brought by Universitas in 2015 were meritless as well as time-barred because the Statute of Limitations had clearly started to run by October 2009, so that any claims brought after October 2012 were untimely. See Judge Scheindlin's Order attached as Exhibit One.

In her well-reasoned Opinion, Judge Scheindlin describes why all of the claims against TD Bank were futile at that time:

### III. DISCUSSION

When sitting in diversity, a federal court applies New York's statutes of limitations to state law claims. Under New York law, causes of action accrue at the time and in the place of the injury. ***Applying these principles to the instant case, each of plaintiff's causes of action is time-barred, and must be dismissed.***

B. Fraud Claims
Claims for fraud and the aiding and abetting of fraud are normally governed by New York's six-year statute of limitations. However, a "[c]ourt will not apply the six-year statute of limitations if the claim of fraud is merely incidental to another claim with a shorter limitations period." To determine whether a fraud claim is "merely incidental" to other claims in an action, courts examine the "gravamen," or basic essence, of a plaintiff's claims. In order to not be "merely incidental," a fraud claim must be distinct from a plaintiff's other claims — it must be a claim in its own right, and not merely recast the same facts as other claims in order to obtain the benefit of the longer limitations period. The facts underlying the fraud and conversion claims are the same. The injuries are the same. The relief sought is identical. Both the fraud and the aiding and abetting fraud claims are identical, for all intents and purposes, to the aiding and abetting conversion claim, and are merely incidental thereto. "Time barred claims cannot be revitalized by tricks of pleading"; the six-year statute of limitations does not apply to plaintiff's claim of aiding and abetting fraud. Plaintiff's claims for fraud and aiding and abetting fraud are subject to the three-year statute of limitations governing plaintiff's conversion claim, and are time-barred.

C. Fiduciary Duty Claims
New York does not prescribe a statute of limitations for claims based on the breach of a fiduciary duty, and instead determines the applicable limitations period based on the substantive remedy sought. Where a plaintiff seeks only money damages — as is the case here — a three-year statute of limitations applies. For the same reasons described above, plaintiff's claims accrued in October 2009, and were time-barred as of October 2012.

F. Racketeer Influenced and Corrupt Organizations Act ("RICO") Claim
Civil RICO claims are subject to a four-year statute of limitations. The four-year limitations period begins to run "upon the discovery of the injury alone." As with all of plaintiff s claims, the only injury alleged in plaintiff's civil RICO claim is the conversion of the Charter Oak Trust funds, of which plaintiff had actual notice in October 2009 when Nova Group formally denied plaintiff's claim to the trust funds. Plaintiff's civil RICO claim was therefore time-barred as of October 2013. *Universitas Educ., LLC v. TD Bank*, 2015 WL 9304551, at *2-4 (S.D.N.Y. Dec. 21, 2015).

Even more significant, in discovering that in 2015 Universitas was bringing a claim against TD Bank allegedly on behalf of the Charter Oak Trust, it appears that Judge Scheindlin based her opinion largely on the Affidavit of Sharon Siebert that was originally submitted in the case in front of Judge Swain dated March 24, 2011. The attorney for TD Bank used Ms. Siebert's 2011 affidavit to argue that all of the claims made by Universitas in 2015 were untimely as a matter of law. Also significant is that Ms. Siebert in her 2011 Affidavit does not mention Mr. Carpenter's name at all, as she describes how Universitas made the required claim filing for benefits from the Plan in July of 2009, and that their attorney Ivan Schinderman worked to negotiate a settlement with the Charter Oak Trust. See Sharon Siebert Affidavit of 2011 attached as Exhibit Two.

The Siebert Affidavit goes on to describe that after Attorney Schinderman's death, her and Donna Vassar's insurance advisor Alex Sgoutas was unsuccessful in negotiating a deal with Don Trudeau. Once again, nowhere in the Siebert Affidavit is Mr. Carpenter's name mentioned. However, in paragraph 12, Ms. Siebert says that she submitted a claim form for benefits in July of 2009. Judge Scheindlin concluded that in October of 2009 that the Universitas claim had been denied. Instead, Wayne Bursey as the Trustee of the Charter Oak Trust paid $19.8 million from the Trust to GMC because GMC had always been the beneficiary of the Sash Spencer insurance policies. Also, the Trust owed more than $60 million to GMC at the time. Ms. Siebert's affidavit 2011 Affidavit proved that they were unsuccessful in receiving any money on their claims by October 2009, so the time for filing the lawsuit under ERISA started no later than October 2009.

But, in 2011, Ms. Siebert was complaining that Connecticut was not a convenient forum for Universitas to litigate and they didn't have the money to defend the action brought by the Charter Oak Trust to vacate the Arbitration Award in Judge Thompson's court. See Exhibit Two, paragraphs 14 and 15. Again, Mr. Carpenter's name is not mentioned anywhere in the 2011

Affidavit, and there are no claims that anyone stole the proceeds, but rather that she was unsuccessful in negotiating her benefit claim with an ERISA benefit plan. But, she did have counsel and another advisor trying to negotiate a settlement on behalf of Universitas with the Plan. Moreover, eight years later in September 2019, while suing Jack Robinson's estate in Massachusetts (ostensibly another inconvenient forum), Ms. Siebert did another affidavit where she importantly acknowledged that they knew the Charter Oak Trust was amended in January 2007:

> "I believed that the COT Declaration of Trust as amended in January 2007 included a provision within Section 6.01 that allowed COT to retain twenty percent of the death benefits of a participant who dies while participating in COT." See September 2019 Affidavit, paragraph 13, attached as Exhibit Three.

The significance in the difference between these two Affidavits that were eight years apart, and the timing of this present action by Universitas is enormous. Not only is Judge Scheindlin correct that the Statute of Limitations is three years under New York law, it is also three years under ERISA. Therefore, the latest that Universitas could have brought any claim for benefits or damages against anyone would have been October 2012. Thus, the current action before this Court in 2020, as well as the original Clerk's Judgment of 2014, and the Charging Order of October 2015, are voidable pursuant to the Statute of Limitations under ERISA, in addition to the other jurisdictional defects of the case. *See, e.g., Peacock v. Thomas*, 516 U.S. 349 (1996).

The second reason this case is important is that Judge Scheindlin concluded that Universitas knew it was not getting paid the death claim proceeds by October of 2009. Petitioner submits that, in the summer of 2009, both Attorney Schinderman and Mr. Sgoutas were negotiating a deal with Don Trudeau and Wayne Bursey on behalf of Universitas. Petitioner also submits that Mr. Carpenter was not a party to those negotiations and there is no evidence that he met with or talked to Ms. Siebert or any of her advisors. Significantly, however, no one was calling Mr.

4

Carpenter a liar or a thief in 2011, and Universitas was bringing a claim against TD Bank allegedly on behalf of the Charter Oak Trust in 2015, which had denied the death benefit claim six years earlier.

With the above in mind, and as elucidated by Judge Scheindlin, and because the Universitas claim was denied in October 2009, that is when the Statute of Limitations would have begun, and therefore any claims brought by Universitas after October 2012 are and were untimely as a matter of law and should be dismissed. Finally, since Universitas brought the untimely claim on behalf of the Charter Oak Trust, all of the claims in the present case must be dismissed based on the doctrines of *res judicata* and collateral estoppel, if not waiver and laches. Therefore, Petitioner respectfully requests that this Court take judicial notice of Judge Scheindlin's Order of December 2015 in its determination of the present claims before the Court.

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

## CERTIFICATION

I hereby certify that on this 28th day of December, 2020, a copy of the foregoing was served by FedEx to the Clerk of the Court. Notice of this filing was also sent by USPS to Attorneys Caldwell and Markus.

By: */s/ Daniel E. Carpenter*
Daniel E. Carpenter
Petitioner, *pro se*

# EXHIBIT ONE

**Judge Scheindlin's Order in**
*Universitas Education, LLC, individually and on behalf of the Charter Oak Trust v. TD Bank, N.A.*, 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015)

Case 3:20-cv-00738-JAM Document 104 Filed 01/05/21 Page 8 of 20

Universitas Education, LLC v. Bank, Not Reported in Fed. Supp. (2015)

2015 WL 9304551
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

UNIVERSITAS EDUCATION, LLC, Plaintiff,

v.

T.D. BANK, N.A., Defendant.

15-cv-5643 (SAS)
|
Signed 12/21/2015

**Attorneys and Law Firms**

Annie E. Causey, Esq., Napoli Shkolnik PLLC, 1301 Avenue of The Americas, New York, NY 10019, (212) 397-1000, Marie E. Napoli, Esq., Napoli Law, PLLC, 1301 Avenue of The Americas, New York, NY 10019, (212) 397-1000, Paul J. Napoli, Esq., Napoli Bern Ripka & Associates, 350 Fifth Avenue, New York, NY 10118, (212) 267-3700, for Plaintiff.

Jeffrey J. Chapman, Esq., Aaron F. Jaroff, Esq., McGuire Woods LLP, 1345 Avenue of the Americas, 7th Floor, New York, NY 10105, (212) 548-7060, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHIRA A. SCHEINDLIN U.S.D.J.

**\*1** Plaintiff Universitas Education, LLC ("Universitas") brings this diversity action against defendant T.D. Bank alleging the aiding and abetting of conversion and related claims stemming from the alleged misappropriation of certain assets by a non-party actor, using T.D. Bank as its financial institution. Defendant moves to dismiss, arguing that plaintiff's claims are time-barred. For the following reasons, defendant's motion is GRANTED.

## I. BACKGROUND[1]

On May 15, 2009, the Lincoln National Life Insurance Company issued two checks to the Charter Oak Trust totaling $30,677,276.85, representing the life insurance proceeds for two life insurance policies issued on the life of Mr. Sash Spencer.[2] Mr. Spencer, now deceased, named Universitas as the sole beneficiary of the Charter Oak Trust.[3] Nova Group, Inc. served as the trustee.[4]

Contemporaneous with the Charter Oak Trust's receipt of the life insurance proceeds, Nova Group sought to open a new bank account for the Trust.[5] It applied for this account with at least three major banking institutions, and was declined by at least Bank of America due to Nova Group's failure to satisfy certain due diligence protocols.[6] T.D. Bank accepted Nova Group's application, and opened an account for Charter Oak Trust on May 12, 2009.[7]

On May 20 and May 21, 2009, T.D. Bank accepted applications for and opened business checking accounts for Nova Group and several related entities.[8] From May 21, 2009 to October 27, 2009, Nova Group transferred Charter Oak Trust proceeds to and

Case 3:20-cv-00738-JAM   Document 104   Filed 01/05/21   Page 9 of 20

Universitas Education, LLC v. Bank, Not Reported in Fed. Supp. (2015)

between its business checking accounts, and directly withdrew $19.8 million from the Charter Oak Trust account.[9] Universitas was aware that Nova Group did not intend to remit the Charter Oak Trust's proceeds to it by October 2009.[10]

Plaintiff filed a demand for arbitration against the Nova Group on June 17, 2010.[11] The arbitrator awarded plaintiff damages in the amount of $26,558,308.26 plus interest on January 24, 2011.[12] The award was confirmed on June 5, 2012.[13] In the meantime, T.D. Bank closed all accounts associated with Nova Group, which has yet to pay any of the arbitration award to plaintiff.[14] On July 17, 2015, plaintiff brought this action against T.D. Bank accusing it of aiding and abetting in this conversion, and bringing several related claims.

## II. LEGAL STANDARD

*2 In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff's favor."[15] The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[16] Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[17] For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18] Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[19] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[21]

When deciding a 12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[22] " '[I]t is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.' "[23]

## III. DISCUSSION

When sitting in diversity, a federal court applies New York's statutes of limitations to state law claims.[24] Under New York law, causes of action accrue at the time and in the place of the injury.[25] Applying these principles to the instant case, each of plaintiff's causes of action is time-barred, and must be dismissed.

### A. Aiding and Abetting Conversion Claim

Allegations for conversion, and aiding and abetting of conversion, are subject to a three-year statute of limitations.[26] A conversion occurs when one exercises unauthorized dominion over the property of another to the exclusion of the rights of the lawful owner.[27] Here, the alleged conversion took place no later than October 2009, when Nova Group formally refused to remit the proceeds of the Charter Oak Trust to plaintiff.[28] Thus, plaintiff's conversion claim was time-barred as of October 2012.

### B. Fraud Claims

Claims for fraud and the aiding and abetting of fraud are normally governed by New York's six-year statute of limitations.[29] However, a "[c]ourt will not apply the six-year statute of limitations if the claim of fraud is merely incidental to another claim with a shorter limitations period."[30] To determine whether a fraud claim is "merely incidental" to other claims in an action, courts examine the "gravamen," or basic essence, of a plaintiff's claims.[31] In order to not be "merely incidental," a fraud claim

Case 3:20-cv-00738-JAM   Document 104   Filed 01/05/21   Page 10 of 20

Universitas Education, LLC v. Bank, Not Reported in Fed. Supp. (2015)

must be distinct from a plaintiff's other claims — it must be a claim in its own right, and not merely recast the same facts as other claims in order to obtain the benefit of the longer limitations period.[32]

**\*3** The gravamen of plaintiff's fraud claims are that Nova Group converted Charter Oak Trust funds meant for Universitas, and that defendant — by opening accounts and approving transfers between them — aided and abetted in that conversion. The facts underlying the fraud and conversion claims are the same. The injuries are the same. The relief sought is identical. Both the fraud and the aiding and abetting fraud claims are identical, for all intents and purposes, to the aiding and abetting conversion claim, and are merely incidental thereto. "Time barred claims cannot be revitalized by tricks of pleading";[33] the six-year statute of limitations does not apply to plaintiff's claim of aiding and abetting fraud. Plaintiff's claims for fraud and aiding and abetting fraud are subject to the three-year statute of limitations governing plaintiff's conversion claim, and are time-barred.

### C. Fiduciary Duty Claims

New York does not prescribe a statute of limitations for claims based on the breach of a fiduciary duty, and instead determines the applicable limitations period based on the substantive remedy sought.[34] Where a plaintiff seeks only money damages — as is the case here — a three-year statute of limitations applies.[35] For the same reasons described above, plaintiff's claims accrued in October 2009, and were time-barred as of October 2012.

### D. Unjust Enrichment Claim

Claims for unjust enrichment are generally governed by a six-year statute of limitations.[36] However, as with claims for fraud and breach of a fiduciary duty, if an unjust enrichment claim is merely incidental to a claim governed by a shorter statute of limitations, "the Court will not allow a plaintiff to avail himself of a longer limitations period."[37] Here, plaintiff's unjust enrichment claim recites the same facts and circumstances as its conversion claim, and is just as incidental to the conversion claim as the fraud claims. The three-year statute of limitations therefore applies, and plaintiff's claim was time-barred as of October 2012.

### E. Negligence Claims

New York applies a three-year statute of limitations to all negligence claims, including claims for negligent hiring and negligent supervision.[38] As with conversion claims, the limitations period begins to run at the time and place of injury, "even though the injured party may be ignorant of the existence of the wrong or injury."[39] The injury alleged in support of the negligence claims is the same injury as alleged for the conversion claim and claims incidental to the conversion. Plaintiff's negligence claims were therefore time-barred as of October 2012.

### F. Racketeer Influenced and Corrupt Organizations Act ("RICO") Claim

Civil RICO claims are subject to a four-year statute of limitations.[40] The four-year limitations period begins to run "upon the discovery of the injury alone."[41] As with all of plaintiff's claims, the only injury alleged in plaintiff's civil RICO claim is the conversion of the Charter Oak Trust funds, of which plaintiff had actual notice in October 2009 when Nova Group formally denied plaintiff's claim to the trust funds. Plaintiff's civil RICO claim was therefore time-barred as of October 2013.

### IV. CONCLUSION

**\*4** For the foregoing reasons, defendant's motion is GRANTED. The Clerk of the Court is directed to close this motion (Dkt. No. 12) and this case.

SO ORDERED.

# EXHIBIT TWO

**Sharon Siebert's Affidavit
March 24, 2011**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

                Petitioner,

           -against-                          **CASE NO: 11 CV 01590-LTS-HBP**

NOVA GROUP, INC., AS TRUSTEE, NAMED     **AFFIDAVIT OF**
FIDUCIARY, PLAN SPONSOR AND                **SHARON SIEBERT**
ADMINISTRATOR OF THE CHARTER OAK
TRUST WELFARE BENEFIT PLAN,

                Respondent.
---------------------------------------------------------------X

STATE OF FLORIDA     )
                               ) SS.
COUNTY OF PALM BEACH )

       I, Sharon Siebert, being duly sworn, state:

       1.     I am a member of Universitas Education, LLC ("Universitas"), a limited liability company organized to provide research and support for a related non-profit charity organization, Destination Universitas Foundation (the "Foundation"). The Foundation is a charitable foundation dedicated to providing a center for the spiritual and physical healing of world leaders. I have personal knowledge of all of the following facts.

       2.     Universitas is a Delaware limited liability company with its principal place of business in New York, NY. Universitas has two members, myself and Donna Vassar, and both of us reside and are domiciled in New York, NY.

3.     Universitas does not maintain any offices in Connecticut, nor does it transact any business in Connecticut. In addition, Universitas has no employees in Connecticut or elsewhere.

4.     Universitas does not own nor rent any property in Connecticut, nor does it maintain a bank account in Connecticut.

5.     Universitas derives no revenue from business dealings within Connecticut, nor does it advertise in Connecticut.

6.     In fact, the only contact Universitas has ever had with Connecticut was as a direct result of Nova Group, Inc.'s ("Nova Group") wrongful withholding of certain trust benefits owed to Universitas as the sole, irrevocable beneficiary of Sash Spencer.

7.     Mr. Spencer was a long time supporter of the Foundation's work and accordingly named Universitas as the sole, irrevocable beneficiary of the Charter Oak Trust Welfare Benefit Plan (the "Plan"), so that upon his death, Universitas would receive approximately $30 million (the result of two insurance policies on Mr. Spencer's life placed in the Plan), less certain expenses to which Mr. Spencer and the Plan representatives agreed.

8.     Mr. Spencer died in June 2008, and in May 2009, the Plan received approximately $30 million in life insurance proceeds. However, the Plan failed and refused to pay over the monies owed to Universitas as the sole, irrevocable beneficiary. Instead, the Plan claimed that it was entitled to keep Universitas' monies for its own purposes.

9. When the Plan failed to pay over the Plan benefits to Universitas, Universitas necessarily had a representative reach out to the Plan to find out why it was not paying over the monies as Mr. Spencer had directed it to do.

10. First, this representative was Universitas' New York-based lawyer Ivan Schinderman, Esq. Because Mr. Schinderman unfortunately passed away before the parties could resolve the dispute and Universitas had not yet obtained new counsel, an informal business advisor of Universitas, Alex Sgoutas, met twice in Connecticut during the summer of 2009 with Plan representative Donald Trudeau to discuss payment to Universitas. Nothing ever came of these settlement meetings. Nova Group and its affiliates have still not paid any of the monies to Universitas, despite an arbitration award in Universitas' favor.

11. Mr. Sgoutas, a personal acquaintance of Universitas member Donna Vassar for more than 20 years, made these communications to the Plan as a favor and without any payment by Universitas.

12. At the Plan's request, in July 2009, I submitted a form for benefits on behalf of Universitas to the Plan, which the Plan stated I must do or Universitas would forfeit the entire $30 million.

13. Universitas received notice on January 25, 2011 from the American Arbitration Association that it had won an arbitration award against Nova Group in the amount of $26,525,535.98. On February 8, 2011, Universitas first learned that Nova Group had filed an action in Connecticut Superior Court to vacate the arbitration award.

14. Connecticut is not a convenient forum for Universitas, owing in part to Nova Group's refusal for almost two (2) years to pay the required death benefits to Universitas. At the arbitration's outset, Universitas applied for and received from the American Arbitration Association (AAA) a deferral of its share of the arbitration fees. In order to obtain this deferral, Universitas needed to document and establish its limited financial means to the AAA, which it did.

15. Universitas is not in a financial position to pay for a protracted legal battle in Connecticut (which requires the additional costs of local counsel), especially while continuing to incur legal fees in the ongoing Phase Two arbitration in New York.

*Sharon Siebert*

SHARON SIEBERT

Sworn to before me this
24th day of March, 2011

*Notary Public*
Signature only

JULISSA HERNANDEZ
Notary Public - State of Florida
My Commission Expires Apr 10, 2011
Commission # DD 658469
Bonded Through National Notary Assn.

NY\3269878.1

# EXHIBIT THREE

**Sharon Siebert's Affidavit
September 6, 2019**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>Plaintiff,<br><br>v.<br><br>JACK E. ROBINSON, III a/k/a JACK E. ROBINSON,<br><br>Defendant. | Civil Action No.<br>1:15-CV-11848 (DPW) |

### AFFIDAVIT OF SHARON E. SIEBERT

SHARON E. SIEBERT, under penalty of perjury, declares and says as follows:

1. My name is Sharon E. Siebert, and I am a founder and member of Universitas Education, LLC ("Universitas"). I have personal knowledge of the facts set forth herein.

2. Universitas is a Delaware limited liability company, with its headquarters at 404 East 55th Street, Apartment 13A, New York, New York 10022.

3. Universitas was previously the research and development arm of the now-defunct Destination Foundation Universitas ("Destination Universitas").

4. Destination Universitas was a charitable foundation based in New York. Destination Universitas had its charitable designation administratively revoked because Universitas was unable to continue to fund it. Universitas's hardships were a direct result of the costly litigation efforts to enforce Universitas' judgment against the Charter Oak Trust and Nova Group.

5. Universitas aims to develop and provide programs for leaders and educators around the world to support global philanthropic and humanitarian efforts.

6. Universitas is operated by myself and my colleague, Donna Vassar.

7. Ms. Vassar and I are Universitas' only members.

8. In 2007, Universitas had negotiated for, and had prepared a letter of intent for the purchase of land for the development of a sanctuary on 69.59 acres in Lake Las Vegas, Nevada, for global leaders to gather and recharge during multi-day retreats.

9. Universitas had discussed the purchase of the Lake Las Vegas property, solicited and selected a design proposal, completed a strategic development plan, and was in the process of finalizing proposals.

10. One contributor to the project was Mr. Sash Spencer. Mr. Spencer chaired a private investment firm and was a financial partner to Universitas and Destination Universitas. Mr. Spencer died unexpectedly in June 2008. Prior to his death, he named Universitas the sole irrevocable beneficiary of two life insurance policies worth $30,000,000.

11. Universitas has still not obtained the life insurance proceeds that Mr. Spencer endowed it.

12. I received and reviewed the correspondence from Jack E. Robinson, Wayne Bursey, and others sent on behalf of the Charter Oak Trust ("COT") and its affiliates. I discussed these communications with Universitas' various representatives, including its attorney when appropriate.

13. I initially believed that COT's accurately conveyed the provisions of the COT Declaration of Trust and would abide by the provisions thereof. I believed that the COT Declaration of Trust as amended in January 2007 included a provision within Section 6.01 that allowed COT to retain twenty percent of the death benefits of a participant who dies while participating in COT. However, I did not believe that the provision applied to Universitas'

2

circumstances because Mr. Spencer enrolled in COT prior to this alleged amendment, and COT never notified myself or anybody else about this alleged change in the Trust document.

14. Universitas also undertook the arbitration against COT and its affiliates in good faith. Universitas relied upon Mr. Bursey's affidavit and Mr. Robinson's declaration asserting that COT had the assets to satisfy a judgement against it. Had I known that the proceeds from Mr. Spencer's life insurance proceeds had already been disbursed and spent on things such as a vacation home for Daniel Carpenter, Universitas would have altered its litigation strategy and would likely have sought civil remedies against Carpenter and his affiliates sooner. Universitas likewise would have adopted a much different litigation strategy had I known that the money in dispute had been improperly conveyed and used for criminal purposes. Instead, the misrepresentations and continuing bad faith by Robinson (before his death), Carpenter, and the rest of their affiliates have forced us to engage in protracted litigation that eventually contributed to the dissolution of Destination Universitas.

15. The arbitration awarded Universitas a judgment against COT and its trustee, Nova Group, Inc. for $26,525,535.98.[1] Universitas' received this award on January 24, 2011, and the award remains largely unsatisfied.

16. Universitas' effort to enforce its judgement has caused Universitas to become involved in numerous cases across the country. Attached as **Exhibit A** is a list of cases wherein Universitas has made filings concerning its award.

17. The cost of this litigation has been high. To date, Universitas been billed for legal fees in excess of $10,000,000.

---

[1] This award was broadened during the subsequent litigation to confirm and enforce the award. The court provided Universitas with a money judgment on August 7, 2014. The money judgment is for $30,181,880.30, to account for interest on the unpaid judgment. The judgment is also enforceable against Daniel Carpenter and some of his companies, in addition to the original judgment debtors.

3

18. The judgment debtors and their affiliates have been recalcitrant and obstructive. To date, Universitas has recovered only $4,703,621.64 of its $30,181,880.30 judgment.

19. The judgment debtors' refusal to satisfy Universitas' judgment has caused Universitas hardship. Universitas has had difficulty paying the excessive legal fees accrued in trying to recover the proceeds from the Spencer policies, and this has led to disputes with former counsel regarding fees.

Dated: ~~New York, New York~~ West Palm Beach, Fla.
September 6, 2019

Sharon E. Siebert

Sworn to me on this 6 day of September, 2019.

Notary Public

DARLENE A. BROWN
MY COMMISSION # GG 213365
EXPIRES: May 11, 2022
Bonded Thru Notary Public Underwriters

4