**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNIVERSITAS EDUCATION, LLC,
  *Plaintiff*,

  v.
             No. 3:20-cv-00738 (JAM)

BENISTAR *et al.*,
  *Defendants*.

**ORDER RE PENDING MOTIONS TO DISMISS**

This lawsuit is the latest stage of a long-running effort by plaintiff Universitas Education,

LLC ("Universitas") to collect the proceeds of life insurance policies that were stolen more than

a decade ago. Universitas brings this action to enforce a prior judgment against 11 individuals,

trusts, and companies that were not parties to the prior action, but that are allegedly "alter egos"

and part of the same "criminal enterprise" as the judgment debtors. The complaint alleges six

counts based on theories of alter ego liability, constructive trust, and liability for attorneys' fees.

The defendants have filed four separate motions to dismiss on a variety of grounds. I

conclude that Universitas has stated a plausible claim that some—though not all—of the

defendants may be subject to alter ego liability, but that most of Universitas's claims do not state

a plausible claim. Accordingly, I will grant the motions to dismiss in part and deny them in part.

**BACKGROUND**

The following facts are set forth in the light most favorable to Universitas as the non-

moving party and whose allegations are accepted as true for the purposes of this motion.

This action involves efforts by Universitas to collect the proceeds of two life insurance

policies for Sash Spencer. Universitas was the sole, irrevocable beneficiary of Spencer's life

insurance policies, which were owned by the Charter Oak Trust ("COT") and managed by Nova

Group, Inc. ("Nova Group"). Doc. #1 at 5 (¶¶ 27-28). COT and Nova Group are both controlled

by Daniel Carpenter, who Universitas alleges is a "prolific fraudster who has been convicted on seventy-six felony counts including, *inter alia*, the theft of $30 million from Universitas." *Id*. at 3, 5 (¶¶ 16, 29).

In 2008, Spencer died unexpectedly, but Daniel Carpenter and his associates fraudulently denied Universitas's claim for Spencer's life insurance proceeds and transferred the death benefits to entities owned and controlled by Daniel Carpenter while Universitas's appeal was pending. *Id*. at 5-6 (¶¶ 30-35).

In January 2011, an arbitrator found in Universitas's favor and entered an award of $26.5 million against Nova Group, and this award was confirmed by Judge Swain in the Southern District of New York. *Id*. at 7-8 (¶¶ 42, 45); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 2012 WL 2045942, at *3 (S.D.N.Y. 2012), *aff'd*, 513 F. App'x 62 (2d Cir. 2013). Following extensive post-judgment discovery, Universitas brought three turnover motions before Judge Swain to enforce its judgment pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules ("CPLR") § 5225(b).

The first turnover motion sought the proceeds of an insurance policy on a property owned by Moonstone Partners, LLC ("Moonstone"). Daniel Carpenter, Molly Carpenter, and Moonstone all appeared in the turnover proceeding. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 6123104, at *1 (S.D.N.Y. 2013). After a bench trial, Judge Swain granted Universitas's turnover petition in November 2013. *Id*. at *13. Judge Swain concluded that Daniel "Carpenter caused Nova, the Charter Oak Trust, and other affiliated entities, directly or indirectly, to transfer the Life Insurance Proceeds to which [Universitas] is entitled" and "Carpenter caused the Life Insurance Proceeds to be transferred to and through entities that he controlled, either directly or indirectly, including Moonstone, for the personal benefit of Mr.

Carpenter and his affiliates." *Id*. at *7. Judge Swain found that Moonstone was Daniel Carpenter's "shell" company, as were others of the hundreds of companies that Daniel Carpenter founded and controlled from the same address. *Id*. at *2, 5.

The second turnover petition sought the turnover of assets by Daniel Carpenter and seven affiliated entities, including Carpenter Financial Group. Following an evidentiary hearing and voluminous filings, Judge Swain concluded that Daniel Carpenter and the turnover respondents engaged in a series of fraudulent transfers with the intention of depriving Universitas of the Spencer life insurance policy proceeds. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 WL 3883371, at *10-11 (S.D.N.Y. 2014). Judge Swain entered judgment against each of the turnover respondents, including a $30.6 million judgment against Daniel Carpenter and an $11.14 million judgment against Carpenter Financial Group. *Id*. at *11, 13; Doc. #1 at 10 (¶ 55).

In 2015, Universitas filed a third turnover motion before Judge Swain seeking turnover of an insurance policy held by one of the judgment debtors, Grist Mill Trust ("GMT"). Judge Swain determined that the turnover motion and other proceedings related to GMT's insurance policies were "well beyond the scope of the [court's] ancillary jurisdiction" because they were "premised on the assertion of rights based on trust agreements, insurance policies, and other contracts that were not involved in the underlying arbitration and original judgment enforcement proceedings, nor implicated in the subsequent fraudulence conveyance proceedings." *Universitas Educ., LLC v. Nova Grp., Inc.*, 2015 WL 57097, at *3 (S.D.N.Y. 2015). Judge Swain denied Universitas's third turnover motion "without prejudice to appropriate proceedings in fora of competent jurisdiction." *Id*. at *4.

In 2016, in a criminal trial before Judge Chatigny in the District of Connecticut, Daniel Carpenter was found guilty of 57 counts of mail and wire fraud, conspiracy to commit mail and

wire fraud, illegal monetary transactions, money laundering, conspiracy to commit money laundering, and aiding and abetting those substantive offenses, including for his conduct defrauding Universitas. Doc. #1 at 11 (¶ 58); *see United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020). Among the relevant findings in that case were that "the evidence shows that the formal corporate structure of the various Benistar Entities had little meaning for the people involved" and the "evidence also shows that corporate entities were created and discarded at Mr. Carpenter's direction when it suited his purposes." Doc. #1 at 14, 16 (¶¶ 72, 79); *Carpenter*, 190 F. Supp. 3d at 274. Carpenter was sentenced to 30 months of imprisonment, which he is serving in New York until a scheduled release date in May 2021. Doc. #74-7 at 3; No. 3:13-cr-00226-RNC-1 Doc. #466.

Daniel Carpenter and the other judgment debtors are not named as defendants in this action, but Universitas alleges that the named defendants are each part of Carpenter's "criminal enterprise" that it refers to as "Benistar." Doc. #1 at 4-5, 14 (¶¶ 22-23, 73). Universitas alleges that "Benistar is a single economic entity comprised of hundreds of corporations, LLCs, trusts, and other entities. Any distinction between Benistar entities is fictitious – Benistar entities are operated such that they lack any separate identity and in a manner that is abusive to the corporate form." *Id*. at 13 (¶ 67). Universitas argues that Daniel Carpenter's entities, including the defendants, operate as a "single entity with a common purpose and course of conduct – the personal enrichment of Mr. Carpenter, Mrs. Carpenter, and Mr. Trudeau." *Id.* at 13-14 (¶¶ 68-73).

Universitas alleges defendant Benistar Admin Services, Inc. ("BASI") is the "hub" of Daniel Carpenter's entities, and that it controls the trusts within Carpenter's network through the

use of shell-company trustees that then contract services to BASI. *Id.* at 18 (¶¶ 90-91). In addition, it alleges BASI was previously found by a Massachusetts court to be an alter ego of Daniel and Molly Carpenter in a veil piercing action. *Ibid.* (¶ 92).

Defendant TPG Group, Inc. ("TPG") is owned by defendants BASI, Molly Carpenter, and Donald Trudeau, but controlled by Daniel Carpenter, and has been used to transfer more than $1 million of assets to a judgment debtor in a way that allows Daniel Carpenter to profit from TPG's operations without being on TPG's official records. *Id.* at 19-20 (¶¶ 102-03).

Moonstone "is a shell company created to purchase and manage a vacation property for Daniel Carpenter and Molly Carpenter." *Id.* at 21 (¶ 116). The vacation property was purchased using the fraudulently-transferred Spencer life insurance proceeds. *Id.* at 21-22 (¶¶ 117, 120). Judge Swain found Universitas's "interest in the Property and any insurance proceeds is superior to those of the insurance company … and those of all of the Moonstone Respondents." *Id.* at 22 (¶ 120); *Universitas*, 2013 WL 6123104, at *13.

Defendant Molly Carpenter is Daniel Carpenter's wife and is an executive of BASI, TPG, Moonstone, and various other related entities. Doc. #1 at 26 (¶¶ 144-45). She holds Daniel Carpenter's primary power of attorney while he is incarcerated but "defers all executive decisions to Mr. Carpenter, thereby providing Mr. Carpenter with control over Benistar while helping to conceal his involvement in Benistar." *Ibid.* (¶¶ 144-45). Molly Carpenter was "heavily involved with COT" and is or has been a signatory on dozens of Benistar bank accounts, including those belonging to COT, TPG, and BASI. *Ibid.* (¶¶ 146-48). She personally owns 99% of Moonstone, and she has personally received other transfers of the Spencer life insurance proceeds from judgment debtors. *Id.* at 21, 27 (¶¶ 116-19, 150-51).

Defendant Donald Trudeau is the President of BASI and TPG as well as an executive in other related entities, has submitted false testimony on Daniel Carpenter's behalf in prior proceedings, and directed the fraudulent transfer of millions of dollars of the Spencer life insurance proceeds, including to entities that he controls. *Id.* at 23-25 (¶¶ 131-32, 138-40).

Defendant Grist Mill Partners, LLC ("GMP") owns the property at 100 Grist Mill Road that was the office for Daniel Carpenter's companies through 2014. *Id.* at 20 (¶¶ 106-07). Universitas alleges GMP is wholly owned and controlled by two entities—99 percent by Carpenter Financial Group and 1 percent by Caroline Financial Group, Inc.—that are in turn controlled by Daniel Carpenter. *Id.* at 21 (¶¶ 113-14).

Defendants Alliance Charitable Trust, Phoenix Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, and Carpenter Charitable Trust (the "Defendant Trusts") are trusts organized under Delaware law. *Id.* at 2-3 (¶¶ 6-10). Daniel Carpenter is sole grantor and trustee for the Defendant Trusts and is in complete control of them and their assets. *Id.* at 22-23 (¶¶ 125-26). In November 2009, Daniel Carpenter caused one of the judgment debtors to make 11 transfers of the Spencer life insurance policy proceeds to the Charitable Trusts, totaling $1.76 million. *Id.* at 23 (¶ 128). In 2013, Daniel Carpenter "sent an email boasting that the Charitable Trusts contain assets worth tens of millions of dollars." *Ibid.* (¶ 127).

Due to Daniel Carpenter, the judgment debtors, and the defendants' fraud and their use of shell companies to hide assets, Universitas's "judgment remains substantially unsatisfied, even after years of post-judgment litigation seeking to enforce the judgment." *Id.* at 16, 28 (¶¶ 79, 157). Universitas also provides details throughout its complaint and subsequent briefing about Daniel Carpenter's alleged bad faith litigation tactics, including delay, false testimony, refusal to comply with discovery and court orders, and filing fraudulent motions, including 11 motions that

were found sanctionable. *See id*. at 6-10 (¶¶ 37-54). As a result of the protracted litigation and difficulty enforcing its judgment, Universitas claims it has spent more than $10 million in attorneys' fees and legal costs seeking to locate assets and enforce its largely-unfulfilled judgment. *Id*. at 29, 32 (¶¶ 166, 183).

In March 2020, Universitas filed letter motions before Judge Swain seeking entry of judgment against Moonstone, BASI, and Molly Carpenter on alter ego theories. Judge Swain denied the motions as procedurally improper but "without prejudice to formal motion practice." Doc. #96-1 at 2; No. 1:11-cv-01590-LTS-HBP Doc. #661.

In May 2020, Universitas filed this action alleging six counts against the defendants and seeking money damages and attorneys' fees. The First Count is for alter ego liability against all defendants for the outstanding judgments against Daniel Carpenter and Nova Group. Doc. #1 at 30-31 (¶¶ 172-80). The Second Count is for liability for attorney's fees against all defendants because Universitas was the prevailing party in all prior actions, and the underlying COT document provides that the non-prevailing party shall pay all the prevailing party's costs, including attorneys' fees. *Id*. at 31-32 (¶¶ 181-86). The Third Count is for a constructive trust against Moonstone, Molly Carpenter, and the Defendant Trusts because the Spencer life insurance proceeds were fraudulently transferred to the Defendant Trusts and were used to purchase the Moonstone property. *Id*. at 32-33 (¶¶ 187-93). The Fourth Count is for constructive trust against the Defendant Trusts because Daniel Carpenter is their sole grantor and trustee, has complete control over the trusts, and has used their assets for his personal benefit. *Id*. at 33-34 (¶¶ 194-97). The Fifth Count is for constructive trust against GMP, which is allegedly controlled by Daniel Carpenter and "holds title to Carpenter Financial Group assets in order to shield such assets from Daniel Carpenter's creditors." *Id*. at 34 (¶¶ 198-202). The Sixth Count is for

constructive trust against Moonstone because Daniel Carpenter controls Moonstone, and placed property in Moonstone to avoid paying creditors. *Id*. at 34-35 (¶¶ 203-06).

The defendants have filed four motions to dismiss. Molly Carpenter, Trudeau, BASI, TPG, and Moonstone (the "Benistar Defendants") move to dismiss the claims brought against them under Rule 12(b)(6) on the ground that these claims are barred by the doctrine of *res judicata*. Doc. #68. GMP moves to dismiss the claims brought against it for failure to state a claim under Rule 12(b)(6). Doc. #72. The Defendant Trusts have filed two motions to dismiss arguing that Universitas failed to properly serve process under Rule 12(b)(5), that the Court lacks subject matter and personal jurisdiction under Rules 12(b)(1) and 12(b)(2), and that Universitas fails to state a claim upon which relief can be granted under Rule 12(b)(6). Doc. #74; Doc. #87. Universitas filed oppositions to each of these motions. Doc. #85, Docs. #90-92. I heard oral argument on October 20, 2020, and this ruling now follows.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless it recites enough non-conclusory facts to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). The Court may also consider any documents attached as exhibits to, incorporated by reference in, or integral to the complaint, *see Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018), as well as certain public documents of which it can take judicial notice, including court filings, *see Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).[1]

---

[1] This ruling references prior litigation involving parties to this action or related parties, which I may properly refer to both because the complaint heavily relies on the rulings in the prior litigation and because "[i]n considering a

The defendants have each moved to dismiss in four separate motions. Some of the defendants' claims overlap, while others are unique to particular defendants. I will first address the arguments for dismissal that are common to the defendants, and then will address the independent arguments for dismissal offered by each defendant.

### Attorneys' fees claim against all defendants

To start, Universitas's Second Count is for attorneys' fees against all defendants, and all defendants argue that the Second Count should be dismissed because there is no independent cause of action for attorneys' fees. *See* Doc. #69 at 17 n.2; Doc. #73 at 16; Doc. #74-1 at 17-18. As the arguments are consistent across defendants, I will address them together.

Under "the bedrock principle known as the American Rule, each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370 (2019) (cleaned up). Connecticut adheres to the American rule. *See Rizzo Pool Co. v. Del Grosso*, 240 Conn. 58, 72-73 (1997). Because there is a baseline presumption that each party bears its own fees, "[t]here is no independent cause of action for attorneys fees in Connecticut." *UOP v. Andersen Consulting*, 1997 WL 219820, at *7 (Conn. Super. Ct. 1997).

Universitas does not identify any contract or statutory provision that would allow it to recover attorneys' fees. Instead, it argues that "[c]laimants are permitted to bring a separate action for reimbursement of attorneys' fees subsequent to the judgment in the action where the attorneys' fees were incurred." Doc. #91 at 36. But the cases Universitas cites do not support its

---

motion to dismiss, a court is permitted to take judicial notice of public records, which includes complaints and other documents filed in federal court." *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015). To the extent I rely on filings other than rulings in prior cases, I do so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

contention that a demand for payment of attorneys' fees is a separate cause of action. Rather, they stand for the uncontroversial proposition that attorneys' fees are recoverable if they are expressly provided for in an underlying contract or statutory provision and are included in the prayer of relief for a claim based on a different underlying cause of action.[2]

Universitas also asserts that the COT document provides for recovery of attorneys' fees, and that the trust document represents a contract. Doc. #91 at 36-37. Universitas invokes Judge Swain's prior holding that the attorneys' fees provision of the trust document is enforceable. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 WL 5020575, at *1 (S.D.N.Y. 2014). But none of the defendants in this action were a direct party to that trust document, and in any event Universitas has not brought an action here on that contract.

Because Universitas has failed to show that Connecticut law allows a standalone claim for attorneys' fees, I will dismiss the Second Count of Universitas's complaint against all defendants for failure to state a claim upon which relief can be granted. This ruling is without prejudice to Universitas's seeking attorneys' fees if it is ultimately successful on a different cause of action and if attorneys' fees are warranted on the basis of the COT document or a separate statutory or contractual provision.

---

[2] In *Psomas v. DeRaffele Mfg. Co., Inc.*, 1998 WL 7065 (Conn. Super. Ct. 1998), the case Universitas relies most heavily on, attorneys' fees were part of the prayer for relief, not the underlying claim, and the Superior Court granted the defendant's motion to strike the attorneys' fees from the complaint because the plaintiff could not "show that he is statutorily or contractually entitled to attorneys fees under the first count of the complaint." *Id.* at *2. In *Cumberland Farms, Inc. v. Lexico Enterprises, Inc.*, 2012 WL 526716 (E.D.N.Y. 2012), the plaintiff sued for breach of a lease provision that included a clause requiring that the other party reimburse all reasonable costs including attorneys' fees spent enforcing rights and remedies under the lease. *Id.* at *3. The attorneys' fees were part of the prayer for relief, not the underlying cause of action. In *J.H. v. Nevada City Sch. Dist.*, 2015 WL 1021424 (E.D. Cal. 2015), the plaintiffs sought attorneys' fees pursuant to their statutory right under the Individuals with Disabilities Education Act for prevailing parties in compliance proceedings. *Id.* at *4. In *Synergics Energy Services v. Algonquin Power Fund*, 2014 WL 2812230 (D. Md. 2014), the underlying cause of action was a breach of purchase agreement that "expressly provides for the recovery of attorneys' fees under certain circumstances," and the plaintiff sought attorneys' fees as part of the prayer for relief. *Id.* at *24. And in *Pirrotti v. Respironics, Inc.*, 2011 WL 3902763 (D. Conn. 2011), the plaintiff sought attorneys' fees as part of punitive damages in an action alleging actual and constructive fraud. *Id.* at *5.

### Constructive trust causes of action

The defendants move to dismiss the "constructive trust" counts, arguing that "constructive trust" is a remedy, not a legally cognizable cause of action. Doc. #69 at 13 (Benistar Defendants addressing the Third and Sixth Counts); Doc. #73 at 14-15 (GMP addressing the Fifth Count); Doc. #74-1 at 14-15 (Defendant Trusts addressing the Third and Fourth Counts).

Under Connecticut law, "a constructive trust is a remedy, not an independent substantive cause of action." *Coan v. Dunne*, 2019 WL 1976146, at *5 (D. Conn. 2019) (citation omitted); *see also Carney v. Lopez*, 933 F. Supp. 2d 365, 384 (D. Conn. 2013) (dismissing claim for constructive trust and converting it to a request for a remedy); *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 623 n.3 (2002) (constructive trust counts "request remedies" "rather than being substantive causes of action upon which the complaint is predicated").

To be sure, there is indeed "no clear appellate decision regarding whether a constructive trust can be an independent cause of action, and there is a split among the decisions of the Superior Court." *Reed v. McCready*, 2014 WL 2854001, at *6 (Conn. Super. Ct. 2014) (collecting cases). But I find the reasoning in *Reed* persuasive that "unjust enrichment or fraud provide the legal theory that grants the plaintiff a right to a constructive trust." *Id*. at *7. This is in line with the Connecticut Supreme and Appellate Courts' consistent characterization of constructive trust as an equitable "remedy." *See, e.g.*, *Gold v. Rowland*, 296 Conn. 186, 211 n.22 (2010) ("The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment") (internal quotations omitted); *Cadle Co. v. Gabel*, 69 Conn. App. 279, 293 (2002) ("[W]e are convinced that the court, after a trial on the merits, could find that the defendants here similarly were unjustly enriched and that a constructive trust is an

appropriate remedy"); *Gulack v. Gulack*, 30 Conn. App. 305, 311 (1993) ("[a] constructive trust is an equitable remedy imposed to prevent unjust enrichment").

Accordingly, I conclude that constructive trust is not a substantive independent cause of action, and I will dismiss the Third, Fourth, Fifth, and Sixth Counts of Universitas's complaint for failure to state a claim upon which relief can be granted. The dismissal of these claims is without prejudice to consideration of whether constructive trust would be an appropriate *remedy* if Universitas is successful in establishing liability through a different cause of action. *See Carney*, 933 F. Supp. 2d at 384.[3]

### Alter ego liability

GMP moves to dismiss Universitas's claim in the First Count for alter ego liability. GMP argues that this count—which seeks to hold GMP liable for a judgment against Daniel Carpenter—seeks "reverse veil piercing" liability for which no cause of action is recognized under Delaware or Connecticut law. Doc. #73 at 11-16.

Unlike a traditional alter ego or veil piercing claim, in which a claimant seeks to hold shareholders liable for a corporation's debts, a claim for reverse veil piercing involves a claimant who seeks to hold a company responsible for a company owner or official's debt, and a claim for "outsider" reverse veil piercing "applies when an outside third party, frequently a creditor, urges a court to render a company liable in a judgment against its member." *Sky Cable, LLC v.*

---

[3] Universitas also notes that "[s]ome courts have converted a constructive trust claim into an unjust enrichment claim seeking the remedy of a constructive trust," and that its arguments would apply to an unjust enrichment claim as well. Doc. #85 at 27 n.12; *see Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 383 (D. Conn. 2007) (converting a constructive trust claim to an unjust enrichment claim after "a review of the allegations in the Fifth Count makes it clear that the plaintiff is claiming that Amy Shelton has been unjustly enriched to its detriment and seeks, as a remedy, the imposition of a constructive trust against her"). I decline to convert Universitas's causes of action to an unjust enrichment claim because Universitas maintains that it has brought a constructive trust cause of action and because such a claim may raise considerations that would benefit from briefing instead of my making a unilateral conversion. This determination is without prejudice to Universitas's seeking leave in an appropriate manner to amend its complaint to add an unjust enrichment cause of action.

*DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018). "Just as traditional veil piercing permits a court to hold a member liable for a company's actions, reverse veil piercing permits a court to hold a company liable for a member's actions if recognizing the corporate form would cause fraud or similar injustice." *Id.* at 387.

As the Connecticut Supreme Court has held, "when a limited liability company is incorporated in another state, our statutes mandate application of the laws of that foreign state." *Weber v. U.S. Sterling Sec., Inc.*, 282 Conn. 722, 730 (2007); *see also Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders").[4] Therefore, because GMP is incorporated in Delaware, I must apply Delaware law to decide if it may be subject to an alter ego claim for reverse veil piercing liability.

As several federal courts have noted, "Delaware courts have not addressed whether reverse veil piercing is permitted under Delaware law." *In re Extended Stay, Inc.*, 2020 Bankr. LEXIS 2128, at *118-19 (Bankr. S.D.N.Y. 2020). "Where state law is unsettled, we are obligated to carefully predict how the state's highest court would resolve the uncertainty or ambiguity. Absent a clear directive from a state's highest court, federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (cleaned up).

The Second Circuit has not ruled on how it expects the Delaware Supreme Court would rule on reverse veil piercing, but most courts examining the issue have concluded that Delaware courts would allow an appropriate reverse veil piercing cause of action to proceed. The Fourth

---

[4] Connecticut law now prohibits reverse veil piercing liability, but only for a "domestic entity." Conn. Gen. Stat. § 33-673c. Additionally, the Connecticut Supreme Court has held that the prohibition on reverse veil piercing only applies prospectively after its enactment in June 2019. *McKay v. Longman*, 332 Conn. 394, 432 & n.27 (2019).

Circuit, examining recent cases and the principles underlying veil piercing, "conclude[d] that Delaware would recognize outsider reverse piercing of an LLC's veil when the LLC is the alter ego of its sole member." *Sky Cable*, 886 F.3d at 388. The Fourth Circuit recognized that two of Delaware's lower courts have "signaled some willingness to apply a theory of reverse veil piercing." *Id.* at 387. In one case, "the Court of Chancery of Delaware noted that 'where [a] subsidiary is a mere alter ego of the parent to the extent that the Court may engage in reverse veil piercing, the Court may treat the assets of the subsidiary as those of the parent' for certain purposes." *Id.* at 387-88 (quoting *Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, 2016 WL 769586, at *3 (Del. Ch. 2016)). In addition, the Fourth Circuit noted another case in which "the Delaware Chancery Court observed that a claim of traditional veil piercing 'might have prevailed' had it been presented properly as a claim of reverse veil piercing." *Id.* at 388 (citing *Cancan Development, LLC v. Manno*, 2015 WL 3400789, at *22 (Del. Ch. 2015)). The Fourth Circuit also emphasized statements by Delaware courts about the state's strong interest in "preventing the entities that it charters from being used as vehicles for fraud" and from using the corporate form "as a shield to hinder creditors from collecting on adjudicated claims." *Id.* at 387 (citations omitted).

Similarly, a Southern District of New York Bankruptcy Court recently conducted an extensive analysis of Delaware law and reached the same conclusion, noting that "[n]one of the courts in the Delaware Veil Piercing Cases balked at applying the doctrine of reverse veil piercing, and the *Cancan Development, LLC* court indicated that it might have done so if the claim had been properly presented and supported." *In re Extended Stay*, 2020 Bankr. LEXIS 2128, at *131.

GMP cites *In re ALT Hotel, LLC*, 479 B.R. 781 (Bankr. N.D. Ill. 2012), a case in which the Northern District of Illinois Bankruptcy Court concluded it was "doubtful" Delaware courts would recognize a reverse veil piercing claim. *Id.* at 802. That court held "it would be inappropriate for this court, an Illinois bankruptcy court, to find that Delaware would recognize inside reverse piercing, moving Delaware law in a direction that Delaware's own courts have not yet gone." *Id.* at 803. But that case involved an insider reverse veil piercing claim, not an outsider claim like Universitas brings here. *See Boeing Co. v. KB Yuzhnoye*, 2016 WL 2851297, at *31 (C.D. Cal. 2016) (stating *ALT Hotel's* "rationale is inapplicable here because the facts before this Court do not reflect 'insider reverse veil piercing'"). *ALT Hotel* also predates the cases in Delaware's lower courts that the Fourth Circuit and Southern District of New York Bankruptcy Court relied on in concluding that Delaware's Supreme Court would likely permit a reverse veil piercing claim.

GMP also notes that the *Extended Stay* court ultimately found the plaintiff had not alleged facts sufficient to sustain a reverse veil piercing claim. Doc. #97 at 6. But GMP does not grapple with the *Extended Stay* court's holding that a reverse veil piercing cause of action is likely to be available under Delaware law, nor does it address the Fourth Circuit's decision in *Sky Cable*. I conclude that Universitas has a stronger argument, and for the purpose of this motion to dismiss, I predict that Delaware's Supreme Court would find that a reverse veil piercing cause of action is available under Delaware law.

Next, I consider whether Universitas has pleaded sufficient facts to state a claim for reverse veil piercing. The parties dispute whether the heightened pleading standard under Federal Rule of Civil Procedure 9(b) for claims based on fraud applies to this action. GMP argues that Universitas must meet the Rule 9(b) standard for particularity because its claim is based on

allegations of fraud, and therefore it must specify the circumstances of the fraud and the defendant's mental state. Doc. #73 at 12-13. Universitas counters that the Rule 8(a) pleading standard applies because its veil piercing claim is not alleging fraud by GMP, but instead is seeking to enforce a judgment against GMP that was entered against its alter ego. Doc. #91 at 16.

Both parties look to *In re Currency Conversion Fee Antitrust Litigation*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003), which held "the heightened pleading standard does not apply" if "veil-piercing can be established without proving any element of fraud," such as through an alter ego claim in which "the parent exercised complete domination of the subsidiary and that domination was used to commit a fraud or wrong." *Id.* at 426. And in *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974), the Second Circuit noted "Rule 9(b)'s requirement that averments of fraud be stated with particularity is inapplicable here since [plaintiff] did not proceed on the theory that Vesco & Co., itself, committed fraud, but rather that Vesco perpetrated the securities violations and then sought to shield his assets from the reach of his victim by transferring them to Vesco & Co." *Id.* at 1351 n.23 (internal quotation omitted). Because Universitas's claim is likewise based on Daniel Carpenter and his other entities' alleged fraud, not GMP's fraud, and because Universitas alleges GMP is a sham entity or alter ego of Carpenter, Universitas need not plead its claim with particularity.

Courts that recognize reverse veil piercing causes of action typically evaluate those claims using the same approach that is applied to traditional veil piercing or alter ego claims. *See, e.g., Sky Cable*, 886 F.3d at 386, 389 (noting "outsider reverse piercing follows logically the premises of traditional veil piercing" and applying Delaware's traditional test for evaluating an alter ego claim) (citation omitted); *Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R.

293, 321 (Bankr. S.D.N.Y. 1999) ("Courts that pierce the corporate veil in reverse are guided by the rules that govern straight veil piercing").

Under Delaware law, a plaintiff seeking to disregard the corporate form faces "a difficult task." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (citation omitted). The plaintiff bringing an alter ego claim "must show *both* that (1) the owner and his corporation operated as a single economic entity, and that (2) the owner's actions contained an overall element of injustice or unfairness." *Cohen v. Schroeder*, 724 F. App'x 45, 47 (2d Cir. 2018) (cleaned up).

As the Second Circuit has explained, "some combination" of the following factors are used to prove the "single economic entity" prong:

> [W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*NetJets*, 537 F.3d at 177 (cleaned up). Plaintiffs also "may survive a motion to dismiss by pleading other relevant allegations regarding the parent's complete domination." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 403 (S.D.N.Y. 2013).

Although GMP argues that plaintiff has not alleged enough facts to show complete domination, Universitas has plausibly alleged several of these factors. In particular, it has alleged that GMP is part of an overall economic enterprise that exists to benefit Daniel Carpenter and his associates through a web of companies. *See* Doc. #91 at 25. Several courts have found Carpenter and his companies consistently disregard corporate formalities, such as sharing office space, management, computers, and employees. Doc. #1 at 14 (¶¶ 71-72). Judge Chatigny found "the formal corporate structure of the various Benistar Entities had little meaning for the people

17

involved." *Ibid.* (¶ 72) (citing *Carpenter*, 190 F. Supp. 3d at 274). Judge Swain found many of

Daniel Carpenter's companies to be wholly-owned corporate "shells," including Caroline

Financial Group. *Universitas*, 2013 WL 6123104, at *5. Caroline Financial Group is one of the

two owners of GMP. Doc. #1 at 21 (¶¶ 113-14). Judge Swain entered a judgment of more than

$11 million against GMP's other owner, Carpenter Financial Group, after finding that it was

controlled by Daniel Carpenter and that he used it to fraudulently convey the Spencer life

insurance proceeds. *See Universitas*, 2014 WL 3883371, at *3, 13.

      The following findings by Judge Swain about Daniel Carpenter's overall economic

enterprise are particularly instructive:

> The evidence demonstrates that Mr. Carpenter not only controlled Grist Mill, but
> also Nova, the Charter Oak Trust, the GM Trust, Phoenix, GM Holdings, and
> Moonstone, all out of his office at 100 Grist Mill Road. The Court finds that Mr.
> Carpenter controlled all of the relevant entities that received money from the
> Charter Oak Trust account. It is highly probative that each of these entities shared
> the office at 100 Grist Mill Road, from which Mr. Carpenter admits to having
> established and controlled hundreds of entities, including each of those involved
> in this transaction. … Moreover, time and again, Mr. Carpenter's name appears
> on the filings of the various entities in capacities indicating positions of
> responsibility. Despite his self-serving denials, the Court finds that these
> transactions, including the initial transactions removing $10.8 million of the Life
> Insurance Proceeds from the Charter Oak Trust to the Grist Mill account, were
> phases of a transaction among related entities, each of which Mr. Carpenter
> controlled.

*Universitas*, 2013 WL 6123104, at *9.

      GMP does not dispute that the single asset it owns is 100 Grist Mill Road, which was the

office for Daniel Carpenter's companies through 2014. Doc. #97 at 9.  In addition, the loan that

GMP offers into evidence for the purchase of the 100 Grist Mill Road property is signed on

GMP's behalf by Daniel Carpenter, identified as "Chairman" of GMP's "Managing Member,"

Caroline Financial Group. *Id.* at 67. Daniel Carpenter's continued complete ownership of this

company and the ability of him and his companies to continue to pay significant legal fees

despite Carpenter, Carpenter Financial Group, and other judgment debtors' purported insolvency also supports an inference that GMP's profits support Carpenter personally. Altogether, these facts plausibly suggest that GMP "functioned as a facade for the dominant shareholder" and that GMP is squarely part of Daniel Carpenter's web of companies that are a "single economic entity."

Universitas has also plausibly alleged facts related to the "injustice or unfairness" prong, for which "there must be an abuse of the corporate form to effect a fraud or an injustice—some sort of elaborate shell game." *Nat'l Gear & Piston*, 975 F. Supp. 2d at 406 (quoting *In re Sunbeam Corp.*, 284 B.R. 355, 366 (Bankr. S.D.N.Y. 2002)). As described above, Universitas has pleaded facts that plausibly suggest GMP is part of Daniel Carpenter's web of shell companies. Universitas has alleged that the corporate structure of Daniel Carpenter's companies is designed to frustrate judgment creditors, and that GMP is a sham entity in that structure. Doc. #1 at 16, 21 (¶¶ 79, 112). As part of that claim, Universitas asserts that Daniel Carpenter granted GMP title to assets with the intent to shield his personal assets from his creditors. *Id.* at 21, 34 (¶¶ 112, 200).

GMP argues that it could not have been a sham entity for Daniel Carpenter's activities because it "was created prior to the death of Mr. Spencer," which is the source of Universitas's claims. Doc. #97 at 10. But "the plaintiff need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used." *NetJets*, 537 F.3d at 177. Universitas has plausibly alleged injustice through Daniel Carpenter's use of shell companies including GMP to prevent Universitas from receiving tens of millions of dollars of the judgment it is owed.

Finally, it is worth noting that "piercing an entity's veil under the alter ego theory is particularly appropriate when a single individual or entity completely dominates and controls another entity." *Sky Cable*, 886 F.3d at 390. That is precisely the circumstance Universitas alleges in this case because Universitas alleges that GMP is wholly owned and controlled by two entities—Carpenter Financial Group and Caroline Financial Group—that are in turn owned by Daniel Carpenter. As noted above, Daniel Carpenter and Carpenter Financial Group are judgment debtors who owe Universitas millions of dollars. Because there are no other shareholders, no other parties would be affected if Universitas is able to pierce GMP's corporate veil.

Accordingly, I will deny GMP's motion to dismiss the First Count of Universitas's complaint. Universitas has alleged enough facts to state a plausible claim for alter ego liability against GMP.

### Res judicata *as to claims against Benistar Defendants*

The Benistar Defendants argue that *res judicata* bars Universitas's claims because Universitas could have asserted them in the prior turnover proceedings before Judge Swain. "A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014).

As an initial matter, I must determine what standard for *res judicata* applies. "Because the federal court that issued the first judgment sat in diversity in New York, [I must] apply the preclusion law of that state, unless 'the state law is incompatible with federal interests.'" *Howard Carr Companies, Inc. v. Cumberland Farms, Inc.*, 833 F. App'x 922, 923 (2d Cir. 2021) (quoting

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 509 (2001)); *see also NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 143 (S.D.N.Y. 2003) ("[W]hen a federal court sitting in diversity applies state substantive law as the rule of decision in a case, the preclusive effect of any decision by the federal court in that case is to be determined by the state preclusion law of the state in which the district court sits") (citing *Semtek Int'l Inc.*, 531 U.S. at 508-09). Therefore, because the Benistar Defendants seek to invoke *res judicata* based on litigation before a federal court sitting in diversity in the Southern District of New York, I must apply New York law regarding *res judicata*.

Under New York law, "*res judicata*, or claim preclusion, bars successive litigation based upon the same transaction or series of connected transactions … if (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008) (cleaned up). "The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." *In re Hunter*, 4 N.Y.3d 260, 269 (2005). "[U]nder New York's transactional analysis approach to *res judicata*, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Ibid.* (internal quotation omitted).

Whether a "factual grouping constitutes a transaction or series of transactions depends on how the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192–93 (1981) (cleaned up). *Res judicata* applies if the prior action was "grounded on the same gravamen of the wrong

upon which the action is brought." *Id*. at 192 (citation omitted). New York's "approach to *res judicata* is arguably broader than the principles adopted by the federal courts." *Ins. Co. of State of Pennsylvania v. HSBC Bank USA*, 10 N.Y.3d 32, 38 n.3 (2008).

The Benistar Defendants argue that *res judicata* bars Universitas from asserting the alter ego claim in this action because it could have been brought in the 2014 turnover proceeding. First, they argue the 2014 turnover proceeding against Daniel Carpenter and his "affiliated entities" reached a final adjudication on the merits, which it plainly did. Doc. #69 at 14; *see Universitas*, 2014 WL 3883371, at *13. Universitas does not contest that the prior litigation reached a final judgment. Indeed, Universitas now seeks to enforce that final judgment against these defendants.

Next, the Benistar Defendants argue that even though they were not named defendants in the prior action, they were in privity with a party to that action to the extent Universitas asserts they are Daniel Carpenter's alter egos. Doc. #69 at 15-16. Universitas does not contest this argument, either, and there is a sound basis for it. Privity exists because, as the Second Circuit has explained, "if the plaintiffs in this case can prove the defendants are in fact the *alter ego*" of a defendant in a prior case, "the previous judgment is then being enforced against entities who were, in essence, parties to the underlying dispute; the *alter egos* are treated as one entity." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991); *see also Wells Fargo Bank, N.A. v. Konover*, 2011 WL 1225986, at *29 (D. Conn. 2011), *aff'd*, 630 F. App'x 46 (2d Cir. 2015) (same). Applying that logic here, if the Benistar Defendants are indeed alter egos of Carpenter, then it follows that they were in privity with a party in the underlying action for the purpose of *res judicata*.

Finally, the Benistar Defendants argue that Universitas could have brought its alter ego claims in its prior turnover proceeding under Federal Rule of Civil Procedure 69 and CPLR § 5225(b), which allows veil piercing claims and enforcement against third parties. Doc. #69 at 16. Universitas responds that Judge Swain held it could not bring alter ego claims in that prior proceeding because such claims were outside the scope of the district court's ancillary enforcement jurisdiction. Doc. #90 at 12-15.

Universitas's argument falters in two ways. First, Judge Swain never expressly held that she did not have jurisdiction over alter ego claims. Rather, Judge Swain ruled she did not have ancillary jurisdiction—and would decline to exercise it if she did—over disputes related to the rights that one judgment debtor, Grist Mill Trust, had in various insurance policies. *See Universitas*, 2015 WL 57097, at *3-4. Specifically, Judge Swain explained that "the instant motions and applications for the turnover of insurance proceeds, protective orders, sanctions, and transfers of policies are premised on the assertion of rights based on trust agreements, insurance policies, and other contracts that were not involved in the underlying arbitration and original judgment enforcement proceedings, nor implicated in the subsequent fraudulence conveyance proceedings." *Id*. at *3. The asserted new theories for recovery were "wholly separate from the theories upon which judgments were entered previously," and "it appear[ed] that other beneficiaries, insurance companies, and policy premium payors who [were] not involved in these proceedings may have interests in or concerning the policies at issue here." *Ibid*. As a result, Judge Swain held "[s]uch attenuated proceedings are well beyond the scope of the [court's] ancillary jurisdiction" as defined by the Supreme Court in *Peacock v. Thomas*, 516 U.S. 349 (1996) and by the Second Circuit in *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100 (2d

Cir. 2001). *Ibid*. Judge Swain's ruling did not state that she lacked jurisdiction over an alter ego or veil piercing claim against the five Benistar Defendants.

Later, when Universitas filed letter motions requesting entry of judgment against Moonstone, BASI, and Molly Carpenter on alter ego theories in March 2020, Judge Swain denied them by docket order without prejudice because they were procedurally improper. *See* Doc. #96-1 at 2. That order noted that any formal motion must address the jurisdictional basis for the new claims in light of her prior order, but it did not hold that the court lacked jurisdiction over the claims. *Ibid*.

Second, Universitas focuses only on Judge Swain's jurisdictional analysis in the 2015 turnover proceeding and the March 2020 docket order. But there were three turnover proceedings before Judge Swain, and the Benistar Defendants argue that *res judicata* applies because of the prior turnover proceeding that found Daniel Carpenter and seven other respondents fraudulently conveyed the Spencer life insurance proceeds and that resulted in the entry of money judgments against them in August 2014. *See* Doc. #69 at 14-17; *Universitas*, 2014 WL 3883371. Therefore, I will evaluate whether Universitas could have brought its alter ego claims against the Benistar Defendants in the 2014 turnover proceeding that Universitas brought pursuant to CPLR § 5225(b) in order to determine whether *res judicata* bars its claims in the action now before me.

As a general matter, it is "well settled that this statute [CPLR § 5225(b)] may be used to pierce the corporate veil or assert alter ego liability." *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 123 (E.D.N.Y. 2010). Turnover petitioners regularly bring alter ego or veil piercing claims against respondents as part of a special proceeding pursuant to CPLR § 5225(b) to set aside the fraudulent conveyance of assets. *See WBP Cent. Assocs., LLC v. DeCola*, 50 A.D.3d 693, 694 (2d Dep't 2008) (collecting cases). And "a § 5225(b) special proceeding is not

as a matter of law immune from … preclusion doctrines when previously unasserted veil piercing or agency issues are raised in another action." *Theatre Row Phase II Assocs. v. H & I Inc.*, 443 B.R. 592, 596 (S.D.N.Y. 2011) (emphasis omitted).

To be sure, "*res judicata* is inapplicable where the plaintiff 'was unable to … seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain … multiple remedies or forms of relief in a single action, and the plaintiff desires … in the second action to seek that remedy or form of relief.'" *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999) (quoting Restatement (Second) of Judgments § 26[1][c])). "The Second Circuit has drawn a distinction between 'post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability,' and fraudulent conveyance claims where the court may pursue assets of the judgment debtor in the hands of third-party under the court's ancillary enforcement jurisdiction." *First Horizon Bank v. Moriarty-Gentile*, 2015 WL 8490982, at *4 (E.D.N.Y. 2015) (quoting *Epperson*, 242 F.3d at 106). "[T]he court may not simply exercise ancillary enforcement jurisdiction … and must make a separate determination of whether it has jurisdiction" over alter ego claims. *Ibid.*; *see also Teamsters Local 456 v. CRL Transportation, Inc.*, 2020 WL 3619048, at *7 n.5 (S.D.N.Y. 2020) (collecting cases). As a result, the court in the prior litigation must have had a separate basis for federal subject matter jurisdiction over the alter ego claims as well as personal jurisdiction over the alleged alter egos in order for *res judicata* to preclude alter ego claims in this action.

Here, it is clear that Judge Swain would have had subject matter jurisdiction over the alter ego claims in the 2014 proceeding for the same reasons that this Court has subject matter

jurisdiction over the instant claims. Federal courts have "diversity" jurisdiction over claims that arise under state law if the parties are citizens of different States and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. The amount in controversy for the alter ego claims far exceeds $75,000. Universitas is a citizen of New York, while the five Benistar Defendants are each citizens of Connecticut. Doc. #1 at 1-3 (¶¶ 1-3, 5, 11, 12). There is no reason to believe that any party's citizenship has changed between the commencement of the 2014 turnover proceeding and the filing of this current action.

As to personal jurisdiction, "in general, 'alter egos are treated as one entity' for jurisdictional purposes." *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (quoting *Wm. Passalacqua Builders, Inc*., 933 F.2d at 142-43). Additionally, the reasoning in Judge Swain's ruling suggests that Judge Swain would have found that the Southern District of New York had personal jurisdiction over the Benistar Defendants even though they are Connecticut citizens. Seven of the turnover respondents in the 2014 proceeding argued that the Southern District of New York did "not have personal jurisdiction over them because they are not New York domiciliaries and the New York long-arm statute is insufficient to render them subject to the Court's specific jurisdiction or, alternatively, that such exercise of jurisdiction would violate their Due Process rights." *Universitas*, 2014 WL 3883371, at *5.

Judge Swain rejected this argument, determining that the court had "personal jurisdiction over the Turnover Respondents pursuant to C.P.L.R. section 302(a)(3), and this exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the Constitution." *Id*. at *7. Judge Swain held the court had personal jurisdiction over the turnover respondents principally on the ground that they "should have reasonably expected their actions to create an injury in New York" because the actions were "designed fraudulently to render the

prospective New York judgment unrecoverable, despite the fact that the actions may have been performed in Connecticut." *Id*. at *6.

Universitas relies on these fraudulent transfers as a core reason why the Benistar Defendants are Daniel Carpenter and the other judgment debtors' alter egos. For example, Universitas argues "[a]t all relevant times, Defendants and Judgment Debtors … operated as a single economic entity that worked to criminally misappropriate Universitas' money, defraud Universitas, and conceal the stolen funds," and "Defendants' aforesaid control and acts were used to commit the aforesaid dishonest, criminal, fraudulent and unjust acts, which proximately caused damages to Universitas and for which the Southern District of New York issued the Judgment against the Judgment Debtors." Doc. #1 at 31 (¶¶ 177, 179).

Accordingly, the court in the prior turnover proceeding would have had personal jurisdiction over the Benistar Defendants for alter ego claims for substantially the same reasons it had personal jurisdiction over the related respondents in that prior proceeding. *See Universitas*, 2014 WL 3883371, at *5-7. There was no jurisdictional bar preventing Universitas from bringing its alter ego claims against the Benistar Defendants in that proceeding.

It is also evident from the pleadings that the alter ego claims against the Benistar Defendants arise from the same "transaction or series of transactions," and that they would have formed a "convenient trial unit." Like the reverse veil piercing claims against GMP discussed above, Universitas's alter ego claims against the Benistar Defendants rely heavily on factual allegations drawn from the turnover proceedings before Judge Swain and from even earlier litigation involving Daniel Carpenter and his entities.

Indeed, there are no factual allegations related to Universitas's alter ego claim that appear to be related to a different series of transactions or to events that took place subsequent to the

27

August 2014 judgment in the prior turnover proceeding. Nor are there allegations suggesting that the existence of these five alleged alter egos was only discovered after Universitas filed the turnover motion that led to the August 2014 judgment. To the contrary, Donald Trudeau, as president of BASI, was subpoenaed prior to the filing of the turnover proceedings. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *4 (S.D.N.Y. 2013) (denying Trudeau's motion to quash his subpoena). BASI and TPG were also discussed as related entities in 2010 as part of the underlying arbitration proceeding between Universitas and Nova Group. *See, e.g.*, No. 1:11-cv-01590-LTS-HBP Doc. #87-22 at 92. Additionally, Daniel Carpenter, Molly Carpenter, and Moonstone appeared in the 2013 turnover proceeding before Judge Swain. *See Universitas*, 2013 WL 6123104, at *1. Judge Swain found that Moonstone was Daniel Carpenter's "shell" company, as were others of the hundreds of companies that Daniel Carpenter founded and controlled from the same address. *Id*. at *2, 5.

It is appropriate to apply *res judicata* in these circumstances because the facts underlying the alter ego claims were known to Universitas when it brought the earlier turnover motions before Judge Swain. *See Smith*, 54 N.Y.2d at 193–94 (applying *res judicata* because "[t]here was no late discovery" and "no newly discovered facts had come to the fore, [so the new claim] would have to be proved circumstantially out of the same skein of known facts underlying the initial suit. Put another way, this theory of recovery was as available to the plaintiff then as it is now.") (citation omitted); *UBS Sec. LLC v. Highland Capital Mgmt., L.P.*, 86 A.D.3d 469, 474 (1st Dep't 2011) ("to the extent the claims against [defendant] in the new complaint implicate events alleged to have taken place before the filing of the original complaint, *res judicata* applies.")

In addition, the gravamen of Universitas's allegations against the Benistar Defendants relates to the fraudulent conveyance of the Spencer life insurance proceeds and Daniel Carpenter's use of alter egos to prevent Universitas from enforcing its arbitration award. Universitas "engaged in wide-ranging discovery efforts in aid of the execution of the Judgment," and Judge Swain held a bench trial and an evidentiary hearing on the first and second turnover motions, respectively. *See Universitas*, 2013 WL 6123104, at *1-2; *Universitas*, 2014 WL 3883371 at *1. Judge Swain concluded that Daniel "Carpenter caused Nova, the Charter Oak Trust, and other affiliated entities, directly or indirectly, to transfer the Life Insurance Proceeds to which [Universitas] is entitled" and "Carpenter caused the Life Insurance Proceeds to be transferred to and through entities that he controlled, either directly or indirectly, including Moonstone, for the personal benefit of Mr. Carpenter and his affiliates." *Id.* at *7; *see also Universitas*, 2014 WL 3883371, at *10-11. In short, both actions appear to be "grounded on the same gravamen of the wrong." And given the factual overlap between the earlier turnover proceedings and the present alter ego claims, the claims would have formed a "convenient trial unit" before Judge Swain.

Other courts have applied *res judicata* in analogous circumstances involving CPLR § 5225(b) proceedings and alter ego claims. For example, in *Ren–Cris Litho, Inc. v. Vantage Graphics*, the district court dismissed a veil piercing claim on *res judicata* grounds when the plaintiff had previously brought a § 5225(b) turnover proceeding alleging fraudulent conveyance. The court determined that each action arose from the same facts, the plaintiff sought substantially the same relief in both actions, and there were no formal barriers to asserting the veil piercing claim in the turnover proceeding.[5] The Second Circuit affirmed in a summary order

---

[5] Because the district court did not publish a written opinion, the discussion of the case appearing in the text is taken from the Second Circuit's unpublished summary order of affirmance. *Ren–Cris Litho, Inc. v. Vantage Graphics*,

at 107 F.3d 4 (2d Cir. 1997) (table). Similarly, in *Theatre Row*, the district court affirmed a bankruptcy court holding that *res judicata* barred raising objections and defenses including veil piercing because those arguments could have been raised in a prior § 5225(b) proceeding involving the same transaction and parties. 443 B.R. at 598-601.

Universitas also argues that applying *res judicata* in this case would be inequitable. Doc. #90 at 17-20. I am mindful that this application of *res judicata* results in what may in some ways seem to be an inequitable result because it will make it more difficult for Universitas to enforce its judgment. But as the Supreme Court has explained, the "doctrine of *res judicata* serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981), *abrogated on other grounds by Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998); *see also Mohamad v. Rajoub*, 767 F. App'x 91, 93 (2d Cir. 2019) ("Plaintiffs' request that we decline to apply *res judicata* on equitable grounds is expressly foreclosed by well-established precedent").

In sum, I conclude that the application of *res judicata* is warranted to bar Universitas's alter ego claims against the Benistar Defendants under the unique circumstances presented in this action. Accordingly, I will grant the Benistar Defendants' motion to dismiss the First Count of Universitas's complaint based on the doctrine of *res judicata*.[6]

---

1997 WL 76860 (2d Cir. 1997) (unpublished). Pursuant to the Second Circuit's Rule 32.1.1, I do not accord that affirmance any precedential authority, and I have relied upon the Second Circuit's discussion only for a description of the facts and circumstances presented to the district court. *See Eckhaus v. Blauner*, 1997 WL 362166, at *5 & n.2 (S.D.N.Y. 1997) (citing *Ren–Cris Litho, Inc.* in the same manner).

[6] Although the Benistar Defendants' *res judicata* defense could arguably apply to each of the defendants in this action, the other defendants do not assert it in their motions, except for the Defendant Trusts in a procedurally improper way in their reply brief. Doc. #98 at 2-5. Nor is it clear whether there may be facts or other reasons why the Court's *res judicata* analysis as to the Benistar defendants should apply with equal force to other defendants.

**Defendant Trusts' first motion to dismiss**

In addition to the attorneys' fees and constructive trust claims addressed above, the Defendant Trusts move to dismiss on the grounds that Universitas failed to properly serve process, that the Court lacks subject matter and personal jurisdiction, and that Universitas fails to state a claim upon which relief can be granted. Doc. #74.

The Defendant Trusts argue that Universitas failed to properly serve them because Universitas's "failure to leave copies of the process at the abode of Daniel Carpenter, as the sole trustee of the Defendant Trusts renders ineffective any attempted abode service on the Defendant Trusts." Doc. #74-1 at 9. The Defendant Trusts' argument is incorrect for substantially the reasons outlined in Universitas's opposition. Doc. #85 at 12-15. The Defendant Trusts claim that their respective trustees—Daniel Carpenter, in each case—must be served personally under Connecticut General Statutes § 52-57. Doc. #74-1 at 7. But § 52-57 only applies to service upon "individuals, municipalities, corporations, partnerships and voluntary associations," not "trusts." Universitas alleges—and the Defendant Trusts do not contest—that the Defendant Trusts are each Delaware statutory trusts with their main office at 10 Tower Lane in Avon, Connecticut. Doc. #1 at 2-3 (¶¶ 6-10).

Accordingly, the Defendant Trusts are "foreign statutory trusts" operating in Connecticut. Under Connecticut law, "[a] foreign statutory trust, by transacting business in this state without a certificate of registration, appoints the Secretary of the State as its agent for service of process with respect to a cause of action arising out of the transaction of business in this state." Conn. Gen. Stat. § 34-539(c). Therefore, the Connecticut State Marshal's service of process on the

---

Therefore, I have no cause at this time to address the application of *res judicata* as to the claims against other defendants.

Defendant Trusts at the Connecticut Secretary of State's office is effective service of process under Fed. R. Civ. P. 4(h)(1)(A), *see* Doc. #25, and I will deny the Defendant Trusts' motion to dismiss under Rule 12(b)(5).[7]

Second, the Defendant Trusts argue that "depositing the summons and complaint with the Secretary of State's Office in Hartford is insufficient to establish personal jurisdiction over the Defendant Trusts." Doc. #74-1 at 9. The Defendant Trusts' threadbare argument appears to be based on the same theory for inadequate service of process described above; it does not advance any independent grounds for a lack of personal jurisdiction. Accordingly, I deny the Defendant Trusts' motion to dismiss on this basis for the same reasons discussed above.

Third, the Defendant Trusts argue that the court lacks subject matter jurisdiction for lack of complete diversity between the parties. Doc. #74-1 at 18-20. The Defendant Trusts claim that Daniel Carpenter, their sole trustee, is a resident of New York, where he was incarcerated when this action was filed, and that "he has been a long-term resident of Florida, and will return there upon termination of his sentence of incarceration. Prior to incarceration, he maintained a Florida driver's license, was registered to vote there, and has bank accounts and safety deposit boxes in Florida. For purposes of diversity jurisdiction, Mr. Carpenter is a resident of Florida." Doc. #74-1 at 20. The Defendant Trusts argue Universitas's two members, Sharon Siebert and Donna Vassar, are residents of New York and Florida. *Ibid.*

The Defendant Trusts' argument is meritless. As noted above, federal courts have "diversity" jurisdiction over claims that arise under state law if the parties are citizens of different States and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. "An

---

[7] Universitas also makes a strong showing that its service of process at 10 Tower Lane would be effective under Conn. Gen. Stat. § 34-508(c) if the Defendant Trusts were construed to be domestic trusts, and that the Defendant Trusts' sole trustee Daniel Carpenter had actual notice of the lawsuit in any event. Doc. #85 at 14-15.

individual's citizenship, within the meaning of the diversity statute, is determined by his domicile," which is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation omitted). A person can only have one domicile. *Ibid.* "It is well-established that a prisoner does not acquire a new domicile when he is incarcerated in a state different from his previous domicile. Instead, the prisoner retains his pre-incarceration domicile[,]" although this presumption is rebuttable. *Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251, 253 (E.D.N.Y. 2004).

Universitas provides numerous court opinions and sworn filings in other cases that make clear that Daniel Carpenter was a long-term citizen of Connecticut, not Florida, prior to his incarceration, and that he intends to return to Connecticut after incarceration. *See* Doc. #85 at 10-12. For example, in 2017, Daniel Carpenter filed a complaint in federal district court asserting he was a Connecticut resident. Doc. #85-8 at 1 (¶ 3). In 2020, Daniel Carpenter filed for compassionate release and made other filings requesting release or transfer to a facility in Connecticut to be near his "home," family, and doctors. Doc. #85 at 11; Doc. #85-10 at 7. Daniel Carpenter has also mailed letters to the Court during this litigation that are signed from a Connecticut address. *See* Doc. #101 at 6; Doc. #103 at 7; Doc. #104 at 5.

These records confirm that Daniel Carpenter was a Connecticut resident pre-incarceration, and that he has not established an intent to permanently remain in any other jurisdiction, so his domicile is Connecticut. It is disturbing that the Defendant Trusts have tried to make a factual claim about Daniel Carpenter's citizenship that their counsel should know is obviously untrue. Therefore, there is complete diversity between the parties, and the Defendant

Trusts do not contest that the amount in controversy exceeds $75,000.[8] Accordingly, this Court has subject matter jurisdiction for this action, and I will deny the Defendant Trusts' motion to dismiss under Rule 12(b)(1).

Fourth, the Defendant Trusts make a confusing argument that Universitas has failed to state a claim upon which relief can be granted. Doc. #74-1 at 11-14. Invoking *Peacock*, the Defendant Trusts appear to argue that there is no subject matter jurisdiction or ancillary jurisdiction for Universitas's veil piercing action. *Id*. at 12-14. That argument misreads *Peacock*, which held that proceedings to enforce a judgment against a person not otherwise liable for that judgment need an independent basis for federal jurisdiction, not that they are wholly foreclosed. *See* 516 U.S. at 355; *Epperson*, 242 F.3d at 106. And as I have just explained, Universitas has adequately established an independent basis for subject matter jurisdiction for this action.

Accordingly, I will deny the Defendant Trusts' motion to dismiss for failure to state a claim under Rule 12(b)(6). More generally, I will deny the Defendant Trusts' first motion to dismiss with regard to the First Count of Universitas's complaint.[9]

### Defendant Trusts' second motion to dismiss

Following Universitas's opposition to their first motion to dismiss, the Defendant Trusts filed a second motion to dismiss Universitas's complaint under Rule 12(b)(5) on the ground that Universitas failed to serve process within 90 days of the filing of the complaint. Doc. #87. This second motion is based on essentially the same argument as the first motion to dismiss: that the Defendant Trusts' sole trustee was not personally served, rendering service of process

---

[8] Universitas also disputes the Defendant Trusts' claim that Siebert is a resident of Florida, Doc. #85 at 16, but this dispute is not material to the outcome of the jurisdictional analysis because Daniel Carpenter's domicile is Connecticut.

[9] Because I am denying the Defendant Trusts' motion to dismiss the First Count, I do not consider Universitas's argument that the motion should be converted to a motion for summary judgment because the Defendant Trusts submitted evidence outside the pleadings. *See* Doc. #85 at 28-33.

ineffective, and more than 90 days have passed since the complaint was filed. I will deny the Defendant Trusts' second motion to dismiss for the same reasons that I am rejecting their failure to properly serve process argument as explained above.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the motion to dismiss (Doc. #68) of the Benistar Defendants (defendants Molly Carpenter, Donald Trudeau, BASI, TPG, and Moonstone) on the ground that the complaint's claims against them are barred by *res judicata*. The Court GRANTS the motion to dismiss (Doc. #72) of GMP with respect to the Second Count (attorneys' fees) and Fifth Count (constructive trust) of the complaint, but DENIES the motion to dismiss with respect to the First Count (alter ego liability). The Court GRANTS the Defendant Trusts' first motion to dismiss (Doc. #74) with respect to the Second Count (attorneys' fees), the Third Count (constructive trust), and the Fourth Count (constructive trust) of the complaint, but DENIES the motion with respect to the First Count (alter ego liability). The Court DENIES the Defendant Trusts' second motion to dismiss (Doc. #87). The dismissal of some of Universitas's claims are without prejudice to the filing of a proposed amended complaint if Universitas has good faith grounds to believe its amended complaint can cure the dismissed claims' deficiencies that are identified in this ruling.

It is so ordered.

Dated at New Haven this 15th day of March 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge