# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MAY 28 2021 PM 1:17
FILED-USDC-CT-NEW-HAVEN

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC | |
| Plaintiff. | CASE NO. 3:20-cv-00738-JAM |
| v. | May 28, 2021 |
| BENISTAR, ET.AL. | |
| Defendants. | |

## PETITIONER DANIEL CARPENTER'S REPLY IN SUPPORT OF HIS MOTION TO QUASH

### TO THE HONORABLE ROBERT M. SPECTOR, MAY IT PLEASE THE COURT:

As respectful of the Court as is possible, Petitioner Daniel Carpenter, the Non-Party Movant in this case (hereinafter "Petitioner"), wishes to point out that not only should his Motion to Quash the subpoena for a deposition be granted pursuant to FRCP Rule 45, but it is now time for this Court to realize that Attorney Michael Caldwell is following the lead of Attorney Joseph Manson to commit massive Fraud on the Court by filing frivolous, vexatious, and scandalous defamatory material like their latest Motions to Compel that has no other purpose than to defraud his clients, the two ladies behind Universitas. Therefore, Petitioner respectfully asks this Court to review the recent Universitas filings and issue an Order to Show Cause why Michael Caldwell should not be disbarred for lies and defamation before this Court.

First and foremost, Petitioner is exceedingly grateful to this Court – and particularly Judge Meyer – for posting Petitioner's letters to the Court. Please see Docs. No's 101, 103, and 104. There are numerous Exhibits in these filings that Petitioner respectfully asks the Court to refer

to in ruling on this Motion to Quash and to incorporate these documents by reference to this Reply. Despite having testified in several depositions and several court appearances in New York, Universitas insisted that Petitioner be deposed again in 2016 while he was being held at the Wyatt Detention Facility — five years ago — and after Petitioner's trial in February and March 2016 in front of the Honorable Robert N. Chatigny. Judge Chatigny determined that the Sash Spencer proceeds were the "illicit" proceeds of fraud supporting the Money Laundering Counts of the May 2014 Indictment. Therefore, based on Judge Chatigny's verdict of June 2016 — the Sash Spencer proceeds from Lincoln are the proceeds of fraud — so every dollar that Universitas has received (especially the $200,000 from the extortion of Avon Old Farms, see Doc. 126) constitutes Unjust Enrichment.

Secondly, Judge Chatigny sentenced Petitioner based on $52,000,000 in Restitution (that has since been reduced to $12,000,000 based on reinsurance proceeds received by the Carriers), but not a dime of restitution was made payable to Universitas despite the fact that Attorney Manson spoke at length at Petitioner's sentencing, claiming that Petitioner "stole" the money and lied about the transfers. Even Judge Chatigny supports Petitioner's claim that at this late date the Petitioner has not lied to anyone about anything at any time.

Third, that leads to Attorney Caldwell's persistent defamation in this case, not just of Petitioner, but of the wholly innocent parties like Molly Carpenter, Don Trudeau, and the 100 loyal employees that work at Benistar who are continually referred to as the "Carpenter Criminal Network" among other malicious and defamatory claims, all of which are not just false — they are demonstrably false. As the Second Circuit has conclusively stated in its powerful decision in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019):

District courts should exercise the full range of their substantial powers to ensure their files do not become vehicles for defamation. *Brown*, at 53.

So, the lie that Attorney Caldwell keeps quoting is that Petitioner Carpenter taunted his investors in 2001-2002 saying they would not see a dime, because Petitioner was "judgement proof." The language that Attorney Caldwell continues to misquote (see, e.g., Exhibit 20 of the PJR filing in Dkt. No. 9) is from the prosecutor misquoting a letter from Attorney Jack Robinson (now deceased) to certain attorneys for the Exchangors, quoting Professor Alan Dershowitz (who was Petitioner's first attorney in his Boston case of 2004) when Petitioner was indicted for losing client's funds in the Stock Market Crash of December 2000. The lawsuits and criminal investigation began in 2001, so that would have been a very stupid thing for Petitioner to have said, and Petitioner never did say that.

As it turns out, Petitioner did lose $8,000,000 of client funds in the NASDAQ stock market crash of 2000, and the full details can be read in Petitioner's Writ of Audita Querela addressed to the Honorable George A. O'Toole in Boston earlier this year. But, for the purposes of this filing, Petitioner has paid back the Exchangors over $50,000,000 on their $8,000,000 loss with his legal victories over PaineWebber and Merrill Lynch. But, just as attorneys for Universitas extorted money from Avon Old Farms (See Doc. No. 126), they also extorted $900,000 from the Boston Property Exchangors in 2015. See email from Universitas attorneys attached as Exhibit One. In other words, Petitioner paid back in full the funds he lost, with interest and penalties and a huge windfall, but Universitas actually "extorted" and "stole" from the same Exchangors that they continue to defame Petitioner and Benistar with in all of their filings.

Fourth, Attorney Caldwell makes the incredible statement that it was not until Petitioner's trial in 2016 that they learned of the movement of money. Not only is that demonstrably false;

the attorneys for Universitas sent a letter to AUSA David Novick in January of 2014 asking him to not allow Molly Carpenter to put her home up for Petitioner's Bail. The record shows that Judge Martinez scolded AUSA Novick and told him to sit down, thereby thwarting the attempts of Universitas to stop Petitioner's wife and daughter from putting up their homes for Petitioner's Bail. See Letter to AUSA Novick attached as Exhibit Two. Similarly, Universitas sent a subpoena to JPMorgan Chase asking for all bank accounts — including ones for the Charitable Trusts in this case. See Subpoena to JPMorgan Chase from 2013 attached as Exhibit Three. The same money flows that Attorney Caldwell just discovered were submitted to Petitioner's Grand Jury in May of 2014, and to Judge Swain in 2013 for her August 2014 Order and Judgment. *Also see* JP Morgan Chase's detailed listing of bank accounts in its 2014 response attached as Exhibit Four.

Finally, Attorney Caldwell makes a big deal out of FRCP Rule 37, but ignores the fact that this is a Motion to Quash pursuant to Rule 45. As Judge Fitzsimmons concluded in a well-researched opinion:

> In short, Local Rule 37 does not apply to this motion because this motion is made under Fed.R.Civ.P.45. *See Jackson v. AFSCME Loc. 196*, 246 F.R.D. 410, 413 (D. Conn. 2007).

Therefore, Petitioner has established that there is no need for this repeated defamation and harassment by counsel for Universitas, and just like the voluminous briefs for the recently filed Motions to Compel, these frivolous and vexatious filings have no purpose but to defraud the principals of Universitas with expensive motions that have no purpose but to use frivolous motion practice to harass Petitioner and innocent members of this family before this Court in order to run up the bills against the $12,000,000 paid by WSFS in the case settled in Judge Vanessa Bryant's Court.

Similarly, it was 10 years ago that this case was brought forward in Judge Thompson's Court, and Universitas filed a Charging Order in Judge Chatigny's Court in October 2015. The local firms Halloran & Sage and Robinson & Cole argued for Curaleaf to get a lease for 100 Grist Mill Road in front of Judge Swain in January of 2014. All cash flows were known by that time, and as Judge Schiendlin stated in 2015—all of the money was gone by October of 2009. See *Universitas v. TD Bank* (on behalf of the Charter Oak Trust) attached as Exhibit Five. And, even Judge Swain stated in January of 2015 that "alter-ego" claims are not allowed in the Second Circuit pursuant to *Estate of Ungar v. Orascom Telecom Holding S.A.E.,* 578 F.Supp.2d 536, 548–51 (S.D.N.Y.2008). See Judge Swain's January 5, 2015 Decision attached as Exhibit Six. And according to Judge Swain this very action is barred by the Supreme Court's Decision in *Peacock v. Thomas*,516 U.S. 349, 356, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). See Judge Swain's 2020 Decision attached as Exhibit Seven.

Because at this late date, after the warnings contained in Docs. 101, 103, and 104, it is time for Attorney Caldwell to be sanctioned and disbarred. Furthermore, the appropriate sanction is $200,000, which should then be returned to Avon Old Farms School on behalf of this Court in the interests of justice.

Respectfully submitted,
/ s / Daniel E. Carpenter
Daniel E. Carpenter
Movant/Non-Party
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT  06092

## CERTIFICATION

I hereby certify that on this 28th day of May, 2021, a copy of the foregoing was filed with this Court and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

By: / s / Daniel E. Carpenter
Daniel E. Carpenter
Movant/Non-Party
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

# EXHIBIT ONE

Universitas receives $900,333 from BPETCO Settlement

**From:** Paul S Samson [mailto:PSamson@riemerlaw.com]
**Sent:** Monday, December 28, 2015 5:30 PM
**To:** Elkind, Thomas I.; Tony Zelle (tzelle@zelmcd.com); tevans@zelmcd.com; 'Paula Colbath' (pcolbath@loeb.com) (pcolbath@loeb.com); Lindsay Feuer (lfeuer@loeb.com) (lfeuer@loeb.com)
**Subject:** RE: Satisfaction of Judgment

Universitas has been paid $900,333.06 as a result of the settlement and that amount will be credited against the Universitas judgment against Mr. Carpenter in accordance with Universitas' agreement with BPETCO and Mr. Carpenter.

Regards, have a happy and healthy New Year.  Paul.

Paul S. Samson
(admitted in MA and NY)
Riemer & Braunstein LLP
psamson@riemerlaw.com

From: TElkind@foley.com [mailto:TElkind@foley.com]
Sent: Monday, December 28, 2015 5:25 PM
To: Tony Zelle (tzelle@zelmcd.com); tevans@zelmcd.com; Paul S Samson; 'Paula Colbath' (pcolbath@loeb.com) (pcolbath@loeb.com); Lindsay Feuer (lfeuer@loeb.com) (lfeuer@loeb.com)
Subject: Satisfaction of Judgment

Counsel:

Attached is a copy of the Satisfaction of Judgment that was filed today in the original Cahaly action pursuant to Section 11 of the Release and Settlement Agreement.

The settlement between the Cahalys and BPETCO has now been completed. The settlement documents have all been signed and the $125,000 payment from BPETCO has been wired to counsel for the Cahalys.

Please let me know the total amount that is paid to Universitas, including interest,  pursuant to its settlement with the Cahalys, as this is the amount that will be credited against the judgment held by Universitas against Dan Carpenter and others.

Thank you for your cooperation regarding this matter.

Regards,

Thomas I. Elkind
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199
Tel:  617-342-4010
Fax: 617-342-4001
telkind@foley.com

# EXHIBIT TWO

January 15, 2014 Letter to AUSA Novick from Universitas Counsel



**PAULA K. COLBATH**
Partner

345 Park Avenue
New York, NY 10154

Direct    212.407.4905
Main    212.407.4000
Fax    212.937.3189
pcolbath@loeb.com

January 15, 2014

David E. Novick
Assistant U.S. Attorney
District of Connecticut
157 Church Street, 23rd Floor
New Havenm CT 06510

Re:   Daniel Edgar Carpenter and Case No. 3-13-CR-226-RNC

Dear David:

In response to your inquiry, we are of the view that **Mr. Carpenter's or anyone else's posting or transferring of any assets or property collectively valued at more than $20,000, in order to obtain a bond, would violate the Southern District of New York's January 13, 2014 Preliminary Injunction Order against Mr. Carpenter** (copy attached).

This is because any such assets would necessarily be in Mr. Carpenter's direct or indirect control, or in his direct or indirect interest. See Preliminary Injunction Order at 15-16. These assets include, but are not limited to, Mr. Carpenter's house at 18 Pondside Lane in West Simsbury, Connecticut, which we understand to be nominally in the name of his wife Molly, as well as the office building at 100 Grist Mill Road in Simsbury, which we understand to be nominally in the name of Grist Mill Partners, LLC.

Please do not hesitate to contact me if you have any questions. Should the Court have any inquiries for me, I or my associate Michael Barnett will be available by phone on Friday.

Thank you for your attention to this matter.

Sincerely,

Paula K. Colbath
Partner

Enclosure

cc:    Richard R. Brown (via e-mail)
       Anthony J. Siano (via e-mail)
       Dan E. LaBelle (via e-mail)

# EXHIBIT THREE

March 14, 2013 Universitas Subpoena to JP Morgan Chase

AO 88B  (Rev  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

JPMC File No.
SB 394724-F1

| Universitas Education, LLC (judgment creditor) | ) |
| *Plaintiff* | ) |
| v. | ) |
| Nova Group, Inc. as trustee, sponsor and fiduciary of the Charter Oak Trust (judgment debtor) | ) |
| *Defendant* | ) |

Civil Action No.   11-1590-LTS-HBP

(If the action is pending in another district, state where:
                                   )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  JP Morgan Chase ATTN: Subpoena/Legal Department
~~270 Park Avenue, New York, NY 10017~~   1 Chase Manhattan Plaza, 26th Floor
                                          NY NY 10005

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: Please see Schedule A attached.

| Place:   Reyhani Nemirovsky LLP | Date and Time: |
| 200 Park Avenue, 17th Floor New York, NY 10166 | 04/22/2013 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   03/14/2013

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
Universitas Education, LLC (judgment creditor)                , who issues or requests this subpoena, are:
Bryan Reyhani (BR-9147), Reyhani Nemirovsky LLP, 200 Park Avenue, 17th Floor, New York, NY 10166
Phone: 212-897-4022; E-mail: bryan@rnlawfirm.com

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  11-1590-LTS-HBP

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A – JP MORGAN CHASE

### DOCUMENT REQUESTS

**Definitions and Instructions**

A. Each document request covers the time period of May 1, 2009 to the present.

B. These document requests incorporate the Uniform Definitions set out in Local Civil Rule 26.3 of the United States District Court for the Southern District of New York.

C. These requests apply to all documents within your possession, custody or control, regardless of whether such documents and/or information are held by you or your current or former predecessors in interest, successors in interest, affiliates, designees, officers, directors, members, agents, managers, advisers, employees, representatives, attorneys, custodians and/or nominees.

D. "Daniel E. Carpenter" refers to an individual believed to have a date of birth of May 25, 1954 and reside at 18 Pondside Lane in West Simsbury, Connecticut.

E. "Molly Carpenter" refers to an individual believed to have a date of birth of August 17, 1957 and reside at 18 Pondside Lane in West Simsbury, Connecticut.

F. "Wayne H. Bursey" refers to an individual believed to have a date of birth of August 13, 1950 and reside at 22 High Hill Road in Bloomfield, Connecticut.

G. "Amanda Rossi" refers to an individual believed to have a date of birth of November 17, 1980 and reside at 191 Parker Road in Somers, Connecticut.

**Document Requests**

1. Documentation of all transactions including, without limitation, all credits, debits, deposits, withdrawals and transfers, for all business, company, corporate, trust or non-personal accounts for which Daniel E. Carpenter, Molly Carpenter, Amanda Bursey and/or Wayne H. Bursey, individually or jointly with another, is or was a signatory.

2. Copies of all account opening documents, statements, checks and wire transfers for any business, company, corporate, trust or non-personal accounts for which Daniel E. Carpenter, Molly Carpenter, Amanda Bursey and/or Wayne H. Bursey, individually or jointly with another, is or was a signatory.

3. Documentation of all transactions including, without limitation, all credits, debits, deposits, withdrawals and transfers, for any bank, brokerage, trust or other accounts that stand in the name or exist for the benefit of a company, corporation, trust or other entity for which Daniel E. Carpenter, Molly Carpenter, Amanda Bursey and/or Wayne H. Bursey is or was an officer, director, manager, trustee, agent, signatory, representative and/or affiliate.

4.      Copies of all account opening documents, statements, checks and wire transfers for any bank, brokerage, trust or other accounts that stand in the name or exist for the benefit of a company, corporation, trust or other entity for which Daniel E. Carpenter, Molly Carpenter, Amanda Bursey and/or Wayne H. Bursey is or was an officer, director, manager, trustee, agent, signatory, representative and/or affiliate.

5.      Documentation of all transactions including, without limitation, all credits, debits, deposits, withdrawals and transfers, for any bank, brokerage, trust or other accounts that stand in the name or exist for the benefit of an entity located at 100 Grist Mill Road (or 100 Grist Mill Lane) in Simsbury, Connecticut, including but not limited to the following:

- Charter Oak Trust 2009
- Charter Oak Litigation Trust
- Grist Mill Capital, LLC
- Grist Mill Holdings, LLC
- Grist Mill Trust
- Grist Mill Partners, LLC
- Avon Capital, LLC
- Avon Insurance Trust
- Avon Insurance Welfare Benefit Plan
- Phoenix Capital Management, LLC
- SADI Trust
- TPG Group, Inc.
- Audit Risk Indemnity Association, LLC
- Moonstone Partners, LLC
- Benistar Client Services, LLC
- Hanover Benefit Plans, LLC
- USB Group, Inc.
- Alliance Charitable Remainder Trust
- Carpenter Charitable Remainder Trust
- Avon Charitable Remainder Trust
- Atlantic Charitable Remainder Trust
- Phoenix Charitable Remainder Trust

6.      Copies of all account opening documents, statements, checks and wire transfers for any bank, brokerage, trust or other accounts that stand in the name or exist for the benefit of an entity located at 100 Grist Mill Road (or 100 Grist Mill Lane) in Simsbury, Connecticut, including but not limited to the following:

- Charter Oak Trust 2009
- Charter Oak Litigation Trust
- Grist Mill Capital, LLC
- Grist Mill Holdings, LLC
- Grist Mill Trust
- Grist Mill Partners, LLC

- Avon Capital, LLC
- Avon Insurance Trust
- Avon Insurance Welfare Benefit Plan
- Phoenix Capital Management, LLC
- SADI Trust
- TPG Group, Inc.
- Audit Risk Indemnity Association, LLC
- Moonstone Partners, LLC
- Benistar Client Services, LLC
- Hanover Benefit Plans, LLC
- USB Group, Inc.
- Alliance Charitable Remainder Trust
- Carpenter Charitable Remainder Trust
- Avon Charitable Remainder Trust
- Atlantic Charitable Remainder Trust
- Phoenix Charitable Remainder Trust

# EXHIBIT FOUR

February 25, 2014 Letter to Universitas from JP Morgan Chase
in Response to Subpoena

# JPMorgan Chase & Co.

**bryan@rnlawfirm.com**

Authenticated by jpmchase.com ✓ Valid Signature

| | |
|---|---|
| **From:** | nina.irish@jpmchase.com |
| **To:** | bryan@rnlawfirm.com |
| **Sent:** | Apr 22, 2013 4:26:03 PM EDT |
| **Subject:** | Universitas v Nova JPMC file 3 SB456878 |
| **Attached:** | [Untitled].pdf (986 kb) |

Hello Mr. Reyhani,

Per our discussion, attached please find a list of open accounts located in subpoena served in above matter, with account name, number and balance.

Thanks,

Nina Irish
Legal Specialist III

-----Original Message-----
From: Irish, Nina
Sent: Monday, April 22, 2013 4:19 PM
To: Irish, Nina
Subject:

All electronic mail (email) and attachments stored, received or transmitted on JPMC systems are property of JPMorgan Chase and subject to applicable laws and regulations and all messages sent or received by JPMC systems are considered corporate records for the purposes of monitoring.

Copyright � 2013 JPMorgan Chase & Co. All rights reserved

This communication is for informational purposes only. It is not intended as an offer or solicitation for the purchase or sale of any financial instrument or as an official confirmation of any transaction. All market prices, data and other information are not warranted as to completeness or accuracy and are subject to change without notice. Any comments or statements made herein do not necessarily reflect those of JPMorgan Chase & Co., its subsidiaries and affiliates. This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you. Please refer to http://www.jpmorgan.com/pages/disclosures for disclosures relating to European legal entities.

## INVENTORY LISTING

### CHASE FILE NO.:  SB456878-F1

#### Amanda Rossi/Daniel E Carpenter – Signatory

USB Client Services Inc.          Acct # 7941█          Acct. Balance
   $40.00

USB Client Services Inc.          Acct# 29071█          Acct. Balance
   $65.57

USB Client Services Inc           Acct# 29674█          Acct. Balance
   $0.00

Thermionics Employee Stock

Ownership Plan/ USB Client

Services Inc.                     Acct. # 29071█         Acct. Balance
   $20.00

#### Wayne Bursey/ Amanda Rossi/ Molly Carpenter - Signatory

Jefferson Trust                   Acct# 82000█          Acct. Balance
   $107,812.75

#### Amanda Rossi - Signatory

Thermionics Employee Stock

Ownership Plan                    Acct# 95941█          Acct. Balance
   $1,139.34

#### Molly Carpenter/ Wayne Bursey – Signatory

Cambridge Trust Welfare

Benefit Plan                          Acct# 72680█         Acct. Balance
   $2,878.39

MidAtlantic Trust                     Acct# 79416█         Acct. Balance
   $174,178.52

Long Term Care Trust

LTC Trust                             Acct# 90495█         Acct. Balance
   $ 13,750.86

Long Term Care Trust

LTC Trust                             Acct# 90495█         Acct. Balance
   $ .01

Long Term Care Trust

LTC Trust                             Acct # 9049█         Acct. Balance
   $0.00

Sadi Trust 2007                       Acct # 7268█         Acct Balance
   $61,601.87

Mcallen Health Care

Services Trust Benefit Plan

Advisors TTEE                         Acct # 7941█         Acct Balance
   $43,076.11

Split Dollar Trust/

Hanover Benefit Plans LLC Acct# 990648479         Acct Balance
   $176,407.11


Molly Carpenter – Signatory

Bestco Benefit Plans LLC              Acct# 1168█         Acct. Balance
   $817,764.60

Bestco Benefit Plans LLC              Acct# 1703█         Acct. Balance
   $64,889.93

Bestco Benefit Plans LLC              Acct# 7079█         Acct. Balance
   $0.00

| | | |
|---|---|---|
| Bestco Benefit Plans LLC $18,549.95 | Acct# 7079 | Acct. Balance |
| Bestco Benefit Plans LLC $1,903.61 | Acct# 7539 | Acct. Balance |
| Bestco Benefit Plans LLC $271.44 | Acct #7539 | Acct. Balance |
| Bestco Benefit Plans LLC $2,293,090.94 | Acct# 790 | Acct. Balance |
| Bestco Benefit Plans LLC $1,525,268.68 | Acct# 8368 | Acct. Balance |
| Bestco Benefit Plans LLC $45,873.38 | Acct # 936 | Acct. Balance |
| Bestco Benefit Plans LLC $26,809.21 | Acct # 936 | Acct. Balance |
| Bestco Benefit Plans LLC $0.00 | Acct # 937 | Acct. Balance |
| Bestco Benefit Plans LLC $12,108.89 | Acct # 937 | Acct. Balance |
| Bestco Benefit Plans LLC $918.11 | Acct# 3011 | Acct. Balance |
| Bestco Benefit Plans LLC | Acct # 301 | Acct. Balance $0.00 |
| Bestco Benefit Plans LLC | Acct # 301 | Acct. Balance $0.00 |
| Bestco Benefit Plans LLC $1,308,073.78 | Acct # 301 | Acct. Balance |
| Bestco Benefit Plans LLC $107,614.65 | Acct # 301 | Acct. Balance |
| Bestco Benefit Plans LLC $7,039.65 | Acct # 301 | Acct. Balance |
| Bestco Benefit Plans LLC $12,630.49 | Acct # 301 | Acct. Balance |
| Bestco Benefit Plans LLC $3,868.01 | Acct # 301 | Acct. Balance |



Bestco Benefit Plans LLC          Acct # 301177███    Acct. Balance
$400,205.56

Bestco Benefit Plans LLC          Acct # 301177███    Acct. Balance
$13,177.20

Bestco Benefit Plans LLC          Acct # 301177███    Acct. Balance
$66,587.04

Life Five Welfare Benefit         Acct # 9040██         Acct. Balance
$1,672.22


**Molly Carpenter/ Daniel Carpenter/ Amanda Rossini – signatory**

Benistar Client Services Inc/

Bpetco Litigation Group Inc.      Acct # 290██          Acct Balance
$1001.95


**Daniel Carpenter – signatory**

Benistar Client Services Inc./

Bpetco Litigation Group Inc.      Acct # 904██          Acct Balance
$24,355.45

USB Client Services Inc.          Acct # 7941██         Acct Balance
$1,750.53

Alliance Charitable Remainder

Trust Daniel Carpenter TTE        Acct# 83341██         Acct Balance
$9,930.00

Atlantic Charitable Remainder

Trust Daniel Carpenter TTE        Acct# 8334██          Acct Balance
$9,933.00

Avon Charitable Remainder

Trust Daniel Carpenter TTE        Acct # 833██          Acct Balance
$9,983.00

Carpenter Charitable Remainder

**Trust Daniel Carpenter TTE**
**$49,983.00**                    Acct # 8334██████       Acct Balance

**Phoenix Charitable Remainder**

**Trust Daniel Carpenter TTE**
**$9,983.00**                     Acct# 8334█████        Acct Balance


**\*\*Some account have signatories in addition to those listed. Those signatories
are not indicated because they were not listed in the subpoena**

# EXHIBIT FIVE

Universitas Educ., LLC v. T.D. Bank, N.A., 15-cv-5643 (SAS) December 21, 2015

Universitas Education, LLC v. Bank, Not Reported in Fed. Supp. (2015)

2015 WL 9304551

2015 WL 9304551
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

## UNIVERSITAS EDUCATION, LLC, Plaintiff,

v.

## T.D. BANK, N.A., Defendant.

15-cv-5643 (SAS)
|
Signed 12/21/2015

**Attorneys and Law Firms**

Annie E. Causey, Esq., Napoli Shkolnik PLLC, 1301 Avenue of The Americas, New York, NY 10019, (212) 397-1000, Marie E. Napoli, Esq., Napoli Law, PLLC, 1301 Avenue of the Americas, New York, NY 10019, (212) 397-1000, Paul J. Napoli, Esq., Napoli Bern Ripka & Associates, 350 Fifth Avenue, New York, NY 10118, (212) 267-3700, for Plaintiff.

Jeffrey J. Chapman, Esq., Aaron F. Jaroff, Esq., McGuire Woods LLP, 1345 Avenue of the Americas, 7th Floor, New York, NY 10105, (212) 548-7060, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHIRA A. SCHEINDLIN U.S.D.J.

**\*1** Plaintiff Universitas Education, LLC ("Universitas") brings this diversity action against defendant T.D. Bank alleging the aiding and abetting of conversion and related claims stemming from the alleged misappropriation of certain assets by a non-party actor, using T.D. Bank as its financial institution. Defendant moves to dismiss, arguing that plaintiff's claims are time-barred. For the following reasons, defendant's motion is GRANTED.

## I. BACKGROUND[1]

On May 15, 2009, the Lincoln National Life Insurance Company issued two checks to the Charter Oak Trust totaling $30,677,276.85, representing the life insurance proceeds for two life insurance policies issued on the life of Mr. Sash Spencer.[2] Mr. Spencer, now deceased, named Universitas as the sole beneficiary of the Charter Oak Trust.[3] Nova Group, Inc. served as the trustee.[4]

Contemporaneous with the Charter Oak Trust's receipt of the life insurance proceeds, Nova Group sought to open a new bank account for the Trust.[5] It applied for this account with at least three major banking institutions, and was declined by at least Bank of America due to Nova Group's failure to satisfy certain due diligence protocols.[6] T.D. Bank accepted Nova Group's application, and opened an account for Charter Oak Trust on May 12, 2009.[7]

On May 20 and May 21, 2009, T.D. Bank accepted applications for and opened business checking accounts for Nova Group and several related entities.[8] From May 21, 2009 to October 27, 2009, Nova Group transferred Charter Oak Trust proceeds to and

between its business checking accounts, and directly withdrew $19.8 million from the Charter Oak Trust account.[9] Universitas was aware that Nova Group did not intend to remit the Charter Oak Trust's proceeds to it by October 2009.[10]

Plaintiff filed a demand for arbitration against the Nova Group on June 17, 2010.[11] The arbitrator awarded plaintiff damages in the amount of $26,558,308.26 plus interest on January 24, 2011.[12] The award was confirmed on June 5, 2012.[13] In the meantime, T.D. Bank closed all accounts associated with Nova Group, which has yet to pay any of the arbitration award to plaintiff.[14] On July 17, 2015, plaintiff brought this action against T.D. Bank accusing it of aiding and abetting in this conversion, and bringing several related claims.

## II. LEGAL STANDARD

**\*2**  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff's favor."[15] The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[16] Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[17] For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18] Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[19] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[21]

When deciding a 12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[22] " '[I]t is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.' "[23]

## III. DISCUSSION

When sitting in diversity, a federal court applies New York's statutes of limitations to state law claims.[24] Under New York law, causes of action accrue at the time and in the place of the injury.[25] Applying these principles to the instant case, each of plaintiff's causes of action is time-barred, and must be dismissed.

### A. Aiding and Abetting Conversion Claim

Allegations for conversion, and aiding and abetting of conversion, are subject to a three-year statute of limitations.[26] A conversion occurs when one exercises unauthorized dominion over the property of another to the exclusion of the rights of the lawful owner.[27] Here, the alleged conversion took place no later than October 2009, when Nova Group formally refused to remit the proceeds of the Charter Oak Trust to plaintiff.[28] Thus, plaintiff's conversion claim was time-barred as of October 2012.

### B. Fraud Claims

Claims for fraud and the aiding and abetting of fraud are normally governed by New York's six-year statute of limitations.[29] However, a "[c]ourt will not apply the six-year statute of limitations if the claim of fraud is merely incidental to another claim with a shorter limitations period."[30] To determine whether a fraud claim is "merely incidental" to other claims in an action, courts examine the "gravamen," or basic essence, of a plaintiff's claims.[31] In order to not be "merely incidental," a fraud claim

2015 WL 9304551

must be distinct from a plaintiff's other claims — it must be a claim in its own right, and not merely recast the same facts as other claims in order to obtain the benefit of the longer limitations period.[32]

*3   The gravamen of plaintiff's fraud claims are that Nova Group converted Charter Oak Trust funds meant for Universitas, and that defendant — by opening accounts and approving transfers between them — aided and abetted in that conversion. The facts underlying the fraud and conversion claims are the same. The injuries are the same. The relief sought is identical. Both the fraud and the aiding and abetting fraud claims are identical, for all intents and purposes, to the aiding and abetting conversion claim, and are merely incidental thereto. "Time barred claims cannot be revitalized by tricks of pleading";[33] the six-year statute of limitations does not apply to plaintiff's claim of aiding and abetting fraud. Plaintiff's claims for fraud and aiding and abetting fraud are subject to the three-year statute of limitations governing plaintiff's conversion claim, and are time-barred.

### C. Fiduciary Duty Claims

New York does not prescribe a statute of limitations for claims based on the breach of a fiduciary duty, and instead determines the applicable limitations period based on the substantive remedy sought.[34] Where a plaintiff seeks only money damages — as is the case here — a three-year statute of limitations applies.[35] For the same reasons described above, plaintiff's claims accrued in October 2009, and were time-barred as of October 2012.

### D. Unjust Enrichment Claim

Claims for unjust enrichment are generally governed by a six-year statute of limitations.[36] However, as with claims for fraud and breach of a fiduciary duty, if an unjust enrichment claim is merely incidental to a claim governed by a shorter statute of limitations, "the Court will not allow a plaintiff to avail himself of a longer limitations period."[37] Here, plaintiff's unjust enrichment claim recites the same facts and circumstances as its conversion claim, and is just as incidental to the conversion claim as the fraud claims. The three-year statute of limitations therefore applies, and plaintiff's claim was time-barred as of October 2012.

### E. Negligence Claims

New York applies a three-year statute of limitations to all negligence claims, including claims for negligent hiring and negligent supervision.[38] As with conversion claims, the limitations period begins to run at the time and place of injury, "even though the injured party may be ignorant of the existence of the wrong or injury."[39] The injury alleged in support of the negligence claims is the same injury as alleged for the conversion claim and claims incidental to the conversion. Plaintiff's negligence claims were therefore time-barred as of October 2012.

### F. Racketeer Influenced and Corrupt Organizations Act ("RICO") Claim

Civil RICO claims are subject to a four-year statute of limitations.[40] The four-year limitations period begins to run "upon the discovery of the injury alone."[41] As with all of plaintiff's claims, the only injury alleged in plaintiff's civil RICO claim is the conversion of the Charter Oak Trust funds, of which plaintiff had actual notice in October 2009 when Nova Group formally denied plaintiff's claim to the trust funds. Plaintiff's civil RICO claim was therefore time-barred as of October 2013.

## IV. CONCLUSION

*4   For the foregoing reasons, defendant's motion is GRANTED. The Clerk of the Court is directed to close this motion (Dkt. No. 12) and this case.

SO ORDERED.

Universitas Education, LLC v. Bank, Not Reported in Fed. Supp. (2015)
2015 WL 9304551

**All Citations**

Not Reported in Fed. Supp., 2015 WL 9304551

Footnotes

1    All facts recited herein are taken from the Amended Complaint ("Compl.") unless otherwise noted.
2    *See* Compl. ¶ 38.
3    *See id.*
4    *See id.* ¶ 39.
5    *See id.* ¶ 44.
6    *See id.* ¶ 45.
7    *See id.* ¶ 50.
8    *See id.* ¶¶ 53-54.
9    *See id.* ¶¶ 57-66.
10   *See* Petition to Confirm Arbitration Award ("Petition"), Exhibit 1 to 9/11/15 Declaration of Jeffrey J. Chapman, counsel for defendant, in Support of Defendant's Motion to Dismiss the Amended Complaint ("Chapman Dec.") ¶ 7 ("Nova Group formally rejected Universitas' claim to the Death Benefit twice, initially in October 2009, and on appeal in February 2010."); Affidavit of Sharon Sieber, member of Universitas Education, LLC, Exhibit 4 to Chapman Dec. ¶¶ 8-12 (outlining steps taken by plaintiff to secure Charter Oak Trust monies in 2009).
11   *See* Compl. ¶ 68.
12   *See id.* ¶ 70.
13   *See id.* ¶ 71.
14   *See id.* ¶ 72.
15   *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).
16   *See* 556 U.S. 662, 678-79 (2009).
17   *Id.* at 679.
18   *Id.* at 678 (citation omitted).
19   *Id.* at 679.
20   *Id.* at 678 (citation omitted).
21   *Id.* (quotations omitted).
22   *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).
23   *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) (quoting *O'Brien v. National Prop. Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y. 1989)).
24   *See, e.g., Thea v. Kleinhandler*, No. 14-3201, 2015 WL 6684322, at *4 (2d Cir. Nov. 3, 2015).
25   *See id.*
26   *See* N.Y. Civil Practice Law & Rules ("C.P.L.R.") § 214(3).
27   *See Kirschner v. Bennett*, 648 F. Supp. 2d 252, 240 (S.D.N.Y. 2009).
28   *See* Petition ¶ 7.
29   *See* N.Y. C.P.L.R. § 213(8).
30   *Malmsteen v. Berdon, LLP*, 447 F. Supp. 2d 655, 663 (S.D.N.Y. 2007).
31   *See Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (holding a fraud claim to be incidental to related claims where "the gravamen of plaintiff's claims is that [defendant] stole funds from [plaintiff], not that he lied about doing so").
32   *See Midwest Mem'l Grp., LLC v. International Fund Servs. (Ireland) Ltd.*, No. 10 Civ. 8860, 2011 WL 4916407, at *5 (S.D.N.Y. Oct. 17, 2011).
33   *Id.*
34   *See Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008).

**Universitas Education, LLC v. Bank, Not Reported in Fed. Supp. (2015)**

2015 WL 9304551

35   *See Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 942 (2d Cir. 1998). Claims for breach of a fiduciary duty based on allegations of fraud may be subject to a six-year statute of limitation, but only in instances where the fraud is not incidental to another claim. *See Marketxt*, 693 F. Supp. 2d at 398. As described above, plaintiff's fraud claims are incidental to its conversion claim, and the three-year statute of limitations applies.

36   *See* N.Y. C.P.L.R. § 213(1).

37   *Malmsteen*, 447 F. Supp. 2d at 667.

38   *See* N.Y. C.P.L.R. § 214(4); *Coleman & Co. Sec., Inc. v. Giaquinto Family Tr.*, 236 F. Supp. 2d 288, 299, 303 (S.D.N.Y. 2002).

39   *Fritzhand v. Discover Fin. Servs., Inc.*, 800 N.Y.S. 2d 319, 319 (Sup. Ct. Nassau Co. 2005). *Accord Midwest Mem'l Grp.*, 2011 WL 4916407, at *3 (holding that New York "does not apply a 'discovery rule' to extend accrual [of a claim] until a plaintiff discovers that injury").

40   *See Rotella v. Wood*, 528 U.S. 549, 552 (2000).

41   *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012).

---

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT SIX

Judge Swain's January 5, 2015 Decision

Universitas Education, LLC v. Nova Group Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNIVERSITAS EDUCATION, LLC,

        Petitioner,

    -v-                       No. 11CV1590-LTS-HBP

NOVA GROUP, INC.,

        Respondent.

-------------------------------------------------------x

NOVA GROUP, INC.,

        Petitioner,

    -v-                       No. 11CV8726-LTS-HBP

UNIVERSITAS EDUCATION, LLC,

        Respondent.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Judgment confirming a $30 million arbitration award against Nova Group Inc.

("Nova") was entered in these cases in 2012.  (See docket entry no. 41.)[1] Extensive post-

judgment discovery and turnover proceedings ensued.  In August 2014, the Court entered

judgment against several affiliates of Nova's former principal Daniel E. Carpenter in respect of

funds fraudulently conveyed to those affiliates.  Judgment creditor Universitas Education, LLC

("Universitas"), thereafter served restraining notices on fraudulent conveyance judgment debtor

Grist Mill Trust ("GMT") and several other entities, directing the restraint of GMT's property.

GMT and non-judgment debtor third party Sickness, Accident, Disability Indemnity Trust 2005

---

[1]     Docket entry numbers in this Memorandum Opinion and Order refer exclusively
to those in case number 11 Civ. 1590.

Dockets.Justia.com

("SADI") filed an application for an Order to Show Cause as to why an order should not be entered, pursuant to New York Civil Practice Law and Rules ("CPLR") section 5240 and Federal Rule of Civil Procedure 69, limiting the restraining notices to allow them to pay certain death benefits to beneficiaries of life insurance policies purportedly held in trust. In the application, GMT represented that the restraining notices were also impairing its ability to maintain ordinary commercial banking relationships and pay operational expenses, but indicated that those issues were being negotiated with Universitas and financial institutions and were likely to be resolved consensually.[2]  The Court entered the order to show cause on November 14, 2014.

Non-parties Gerald H. Williams, Keith Kornovich, Mark Kornovich, and Minneapolis Trailer Sales, Inc. (the "Beneficiaries"), who claim that they are entitled to the transfer of certain insurance policies currently held in the name of GMT, each move separately for a protective order and for sanctions against Universitas for allegedly unlawfully restraining life insurance policies written by Lincoln Financial Group ("Lincoln") in which the Beneficiaries claim interests. Universitas moves, pursuant to CPLR section 5225(b) and Federal Rule of Civil Procedure 69, for turnover of a certain insurance policy held by GMT, the beneficiary and

---

[2]      The Court entered a consent order modifying the restraining notices issued to allow GMT to enter into new banking relationships, subject to certain restrictions, on December 31, 2015 (docket entry no. 544).

GMT, SADI, and certain other Carpenter affiliates are apparently in the business of providing life insurance benefit arrangements under which employer entities and/or the Carpenter affiliates pay premiums on policies that are held by the Carpenter affiliates and death benefits payable on the policies are subject to certain claims of the affiliates. The arbitration award and judgment in Universitas' favor arise from one such arrangement.

SADI, which is not a judgment debtor, claims that third parties are refusing to deal with it because of its affiliation with judgment debtors and/or Carpenter affiliates whose names are similar to those of fraudulent conveyance judgment debtors. It requests an instruction or other clarification that it is not the subject of Universitas' restraining orders. This issue, which the parties have undertaken to resolve consensually, is not addressed in this Memorandum Opinion and Order.

insurer of which are not parties to this action.

Upon review of the submissions in connection with the applications and motions, it became clear to the Court that the resolution of the controversies concerning the insurance policies would require determinations as to the nature and extent of the rights of GMT, relevant beneficiaries, and possibly other parties in those policies. The various participants in these proceedings take diverse positions as to the extent, if any, to which the subject insurance policies and/or their proceeds constitute property of GMT that is subject to execution in aid of collection of the judgment in favor of Universitas. Prior to the hearing on the Order to Show Cause, the Court entered an order directing GMT, SADI, and the various movants to "address [at the hearing] whether motions for protective orders modifying restraining notices and for turnover of assets are appropriate vehicles in this federal action for determination of interests of judgment debtor Grist Mill Trust, the other movants, and unrepresented third parties in the disputed assets. Specifically, the movants should address whether the pending summary proceedings concerning disputed legal and factual issues should be dismissed without prejudice to plenary proceedings in appropriate fora with all necessary parties joined." (Docket entry no. 532.)

The Court held a hearing on December 16, 2014. Post-hearing submissions were filed on December 19, 2015. The Court has carefully considered the submissions and arguments of the Beneficiaries, GMT, SADI, and Universitas and, for the following reasons, the motions are dismissed and the order to show cause is withdrawn to the extent it concerns the payment of insurance proceeds, without prejudice to appropriate separate proceedings in fora of competent jurisdiction concerning the parties' respective rights and obligations in connection with the disputed insurance policies.

<u>DISCUSSION</u>

It is well settled that, because the federal courts are of limited jurisdiction, the Court may, at any stage of the proceedings, raise the question of subject matter jurisdiction and

dismiss pending litigation if such jurisdiction is found to be lacking.  Fed. R. Civ. P. 12(h)(3);

John Birch Soc'y v. National Broadcasting Co., 377 F.2d 194, 199 (2d Cir 1967).

The pending order to show cause and motions, having been initiated in these

cases after judgment was entered and in connection with collection efforts, invoke the court's

ancillary jurisdiction.  The principal questions before the Court are whether such ancillary

judgment enforcement jurisdiction extends to the determination of disputes as to whether

particular property belongs to the judgment debtor and, if such jurisdiction exists, whether the

Court will exercise that jurisdiction where potentially interested parties are absent and other fora

and procedural mechanisms are available.

The Supreme Court recognized in Peacock v. Thomas that, without "the use of

ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent

power to enforce its judgments . . . the judicial power would be incomplete and entirely

inadequate to the purposes for which it was conferred by the Constitution."  516 U.S. 349, 356

(1996) (internal quotation omitted).  In Peacock, the Court nonetheless held that a post-judgment

determination that a non-party individual was liable for the obligation of the judgment-proof

corporate debtor on the basis of veil-piercing was beyond the proper scope of ancillary

jurisdiction in aid of judgment enforcement.  Id., at 358-59.  The Court characterized attachment,

mandamus and garnishment proceedings involving third parties as falling within a federal

court's ancillary enforcement jurisdiction, id., at 356, but "cautioned against the exercise of

jurisdiction over proceedings . . . where the relief [sought is] of a different kind or on a different

principle than that of the prior decree," id., at 358 (internal quotation omitted).

In Epperson v. Entertainment Express, Inc., 242 F.3d 100 (2d Cir. 2001), the

Second Circuit concluded that "fraudulent conveyance actions operate as simple collection

mechanisms; they do not present a substantive theory seeking to establish liability on the part of

a new party not otherwise liable."  Id., at 107.  The Circuit thus held that "claims for fraudulent

conveyance were within the scope of the enforcement jurisdiction of the district court"

notwithstanding the limited parameters of such jurisdiction as delineated by the Peacock Court.

Id.

        In this case, prior to the instant motion practice, the Court entertained post-

judgment fraudulent conveyance-based claims initiated as turnover motions against GMT and

other entities closely related to the judgment debtor Nova, in which the funds that were the

subject of the judgment against Nova were traced to GMT and its affiliates, and judgment was

entered against GMT and other affiliates for the amounts of funds fraudulently conveyed to or

through each of them.  (See docket entry nos. 341 and 474.)  The judgments did not rely upon

any separate bases for liability of the transferee entities, and no issues of competing claims of

ownership of particular assets were implicated.  By contrast, the instant motions and applications

for the turnover of insurance proceeds, protective orders, sanctions, and transfers of policies are

premised on the assertion of rights based on trust agreements, insurance policies, and other

contracts that were not involved in the underlying arbitration and original judgment enforcement

proceedings, nor implicated in the subsequent fraudulence conveyance proceedings.  The

movants' theories for recovery from the subject property are wholly separate from the theories

upon which judgments were entered previously.  Not only are there disputes among the parties

before the Court, but it appears that other beneficiaries, insurance companies, and policy

premium payors who are not involved in these proceedings may have interests in or concerning

the policies at issue here.

        Such attenuated proceedings are well beyond the scope of the ancillary

jurisdiction that is necessary and appropriate to ensure that the Court can "function successfully,

that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  See

Peacock, 516 U.S. at 354 (internal punctuation and citation omitted); Estate of Ungar v. Orascom

Telecom Holding S.A.E., 578 F. Supp. 2d 536, 548-51 (S.D.N.Y. 2008) (exercise of ancillary

enforcement jurisdiction inappropriate where determination sought is in the nature of alter-ego theory).

Accordingly, the Court will dismiss without prejudice the motions and will withdraw the order to show cause insofar as they are dependent on the determination of competing claims of rights in assets or the rights of absent parties. Specifically, the protective order motions of the Beneficiaries will be dismissed, as they seek judicial approval of stipulations providing for the relinquishment of GMT's claims of rights in insurance policies for consideration that Universitas argues is inadequate. Universitas' turnover motion will also be dismissed, as it turns on the premise that insurance policy proceeds currently in the hands of a third party insurance company under a policy with a named beneficiary other than GMT are the property of GMT and thus subject to execution.

The Beneficiaries' applications for sanctions must likewise be dismissed, as their assertions of impropriety rest on the same legal assertions concerning rights in the policies.

Even if ancillary enforcement jurisdiction is pliable enough to empower the Court to determine these competing claims to the insurance policies and proceeds, the Court declines to exercise the jurisdiction, as state court and separate federal proceedings (to there extent there are independent bases for federal jurisdiction) are available to the interested parties, and it appears that necessary parties have not been joined in at least some of the instant proceedings. Furthermore, given the scope of GMT's business and similar business issues of affiliated judgment debtors, engagement of the substance of disputes regarding the judgment debtors' rights in particular assets would portend extensive litigation unrelated to the original subject matter of the captioned actions, which would be an inappropriate use of scarce judicial resources insofar as such controversies were presented as ancillary enforcement disputes in connection with the captioned actions. See, e.g., Priestley v. Panmedix Inc., 18 F. Supp. 3d 486, 496 (S.D.N.Y. 2014) (declining, on grounds of judicial efficiency, to resolve complex post-judgment

fee dispute where debtor claimed state law allowed it to proceed against 20 creditors, in part because the debtor was not precluded from proceeding against creditors in state court).

The question of the effect of the restraining notices on GMT's ability to conduct banking operations has, as noted above, been resolved by consent order. The Court will consider any stipulation or proposed order concerning the relationship of SADI to the instant proceedings that may be presented to the Court in the future. Similarly, the Court will consider any consent application concerning the scope and effect of the restraining order served on The Penn Mutual Life Insurance Company (see docket entry no. 543).

C O N C L U S I O N

For the foregoing reasons, GMT and SADI's applications for protective orders, the Beneficiaries' motions for protective orders and for sanctions, and Universitas' motion for turnover are each denied, and the Court's Order to Show Cause is withdrawn, without prejudice to appropriate proceedings in fora of competent jurisdiction.

The Order resolves docket entry numbers 498, 502, 507, and 517.

SO ORDERED.

Dated: New York, New York
      January 5, 2015

/s/ Laura Taylor Swain<br>
LAURA TAYLOR SWAIN<br>
United States District Judge

# EXHIBIT SEVEN

Judge Swain's March 31, 2020 Order

The following transaction was entered on 4/1/2020 at 9:48 AM EDT and filed on 3/31/2020
Case Name:        Universitas Education, LLC v. Nova Group, Inc.
Case Number:      1:11-cv-01590-LTS-HBP
Filer:
WARNING: CASE CLOSED on 06/07/2012
Document Number: 661

Docket Text:
**ORDER: The Court has received and reviewed in their entirety Plaintiff's March
23, 2020, letter motions requesting entry of judgment against Moonstone
Partners, LLC, Benistar Admin Services, Inc. ("BASI"), and Molly Carpenter,
(Docket Entry Nos. 658, 659), as well as the March 30, 2020, letter from counsel
for those entities opposing entry of judgment (Docket Entry No. 660). Plaintiff's
letter motions request relief that is not enumerated in NYSD Local Civil Rule
7.1(d), which describes applications which may be brought by letter motion.
Accordingly, the motions are DENIED without prejudice to formal motion practice
in compliance with the relevant federal, local, and individual procedural rules of
Court. Any such motion must address the legal basis, if any, for the Court's
exercise of personal jurisdiction over the non-party entities named in the above-
referenced letter motions, whether such a motion is the appropriate procedural
mechanism by which the Court can enforce its Memorandum Order confirming
the arbitration award in this case (Docket Entry No. 40) against non-parties to the
underlying litigation, and whether such motion practice is consistent with the
limitations of ancillary jurisdiction as described in Peacock v. Thomas, 516 U.S.
349 (1996), and the Court's order interpreting Peacock and denying Plaintiff's
prior turnover motion in this case. See Docket Entry No. 545. Any such motion
must also address the legal and factual basis for the requested judgment amount
in light of any recoveries Plaintiff has already obtained. (Signed by Judge Laura
Taylor Swain on 3/31/2020) (mro)**