

**GREEN &**
**SKLARZ** LLC
Attorneys at Law
www.gs-lawfirm.com

**Jeffrey M. Sklarz**
Phone: (203) 285-8545 x101
Direct:  (203) 361-3135
Fax:     (203) 823-4546
jsklarz@gs-lawfirm.com

One Audubon Street, 3rd Floor
New Haven, CT 06511

June 7, 2021

The Honorable Robert M. Spector
United States Magistrate Judge
141 Church Street
New Haven, CT 06510

> **Re:   Universitas Education, LLC v. Benistar, Civil Action No. 3:20-cv-738**
> **Discovery Dispute Submission by Grist Mill Partners, LLC**

Dear Judge Spector:

We are counsel to Grist Mill Partners, LLC ("GMP"). GMP is a single-asset real company that's sole asset is real estate located at 100 Grist Mill Road, Simsbury, Connecticut (the "Property"). The Property consists of office and industrial use spaces. From its inception, GMP's sole source of income has been rents derived from the Property.

The plaintiff, Universitas Education, LLC (the "Plaintiff" or Universitas"), asserts two claims against GMP: (1) reverse veil piercing and (2) unjust enrichment. The Court (Meyer, USDJ) previously dismissed the unjust enrichment claim. GMP has objected to the repleading of both claims. Plaintiff should not be able to replead the reverse veil piercing claim as to GMP since it was not dismissed. Further, repleading the unjust enrichment claim would be futile. ECF Nos. 132, 118, 110.

## BACKGROUND

The underlying facts that led to Plaintiff's judgment are set forth in *Universitas Educ., LLC v. Nova Group, Inc.*, 2013 WL 6123104, at *1 (S.D.N.Y. Nov. 20, 2013 (the "Nova Case").[1] In short, in the Nova Case, the United States District Court for the Southern District of New York (Swain, U.S.D.J.), confirmed an arbitration award in favor of Plaintiff in the amount of $26,525,535.98 (the "Judgment").

---

[1] Previously, Judge Swain had confirmed the underlying arbitration award. *See Universitas Educ., LLC v. Nova Group, Inc.*, 2012 WL 2045942 (S.D.N.Y. Jun. 5, 2012), *aff'd*, 513 Fed. Appx. 62 (2d Cir. 2013). The arbitration was originally commenced in 2010 and heard in January 2011. *Id.* at *1

June 7, 2021
Page 2

In the arbitration that led to the Judgment, Plaintiff 'claimed that it should have received insurance proceeds, based on insurance policies purchased on the life of Sash A. Spencer (the "Spencer Life Insurance Proceeds"), which were later determined to have been wrongfully diverted by Daniel Carpenter through a series of transfers. The District Court also held that "Mr. Carpenter caused the Life Insurance Proceeds to be transferred to and among entities that he controlled, either directly or indirectly, including Moonstone, for the personal benefit of Mr. Carpenter and his affiliates." *Id.* at *7. Plaintiff commenced post-judgment collection proceedings in 2013.

In considering this discovery dispute it is important for the Court to know that:

1.      As Plaintiff will concede, GMP never received any of the Spencer Life Insurance Proceeds;

2.      Despite a decade of litigation, there has never been any evidence offered in any proceeding that GMP did anything improper (it is merely owned by a company controlled by Mr. Carpenter); and

3.      Plaintiff has not made any fraudulent transfer claims against GMP, and an such action would be time barred.

## DISCOVERY DISPUTE

There are two disputes before the Court:

1.      The scope of the documents GMP must produce; and

2.      The propriety of Plaintiff deposing Mr. Carpenter, yet again, and requesting documents from him that Plaintiff knows he does not have access to.

Copies of GMP's responses to written discovery are attached hereto as <u>Exhibit A</u>.

## 1.      Scope of Document Production

With respect to the GMP Discovery Responses/Objections, Universitas is not entitled to the documents requested because, as Universitas alleged in the proposed Amended Complaint, *all of the conduct that allegedly entitles it to a judgment against GMP occurred prior to 2014*. Therefore, information subsequent to that timeframe is not material to any fact at issue in this case. Either GMP was an alter-ego of Mr. Carpenter when the allegedly wrongful conduct occurred, or it wasn't. Further, as alleged (or concluded) by Universitas, all of the funds related to the Spencer Life Insurance Proceeds were dissipated by 2014. Because Universitas has already taken discovery from the entities that received those funds, Univeritas has already learned – or should have learned – that it cannot trace any portion of the Spencer Life Insurance Proceeds (directly or indirectly) to GMP, either *before* or *after* 2014.

{00221854.2 }

Further, from 2014 until this lawsuit was filed, Universitas made no effort to take discovery from GMP. This 6-year gap clearly implicates the doctrine of laches, even if Connecticut's 6-year statute of limitations does not specifically apply. GMP has been, and remains, a single-asset real entity with no operations other than the ownership and maintenance of Property. Accordingly, all of these claims are time-barred. These issues were laid out by Curaleaf years ago (see letter to Judge Swain attached hereto as <u>Exhibit B</u> from counsel to Curaleaf). If Plaintiff had been concerned about GMP's alleged "role" in the dissipation of the Spencer Life Insurance Proceeds, it should have done *something* prior to 2020.

With respect to the provision of documents, Plaintiff had limited the request to transfers/payments outside the ordinary course of business. In response, GMP provided its cash receipts journal for four years prior to the date this action was filed. Four years is the statute of limitations for a fraudulent transfer action. This documents demonstrate that GMP did not receive any income other than from appropriate sources.

"Parties may 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case.' FED. R. CIV. P. 26(b)(1). The proportionality determination limits the scope of discovery by considering the importance of the issues at stake, the 'amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense . . . outweighs the likely benefit' of the discovery sought.' FED. R. CIV. P. 26(b)(1)." *Schachter* v. *Sunrise Senior Living Management*, 2020 U.S. Dist. LEXIS 15336, at *6-7 (D. Conn. Jan. 30, 2020) (cleaned up).

Discovery must be proportional and consistent with the claims made. Here, Plaintiff seeks the production of documents it already s or do not exist, or which should have been pursued by Plaintiff years ago within the innumerable other actions it has prosecuted concerning recovery of the Spencer Life Insurance Proceeds. As to GMP, this case is *only* about whether GMP was an alter ego of Mr. Carpenter in 2014, or before.

With respect to the reverse veil piercing claim (which is also time-barred), Plaintiff has already had multiple opportunities in multiple fora to obtain pre-2014 information. Post-2014 information is irrelevant because if GMP was not an alter-ego of Mr. Carpenter in 2014, when the Spencer Life Insurance Proceeds were dissipated, Plaintiff has no viable claims against GMP.

Again, other than it being owned by two entities controlled by Mr. Carpenter, Plaintiff cannot offer any explanation as to why GMP should be disregarded as an entity. *See City of South Bend Indiana* v. *Illinois Union Ins. Co.,* 2017 U.S. Dist. LEXIS 229529, at *7 (S.D. Ind. Dec. 8, 2017) ("The 'you never know what you could find' argument presented by Plaintiffs is the very definition of an improper discovery fishing expedition, which by definition fails to satisfy the proportionality requirements of Fed. R. Civ. P. 26(b)(1)."); *Cheri* v. *Linvas Corp.,* 2019 U.S. Dist. LEXIS 234752, at *9 (D.N.J. May 31, 2019) (same). In other words, nothing

Plaintiff is seeking in post-2014 discovery could possibly be material a claim that GMP was an alter-ego of Mr. Carpenter in 2014 or before.

In sum, unless Plaintiff can credibly allege that GMP received Spencer Life Insurance Proceeds (which it can't), there is no basis for obtaining any information from GMP after 2014.

As to unjust enrichment, Plaintiff will concede GMP never received any Spencer Life Insurance Proceeds. Therefore, no documents exist regarding this claim.

2.    **Carpenter/Wescott Subpoena**

As to the Subpoenas, the document requests contained therein are entirely inappropriate. The requests improperly seek personal records as a proxy for obtaining documents from the so-called "Benistar" defendants, most of which claims have had all claims against them dismissed. Thus, the Subpoenas are overly broad and not proportional to discovery in this case. Further, they appear to concern claims for fraudulent transfer, which are similarly time-barred. Universitas should not be allowed to re-package its previously dismissed fraudulent transfer claims as unjust enrichment or alter-ego claims. *See Universitas Education, LLC v. TD Bank, N.A.*, 2015 WL 9304551, *3 (S.D.N.Y. Dec. 21, 2015) ("Time barred claims cannot be revitalized by tricks of pleading").

Additionally, as set forth above, none of the information sought is relevant to any claims asserted against GMP. Either GMP received the Spencer Life Insurance Proceeds, or it did not. Despite litigating this matter since 2009, there has never been any claim that GMP received those funds. In fact, Universitas has not even alleged that GMP received any Spencer Life Insurance Proceeds. Therefore, the Subpoenas seek information that is neither material nor proportionate to the issues presented in this case.

Finally, given the overbroad nature of the Subpoenas, they appear to seek information protected by the attorney client or work-product privilege.

\*                    \*                    \*

For these reasons, the Court should sustain GMP's discovery objections. Thank you.

Respectfully submitted,

Jeffrey M. Sklarz
Counsel for Grist Mill Partners, LLC

JMS:nyg
Enclosures (2)

{00221854.2 }

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC | |
| *Plaintiff,* | CASE NO. 3:20-cv-00738-JAM |
| v. | APRIL 16, 2021 |
| BENISTAR, ET AL. | |
| *Defendants.* | |

**DEFENDANT GRIST MILL PARTNERS, LLC'S RESPONSES AND OBJECTIONS TO
PLAINTIFF UNIVERSITAS EDUCATION, LLC'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION**

COMES NOW Grist Mill Partners, LLC (hereinafter "GMP" or "Defendant") and for its

Responses and Objections to Plaintiff's First Set of Requests for Production states as follows:

**GMP GENERAL OBJECTIONS AND STATEMENTS**

1.   These responses are made without waiver of and with preservation of:

(a)      all objections as to competency, relevancy, materiality, privilege and admissibility of

the responses and the subject matter thereof as evidence for any purpose and in any further

proceeding in this action (including the trial of this action) and in any other action;

(b) the right to object to the use of any such responses or the subject matter thereof, on any

ground in any further proceeding in this action (including the trial of this action) and any other

action;

(c) the right to object on any ground at any time to a demand or request for further response

to these or any other requests or other discovery proceedings involved or related to the subject matter

of the discovery to which these responses are provided; and

(d) The right at any time to review, correct, add to, supplement or clarify any of the responses

contained herein.

2. The following responses are based upon a good faith review by GMP and based upon information and documents presently available to and located by GMP and its attorneys.

3. GMP is willing to discuss its objections and to attempt in good faith to resolve them or narrow the differences between the parties.

4. These responses represent the best information available at this time, and GMP specifically reserves the right to supplement and/or amend its responses if and when additional information becomes available. GMP therefore reserves the right to amend and supplement its responses to these discovery requests as further information and documents become known and available to it.

5. GMP objects to each interrogatory and/or request for production to the extent it requests documents or electronically stored information which is not reasonably accessible. To the extent electronically stored information (or copies of hard copy documents) exists and is produced, GMP will produce such paper copies, or as branded .pdf documents, or other such format as mutually agreed to by the Parties.

6. These general objections and statements apply to all of Plaintiff's discovery requests. To the extent that the specific objections and/or statements are made herein in response to specific requests for production, those specific citations are provided because they are believed to be particularly applicable to the request and are not to be construed as a waiver of any other General Objections and/or Statements applicable to information or documents and things falling within the scope of these requests for production.

## DEFINITIONS

1. "You," "your," or "GM Partners" refers to Grist Mill Partners, LLC including GM Partners'

attorneys, accountants, employees, agents, and/or any person who has acted on GM Partners' behalf, including counsel.

**OBJECTION: GM Partners is a stand-alone business. By including various third-party professionals in the definition of "GM Partners," Plaintiff is conflating any law or accounting firm that supplied services with their respective client. Thus, this definition is vague and harassing and, therefore, beyond the scope of permissible discovery and disproportionate to this case.**

2.    "Property" is defined to mean any item within 11 U.S.C. §101, and further means any tangible object of any nature, including but not limited to, money, real estate, real property, incidental property, cash, equity, securities, debt, bonds, notes, insurance policies, anything capable of being owned, used, acquired, enjoyed, transferred, apportioned, distributed, assigned, and/or disposed of, and/or any physical thing inhering property rights of any form. As used herein, "property" shall refer to ultimate ownership and shall include anything owned by a corporation, LLC, trust, and/or other entity, which in turn is owned by another entity, and is ultimately owned by you, under your control and/or a trust of which you are a beneficiary.

**OBJECTION: This definition is vague overly broad and, in any event, exceeds the scope of the definition of "property" in 11 U.S.C. § 101. Further, the proposed definition of property exceeds any reasonable definition of property. Therefore, this definition is overly broad, unduly burdensome, and requests information that is disproportionate to this case.**

3.    "Asset" and/or "assets" shall mean anything of value, monetary or otherwise, and shall include nontangible things such as accounts receivable, claims at law, bank accounts, intellectual property, and/or anything capable of potentially generating future revenue and/or accruing interest.

## INTERROGATORIES

**Interrogatory No. 1:** Identify any assets and/or property owned, controlled, and/or in the custody of GM Partners, including property and/or assets located outside of the United States of America.

**Answer: Objection. This interrogatory is directed toward post-judgment collection activity**

and therefore is premature.  Further, the interrogatory is overly broad, unduly burdensome, and requests information disproportionate for this case.

Notwithstanding and subject to the above objections, GM Partners only assets are` the real property located at 100 Grist Mill Road, Simsbury, CT (the "Property") [subject to the mortgage to TD Bank], and inchoate claim against Curaleaf for breach of lease.  GMP also holds a bank account at TD Bank with no material funds in it.


**Interrogatory No. 2:** Identify any account in which you have an interest, whether with a bank, thrift, credit union, saving or mutual banks, securities dealer, mutual fund, brokerage, and/or any other investment account for the timeframe provided, including any such accounts outside of the United States of America.

    a.  Identify all signatories for any accounts listed in response to Interrogatory No. 2.

**Answer:** Objection.  This interrogatory is directed toward post-judgment collection activity and therefore is premature.  Further, the interrogatory is overly broad, unduly burdensome, and requests information disproportionate for this case.


**Interrogatory No. 3:** Identify any person(s) in which you have an ownership interest.

**Answer:** Objection this interrogatory is overly broad unduly burdensome and vague and therefore not likely to lead to the production of admissible evidence and disproportionate to this case.

Notwithstanding and subject to the above objections, GM Partners assumes the Plaintiff is referring to "entities' not "individuals" and based on that definition: none.

**Interrogatory No. 4:** Identify all person(s) which have transferred property and/or assets to you within the relevant timeframe.

    a. Identify all persons to which you have transferred property and/or assets within the timeframe provided.

**Answer: GMP objects to this request on the ground that it is overly broad and fails to identify the information requested with reasonable particularity. GMP further objects to this request on the ground that "relevant timeframe" is vague and ambiguous.**

    b. Identify any contracts concerning the sale of any assets and/or property.

**Answer: GMP objects to this request on the ground that it is overly broad and fails to identify the information requested with reasonable particularity. GMP further objects to this request on the ground that "transfers" is vague and ambiguous.**

**Interrogatory No. 5:** Identify all expenditures within the relevant timeframe made by GM Partners and/or made through any account owned and/or controlled by GM Partners. In lieu of providing an answer, GM Partners can provide relevant bank and other account records reflecting such transfers.

**Answer: GMP objects to this request on the ground that it is overly broad and fails to identify the information requested with reasonable particularity. GMP further objects to this request on the ground that "transfers" is vague and ambiguous.**

**Interrogatory No. 6:** Identify any defense(s) to the claims asserted against GM Partners in the

Complaint.

**Answer: GMP objects to this request because the defenses to the claims asserted against GMP**

**will be filed with the answer.**

## REQUESTS FOR PRODUCTION

Request No. 1: All documents concerning any property and/or assets owned, wholly or in part, by you, directly and/or indirectly.

**Response: Objection. This interrogatory is directed toward post-judgment collection activity and therefore is premature. Further, the interrogatory is overly broad, unduly burdensome, and requests information disproportionate for this case.**

**Notwithstanding and subject to the foregoing objection: the deed to the Property has previously been provided to Plaintiff.**


Request No. 2: All documents concerning any federal and/or state income tax returns filed by you (including all schedules, attachments, and worksheets) within the relevant timeframe.

**Response: GMP objects to this request on the ground that it is overly broad and fails to identify the information requested with reasonable particularity. GMP further objects to this request on the ground that "relevant timeframe" is vague and ambiguous.**


Request No. 3: All documents concerning any federal and/or state property taxes paid by you (including all schedules, attachments, and worksheets) within the relevant timeframe.

**Response: GMP objects to this request on the ground that it is vague and ambiguous as there are no federal or state property taxes. Further, local property tax records are publicly available.**

**Request No. 4:** All documents concerning any foreign tax returns filed by you, for any country, within the relevant timeframe.

**Response: None.**

**Request No. 5:** All documents concerning your response to Interrogatory No. 1.

**Response: See objection to interrogatory no. 1.**

**Request No. 6:** All documents concerning your response to Interrogatory No. 2.

**Response: See objection to interrogatory no. 2.**

**Request No. 7:** All documents concerning your response to Interrogatory No. 3.

**Response: None.**

**Request No. 8:** All documents concerning your response to Interrogatory No. 4.

**Response: See objection to interrogatory no. 4.**

**Request No. 9:** All documents concerning your response to Interrogatory No. 5.

**Response: See objection to interrogatory no. 5.**

**Request No. 10:** All documents concerning your response to Interrogatory No. 6.

**Response: See objection to interrogatory no. 6.**

<u>Request No. 11</u>: All documents and/or communications concerning any defendant, judgment debtor, and/or affiliate thereof.

**Response:** **GMP objects to this request on the ground that it is overly broad, vague, fails to identify the information requested with reasonable particularity and does not specify a limit as to the time frame or context. Therefore, this request is overly broad, unduly burdensome, and disproportionate to appropriate discovery in this case.**

THE DEFENDANT
GRIST MILL PARTNERS, LLC

By:    /s/ Jeffrey M. Sklarz
       Lawrence S. Grossman (ct15790)
       Jeffrey M. Sklarz (ct20938)
       Green & Sklarz LLC
       One Audubon Street, Third Floor
       New Haven, CT 06511
       (203) 285-8545
       Fax: (203) 823-4546
       lgrossman@gs-lawfirm.com
       jsklarz@gs-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing interrogatories and requests for production were sent via electronic mail on April 16, 2021 to the following counsel of record:

Dan E. LaBelle
labelle@halloran-sage.com
Halloran & Sage, LLP
315 Post Road West Westport, CT 06880
Tel: (203) 227-2855
Fax: (203) 227- 6992

Michael R. McPherson
mcpherson@halloran-sage.com
Halloran & Sage, LLP
One Goodwin Square 225 Asylum Street
Hartford, CT 06880
Tel: (860) 241-4079
Fax: (860) 548-0006

Grayson Colt Holmes
gholmes@odglaw.com
Ouellette, Deganis, Gallagher & Grippe, LLC
143 Main Street
Cheshire, CT 06410
Phone: (203) 272-1157
Fax: (203) 250-1835

Joseph L. Manson III
jmanson@jmansonlaw.com
jlm0505@hotmail.com
Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
Tel. 202-674-1450
Fax 703-340-1642

/s/ Jeffrey M. Sklarz

# EXHIBIT B

# ROBINSON & COLE LLP

JOSEPH L. CLASEN

Chrysler East Building
666 Third Avenue, 20th Floor
New York, NY 10017
Main (212) 451-2900
Fax (212) 451-2999
jclasen@rc.com
Direct (212) 451-2910

February 10, 2014

**BY ECF & FACSIMILE: (212) 805-0426**

Honorable Laura Taylor Swain
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Universitas Educ., LLC v. Nova Group, Inc.,* USDC, S.D.N.Y., 1:11-cv-1590-LTS-HBP; *Nova Group, Inc. v. Universitas Educ., LLC,* USDC, S.D.N.Y., 1:11-cv-8726-LTS

Dear Judge Swain:

We represent nonparty CuraLeaf, LLC ("Curaleaf"). CuraLeaf will suffer irreparable harm by tomorrow, February 11, 2014 as a result of the Court's granting of Universitas Education, LLC's ("Universitas") application for preliminary injunction dated January 13, 2014 (Doc. 366) (the "Injunction"). For reasons discussed below, CuraLeaf seeks emergency relief from this Court in the form of a *limited* modification of the Injunction to permit Grist Mill Partners, LLC ("GMP") to complete its obligations under the Letter of Intent by entering into a written lease with CuraLeaf. As described below, no one disputes that Curaleaf has no affiliation with Mr. Carpenter and that Curaleaf and Mr. Carpenter entered into an arm's length agreement to enter a lease. However, Universitas refuses to consent to amending the Injunction to permit this lease unless Curaleaf agrees to enter into a side letter with Universitas which, among other things, provides for a cash payment of at least $250,000 to Universitas.

On January 28, 2014, the State of Connecticut selected CuraLeaf for an award of license (the "Conditional License") to produce medical cannabis at property to be leased by CuraLeaf from GMP located at 100 Grist Mill Road, Simsbury Connecticut. [1] Although CuraLeaf and its members are not directly or indirectly related to GMP or

*Law Offices*

BOSTON

PROVIDENCE

HARTFORD

NEW LONDON

STAMFORD

WHITE PLAINS

NEW YORK CITY

ALBANY

SARASOTA

*www.rc.com*

---

[1] The real property in question was purchased by GMP in 2007 and is subject to a mortgage in favor of TD Banknorth, N.A. dated August 30, 2007. A copy of the deed and mortgage are recorded on the land records and can be made available if there is any disagreement on this point. The acquisition of this property is unrelated to any funds diverted by Nova Group, Inc. in or after 2009.

12734516-v5

Daniel Carpenter or to any of Carpenter's entities, the Order materially affects CuraLeaf's rights under a Letter of Intent signed by CuraLeaf and GMP on November 5, 2013 as amended on January 9, 2014. CuraLeaf had no notice at the time that an Order to Show Cause was pending, and did not learn of the Injunction until February 5, 2014. Since that date, Curaleaf has attempted unsuccessfully to negotiate a consent by all parties to modify the Injunction. As discussed below, there is extreme exigency for this motion. If the motion to modify is not granted by tomorrow, **February 11, 2014**, CuraLeaf will suffer irreparable harm in that it will be unable to satisfy the conditions of the Conditional License award as set by the State of Connecticut.

Granting of the modification will not result in the dissipation of any of the assets of Mr. Carpenter or his entities, including GMP. Instead it will create substantially new asset value. Indeed, CuraLeaf submits that this is a unique opportunity to enhance the value of GMP (which would also benefit its creditors) which opportunity will be irrevocably lost if the injunction is not modified as requested.

The Letter of Intent as amended was shared with counsel for Universitas on Friday, and yesterday CuraLeaf provided a copy of the proposed lease. CuraLeaf attempted to resolve this matter without court intervention, but was unsuccessful. Despite CuraLeaf and Mr. Carpenter's agreement to enter into a side letter providing assurances that payments under the lease will be wired to a specific account covered by the Injunction as well as monthly statements, and other assurances as requested by Universitas, Universitas, would not agree to a stipulated modification of the Injunction unless CuraLeaf would pay $250,000.00 to Universitas for its consent.

***The Proposed Lease Creates Substantial Economic Value for GMP (and its Creditors).***

The economic terms set forth in the proposed lease provided to Universitas for its review provide substantial economic value to GMP (and hence to its creditors). Specifically, under the terms of the proposed lease, CuraLeaf agrees to pay $60,000 per month during the first two years of the lease, and $120,000 per month for the remaining term of the lease. These rental payments will exceed the rentals currently being paid to GMP by $60,000 per month after the first two years of the lease. In addition, the proposed lease contains an option to purchase which if exercised would result in CuraLeaf purchasing the property for $5,000,000. Although a formal appraisal has not been done, the tax assessor for the Town of Simsbury appraised the value of the property as of October 31, 2013 at $3,374,735, i.e., over $1.5 million less

than the option price set forth in the lease. CuraLeaf is obviously paying a premium for a use that is *unique* to CuraLeaf by virtue of its Conditional License from the State of Connecticut. The maximum number of licenses that the State intends to award have been awarded to applicants. Universitas' reasons for withholding consent to a modification are not related to the value of the transaction to GMP and its creditors.

### *The Proposed Modification to Permit Entry Into The Lease Does Not Create Additional Risk For Universitas.*

If the Injunction is modified for the limited purpose of permitting GMP to enter into the proposed lease, Universitas will not be at any additional risk. Any rents, option payments or security deposits to be paid under the proposed lease will be made to GMP and will be subject to the Injunction. Further, if the purchase option is exercised (which is not foreseen in the reasonably near future), all proceeds payable to GMP would be subject to the injunction.

It should be noted that there is a current tenant in the facility making rental payments to GMP. Rental payments by the current tenant are protected by the Injunction to the same extent as rents to be paid by CuraLeaf under the proposed lease. Mr. Carpenter and his entities may not transfer those payments except to the extent provided in the Injunction. In submitting the proposed order that resulted in the signed injunction, Universitas did not request any additional protections.

Notwithstanding that the Injunction protects against dissipation of moneys to be paid under leases, Universitas has expressed concern that Mr. Carpenter will run off with the rent payments under the lease to CuraLeaf. Universitas therefore asked that CuraLeaf's payments under its lease be treated differently, namely that they be wired to GMP's account at TD Bank, and that Universitas be given copies of the bank statements. CuraLeaf and Carpenter proposed a side letter that would meet these newly raised security concerns, notwithstanding that they were not asked for when Universitas requested the Injunction. However, Universitas would not agree to present a stipulated motion for modification to the Court absent an additional payment for its consent.

### *Universitas's Initial Demand For $500,000 For Its Consent to a Modification.*

In an effort to avoid dispute and unnecessary time of the Court, CuraLeaf and GMP were willing to enter into a side letter as requested by Universitas, in exchange for presenting a stipulated modification to the Court for approval. However, Universitas

imposed an additional demand. It initially demanded that Curaleaf pay it the sum of $500,000:

> Given that Curaleaf is seeking Universitas' consent to a transaction that may cause Mr. Carpenter to violate the Court's Order, and may further hurt Universitas' efforts to collect the judgment, and is seeking such consent on extremely short notice, Curaleaf agrees to pay $500,000.00 to Universitas within 10 business days of this agreement, as consideration for Universitas' blessing of the lease.

The demand for payment is overreaching. CuraLeaf has done nothing to cause Mr. Carpenter to violate a court order. Further CuraLeaf is not seeking Universitas's consent to the lease. Rather, CuraLeaf sought Universitas's cooperation to avoid a contested hearing on a motion to modify the Injunction to permit a transaction that is beneficial to Universitas and to GMP's creditors. The attempt to extract $500,000 for the cooperation of counsel to avoid needless waste of the Court's time is unconscionable. Universitas has now reduced their demand to $250,000.

***Exigent Circumstances Exist For This Emergency Motion: Unless The Injunction Is Modified Immediately CuraLeaf (and GMP) Will Suffer Enormous and Irreparable Loss.***

In the fall of 2013, CuraLeaf incurred over $250,000 in expenses for attorneys', architects' and consultant's fees to obtain zoning approvals necessary to use the GMP property as a licensed medical marijuana production facility. On November 5, 2013, as it was in the process of preparing to obtain the necessary zoning approvals, CuraLeaf entered into a Letter of Intent with GMP to lease the Simsbury property on the same economic terms now set forth in the proposed lease. In reliance on the Letter of Intent, CuraLeaf prepared and submitted an extensive application to the State of Connecticut Department of Consumer Protection for licensure as a medical marijuana production facility. In its application, CuraLeaf stated that its growing operations would be conducted in a secure facility located at 100 Grist Mill Road, Simsbury, Connecticut, and that CuraLeaf had a Letter of Intent to lease that property from GMP. CuraLeaf submitted a non-refundable application fee of $25,000 with its application. In total, CuraLeaf incurred over $250,000 on expert fees, attorneys' fees, architect fees and other expenses in supporting its license application so as to demonstrate its ability to perform if CuraLeaf were awarded a license.

On January 28, 2014, after a lengthy and stringent application review process, the State of Connecticut Department of Consumer Protection selected four applications for the award of licenses to grow medical cannabis in the State. CuraLeaf was one of the four successful applicants. CuraLeaf's license is expressly conditioned on CuraLeaf paying a further $75,000 non-refundable license fee (which it has already done) and posting security in the amount of $2,000,000 by February 11, 2014. The $2,000,000 is forfeitable if CuraLeaf is unable to satisfy the commitments made in its license application, including its ability to successfully complete the construction of a fully operational production facility at 100 Grist Mill Road, Simsbury, Connecticut.[2] Although CuraLeaf has a Letter of Intent to lease those premises, state regulations require a written lease that limits the landlord's right of access to the premises. Only authorized personnel may use the facility.

Late on February 5, 2014, CuraLeaf learned for the first time of the Injunction issued on January 13, 2014. If the Preliminary Injunction is not modified immediately, the parties will not sign the proposed lease agreement and CuraLeaf will not be able to satisfy one of the express conditions to the award of the Conditional License, and will be faced with the immediate loss of its economic expectations under the license and the loss of the substantial investment of over $250,000 in professional fees and expenses in successfully undertaking the application process and paying the $25,000 application fee and the $75,000 license fee.

Specifically, CuraLeaf cannot risk posting a forfeitable security deposit of $2,000,000, *which is required by February 11, 2014*, if it does not have a written lease agreement that satisfies state regulations. It is out of time. Unless the Injunction is modified as requested, CuraLeaf will lose millions in economic value. Extreme exigency exists to prevent irreparable harm to CuraLeaf. This harm is not outweighed by countervailing considerations. Indeed, the proposed lease benefits creditors of GMP.

Respectfully submitted,

Joseph L. Clasen

cc:    All counsel of record (*via ECF*)

---

[2] This is the address of the real property acquired by GMP in 2007.