## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>      Plaintiff,<br><br>v.<br><br>BENISTAR, ET AL.<br><br>      Defendants. | CASE NO. 3:20-cv-00738-JAM<br><br>August 2, 2021 |

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF MOTION TO HOLD DANIEL CARPENTER IN CIVIL CONTEMPT FOR NONCOMPLIANCE WITH DISCOVERY ORDER

TABLE OF CONTENTS

**INTRODUCTION**....................................................................................................1

**FACTUAL BACKGROUND**..............................................................................1

    **I.**      **Carpenter's Defiance of the Judiciary**.............................................3

    **II.**     **Carpenter's Litigation Strategy**.......................................................5

    **III.**    **Carpenter's Actions in this Proceeding**...........................................6

          a.   Frivolous and Improper Motions............................................7

          b.   Discovery Misconduct.............................................................7

          c.   Threats Against Opposing Litigants........................................7

          d.   False Statements......................................................................8

    **IV.**    **The Carpenter Subpoena**.................................................................8

          a.   Carpenter's Efforts to Quash the Subpoena............................8

          b.   Carpenter's Response to the Subpoena....................................9

**LEGAL STANDARD**..........................................................................................9

    I.       **Contempt Pursuant to Fed. R. Civ. P. 45**.........................................9

    II.      **Contempt Pursuant to the Court's Inherent Power**.........................10

**ARGUMENT**......................................................................................................11

    **I.**      **Carpenter's Responses Are False and He Controls Responsive Documents**....13

          a.   Response to Request No. 1......................................................14

          b.   Response to Request No. 2......................................................15

          c.   Response to Request No. 3......................................................16

          d.   Response to Request No. 4......................................................16

          e.   Response to Request No. 5......................................................17

     f.   Response to Request No. 6.................................................................................17

     g.   Response to Request No. 7.................................................................................18

**II.**     **Carpenter Violated the Discovery Order and Is in Contempt of Court**...........18

     a.   The Discovery Order was Clear and Unambiguous.........................................18

     b.   Carpenter Violated the Discovery Order.........................................................19

     c.   Carpenter Did not Diligently Attempt to Comply with the Discovery Order....21

**III.**     **Carpenter's Noncompliance was in Bad Faith**....................................................21

**IV.**     **The Court Should Impose the Sanctions Requested by Universitas**................23

**CONCLUSION**.........................................................................................................................25

TABLE OF AUTHORITIES

**Cases:**

*Adlife Mktg. & Communs. Co. v. Buckingham Bros., LLC*, No. 5:19-CV-0796 (LEK/CFH),
2020 U.S. Dist. LEXIS 148755 (N.D.N.Y. Aug. 18, 2020)........................................13, 23

*Aida Eng'g, Inc. v. Red Stag, Inc.*, 110 F.R.D. 650 (E.D. Wis. 1986)................................................12

*Alston v. Select Garages LLC*, 2013 U.S. Dist. LEXIS 93761 (S.D.N.Y. July 3, 2013).................19

*Ashley Homes of Long Island v. Arico*, No. CV 08-1616(ERK) (WDW),
2009 U.S. Dist. LEXIS 154397 (E.D.N.Y. July 31, 2009)...................................................23

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 279 F. Supp. 2d 341 (S.D.N.Y. 2003).................22

*Car-Freshner Corp. v. Scented Promotions, LLC*, No. 5:19-CV-1158(GTS/ATB),
2020 U.S. Dist. LEXIS 42902 (N.D.N.Y. Mar. 12, 2020)...................................................12

*Cobell v. Babbitt*, 37 F. Supp. 2d 6 (D.D.C. 1999).........................................................................10

*Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918 (S.D.N.Y. 1984)..............13, 16, 20

*Denton v. Rievley*, No. 1:07-CV-211,
2011 U.S. Dist. LEXIS 14696 (E.D. Tenn. Feb. 11, 2011)..................................................11

*Donato v. Fitzgibbons*, 172 F.R.D. 75 (S.D.N.Y. 1997)..................................................................22

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019).....................................................22

*Estate of Duckett v. CNN LLLP*, No. 5:06-cv-444-Oc-10GRJ,
2007 U.S. Dist. LEXIS 61930 (M.D. Fla. June 18, 2007)......................................................4

*Evans v. Scribe One Ltd. LLC*, No. CV-19-04339-PHX-DLR,
2019 U.S. Dist. LEXIS 200373 (D. Ariz. Nov. 19, 2019)....................................................16

*Flannigan v. Vulcan Power Grp., LLC*, No. 09-CV-8473 (LAP),
2019 U.S. Dist. LEXIS 115634 (S.D.N.Y. July 3, 2019)......................................13, 18. 20

*Glover v. Johnson*, 934 F.2d 703 (6th Cir. 1991)...........................................................................19

*Iantosca v. Benistar Admin Servs.*, Civil Action No. 08-11785-NMG,
2012 U.S. Dist. LEXIS 20693 (D. Mass. Feb. 17, 2012).......................................................6

*In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527 (Bankr. S.D.N.Y. 2007)...............................25

*In re Corso*, 328 B.R. 375 (E.D.N.Y. 2005)............................................................................23, 24

*In re Dunne*, No. 3:17-cv-1399 (MPS),
2018 U.S. Dist. LEXIS 166192 (D. Conn. Sep. 27, 2018)...............................................9, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177 (S.D.N.Y. 2006)...................13, 18

*In re Leary*, 620 B.R. 39 (Bankr. S.D.N.Y. 2020)......................................................................9, 21

*In re Men's Sportswear, Inc.*, 834 F.2d 1134 (2d Cir. 1987)............................................................12

*In re Residential Capital, LLC*, 571 B.R. 581 (Bankr. S.D.N.Y. 2017)...................................11, 12

*In re Teligent, Inc.*, 358 B.R. 45 (Bankr. S.D.N.Y. 2006).................................................................14

*In re Vivendi Universal, S.A.*, 2009 U.S. Dist. LEXIS 131833 (S.D.N.Y. July 10, 2009)...............14

*In re Weiss*, 703 F.2d 653 (2d Cir. 1983).........................................................................................20

*Israel v. Carpenter*, 95 Civ. 2703 (DAB) (JCF),
2000 U.S. Dist. LEXIS 13846 (S.D.N.Y. Sep. 22, 2000).......................................................2

*Israel v. Carpenter*, 2003 U.S. Dist. LEXIS 11356 (S.D.N.Y. July 7, 2003)..................................3

*Lavatec Laundry Tech. GMBH v. Voss Laundry Sols.*, No. 3:13-cv-00056 (SRU),
2018 U.S. Dist. LEXIS 144487 (D. Conn. Jan. 9, 2018)......................................................24

*Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362 (KAM)(ALC),
2011 U.S. Dist. LEXIS 28127 (E.D.N.Y. Mar. 18, 2011)......................................18, 19, 21

*Levin v. Tiber Holding Corp.*, 277 F.3d 243 (2d Cir. 2002)............................................................9

*MAS Wholesale Holdings LLC v. NW Rosedale Inc.*, No. 19-CV-1294 (PKC) (VMS),
2021 U.S. Dist. LEXIS 92562 (E.D.N.Y. May 14, 2021)....................................................24

*Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020)................................................................13, 18

*Nike, Inc. v. Wu*, 2020 U.S. Dist. LEXIS 9102 (S.D.N.Y. Jan. 17, 2020)......................................21

*NXIVM Corp. v. Bouchey*, No. 1:11-MC-0058 (GLS/DEP),
2011 U.S. Dist. LEXIS 123137 (N.D.N.Y. Oct. 24, 2011)..................................................22

*Rai v. WB Imico Lexington Fee, LLC*, 802 F.3d 353 (2d Cir. 2015)...............................................15

*Roadway Express v. Piper*, 447 U.S. 752 (1980)............................................................................10

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999)...............................10, 22

*Shillitani v. United States*, 384 U.S. 364 (1966)......................................................................25

*Sierra Club v. United States Army Corps. of Eng'rs*, 776 F.2d 383 (2d Cir. 1985).................10, 21

*Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143 (S.D.N.Y. 2011)....................................................19

*Thomas & Agnes Carvel Found. v. Carvel*, 736 F. Supp. 2d 730 (S.D.N.Y. 2010).................13, 22

*Trs. of the Conn. Pipe Trades Local 777 Health Fund v. Plumbing Creations, LLC*,
  No. 3:15-cv-00822 (MPS),
  2019 U.S. Dist. LEXIS 115873 (D. Conn. July 11, 2019).......................................19, 23, 24

*Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF),
  2020 U.S. Dist. LEXIS 112368 (S.D.N.Y. June 26, 2020)....................................................22

*United States v. Basil Inv. Corp.*, 528 F. Supp. 1225 (E.D. Pa. 1981)......................................10, 18

*United States v. Carpenter*, No. 3:13-CR-226(RNC),
  2015 U.S. Dist. LEXIS 171646 (D. Conn. Dec. 24, 2015)....................................................2

*United States v. Carpenter*, No. 3:13-CR-226(RNC),
  2016 U.S. Dist. LEXIS 36530 (D. Conn. Mar. 21, 2016)....................................................14

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016)..............................................3, 4

*United States v. Dalmy*, No. 3:18-cr-00021 (JAM),
  2020 U.S. Dist. LEXIS 115830 (D. Conn. July 1, 2020)........................................................3

*Universitas Educ. LLC, v. Avon Capital, LLC*, No. 14-FJ-05-HE,
  2020 U.S. Dist. LEXIS 251679 (W.D. Okla. Oct. 20, 2020)..................................................2

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
  2012 U.S. Dist. LEXIS 166554 (S.D.N.Y. Nov. 21, 2012)...........................................1, 12

*Universitas Educ., LLC v. Nova Group, Inc.*, No. 11CV1590-LTS-HBP,
  2013 U.S. Dist. LEXIS 1720 (S.D.N.Y. Jan. 4, 2013)............................................................5

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
  2013 U.S. Dist. LEXIS 142901 (S.D.N.Y. May 21, 2013)...................................2, 5, 6, 12

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
  2013 U.S. Dist. LEXIS 142902 (S.D.N.Y. May 21, 2013).........................................5, 7, 22

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013)................................................3, 11

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2013 U.S. Dist. LEXIS 142481 (S.D.N.Y. Sep. 30, 2013).....................................................6

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013)......................................................2

*Universitas Educ., LLC v. Nova Group, Inc.*, No. 11CV1590-LTS-HBP,
    2014 U.S. Dist. LEXIS 3983 (S.D.N.Y. Jan. 3, 2014).........................................3, 4, 11, 15

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2014 U.S. Dist. LEXIS 143667 (S.D.N.Y. Oct. 8, 2014)...............................................24, 25

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2016 U.S. Dist. LEXIS 37988 (S.D.N.Y. Mar. 23, 2016)................................................2, 6

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2016 U.S. Dist. LEXIS 72268 (S.D.N.Y. Mar. 31, 2016)......................................................5

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CV 1590-LTS-HBP,
    2016 U.S. Dist. LEXIS 64138 (S.D.N.Y. May 16, 2016)....................................................25

*Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99 (2d Cir. 2015)........................................5

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*,
    2005 U.S. Dist. LEXIS 14790 (S.D.N.Y. May 3, 2005)................................................21, 23

*Wallace v. Gen. Elec. Co.*, Civil Action No. 87-1236,
    1988 U.S. Dist. LEXIS 1868 (E.D. Pa. Mar. 4, 1988).........................................................20

*Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009)...................................10, 12

**Statutes:**

18 U.S.C.S. § 401...............................................................................................................23, 25

**Federal Rules of Civil Procedure:**

Fed. R. Civ. P. 45(a)(1)(A)(iii)..............................................................................................9, 19

Fed. R. Civ. P. 45(g)................................................................................................................9

Universitas Education, LLC ("Universitas") files this memorandum of law, along with the attached exhibits, in support of its motion to hold Daniel Carpenter in contempt of court.

## INTRODUCTION

Universitas served Daniel Carpenter with a subpoena *duces tecum*. He moved to quash the subpoena in part by claiming that the scope of responsive documents was so large that production would be unduly burdensome. Carpenter then objected to Hon. Judge Spector's finding that the production was not unduly burdensome. After twice forcing the Court to rule that the requested production was *not* unduly burdensome, Carpenter now claims, remarkably, that there are no responsive documents. This claim is demonstrably false.

Universitas provided Carpenter an opportunity to cure his response, and Carpenter failed to do so. Carpenter's recalcitrance is a violation of the Court's order that Carpenter comply with the subpoena, and his protracted history of bad faith and contemptuous conduct indicates that this violation was willful. The Court should hold Mr. Carpenter in contempt of court.

## FACTUAL BACKGROUND

This is a proceeding to enforce an outstanding judgment against alter egos of Daniel Carpenter and other judgment debtors. Carpenter is a convicted felon with a "proclivity to engage in fraud." *See* Dkt. #85-3 at 188:24-189:15 (imposing special conditions upon Carpenter's supervised release to "protect people against Mr. Carpenter's proclivity to engage in fraud").

Carpenter sought to conceal his fraudulent conduct with "threats and lies" throughout the underlying litigation. *See* Dkt. #85-3 at 185:6-186:2 (explaining that Carpenter's use of "threats and lies" to conceal fraudulent conduct was "true to form"); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS 166554, at *8-*9 (S.D.N.Y. Nov. 21, 2012) (*sua sponte* suggesting that Carpenter's threats constituted witness intimidation

1

and obstruction of justice); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 37988, at *14 (S.D.N.Y. Mar. 23, 2016) ("After … finding that Carpenter had fabricated testimony regarding the location of the insurance proceeds, Carpenter testified again on these issues and Judge Swain again found that his testimony was not credible."). Among Carpenter's threats were threats of defamation suits and disbarment directed to Universitas' counsel.[1] *See* Dkt. #102, Ex. A. Among Carpenter's lies were false allegations about the trustee for the Charter Oak Trust ("COT"), which Carpenter used to contest diversity jurisdiction.[2] *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142901 (S.D.N.Y. May 21, 2013) (sanctioning attorney, *inter alia*, for arguing "that Charter Oak Trust was, like Universitas, a citizen of New York because (1) its alleged insurance trustee, M&T Bank, was a citizen of New York and (2) its beneficiary, Universitas, was a citizen of New York, and, therefore, that complete diversity was lacking" and explaining that (1) "M&T Bank is not the insurance trustee" and (2) the "claim that the insurance trustee of Charter Oak Trust was M&T Bank … appears to be … calculated to mislead").

Moreover, the false claim regarding the COT trustee was predicated upon fabricated evidence.[3] Following the death of Sash Spencer, Carpenter and his associates falsified the COT

---

[1] Carpenter has engaged in a pattern of threatening opposing litigants. *See e.g.*, Exhibit 13 (threatening opposing litigants with "a litigation Armageddon the likes of which [they] have never seen before" and "several years and several million in legal fees fighting a bi-coastal litigation battle" unless they release claims against Carpenter entities); *see also Israel v. Carpenter*, 95 Civ. 2703 (DAB) (JCF), 2000 U.S. Dist. LEXIS 13846, at *20-*22 (S.D.N.Y. Sep. 22, 2000) (explaining that "Mr. Carpenter's conduct toward the plaintiffs and others has often been characterized by threats of retribution whenever someone takes a position that he perceives to be contrary to his interests").

[2] Carpenter consistently makes baseless allegations to the court. *See e.g.*, *Universitas Educ. LLC, v. Avon Capital, LLC*, No. 14-FJ-05-HE, 2020 U.S. Dist. LEXIS 251679, at *64 (W.D. Okla. Oct. 20, 2020) (describing facts in Carpenter's summary judgment brief as "bold factual misstatements"), *adopted*, 2021 U.S. Dist. LEXIS 26388; *see also United States v. Carpenter*, No. 3:13-CR-226(RNC), 2015 U.S. Dist. LEXIS 171646, at *16 n. 5 (D. Conn. Dec. 24, 2015) ("[Carpenter]'s sweeping assertions of bad faith … are not well-supported.").

[3] As discussed *infra*, the fabricated nature of this evidence was demonstrated through a review of the computer server at the offices at 100 Grist Mill Road. *See infra* at n. 4. Carpenter owns the property located at 100 Grist Mill Road and operated hundreds of companies from this location. *See* PJR App., Ex. 21 [Dkt. #12] (Carpenter affidavit swearing that he owns the property at 100 Grist Mill Road); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803, at *9 (S.D.N.Y. Nov. 20, 2013) ("Daniel E. Carpenter has founded and

Trust Document "for the specific purpose of enabling COT to keep twenty percent of the total death benefit of $30 million." *See United States v. Carpenter*, 190 F. Supp. 3d 260, 293-94 (D. Conn. 2016). Carpenter then submitted the falsified Trust Document as evidence in the underlying arbitration and further falsified emails to make it appear as though the falsified Trust Document was attached to an email from 2007. *See* Exhibit 3.[4] This evidence also included erroneous emails suggesting that M&T Bank was the COT insurance trustee. *See* Exhibit 3.

## I.    Carpenter's Defiance of the Judiciary

Carpenter was held in contempt of court for in 2013.[5] *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013).[6] Carpenter subsequently continued to violate multiple court orders.[7] *See Universitas Educ., LLC v. Nova Group, Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 3983 (S.D.N.Y. Jan. 3, 2014)

---

controlled hundreds of companies out of his offices at 100 Grist Mill Road in Simsbury, Connecticut.").

[4] Exhibit 3 is an email from Carpenter to Richard Order. Mr. Order represented Nova Group, Inc. (the COT trustee) in the underlying arbitration against Universitas. *See* Exhibit 4. The email depicted in Exhibit 3 is supplemented by testimony from Lynn Allen, a special agent with the Department of Labor ("DOL") and the principal case agent in the DOL investigation of Mr. Carpenter. *See* Exhibit 5 at 2321:5-2323:16. Ms. Allen testified that (1) the DOL seized the computer server for the offices at 100 Grist Mill Road during a raid on this property, (2) she reviewed the documents on this server, (3) the documents attached to the email in Exhibit 3 were manipulated so as to make it appear as though a version of the COT Trust Document containing a holdback provision was attached to an email dated January 12, 2007, (4) there was no holdback provision included in the Trust Document actually attached to the January 12, 2007 email, and (5) no version of the Trust Document containing the holdback provision existed on Carpenter's computer server until July of 2008, after Sash Spencer died. *See* Exhibit 5.

[5] Carpenter consistently disregards court orders. *See e.g.*, *Israel v. Carpenter*, 2003 U.S. Dist. LEXIS 11356, at *8-*9 (S.D.N.Y. July 7, 2003) ("[Carpenter's] conduct … raises serious concerns regarding his ability to follow a directive of this Court…. I ordered that Daniel Carpenter attend and testify at the hearing …. Carpenter did not attend ….").

[6] This citation is to a magistrate report recommending that Carpenter be held in contempt of court. The court subsequently adopted the magistrate report in its entirety. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, (S.D.N.Y. Feb. 11, 2014). The adoption of this magistrate report is an unpublished opinion, a copy of which is attached to this memorandum.

[7] Carpenter consistently engages in contemptuous behavior. *See e.g.*, PJR App., Ex. 6 [Dkt. #10] at 5-6 (explaining that Carpenter withheld financial information from the probation office and told the probation office that he had no money and thus could not pay restitution despite simultaneously "distribut[ing] substantial gifts to Benistar employees …, mak[ing] sizeable contributions to the prep school that he attended as a boy (and certain other causes), driv[ing] a Cadillac Escalade (with lesser SUV's leased for his wife and daughter), … and continu[ing] to pay hundreds of thousands of dollars to his many lawyers") (internal citations omitted); *United States v. Dalmy*, No. 3:18-cr-00021 (JAM), 2020 U.S. Dist. LEXIS 115830, at *6-*7 (D. Conn. July 1, 2020) ("Even after she was sentenced …, she demonstrated her selfishness and contempt for the law by squirreling away about $47,000 in cash that she did not report on her disclosure forms and that she hoped to avoid paying her victims.").

(explaining that "Mr. Carpenter's entities have continued to seek to transfer assets from the judgment-debtor … despite the Judgment and the service of restraining notices [prohibiting the alienation of assets]" and that "[t]he evidence received by this Court concerning the actions of Mr. Carpenter … demonstrates an absence of respect … for the orders of this Court"). One such order was an injunction enjoining him, his entities, and all agents thereof from transferring assets. *See id.* (entering injunction). Carpenter subsequently conspired with his wife to subvert this injunction – Molly Carpenter instructed her employee to create an escrow account for Mr. Carpenter outside the scope of the injunction, from which Mr. Carpenter could direct payments.[8] *See* Exhibit 1. Mr. Carpenter then transferred $1.2 million from an enjoined entity to this escrow account and directed the disbursement of escrow funds for purposes prohibited by the injunction. *See* Exhibit 1.

Carpenter continues to willfully defy the judiciary. Following his conviction on fifty-seven (57) felony counts related to his theft of $30 million from Universitas, the court imposed occupational restrictions upon Carpenter's supervised release that prohibit him, *inter alia*, from acting in a fiduciary capacity and/or exercising control over any for-profit entity. *See* Exhibit 2 at 2-3. Carpenter candidly admits that he is violating the terms of his supervised release, *inter alia*, by acting as trustee for the Defendant Trusts.[9] *See e.g.*, Dkt. #146-1 at 6 ("Daniel Carpenter has always been the sole trustee of the Trust."). Carpenter is further violating his supervised release by exercising control over GM Partners in this proceeding. *See e.g.*, Dkt. #153 at 1 and 7 (Carpenter complaining about discovery requests issued to GM Partners); PJR App., Ex. 17 [Dkt. #11] (court order finding that Carpenter controls GM Partners).

---

[8] The person instructed to create this escrow account was Matthew Westcott. *See* Exhibit 1. At the time, Mr. Westcott was an employee of Benistar Admin Services, Inc. ("BASI"). *See* Exhibit 1 at 24:15-17. Molly Carpenter was the Chairman of BASI. *See Carpenter*, 190 F. Supp. 3d at 273 (explaining that Molly Carpenter was Chairman of BASI).
[9] Carpenter is acting in a fiduciary capacity by serving as the trustee for the Defendant Trusts. *See Estate of Duckett v. CNN LLLP*, No. 5:06-cv-444-Oc-10GRJ, 2007 U.S. Dist. LEXIS 61930, at *12 (M.D. Fla. June 18, 2007) (explaining that trustee of charitable trust owes a fiduciary duty to beneficiaries of trust).

## II.     Carpenter's Litigation Strategy

Carpenter willfully engaged in extensive misconduct throughout the underlying litigation:

> [Carpenter]'s sanctionable conduct was part of a pattern of activity in the post-judgment proceedings …. The persistence and baselessness of [Carpenter]'s abusive tactics suggest that [Carpenter] intended to injure Universitas … because the 'sanctionable conduct at issue here was symptomatic of [Carpenter]'s stubborn and baseless efforts to impede Universitas' collection of the judgment.' … [Carpenter]'s misconduct was willful, persistent and succeeded in delaying Universitas' ability to collect its judgment.

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 72268 (S.D.N.Y. Mar. 31, 2016). The court repeatedly found Carpenter's misconduct strategic and articulated Carpenter's litigation strategy: (i) delay collection efforts through abuse of process, and (ii) render collection efforts cost prohibitive by increasing Universitas' legal fees. *See e.g.*, *Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *36 (characterizing Carpenter's litigation strategy as a strategy "motivated not by legal merit, but rather by dilatory purposes"); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142902, at *35 (S.D.N.Y. May 21, 2013) (characterizing Carpenter's litigation strategy as a "strategy of promoting delay"). The Second Circuit Court of Appeals found that Carpenter's actions necessitated sanctions. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99 (2d Cir. 2015) (explaining that "sanction aimed at deterring [Carpenter]'s persistent and abusive litigation conduct is appropriate and **_necessary_**.") (emphasis added).

Carpenter primarily manifested his strategy through (1) frivolous motions filed in bad faith and (2) discovery misconduct.[10] *See e.g.*, *Universitas Educ., LLC v. Nova Group, Inc.*, No.

---

[10] Carpenter consistently engages in such misconduct. *See e.g.*, PJR App., Ex. 6 [Dkt. #10] at 6-7 (summarizing Carpenter's conduct in litigation with former business partners); PJR App., Ex. 2 [Dkt. #10] (explaining that numerous Carpenter alter egos refused to produce basic document discovery); *see also Israel v. Carpenter*, Case No. 95-civ.-2703 (DAB)(JCF), 2001 U.S. Dist. LEXIS 15571 (S.D.N.Y. Oct. 1, 2001) ("This motion is entirely frivolous. It is devoted primarily to challenges to the determination of liability, a determination that has already been affirmed by the Second Circuit.").

11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 1720, at *4 (S.D.N.Y. Jan. 4, 2013) ("This case has been marked by [Carpenter]'s diversionary and dilatory motion and discovery practices, all of which are aimed at frustrating any efforts by Universitas to enforce the judgment."); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142481, at *11 (S.D.N.Y. Sep. 30, 2013) (explaining that Carpenter filed motion "in bad faith and with a motive to delay, harass, or needlessly increase the cost of litigation" and that Carpenter "knew … [of] the legal frivolousness of his motion before he [filed] it"). Carpenter's frivolous motions largely consisted of attempts "to relitigate the same issues by invoking a different procedural vehicle."[11] *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *32.

Carpenter intentionally obstructed discovery so as to delay Universitas' collection efforts and increase Universitas' legal fees. *See e.g.*, *Universitas Educ.*, 2016 U.S. Dist. LEXIS 37988 ("Carpenter's obstructionist conduct in discovery has already frustrated and delayed Universitas' collection of its judgment."). After threatening third party witnesses regarding production of discovery and being held in contempt of court for refusing to produce court-ordered discovery, Carpenter forbade his attorneys from producing responsive documents and fired attorneys that sought to comply with the discovery order. *See* PJR App., Ex. 12 [Dkt. #11] (Carpenter email forbidding attorneys from producing relevant documents); PJR App., Ex. 14 [Dkt. #11] (Carpenter firing attorneys attempting to produce court-ordered documents).

### III.    Carpenter's Actions in this Proceeding

Carpenter is engaging in identical misconduct in this proceeding.

---

[11] Carpenter consistently files similar duplicative motions. *See e.g.*, *Iantosca v. Benistar Admin Servs.*, Civil Action No. 08-11785-NMG, 2012 U.S. Dist. LEXIS 20693, at *12-*13 (D. Mass. Feb. 17, 2012) ("The motions … filed by … Daniel Carpenter simply re-assert several arguments already raised and rejected by this Court and do not offer any additional undisputed evidence in support thereof. Those motions will therefore be denied.").

a. Frivolous and Improper Motions

The Defendant Trusts' reconsideration motion was filed over three weeks late and does not contain a proper argument – the motion is frivolous. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142902 at *14 (defining frivolous to mean "has no chance of success"). Moreover, the Court rejected the Defendant Trusts' claim that Judge Swain found that there is no subject matter jurisdiction over Universitas' alter ego claims. *See* Dkt. #110. Carpenter nonetheless seeks to re-litigate this claim in the Defendant Trusts' reconsideration motion, *see* Dkt. #120-1 at 2 ("Judge Swain also rejected the current claims raised by the plaintiff before this Court in her May 2020 Order based on the mandate of the Supreme Court in *Peacock v. Thomas* …."), and his objection to the denial of his motion to quash. *See* Dkt. #149 at 1 ("The Magistrate failed to acknowledge Judge Swain's March 2020 Order that this Court lacks jurisdiction as a matter of law.").

b. Discovery Misconduct

Carpenter did not comply with the Court order to comply with the subpoena. Moreover, GM Partners and the Defendant Trusts opposed all discovery and cumulatively produced a single document. The Court found their opposition erroneous and denied their arguments. *See* Dkt. #151. Carpenter nevertheless continued to oppose discovery. *See* Dkts. #155-156. The Court rejected the grounds for this continued opposition.[12] *See* Dkts. # 162-163.

c. Threats Against Opposing Litigants

Carpenter continues to threaten opposing litigants. *See e.g.*, Dkt. #103 (threatening Universitas' counsel with claims of mail and wire fraud); Dkt. #149 at 3 (threatening retaliatory

---

[12] Universitas is seeking discovery sanctions against GM Partners and the Defendant Trusts. Pursuant to D. Conn. L. Civ. R. 37 and this Court's Instructions for Discovery Disputes, Universitas is currently corresponding with counsel for these parties. To the extent any sanctions motion is necessary, details concerning these parties' discovery misconduct will be provided in such motions.

lawsuit against Universitas). Carpenter also continues his threats to Universitas' counsel of disbarment and defamation suits. *See* Dkt. #101; Dkt. #141.

    d.  <u>False Statements</u>

Carpenter continues to make demonstrably false claims to the Court. *See* Dkt. #121-1 at 5 ("SDM has been owned by the Defendant Trusts since 2010.") and at 6 ("Universitas also went after Avon Old Farms School in 2017 to have the school refund over $500,000 in contributions made to the School despite the fact that most of those contributions were made in 1997.");[13] *see also* Dkt. #110 at 33 ("It is disturbing that the Defendant Trusts have tried to make a factual claim about Daniel Carpenter's citizenship that … is obviously untrue.")

## IV.    The Carpenter Subpoena

Universitas served Carpenter with a subpoena seeking documents concerning (1) the location of assets potentially subject to collection, (2) the structure and/or ownership of entities with assets potentially subject to execution, and/or (3) the relationship between Carpenter's entities. *See* Dkt. #129-1 (hereinafter "Subpoena").

    a.  <u>Carpenter's Efforts to Quash the Subpoena</u>

Carpenter moved (1) for a protective order and/or (2) to quash the subpoena in part because the scope of responsive documents was so large that producing these documents was unduly burdensome and could not be completed in the thirty-three (33) days allotted.[14] *See* Dkt. #129 at 2, 4. Judge Spector denied Carpenter's motion, dkt. #143, and Carpenter objected to this ruling.

---

[13] The claim concerning ownership to SDM is refuted by Carpenter's sworn testimony. *See* Dkt. #125-1 ¶ 5 (Carpenter affidavit swearing that Avon Capital owns SDM). Every claim concerning the Avon Old Farms School is contradicted by documentary evidence. *See* Dkt. #126 (settlement agreement between Universitas and Avon Old Farms School contradicting every Carpenter assertion regarding the school).

[14] Carpenter consistently claimed that there are "hundreds" of responsive documents. *See e.g.*, Dkt. #129 at 7.

*See* Dkt. #149. The court overruled Carpenter's objection and ordered Carpenter to "**fully** comply with the subpoena on or before July 15, 2021." *See* Dkt. #159 (emphasis added).

      b.   <u>Carpenter's Response to the Subpoena</u>

Carpenter refused to respond regarding parties other than judgment debtors,[15] and claimed, for the first time, to have no responsive documents. *See* Exhibit 6. Universitas gave Carpenter an additional seven (7) days to cure these deficiencies, and informed Carpenter that it would move to find him in contempt unless he produced documents as directed by the Court. *See* Exhibit 7.

## <u>LEGAL STANDARD</u>

Contempt requires: (i) a clear and unambiguous order, (ii) clear and convincing proof of noncompliance, and (iii) no diligent attempt to comply in a reasonable manner. *See In re Dunne*, No. 3:17-cv-1399 (MPS), 2018 U.S. Dist. LEXIS 166192, at *19 (D. Conn. Sep. 27, 2018) (internal citations omitted). Evidence of a "reasonable certainty" that an order was violated constitutes clear and convincing evidence of contempt. *See Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). The Court may hold Carpenter in contempt of court pursuant to Fed. R. Civ. P. 45(g) and/or the inherent power of the Court. *See* FED. R. CIV. P. 45(g) (providing that noncompliance with discovery order is grounds for contempt); *In re Leary*, 620 B.R. 39, 54 (Bankr. S.D.N.Y. 2020) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.") (internal citations omitted).

## I.    **Contempt Pursuant to Fed. R. Civ. P. 45**

Fed. R. Civ. P. 45 requires persons served with a subpoena *duces tecum* to produce concerns documents "in that person's possession, custody, or control." *See* FED. R. CIV. P. 45(a)(1)(A)(iii). A bad faith effort to do so constitutes noncompliance with a subpoena and/or

---

[15] The Court ruled that inquiries into "Companies" and/or "Affiliates" were proper given "the broad scope of [Carpenter's] unscrupulous business dealings." *See* Dkt. #143 at 7-8.

discovery order. *See Cobell v. Babbitt*, 37 F. Supp. 2d 6 (D.D.C. 1999); *see also United States v. Basil Inv. Corp.*, 528 F. Supp. 1225 (E.D. Pa. 1981) (holding party in contempt for false claims concerning the non-existence of responsive documents). As explained by the court in *In re Dunne*:

> Where control is contested in the Rule 45 context, the 'burden is on the party seeking discovery to make a showing that the other party has control over the materials sought' but 'control' is defined broadly 'so as to permit discovery from a non-party with 'the legal right, authority, or practical ability to obtain the materials sought upon demand.'' Generally, 'a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible.' The burden then shifts back to the party seeking production to 'cite to specific evidence to challenge the resisting party's assertions that no additional responsive documents exist.' If that showing is made, 'the burden shifts to the party resisting discovery to show specifically where they have searched and why these documents are not, in fact, within their custody, possession, or control.'

*In re Dunne*, 2018 U.S. Dist. LEXIS 166192, at *10-*11. A violation need not be willful to find a party in contempt of court pursuant to Fed. R. Civ. P. 45(g). *See id.* at *19.

## II.     Contempt Pursuant to the Court's Inherent Power

Inherent power sanctions require a finding of bad faith. *See Roadway Express v. Piper*, 447 U.S. 752, 768 (1980). In turn, bad faith requires that the conduct at issue was: (i) entirely without color, and (ii) motivated by improper purposes. *See Sierra Club v. United States Army Corps. of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) (internal citations omitted); *see also Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) ("[I]nherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes.") (internal citations omitted). Conduct is "entirely without color" when it lacks any legal or factual basis. *See Wolters Kluwer*, 564 F.3d at 114. Conduct is motivated by an improper purpose when it was made for improper reasons such as harassment or delay. *See Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).

## **ARGUMENT**

The Court ordered Carpenter to "**fully** comply" with Universitas' subpoena. *See* Dkt. #159 (emphasis added). Despite conceding that he has hundreds of responsive documents and requiring the Court to repeatedly decide whether producing such documents would be unduly burdensome, Carpenter now claims to have no responsive documents. Respectfully, the Court should hold Carpenter in contempt of court for his willful noncompliance with this Court's discovery order.

Carpenter's history of violating court orders suggests that his violation of the discovery order was willful. *See In re Residential Capital, LLC*, 571 B.R. 581, 586 (Bankr. S.D.N.Y. 2017) (using prior conduct as context when considering whether litigant willfully violated court order); *see also Universitas Educ.*, 2014 U.S. Dist. LEXIS 3983 at *13 ("The evidence received by this Court concerning the actions of Mr. Carpenter … demonstrates an absence of respect … for the orders of this Court."). Carpenter's prior violations of court orders were willful. *See* Exhibit 1 (testimony from Carpenter associate that Carpenter knowingly violated and subverted injunction entered in 2014). Moreover, Carpenter continued to willfully violate court order after he was held in contempt of court. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 99957 (magistrate report finding Carpenter in contempt in 2013). Carpenter's willful noncompliance with court orders is ongoing. *See* Exhibit 2 at 2-3.

Carpenter also has a history of contemptuous behavior including false testimony and fabricating evidence, which demonstrates his disregard for the judiciary and in turn suggests he willfully did not comply with the discovery order. *See Denton v. Rievley*, No. 1:07-CV-211, 2011 U.S. Dist. LEXIS 14696, at *9 (E.D. Tenn. Feb. 11, 2011) (providing that false testimony constitutes contempt of court when such false testimony obstructs the court in the performance of

its duty); *Aida Eng'g, Inc. v. Red Stag, Inc.*, 110 F.R.D. 650, 651 (E.D. Wis. 1986) ("By offering fabricated evidence Red Stag has shown contempt for this Court ….").

Carpenter's past misconduct further indicates that he willfully violated the discovery order. *See In re Residential Capital, LLC*, 571 B.R. at 586 (using prior conduct as context when considering whether litigant willfully violated court order); *see also Car-Freshner Corp. v. Scented Promotions, LLC*, No. 5:19-CV-1158(GTS/ATB), 2020 U.S. Dist. LEXIS 42902, at *7-*8 (N.D.N.Y. Mar. 12, 2020) (finding misconduct to be willful based on misconduct in prior litigation). As detailed below, the underlying court found that Carpenter's misconduct was the result of his bad faith motives. *See also Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *17-*18 ("Bad faith conduct may include pursuing 'frivolous contentions,' 'frivolous motions,' or 'intentionally dilatory' conduct.") (internal citations omitted):

- The court found that the "baseless nature" of Carpenter's threats "lends further support to an inference of bad faith or worse." *See Universitas Educ.*, 2012 U.S. Dist. LEXIS 166554 at *9;
- The court collectively characterized ten motions filed at Carpenter's behest as "entirely meritless and in bad faith" and "so lacking in merit that the only reasonable inference is that they were filed for dilatory purposes." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *31-*32 and *37-*40;
- The court found that Carpenter's motions seeking "to relitigate the same issues by invoking a different procedural vehicle" were filed in bad faith. *See id.*;
- The court found Carpenter's motion contesting diversity based, *inter alia*, on false claims regarding citizenship of trustee to be "particularly troubling and strongly indicative of bad faith." *See id.* at *32-*33.

Moreover, the underlying court repeatedly found that Carpenter was pursuing a litigation strategy predicated upon bad faith. *See e.g.*, *id.* at *17-*18 and *36 (explaining that "bad faith conduct … include[s] pursuing … 'intentionally dilatory' conduct" and finding that Carpenter's litigations strategy was "motivated not by legal merit, but rather by dilatory purposes").

This proceeding does not exist in a vacuum and the Court should not overlook the clear pattern of Carpenter's misconduct. *See In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1139 (2d Cir.

1987) (providing that "[t]he filing of a complaint in a new action does not erase a litigant's past abuse of the judicial system"). Given that: (1) Carpenter's misconduct in this proceeding mimics his misconduct in the underlying litigation and (2) Carpenter's misconduct in the underlying litigation was the result of his bad faith efforts to frustrate Universitas' collection efforts, the Court should thus infer that Carpenter's continued misconduct is the result of continued bad faith efforts designed to delay Universitas' collection efforts and increase Universitas' legal costs so as to render its collection efforts cost prohibitive. *See Adlife Mktg. & Communs. Co. v. Buckingham Bros., LLC*, No. 5:19-CV-0796 (LEK/CFH), 2020 U.S. Dist. LEXIS 148755, at *26 (N.D.N.Y. Aug. 18, 2020) ("[T]he similarly between his conduct in this case and past conduct for which he has been admonished supports an inference of bad faith …."); *Thomas & Agnes Carvel Found. v. Carvel*, 736 F. Supp. 2d 730, 767 (S.D.N.Y. 2010) ("In reaching the conclusion that [litigant] is acting in bad faith and for an improper purpose, we first look to her past conduct.").

## I.   Carpenter's Responses Are False and He Controls Responsive Documents.

Carpenter responded to every document request within the subpoena by claiming to have no responsive documents. *See* Exhibit 6. However, each such claim is demonstrably false. Persons maintain control of documents within their attorney's possession. *See Markus v. Rozhkov*, 615 B.R. 679, 705-706 (S.D.N.Y. 2020) (internal citations omitted). Persons also control documents within the possession, custody, and/or control of companies for which they are a principal and/or officer. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180-82 (S.D.N.Y. 2006); *see also Flannigan v. Vulcan Power Grp., LLC*, No. 09-CV-8473 (LAP), 2019 U.S. Dist. LEXIS 115634, at *28 (S.D.N.Y. July 3, 2019) (internal citations omitted). Documents and records in the ordinary course of business are presumed to be within a company's control until proven otherwise. *See Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 n. 2 (S.D.N.Y.

1984). Carpenter is thus required to produce all documents used by his companies in the ordinary course of business.

Carpenter also has access to the entire universe of documents seized by the federal government in both raids upon his offices.[16] Carpenter and/or his agents have gone to the DOL to review and photocopy documents seized from his offices on multiple occasions, including for purposes of responding to discovery requests. *See* Exhibit 9 ¶ 3 (explaining that on August 31, 2012 Carpenter, his agents, and/or associates reviewed the documents obtained in the raids), Exhibit 10 (explaining that on March 4, 2013 Carpenter's agents reviewed the documents obtained in the raids). Carpenter's entities have also previously produced documents from these records. *See* Exhibit 10. Carpenter thus has control over these documents. *See In re Vivendi Universal, S.A.*, 2009 U.S. Dist. LEXIS 131833, at *23 (S.D.N.Y. July 10, 2009) ("If the party subpoenaed has the practical ability to obtain the documents, the actual physical location of the documents -- even if overseas -- is immaterial.") (internal citations omitted); *In re Teligent, Inc.*, 358 B.R. 45, 60 (Bankr. S.D.N.Y. 2006) ("If a party has the legal right or practical ability to obtain documents from a non-party, he has 'control' of those documents ….") (internal citations omitted).

    a.  <u>Response to Request No. 1</u>

Request No. 1 reads as follows:

> Any and all Documents, including communications, relating to any matter concerning the receipt, purchase, sale, acquisition, and/or transfer of Property and/or Assets by any Judgment Debtor, Company, and/or Affiliate.

*See* Subpoena at 10. Carpenter's response to this request is:

> There are no responsive documents to this request because, to the best of my knowledge, there was no purchase, sale, or transfer of any property by any Judgment Debtor.

---

[16] There are millions of documents within these records. *See United States v. Carpenter*, No. 3:13-CR-226(RNC), 2016 U.S. Dist. LEXIS 36530, at *7 (D. Conn. Mar. 21, 2016) (explaining that discovery provided by government in prosecution related to DOL raid included "approximately one million documents").

Exhibit 6 at 1. Carpenter fraudulently transferred assets from judgment debtors throughout the underlying litigation.[17] *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 3983 at *25 ("Carpenter's entities have continued to seek to transfer assets from the judgment-debtor …."). Carpenter also controls documents regarding the transfer of property from judgment debtor Avon Capital, LLC. *See United States v. Carpenter*, No. CR-13-226-RNC, Doc. 207, at 20 (Government Exhibit List) (identifying sales and/or purchase concerning Avon Capital).[18] The documents seized by the DOL also include responsive documents, including, a letter concerning judgment debtor Grist Mill Holdings, LLC's offer to purchase property located on Mill Pond Road. *See* Exhibit 12 at 75.

       b.  <u>Response to Request No. 2</u>

Request No. 2 reads as follows:

> Any and all Documents concerning payments made to you, by any means, from any Judgment Debtor, Affiliate, and/or Company.

*See* Subpoena at 10. Carpenter's response to this request is:

> There are no responsive documents to this request because, to the best of my knowledge, there were no payments to me by any Judgment Debtor.

Exhibit 6 at 1. The subpoena defines "you" to include "any and all agents and persons acting on behalf of Daniel Carpenter" and defines "Affiliate" to include Molly Carpenter. *See* Subpoena. Carpenter's response to Request No. 7 asserts that "… [his] wife has paid [his] legal bills since 2013." Exhibit 6 at 2. Carpenter's attorneys are his agents. *See Rai v. WB Imico Lexington Fee, LLC*, 802 F.3d 353, 360 (2d Cir. 2015). As such, documents concerning payment from Molly Carpenter to Carpenter's attorneys are clearly within the scope of Request No. 2. *See* Dkt. #159.

---

[17] Documents concerning certain such transfers are on the docket. *See* PJR App., Ex. 19 [Dkt. #11], Exs. 26-27 and 29 [Dkt. #12], Ex. 34 [Dkt. #13].
[18] A copy of this exhibit list is attached hereto as Exhibit 8. Carpenter has filed documents from this exhibit list and thus clearly has access to these documents. *See* Dkt. #103, Ex. 3.

   c. <u>Response to Request No. 3</u>

Request No. 3 reads as follows:

  Any and all Documents, including communications, relating to the ownership
  structure of any Judgment Debtor and/or Company.

*See* Subpoena at 10. Carpenter's response to this request is:

  To the best of my knowledge, there are no responsive documents in my possession.

Exhibit 6 at 1. Carpenter's entities presumably have responsive documents, such as incorporation

documents, tax returns, and stock certificates. *See* PJR App., Ex. 47 [Dkt. #14] (GM Partners' tax

returns providing ownership structure); *see also Evans v. Scribe One Ltd. LLC*, No. CV-19-04339-

PHX-DLR, 2019 U.S. Dist. LEXIS 200373, at *17 (D. Ariz. Nov. 19, 2019) (deducing ownership

from incorporation documents); *Cooper Indus.*, 102 F.R.D. at 920 n. 2 (explaining that companies

presumably have documents in the ordinary course of business). The DOL documents also contain

responsive documents, including, *inter alia*, tax returns for Benefit Plan Advisors, LLC ("BPA"),

Grist Mill Holdings, LLC, and Caroline Financial Group, Inc. *See* Exhibit 12 at 21, 27, 31.

   d. <u>Response to Request No. 4</u>

Request No. 4 reads as follows:

  Any and all Documents relating to any bank accounts and/or accounts at any
  financial institution concerning any Judgement Debtor, Affiliate, and/or Company.

*See* Subpoena at 10-11. Carpenter's response to this request is:

  To the best of my knowledge, I do not have any bank account information other
  than bank account information provided by Universitas in various filings.

Exhibit 6 at 2. Carpenter's attorney has responsive bank records that were never produced to

Universitas, including banking records for TPG Group, Inc. ("TPG") and BPA, as well as Bank of

America records for Avon Capital and Grist Mill Capital. *See* Exhibit 8. The DOL documents also

include responsive documents that were never produced to Universitas, including, *inter alia,*

account statements for Carpenter's personal account with both TD Bank and Bank of America, as well as bank statements for, *inter alia*, Caroline Financial Group, Inc., TPG, Carpenter Financial Group, Inc., Caroline Ltd., and Avon Charitable Trust. *See* Exhibit 12. Moreover, Carpenter's response equates to a claim that none of his companies have had a bank account since 2009 – this is demonstrably false. *See e.g.*, Dkt. #135-2, Ex. 2 (GM Partners' interrogatory responses indicating that GM Partners has a bank account).

    e.  <u>Response to Request No. 5</u>

Request No. 5 reads as follows:

> Any and all Documents, including communications, relating to the Property and/or Assets, and/or any beneficial interests of any Property and/or Assets, belonging to any Judgment Debtor and/or Company.

*See* Subpoena at 11. Carpenter's response to this request is:

> To the best of my knowledge, I do not have any communications relating to the property, assets, and or beneficial interest of the same of any Judgment Debtor.

Exhibit 6 at 2. Carpenter's response equates to a claim that none his entities own any property and/or assets. This claim is demonstrably false. *See* Dkt. #136-4, Exs. 19-23 (providing, *inter alia*, that the Defendant Trusts own Grist Mill Holdings, LLC).

    f.  <u>Response to Request No. 6</u>

Request No. 6 reads as follows:

> Any and all Documents concerning the good standing, dissolution, and/or other status of any Judgment Debtor and/or Company.

*See* Subpoena at 11. Carpenter's response to this request is:

> To the best of my knowledge, I have no responsive documents to this request in my possession.

Exhibit 6 at 2. Carpenter's response equates to a claim that none of his companies filed any documents to maintain good standing and/or dissolution paperwork. Carpenter made contradictory

claims in other litigation. *See e.g.*, Exhibit 11 at 3, 7 (interrogatory responses claiming that Benistar, Ltd. filed for dissolution in 1999).

         g.   <u>Response to Request No. 7</u>

Request No. 7 reads as follows:

> Any and all Documents, including communications, concerning payment for counsel representing the Alliance Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, Carpenter Charitable Trust, and/or Phoenix Charitable Trust in the above-captioned matter.

*See* Subpoena at 11. Carpenter's response to this request is:

> There are no responsive documents to this request because my wife has paid my legal bills since 2013.

Exhibit 6 at 2. Carpenter is the sole trustee for the Defendant Trusts, and thus controls documents within the Defendant Trusts' possession, custody, and/or control. *See In re Flag Telecom.*, 236 F.R.D. at 180-82; *Flannigan*, 2019 U.S. Dist. LEXIS 115634 at *28. These payment records are clearly within the possession of the Defendant Trusts' counsel, and thus are in the Defendant Trusts' control. *See Markus*, 615 B.R. at 705-706.

**II.    Carpenter Violated the Discovery Order and Is in Contempt of Court.**

The Court ordered "Carpenter [to] fully comply with the subpoena on or before July 15, 2021." *See* Dkt. #159. Carpenter violated this order – he falsely denied the existence of responsive documents and produced no such documents. *See Basil Inv. Corp.*, 528 F. Supp. 1225 (finding party in contempt for false claims concerning the non-existence of responsive documents).

         a.   <u>The Discovery Order was Clear and Unambiguous.</u>

The discovery order directs Carpenter to fully comply with the subpoena by a proscribed deadline, and thus is clear and unambiguous. *See* Dkt. #159; *see also Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362 (KAM)(ALC), 2011 U.S. Dist. LEXIS 28127, at *30-*31 (E.D.N.Y. Mar.

18, 2011) (providing that order is clear and unambiguous when it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed" and it "allows for 'no uncertainty in the minds of those to whom it is addressed'"); *see also id.* at \*31 (finding discovery order clear and unambiguous when it "clearly ordered [party] to comply with the Rule 45 subpoena served on him, and provided the time, date, and place by which to produce documents").[19]

b.   Carpenter Violated the Discovery Order.

Carpenter's noncompliance with the discovery order is clear and convincing. *See Leser*, 2011 U.S. Dist. LEXIS 28127 at \*33-\*34 ("The 'clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty' that a violation occurred."). Carpenter controls numerous responsive documents (1) within his attorneys' possession and (2) seized by the DOL, and his refusal to produce such documents is a violation of the discovery order. *See* FED. R. CIV. P. 45(a)(1)(A)(iii) (explaining that Rule 45 subpoena *duces tecum* concerns documents "in that person's possession, custody, or control"); *see also Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147 (S.D.N.Y. 2011) ("Regardless of the witness' legal relationship to a document, for the purposes of a Rule 45 subpoena, a document is within a witness's 'possession, custody, or control' if the witness has the practical ability to obtain the document.") (internal citations omitted).

Carpenter also controls documents within the possession, custody, and/or control of his companies, which in turn are presumed to have documents within the ordinary course of business.

---

[19] The subpoena is also clear and unambiguous. *See Trs. of the Conn. Pipe Trades Local 777 Health Fund v. Plumbing Creations, LLC*, No. 3:15-cv-00822 (MPS), 2019 U.S. Dist. LEXIS 115873, at \*8 (D. Conn. July 11, 2019) (finding subpoena clear and unambiguous when "the language of the subpoena was plain and direct"); *Alston v. Select Garages LLC*, 2013 U.S. Dist. LEXIS 93761, at \*7 (S.D.N.Y. July 3, 2013) (finding subpoenas clear and unambiguous when, *inter alia*, exhibit attached to subpoena listed documents for production and informed party of protections and duties pursuant to Fed. R. Civ. P. 45). Moreover, Carpenter demonstrated his understanding of the language within the subpoena. *See* Dkt. #129 at 1-2 and 5 (accurately summarizing document requests within subpoena); Dkt #121-1 at 5-6 (discussing Waesche affidavit attached to Carpenter subpoena and using term "Carpenter Entity" in same manner used in subpoena); *see also Glover v. Johnson*, 934 F.2d 703, 708-09 (6th Cir. 1991) ("[The] defendants' failure to request the court to clarify, explain, or modify the language … precludes raising an ambiguity argument at this time.").

Carpenter neither produced such documents nor rebutted the presumption that his companies have such documents, and thus violated the discovery order. *See Cooper Indus.*, 102 F.R.D. at 920 (finding that party did not rebut presumption of access to documents in the ordinary course of business when party "submitted nothing more than conclusory statements … that these documents are not in its custody or control"); *see also Flannigan*, 2019 U.S. Dist. LEXIS 115634 at *28 (finding that party failed to satisfy subpoena when party (1) did not produce documents presumed to be within possession, custody, and/or control of company for which they were principal and (2) failed to rebut presumption access to documents in the ordinary course of business).

Carpenter also improperly responded to the subpoena by (1) refusing to respond regarding Affiliates and/or Companies identified in the subpoena, (2) arbitrarily limiting his response to Request No. 5 to communications and refusing to respond regarding Documents, (3) wrongfully limiting the timeframe of his response Request No. 7 to 2013, and (4) arbitrarily limiting his response to Request Nos. 3 and 6 to documents in his "possession." *See* Exhibit 6; *see also* Dkt. #151 (holding that Universitas is entitled to financial records from 2009 to present); *In re Weiss*, 703 F.2d 653, 666-69 (2d Cir. 1983) (explaining that "deliberately evasive answers constitute refusals to answer" when evidence shows that witness has knowledge that they refuse to provide). Moreover, Carpenter's claim that "there are no responsive documents in [his] possession" does not justify his noncompliance. *See Wallace v. Gen. Elec. Co.*, Civil Action No. 87-1236, 1988 U.S. Dist. LEXIS 1868, at *3 (E.D. Pa. Mar. 4, 1988) ("Documents need not be in a party's possession to be discoverable; they need only be in the party's custody or control."); *Flannigan*, 2019 U.S. Dist. LEXIS 115634 at *27-*28 ("Mrs. Graham claims she satisfied her obligation by producing everything in her possession. This does not satisfy her obligations under the subpoena…. [She]

20

cannot evade production of documents by conveniently claiming a lack of access when the documents are sought for discovery purposes.").

          c.   <u>Carpenter Did not Diligently Attempt to Comply with the Discovery Order.</u>

Carpenter did not diligently attempt to comply with the discovery order. *See Nike, Inc. v. Wu*, 2020 U.S. Dist. LEXIS 9102, at *76 (S.D.N.Y. Jan. 17, 2020) (explaining that "substantial compliance" is standard for evaluating noncompliance in contempt cases); *see also In re Leary*, 620 B.R. at 56 (explaining that diligence requires "reasonably effective methods of compliance" and that "a diligent attempt at compliance … [requires showing] that compliance was 'factually impossible'"). Carpenter clearly controls responsive documents. *See* Exhibits 8-12. Carpenter produced none of these documents and does not explain this refusal, even when Universitas identified these deficiencies and provided an opportunity to cure these same deficiencies. *See* Exhibit 7. Carpenter's false denial of responsive documents is not a diligent attempt at compliance with the discovery order. *See Leser*, 2011 U.S. Dist. LEXIS 28127 at *35 (finding no diligent attempt at compliance when "there is absolutely no evidence in the record that [party] was reasonably diligent in attempting to comply, but was somehow frustrated in doing so"); *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, 2005 U.S. Dist. LEXIS 14790, at *19 (S.D.N.Y. May 3, 2005) (finding that party did not diligently attempt to comply with court order when grounds provided for noncompliance were untruthful).

**III.    Carpenter's Noncompliance was in Bad Faith.**

Carpenter's responses were in bad faith. *See Sierra Club*, 776 F.2d at 390 (explaining that bad faith requires that conduct at issue was (1) entirely without color and (2) motivated by improper purposes). Carpenter initially claimed that (1) he had "hundreds" of responsive documents (2) it would be unduly burdensome for him to produce these documents, and (3) these

documents could not be produced in a single month. *See* Dkt. #129. Carpenter now claims that there are no responsive documents. *See* Exhibit 6. This inconsistency suggests bad faith. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142902 at *19-*20 ("… the inconsistent … positions … taken during the course of this litigation further demonstrate that the … motion … was motivated by causing unnecessary delay."); *Schlaifer Nance & Co.*, 194 F.3d at 336 (explaining that conduct is motivated by improper purpose when it was made for dilatory reasons). Carpenter's responses were also demonstrably false. *See Wolters Kluwer*, 564 F.3d at 114 (explaining that conduct is "entirely without color" when it lacks any legal or factual basis).

Carpenter's bad faith is confirmed by his actions in this proceeding. *See Donato v. Fitzgibbons*, 172 F.R.D. 75, 82 (S.D.N.Y. 1997); *see also NXIVM Corp. v. Bouchey*, No. 1:11-MC-0058 (GLS/DEP), 2011 U.S. Dist. LEXIS 123137, at *13-*14 (N.D.N.Y. Oct. 24, 2011) (considering "totality of circumstances" when determining whether nonparty's noncompliance was in bad faith). Carpenter is providing the Court with demonstrably false information. *See Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 U.S. Dist. LEXIS 112368, at *55-*56 (S.D.N.Y. June 26, 2020) (explaining that false statements intended to mislead the court demonstrates bad faith). Carpenter also continues to file frivolous motions that seek to relitigate rejected arguments. *See NXIVM*, 2011 U.S. Dist. LEXIS 123137 at *13-*14 (inferring bad faith when party, *inter alia*, repeatedly reiterated arguments previously aired and rejected); *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714-15 (2d Cir. 2019) (providing that re-assertion of rejected arguments evinces lack of good faith motive for making arguments).

Carpenter's bad faith is further reinforced by his history of similar misconduct. *See A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 279 F. Supp. 2d 341, 353 (S.D.N.Y. 2003) (considering party's "history of bad faith" in contempt proceedings); *see also Carvel*, 736 F. Supp. 2d at 767

(providing that "[i]n reaching the conclusion that [litigant] is acting in bad faith and for an improper purpose, we first look to her past conduct"). Carpenter's noncompliance with the discovery order is emblematic of his past discovery misconduct, and this consistency indicates Carpenter's bad faith. *See e.g.*, PJR App., Ex. 12 [Dkt. #11] (Carpenter email forbidding attorneys from producing relevant documents); PJR App., Ex. 14 [Dkt. #11] (Carpenter firing attorneys attempting to produce court-ordered documents); *see also Adlife Mktg. & Communs. Co.*, 2020 U.S. Dist. LEXIS 148755 at *26 ("[T]he similarly between his conduct in this case and past conduct for which he has been admonished supports an inference of bad faith ….").

### IV.     The Court Should Impose the Sanctions Requested by Universitas.

"The point of contempt sanctions … is 'to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" *See U2 Home Entm't*, 2005 U.S. Dist. LEXIS 14790 at *21). Contempt sanctions include fines, imprisonment, and attorneys' fees. *See* 18 U.S.C.S. § 401; *see also Ashley Homes of Long Island v. Arico*, No. CV 08-1616(ERK) (WDW), 2009 U.S. Dist. LEXIS 154397 (E.D.N.Y. July 31, 2009) (predicating Rule 45 contempt upon 18 U.S.C.S. § 401); *In re Corso*, 328 B.R. 375, 385-86 (E.D.N.Y. 2005) (affirming attorneys' fees as sanction for Rule 45 contempt); *but see Plumbing Creations*, 2019 U.S. Dist. LEXIS 115873 at *11 ("Courts in the Second Circuit generally award 'the reasonable costs of prosecuting the contempt … only where violation of a court order is found to have been willful.'"). The *Plumbing Creations* court explained how to determine contempt sanctions:

> In determining an appropriate sanction, the court must ensure that the civil contempt sanction is 'coercive' or 'compensatory' and not 'punitive.' A monetary sanction is normally appropriate 'to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience' but such a fine 'is not always dependent on a demonstration of actual pecuniary loss.' When imposing coercive fines for civil contempt, courts consider the 'character and magnitude of the harm threatened by continued contumacy, . . . the probable effectiveness of any

23

suggested sanction in bringing about (compliance), and the amount of (the contemnor's) financial resources and the consequent … burden to (him).'

*Plumbing Creations*, 2019 U.S. Dist. LEXIS 115873 at *9-*10.

Carpenter's continued contumacy threatens substantial harm given that Carpenter has already dragged-out post-judgment proceedings for almost a decade through sheer bad faith and abuse of process. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667, at *6 (S.D.N.Y. Oct. 8, 2014) (explaining that the **only** reason for continued litigation in this matter is Carpenter's "relentless efforts" to frustrate Universitas' collection efforts); *see also Lavatec Laundry Tech. GMBH v. Voss Laundry Sols.*, No. 3:13-cv-00056 (SRU), 2018 U.S. Dist. LEXIS 144487, at *37 (D. Conn. Jan. 9, 2018) (finding substantial harm threatened by continued contumacy when "this case has dragged on for more than three years following my ruling on ownership precisely because of [defendant]'s relentless efforts to ignore the effects of that decision"). Carpenter has substantial financial resources – to date, Universitas has recovered approximately $4.4 million of the $30 million that Carpenter stole, and Carpenter continues to spend millions in legal fees. Substantial sanctions are necessary to coerce Carpenter's compliance with the discovery order (and future orders). *See Lavatec Laundry Tech.*, 2018 U.S. Dist. LEXIS 144487 at *37-*38 (finding coercive sanctions necessary when "[Defendant] has already shown itself willing to 'run up fees and keep this case going' in the face of the injunction, and I have no reason to believe that a merely nominal sanction will deter it now").

The Court should impose an increasing daily monetary fine until Carpenter complies with the discovery order and the subpoena. *See MAS Wholesale Holdings LLC v. NW Rosedale Inc.*, No. 19-CV-1294 (PKC) (VMS), 2021 U.S. Dist. LEXIS 92562, at *29 (E.D.N.Y. May 14, 2021) ("[T]he Court uses its 'broad discretion' to implement 'a modest but increasing daily coercive fine' upon Defendants.") (internal citations omitted). The Court should also award Universitas

24

attorneys' fees and costs associated with its contempt motion. *See In re Corso*, 328 B.R. at 385-86. However, the Court should not presume that Carpenter will pay any monetary sanctions – Carpenter has been sanctioned millions of dollars in fines payable to the court and/or attorneys' fees payable to Universitas and has not paid a single cent of any such sanctions. *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CV 1590-LTS-HBP, 2016 U.S. Dist. LEXIS 64138 (S.D.N.Y. May 16, 2016) (sanctioning Carpenter $25,000 payable to court); *Universitas Educ.*, 2014 U.S. Dist. LEXIS 143667 at *6 (awarding Universitas $1.1 million in attorneys' fees). Thus, the Court should order that, if Carpenter fails to pay any monetary sanctions within thirty (30) days, then he should be incarcerated until (1) he pays such sanctions and (2) complies with the discovery order. *See* 18 U.S.C.S. § 401 (identifying imprisonment as sanction for contempt); *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 536-37 (Bankr. S.D.N.Y. 2007) (explaining that imprisonment is a coercive sanction so long as contemnor "is given the option of earlier release if he complies with the court's order") (internal citations omitted); *see also Shillitani v. United States*, 384 U.S. 364 (1966) (explaining that imprisonment pending compliance with court order is "a civil contempt proceeding, for which indictment and jury trial are not constitutionally required" and further explaining that courts "may … impose a determinate sentence which includes a purge clause. This type of sentence would benefit an incorrigible witness.").

## CONCLUSION

For the litany of reasons set forth above, Universitas respectfully requests that the Court grant Universitas' motion to hold Daniel Carpenter in contempt of court and impose the requested sanctions.

Dated: August 2, 2021
     Alexandria, VA

PLAINTIFF UNIVERSITAS EDUCATION, LLC

By: /s/ Joseph L. Manson III                    /
Joseph L. Manson III
Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
Tel. 202-674-1450
Fax 703-340-1642
jmanson@jmansonlaw.com

*Admitted Pro Hac Vice*

*Attorney for Universitas Education, LLC*

**CERTIFICATION**

I hereby certify that on August 2, 2021 a copy of foregoing memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Joseph L. Manson III