## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNIVERSITAS EDUCATION, LLC

                *Plaintiff,*

v.

BENISTAR, ET AL.

                *Defendant*s.

CASE NO. 3:20-cv-00738-JAM

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO HOLD DANIEL CARPENTER IN CIVIL CONTEMPT

**TABLE OF CONTENTS**

**INTRODUCTION**..........................................................................................................................1

**SUPPLEMENTAL FACTS**..........................................................................................................1

     I.       Subsequent Developments...........................................................................................1

     II.      The Document Production...........................................................................................3

     III.     Documents Not Included in the Document Production..............................................10

     IV.     Attorneys' Fees and Costs..........................................................................................10

**LEGAL STANDARD**................................................................................................................11

**ARGUMENT**.............................................................................................................................11

**CONCLUSION**..........................................................................................................................14

# TABLE OF AUTHORITIES

**Cases:**

*Aristidou v. Aviation Port Servs., LLC*, No. 18-CV-4040 (MKB) (RER),
    2020 U.S. Dist. LEXIS 31348 (E.D.N.Y. Feb. 21, 2020)..................................................11

*Excellent Home Care Servs. v. Fga, Inc.*, No. 13 CV 5390 (ILG) (CLP),
    2017 U.S. Dist. LEXIS 228951 (E.D.N.Y. June 5, 2017)......................................11, 12, 13

*Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331 (N.D.N.Y. 2008)..............................12, 13

*Scott Hutchison Enters. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44 (S.D.W. Va. 2016)...........11

*Stooksbury v. Ross*, 528 F. App'x 547 (6th Cir. 2013)..................................................................12

*Swan Glob. Invs. v. Young*, Civil Action No. 18-cv-03124-CMA-NRN,
    2020 U.S. Dist. LEXIS 161813 (D. Colo. June 5, 2020)......................................11, 12, 13

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2013 U.S. Dist. LEXIS 142901 (S.D.N.Y. May 21, 2013).................................................14

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2013 U.S. Dist. LEXIS 142902 (S.D.N.Y. May 21, 2013).................................................14

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2014 U.S. Dist. LEXIS 143667 (S.D.N.Y. Oct. 8, 2014)....................................................14

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2016 U.S. Dist. LEXIS 72268 (S.D.N.Y. Mar. 31, 2016)..................................................14

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS,
    2021 U.S. Dist. LEXIS 186211 (S.D.N.Y. Sep. 28, 2021).................................................14

**Federal Rules of Civil Procedure:**

Fed. R. Civ. P. 45(e)......................................................................................................................11

Universitas Education, LLC ("Universitas") files this supplemental memorandum of law, along with the attached exhibits, in support of its motion to hold Daniel Carpenter in contempt of court.

## INTRODUCTION

Universitas is unfortunately forced to bring yet another discovery dispute before the Court. Universitas served Carpenter with a subpoena *duces tecum*, which he moved to quash in part by claiming that the scope of responsive documents was so large that production would be unduly burdensome. The Court denied Carpenter's motion and Carpenter responded to the subpoena by claiming that he has no responsive documents. The Court found Carpenter's response "directly in conflict" with his motion to quash and gave Carpenter a second chance to produce documents. Carpenter then produced a "document dump" of 369,738 documents (likely over 1 million pages), of largely nonresponsive documents, while refusing to produce responsive documents identified by Universitas. Universitas repeatedly sought to work with Carpenter so as to remedy the numerous deficiencies with his production, but Carpenter refuses to do so. Thus, Universitas is forced to once again bring a discovery "dispute" before this Court for resolution.

## SUPPLEMENTAL FACTS

I. Subsequent Developments

Universitas moved to hold Carpenter in contempt of court, and at the subsequent Discovery Hearing, the Court found that "Mr. Carpenter has not complied with the subpoena or the Court's order" and extended the deadline for Carpenter to comply with the subpoena to September 9, 2021. *See* Dkt. #179. On or about September 9, 2021, Carpenter produced twenty-six (26) digital folders to Universitas. *See* Dkt. #182. On September 13, 2021, Universitas sent Carpenter a letter indicating that (1) Universitas could not access multiple folders in the document production, (2)

the production was a document dump, and (3) Universitas would provide Carpenter an opportunity to cure these deficiencies without court involvement. (*See* Exhibit 1.) Carpenter did not respond to Universitas or seek to remedy either deficiency. Instead, Carpenter filed a memorandum insisting that the documents within the production were responsive. *See* Dkt. #183.

On September 15, the Court held another Discovery Conference wherein it instructed Carpenter to "cure the deficiencies in the production and ensure both that the information disclosed by Carpenter is accessible to the plaintiff and is responsive to the subpoena," and again extended the deadline for Carpenter to comply with the subpoena. *See* Dkt. #186. On September 17, 2021, counsel for Mr. Carpenter contacted Universitas regarding Universitas' inability to access folders within the production and inquiring as to the location of the pornographic material discussed in the Discovery Conference. (*See* Exhibit 3.) Universitas responded the following business day. (*See* Exhibit 2.) In the interim, Carpenter filed with the Court to complain that Universitas did not respond to his email. *See* Dkt. #187. Following numerous failed efforts to host the folders online, Carpenter ultimately sent the folders to Universitas on two flash drives which Universitas received on September 28, 2021. *See* Dkt. #189-2 ¶¶ 10-12.

Carpenter refused to narrow his document production in order to ensure that documents within the production were responsive, including the pornographic content which the Court stated was clearly unresponsive during the hearing on September 15. Rather, Carpenter challenged Universitas' classification of these files as pornographic rather than merely sexual at the following discovery conference. Carpenter did not explain how sexual material could be considered responsive to the subpoena.

Throughout this process Carpenter has thumbed his nose at the Court's instruction that his counsel be involved in his discovery production. *See* Dkt. #179 ("Though his subpoena responses

were prepared two weeks after his counsel filed an appearance in this case, those responses appear to have been prepared without advice or consultation of his counsel."). Carpenter is producing discovery through an attorney who (1) allegedly does not represent Carpenter, and (2) is not admitted in this case.[1] Carpenter is also filing documents through an attorney who is not admitted in this proceeding. *See* Dkt. #193.

II.     The Document Production

The document production consists of twenty-six folders containing 369,738 digital files. The scale of this production renders it impossible to detail each individual document for the Court. Therefore, Universitas provides the Court with a representative sample of the contents for each folder.[2] Universitas cannot identify the number of responsive filed in Carpenter's production, but believes a reasonable estimate is approximately fifteen hundred (1,500) files.

Folder 1 contains approximately 23 GB of unsorted emails (approximately 50,000 emails). The Folder 1 preview filed by Carpenter depicts 148 emails – 122 of these emails concern job postings on LinkedIn. *See* Dkt. #183, Ex. A. Other emails within this folder include:

- Email from Kate Johnson to Mary Roth titled "ESI Contracts" that reads "Do you have contracts for City of Highland Park and Village of Buffalo Grove? (Hopefully you didn't already send these to me!)"
- Untitled email from Jeff Stannis to Glen Anderson that reads "I sent you a pdf from the company website that I found. It might be what we are looking for. Additionally, I incorporated the relevant parts of the original document into our pitch. Take a look"
- Email entitled "'Rangel Rule' Would Exempt All Taxpayers From IRS Penalties and Interest" that concerns the introduction of legislation in Congress
- Email entitled "[eNewsletter] Life insurance consumer tips" that provides a link to an online newsletter and recommends that life insurance be purchased from a specialist

---

[1] Universitas believes this is a deliberate strategy to enable Carpenter's strategic discovery misconduct while avoiding repercussions for his counsel.
[2] This overview largely utilizes the folder overviews filed by Carpenter. *See* Dkt. #183, Ex. A. Universitas can provide the Court with information concerning the files outside these previews upon request from the Court.

- Email entitled "$1 Million Sales Idea" that advertises products from American National Insurance
- Email entitled "2 Days Only- Save $100"
- Email entitled "3 Essential Points for Young Clients--And the Charts That Will Help Them Get It"
- Email entitled "A Solar Trade for 50%-plus Returns"
- Email entitled "Activities Deemed 'Non-fiduciary' In Spite of Mismanagement" that advertises online HR Compliance tools.
- Email from Stefan (no last name) to Jason DeMuth entitled "Address" that reads "What address should we use for correspondence?"

Folder 2 contains numerous files and subfolders concerning Bill White, such as Bill White's license to sell insurance in Florida and Nevada. *See* Dkt. #183, Ex. A. Bill White is not mentioned in the subpoena. *See* Dkt. #129-1.

Folder 3 contains approximately 16 GB of unsorted emails (approximately 65,000 emails). Emails within this folder include:

- Email entitled "9/11 Photos" attaching photos regarding the September 11 terrorist attacks
- Email entitled "10 Things about Women" containing joke about women
- Email entitled "53% Off iPhone 5 Case + Motorola Xoom Tablet, Ab-Workout DVDs & More"
- Email entitled "20 things to look at for mass from Chris Aceto" which contains advice for exercise and dieting
- Email entitled "83% Off Sharp Android Smartphone + Rings, Women's Sunglasses & More"
- Email entitled "A Holiday Offer from FASTSIGNS"
- Email from Deverell Smith to Guy Neumann entitled "address" that reads "I forgot to send you the book yesterday. I'm sending it right now. Whats your address?"
- Email entitled "African Safari"
- Email from Rob Lanza to David Gosselin entitled "Aggravated and interesting" discussing the University of Maine's athletic programs
- Email entitled "air france - weather analysis"
- Email entitled "Animation of Hudson River landing"
- Email entitled "Black Eyed Peas Concert 2/27/10"
- Email entitled "Bipartisan group of Colorado lawmakers supports PTC extension"
- Email entitled "Birthday Wishes"
- Email entitled "Bush's Real Sin Was Winning in Iraq"
- Email entitled "2010 Toyota Presents Oakdale Theatre Special Holiday Offer"
- Email entitled "2011 VIP Packages Now Available at The Comcast Theatre! Reserve your Seats Today!"

4

- Email entitled "FW: Invitations to Pasadena presentation in January"
- Email entitled "FW: Irish Blessing –" that forwards a message reading "If true, the story here is more compelling than the prospect of good luck!! But good luck anyway!!"

Folder 4 contain nonresponsive subfolders such as "[Charter Oak Trust] Brokers" and "[Charter Oak Trust] Procedures." *See* Dkt. #183, Ex. A. Folder 4 also contains numerous nonresponsive documents such as the document entitled "Admin Kit Section 8 Page – COT." *See* Dkt. #183, Ex. A. This document reads "Please use this section for articles of interest and/or any updated information pertaining to your Company's participation in the Charter Oak Trust."

Folder 5 contains clearly nonresponsive subfolders such as "Copy of My Music" and "My Music." *See* Dkt. #183, Ex. A. Documents within the Folder 5 include documents such as "2007 Vacation Request Form," "Angels Are Around You," and "2009 Vacation Request Form." *See* Dkt. #183, Ex. A. Folder 5 also contains the pornographic material discussed during the Discovery Conference as well as numerous files titled "Annuity Dog Idea 1" through "Annuity Dog Idea 5" – these files are pictures of animated dogs.

Folder 6 contains documents concerning Five Star Financial Consulting, LLC. *See* Dkt. #183, Ex. A. Five Star Financial Consulting, LLC was not included within the subpoena. *See* Dkt. #129-1. Folder 6 contains documents such as "Five Star Informal Inquiry _version 8.28.06" and "Five Star Informal Inquiry (version 20061207)." *See* Dkt. #183, Ex. A. These are both blank template forms.

Folder 7 is comprised of subfolders such as "Radi-Yo – Live Internet Radio – Listen Broadband_files" and "My eBooks." *See* Dkt. #183, Ex. A. The documents within Folder 7 include clearly nonresponsive documents such as "Elderly women arrested in insurance fraud case" and a picture of someone in a Halloween mask entitled "IM000619." *See* Dkt. #183, Ex. A.

Folder 8 contains 10 GB of files supposedly concerning Lincoln Financial Group ("Lincoln"). *See* Dkt. #183, Ex. A. Lincoln is not included within the subpoena. *See* Dkt. #129-1. Emails within this folder include:

- Email entitled "$10 off Movie and Popcorn"
- Email entitled "$15 or 20% Coupon – Pick Your Fall Savings – 1 Day Only"
- Email entitled "'iCarly' star Miranda Cosgrove hurt in tour bus crash"
- Email entitled "1 Day Only: Every Religion Course on Sale Starting at $14.95"
- Email entitled "4 Birth Certificate Questions Liberals Don't Want To Answer!"
- Email entitled "10 Most Dangerous Fireworks"
- Email entitled "Your Perfect Valentine's Day"
- Email entitled "Xmas Sale: EVERY Course 80% off PLUS Free Shipping PLUS Save an Extra 15%"

Folder 8 also contains numerous emails concerning LinkedIn job postings - *See* Dkt. #183, Ex. A.

Folder 9 contains files concerning Universitas' former counsel, such as a subpoena issued to TD Bank and letter correspondence between Universitas' former counsel and Jack Robinson. *See* Dkt. #183, Ex. A.

Folder 10 and Folder 11 contain files relating to entities such as the "Abelove Management Trust," "Ashton Management Trust," and "Atkinson Management Trust." *See* Dkt. #183, Ex. A. None of these entities were included in the subpoena. *See* Dkt. #129-1. Folder 11 also contains emails relating to LinkedIn job postings and the weather. *See* Dkt. #183, Ex. A.

Folder 12 is not depicted in the document overview that Carpenter filed. *See* Dkt. #183, Ex. A. The documents within this file concern a Virtual Office Agreement between Mesa Client Services, LLC ("Mesa") and Regus Management Group, LLC ("Regus") whereby Regus agrees to perform services such as answering the telephone and handling mail for Mesa. Neither Mesa nor Regus were included in the subpoena. *See* Dkt. #129-1.

Folder 13 contains documents relating to entities such as the "Coleman 2008 Insurance Trust," "Belfer 2008 Insurance Trust," and "Kahn 2008 Insurance Trust." *See* Dkt. #183, Ex. A. None of these entities were included in the subpoena. *See* Dkt. #129-1.

Folder 14 contains documents such as "#16894 NOVA GROUP INC LH" and "Nova Group – COT Labels." *See* Dkt. #183, Ex. A. These files correspond to blank Nova Group letterhead and return address stamps for mailing.

Folder 15 contains spam email such as LinkedIn job postings, "A New Mark Is Here! Meet CommandMark," "A New Mark, Get, Set, Go!" "A New World is Coming," and "6 industry experts reveal proven sales secrets (free webinar)." *See* Dkt. #183, Ex. A.

Folder 16 contains approximately 26 GB of files supposedly regarding Rex Insurance Services. *See* Dkt. #183, Ex. A. Emails within this folder include:

- Email entitled "Slip into the luxury of Hollywood"
- Email entitled "'Tis the season at Tryst" containing promotional material for Tryst Nightclub
- Email entitled "$19.99 and 92 points for this Top 100 Best Buys of the Year"
- Email entitled "1 cent shipping + 91 Spectator rated Rhone gem under $20"
- Email from David Gosselin to Ron Lanza entitled "2 Children of Art Collector C.C. Wang Feud Over His Will" which contains a link to a New York Times article
- Email entitled "5 days only -- up to 50% off California Wines"
- Email entitled "10th Anniversary deals on prints, greetings, and gifts - ready to pick up today!"
- Email entitled "50 Prints for 50 Pennies!"
- Email from PayPal to Guy Neumann entitled "A tip from a friend about an ad"
- Email from Ineke Murphy to Jacob Mutz entitled "Address" and reading "We tried to forward a package to you at the CO address. Can you let me know where it is supposed to go now? Thanks."
- Email entitled "Birthdays" that reads "I just wanted to let you know that I will not be asking for people to contribute to Birthday gifts this year. I know there are some of us who have come into tight financial times and every little bit helps. Thanks."
- Email entitled "Bird was 6'9"" and discussing accomplishments of basketball player Larry Bird
- Email from David Gosselin to Ron Lanza entitled "BLACKBERRY & WEB SITE" that reads "WHAT DO YOU THINK ABOUT OUR WEB SITE? ALSOWHAT DO YOU THINK ABOUT YOU BLACKBERRY FOR OUR BUSINESS?"

7

Folder 17 contains legal filings. Among the documents contained within Carpenter's preview is "001-0 Complaint in Interpleader" – this is an interpleader action involving Universitas which does not involve Carpenter and/or any Carpenter affiliate and/or entity. Folder 17 also contains the entire docket for the garnishment proceeding in Oklahoma including obviously nonresponsive documents such as numerous motions for filing extensions and a motion for sanctions against Jeffrey Sandberg.

Folder 18 contains a single subfolder named for William Lui. *See* Dkt. #183, Ex. A. Mr. Lui was not identified in the subpoena. *See* Dkt. #129-1. The folder primarily concerns an email chain entitled "RE_closes I've found so far." *See* Dkt. #183, Ex. A. This email thread vaguely discusses the discovery process in the underlying proceeding. For instance, Molly Carpenter emailed Don Trudeau "I think we just got what we needed from Caldwell discovery" to which Mr. Trudeau responds "Good" and Mrs. Carpenter responds "I think it's huge for Dan."

Folder 19 also contains a single subfolder named for William Lui. *See* Dkt. #183, Ex. A. The folder contains emails such as "In a conference call now, call you later," and "Pure Vanilla" which discusses a publicly traded company named Pure Vanilla. *See* Dkt. #183, Ex. A.

Folders 20, 21, 23, 24, and 25 contain documents concerning the Charter Oak Trust. *See* Dkt. #183, Ex. A. These documents were previously produced to Universitas and, had Carpenter discussed the subpoena with Universitas, Universitas would have told Carpenter that there was no need to produce these documents.

Folder 22 primarily contains (1) documents that were previously produced to Universitas and which Universitas would have told Carpenter there was no need to produce had he discussed the subpoena with Universitas, and (2) emails regarding a funding memorandum concerning Grist Mill Capital, LLC and the Charter Oak Trust. *See* Dkt. #183, Ex. A. One email regarding the

funding memorandum is "RE: Funding Memos" which reads as follows: "Fed Ex tried to deliver the package at 7:15 am this morning. No one was in the office at this time. Since the package required a signature, they left a note stating they would re-deliver the package by 10:30am. As of now, I still have not received the package."

Folder 26 contains approximately 13 GB of unsorted emails supposedly relating to Wayne Bursey. Essentially every email in the preview of Folder 26 filed by Carpenter is spam email. *See* Dkt. #183, Ex. A. Emails in this folder that were not included within the preview filed by Carpenter are below:

- Email entitled ""First To Know" Info! Plus, the McCains LIVE tomorrow on The View!"
- Email entitled ""My Cadillac": Winter Update"
- Email entitled ""To Catch An Insurance Salesman" – Dateline" concerning "a 'Dateline' hidden camera investigation, [where] Chris Hansen confronts insurance agents selling annuities to seniors when they think they're alone"
- Email entitled "Taste of Septemberfest"
- Email entitled "'Farmer' Hillary TV Ads Begin" concerning the presidential campaign for Hillary Clinton
- Email entitled "2 for 1 - Save up to 50% on Orvis Travel trips"
- Email entitled "2-DAY SALE - Up To 60% OFF Entire Selections!"
- Email entitled "2nd Amendment put in prospective"
- Email entitled "3 Huge Value Traps You Must Avoid Today" containing advice for stock market investment
- Email entitled "4-DAY WEEKEND SALE - Plus extra savings at Macy's!"
- Email entitled "4 big myths of becoming rich"
- Email entitled "10% Off Coupon Inside"
- Email entitled "27 Hole Member Member Postponed" concerning scheduling of golf tournament
- Email entitled "24 on at 8pm tonight" discussing season finale of television show 24
- Email entitled "25% off Ink Store Coupon for Chamber Members"
- Email entitled "2009 VACATIONS" discussing office policy for scheduling vacations
- Email entitled "A charm has been found in the Ladies Room"
- Email entitled "A Huge Pop Star Performs!"
- Email entitled "RE: Carpenter calls first Bird Bowl in History" discussing Superbowl predictions
- Email entitled "90 new styles + new ways to shop"

- Email entitled "A Hallmark E-Card from Carrie"
- Email entitled "A must see! Tiger mauling a man - very graphic - this is for men only!"
- Email entitled "A Great Deal for Dad this Father's Day"
- Email entitled "TIGER JOKES  (TO SOON)"
- Email entitled "Timeless Burberry quality is always in style at Westport Big and Tall"
- Email entitled "Titleist, number one ball in golf!"
- Email entitled "to play or not to play" discussing the New England Patriots

### III. Documents Not Included in the Document Production

Carpenter did not produce any of the documents that Universitas identified as missing in the contempt brief.[3] *See* Dkt. #167-1. Universitas also notified Carpenter of additional responsive documents within his control that were not produced, including (1) Carpenter's tax returns, (2) documentation concerning Carpenter's life insurance,[4] (3) business records for Carpenter's companies, (4) bank statements for Carpenter's companies, and (5) payment for counsel for companies under Carpenter's control. (*See* Exhibit 4.) None of these documents were produced. Carpenter has more responsive documents that he has not produced, such as letters from employees at Benistar Admin. Services, Inc. ("BASI"), a company that Carpenter claims he was never involved with but courts have consistently found that he controls, wherein BASI employees identify Carpenter as their boss. (*See* Exhibit 6 at 9-11, 23-24.)

### IV. Attorneys' Fees and Costs

Hon. Judge Meyer overruled Carpenter's objection to the Court's denial of his Motion to Quash on June 24, 2021. *See* Dkt. #153. Carpenter first produced documents to Universitas on September 9, 2021. *See* Dkt. #182. Between June 24, 2021 and September 9, 2021 Universitas

---

[3] Universitas no longer alleges that the documents seized in the federal raids are subject to discovery in this proceeding.

[4] Carpenter has a total of $26 million in life insurance on his life. (*See* Exhibit 5.)

10

incurred $20,333 in attorneys' fees relating to Carpenter's noncompliance with the Discovery Order. (*See* Exhibit 7.)

## LEGAL STANDARD

Fed. R. Civ. P. 45(e) requires that documents be produced "as they are kept in the ordinary course of business or … organize and label them to correspond to the categories in the demand." *See* FED. R. CIV. P. 45(e). This provision "prohibits 'simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought'" and requires that documents be produced "in some kind of organized, indexed fashion rather than as a mass of undifferentiated, unlabeled documents." *See Excellent Home Care Servs. v. Fga, Inc.*, No. 13 CV 5390 (ILG) (CLP), 2017 U.S. Dist. LEXIS 228951, at *9-*10 (E.D.N.Y. June 5, 2017) (internal citations omitted); *see also Swan Glob. Invs. v. Young*, Civil Action No. 18-cv-03124-CMA-NRN, 2020 U.S. Dist. LEXIS 161813, at *13-*14 (D. Colo. June 5, 2020) (collecting cases).

## ARGUMENT

Carpenter's production consists of 369,738 files that are (1) primarily nonresponsive and (2) are grouped into folders without any indication as to why any particular file is within any particular folder, or what files are responsive to which document requests – this is a textbook document dump. *See Scott Hutchison Enters. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 54 (S.D.W. Va. 2016) ("The term 'document dump' is often used to refer to the production of voluminous and mostly unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests.") (internal citation omitted). As such, Carpenter's production does not constitute compliance with the Court's Order. *See e.g.*, *Aristidou v. Aviation Port Servs., LLC*, No. 18-CV-4040 (MKB) (RER), 2020 U.S. Dist. LEXIS 31348, at *37-*39 (E.D.N.Y. Feb. 21, 2020) (finding "document dump" to be evidence of willful

11

nature of noncompliance with discovery order); *see also Swan Glob. Invs.*, 2020 U.S. Dist. LEXIS 161813 (finding that "'document dump' of more than 50,000 pages of documents just prior to the close of discovery … without any identification of the documents" constitutes "willful misconduct"); *Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331, 336 (N.D.N.Y. 2008) (explaining that the "production of 405,367 pages of documents devoid of any index or table to help illuminate organizational regime utilized" does not satisfy discovery obligations); *Stooksbury v. Ross*, 528 F. App'x 547, 553-54 (6th Cir. 2013) (explaining that "document dump" constitutes "discovery abuse").

Carpenter thus remains in contempt of Court and must produce the responsive documents identified by Universitas and re-produce the documents in his production (1) with only responsive documents, and (2) with some form of an index that indicates what documents are responsive to what document request. *See Excellent Home Care*, 2017 U.S. Dist. LEXIS 228951 at *10 (explaining that "where documents produced 'were not organized and labeled to correspond to the categories specified in' the document requests in response to which the documents were produced, courts have directed the producing party to re-produce the documents, Bates-stamped, with an 'itemized list which sets forth, by Bates-number, the documents responsive to each of the requests'") (internal citations omitted).

Carpenter cannot seriously claim that the files within his production are responsive – the documents production are largely marketing emails and spam. The Court specifically indicated that the pornographic material within the production was unresponsive and ordered Carpenter to "cure the deficiencies in the production and ensure … that the information disclosed by Mr. Carpenter … is responsive to the subpoena." *See* Dkt. #186. Carpenter refused to remove any nonresponsive documents, including the pornographic content discussed with the Court. Carpenter

12

argues that the documents are responsive because they are included within folders that have responsive titles. This is an absurd argument – the documents are not responsive. Carpenter further argues that the documents are responsive in light of the broad scope of the subpoena. This is demonstrably false as emails concerning stock tips and job openings are very clearly not responsive to any document request or even remotely relevant to any aspect of this proceeding.

The documents are also unorganized, and thus the production does not satisfy Carpenter's discovery obligations. *See Excellent Home Care*, 2017 U.S. Dist. LEXIS 228951 at *20-*21 (finding that document production was insufficient because it "fail[ed] to indicate which documents were responsive to Document Requests 19 through 24 with sufficient specificity"); *Swan Glob. Invs.*, 2020 U.S. Dist. LEXIS 161813 (recommending sanctions in response to document production that, *inter alia*, "[does] not identif[y] what the documents pertain to, whether any such documents are responsive to Mr. Young's discovery requests …."). Carpenter's argument that the documents were produced as they were kept in attorney Sandberg's ordinary course of business is meritless. Even if true, this does not constitute compliance – as explained by the *Pass & Seymour* court:

> [T]he underlying assumption in permitting the alternative of producing documents as they are maintained was that production of records as kept in the usual course of business ordinarily will make their significance pellucid. That is the overarching purpose of the rule.… A party selecting the alternative method of production bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate. To carry this burden, a party must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained…. [T]he overwhelming weight of authority counsels that more in the way of organization is required in order to make the document production meaningful, and thus proper.

*Pass & Seymour*, 255 F.R.D. at 334-35 (internal citations omitted). The 369,738 documents in the production are not organized in any coherent method, and thus the production is insufficient, regardless of how attorney Sandberg maintains his files.

**CONCLUSION**

It is not a coincidence that Carpenter has obstructed discovery in seemingly all litigation he has been involved with, that the courts have consistently said that this discovery obstruction was strategic and willful,[5] and that Carpenter is obstructing discovery in this proceeding – these discovery "disputes" accomplish Carpenter's goals: (1) delay Universitas' collection efforts, and (2) increase Universitas' attorneys' fees so as to render its collection efforts cost prohibitive.[6] Carpenter has been repeatedly sanctioned and ordered to pay Universitas millions of dollars in sanctions.[7] Carpenter has not paid any such sanctions, nor have these sanctions deterred Carpenter from continued misconduct.[8]

Universitas merely wants attorneys' fees to compensate for fees relating to this discovery "dispute" and for Carpenter to comply with the Discovery Order. However, Carpenter's history makes clear that neither objective can be accomplished through monetary sanctions, and that Carpenter will continue to defy the Court until he is coerced to do otherwise. As such, Universitas

---

[5] *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, 2016 U.S. Dist. LEXIS 72268, at *14-*16 (S.D.N.Y. Mar. 31, 2016) ("[Carpenter] engaged in 'dilatory conduct during the course of post-judgment discovery' in order to delay or hinder Universitas' discovery and enforcement efforts.… The persistence and baselessness of [Carpenter]'s abusive tactics suggest that [Carpenter] intended to injure Universitas' rights to collect the judgment.… [Carpenter] pursued this goal through various means, including … by resisting Universitas' efforts to obtain post-judgment discovery.")
[6] *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142902, at *35 (S.D.N.Y. May 21, 2013) (characterizing Carpenter's litigation strategy as a "strategy of promoting delay through the filing of meritless and frivolous motions"); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142901, at *36 (S.D.N.Y. May 21, 2013) (characterizing Carpenter's litigation strategy as a strategy "motivated not by legal merit, but rather by dilatory purposes").
[7] *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667, at *6 (S.D.N.Y. Oct. 8, 2014) (awarding Universitas $1.1 million in attorneys' fees against Carpenter).
[8] *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2021 U.S. Dist. LEXIS 186211, at *37 (S.D.N.Y. Sep. 28, 2021) ("Mr. Carpenter has so far not been deterred by financial sanctions ….").

respectfully requests that the Court impose the sanctions initially requested by Universitas in its Motion to Hold Daniel Carpenter in Civil Contempt. *See* Dkt. #167. Alternatively, the Court should hold Carpenter's counsel personally responsible for Carpenter's discovery production and hold him liable for all sanctions entered against Carpenter.

Dated: October 15, 2021
　　　Alexandria, VA

　　　　　　　　　　　　　　　　　PLAINTIFF UNIVERSITAS EDUCATION, LLC

　　　　　　　　　　　　　　　　　By: /s/ Joseph L. Manson III            /
　　　　　　　　　　　　　　　　　Joseph L. Manson III
　　　　　　　　　　　　　　　　　Law Offices of Joseph L. Manson III
　　　　　　　　　　　　　　　　　600 Cameron Street
　　　　　　　　　　　　　　　　　Alexandria, VA 22314
　　　　　　　　　　　　　　　　　Tel. 202-674-1450
　　　　　　　　　　　　　　　　　Fax 703-340-1642
　　　　　　　　　　　　　　　　　jmanson@jmansonlaw.com

　　　　　　　　　　　　　　　　　*Admitted Pro Hac Vice*

　　　　　　　　　　　　　　　　　*Attorney for Universitas Education, LLC*

## CERTIFICATION

I hereby certify that on October 15, 2021 a copy of foregoing memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Joseph L. Manson III