# EXHIBIT 11

# Law Offices of Joseph L. Manson III

Joseph L. Manson III, Esq.
600 Cameron St.
Alexandria, VA 22314

August 30, 2021

<u>VIA EMAIL</u>

Jeffrey Sklarz
Green & Sklarz LLC
One Audubon Street, 3rd Floor
New Haven, CT 06511

Re:     *Universitas Educ., LLC v. Benistar*, Case No. 3:20-cv-738-JAM

Dear Jeff,

As you know, we represent Universitas Education, LLC ("Universitas") in the above-captioned matter. We write to you regarding the emails received from Grist Mill Partners, LLC ("GMP") on August 23, 2021. There are multiple issues with GMP's email production that require attention. It is our hope to resolve all outstanding issues prior to the discovery conference on September 15, 2021.

## I.     GMP Improperly Omitted Emails from Multiple Record Custodians.

GMP did not produce emails from multiple record custodians in accordance with objections to the record custodians. As explained *infra*, these objections were improper. Additionally, GMP did not produce Amanda Rossi's emails, despite not objecting to her as a record custodian. GMP must produce emails from all the record custodians identified by Universitas, including Ms. Rossi.

Parties are required to produce documents that they have the "practical ability to obtain … from a nonparty …." *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394 (AJN) (BCM), 2016 U.S. Dist. LEXIS 133564, at *17-*18 (S.D.N.Y. Sep. 27, 2016) (internal citations omitted). GMP objected to producing emails in the possession of Benistar Admin Services, Inc. ("BASI) on the basis that "[at] no time was BASI a record custodian of GMP." This objection is improper for a litany of reasons. First, this objection is demonstrably false because BASI is a record custodian for GMP. BASI owns the computer server on which all GMP emails are stored. (*See* Exhibit 1 ¶¶ 4-5;) *see also Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, No. 14-CV-277S(F), 2016 U.S. Dist. LEXIS 61777, at *24 n. 7 (W.D.N.Y. May 10, 2016) (defining "server" as "[a]ny central computer on a network that contains ESI or applications shared by multiple users of the network on their client computers.") (internal citations omitted). As such, BASI is the records custodian for all GMP emails. *See Nat'l Jewish Health v. WebMD Health Servs. Grp.*, 305 F.R.D. 247, 251, 254-55 (D. Colo. 2014).

1

Moreover, GMP already produced emails stored on BASI's server, and thus clearly has the ability to produce emails in BASI's possession. *See Royal Park*, 2016 U.S. Dist. LEXIS 133564 at *22 (finding that production of discovery from source indicates ability to produce documents from that source). Furthermore, at a minimum, GMP was required to ask BASI to produce these emails before objecting to their production. *See id.* at *22-*23 and *28-*29 (explaining that asking an affiliate to produce documents within their possession is "the 'least' a corporation **must** do before asserting that it lacks the necessary practical ability to obtain documents from [an] affiliated non-party") (emphasis added). GMP did the opposite – it told BASI that was GMP not requesting that BASI produce the emails requested by Universitas, and further suggested that BASI object to the production request. (*See* Exhibit 2.)

GMP also objected to producing Kathy Kehoe's emails on the basis that "[at] no time was Kathy Kehoe a record custodian of GMP." This objection fails, *inter alia*, because it pre-supposes a distinction between GMP and other Carpenter-controlled entities that does not exist. *See e.g.*, *United States v. Carpenter*, 190 F. Supp. 3d 260, 274 (D. Conn. 2016) ("…the evidence shows that the formal corporate structure of the various Benistar Entities had little meaning for the people involved."); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 3983, at *13 (S.D.N.Y. Jan. 13, 2014) ("The evidence received by this Court concerning the actions of Mr. Carpenter and his affiliates demonstrates an absence of respect for distinctions among his business entities ….").

The Court denied GMP's motion to dismiss with regard to the alter ego claim and found it plausible that "GMP is squarely part of Daniel Carpenter's web of companies that are a 'single economic entity,'" in part because courts "have found that Carpenter and his companies consistently disregard corporate formalities, such as sharing office space, **management**, computers, and **employees**." (*See* Dkt. #110 at 17-19 (emphasis added).) As such, the fact that someone within the Carpenter enterprise is not formally affiliated with any particular entity is not relevant to discovery on an alter ego claim.

Moreover, the courts have found that Mr. Carpenter operates his "web of companies" as part of a criminal enterprise that he uses to conceal his personal assets from Universitas and other creditors.[1] *See Carpenter*, 190 F. Supp. 3d 260; *see also Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-CV-1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077, at *7-*8 (S.D.N.Y. Aug. 7, 2014) (explaining that Daniel Carpenter controls hundreds of shell companies that he uses to "hide assets" from Universitas and other creditors). Ms. Kehoe is a high-ranking member of the

---

[1] The court explicitly found that Mr. Carpenter's companies constitute a criminal enterprise in the judgment concerning Mr. Carpenter's "criminal conduct as the organizer and leader of the STOLI scheme …." (*See* Dkt. #167-3 at 2.) The judgment indicates that Mr. Carpenter's sentence included an adjustment for "aggravating role." (*See* Dkt. #167-3 at 2.) The "aggravating role" sentencing enhancement is set forth in Section 3B1.1 of the United States Sentencing Guidelines, and the commentary for this Section indicates that it concerns leadership of a criminal enterprise:

> This section provides a range of adjustments to increase the offense level based upon the size of a **criminal organization** (*i.e.*, the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense…. In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility.

United States Sentencing Commission, *Guidelines Manual*, §3B1.1, comment. (backg'd.) (Nov. 2018) (emphasis added).

Carpenter criminal enterprise. *See e.g.*, *Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE, 2020 U.S. Dist. LEXIS 251679 (W.D. Okla. Oct. 20, 2020) (explaining that (1) Ms. Kehoe is a manager for BASI, (2) Ms. Kehoe is a manager of SDM Holdings, LLC ("SDM") and (3) a judgment debtor purchased SDM as part of the Carpenter money laundering conspiracy), *adopted* 2021 U.S. Dist. LEXIS 26388; *see also Carpenter*, 190 F. Supp. 3d at 273 (explaining that BASI is one of the "most significant" entities within the Carpenter criminal enterprise). As such, there is reason to believe that Ms. Kehoe has emails relevant to the alter ego claim against GMP.

Daniel Carpenter (GMP's sole principal) has the practical ability to have Ms. Kehoe search and produce her emails. Therefore, GMP must produce Ms. Kehoe's emails. *See Royal Park*, 2016 U.S. Dist. LEXIS 133564 at *17-*18.

II.   <u>GMP Must Produce a Privilege Log.</u>

As previously stated via email, Universitas insists that GMP produce a privilege log in accordance with Local Rule 26(e). *See* D. Conn. L. Civ. R. 26(e). Universitas believes that attorney-client privilege does not apply to many emails withheld from production on such grounds, but has no grounds to identify any such emails absent a privilege log.

The courts have already determined that: (1) Daniel Carpenter controls "hundreds" of companies, (2) Mr. Carpenter's companies constitute a criminal enterprise, (3) Mr. Carpenter uses his companies to "hide assets" from Universitas and other creditors, (4) Mr. Carpenter hides assets from Universitas and other creditors with fraudulent intent, and (5) Mr. Carpenter's efforts to "hide assets" constitute fraud upon Universitas and other creditors. (*See* Dkt. #167-3;) *Carpenter*, 190 F. Supp. 3d 260; *Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077. Mr. Carpenter continues to use his companies to hide assets from Universitas so as to hinder and/or delay Universitas' collection efforts, and thereby defraud Universitas. *See Rocklen, Inc. v. Radulesco*, 10 Conn. App. 271, 277-78 (1987) (explaining that actions "taken to defeat or hinder [creditors] … from collecting their debt" constitutes fraud). The Court found that there is reason to believe that GMP is involved with this ongoing fraud. (*See* Dkt. #110 at 17-19.)

As such, emails between GMP and its counsel are likely subject to the crime-fraud exception. *See Olson v. Accessory Controls & Equip. Corp.*, 254 Conn. 145, 171-74 (2000) (explaining that crime-fraud exception applies when there is probable cause to suspect that communications were intended to further a crime and/or civil fraud). Attorney-client privilege does not attach to any such emails. *See Evans v. GMC*, Case No. X06CV940156090S, 2003 Conn. Super. LEXIS 302, at *6 (Conn. Super. Ct. Feb. 5, 2003) ("The crime-fraud exception removes the privilege from those attorney-client communications that are related to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct."). Given that (1) Mr. Carpenter is using the criminal enterprise under his control to continue hiding assets from Universitas and (2) there is probable cause to believe that GMP is part of Mr. Carpenter's criminal enterprise, emails between GMP and its counsel are likely subject to the crime-fraud exception and thus are not privileged communications. *See Olson*, 254 Conn. at 175 (explaining that crime-fraud exception applies to "communications with counsel … intended in some way to facilitate or to conceal the criminal or fraudulent activity"); *Hutchinson v. Farm Family Cas. Ins. Co.*, 867 A.2d 1, 11 (Conn. 2005) (explaining that crime-fraud exception applies to communications with attorney for the

purpose of frustrating creditor collection efforts) (citing *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1041 (2d Cir. 1984)).

Thank you for your attention to these matters. I look forward to your response.

Sincerely,

/s/ Joseph L. Manson III
Joseph L. Manson III
Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
Telephone: 202-674-1450
Email: jmanson@jmansonlaw.com

*Counsel for Universitas Education, LLC*

Cc: Lawrence Grossman

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

BENISTAR ADMIN SERVICES, INC.  :
             :  No.
V.              :
             :
UNITED STATES OF AMERICA   :  April 22, 2010
             :
IN RE:  Search of NOVA BENEFIT PLANS :
LLC, a/k/a BENISTAR, located at 100 Grist :
Mill Road, Simsbury, Connecticut   :

## <u>DECLARATION OF MOLLY CARPENTER</u>

  I, MOLLY CARPENTER, pursuant to 28 U.S.C. § 1746(2), hereby declare as follows:

  1.  I am over the age of eighteen and understand the obligations of an oath.

  2.  I make this declaration from my personal knowledge and in support of Petitioners' Emergency Motion for Return of Illegally Seized Property.

  3.  I am Chairman of Benistar Admin Services, Inc. ("BASI").  BASI leases the entire suite of offices located at and known as 100 Grist Mill Road, Simsbury, CT 06070 from Grist Mill Partners, LLC.  There are more than two dozen separate companies and business entities that occupy these premises.

  4.  BASI owns all of the computer hardware and software, as well as all internet and telecommunications connections, at the office facility – including all of the computers that were imaged by the IRS Agents on April 20, 2010.

1

5.      BASI is the lawful custodian and/or owner of all of the property that was illegally seized by the IRS on April 20, 2010.

6.      Shortly after nine a.m. on Tuesday, April 20, 2010, armed agents came in to our place of business and literally stormed our building, sealing off the entrances without identifying themselves. Every employee was rounded up and put in a conference room. I informed the Agent in Charge ("Kathy") that we were represented by attorneys and would like to call them. She refused to allow us to do so at that time. The agents then began taking employees out one at a time.

7.      I again requested that they not speak to anyone until our attorneys could be contacted. She assured me that they would only take names and phone numbers and would not speak to anyone until our attorneys could get there.

6.      At the same time that Agent Kathy was assuring me that my staff would be protected, Kevin Slattery and Stefan Cherneski were locked away in separate rooms being interrogated. It wasn't until we went outside to meet with the attorneys, who were barred from entering the building, that we saw Stefan and Kevin's cars. We informed our attorneys that we believed both gentlemen were still inside the building.

7.      The agents at first denied such and then eventually conceded that Stefan Cherneski was being interrogated and subsequently let him go. He was very upset upon leaving the building. We then heard Kevin screaming for an attorney. It got very loud and sounded violent. It took approximately another 15 minutes for Special Agent Kathy to come out. The IRS agents had said they

2

couldn't find her.  She denied knowing that Stefan or Kevin were being held. This is an outright lie.

8.      Most of the agents just did their job, but one was smirking and laughing when they physically searched my husband Daniel Carpenter.  My daughter Carrie, my assistant Amanda, and I all saw him.  When I confronted the agent about the smirking, he invited me to "step outside with him".  He acted like he wanted to fight me. My husband, Daniel, intervened and asked three times for the Agent to identify himself and show his badge number.  He refused to do so. There was another Agent that took out handcuffs and told my husband to put his hands behind his back and threatened to arrest him and handcuff him in front of his daughter and the employees.  Special Agent Kathy intervened and said she had spoken to him.  The agent continued to make faces at us and smirk through the window.  I informed Special Agent Kathy of such. We all also heard shouting, hooting, laughing, joking, clapping, and cheering from the assembled IRS agents outside the conference room.

9.      This was a terrifying ordeal.  We were never even told what the supposed charges were about and the agents acted like it was a party.  They kept saying they were only concerned for their own safety.  We had nothing more lethal than sticky notes and note pads. They had guns and bullet proof vests on.

10.      When my husband, Daniel, reviewed the Search Warrant he noticed that there was nothing attached to the warrant as required by law.  Agent Kathy stated that it was under seal.  Another Agent, who said that he was from

New York, agreed that the Search Warrant looked defective and said that was not how they did things in New York.

11.     My husband pointed out to me and Agent Kathy that Benistar, Ltd., had been out of business since January of 2004.  Nowhere on the Search Warrant or the Subpoena did it state anywhere the name of our Company that occupied the building, Benistar Admin Services Inc. (BASI).

12.     BASI is the custodian and legal owner of all of the records that were improperly taken by the IRS in their raid.

13.     BASI is 100% owned by its employees through an Employee Stock Ownership Plan and has been since 1999.  Neither I, nor my husband Daniel participate in the BASI ESOP.

14.     NOVA Benefit Plans, LLC is a company that has no employees and owns no property at 100 Grist Mill Road and is not affiliated with or owned by BASI.  NOVA Benefit Plans has never been "AKA" Also Known As Benistar.  NOVA's only job is to act as the sponsor of various welfare benefit plans.

15.     Literally the IRS Agents have taken every working file in the building.  We are incapable of running our business or servicing any of our thousands of corporate clients or hundreds or thousands of retirees that count on us for their daily healthcare needs.

16.     In May we also have a very important SAS-70 Level II audit coming up that is crucial to our very existence.  We cannot possibly have our internal operating controls reviewed by our auditing firm if all of our files are missing.  We are the only Third Party Administrator in America to have passed a SAS-70 Level

4

II audit administered by PricewaterhouseCoopers. This is the same level of scrutiny that many banks and insurance carriers must pass.

17.     Also next week we have a site visit and inspection by one of our largest partners, Express Scripts (ESRX, Public Company), one of the largest Prescription Benefit Managers in the World and our primary PBM. Without Express Scripts to offer pharmacy benefits to our retirees and active employees alike, we will be out of business. To pass the Express Script inspection next week and our SAS-70 Audit next month we need our files back as soon as possible, if not immediately.

18.     To the best of my knowledge, no one in this building offers "abusive" tax shelters. Certainly no one employed by BASI or associated with any of the NOVA Benefit Plans has anything to do with tax shelters.

19.     I also heard my husband point out to Agent Kathy that the original Grand Jury subpoena was issued on April 13th with a return date for the information to be provided by June 8th. It seems strange to me that on Friday, April 16th, someone made up a story that would require the IRS to storm our building on Tuesday, April 20th, because they thought we would "destroy documents" including all of our working files? This makes no sense to me at all, and I believe this is just one more ruse on the part of the IRS to gain illegitimate access to our private client files to learn the names of participating employers and plan participants in order to audit them. That is certainly not a proper basis for a criminal search warrant.

20.    The files they have taken were outside the scope of the warrant and contain confidential medical information that is to be protected by HIPAA.  All of the files, documents, and paper seized should be returned to us immediately so as to not jeopardize our business, our clients' privacy, and the jobs of sixty employees that have nothing to do with 419 plans.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 22, 2010

Molly Carpenter

6

# EXHIBIT
# 2

| | |
|---|---|
| **From:** | Dan Carpenter US |
| **To:** | Molly Carpenter |
| **Cc:** | "Jeffrey Sklarz (jsklarz@gs-lawfirm.com)"; John R Williams; gholmes@odglaw.com |
| **Subject:** | Universitas v. GMP - materials for email discovery |
| **Date:** | Wednesday, August 4, 2021 7:43:37 AM |

Molly:

I think you should run this "overly broad" and "overly burdensome" request by Mike McPherson.  Jeff Sklarz will be objecting, of course, but perhaps it makes sense for Halloran & Sage to officially object with Magistrate Spector since they represent BASI, and he is now in charge of the Contempt Motion against me???  I certainly have no right to ask any of these people to search for anything...much less BASI.

Please remember that we objected to the original requests as "overly burdensome" and now they have gotten worse.  Wayne Bursey died in 2015, Jack Robinson died in 2017, and Matt Westcott left the firm in 2017???   All of the checks from Exhibit 21 are from 2014 and the mythical account had to be set up in late 2013 or January 2014.....Right???  Curaleaf was in the building from June 2014 to January 2020......So I think someone needs to reach out to Magistrate Spector on this.....other than Dan Carpenter.

Thanks,

Dan

---

**From:** Dan Carpenter US <dcarpenter@usbgi.com>
**Sent:** Wednesday, August 4, 2021 7:19 AM
**To:** Dan Carpenter US <dcarpenter@usbgi.com>
**Subject:** Fw: Universitas v. GMP - materials for email discovery

---

**From:** Ben Chernow <bchernow@jmansonlaw.com>
**Sent:** Thursday, July 29, 2021 7:36 PM
**To:** Jeffrey Sklarz <jsklarz@gs-lawfirm.com>
**Cc:** Lawrence Grossman <lgrossman@gs-lawfirm.com>; Joseph Manson <jmanson@jmansonlaw.com>
**Subject:** Universitas v. GMP - materials for email discovery

**CAUTION - EXTERNAL EMAIL**
**This email originated from outside of Green & Sklarz.  DO NOT click links or open attachments unless you recognize the sender and know the content is safe.**

Jeff and Lawrence,

Pursuant to the discovery order, please find our list of record custodians and search terms for email production below. We apologize for the delay. We are amenable to a corresponding extension to the production deadliine should such an extension prove necessary. The search terms are the same for all custodians.

**<u>Search terms</u>:**

Grist Mill Partners

GMP

GM Partners

Ensign-Bickford

Ensign

100 Grist Mill

Mill Pond

Curaleaf

Lease

Building

"hidden" or "hide" or "conceal" or "protect" or "secure" or "safe"

Rent

Mortgage

Property

Tenant

Landlord

Universitas

"creditor" or "crediter"

"judgment debtor" or "judgment debter" or "debtor" or "debter"

Lawsuit

Suit

Litigation

CFG

Carpenter Financial

Caroline

"charging order" or "order"

"restrain" or "notice" or "restraining notice"

Judgment

Moonstone

Seir Hill

Account

Bank

Transfer

Swain

Alter ego

"shell" or "sham"

"own" or "hold" or "held" or "title" and "new" or "different" or "other"

**<u>Records Custodians</u>:**

Daniel Carpenter

Molly Carpenter

Kathy Kehoe

Amanda Rossi

Joseph Castagno

Benistar Admin Services, Inc. ("BASI") - we request that BASI search its server for emails that otherwise have no current custodian. These emails are emails sent and/or received by Wayne Bursey, Jack Robinson, and/or Matthew Westcott.

# EXHIBIT 12

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK


UNIVERSITAS EDUCATION, LLC,   :   CASE NO. 11-1590-LTS-HBP

     Plaintiff


VS.                           :


NOVA GROUP, INC., as trustee,

sponsor and fiduciary of the

CHARTER OAK TRUST WELFARE

BENEFIT PLAN,

     Defendant             :   NOVEMBER 20, 2012



VIDEOTAPED DEPOSITION OF AMANDA ROSSI



SUSAN K. WHITT, RPR, LSR

Licensed Shorthand Reporter No. 1

ALLAN REPORTING SERVICE

P.O. Box 914

Canton, Connecticut 06019

Telephone (860) 693-8557       Facsimile (860) 693-1065

[Page 11]

1     A     Yes.

2     Q     And where are you employed?

3     A     Benistar Admin Services.

4     Q     Benistar Admin Services, Inc.; is that correct?

5     A     Yes.

6     Q     Okay.  During the deposition today I may refer

7  to that as BASI for short.  Is that okay with you?

8     A     Yes.

9     Q     Okay.  So you said you're employed by BASI,

10  correct?

11    A     Mm-hmm -- yes.

12    Q     And do you have a position there, or title?

13    A     Not -- no.  No.  We don't keep titles.

14    Q     You don't keep titles?

15    A     No.

16    Q     How would you -- you know, if you're describing,

17  talking to a friend, what would you say your role is at

18  BASI?

19    A     I do payroll, and I don't really describe it as

20  a specific role, but I do, like, human resource-type stuff.

21    Q     So what kind of things?

22    A     Payroll, 401(k) benefits.  I also handle some of

23  the office management as far as, like, ordering supplies

24  and taking care of building maintenance, that kind of

25  stuff.

[Page 18]

```
 1       Q     Have you ever been employed in the last five

 2  years as an independent contractor or freelancer?

 3       A     No.

 4       Q     Okay.  You mentioned Grist Mill Capital before.

 5  Do you do work for Grist Mill Capital?

 6       A     Not currently, no, I don't.

 7       Q     When was the last time you did?

 8       A     Possibly writing a check.  That was . . .

 9       Q     Writing a check, when was that?

10       A     When I wrote Mr. Norris his check.

11       Q     Okay.  So excluding when you wrote --

12       A     Yes.

13       Q     No, no.  That's fine.  Excluding when you paid

14  Mr. Norris, when was the last time did you something?

15       A     I don't recall.

16       Q     When you go to 100 Grist Mill Road -- I haven't

17  been there; maybe someday -- is there a sign somewhere that

18  tells you the entities that are located there?

19       A     I think there is a sign out front, yes.

20       Q     And how many -- so that would tell a visitor how

21  many -- you know, what kind of businesses they could find

22  in there?

23       A     Mm-hmm.

24       Q     And how many entities are currently listed?

25       A     I don't recall.  I haven't looked at it.
```

[Page 19]

1      Q      Okay.  And your testimony is that these entities

2   that you work for, there's no kind of defined office space

3   for each of them; is that correct?

4      A      Correct.

5      Q      Okay.  And how many entities are there or

6   businesses are there at 100 Grist Mill Road?

7      A      I don't recall.

8      Q      Can you guess?

9      A      No.

10      Q      Is it more than five?

11      A      I don't -- I couldn't give you an answer.  I

12   don't know.

13      Q      All right.  How many do you know of?

14      A      I don't know.

15      Q      You don't know how many entities that you know

16   of that are at 100 Grist Mill Road?

17      A      There are -- there's Benistar Admin Services and

18   USB Group and the ones that we've named, but I don't recall

19   all of them.

20      Q      Right.  So have we -- okay.  Withdrawn.  Well,

21   who would know how many are at 100 Grist Mill Road?

22      A      I don't know.

23      Q      Would the owner -- do you know who or what owns

24   the building at 100 Grist Mill Road?

25      A      Yes.

[Page 20]

```
 1        Q      Okay.  And is that a person or an entity?

 2        A      An entity.

 3        Q      And what entity is that?

 4        A      Grist Mill Partners.

 5        Q      Grist Mill Partners?

 6        A      Mm-hmm.

 7        Q      Is that an LLC or a corporation?

 8        A      An LLC -- I believe it's an LLC.

 9        Q      And have you done work for Grist Mill Partners?

10        A      Yes.

11        Q      Okay.  But they don't pay you; is that correct?

12        A      Correct.

13        Q      So how is it that you come to do work for

14   companies that don't pay you?

15        A      I don't know.  It's just asked of me, and I help

16   out.

17        Q      Right.  So sometimes you're approached to help

18   out with companies that are at 100 Grist Mill Road but that

19   don't actually pay you?

20        A      Right.

21        Q      Okay.  And how often does that happen?  Well,

22   you said you were sorry?

23        A      Yeah.  I just -- I'm sorry.  I'm just not sure

24   how this all goes.  So I'm trying to --

25        Q      Oh, you don't have to apologize.
```

[Page 21]

```
 1      A     Okay.

 2      Q     So let's back up.  I'll withdraw whatever I --

 3  well, we'll just restate the question.

 4      A     Okay.

 5      Q     So sometimes you do work for entities that are

 6  at 100 Grist Mill Road but that don't pay you for that

 7  work; is that correct?

 8      A     Correct.  Yes.

 9      Q     And do you know how many entities -- how many

10  different entities do you do work for that don't actually

11  pay you?

12      A     I don't know the number.

13      Q     And how does it work?  Does someone approach

14  you?

15      A     No.  Mr. Carpenter will ask -- well, yes, yes.

16  He'll ask me to work on certain projects.

17      Q     Is it only Mr. Carpenter who will approach you

18  to do these projects?

19      A     Yes.

20      Q     So only Mr. Carpenter?

21      A     Yes.

22      Q     So not Mr. Bursey?

23      A     No.

24      Q     By the way, I saw Mr. Bursey in the hallway.  He

25  looks good.  Is there -- what reason is he here today?
```

# EXHIBIT 13



April 15, 2014

To Whom It May Concern:

Please accept this letter as notification that Wayne H. Bursey has resigned as "Trustee" for the following Plans and the new "Trustee" is Kathleen Kehoe.

1. Benistar 419 Plan & Trust
2. Grist Mill Trust, Grist Mill Living Benefits & Grist Mill Survivorship
3. Sickness, Accident & Disability Trust, SADI05 & SADI07
4. Long Term Care Trust
5. Life One Trust
6. Life Five Trust
7. Mid Atlantic Trust
8. Jefferson Trust
9. Cambridge Trust
10. Nutmeg Trust
11. McAllen Trust
12. Survivorship Trust

Old Signatory: Wayne H. Bursey      New Signatory: Kathleen Kehoe

Signature: _____   Signature: _____

If you have any further questions or need additional information, please do not hesitate to contact Kathleen Kehoe or Barbara Korfel at (860) 408-7000.

Sincerely,

Kathleen Kehoe

Grist Mill Plaza  •  100 Grist Mill Road  •  Simsbury, CT  06070
Phone: 1-860-408-7000      Fax: 1-860-408-7022

PennMutual-43

JLM008175

# EXHIBIT 14

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNIVERSITAS EDUCATION, LLC

*Plaintiff,*

v.

BENISTAR, ET AL.

*Defendant*s.

CASE NO. 3:20-cv-00738-JAM

## <u>DECLARATION OF BENJAMIN CHERNOW</u>

I, Benjamin Chernow, make this Declaration pursuant to 28 U.S.C. § 1746 and state as follows under oath:

1.      I am over eighteen years of age and believe in the obligation of an oath.

2.      I am an associate in the Law Offices of Joseph L. Manson III, counsel for Plaintiff Universitas Education, LLC ("Universitas").

3.      I submit this affidavit in support of Universitas' Motion to Compel Discovery from Grist Mill Partners, LLC ("GMP").

4.      I make this affidavit based on personal knowledge, which is the result of information and inferences gleaned from the documents discussed in this affidavit.

5.      I have reviewed the discovery produced by GMP in this proceeding. Among this discovery is a cash disbursement journal spanning from January 1, 2009 to August 18, 2021.

6.      I have reviewed the cash disbursement journal produced by GMP. The document is ninety (90) pages in length. The cash disbursement journal does not include any entry depicting payment to Benistar Admin. Services, Inc.

7.      Universitas will produce the cash disbursement journal in its entirety upon request

from the Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.

Dated: October 15, 2021
       Alexandria, VA


                                        /s/ Benjamin Chernow                              /
                                        Benjamin Chernow

# EXHIBIT 15

---

**From:** Kathy Kehoe
**Sent:** Wednesday, February 06, 2008 4:41 PM
**To:** Daniel E. Carpenter
**Cc:** Rich Belding
**Subject:** Dr. Susan Cohen

Dan,

Rich just called me and is on the road but wanted me to send you this e-mail regarding his conversation with Dr. Cohen.

Rich asked her for the premium that is due for $29,000 and said he would fax over the lapse notice so she could see the required premium that Mass Mutual is requesting.  Rich reminded her that she has not paid a premium in several years to which she agreed.  She stated "that the only money that I am responsible for is the annual admin fee.  Dan put me in a special trust and in that trust I am not responsible for premiums".  It is very complicated but all I pay is the yearly admin fee.  "If you have any questions, please talk to Dan".

Please advise?  Thank you, Kathy

***Kathy Kehoe / Manager Admin Services***
*Benefit Plan Administrator*
*100 Grist Mill Rd.*
*Simsbury, Ct. 06070*
*860/408/7000 ext. 241*
*860/408/7030 (fax)*

4

NOVA013202

UNIV_AAA 00052790

# EXHIBIT 16

| | |
|---|---|
| **From:** | Kathy Kehoe |
| **Sent:** | Tuesday, March 13, 2007 10:32 AM |
| **To:** | Daniel E. Carpenter |
| **Subject:** | RE: |

Will do...

Kathy

---

**From:** Daniel E. Carpenter
**Sent:** Tuesday, March 13, 2007 10:30 AM
**To:** Kathy Kehoe
**Cc:** Molly Carpenter
**Subject:** RE:

Show them to me first...thanks

---

**From:** Kathy Kehoe
**Sent:** Tuesday, March 13, 2007 10:29 AM
**To:** Daniel E. Carpenter
**Cc:** Molly Carpenter
**Subject:**

Dan,

I will be running over to Wayne's today to obtain original signatures on Charter Oak Trust apps along with Ken Evanison cases.

Kathy

*Kathy Kehoe, Plan Administrator*
*100 Grist Mill Rd.*
*Simsbury, Ct. 06070*
*860/408-7000 ext. 241*

1

NOVA013206

UNIV_AAA 00052794

# EXHIBIT 17



771974824523 ✏️

  

# Delivered
## Wednesday 11/04/2020 at 9:56 am

●————————●————————●————————✓

**DELIVERED**

Signed for by: P.JELANI



**GET STATUS UPDATES**

**OBTAIN PROOF OF DELIVERY**

| FROM | TO |
|---|---|
| Joseph Castagno | Daniel Patrick Moynihan |
| 10 Tower Lane | Hon. Judge Laura T. Swain |
| Suite 100 | United States Courthouse |
| AVON, CT US 06001 | 500 Pearl Street |
| 860 408-7000 | NEW YORK, NY US 10007 |
| | 212 805-0424 |

## Shipment Facts

| | | |
|---|---|---|
| **TRACKING NUMBER** | **SERVICE** | **WEIGHT** |
| 771974824523 | FedEx Priority Overnight | 1 lbs / 0.45 kgs |
| **DELIVERY ATTEMPTS** | **DELIVERED TO** | **TOTAL PIECES** |
| 1 | Mailroom | 1 |
| **TOTAL SHIPMENT WEIGHT** | **TERMS** | **PACKAGING** |
| 1 lbs / 0.45 kgs | Shipper | FedEx Envelope |
| **SPECIAL HANDLING SECTION** | **STANDARD TRANSIT** ❓ | **SHIP DATE** ❓ |
| Deliver Weekday | 11/04/2020 by 10:30 am | Tue 11/03/2020 |
| **ACTUAL DELIVERY** | | |
| Wed 11/04/2020 9:56 am | | |

## Travel History

Local Scan Time

Wednesday , 11/04/2020

| 9:56 am | NEW YORK CITY, NY | Delivered |
|---|---|---|

# EXHIBIT 18

| | |
|---|---|
| **From:** | Dan Carpenter US |
| **To:** | Joe |
| **Cc:** | Joe Castagno |
| **Subject:** | Re: Judge Underhill Letter Motion Parts One and Two |
| **Date:** | Wednesday, June 23, 2021 7:02:39 AM |

Joe:

Let me know how you are doing with letter....Can you put separate list of Exhibits together???

Thanks

Dan

---

**From:** Joe <jmcastagno@yahoo.com>
**Sent:** Tuesday, June 22, 2021 6:25 PM
**To:** Dan Carpenter US <dcarpenter@usbgi.com>
**Cc:** Joe Castagno <jmcastagno@protonmail.com>; Grayson Holmes <gholmes@odglaw.com>
**Subject:** Re: Judge Underhill Letter Motion Parts One and Two

Hey Dan. I'll work on this and get it back to you tonight. Just got home and gonna have dinner then start!

On Jun 22, 2021, at 4:01 PM, Dan Carpenter US <dcarpenter@usbgi.com> wrote:

Joe:

Very frightening working with Otter.....thought I lost it several times....but please see if you can space out for Colt and get the Exhibits in order....

I will discuss with Colt tomorrow....

Thanks for your help on this....let me know you can "proof" and edit....

Dicted over by Otter Dictation

---

**From:** Dan Carpenter US
**Sent:** Tuesday, June 22, 2021 4:59 PM

**To:** Dan Carpenter US <dcarpenter@usbgi.com>
**Cc:** Joe Castagno <jmcastagno@protonmail.com>; Joe <jmcastagno@yahoo.com>;
Grayson Holmes <gholmes@odglaw.com>
**Subject:** Judge Underhill Letter Motion Parts One and Two

Currently pending before Magistrate Spector is a discovery request for bank records for GMP going back to 2009 period. Apparently magistrate Spector did not review the objection filed by petitioner, with Judge Meyer, which is attached here as Exhibit one period. Similarly, comma, magistrate specter seems to be unaware that Universitas subpoena TD Bank in 2010, and actually sued TD Bank in 2015, allegedly, on behalf of the charter of trust. Period. Judge Scheindlin wrote a very clear and straightforward opinion, in 2015, stating that the money was gone by October of 2009, comma, so that any claim by Universal attacks against anyone after October, 2012 was barred by the statute of limitations. See judge shine Linds 2015 decision attached as Exhibit two period. Similarly, when Universitas brought this very same action in the sdny, comma, Judge Swain, suggested that the court did not have jurisdiction over the action, pursuant to peacock V Thomas. Period. see judge swains March 2020 Order attached as Exhibit three period. In order to circumvent judge Swain, comma, counsel for Universitas brought this current in quotation marks, alter dash ego. Alter Ego actually ignoring the fact, the judge Swain stated enter January 5 comma 2015 decision that alter ego claims could not be brought in the Second Circuit citing a state of Unger VRS calm. Period. Significantly, this is the decision. The judge Meyer relied upon in dismissing the claims against all of the defendants, except gristmill partners as barred by the doctrine of res judicata period. More to the point comma Universitas argued to judge Thompson, 10 years ago that they should not be forced to defend themselves. In Connecticut, as that would be too expensive. Period. See attached as Exhibit four an excerpt filed with Judge Thompson in 2011 explaining that Universitas was a fraudulent charity run by sash Spencer's mistress, dash, which explains why Spencer's widow, comma, Mary Spencer, comma, had no idea that there was $30 million of insurance on her

husband, period. We have since come to learn that not only were the fraudulent applications, filled out by Spencer's agent Bruce Mac this dash. The change of beneficiary forms were all forged by MAC the said his office, the fraudulent actions by MAC this and universe attacks are not necessary for the relief requested in this filing period. New paragraph. A big part of the May 2014 superseding indictment do deals with Petitioner allegedly changing the charter road trust document, comma, and several press releases by the government, suggesting that the petitioner change the charter of trust document to retain 20% for the charter of trust, period. See for example press release from blank blank attached as Exhibit five, and the press release after sentencing attached as Exhibit six period. But we know that this is absolutely not the case and Sharon Siebert comma ensuing Jack Robinson's a state. In September, 2019 stated that they knew the charter of trust was amended in January 2007, comma, but she felt that since that Spencer's insurance policy was applied for in 2006, in parentheses, 15 years ago, and parentheses, that they would be exempt from the 20% hold back, period. Once again, comma, however, comma, for the purpose of this motion dash that is not the point, period. The point is that Miss Siebert specifically references section, 6.01, which is the paragraph that the government allege Petitioner changed in 2000, in June of 2008. After learning of Mr Spencer's death. See the Sharon seabird affidavit of September 2019 attached as Exhibit seven new paragraph. It is because of these lies by the government. And in consistencies in the universe a tough story that Petitioner brought several motions in front of Judge chatni to receive the grand jury transcripts comma. The jencks act 3500 material comma and the notes of the agents, period. Obviously, the Brady comma GenX comma Giglio comma Bagley, comma, and that pool errors in this case will mandate vacating petitioners conviction, as well as the blatant Fourth Amendment violations, comma, but once again, that is not the point of this motion. Period. Petitioner doubts the judge shot and he will prosecute a USA NAWIC for perjury and other crimes, dash, or submit his name to the Office of Professional Responsibility in

parentheses OPR for review. As Judge Nathan did, and USB me jab. We're only one government exhibit was in dispute comma but Petitioner simply wanted access to the grand jury transcripts to discover who told the grand jury. The lie that Petitioner changed the charter of trust document sections 6.01 to keep the 20%?

---

Memo Part Two

New Page. Obviously, the astute reader will come to the conclusion that if Petitioner really controlled everything, and had fraudulent intent in 2008, dash, why change the document at all. If you are planning to steal in quotation marks, steal in quotation marks, the whole $30 million. dollars. Question mark. The mythical 2018 amendment never happened, comma, but instead a USA Novick, strung together unlawfully seized emails from the Grist Mill Road computers to make his case against the medicine man, comma, and we all know what Justice Brandeis had to say about that and his famous quote, concerning the interaction between the Fourth Amendment and the Fifth Amendment and the right to be let alone, period. The fourth and fifth amendment violations in this case are unprecedented. And should lead to a USA Novick being disbarred, which is why petitioners case should be transferred to this court from Judge chatni to be combined with the two search warrant cases, period. But the Universitas charging order case is also in front of Judge chatni period after the clerk's judgment of August 2014, comma, Universitas brought actions and Oklahoma against Avon capital comma, LLC, and got a charging order against carpenter Financial Group, Inc. in Connecticut, which owns 99% of grist mill partners, which owns the property at 100 Grist Mill Road, period. Judge chatni granted that charging order in October of 2015 comma and Universitas sat on its rights because judge Swain, explain that in less gristmill partners, comma, clearly a non judgment debtor, comma, distributed money to cfg, comma, there would be no means to attach those proceeds. Period. Judge Swain made that decision in

2014, in parentheses, seven years ago. And perenne when local law firms Halloran ampersand sage and Robinson, ampersand Cole worked together to get a lease for curaleaf, capital C, you are a capital L, EA F curaleaf at 100 Grist Mill Road, period. Once again, comma, the purpose of this motion is to consolidate the 2015 charging order case that is in front of Judge chatni and the alter ego claims against grist mill partners, that is currently in front of Judge Meyer. With this court, as well as petitioners criminal action, since there is no doubt. Both raids violated the Fourth Amendment, which means petitioners conviction must be vacated and a USA novick's name, referred to the Office of Professional Responsibility.

Period. Not only would this preserve scarce traditional resources in this difficult time of the COVID pandemic, comma, it would finally provide some measure of justice for petitioners family, and the wrongfully maligned. Family and friends of petitioner, because of the clearly illegal actions of a USA Novack very new paragraph. In that regard, comma, a USA Novick has done everything possible to block petitioners access to his grand jury minutes, period. After playing games for several months, comma. The government submitted a copy of emails, stating that they had provided all of the grand jury minutes to petitioners attorneys, period. See exhibit a period. Unfortunately, comma, Petitioner was being detained at the Wyatt Detention Center for his trial, and never saw any of these documents period. But as the Brady dash Jenks violations. In this case were not enough, comma, a USA Novick, ordered attorney Richard Brown, not to release any of the documents to petitioner, period. See letter from attorney Richard Brown attached as Exhibit nine. Period. New paragraph Petitioner came off home confinement. On May, 7 2021. And the very next week, visited attorney Brown's office to discover who told the lie that petitioner, had altered the charter rope trust documents to steal the sash Spencer proceeds from the fraudulent charity to buy the Rhode Island beach house. Period. New paragraph. But what immediately jumped out of the grand jury transcripts to petitioner, was that agent, Lynn Allen testified before

the grand jury, under oath, that she had interviewed sash Spencer's right hand man, comma, Patrick donahey, de ONAGHY, and he stated that Spencer only took out the policies, because he was going to sell them for a couple of million dollars profit to someone else, period. Petitioner actually testified to that same story in front of Judge Swain, that petitioner, comma, Wayne bearsy calm and Jack Robinson had discovered that Spencer's broker. Bruce Mac this had made a deal with Don Trudeau, to sell the Spencer policies for $1.8 million. Period. Judge Swain stated in several of her opinions, dated in 2013 and 2014 that she found petitioners testimony on this subject. Concerning the potential sale of the Spencer policies to Don Trudeau for 1,800,000 to be totally incredible period. Now agent Lynn Allen. And Patrick Donahoe he's FBI 302 report back Petitioner story up

period. New paragraph. Why was that the petitioner could not show judge Swain the documentation that showed the charter of trust owed over $60 million to grist mill capital. At the time that Wayne Bersih paid the money from the charter of trust the grist mill capital in 2009, which is the basis for Judge swains fraudulent conveyance rulings in 2014, period. New paragraph. The simple answer is that the IRS unlawfully stole gristmill capital's property in April of 2010, and an on lawful search and seizure, comma, and then a USA Novick, arranged to seize those very same boxes as part of the unlawful raid on 100 Grist Mill Road in May 26 2011 period. At no time did Petitioner know of a USA novick's Secret subpoena, because he asked the law firm. How are an ampersand sage, not to tell anyone about the subpoena, because an investigation was ongoing period. Needless to say, this was exactly the same conduct that Justice Holmes criticized in deplored in the landmark case of Silverthorne lumber period attached as exhibit 10 Is Wayne bursaries affidavit, supporting his emergency motion for the return of Charter Oak trust and gristmills capital's property and boxes, period, as this Court realizes, comma, those are the very same boxes that are still at the center of the rule 41 G dispute in this court, period. They have yet to

be returned camo, years after Mr Bersih is filing in front of Judge Cavallo. In 2010, period. Wayne Bersih died in March of 2015 and Jack Robinson died in 2017, dash, so only Petitioner capital P is left to fight against the IRS and do well for these for the return of the property, illegally seized. Very well, Mr Bersih, talks about the loss of a $2 billion deal with a German pension plan, comma, please pay special attention to Mr Bearss less thing in the boxes that he wants return. See exhibit nine or 10 paragraph. So Joe, whichever the exhibit number is now, and the paragraph. Wayne mercies. I think it's exhibit 10 Wayne Mercy's affidavit in support of the emergency motion. Period. New paragraph. This list of boxes, is the exact same list of boxes that a USA Novick seized with his secret subpoena, which Petitioner never saw, and which is attached as exhibit 11 Needless to say these boxes are the missing boxes at the center of the current dispute with the IRS and do well on this court. See for example, docket number, and us are in carpenter V kind of spinning and Carpenter, V showman and carpenter VL. Period. More to the point comma. While Universitas is telling magistrate Specter, they need more banking information

in 2021 comma. They subpoenaed bank records from TD Bank in 2010, and from JP Morgan in 2013. They received by boxes of information from both TD Bank and JP Morgan Chase, with a listing of all accounts and balances. Additionally, Universitas worked with a USA Novick, to deny petitioners bail. In January, 2014, suggesting that they had ownership of all of Mr carpenters properties, including his wife's home, comma, until magistrate Martinez told a USA Novick, to sit down, period. Now Universitas is back in 2021, telling the big lie in quotation marks, capital B, big capital L lie in quotation marks to try and seize petitioners daughter's house in a new motion in front of Judge Meyer, period. The claims by Universitas are not just untimely comma, they're absolutely false. This is one big fraud on the court that was created by Universitas in conjunction with a USA Novack period. Not only should gristmill capital's property be returned immediately, comma, this Court should order the release of

petitioner, Grand Jury transcripts. So that Petitioner can send a detailed report to judge Swain, that Petitioner was telling the truth, the entire time, dash, as well as filing a rule 60 B five, that the claims against all of the judgment debtors. Were not just unfounded. But the debt has been paid. As Universitas has received a massive unjust enrichment of over $22 million of over $22 million. Period. Furthermore, comma, the simple answer to the question is why does petitioner and gristmill partner does not have access to any of their banking records, is because the government of the IRS, comma, the DLL and a USA Novick, are still illegally holding on to the same boxes that were seized in the unlawful raid of April, 20 2010 period. Next paragraph. Therefore, comma, in the interest of justice comma Petitioner respectfully ask that Your Honor have a heart dash to that heart talk with both judge chatni and judge Meyer. To have all cases involving petitioner or 100 gristmill road be transferred to this court, Dash, or at the very least, that have the charging order, capital C, capital O, have the charging order in front of Judge chatni transferred to judge Meyer, so that all of these untimely claims can be summarily dealt with period Petitioner would also request that this court order. Petitioners Grand Jury transcripts to be released to petitioner, and that this Court order the immediate release of all property of grist mill, partners, and grist mill capital that is already being demanded by petitioners rule 41 G. Come along with any other remedies. This court deems proper. In the interest of justice. Joe, do the classic. Respectfully submitted. Daniel Lee carpenter Petitioner pro se. Thank you and have notes.

You

Transcribed by https://otter.ai

# EXHIBIT 19

| | |
|---|---|
| **From:** | Joe Castagno |
| **To:** | Dan Carpenter US |
| **Subject:** | FW: New Litigation |
| **Date:** | Wednesday, July 29, 2020 5:22:14 PM |
| **Attachments:** | Complaint DConn.PDF |

Joseph Castagno

Benistar Admin Services, Inc.

10 Tower Lane, Suite 100

Avon, CT 06001

860-408-7000 ext. 5259

---

**From:** Molly Carpenter
**Sent:** Tuesday, June 2, 2020 10:45 AM
**To:** Joe Castagno <JCastagno@benistar.com>
**Subject:** FW: New Litigation

Do you mind printing for me? I haven't told Dan yet….figure I will wait until he is home.

---

**From:** LaBelle, Dan E. [mailto:LABELLE@halloransage.com]
**Sent:** Monday, June 1, 2020 11:19 AM
**To:** Molly Carpenter <mcarpenter@benistar.com>; Don Trudeau <dtrudeau@benistar.com>
**Cc:** McGrath Jr., William J. <McGrath@halloransage.com>; Scapellati, Daniel P. <scapellati@halloransage.com>
**Subject:** New Litigation

Molly and Don, sorry to be the bearer of bad news, but Manson/Universitas has filed a new complaint in the District of Connecticut. The complaint names you both as individual defendants and several organizational defendants, including BASI. Because the action is filed in federal court, the action is commenced by filing the complaint with the court. In the federal system, service of the summons and complaint is made after filing so you may get a visit from a process server in the days ahead. If Manson elects to use it and we agree, there is also a process which allows for acceptance of service by mail. Let us know if you are served with process or if you receive a mailing requesting your agreement to service by mail.

I have done a once through reading of the complaint. It is very sloppy, but it purports to state claims for alter ego liability and constructive trust.

Bill McGrath, Dan Scapellati and I will have a call tomorrow to discuss the complaint and first steps. (Dan Scapellati is not available today.) Read through the complaint and collect your comments and questions. We will set up a call later this week to discuss this development.



Dan LaBelle, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, CT 06880

E labelle@halloransage.com
D 203.222.4303
F 203.227.6992

www.halloransage.com

Confidentiality: The information contained in this e-mail message is intended only for the use of the individual or entity named above and is privileged and confidential. Any dissemination, distribution, or copy of this communication other than to the individual or entity named above is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone.

---

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---

---

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---