**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| |
|---|
| UNIVERSITAS EDUCATION, LLC |
| *Plaintiff,* |
| v. |
| BENISTAR, ET AL. |
| *Defendant*s. |

CASE NO. 3:20-cv-00738-JAM

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
SANCTIONS AGAINST THE DEFENDANT TRUSTS AND THEIR TRUSTEE**

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................1

**FACTUAL BACKGROUND**.............................................................................................2

    I.      Background on Daniel Carpenter.................................................................2

    II.     The Discovery Dispute..................................................................................3

          a.   THE DEFENDANT TRUSTS' BANK RECORDS.................................................4

          b.   THE DEFENDANT TRUSTS' EMAILS..............................................................4

          c.   DOCUMENTS CONCERNING LIFE INSURANCE POLICIES..............................5

**LEGAL STANDARD**........................................................................................................5

    I.      Contempt of Court.........................................................................................5

    II.     Spoliation of Evidence...................................................................................6

**ARGUMENT**......................................................................................................................7

        I.      Should the Defendant Trusts Possess Responsive Documents, then the
               Defendant Trusts and Daniel Carpenter are in Contempt of Court............................8

        II.     Should the Defendant Trusts not Possess Responsive Documents,
               then the Defendant Trusts Spoliated Relevant Evidence.......................................10

          a.   THE DEFENDANT TRUSTS HAD AN OBLIGATION TO PRESERVE
               THE DOCUMENTS.....................................................................................10

          b.   THE DEFENDANT TRUSTS DESTROYED DOCUMENTS WITH A CULPABLE
               STATE OF MIND........................................................................................12

          c.   THE DEFENDANT TRUSTS DESTROYED RELEVANT EVIDENCE AND
               THEREBY PREJUDICED UNIVERSITAS...........................................................13

          d.   PROPOSED SANCTIONS FOR SPOLIATION OF EVIDENCE..................................13

**CONCLUSION**................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*CBF Industria De Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC),
    2021 U.S. Dist. LEXIS 174989 (S.D.N.Y. Aug. 18, 2021)...............................................11

*Greene v. Netsmart Techs. Inc.*, No. CV 08-4971 (TCP) (AKT),
    2011 U.S. Dist. LEXIS 59710 (E.D.N.Y. Feb. 28, 2011)......................................................17

*In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527 (Bankr. S.D.N.Y. 2007)................................10

*In re Sun Prop. Consultants, Inc.*, Nos. 8-16-72267-las, 8-19-08064-las,
    2021 Bankr. LEXIS 2044 (Bankr. E.D.N.Y. Aug. 2, 2021)................................................14

*Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. CV 18-1997 (JS) (AKT),
    2021 U.S. Dist. LEXIS 124711 (E.D.N.Y. July 2, 2021)..............................................*passim*

*Shillitani v. United States*, 384 U.S. 364 (1966).............................................................................10

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*,
    2005 U.S. Dist. LEXIS 14790 (S.D.N.Y. May 3, 2005)......................................................6, 9

*United States v. Carpenter*, No. 3:13-CR-226(RNC),
    2015 U.S. Dist. LEXIS 171646 (D. Conn. Dec. 24, 2015)......................................................8

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016)...........................................15, 17

*United States v. Harrison*, 653 F.2d 359 (8th Cir. 1981)..................................................................8

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE,
    2020 U.S. Dist. LEXIS 251679 (W.D. Okla. Oct. 20, 2020)...............................................15

*Universitas Educ., LLC v. Benistar*, No. 3:20-cv-00738 (JAM),
    2021 U.S. Dist. LEXIS 47804 (D. Conn. Mar. 15, 2021).......................................................1

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2013 U.S. Dist. LEXIS 1720 (S.D.N.Y. Jan. 4, 2013)........................................................2, 9

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2013 U.S. Dist. LEXIS 142901 (S.D.N.Y. May 21, 2013)...................................................8

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013)..............................................5, 6, 8

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2013 U.S. Dist. LEXIS 142481 (S.D.N.Y. Sep. 30, 2013)....................................................3

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013)................................................14

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2014 U.S. Dist. LEXIS 3983 (S.D.N.Y. Jan. 13, 2014)....................................................16

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2014 U.S. Dist. LEXIS 143667 (S.D.N.Y. Oct. 8, 2014)....................................................9

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
    2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014)..................................................11

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2016 U.S. Dist. LEXIS 72268 (S.D.N.Y. Mar. 31, 2016)...........................................3, 9, 14

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS,
    2021 U.S. Dist. LEXIS 186211 (S.D.N.Y. Sep. 28, 2021).......................................3, 12, 14

*Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99 (2d Cir. 2015)............................................3

*Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, No. 1:13-CV-1053 (MAD/RFT),
    2015 U.S. Dist. LEXIS 69375 (N.D.N.Y. May 29, 2015)..................................................10

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999).........................................*passim*

**Statutes:**

18 U.S.C.S. § 401.............................................................................................................6, 9, 10

**Federal Rules of Civil Procedure:**

FED. R. CIV. P. 37(b)(2)(A)....................................................................................................5, 7

FED. R. CIV. P. 37(e)...................................................................................................7, 10, 16

Universitas Education, LLC ("Universitas") hereby files this memorandum of law, along with the attached exhibits, in support of its motion for sanctions against the Alliance Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, Carpenter Charitable Trust, and Phoenix Charitable Trust (collectively the "Defendant Trusts").

## INTRODUCTION

Daniel Carpenter transferred $1.76 million of stolen funds to the Defendant Trusts and subsequently boasted that there is "rumored to be tens of millions of dollars in the cash value of life insurance policies held in the Carpenter family charitable trusts." Suddenly, the Defendant Trusts claim that they have no assets and that there are no documents concerning any expenditures and/or dissipation of assets – these claims are clearly untrue.[1] The Defendant Trusts then opposed all discovery and refused to produce a single document absent a Court order to do so.

Court intervention thus became necessary. The Court repeatedly instructed the parties to confer and resolve the dispute, and Universitas thus made numerous overtures intended to resolve and/or narrow the disputes.[2] Unfortunately, the parties could not resolve the discovery dispute because the Defendant Trusts refused to deviate from their position that Universitas was not entitled to **any** discovery, and the Court was thus required to resolve the discovery "dispute." The Court rejected every argument asserted by the Defendant Trusts,[3] and entered a discovery order granting broader discovery than what Universitas proposed during the parties' negotiations.

---

[1] The Defendant Trusts have repeatedly made false representations to both Universitas and the Court throughout this proceeding. *See e.g.*, *Universitas Educ., LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 U.S. Dist. LEXIS 47804, at *48-*49 (D. Conn. Mar. 15, 2021) ("It is disturbing that the Defendant Trusts have tried to make a factual claim … that their counsel should know is obviously untrue.").

[2] *See e.g.*, Dkt. #170-2.

[3] The Court subsequently indicated that the Discovery Order incorporated positions from both parties. Respectfully, this is incorrect. The Discovery Order differed from Universitas' discovery requests in two ways: (1) the timeframe was narrowed from 2007 to 2009, and (2) the list of documents that the Defendants were ordered to produce omitted documents that the Defendants claimed were not in their possession. *See* Dkt. #163. Universitas voluntarily offered to narrow the timeframe of discovery from 2007 to 2009. *See* Dkt. #170-2. The Defendants rejected this offer and insisted upon Court intervention on this issue. Moreover, non-possession of documents is not grounds for objection – parties

1

The Defendant Trusts now refuse to comply with the Discovery Order, despite multiple stern warnings from the Court. The Defendant Trusts claim that they cannot further comply with the Court's order because there are no additional responsive documents within their possession, custody, and/or control.[4] This claim is contradicted by documents on the record, which clearly indicate that the Defendant Trusts were in possession of numerous responsive documents at a time when they were aware of pending litigation with Universitas. The Defendant Trusts claim that they cannot produce these documents because they no longer have possession, custody, and/or control over these documents. To the extent this claim is true, the Defendant Trusts necessarily spoliated evidence with knowledge of pending litigation concerning those documents. To the extent the Defendant Trusts' claim is false, the Defendant Trusts are in contempt of court. Either scenario warrants substantial sanctions upon the Defendant Trusts.

## **FACTUAL BACKGROUND**

This Court is familiar with the pertinent facts, and thus Universitas only provides a brief overview of the facts pertinent to this motion.

### I.     Background on Daniel Carpenter

Daniel Carpenter is the sole trustee for all the Defendant Trusts. *See* Dkt. #110 at 31. Meritless discovery disputes are a consistent theme in litigation involving Mr. Carpenter.[5] These meritless disputes are part of Mr. Carpenter's litigation strategy of, *inter alia*, increasing

---

merely respond that there are no responsive documents in their possession. *See e.g.,* Dkt. #167-7. Nor was this issue in dispute – Universitas agreed that the Defendants were not obligated to produce documents outside of their possession, custody and/or control. *See* Dkt. #154.
[4] The Defendant Trusts' sole trustee made similar claims when subpoenaed in his individual capacity. *See* Dkt. #167-7. The Court correctly determined that these representations were false.
[5] *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 1720, at *3 (S.D.N.Y. Jan. 4, 2013) ("This case has been marked by [Carpenter]'s diversionary and dilatory motion and discovery practices, all of which are aimed at frustrating any efforts by Universitas to enforce the judgment.").

Universitas' attorneys' fees so as to render its collection efforts cost prohibitive.[6] As such, Mr. Carpenter triggers frivolous discovery disputes in order to burden Universitas with unnecessary legal costs.[7] The Second Circuit Court of Appeals ruled that Mr. Carpenter's "abusive litigation conduct" necessitates sanctions.[8]

## II.   The Discovery Dispute

The Court ordered the Defendant Trusts to produce, *inter alia*, the following documents for the time period of January 1, 2009 to the present: (1) bank account statements, (2) all documents and communications concerning the distribution of the Defendant Trusts' assets, (3) all documents and communications concerning the Defendant Trusts' receipt of assets, and (4) all documents concerning any life insurance policies owned by the Defendant Trusts and/or designating the Defendant Trusts as a beneficiary. *See* Dkt. #163. The Defendant Trusts subsequently produced (1) tax returns,[9] (2) declarations of trust, and (3) bank statements for the period of December 11, 2012 through January 9, 2013. The record shows that the Defendant Trusts had additional responsive documents at a time they were aware of pending litigation with Universitas. The Defendant Trusts have not produced these documents and claim that they no longer have possession, custody, and/or control of such documents.

---

[6] *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 142481 (S.D.N.Y. Sep. 30, 2013) (sanctioning Carpenter entity's attorney for advocating positions intended to "delay, harass, or needlessly increase the cost of litigation"); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2021 U.S. Dist. LEXIS 186211, at *37 (S.D.N.Y. Sep. 28, 2021) ("Mr. Carpenter's motive appears to have been … to cause unnecessary expense on Universitas and an undue burden on the Court.").

[7] *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, 2016 U.S. Dist. LEXIS 72268, at *14-*16 (S.D.N.Y. Mar. 31, 2016) ("[Carpenter] engaged in 'dilatory conduct during the course of post- judgment discovery' in order to delay or hinder Universitas' discovery and enforcement efforts.… The persistence and baselessness of [Carpenter]'s abusive tactics suggest that [Carpenter] intended to injure Universitas' rights to collect the judgment…. [Carpenter] pursued this goal through various means, including … by resisting Universitas' efforts to obtain post-judgment discovery.")

[8] *See Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99 (2d Cir. 2015) ("a sanction aimed at deterring [Carpenter]'s persistent and abusive litigation conduct is appropriate and **necessary**.") (emphasis added).

[9] The Defendant Trusts did not produce tax returns for 2009 (the year they received stolen money). The Defendant Trusts claim that they no longer have these tax returns.

### a.   The Defendant Trusts' Bank Records

The Defendant Trusts produced bank statements from December 11, 2012 through January 9, 2013. The record contains an email attaching additional responsive bank records. *See* PJR App., Ex. 12 [Dkt. #11] ("Attached are the statements from May through September"). The record also indicates that $1.76 million of the stolen funds were transferred to the Defendant Trusts in November of 2009.[10] *See* PJR App., Ex. 13 [Dkt. #11]. In October of 2013, various attorneys informed Mr. Carpenter that the Defendant Trusts received stolen funds, and that such funds needed to be deposited with the court.[11] *See* PJR App., Ex. 12 [Dkt. #11].[12] These attorneys necessarily reviewed the 2009 bank records to conclude that the Defendant Trusts received stolen funds. Moreover, Mr. Carpenter subsequently articulated the path through which the stolen funds were transferred to the Defendant Trusts. *See* PJR App., Ex. 14 [Dkt. #11]. Mr. Carpenter's knowledge further indicates a review of the 2009 bank statements.

### b.   The Defendant Trusts' Emails

The Defendant Trusts have not produced any emails. The record contains multiple responsive emails that discuss the Defendant Trusts' receipt and/or distribution of assets.[13] *See* PJR App., Ex. 12, and Ex. 14 [Dkt. #11].

---

[10] Universitas previously alleged that the Defendant Trusts had an account at TD Bank. This allegation was based on the fact that the TD Bank statement identifies the Defendant Trusts as recipients of stolen funds and Universitas' belief that TD Bank statements (1) provide an account number for transfers to accounts outside of TD Bank and (2) provide a name for transfers to accounts within TD Bank. Upon further examination of this issue, Universitas no longer maintains this belief and does not claim that the TD Bank statement necessarily indicate transfers to TD Bank accounts.

[11] Mr. Carpenter's response was to fire these attorneys. *See* PJR App., Ex. 12 and Ex. 14 [Dkt. #11].

[12] "CRT" is an abbreviation for Charitable Remainder Trust. (*See* Exhibit 1.)

[13] The issue is not that the Defendant Trusts have not produced these specific emails, the issue is that they have produced **no** emails. The emails identified by Universitas merely demonstrate that responsive emails exist. These emails were neither produced by the Defendant Trusts nor produced in response to a discovery request concerning the Defendant Trusts. As such, these emails should not be assumed to constitute the entire universe of responsive emails.

c.  DOCUMENTS CONCERNING LIFE INSURANCE POLICIES

The Defendant Trusts have not produced any documents concerning any life insurance policies owned by the Defendant Trusts and/or designating the Defendant Trusts as a beneficiary. The record contains email communication wherein Mr. Carpenter boasts that there is "rumored to be tens of millions of dollars in the cash value of life insurance policies held in the Carpenter family charitable trusts." *See* PJR App., Ex. 11 [Dkt. #11]. This claim clearly indicates that there are responsive documents concerning the Defendant Trusts' ownership of life insurance policies and/or designating the Defendant Trusts as a beneficiary.

## **LEGAL STANDARD**

### I.   Contempt of Court

Parties may be held in contempt of court for refusing to comply with a discovery order. *See* FED. R. CIV. P. 37(b)(2)(A)(vii) (authorizing "treating as contempt of court the failure to obey any order" as a sanction for noncompliance with discovery order). Non-parties may also be held in contempt if they are a principal of a contemptuous corporate defendant – Mr. Carpenter has previously been held in contempt for a Carpenter entity's noncompliance with a discovery order. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013) (internal citations omitted). As the court explained in that proceeding:

> It is a firmly established principal that federal courts possess the inherent power to punish for contempt. These powers reach conduct before the court and beyond the court's confines, and are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' … A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and unambiguous, and (3) the contemnor has not diligently attempted to comply in a reasonable manner. It need not be established that the violation was willful. The movant bears the burden of showing contempt with clear and convincing evidence. 'In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation

occurred.' 'The only defenses to civil contempt are that (1) the order allegedly violated is unclear; (2) the party charged with contempt had no knowledge of the order or (3) proof of noncompliance fails to meet the clear and convincing standard of proof.' The burden is on the alleged contemnor to prove his inability to comply with the order 'clearly, plainly, and unmistakably.' Further, a 'court is not required to credit the alleged contemnor's denials if it finds them to be 'incredible in context;'' in addition, '[c]onclusory statements are inadequate to carry [the putative contemnor's] burden.' … 'It is well settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it.' In *Wilson v. United States*, 221 U.S. 361, 376, 31 S. Ct. 538, 55 L. Ed. 771 (1911), the Supreme Court held that:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

… Accordingly, to the extent that a non-party is responsible for the conduct of a contemptuous corporation, courts have either sanctioned or held in contempt such a non-party individual for the actions or non-actions of that corporation. Furthermore, such a non-party may not avoid contempt or other sanctions through self-serving statements that artificially claim that the individual is no longer associated with the contemptuous party.

*Id.* at *16-*25 (S.D.N.Y. July 11, 2013) (internal citations omitted).

"The point of contempt sanctions … is 'to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" *See U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, 2005 U.S. Dist. LEXIS 14790, at *21 (S.D.N.Y. May 3, 2005) (interncal citations omitted). Contempt sanctions include fines, imprisonment, and attorneys' fees. *See* 18 U.S.C.S. § 401.

II.    Spoliation of Evidence

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (internal citations omitted). Spoliation requires (1) that the party having control over the evidence had an obligation to preserve

it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *See Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. CV 18-1997 (JS) (AKT), 2021 U.S. Dist. LEXIS 124711, at *17-*18 (E.D.N.Y. July 2, 2021) (internal citations omitted). Spoliation of ESI further requires a finding of prejudice. *See id.* at *18; *see also* FED. R. CIV. P. 37(e).

Spoliation sanctions should be "molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine," and thus "should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *See West*, 167 F.3d at 779.

## ARGUMENT

The record demonstrates that the Defendant Trusts had responsive documents at a time they were aware of pending litigation with Universitas. The Defendant Trusts now refuse to produce these documents. If the Defendant Trusts still have the responsive documents, they are in contempt of court. If the Defendant Trusts no longer have the responsive documents, they spoliated evidence. Either way, the Court should sanction the Defendant Trusts. *See* FED. R. CIV. P. 37(b)(2)(A) (identifying sanctions for party's noncompliance with discovery order); FED. R. CIV. P. 37(e) (identifying sanctions for spoliation of ESI).

The Defendant Trusts' arguments to the contrary are meritless. The Defendant Trusts argue that their noncompliance is somehow justified because "the Trustee of the Trusts was incarcerated for several years after 2013 and that there were multiple federal seizures of documents pursuant to

a criminal investigation against the Trustee." *See* Dkt. #192. The federal raids have no bearing on

the documents at issue – the last federal seizure was in 2011, two years prior to the responsive

emails on the record. *See United States v. Carpenter*, No. 3:13-CR-226(RNC), 2015 U.S. Dist.

LEXIS 171646, at *3-*4 (D. Conn. Dec. 24, 2015) (explaining that federal law enforcement raids

occurred in 2010 and 2011). The Court already rejected the Defendant Trusts' "argument" that the

incarceration of their trustee somehow excuses their discovery obligations.[14] *See* Dkt. #156

("Moreover, the Plaintiff's seek documents from the Defendant Trusts, knowing that Mr.

Carpenter was incarcerated and/or under home confinement from June of 2014 until May of 2021

with no access to the Defendant Trusts records."). Moreover, this argument is entirely specious

because Mr. Carpenter's incarceration has no bearing on the Defendant Trusts' ability to produce

discovery.[15] *See United States v. Harrison*, 653 F.2d 359, 361 (8th Cir. 1981) ("The Trust is a

formally organized entity, legally distinct from its trustees ....").

I.      Should the Defendant Trusts Possess Responsive Documents, then the Defendant
        Trusts and Daniel Carpenter are in Contempt of Court.

As discussed *infra*, Universitas is highly skeptical of the Defendant Trusts' claim that the

responsive documents are not within their possession, custody, and/or control. Should the Court

agree and find that the responsive documents were not destroyed, then both the Defendant Trusts

and their trustee are clearly in contempt of court. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS

99957, at *18 (identifying elements of contempt); *id.* at *21-*25 (discussing requirements for

holding non-party individual in contempt for contemptuous actions of corporation). The Court

---

[14] Relitigating issues already decided by the Court is part of Mr. Carpenter's strategy for needlessly increasing Universitas' attorneys' fees. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142901 (S.D.N.Y. May 21, 2013) (imposing sanctions in response to Carpenter entity's "attempt[s] to relitigate the same issues by invoking a different procedural vehicle"), *adopted by* 2013 U.S. Dist. LEXIS 142479.

[15] This claim fails to distinguish between Mr. Carpenter and the Defendant Trusts and treats these parties as a single entity. Such a statement cannot be reconciled with the Defendant Trusts' position that they are distinct from Mr. Carpenter and are not Daniel Carpenter alter egos. As such, Universitas considers this argument to be evidence in support of Universitas' alter ego claims against the Defendant Trusts.

already found that the Discovery Order is clear and unambiguous. There is also clear and unambiguous proof of the Defendant Trusts' noncompliance with the Discovery Order – Universitas identified numerous responsive documents within the Defendant Trusts' possession, custody, and/or control which the Defendant Trusts refuse to produce. Assuming the documents were not destroyed, these documents continue to exist in digital form and could easily be produced if the Defendant Trusts had any desire to comply with the Discovery Order.[16] There is also no question that Mr. Carpenter is responsible for the Defendant Trusts' conduct – he is the Defendant Trusts' sole trustee.

Both the Defendant Trusts and Mr. Carpenter should be sanctioned upon a finding of contempt of court. These sanctions should complement each other so as to achieve the purpose of contempt sanctions. *See U2 Home Entm't*, 2005 U.S. Dist. LEXIS 14790 at *21 (explaining that "the point of contempt sanctions … is 'to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained'"). The Court should sanction the Defendant Trusts by ordering them to pay Universitas' attorneys' fees and imposing an increasing daily monetary fine until they comply with the Discovery Order. *See* 18 U.S.C.S. § 401 (identifying attorneys' fees and fines as sanctions for contempt). Given Mr. Carpenter's long history of ignoring monetary judgments, awards, and/or sanctions against him and/or his entities, the Court should not presume that the Defendant Trusts will pay any monetary sanction. *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667, at *6 (S.D.N.Y. Oct. 8, 2014) (awarding Universitas $1.1 million in attorneys' fees against Carpenter

---

[16] The Defendant Trusts have no such desire – their goal is to force Universitas to incur unnecessary attorneys' fees so as to make continued collection efforts cost prohibitive. *See e.g.*, *Universitas Educ.*, 2013 U.S. Dist. LEXIS 1720 at *3 ("This case has been marked by [Carpenter]'s diversionary and dilatory motion and discovery practices, all of which are aimed at frustrating any efforts by Universitas to enforce the judgment."); *Universitas Educ.*, 2016 U.S. Dist. LEXIS 72268 at *14-*16 ("The persistence and baselessness of [Carpenter]'s abusive tactics suggest that [Carpenter] intended to injure Universitas' rights to collect the judgment…. [Carpenter] pursued this goal through various means, including … by resisting Universitas' efforts to obtain post-judgment discovery.").

entity that remain unpaid). Thus, the Court should coerce the Defendant Trusts into compliance by entering a sanction for the incarceration of Daniel Carpenter if the Defendant Trusts fail to pay any monetary sanctions within thirty (30) days, and order that such incarceration will persist until the Defendant Trusts (1) pay all monetary sanctions and (2) comply with the discovery order. *See* 18 U.S.C.S. § 401 (identifying imprisonment as sanction for contempt); *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 536-37 (Bankr. S.D.N.Y. 2007) (explaining that imprisonment is a coercive sanction so long as contemnor "is given the option of earlier release if he complies with the court's order") (internal citations omitted); *see also Shillitani v. United States*, 384 U.S. 364 (1966) (explaining that imprisonment pending compliance with court order is "a civil contempt proceeding, for which indictment and jury trial are not constitutionally required" and further explaining that courts "may … impose a determinate sentence which includes a purge clause. This type of sentence would benefit an incorrigible witness.").

II.    <u>Should the Defendant Trusts not Possess Responsive Documents, then the Defendant Trusts Spoliated Relevant Evidence.</u>

Should the Court find that responsive documents were destroyed, this would clearly constitute spoliation of ESI evidence. *See West*, 167 F.3d at 779 (providing elements for spoliation); FED. R. CIV. P. 37(e) (providing additional element when spoliation concerns ESI evidence). The Court should enter sanctions in connection with any spoliation finding. *See* FED. R. CIV. P. 37(e) (permitting sanctions for spoliation of ESI evidence).

a.    THE DEFENDANT TRUSTS HAD AN OBLIGATION TO PRESERVE THE DOCUMENTS.

A party has an obligation to preserve evidence when "the party is on notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *See Mule*, 2021 U.S. Dist. LEXIS 124711 at *25-*26; *Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, No. 1:13-CV-1053 (MAD/RFT), 2015 U.S. Dist.

10

LEXIS 69375, at *19 (N.D.N.Y. May 29, 2015) ("The fundamental principles guiding a party as to its responsibility to preserve evidence occurs when it has (1) notice or knowledge or should have known that the evidence may be relevant in future litigation, and (2) control over the evidence and an obligation to preserve it at the time that it was destroyed.") (internal citations omitted); *see also Mule*, 2021 U.S. Dist. LEXIS 124711 at *26-*27 ("The duty to preserve arises, not when litigation is certain, but rather when it is 'reasonably foreseeable.'").

Mr. Carpenter has repeatedly received notice that the documents at issue were relevant to future litigation. Mr. Carpenter knew that documents concerning the Defendant Trusts' receipt of stolen funds were relevant to future litigation when he stole the proceeds in May of 2009. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077, at *19-*20 (S.D.N.Y. Aug. 7, 2014) ("… the conveyances were accomplished at a time when Mr. Carpenter knew that Petitioner was asserting a right to the proceeds of the insurance policies and was considering litigation."). Mr. Carpenter was again put on notice that documents concerning the Defendant Trusts' receipt of stolen funds were relevant to future litigation in October of 2013 when his attorneys told him that the Defendant Trusts received stolen funds and that such funds needed to be deposited with the court. *See* PJR App., Ex. 12 [Dkt. #11]. The entry of the turnover judgment relating to the disbursement of stolen funds in August of 2014 again put Mr. Carpenter on notice of future litigation concerning the disbursement of the stolen funds and/or recipients thereof. *See Mule*, 2021 U.S. Dist. LEXIS 124711 at *27 ("[The Defendant] should have known that its business and financial records could be relevant to future litigation involving Plaintiffs' subsequent efforts to enforce the resulting judgment. Therefore, [the Defendant] was under an obligation to preserve the spoliated evidence."); *CBF Industria De Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC), 2021 U.S. Dist. LEXIS 174989, at *43 (S.D.N.Y.

11

Aug. 18, 2021) ("Defendants should have known that their duty to preserve would survive the conclusion of the ICC arbitration if Plaintiffs were unable to enforce an eventual award, which was the case here.") (internal citations omitted).

Moreover, the spoliated evidence is not only relevant to this alter ego proceeding, as Mr. Carpenter continues to litigate seemingly every proceeding regarding his theft of Universitas' money, both civil and criminal. This includes continued attempts to vacate the underlying judgment entered as a direct result of Mr. Carpenter's theft. *See e.g., Universitas Educ.*, 2021 U.S. Dist. LEXIS 186211 (denying multiple motions to vacate judgment against Carpenter and debtor Carpenter entities).

          b.   THE DEFENDANT TRUSTS DESTROYED DOCUMENTS WITH A CULPABLE STATE OF MIND.

A culpable state of mind exists when "evidence was destroyed 'knowingly or grossly negligently, even if without intent to breach a duty to preserve it, or negligently.'" *See Mule*, 2021 U.S. Dist. LEXIS 124711 at *28; *see also id.* at *28-*29 ("'In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding.' 'Gross negligence has been described as a failure to exercise even that care which a careless person would use.'").

The Defendant Trusts' spoliation was not the result of negligence. These documents are dated in 2013 and are maintained on a server owned and operated by Benistar Admin Services, Inc. ("BASI").[17] Other Defendants produced emails from that server for that same time period. (*See* Exhibit 2.) As such, the server was not wiped, there are no issues regarding a record retention policy, and there are no technical issues preventing the production of emails from this server. Thus,

---

[17] All entities that operated from offices at 100 Grist Mill Road used the same server , which was owned and operated by BASI.

the nonexistence of responsive documents necessarily means that someone went onto the server and specifically searched for and deleted all the Defendant Trusts' responsive documents – this constitutes a culpable state of mind. *See Mule*, 2021 U.S. Dist. LEXIS 124711 at *28.

      c.   THE DEFENDANT TRUSTS DESTROYED RELEVANT EVIDENCE AND THEREBY PREJUDICED UNIVERSITAS.

Relevance is assumed "where the breaching party acted in bad faith or with gross negligence," and is found upon a showing that "the evidence would have been helpful in proving its claims or defenses — *i.e.*, that the innocent party is prejudiced without that evidence" when the spoliating party acted negligently. *See Mule*, 2021 U.S. Dist. LEXIS 124711 at *46-*47. The Defendant Trusts intentionally spoliated evidence in bad faith, and thus relevance is assumed. Likewise, prejudice upon Universitas is assumed from the bad faith intent underlying the Defendant Trusts' spoliation of evidence. *See id.* at *48 ("Under Rule 37(e) … where, as here, an intent to deprive is found, no separate showing of prejudice is required, because the 'the finding of intent [to deprive] ... support[s] ... an inference that the opposing party was prejudiced by the loss of information.'").

Even if relevance were not assumed, bank records showing the disbursement of funds from the Defendant Trusts would clearly be relevant to the alter ego claims against the Defendant Trusts. The spoliation of effectively all documents concerning the Defendant Trusts deprives Universitas of the ability to litigate its claims on the merits, and thus prejudices Universitas.

      d.   PROPOSED SANCTIONS FOR SPOLIATION OF EVIDENCE.

Considerations for spoliation sanctions are: (i) willfulness or bad faith on the part of the noncompliant party; (ii) the history, if any, of non-compliance; (iii) the effectiveness of lesser sanctions; (iv) whether the noncompliant party had been warned about the possibility of sanctions;

(v) the client's complicity; and (vi) prejudice to the moving party. *See Mule*, 2021 U.S. Dist. LEXIS 124711 at *52-*53. The Defendant Trusts' spoliation warrants substantial sanctions.

The Defendant Trusts spoliated evidence willfully and in bad faith. The Defendant Trusts' sole trustee has a protracted history of discovery noncompliance and is known to be currently utilizing a litigation strategy predicated largely upon willful discovery misconduct. *See e.g.*, *Universitas Educ.*, 2016 U.S. Dist. LEXIS 72268 at *14-*16. Monetary sanctions are meaningless to Carpenter entities. *See Universitas Educ.*, 2021 U.S. Dist. LEXIS 186211 at *37 ("Mr. Carpenter has so far not been deterred by financial sanctions against the entities he controls ….."). The Defendant Trusts, and not their attorney, are responsible for the evidence spoliation, which in turn prejudiced Universitas.

Spoliation sanctions should be designed to, *inter alia*, deter further spoliation and restore the prejudiced party to "the same position he would have been in absent the wrongful destruction of evidence." *See West*, 167 F.3d at 779. Accomplishing either of these objectives requires sanctions that reflect the unique circumstances in this proceeding. *See In re Sun Prop. Consultants, Inc.*, Nos. 8-16-72267-las, 8-19-08064-las, 2021 Bankr. LEXIS 2044, at *52 (Bankr. E.D.N.Y. Aug. 2, 2021) (explaining that the courts have "broad discretion in fashioning a sanction appropriate to the circumstances") (internal citations omitted).

Sanctions against the Defendant Trusts would be meaningless. Mr. Carpenter controls a network of hundreds of companies and trusts (hereinafter known as "Benistar"). *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803, at *9 (S.D.N.Y. Nov. 20, 2013). Mr. Carpenter operates Benistar so as to defraud Universitas and prevent Universitas from collecting its judgment. (*See* Exhibit 3 at 5-6 (court order in related proceeding explaining that "Mr. Carpenter has used hundreds of shell entities to hide assets from

his or their creditors" and that "he and his related/controlled entities have a long track record of improperly shifting assets from one entity to another for that purpose").)

Benistar is comprised largely of corporate artifices that serve no purpose other than to wrongfully shield assets from creditors. *See id.* These entities are operated as a common enterprise rather than as individual concerns. *See Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE, 2020 U.S. Dist. LEXIS 251679, at \*53-60 (W.D. Okla. Oct. 20, 2020) (explaining that multiple Benistar entities operated as a "singular integrated enterprise"), *adopted* 2021 U.S. Dist. LEXIS 26388. The Benistar artifices serve no purpose other than to wrongfully shield assets, and are entirely interchangeable in this regard. *See id.* at \*49-\*58 (court order (1) noting the "intentionally opaque and interchangeable structure" of multiple Benistar entities, (2) explaining that Carpenter and Trudeau used Benistar entities "near interchangeably," and (3) finding that Carpenter and Trudeau intentionally ignored legal formalities between companies in order "to continue to hide assets from Universitas"). Benistar entities that can no longer shield Mr. Carpenter's assets from creditors are discarded and replaced by new artifices. *See United States v. Carpenter*, 190 F. Supp. 3d 260, 274 (D. Conn. 2016) ("[T]he evidence also shows that corporate entities were created and discarded at Mr. Carpenter's direction when it suited his purposes.").

The Defendant Trusts are artifices used to shield assets from creditors. As such, the Defendant Trusts ceased to be of importance to Mr. Carpenter the moment that Universitas filed claims against them and subjected them to judicial scrutiny. Any assets within these trusts are gone, and Mr. Carpenter is indifferent as to judgment against these entities. (*See* Exhibit 3 at 5-6 (court order in related proceeding discussing the "practical limitations of [the court's] ability to enforce its order … directed to entities which would otherwise be unable to respond to a judgment" in light of Carpenter's history of diverting assets to defraud creditors).)

This context is necessary to show that Mr. Carpenter does not care about the Defendant Trusts and/or any judgments against them. As such, sanctions against these entities will accomplish nothing and will not deter continued misconduct from Mr. Carpenter. *See West*, 167 F.3d at 779 (explaining that spoliation sanctions should deter parties from engaging in spoliation). More importantly, Mr. Carpenter would not spoliate evidence to protect the Defendant Trusts – Mr. Carpenter destroyed evidence to conceal information concerning entities other than the Defendant Trusts. Given that much of the spoliated evidence was financial in nature, the spoliated evidence almost certainly contains monetary transfers from the Defendant Trusts to other Benistar entities and/or operatives. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 U.S. Dist. LEXIS 3983, at *13 (S.D.N.Y. Jan. 13, 2014) ("Mr. Carpenter … frequently engages, directly or indirectly, in inter-company transfers between entities that he creates and controls. "). The destruction of all evidence of these transfers suggests they were fraudulent transfers – this Court previously ruled that fraudulent transfers between Benistar entities are so commonplace that such transfers do not constitute exigent circumstances for purposes of an *ex parte* prejudgment remedy. *See* Dkt. #22.

The spoliation sanction entered by the Court should be an adverse inference against the parties that the Defendant Trusts were attempting to protect when they destroyed evidence. *See* FED. R. CIV. P. 37(e) (providing adverse inference as sanction for spoliation of ESI). These circumstances warrant an adverse inference sanction. *See Mule*, 2021 U.S. Dist. LEXIS 124711 at *19, *29-*30 (explaining that adverse inference sanction for ESI spoliation requires finding that party acted with "the intent to deprive the movant of the information's use in the litigation"); *see also id.* at *37-*38 (explaining that an intent to deprive "can be found either from a conscious act of destruction or a 'conscious dereliction of a known duty to preserve electronic data,'" and may be inferred though circumstantial evidence).

Mr. Carpenter said who he was trying to protect: BASI and Molly Carpenter. (*See* Exhibit 4 (email from Carpenter regarding this action and stating "[w]e just want to protect BASI and Molly").) An adverse inference against these parties is appropriate. BASI owned and operated the server from which the ESI evidence was spoliated, and thus was necessarily complicit in the Defendant Trusts' spoliation. *See Mule*, 2021 U.S. Dist. LEXIS 124711 at *37-*38 (explaining that a "conscious dereliction of a known duty to preserve electronic data" constitutes an "intent to deprive" and warrants adverse inference sanctions). Molly Carpenter is the Chairman of BASI, and thus was likewise complicit in the Defendant Trusts' spoliation of ESI evidence on BASI property. *See id.* The Court should thus make an adverse inference that the Defendant Trusts engaged in fraudulent transfers with BASI and Molly Carpenter.[18] *See Mule*, 2021 U.S. Dist. LEXIS 124711 at *52-*53 (providing that spoliation sanctions should place the risk of an erroneous judgment on the party who wrongfully created the risk"); *see also Greene v. Netsmart Techs. Inc.*, No. CV 08-4971 (TCP) (AKT), 2011 U.S. Dist. LEXIS 59710, at *22 (E.D.N.Y. Feb. 28, 2011) ("Where the alleged misconduct is the non-production of relevant documents, district courts have broad discretion in fashioning an appropriate sanction.") (internal citations omitted).

## CONCLUSION

For the aforementioned reasons, Universitas respectfully requests that the Court grant its motion for sanctions against the Defendant Trusts and Daniel Carpenter. Should the Court find that the Defendant Trusts failed to produce responsive documents within their possession, custody, and/or control, then Universitas requests that the Court find both the Defendant Trusts and their trustee in contempt of court and enter the contempt sanctions proposed by Universitas. Should the

---

[18] There is circumstantial evidence to support such a finding – both BASI and Molly Carpenter participated in the criminal conspiracy to launder the $30.6 million that Daniel Carpenter stole from Universitas. *See Carpenter*, 190 F. Supp. 3d at 273 (identifying BASI as one of the "most significant" entities in Carpenter money laundering conspiracy and explaining that Molly Carpenter is an executive for many of the "most significant" entities in this conspiracy).

Court find that the Defendant Trusts did not fail to produce responsive documents within their possession, custody, and/or control. then Universitas requests that the Court sanction the Defendant Trusts for spoliation of evidence and enter the spoliation sanctions proposed by Universitas.

Dated: October 15, 2021
      Alexandria, VA

PLAINTIFF UNIVERSITAS EDUCATION, LLC

By: /s/ Joseph L. Manson III _____/
Joseph L. Manson III
Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
Tel. 202-674-1450
Fax 703-340-1642
jmanson@jmansonlaw.com

*Admitted Pro Hac Vice*

*Attorney for Universitas Education, LLC*

**CERTIFICATION**

I hereby certify that on October 15, 2021 a copy of foregoing memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Joseph L. Manson III