**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>                              *Plaintiff,*<br><br>v.<br><br>BENISTAR, ET AL.<br><br>                              *Defendant*s. | CASE NO. 3:20-cv-00738-JAM |

**<u>OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDED RULING ON
PLAINTIFF'S MOTION FOR CIVIL CONTEMPT (DOC. NO. 167)</u>**

## TABLE OF CONTENTS

**INTRODUCTION**…………………………………………………………………......…1

**STATEMENT OF FACTS**…………………………………………………………..…..2

    I.    Mr. Carpenter's Noncompliance with Universitas's Subpoena…………………..…..2
    II.   Pertinent Background Regarding Mr. Carpenter and Benistar…………..….………4

**STANDARD OF REVIEW**……………………………………………………………..6

**OBJECTIONS**……………………………………………………………..……7

    I.    Legal Standard……………………………………………………………...7

    II.   Objection to Certain Findings……………………………………………...8
          a.  *Universitas Objects to the Magistrate's Finding that Mr. Carpenter Cured his Contempt through his September 2021 Production*……………………………..8

             i.  Universitas objects to this finding in Magistrate Spector's Recommendation because the improper document dump from Mr. Carpenter did not cure his contempt.………………………………8

             ii.  Universitas objects to this finding in Magistrate Spector's Recommendation because it is clear that Mr. Carpenter did not adequately search the Repositories in his Possession, Custody, and Control………………………………………………………………11

                 1.  Production of BASI Documents……………………………..12

                 2.  Production of documents from Other Attorneys……………14

          b.  *Universitas Objects to the Magistrate's Findings Regarding the Alleged Deficiencies in Mr. Carpenter's Production*...……………………………………………15

             i.  Request 1……………………………………………………16

             ii.  Request 2……………………………………………………17

             iii. Request 3……………………………………………………18

             iv. Request 4……………………………………………………20

             v.  Requests 5-7………………………………………………21

          c.  *Universitas Objects to the Recommended Sanctions*………………………..22

i.   Compensatory Sanctions are Proper for Mr. Carpenter's Continued Contempt……………………………………………………………22

ii.   Coercive Sanctions are also Proper for Mr. Carpenter's Continued Contempt……………………………………………………..…...23

**CONCLUSION**…………………………………………………………………………...25

## TABLE OF AUTHORITIES

Cases

*Aristidou v. Aviation Port Servs., LLC*, No. 18-CV-4040, 2020 U.S. Dist. LEXIS 31348 (E.D.N.Y. Feb. 21, 2020)……………………………………………………………………..…..9

*Bank of N.Y. Mellon v. Fletcher*, No. 3:18-cv-506 (VAB), 2018 U.S. Dist. LEXIS 120629, 2018 WL 3472623 (D. Conn. Jul. 19, 2018) ………………………………………………………6

*Cobell v. Babbitt*, 37 F. Supp. 2d 6 (D.D.C. 1999) …………………………………..…….8

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16 (S.D.N.Y. 1984) …………………………………………………………………12

*Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918 (S.D.N.Y. 1984)……………11, 18

*See Fed. Sav. & Loan Ins. Corp. v. Hardee*, 686 F. Supp. 885 (N.D. Fla. 1988)………..……19

*First Nat'l City Bank v. Internal Revenue Serv.*, 271 F.2d 616 (2d Cir. 1959)………………..18

*Fisher v. United States*, 425 U.S. 391 (1976)…………………………………………………19

*Flannigan v. Vulcan Power Grp., LLC*, No. 09-CV-8473 (LAP), 2019 U.S. Dist. LEXIS 115634 (S.D.N.Y. July 3, 2019)…………………………………………………..…11, 12, 16, 19

*Giordano v. Rizzo, DiGiacco, Hern & Baniewicz, CPAs, PLLC (In re Turkey Lake, LLC)*, 2021 Bankr. LEXIS 2504 (Bankr. N.Y.N.D. Sept. 14, 2021)……………………………………...…9

*Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989)…………………………………………………6

*Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998)…………………………………………7

*In re Anschuetz & Co., GmbH*, 754 F.2d 602 (5th Cir. 1985)…………………………………18

*In re Dunne*, No. 3:17-cv-1399 (MPS), 2018 U.S. Dist. LEXIS 166192 (D. Conn. Sep. 27, 2018)………………………………………………………………………..…..7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177 (S.D.N.Y. 2006)……..…12, 13, 19

*In re Heuwetter*, 584 F. Supp. 119 (S.D.N.Y. 1984)……………………………………………18

*In re Teligent, Inc.*, 358 B.R. 45 (Bankr. S.D.N.Y. 2006)………………………………………14

*In re Weiss*, 703 F.2d 653 (2d Cir. 1983)……………………………………….…………17, 18

*John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010)………………………………………12

iv

*Lavatec Laundry Tech. GMBH v. Voss Laundry Solutions*, No. 3:13-cv-00056 (SRU), 2018 WL 2426655 (D. Conn. Jan. 9, 2018)………………………………………………………...……7-8

*Leroy v. Colvin*, 84 F. Supp. 3d 124 (D. Conn. 2015)……………………………………...…..…6

*Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362 KAM/ALC, 2010 U.S. Dist. LEXIS 47365, 2010 WL 1945806 (E.D.N.Y. May 13, 2010)…………………………………………………..……11

*Levin v. Tiber Holding Corp.*, 277 F.3d 243 (2d Cir. 2002)………………………………………..7

*Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020)……………………………………….…14,17

*Novak v. Yale Univ.*, 14-CV-00153, 2015 U.S. Dist. LEXIS 157067 (D. Conn. Nov. 20, 2015)...9

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645 (2d Cir. 2004)………………………………………………………………………………………7

*Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331 (N.D.N.Y. 2008)………………..…..……9

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV- 04394 (AJN) (BCM), 2016 U.S. Dist. LEXIS 133564 (S.D.N.Y. Sep. 27, 2016)…………………………………………14

*Santos v. Eye Physicians & Surgeons, P.C.*, 2019 U.S. Dist. LEXIS 121184 (D. Conn. July 22, 2019)………………………………………………………………………………...……6, 7

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d. Cir. 1999)………………..……..22

*States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007)……………………19

*Stooksbury v. Ross*, 528 F. App'x 547 (6th Cir. 2013)………………………………..…………..9

*Swan Global Invs. v. Young*, No. 18-cv-03124-CMA-NRN, 2020 U.S. Dist. LEXIS 161813 (D. Colo. June 5, 2020)……………………………………………………………………………..9

*Trs. of the Conn. Pipe Trades Local 777 Health Fund v. Plumbing Creations, LLC*, No. 3:15-cv-00822 (MPS), 2019 U.S. Dist. LEXIS 115873 (D. Conn. July 11, 2019)………………..……24

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, 2005 U.S. Dist. LEXIS 14790 (S.D.N.Y. May 3, 2005)…………………………………………………………………………………..24

*United States v. Carpenter*, 190 F. Supp. 3d 260, 274 (D. Conn. Jun. 6, 2016)…………..4, 13, 15

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE (W.D. Okla. Sep. 22, 2021)…………………………………………………………………………………..4, 14

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE, 2020 U.S. Dist. LEXIS 251679 (W.D. Okla. Oct. 20, 2020)………………………………………………………………..…4,14

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2013 U.S. Dist. LEXIS 1720 (S.D.N.Y. Jan. 4, 2013)………………………………………………………………………1

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013)………………………………………..……………….…4

*Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2014 U.S. Dist. LEXIS 3983 (S.D.N.Y. Jan. 13, 2014)………………………………..……………..…4,16

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2016 U.S. Dist. LEXIS 72268 (S.D.N.Y. Mar. 31, 2016)………………………………………………………………...…..1

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2021 U.S. Dist. LEXIS 186211 (S.D.N.Y. Sep. 28, 2021)……………………………………………………………....1, 24

*Weisinger v. Scott*, No. 93-2287, 1994 U.S. App. LEXIS 41278 (5th Cir. May 23, 1994)………19

*Wilson v. Citigroup, N.A.*, 702 F.3d 720 (2d Cir. 2012)………………………………………22

Statutes

28 U.S.C. § 636(b)(1) (2018)……………………………………………..………..6, 7

28 U.S.C. § 636(e)(6)(A) (2018) ………………………………………………..……6, 7

28 U.S.C. § 636(e)(6)(B)(iii) (2018)……………………………………………..…………6

Rules

Fed. R. Civ. P. 34………………………………………………………………12

Fed. R. Civ. P. 45(a)(1)(A)(iii)……………………………………………..……7

Fed. R. Civ. P. 45(g)………………………………………………………………8

Fed. R. Civ. P. 72(b)(3)………………………………………………………7

Universitas Education, LLC ("Universitas") hereby respectfully files its Objection to the Magistrate Judge's Recommended Ruling on Plaintiff's Motion for Civil Contempt (Doc. No. 167) (the "Recommendation"). *See* Doc. No. 218.

## **INTRODUCTION**

Judge Spector erred in finding that Daniel Carpenter cured his contempt for this Court's discovery order because Mr. Carpenter has not made a diligent attempt to comply with this order in a reasonable manner. As discussed *infra*, there are numerous document repositories at Mr. Carpenter's disposal that contain responsive documents which Mr. Carpenter refuses to search. Mr. Carpenter's refusal to search these repositories is a result of bad-faith—his litigation strategy involves purposefully engaging in discovery misconduct in order to trigger frivolous litigation and thereby (1) delay Universitas collection efforts, and (2) needlessly increase Universitas' legal costs in a blatant attempt to render further litigation cost prohibitive.[1]

To date, Mr. Carpenter has produced only a document dump comprised of documents within the possession of one of his attorneys. Mr. Carpenter has an army of lawyers in his employ, many of whom possess documents that were not included in the document dump. Moreover, the hundreds of companies under Mr. Carpenter's control all store the entirety of their ESI on a single shared computer server. Mr. Carpenter refuses to search this server for documents, despite the fact that there is no question that he has the ability to do so. Mr. Carpenter has not and cannot cure his

---

[1] *See e.g., Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2013 U.S. Dist. LEXIS 1720, at *3 (S.D.N.Y. Jan. 4, 2013) ("This case has been marked by [Carpenter]'s diversionary and dilatory … discovery practices, all of which are aimed at frustrating any efforts by Universitas to enforce the judgment."); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2016 U.S. Dist. LEXIS 72268, at *14-*16 (S.D.N.Y. Mar. 31, 2016) (explaining that Carpenter (1) "engaged in 'dilatory conduct during the course of post-judgment discovery' in order to delay or hinder Universitas' discovery and enforcement efforts" and (2) pursued his goal of "injur[ing] Universitas' rights to collect the judgment … by resisting Universitas' efforts to obtain post-judgment discovery"), adopted 2016 U.S. Dist. LEXIS 64138 (S.D.N.Y. May 16, 2016); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2021 U.S. Dist. LEXIS 186211, at *37 (S.D.N.Y. Sep. 28, 2021) ("Mr. Carpenter's motive appears to have been … to cause unnecessary expense on Universitas ….").

contempt until he searches these other repositories and produces the responsive documents contained therein. By failing to search these repositories, and failing to produce responsive documents therein, Mr. Carpenter has failed to comply with the discovery order. This was the issue before Judge Spector—the documents identified by Universitas demonstrated that these repositories contained responsive documents and therefore must be searched, and responsive documents produced.

## STATEMENT OF FACTS

I.    Mr. Carpenter's Noncompliance with Universitas's Subpoena

Universitas incorporates by reference its prior briefing of the facts of this case and the current discovery dispute in its Motion for Contempt (Doc. No. 167) and Supplemental Briefing on its Motion for Contempt (Doc. No. 197). Universitas summarizes the most pertinent facts for this Court's consideration below.

Universitas' Motion for Contempt arises from Mr. Carpenter's Motion to Quash the Subpoena duly served upon him in this litigation. The subpoena sought limited categories of information related to, *inter alia*, (1) transfers of property between judgment debtors and their affiliates; (2) payments made by Mr. Carpenter from any Judgment Debtor or affiliate; (3) corporate documents and records for Mr. Carpenter's companies and the Judgment Debtors; and (4) bank and other financial records for the Judgment Debtors and affiliated companies controlled by Mr. Carpenter. *See* Exhibit 1. Judge Spector denied Mr. Carpenter's Motion on June 5, 2021 and ordered Mr. Carpenter to produce relevant documents sought by the Universitas subpoena. Mr. Carpenter once again objected, and this Court again rejected Mr. Carpenter's arguments and ordered him to produce responsive documents by July 15, 2021.

After claiming that complying with the subpoena would be unduly burdensome, Mr. Carpenter claimed that there were no responsive documents. *See* Exhibit 1. Universitas thus moved to find Mr. Carpenter in contempt on August 2, 2021. Doc. No. 167. This Court took the Motion for Contempt under advisement and found that "it does not appear that Mr. Carpenter has complied with the subpoena." *See* Doc. No. 179. Judge Spector thus gave Mr. Carpenter until September 9, 2021 to produce responsive documents. Subsequently, on September 7, 2021, Mr. Carpenter, through one of his counsel, Jeffrey Sandberg, who at the time was not admitted in this case or formally representing Mr. Carpenter, produced 26 electronic folders of random assortments of documents, emails, and other files to Universitas. Not only were many of these folders inaccessible to Universitas and its counsel, the folders that were accessible were disorganized and filled with completely non-responsive documents.[2] This production was a textbook document dump; several hundred responsive documents were concealed under **hundreds of thousands** of non-responsive files—a veritable example of finding a "needle in a haystack." This Court directed the parties to meet and confer to cure the deficiencies in production and ensure that the information disclosed by Mr. Carpenter was responsive to the subpoena. *See* Doc. No. 186.

Mr. Carpenter provided Universitas with flash drives that permitted Universitas to access folders contained within the document dump. However, Mr. Carpenter did not comply with the Court's order to "ensure that the information disclosed by Mr. Carpenter … is responsive to the subpoena." For example, Mr. Carpenter refused to omit the pornographic content from the flash drives. Mr. Carpenter's production involved 369,738 documents (likely over 1 million pages)— about 1,500 of these documents are responsive to the subpoena, and all but a few were duplicative

---

[2] Among these non-responsive documents were thousands of junk and spam emails completely unrelated to any of the requests, pornography, pictures of individuals in Halloween masks, and pictures of animated dogs. The full extent of the non-responsive documents produced is detailed in Universitas's Supplemental Brief. (Doc. No. 197 at 3-10).

of documents already in the possession of Universitas. The remaining documents are very clearly not responsive to the subpoena and are entirely unrelated to any aspect of this case. Universitas then filed its Supplemental Brief, detailing the failure of Mr. Carpenter to cure the deficiencies in his production and requesting: (1) attorneys' fees incurred from the discovery dispute, (2) the imposition of an increasing fine for as long as Mr. Carpenter ignores any sanctions imposed, and (3) Mr. Carpenter's incarceration should he fail to pay sanctions. (Doc. No. 167-1 at 31-32, 197 at 17).

## II.    Pertinent Background Information Concerning Carpenter and Benistar.

The subpoena served upon Daniel Carpenter concerned a subset of the **hundreds** of shell companies (hereinafter collectively "Benistar") which he uses to "hide assets from … creditors" by "improperly shifting assets from one entity to another" with an intent to defraud creditors.[3] Mr. Carpenter operated Benistar from his offices at 100 Grist Mill Road.[4]

As this Court previously noted, Benistar entities are highly intermingled and operate as a common enterprise rather than as individual concerns.[5] Benistar Administrative Services, Inc. ("BASI") is "the hub of the various Benistar entities"—it provides other Benistar entities with administrative support and clerical services such as recordkeeping, transaction processing, and compliance services. *See* Exhibit 2 at 1. BASI is the only Benistar entity with employees, and these

---

[3] *See Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE (W.D. Okla. Sep. 22, 2021). This decision is unreported, and thus a copy of this decision is attached to this brief. The relevant pages for this citation are pages 5-6.

[4] *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803, at *9 (S.D.N.Y. Nov. 20, 2013) ("Daniel E. Carpenter has founded and controlled hundreds of companies out of his offices at 100 Grist Mill Road in Simsbury, Connecticut.").

[5] *See e.g.*, Doc. No. 110 at 17 ("Several courts have found Carpenter and his companies consistently disregard corporate formalities, such as sharing office space, management, computers, and employees."); *see also Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE, 2020 U.S. Dist. LEXIS 251679, at *53-*60 (W.D. Okla. Oct. 20, 2020) (explaining that numerous Benistar entities operated as a "singular integrated enterprise"), *adopted* 2021 U.S. Dist. LEXIS 26388 (W.D. Okla. Feb. 11, 2021); *United States v. Carpenter*, 190 F. Supp. 3d 260, 274 (D. Conn. Jun. 6, 2016) ("[T]he formal corporate structure of the various [Carpenter] Entities had little meaning for the people involved."), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 3983, at *13 (S.D.N.Y. Jan. 3, 2014) ("Mr. Carpenter and his affiliates demonstrate[] an absence of respect for distinctions among his business entities ....").

employees are treated as a common pool of employees that service all Benistar entities. *See* Exhibit 3-4. BASI is also the only Benistar entity with office space and necessary resources, such as computers, which BASI provides to other Benistar entities. *See* Exhibit 5 ¶¶ 3-4 (affidavit swearing that (1) "BASI leases the entire suite of offices at ... 100 Grist Mill Road," and (2) "BASI owns all of the computer hardware and software, as well as all internet and telecommunications connections, at the office facility").

Aside from BASI, Benistar entities have no employees, no office space, no office supplies, no computers, and/or no ability to independently function. The relationship between BASI and the other Benistar entities is exemplified by BASI's relationship with Grist Mill Partners, LLC ("GMP"). Like every Benistar entity, GMP is operated by BASI employees using BASI resources. *See e.g.*, Exhibit 7 (demonstrating that GMP business was conducted by BASI personnel using the BASI computer server and BASI email addresses). GMP does not pay BASI for any services and/or resources. *See e.g.*, Exhibit 6 (providing that Grist Mill Partners, LLC ("GMP") did not make any payments to BASI). Moreover, a BASI employee testified that: (1) she does work for GMP when asked to do so by Daniel Carpenter, and (2) GMP does not pay her for this work. *See* Exhibit 8.

### III.     The Magistrate's Recommendation

On December 22, 2021, the Hon. Magistrate Judge Spector issued the instant Recommendation. (Doc. No. 218.) Judge Spector recommended that this Court hold Mr. Carpenter in contempt and impose sanctions against Mr. Carpenter for his failure to produce responsive documents between July 24, 2021 and September 16, 2021. Judge Spector found that this failure was supported by "clear and convincing evidence." Judge Spector also found that Mr. Carpenter had cured his contempt through his September 2021 document production, and that Universitas

had failed to put forth evidence of the existence of certain documents in the face of sworn affidavits from his counsel that they had completed their discovery obligations. Universitas does not object to Judge Spector's finding that Mr. Carpenter was in contempt between July 24, 2021 and September 16, 2021 and that he should pay compensatory sanctions for this contempt. Universitas does, however, respectfully object to Judge Spector's findings that (1) Mr. Carpenter cured his contempt with his document dump production; and (2) that the imposition compensatory and coercive sanctions are not appropriate after September 16, 2021. On January 4, 2022, Mr. Carpenter filed his Objections to this Recommendation.[6]

## STANDARD OF REVIEW

In reviewing a recommendation from a magistrate judge, a district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Santos v. Eye Physicians & Surgeons, P.C.*, 2019 U.S. Dist. LEXIS 121184, at *9-*10 (D. Conn. July 22, 2019); *Bank of N.Y. Mellon v. Fletcher*, No. 3:18-cv-506 (VAB), 2018 U.S. Dist. LEXIS 120629, 2018 WL 3472623, at *1 (D. Conn. Jul. 19, 2018)); 28 U.S.C. § 636(b)(1) (2018). Even if the parties do not make an objection, the district judge is not bound by a magistrate's report and recommendation. *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). If no objection is made, a district court will review a magistrate's recommendation and only set that recommendation aside for "clear error." *Leroy v. Colvin*, 84 F. Supp. 3d 124, 127 (D. Conn. 2015) (internal citation omitted).

The Recommendation was issued pursuant to 28 U.S.C. section 636(e)(6). Accordingly, Judge Spector's role was to certify facts constituting civil contempt for the district judge. *See* 28 U.S.C.S. § 636(e)(6)(A), (e)(6)(B)(iii) (2018). The district court must then make an independent

---

[6] Universitas also notes that Mr. Carpenter still has not updated his response to Universitas' document request. See Exhibit 1.

determination as to whether the facts certified constitute contempt and, if so, what sanctions are appropriate. See 28 U.S.C. § 636(e)(6). This determination is made *de novo*. *See Santos*, 2019 U.S. Dist. LEXIS 121184 at * 10 (citing 28 U.S.C. § 636(b)(1)); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). A court may consider additional evidence that was not submitted and considered by the magistrate judge. *See Santos*, 2019 U.S. Dist. LEXIS 121184 at *10-*11 (quoting *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998)). Thus, it is within the district court's discretion to consider supplemental evidence in the record upon a *de novo* review. *Santos*, 2019 U.S. Dist. LEXIS 121184 at *11 (citing *Hynes*, 143 F.3d at 656).

## OBJECTIONS

I.   Legal Standard

Rule 45 of the Federal Rules of Civil Procedure requires a person or entity served with a subpoena *duces tecum* to produce documents "in that person's possession, custody, or control." *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). To a hold a party in contempt, a Court must first find that there was (1) a clear and unambiguous order; (2) clear and convincing proof of noncompliance; and (3) no diligent attempt to comply in a reasonable manner.  *See In re Dunne*, No. 3:17-cv-1399 (MPS), 2018 U.S. Dist. LEXIS 166192, at *19 (D. Conn. Sep. 27, 2018) (internal citations omitted); *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks omitted). Evidence of a "reasonable certainty" that an order was violated constitutes clear and convincing evidence of contempt, *see Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002), and sanctions for civil contempt "can be imposed without a finding of willfulness, if the violations were "substantial" and the contemnor has "[f]ailed to energetically police compliance." *Lavatec Laundry Tech. GMBH v. Voss Laundry*

*Solutions*, No. 3:13-cv-00056 (SRU), 2018 WL 2426655, at *10 (D. Conn. Jan. 9, 2018) (internal citation omitted).

Failure to produce responsive documents, or a bad faith effort to make a production constitutes noncompliance with a subpoena. *See Cobell v. Babbitt*, 37 F. Supp. 2d 6 (D.D.C. 1999). Rule 45 permits a court to hold in contempt a person "who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

II.     Objections to Certain Findings

Judge Spector correctly found that Mr. Carpenter was in contempt between July 24, 2021 and September 16, 2021 and that he should pay compensatory sanctions for this contempt. Underlying this finding, Judge Spector also correctly found that the subpoena was clear and unambiguous, and Mr. Carpenter's non-compliance was clear and convincing. However, Judge Spector incorrectly concluded that Mr. Carpenter cured his contempt with a document dump production in September of 2021. As Mr. Carpenter concedes, the only effort he made to comply with the subpoena was to contact attorney Sandberg after the production deadline expired and the Court gave Mr. Carpenter an opportunity to cure his contempt. *See* Doc. No. 203 at 2-3. Universitas thus objects to Judge Spector's findings regarding the document dump production, as this recommendation is respectfully, both legally and factually incorrect. Moreover, as discussed *infra*, Judge Spector seemingly misconstrued many of the issues surrounding Mr. Carpenter's production.

a.  *Universitas Objects to the Magistrate's Finding that Mr. Carpenter Cured his Contempt through his September 2021 Production.*

i.  Universitas objects to this finding in Magistrate Spector's Recommendation because the improper document dump from Mr. Carpenter did not cure his contempt.

As a matter of law, Mr. Carpenter's September 2021 document dump did not cure his contempt because the "document dump," containing hundreds of thousands of pages of patently irrelevant and nonresponsive documents, did not constitute compliance with the subpoena. A party must "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." *Aristidou v. Aviation Port Servs., LLC*, No. 18-CV-4040, 2020 U.S. Dist. LEXIS 31348, at \*24 (E.D.N.Y. Feb. 21, 2020) (internal citations omitted) (finding "document dump" to be evidence of willful nature of noncompliance with discovery order); *see also Swan Glob. Invs. v. Young*, No. 18-cv-03124-CMA-NRN, 2020 U.S. Dist. LEXIS 161813 (D. Colo June 5, 2020) (finding that "'document dump' of more than 50,000 pages of documents just prior to the close of discovery … without any identification of the documents" constitutes "willful misconduct"); *Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331, 336 (N.D.N.Y. 2008) (explaining that the "production of 405,367 pages of documents devoid of any index or table to help illuminate organizational regime utilized" does not satisfy discovery obligations); *Stooksbury v. Ross*, 528 F. App'x 547, 553-54 (6th Cir. 2013) (explaining that "document dump" constitutes "discovery abuse"). A document dump that leaves a party with a "a mass of unmanageable and unusable documents" does not satisfy the "spirit or the letter of the Federal Rules of Civil Procedure." *Giordano v. Rizzo, DiGiacco, Hern & Baniewicz, CPAs, PLLC (In re Turkey Lake, LLC)*, 2021 Bankr. LEXIS 2504, at \*20 (Bankr. N.Y.N.D. Sept. 14, 2021) (quoting *Novak v. Yale Univ.*, 14-CV-00153, 2015 U.S. Dist. LEXIS 157067, at \*8 (D. Conn. Nov. 20, 2015)). Thus, while some overproduction of irrelevant information in discovery does not alone constitute sanctionable conduct, that conduct becomes sanctionable if its purpose is to conceal relevant information and leave the requesting party with "a mass of unmanageable and unusable documents." *Novak*, 2015 U.S. Dist. LEXIS 157067 (finding compensatory sanctions appropriate

for a party's failure to comply with its discovery obligations, including by engaging in an improper document dump).

Here, Mr. Carpenter's production was precisely the type of "document dump" prohibited by the Federal Rules of Civil Procedure, and even if it was not independently sanctionable or contemptuous, to which Universitas disagrees, it nevertheless cannot constitute compliance of this Court's order. As noted above, Mr. Carpenter's "document dump" likely contained over a million pages consisting primarily of non-responsive, inappropriate, and unorganized documents.[7] The exact volume and nature of the document dump is specifically outlined in Universitas's Supplemental Briefing. (Doc. No. 197 at 3-8.) Simply put, an unindexed "production" consisting of several hundred relevant files buried within over 369,000 files such as spam emails, pornography, and personal music files is precisely the type of bad faith document dump prohibited by the Federal Rules. Crucially, Mr. Carpenter does not deny the volume of files produced, nor the contents of those files.

This document dump simply cannot cure Mr. Carpenter's contempt. In order to find that Mr. Carpenter cured his contempt, the Court must find that Mr. Carpenter made a diligent attempt to comply with its orders in a reasonable manner. Mr. Carpenter's production, particularly its massive nature, complete lack of any meaningful organization, and the hundreds of thousands of clearly irrelevant files, is on its face not a diligent attempt to comply with this Court's orders, particularly the Order to "ensure that the information disclosed by Mr. Carpenter … is responsive to the subpoena." *See* Doc. No. 186. Thus, there is clear and convincing evidence that Mr. Carpenter is still in contempt because he has failed to make a proper production under the Federal

---

[7] Universitas also notes that Mr. Carpenter still has not updated his response to Universitas' document request. *See* Exhibit 1.

Rules, and in turn the Court should impose sanctions to coerce Mr. Carpenter into complying this Court's order(s).

> ii. Universitas objects to this finding in Magistrate Spector's Recommendation because it is clear that Mr. Carpenter did not adequately search the Repositories in his Possession, Custody, and Control.

Second, the Federal Rules of Civil Procedure impose obligations that a party to whom requests were propounded search more than those repositories that are immediately within their control, particularly where that producing party is a corporation or other entity. "[T]he Federal Rules of Civil Procedure require parties to produce items in their possession, custody, and control, not simply those in their immediate possession." *Flannigan v. Vulcan Power Grp., LLC*, No. 09-CV-8473 (LAP), 2019 U.S. Dist. LEXIS 115634, at *28 (S.D.N.Y. July 3, 2019) (quoting *Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362 KAM/ALC, 2010 U.S. Dist. LEXIS 47365, 2010 WL 1945806 at *1 (E.D.N.Y. May 13, 2010) (internal quotations and citation omitted). "The documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise. Any other rule would allow corporations to improperly evade discovery." *Flannigan*, 2019 U.S. Dist. LEXIS 115634, at *28 (quoting *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 n.2 (S.D.N.Y. 1984)).

Universitas objects to Judge Spector's findings of fact and conclusions insofar as they focus on specific documents rather than the searching or repositories. (*See* Doc. No. 218 at 14) ("It is unclear what other documents the plaintiff is requesting, and moreover, the plaintiff has not presented any evidence substantiating its belief that additional responsive documents have been withheld."). Mr. Carpenter has not complied with the discovery order because he refuses to produce documents from numerous repositories over which he has possession, custody, and/or control and which contain responsive documents. Mr. Carpenter is a principal and/or otherwise

11

controls every entity identified within the subpoena, and thus must produce documents within the possession, custody, and/or control of these companies. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180-82 (S.D.N.Y. 2006); *Flannigan*, 2019 U.S. Dist. LEXIS 115634 at *28. These companies have responsive documents in the repositories as discussed *infra*, and thus Mr. Carpenter must search these repositories.

Magistrate Judge Spector's finding that Daniel Carpenter cured his contempt relied upon affidavits from Mr. Carpenter's counsel Jeffrey Sandberg. Mr. Carpenter himself conceded that the only effort he exerted to produce any documents was to contact attorney Sandberg after the production deadline expired and Carpenter was found in contempt of court. *See* Doc. No. 203 at 2-3. Mr. Sandberg's affidavits provide that he produced documents within his possession. *See* Doc. No. 203-1 and 203-2. Universitas does not dispute that Mr. Sandberg produced documents within his control; however, this production is facially deficient. Mr. Sandberg merely produced documents within his firm's possession. Mr. Carpenter must search the numerous other repositories under his control, and to which Mr. Sandberg likely does not have access.

1. Production of BASI documents

Mr. Carpenter's production is deficient because he failed to produce responsive documents stored on the BASI server. As discussed *supra*, all Benistar companies store the entirety of their ESI on the BASI computer server, and thus Mr. Carpenter must produce search this server and produce the responsive documents. *See John B. v. Goetz*, 879 F. Supp. 2d 787, 857-60 (M.D. Tenn. 2010) (finding ESI maintained by third-party contractors to be within party's control for purposes of Fed. R. Civ. P. 34); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 33-34 (S.D.N.Y. 1984) (collecting cases for precedent that "[i]t is not unusual for documents in the possession of a third party, closely connected to the litigation, to

12

be subject to a Rule 34 request"); *see also In re Flag Telecom Holdings*, 236 F.R.D. at 180 n. 3 (S.D.N.Y. 2006) ("[T]he scope of discovery and the meaning of 'control' under Rule 45 and Rule 34 are interpreted identically."). Mr. Carpenter must also search BASI's offices and storage for responsive documents – all Benistar entities store documents in these areas.

Mr. Carpenter's obligation to produce documents from the BASI server and offices is entirely straightforward – BASI concedes that it is the record custodian of every document from 100 Grist Mill Road. *See* Exhibit 5 ¶¶ 5, 12, 15 (affidavit swearing that (1) BASI is the "lawful custodian and/or owner of all the property" seized by federal law enforcement, and (2) federal law enforcement took "every working file in the building"). Moreover, Mr. Carpenter cannot escape his discovery obligations by storing his companies' ESI on a third-party server and then claim to have no access to this server, especially when it has been judicially determined that Mr. Carpenter controls BASI and thus has the ability to produce documents from the BASI server. *See United States v. Carpenter*, 190 F. Supp. 3d 260, 273-74 (D. Conn. Jun. 6, 2016) (finding that Carpenter controls BASI and its employees), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020). Since his release from prison, Mr. Carpenter has continued to use the BASI server, and thus he clearly retains access to this server. *See* Exhibits 11-14.[8] Mr. Carpenter also clearly retains control over BASI and its employees – since his release from prison, Mr. Carpenter has confirmed this control, *inter alia*, by (1) instructing BASI employees, and (2) using BASI employees for

---

[8] Exhibits 11-14 are emails representing Mr. Carpenter's email address as "Dan Carpenter US." A former Benistar employee testified that (1) emails represented as "[Name] US" correspond to an email domain for U.S. Benefits and (2) U.S. Benefits operated from 100 Grist Mill Road. *See* Exhibit 16. All entities located at this address use the BASI computer network. *See* Exhibit 5 ¶¶ 3-4. Accordingly, Mr. Carpenter is emailing via the BASI computer network.

personal matters unrelated to BASI business. *See* Exhibits 14-15.[9] Mr. Carpenter also uses BASI

employees for his ongoing efforts to defraud Universitas. *See* Exhibit 17.[10]

Mr. Carpenter has the ability to produce responsive documents from the BASI server and

is therefore obligated to do so. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No.

14-CV- 04394 (AJN) (BCM), 2016 U.S. Dist. LEXIS 133564, at *17-*18 (S.D.N.Y. Sep. 27,

2016) (explaining that parties are required to produce documents that they have the "practical

ability to obtain ... from a nonparty") (internal citations omitted); *In re Teligent, Inc.*, 358 B.R. 45,

60 (Bankr. S.D.N.Y. 2006) ("If a party has the legal right or practical ability to obtain documents

from a non-party, he has 'control' of those documents ….") (internal citations omitted). Absent

this production of relevant documents in his possession, custody and control, he has still not

complied with this Court's order to produce documents and has therefore failed to cure his

contempt.

2.  Production of documents from other Attorneys

Attorneys for both Mr. Carpenter and his companies clearly have responsive documents,

and Mr. Carpenter must produce such documents. *See Markus v. Rozhkov*, 615 B.R. 679, 705-706

(S.D.N.Y. 2020) (providing that persons maintain control of documents within their attorney's

---

[9] Exhibit 15 is a proof of delivery filed in the United States District Court for the Southern District of New York. The delivery corresponds to a motion filed by Daniel Carpenter in a *pro se* capacity. The return address for this proof of delivery indicates that the motion was sent to the court by BASI. *See* PJR App., Ex. 36 (Doc. No. 13) (providing address and phone number for BASI and identifying Joseph Castagno as a BASI employee).
Exhibit 14 is email correspondence wherein Mr. Carpenter instructs Joseph Castagno to "'proof' and edit" a document draft. Mr. Castagno is a BASI employee. *See* PJR App., Ex. 36 (Doc. No. 13). The draft corresponds to a letter that Mr. Carpenter subsequently sent to the Court in his individual capacity. (*See* Doc. No. 153).
[10] Exhibit 17 is an email from Mr. Carpenter demanding that a custodian of judgment debtor assets transfer $450,000 to Kathy Kehoe. Ms. Kehoe has been a manager at BASI since 2003. *See Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE, 2020 U.S. Dist. LEXIS 251679, at * at *15 & n. 12 (W.D. Okla. Oct. 20, 2020), *adopted* 2021 U.S. Dist. LEXIS 26388 (W.D. Okla. Feb. 11, 2021). In that capacity, Ms. Kehoe reports directly to Mr. Carpenter. *See* Exhibits 18-19. Had the $450,000 transfer occurred, it would have constituted (1) fraud upon Universitas, (2) a violation of multiple injunctions enjoining these funds, and (3) a violation of a court-ordered receivership. *See Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE (W.D. Okla. Sep. 22, 2021) (directing receivership and discussing injunctions).

possession) (internal citations omitted). Mr. Sandberg is only one of the numerous attorneys in possession of such documents, and thus only producing documents within Mr. Sandberg's possession does not satisfy Mr. Carpenter's discovery obligations.

Magistrate Judge Spector also misconstrued Universitas' withdrawal of allegations that Mr. Carpenter had responsive documents seized by federal law enforcement as a statement concerning the exhibit list from Mr. Carpenter's criminal case.[11] *See* Doc. No. 218 at 16. Mr. Carpenter continues to litigate his criminal case from 2013, and thus his attorneys retain possession over the exhibits from this case. *See United States v. Carpenter*, No. 3:13cr226(RNC) (D. Conn. Feb. 24, 2021) (Doc. No. 539) (Carpenter motion to dismiss the superseding indictment). The exhibits identified in the exhibit list are responsive and within the time period provided by the Court, and thus Mr. Carpenter must produce these documents. Mr. Carpenter has provided no documents from any counsel other than Mr. Sandberg, and his production is therefore facially deficient, and he remains in contempt.

b. *Universitas Objects to the Magistrate's Findings Regarding the Alleged Deficiencies in Mr. Carpenter's Production.*

Respectfully, Judge Spector also incorrectly found that Universitas failed to establish noncompliance regarding the document requests to the subpoena. Universitas objects to this finding as Mr. Carpenter's responses all remain demonstrably false and Mr. Carpenter has not complied with any of the document requests within the subpoena. This noncompliance was clearly in bad faith. For instance, Mr. Carpenter responded to numerous document requests by stating that he does not "possess" responsive documents. *See* Exhibit 1. This is an evasive answer that does not concern Mr. Carpenter's obligation to produce documents within his possession, custody,

---

[11] Universitas previously alleged that the Department of Labor ("DOL") was a separate and distinct repository from which Mr. Carpenter could produce documents (he previously did so). Universitas withdrew the allegations regarding the DOL repository – this had no effect on the exhibit list and/or other repositories at issue.

and/or control. *See Flannigan*, 2019 U.S. Dist. LEXIS 115634 at *27-*28 ("Mrs. Graham claims she satisfied her obligation by producing everything in her possession. This does not satisfy her obligations under the subpoena…. [She] cannot evade production of documents by conveniently claiming a lack of access when the documents are sought for discovery purposes.").

      i.   Request No. 1

The Recommendation states that Universitas did not establish that Mr. Carpenter failed to comply with Document Request No. 1 because Mr. Carpenter produced documents within Mr. Sandberg's possession and Universitas failed to identify specific documents regarding transfers on behalf of Mr. Carpenter's companies. *See* Doc. No. 218 at 14-15. As discussed at length, *supra*, the fact that Mr. Carpenter produced documents within Mr. Sandberg's possession does not satisfy his discovery obligations nor cure his contempt.

Mr. Carpenter's response to this request, which he has not supplemented, was that "there was no purchase, sale or transfer of any property by any Judgment Debtor". *See* Exhibit 1 at 1. This response is both (1) demonstrably false, and (2) incomplete. Mr. Carpenter fraudulently transferred assets on behalf of the Judgment Debtors throughout the underlying litigation, and thus transfers involving these entities necessarily occurred. *See Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2014 U.S. Dist. LEXIS 3983, at *25 (S.D.N.Y. Jan. 13, 2014) ("Carpenter's entities have continued to seek to transfer assets from the judgment-debtor …."). The transfer of corporate assets requires documentation, and these documents were necessarily in the possession, custody, and/or control of the corporations involved in these transfers, or their principals. If Mr. Carpenter continues to claim that no such documents exist for the entities referenced in the subpoenas, then it is clear that those documents have been destroyed.

This answer is also clearly incomplete as the request concerns transactions on behalf of "any Judgment Debtor, Company, and/or Affiliate." *See* Exhibit 1 at 1. Mr. Carpenter's refusal to respond (or search for documents) as to Companies and/or Affiliates is contempt of court. *See In re Weiss*, 703 F.2d 653, 666-69 (2d Cir. 1983) (explaining that "deliberately evasive answers constitute refusals to answer" when evidence shows that witness has knowledge that they refuse to provide).[12] Universitas further notes that imposing the requirement on Universitas to provide affirmative proof of documents that Mr. Carpenter, who has a long history of discovery abuse, clearly possesses and withheld in discovery places Universitas in an untenable situation and effectively forecloses on its ability to get meaningful discovery from Mr. Carpenter and his entities.

## ii. Request No. 2

The Recommendation states that Universitas failed to establish that Mr. Carpenter failed to comply with Document Request No. 2 because Mr. Carpenter's statement that his wife pays his legal bills does not establish that Mr. Carpenter has possession, custody, and/or control over documents demonstrating any such payments. *See* Doc. No. 218 at 15. Respectfully, this conclusion is incorrect. The "statement" that Mr. Carpenter's wife pays his legal fees was made in his response to the subpoena at issue. *See* Exhibit 1. Mr. Carpenter's attorneys necessarily have documents concerning payment of Mr. Carpenter's legal fees, as well as the sources of those payment, and Mr. Carpenter is required to produce responsive documents within his attorneys' possession. *See, e.g., Markus v. Rozhkov*, 615 B.R. 679, 705-706 (S.D.N.Y. 2020).

---

[12] There is substantial evidence demonstrating that the entities characterized as "Companies" engaged in transactions. *See e.g.*, Exhibit 20. Universitas is not complaining that Mr. Carpenter did not produce documents already within Universitas' possession. Rather, Exhibit 20 demonstrates that Mr. Carpenter's statement is demonstrably false and that relevant entities engaged in transactions. Mr. Carpenter must produce all documents concerning these transactions.

This answer is also clearly incomplete—Mr. Carpenter states that "there were no payments to me by any Judgment Debtor" whereas the request concerns "payments … from any Judgment Debtor, Affiliate, and/or Company." *See* Exhibit 1. Mr. Carpenter's refusal to respond (or search for documents within the appropriate repositories) as to Companies and/or Affiliates is contempt of court. *See In re Weiss*, 703 F.2d at 666-69.

      iii.   Request No. 3

Universitas objects to Judge Spector's findings regarding Document Requests No. 3 and the "remaining requests" because those findings incorrectly apply the relevant caselaw. *See* Doc. No. 218 at 15-16 and 19. Documents and records in the ordinary course of business are presumed, <u>*as a matter of law*</u>, to be within a company's control until proven otherwise. *See Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 n. 2 (S.D.N.Y. 1984); *see also First Nat'l City Bank v. Internal Revenue Serv.*, 271 F.2d 616, 618 (2d Cir. 1959) ("It has long been held that there is a presumption that a corporation is in the possession and control of its own books and records.") (internal citations omitted); *In re Anschuetz & Co., GmbH*, 754 F.2d 602, 607 n. 9 (5th Cir. 1985) ("The documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise. Any other rule would allow corporations to improperly evade discovery.") (internal citations omitted), *cert. vacated on unrelated grounds* 483 U.S. 1002 (1987).

The subpoena requests documents and records held in the ordinary course of business such as corporate documents regarding the ownership structure of Mr. Carpenter's companies. Mr. Carpenter's companies are presumed to have such documents as a matter of law. *See Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 n. 2 (S.D.N.Y. 1984); *In re Heuwetter*, 584 F. Supp. 119, 126 (S.D.N.Y. 1984) (explaining that corporate documents are "presumed to

exist because they are maintained pursuant to federal and state law" and are necessarily held in a custodial capacity) (internal citations omitted). Mr. Carpenter controls all the entities within the subpoena and there is no evidence to rebut the presumption of control over these documents, and therefore, Mr. Carpenter must produce these documents.[13] *See In re Flag Telecom Holdings*, 236 F.R.D. at 180-182; *see also Flannigan v. Vulcan Power Grp., LLC*, No. 09-CV-8473 (LAP), 2019 U.S. Dist. LEXIS 115634, at *28 (S.D.N.Y. July 3, 2019) (internal citations omitted). Mr. Carpenter's self-serving filings and claims that he has complied with discovery does not rebut the presumptions that Mr. Carpenter has control over all these responsive corporate documents.[14]

Judge Spector also incorrectly found that Universitas failed to substantiate its claim that Mr. Carpenter needs to produce his tax returns and life insurance policies. Mr. Carpenter is presumed, as a matter of law, to have possession of his tax returns. *See Fed. Sav. & Loan Ins. Corp. v. Hardee*, 686 F. Supp. 885 (N.D. Fla. 1988) (explaining that possession of personal tax returns is a "foregone conclusion") (citing *Fisher v. United States*, 425 U.S. 391 (1976)). Similarly, Mr. Carpenter has numerous life insurance policies, *see* Exhibit 21, and documents concerning these policies are necessarily held in a custodial capacity and thus are within Mr. Carpenter's possession, custody, and/or control—at a minimum, the relevant insurance company(ies) has them in a custodial capacity and Mr. Carpenter can request the documents more easily than Universitas.

---

[13] Any statements to this effect by Mr. Carpenter have no probative evidentiary value. *See States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 466 (E.D.N.Y. 2007) (holding affidavits supporting complaint "are nothing more than self-serving statements prepared by the plaintiff with no independent evidentiary value"); *Weisinger v. Scott*, No. 93-2287, 1994 U.S. App. LEXIS 41278 (5th Cir. May 23, 1994) ("Self-serving assertions are entitled to no probative evidentiary value.") (internal citations omitted); *see also* Doc. No. 167-15 (unreported decision applying preceding precedents to self-serving Carpenter statements within context of discovery noncompliance) (attached herein).

[14] If Mr. Carpenter continues to claim that he has completed his discovery obligations for these companies without producing <u>any</u> corporate documents or bank records, these entities and Mr. Carpenter should be estopped from later arguing that such documents exist.

Thus, the Recommendation incorrectly found that failure to produce such documents does not constitute a basis for ongoing contempt.

Moreover, Judge Spector further found that Carpenter complied with the "remaining requests" because these requests concern documents relating to BASI, which Judge Spector found was a Defendant, and thus further found that such requests should be addressed to BASI. First, BASI is not a Defendant – it was dismissed from this case. *See* Doc. No. 110. BASI has not responded to Universitas' discovery requests because it was subsequently dismissed from the case and is under no obligation to do so. Moreover, some of the documents at issue (i.e. the letters filed in Mr. Carpenter's sentencing proceeding) are exclusively within Mr. Carpenter's custody – BASI cannot produce these documents because BASI is not in possession, custody, and/or control of these documents. Moreover, there exists no requirement that Universitas only requests documents regarding parties from those parties themselves. This is particularly true in this case, where the Defendant Trusts have similarly failed to produce responsive documents and where Mr. Carpenter exercises full control over the other entities.

iv.   Request No. 4

The Recommendation provides that Carpenter was in compliance with Document Request No. 4 because Universitas withdrew its allegations regarding production of documents related to the Department of Labor raid, and therefore Mr. Carpenter did not have to produce responsive documents in his attorneys' possession. *See* Doc. No.  218 at 16. As discussed *supra*, the allegations regarding the DOL documents have no bearing on the documents from Mr. Carpenter's criminal case, and thus Judge Spector's findings are, respectfully, incorrect.

Mr. Carpenter's response that he has no bank account information "other than bank account information provided by counsel for Universitas in various filings" is demonstrably false. *See e.g.*,

Exhibit 17 (providing that Carpenter has access to SDM bank records never filed by Universitas). Once again, the issue is not the specific records. Rather it is that Mr. Carpenter has failed to cure his contempt by not making a diligent search of the proper repositories of relevant and responsive documents. Here, Mr. Carpenter has access to the bank records held by third-party banks in a custodial capacity, and thus Mr. Carpenter necessarily has possession, custody, and/or control over responsive bank records that he refuses to produce.

v.   Request Nos. 5-7

Judge Spector found that Carpenter satisfied request no. 5 and request no. 7 because these documents could be obtained from the Defendant Trusts and thus it is burdensome to make non-party Carpenter produce these documents. *See* Doc. No. 218 at 16-18. Respectfully, Judge Spector's reasoning is incorrect because Daniel Carpenter is not a "non-party who is not otherwise involved in the lawsuit." Mr. Carpenter is the central figure in the lawsuit who is not only dictating his own legal strategy, but that of the Trusts. This action is the result of Mr. Carpenter using hundreds of shell companies to hide assets and defraud Universitas, and the allegations in this proceeding are that the Defendants are involved in this scheme (and are not legally distinct from Carpenter). Moreover, Mr. Carpenter is the sole trustee for the Defendant Trusts, *see* Doc. No. 110 at 31, and he is handling the Defendant Trusts' discovery responses. *See* Exhibit 10. Thus, there is no undue burden in making Mr. Carpenter produce documents in his individual capacity – the alternative is that Mr. Carpenter produce these same documents in his capacity as trustee of the Defendant Trusts.

Judge Spector found that Carpenter complied with document request no. 6 because the only document identified by Universitas was dated in 1999 and thus was outside the scope of discovery, and thus Universitas failed to demonstrate that Mr. Carpenter failed to produce responsive

21

documents. *See* Doc. No.  218 at 18. Respectfully, the timeframe of 2009-present provided by Judge Spector cannot apply to documents concerning corporate dissolution. The parties identified the identity of Jane Doe entities as a topic of discovery in this case. *See* Doc. No. 82 at 6. This discovery is necessary to identify which of the hundreds of entities Mr. Carpenter uses to defraud creditors could contain Mr. Carpenter's assets. Allowing Mr. Carpenter to repress such documents pre-dating 2009 effectively protects an entire class of Carpenter entities from judicial scrutiny and creates a safe haven for Mr. Carpenter to conceal his assets and continue defrauding Universitas and his other creditors. The 2009 qualifier cannot pertain to corporate documents, but rather is a limitation on requests involving financial records, emails, and other documents trying to locate Mr. Carpenter's and/or the legitimacy of his entities—not the existence of such entities.

  c. *Universitas Objects to the Recommended Sanctions.*

  The Recommendation found that compensatory sanctions were an appropriate sanction for Mr. Carpenter's contempt pursuant to this Court's inherent sanction power for his contempt between July and September of 2021. Universitas agrees that this sanction is appropriate. Universitas objects to the Recommendation as it relates to sanctions on two grounds: (1) compensatory sanctions should be awarded from September 15, 2021 until the present because Mr. Carpenter has not yet cured his consent; and (2) coercive sanctions are appropriate to force Mr. Carpenter to comply with this Court's orders.

   i. Compensatory Sanctions are Proper for Mr. Carpenter's continuing Contempt.

  As stated in the Recommendation, the Second Circuit requires a finding of bad faith to award attorneys' fees as a sanction. *See, e.g.*, *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012). Bad faith can be inferred when a party's actions are completely meritless and thus lead to the conclusion that those actions were undertaken for an improper purpose. *Schlaifer Nance & Co.*

*v. Estate of Warhol*, 194 F.3d 323, 338 (2d. Cir. 1999) (explaining that conduct is motivated by improper purpose when it was made for dilatory reasons). Here, Mr. Carpenter's failure to adequately remedy his contempt is clearly done in bad faith. Mr. Carpenter's document dump constitutes another in a long-line of his bad-faith litigation tactics, which are summarized in Universitas's Motion for Contempt (Doc. No. 167-1 at 5-6, 11-13, 21-23). The production of several hundred responsive pages of documents hidden in folders with over a million pages of spam emails, pornography, and wholly irrelevant documents is a completely unreasonable and meritless action, which can only be undertaken for the purpose of (1) concealing potentially relevant documents, and (2) increasing Universitas' fees and costs by necessitating a review of hundreds of thousands of nonresponsive documents. Indeed, Mr. Carpenter's bad faith is clear from actions undertaken after the number of nonresponsive documents and the nature of those documents was brought to his and his counsel's attention at a hearing before Judge Spector. Universitas noted the inappropriate and spam files, and yet Mr. Carpenter and his Counsel took no steps to eliminate those files from their subsequent flash drive production, instead opting to re-produce these clearly non-responsive files in a transparent effort to bury Universitas' counsel with files. This is consistent with Mr. Carpenter's dilatory tactics and there is simply no justification for this type of production. As such, this Court should find that Mr. Carpenter's continued contempt is in bad faith, and that compensatory sanctions from September 15, 2021 to the present are warranted.

    ii.   Coercive Sanctions are also Proper for Mr. Carpenter's Continuing Contempt.

Universitas also objects to Judge Spector's finding that coercive sanctions are unnecessary because "Mr. Carpenter complied substantially with the subpoena and Court order" after he made his production to Universitas and supported that production with affidavits from his counsel. First,

as described at length, *supra*, Mr. Carpenter has not complied substantially with the subpoena or this Court's order. Second, coercive sanctions are necessary to ensure that Mr. Carpenter does comply. The Recommendation acknowledges that Mr. Carpenter has been sanctioned in sister courts and has failed to pay those sanctions, but states that policy considerations and Mr. Carpenter's cure of his contempt obviate the need for coercive sanctions. (Doc. No. 218 at 24 n.5). Because of Mr. Carpenter's history of non-payment of sanctions, and because he has not cured his contempt, coercive sanctions are appropriate in this case.

"The point of contempt sanctions … is 'to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" See *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, 2005 U.S. Dist. LEXIS 14790, at *21 (S.D.N.Y. May 3, 2005). In determining which sanctions are appropriate, the court should ensure that the sanction is "coercive or compensatory and not punitive," and if coercive sanctions are warranted, should examine the "character and magnitude of the harm threatened by continued contumacy, . . . the probable effectiveness of any suggested sanction in bringing about (compliance), and the amount of (the contemnor's) financial resources and the consequent … burden to (him). *See Trs. of the Conn. Pipe Trades Local 777 Health Fund v. Plumbing Creations, LLC*, No. 3:15-cv-00822 (MPS), 2019 U.S. Dist. LEXIS 115873, at *9-*10 (D. Conn. July 11, 2019) (internal citations and quotations omitted).

Here, coercive sanctions are necessary to prevent further substantial harm to Universitas and to actually effectuate Mr. Carpenter's compliance. As explained at length in Universitas' Motion for Contempt (Doc. No. 167-1 at 23-25), Mr. Carpenter's recalcitrance to perform his discovery obligations causes substantial harm to Universitas, especially in light of the protracted nature of the proceedings resulting from Mr. Carpenter's bad-faith litigation tactics. Additionally, it is clear from the contempt findings and sanctions in sister Courts that Mr. Carpenter does not

24

pay the compensatory sanctions he is required to by the Court. *Universitas Educ.*, 2021 U.S. Dist. LEXIS 186211 at *37 (finding that "Mr. Carpenter has so far not been deterred by financial sanctions" and imposing other sanctions instead). Thus, coercive sanctions such as fines to the Court and incarceration if he fails to pay such fines, as well as Universitas' attorneys' fees for his contempt, are necessary to effectuate Mr. Carpenter's compliance. Finally, as the Recommendation correctly notes, Mr. Carpenter has failed to raise the defense that he is unable to pay coercive sanctions, and thus the third prong is met. (Doc. No. 218 at 24). As such, coercive sanctions are appropriate until Mr. Carpenter complies with his discovery obligations and pays any monetary sanctions imposed by this Court.

## **CONCLUSION**

For all the aforementioned reasons, this Court should accept the Recommendation that Mr. Carpenter was in contempt between July and September of 2021 and must pay sanctions for that contempt, but reject the rest of the Recommendations findings and instead find that Mr. Carpenter remains in contempt and that further sanctions are appropriate.

Dated: January 5, 2022

                                   Respectfully submitted,

                                   /S/ Joseph L. Manson III
                                   JOSEPH L. MANSON, III
                                   (*Admitted Pro Hac Vice*)
                                   jmanson@jmansonlaw.com
                                   LAW OFFICES OF JOSEPH L. MANSON III
                                   600 Cameron St,
                                   Alexandria, VA 22314
                                   Telephone: (703) 340-1693

                                   ATTORNEYS FOR PETITIONER
                                   UNIVERSITAS EDUCATION, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of January, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

<u>/s/ Joseph L. Manson III</u>