**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC | |
| *Plaintiff,* | CASE NO. 3:20-cv-00738-JAM |
| v. | |
| BENISTAR, ET AL. | |
| *Defendant*s. | |

### REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST THE DEFENDANT TRUSTS AND THEIR TRUSTEE

The discovery dispute currently before this Court is the direct result of the Defendant Trusts refusal to produce ***any*** discovery and repeated insistence upon court intervention to address relatively routine discover issues. Not only is the alleged discovery dispute wholly without merit, but also based upon untrue factual claims to both the Court and Universitas Education, LLC ("Universitas"). *See e.g.*, Dkt. #110 at 33 ("It is disturbing that the Defendant Trusts have tried to make a factual claim … [that] is obviously untrue.").[1]

The Defendant Trusts are controlled by Daniel Carpenter. Since Mr. Carpenter's  release from prison, both he and his companies have been sanctioned for continuing his litigation strategy of forcing Universitas to litigate unnecessary and frivolous issues so as to (1) delay Universitas' collection efforts, and (2) render post-judgment litigation costs prohibitive for Universitas.[2] Willful discovery misconduct intended to trigger frivolous litigation and thus burden Universitas with unnecessary legal fees is a judicially established component of this litigation strategy.[3] The current discovery "dispute" is likewise intended solely to force Universitas to incur unnecessary attorneys' fees.

The primary issue in this "dispute" is the Defendant Trusts' refusal to search a document repository which: (1) indisputably contains responsive documents, and (2) they are required to search. The repository at issue is a computer server maintained by Benistar Admin Services, Inc.

---

[1] These falsehoods demonstrate bad faith. *See Thomas v. Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (explaining that "recklessly or intentionally misrepresenting facts constitutes ... bad faith ....") (internal citations omitted).

[2] *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2021 U.S. Dist. LEXIS 186211, at *37 (S.D.N.Y. Sep. 28, 2021) ("Mr. Carpenter's motive appears to have been … to cause unnecessary expense on Universitas ….").

[3] *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2013 U.S. Dist. LEXIS 1720, at *3 (S.D.N.Y. Jan. 4, 2013) ("This case has been marked by [Carpenter]'s diversionary and dilatory … discovery practices, all of which are aimed at frustrating any efforts by Universitas to enforce the judgment."); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2016 U.S. Dist. LEXIS 72268, at *14-*16 (S.D.N.Y. Mar. 31, 2016) (explaining that Carpenter (1) "engaged in 'dilatory conduct during the course of post- judgment discovery' in order to delay or hinder Universitas' discovery and enforcement efforts" and (2) pursued his goal of "injur[ing] Universitas' rights to collect the judgment … by resisting Universitas' efforts to obtain post-judgment discovery"), *adopted* 2016 U.S. Dist. LEXIS 64138 (S.D.N.Y. May 16, 2016).

("BASI"). The Defendant Trusts claim that documents on this server are outside the scope of production because they do not have possession, custody, and/or control over the server. As discussed *infra*, this claim is demonstrably false – the Defendant Trusts have control over these documents and must produce them. Universitas provided evidence that the server contains responsive documents and there is evidence that the server contains responsive documents beyond the documents identified by Universitas. Accordingly, the Defendant Trusts must search the server.

Since Universitas moved for sanctions, the Defendant Trusts searched the BASI server for responsive emails. This is insufficient – as discussed *infra*, this server is the sole repository for **_ALL_** the Defendant Trusts' ESI, and limiting their search to email is insufficient, and unacceptable.

I.      **Background Information on the Defendant Trusts and Benistar.**

The Defendant Trusts are among the hundreds of companies that Mr. Carpenter operated from his offices at 100 Grist Mill Road (hereinafter collectively "Benistar").[4] Benistar entities are highly intermingled and operate as a common enterprise rather than as individual concerns.[5] The Massachusetts Court of Appeals provided the following synopsis of Benistar entities:

> [The trial court] found that the corporations were commonly owned by the Carpenters, who had pervasive control over all of their activities; that the business activities, assets, and management of the organizations were intermingled; that the corporations were inadequately capitalized; that corporate formalities were not observed; that no corporate records existed; that no dividends were paid; that [the defendant Benistar company] was insolvent; that no officers or directors of any of

---

[4] (*See* Exhibits 5-9 (providing address for Defendant Trusts);) *see also Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803, at *9 (S.D.N.Y. Nov. 20, 2013) ("Daniel E. Carpenter has founded and controlled hundreds of companies out of his offices at 100 Grist Mill Road in Simsbury, Connecticut.").
[5] *See e.g.*, Dkt. #110 at 17 ("Several courts have found Carpenter and his companies consistently disregard corporate formalities, such as sharing office space, management, computers, and employees."); *see also Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE, 2020 U.S. Dist. LEXIS 251679, at *53-*60 (W.D. Okla. Oct. 20, 2020) (explaining that numerous Benistar entities operated as a "singular integrated enterprise"), *adopted* 2021 U.S. Dist. LEXIS 26388 (W.D. Okla. Feb. 11, 2021); *United States v. Carpenter*, 190 F. Supp. 3d 260, 274 (D. Conn. Jun. 6, 2016) ("[T]he formal corporate structure of the various [Carpenter] Entities had little meaning for the people involved."), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 3983, at *13 (S.D.N.Y. Jan. 3, 2014) ("Mr. Carpenter and his affiliates demonstrate[] an absence of respect for distinctions among his business entities ....").

these corporations existed apart from the Carpenters; … and that the corporations were used to promote fraud.

*Cahaly v. Benistar Prop. Exch. Trust Co.*, 68 Mass. App. Ct. 668, 677 n. 15 (2006).

BASI is "the hub of the various Benistar entities" – it provides other Benistar entities with administrative support and clerical services such as recordkeeping, transaction processing, and compliance services. *See* Mot. to Compel [Dkt. #198], Ex. 8 at 1. BASI is the only Benistar entity with employees, which are treated as a common pool of employees that service all Benistar entities. *See* Mot. to Compel [Dkt. #198], Ex. 9; *see also* PJR App., Ex. 5 [Dkt. #10]. BASI is also the only Benistar entity with office space and equipment, which BASI provides to other Benistar entities. *See* Mot. to Compel [Dkt. #198], Ex. 10 ¶¶ 3-4 (affidavit swearing that (1) "BASI leases the entire suite of offices at ... 100 Grist Mill Road," and (2) "BASI owns all of the computer hardware and software, as well as all internet and telecommunications connections, at the office facility").)

The Defendant Trusts have no employees, no office space, and no ability to independently operate. Rather, they operate through BASI computers and the BASI computer server – the Defendant Trusts obtained over 6,000 responsive emails from the BASI server and claim that there are no other emails within their possession, custody, and/or control. The Defendant Trusts do not pay BASI for any administrative services, support, and/or resources. (*See* Exhibits 5-9.[6])

II.     **BASI Is the Record Custodian of the Defendant Trusts' ESI.**

BASI is the record custodian of the Defendant Trusts' ESI because BASI maintains the computer server where the Defendant Trusts (and every other Benistar entity) store their ESI in the ordinary course of business. (*See* Exhibit 2 (demonstrating that the Defendant Trusts (1)

---

[6] Exhibits 5-9 are excerpts from the Defendant Trusts' tax returns for the year 2011. All five returns provide that the Defendant Trusts did not have any expenses, (*see e.g.*, Exhibit 5 at 8,) and thus the Defendant Trusts necessarily did not make payment to BASI. All tax returns produced by the Defendant Trusts indicate an absence of expenses, and Universitas will file all such tax returns upon request from the Court.

conduct business on the BASI server and (2) store their ESI on this same server);[7] *see also Nat'l Jewish Health v. WebMD Health Servs. Grp.*, 305 F.R.D. 247, 254-55 (D. Colo. 2014) (explaining that ESI record custodian is the party that receives and stores ESI in the ordinary course of business). Moreover, BASI concedes that it is the record custodian of every document from 100 Grist Mill Road. *See* Mot. to Compel [Dkt. #198], Ex. 10 ¶¶ 5, 12, 15 (affidavit swearing that (1) BASI is the "lawful custodian and/or owner of all the property" seized by federal law enforcement, and (2) federal law enforcement took "every working file in the building").

a.  <u>The Defendant Trusts are Required to Produce Documents from the BASI Server.</u>

The Defendant Trusts cannot escape their discovery obligations by storing their ESI on a third-party server and then claiming to have no access to this server. *See Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) ("The defendant may not excuse itself from compliance with Rule 34 … by utilizing a system of record-keeping which conceals rather than discloses relevant records …."). The Defendant Trusts store their ESI on the BASI server and therefore must produce documents from this server. *See John B. v. Goetz*, 879 F. Supp. 2d 787, 857-60 (M.D. Tenn. 2010) (finding ESI maintained by third-party contractors to be within party's control for purposes of Fed. R. Civ. P. 34); *see also Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 33-34 (S.D.N.Y. 1984) (collecting cases for precedent that "[i]t is not unusual for documents in the possession of a third party, closely connected to the litigation, to be subject to a Rule 34 request").

Moreover, the Defendant Trusts must produce documents from the BASI server because they have the practical ability to do so. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr.*

---

[7] Exhibit 2 is a subset of the emails that the Defendant Trusts produced from the BASI server. These emails all concern bank accounts operated by the Defendant Trusts, and thus demonstrate that the Defendant Trusts used the BASI server for banking and conducting business. The Defendant Trusts then subsequently produced these emails from the BASI server, which demonstrates that the Defendant Trusts stored emails on this server.

*Co.*, No. 14-CV- 04394 (AJN) (BCM), 2016 U.S. Dist. LEXIS 133564, at *17-*18 (S.D.N.Y. Sep. 27, 2016) (explaining that parties are required to produce documents that they have the "practical ability to obtain ... from a nonparty") (internal citations omitted); *In re Teligent, Inc.*, 358 B.R. 45, 60 (Bankr. S.D.N.Y. 2006) ("If a party has the legal right or practical ability to obtain documents from a non-party, he has 'control' of those documents ....") (internal citations omitted). The Defendant Trusts' ability to produce documents from the BASI server is self-evident – they obtained over 6,000 responsive emails shortly after requesting these documents from BASI. *See Royal Park I*, 2016 U.S. Dist. LEXIS 133564 at *22-*23 (finding that production of discovery from source indicates ability to produce documents from that source).

Moreover, Mr. Carpenter can clearly access the BASI server on behalf of the Defendant Trusts given that he controls both the Defendant Trusts and BASI. *See* Dkt. #110 at 31 (providing that Carpenter is the sole trustee for all the Defendant Trusts); *Carpenter*, 190 F. Supp. 3d at 273-74 (finding that Carpenter controls BASI and its employees). Since his release from prison, Mr. Carpenter has confirmed his ongoing control over BASI and its employees, *inter alia*, by (1) instructing BASI employees, and (2) using BASI employees for personal matters unrelated to BASI business. *See e.g.*, Mot. to Compel [Dkt. #198], Exs. 17-18.[8] Mr. Carpenter also uses BASI employees for his ongoing efforts to defraud Universitas. *See* Exhibit 4.[9]

---

[8] Mot. to Compel [Dkt. #198], Ex. 17 is a proof of delivery filed in the United States District Court for the Southern District of New York. The delivery corresponds to a motion filed by Daniel Carpenter in a *pro se* capacity. The return address for this proof of delivery indicates that the motion was sent to the court by BASI. *See* PJR App., Ex. 36 [Dkt. #13] (providing address and phone number for BASI and identifying Joseph Castagno as a BASI employee).

Mot. to Compel [Dkt. #198], Ex. 18 is email correspondence wherein Mr. Carpenter instructs Joseph Castagno to "'proof' and edit" a document draft. Mr. Castagno is a BASI employee. *See* PJR App., Ex. 36 [Dkt. #13]. The draft corresponds to a letter that Mr. Carpenter subsequently sent to the Court in his individual capacity. *See* Dkt. #153.

[9] Exhibit 4 is an email from Mr. Carpenter demanding that a custodian of judgment debtor assets transfer $450,000 to Kathy Kehoe. (*See* Exhibit 4.) Ms. Kehoe has been a manager at BASI since 2003. *See Avon Capital*, 2020 U.S. Dist. LEXIS 251679 at *15 & n. 12. In that capacity, Ms. Kehoe reports directly to Mr. Carpenter. *See* Mot. to Compel [Dkt. #198], Exs. 15-16. Had the $450,000 transfer occurred, it would have constituted (1) fraud upon Universitas, (2) a violation of multiple injunctions enjoining these funds, and (3) a violation of a court-ordered receivership. *See* Dkt. #199-4 (court order directing receivership and discussing injunctions).

III.    **The Defendant Trusts Violated the Discovery Order.**

The Court ordered the Defendant Trusts to produce responsive documents four (4) months ago. *See* Dkt. #163. To date, the Defendant Trusts have only produced: (1) limited tax returns, (2) declarations of trust, (3) one month of bank statements, and (4) a mere thirteen  emails. Most of these documents were produced after the production deadline, (*see e.g.*, Exhibit 3,) and the Defendant Trusts do not provide any explanation for this noncompliance. *See Cordius Tr. v. Kummerfeld Assocs.*, 658 F. Supp. 2d 512, 517 (S.D.N.Y. 2009) ("[Defendant] cannot remedy his noncompliance with this Court's order by belatedly producing documents ….").

a.   The Defendant Trusts Must Produce Emails.

The Defendant Trusts concede that they did not request emails from BASI until after the production deadline. (Def. Trusts' Opp. Br. at 9-10.) This nonchalance violated the discovery order. *See Royal Park*, 2016 U.S. Dist. LEXIS 133564 at *22-*23 and *28-*29 (explaining that parties are required, at a minimum, to ask for documents from non-parties prior to claiming that they do not have the practical ability to produce documents from said non-party). Moreover, the Defendant Trusts concede that they obtained over 6,000 responsive emails from the BASI server – the Defendant Trusts have produced thirteen (13) of these emails and have not provided any explanation for their refusal to produce the remaining 6,000+ responsive emails in their possession.

b.   The Defendant Trusts Must Produce Bank Documents.

The Defendant Trusts repeatedly swore, under penalty of perjury, that they have not had an account with Bank of America at any time since January 1, 2009. *See e.g.*, Mot. to Compel [Dkt. #136], Exs. 6-10 (interrogatory responses swearing that Defendant Trusts have not had any bank accounts since 2007). The emails produced by the Defendant Trusts demonstrate that all the Defendant Trusts did in fact maintain an account at Bank of America during that time. (*See* Exhibit

2.) The Defendant Trusts now claim that these bank records cannot be produced because the documents are not in their possession, custody, or control.[10] This claim is dubious given that (1) Bank of America regularly provides all account holders with bank statements, and (2) such bank statements were necessarily within the Defendant Trusts' possession, custody, and/or control in the ordinary course of business. *See also Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 n. 2 (S.D.N.Y. 1984) (providing that documents and records in the ordinary course of business are presumed to be within a company's control). If the Defendant Trusts' current claim that these bank records cannot be produced because the documents are not in their possession, custody, or control, it is possible they destroyed documents with knowledge of pending litigation.[11]

The Defendant Trusts also fail to rebut the evidence demonstrating that they have additional bank documents. One piece of evidence includes such bank statements, which the Defendant Trusts refuse to produce and claim they cannot produce. *See* PJR App., Ex. 23 [Dkt. #12]. The evidence explicitly demonstrates that the Defendant Trusts had these bank statements at a time they knew these documents were relevant to future litigation – the Defendant Trusts' claims otherwise are demonstrably false. Another piece of evidence is an email which states "attached are the statements Molly sent over" and discusses the attached statements – this discussion involves the Defendant Trusts' bank statements, and the statements were clearly attached to the email. *See* PJR App., Ex. 12 [Dkt. #11]. Because this email is on the BASI server, the Defendant Trusts clearly have the ability to produce the bank statements attached to the email.

---

[10] In support of this claim, the Defendant Trusts filed an affidavit from their accountant representing that his firm does not have possession of these bank records. The Court previously explained to the Defendant Trusts, explicitly, that conferring with their accountant with regard to documents does not satisfy their discovery obligations.

[11] As explained in Universitas' opening brief, Mr. Carpenter was repeatedly notified that the Defendant Trusts' bank documents were relevant to future litigation. *See* Dkt. #199-1 at 15-16.

c.   The Defendant Trusts Must Produce Documents Regarding Life Insurance Policies.

The Defendant Trusts do not claim that there are no responsive documents concerning life insurance policies. Rather, they (1) complain that the evidence regarding these documents is from 2013, (2) quibble over the meaning of the email, and (3) insist that the email does not specifically identify the Defendant Trusts. The Defendant Trusts' first argument is specious because documents concerning life insurance policies from 2013 are within the scope of the discovery order and must be produced. *See* Dkt. #163. The Defendant Trusts' second argument is also specious because it focuses on the vague language shrouding Mr. Carpenter's statement – this language does not negate the substance of his statements and Mr. Carpenter would not have insinuated that the Defendant Trusts had "tens of millions of dollars in the cash value of life insurance policies" unless it were true. *See United States v. Hsia*, 87 F. Supp. 2d 10, at *14 (D.D.C. 2000) (explaining that people do not make statements which may lead to civil liability unless they believe such statements to be true).[12] The Defendant Trusts' last argument fails because there are no "Carpenter family charitable trusts" aside from the Defendant Trusts – the Defendant Trusts do not claim that any such trust exist, and the Court should not presuppose the existence of any such trust.

IV.   **Mr. Carpenter's Probation Is Not Relevant.**

The Defendant Trusts' argument that the terms of Mr. Carpenter's supervised release preclude them from producing additional documents rings hollow for numerous reasons. *See* Dkt. # 167-3 (providing terms of Carpenter's supervised release). First, the Defendant Trusts are not subject to the terms of Mr. Carpenter's probation and thus his probation is not grounds for the

---

[12] At the time this email was sent, Mr. Carpenter was (1) representing to numerous courts and creditors that he was insolvent and unable to satisfy judgments against him and (2) defending numerous veil piercing claims against Benistar entities. *See e.g.*, *Iantosca v. Benistar Admin. Servs.*, 567 F. App'x 1 (1st Cir. 2014). Given that Mr. Carpenter is the Defendant Trusts' sole trustee, it was foreseeable that his statement concerning the Defendant Trusts' assets would cause creditors to bring veil piercing claims against the Defendant Trusts in order to satisfy their judgments with the Defendant Trusts' assets and thereby cause civil liability for the Defendant Trusts.

Defendant Trusts to violate a court order and neglect their discovery obligations. *See United States v. Harrison*, 653 F.2d 359, 361 (8th Cir. 1981) ("The Trust is a formally organized entity, legally distinct from its trustees …."). Moreover, the Defendant Trusts' noncompliance with the discovery order is the result of Mr. Carpenter's bad faith, not an adherence to the terms of his probation.

Second, the only reason that the terms of Mr. Carpenter's probation are relevant to the Defendant Trusts' document production is because Mr. Carpenter is routinely and methodically violating his probation by (1) directing litigation on behalf of the Defendant Trusts (and GMP), and (2) overseeing discovery on behalf of the Defendant Trusts (and GMP). (*See* Exhibit 1.) Mr. Carpenter is violating the occupational restrictions within his probation by making decisions and undertaking action on behalf of these entities – Mr. Carpenter cannot violate his probation to make decisions on behalf of these entities and then claim that his decision-making is limited by the terms of his probation. As such, the fact that Mr. Carpenter is violating his probation is not grounds for limiting the scope of the Defendant Trusts' discovery obligations. *See JPMorgan Chase Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.*, 189 F. Supp. 2d 24, 28 (S.D.N.Y. 2002) (explaining that "a wrongdoer … should not benefit from his own wrongdoing"). Moreover, Mr. Carpenter's consistent, and open violation of his probation through his involvement in this litigation[13] since at least since June 11, 2020should not be tacitly approved. *See* Mot. to Compel [Dkt. #198], Ex. 1 (email dated June 11, 2020 wherein Mr. Carpenter directs litigation on behalf of GMP and thereby violates his probation).

---

[13] Mr. Carpenter further violated his supervised release by directing litigation on behalf of Benistar companies in other proceedings. (*See* Exhibits 10-11 (demonstrating that Mr. Carpenter was responsible for motion filed by Benistar entity in related proceeding);) *Universitas Educ., LLC v. Nova Group, Inc.*, No. 3:14-mc-125-RNC, Doc. 11 (D. Conn. Nov. 13, 2020) (motion filed by Carpenter alter ego in related proceeding). Mr. Carpenter also violates his probation in order to perpetuate his corporate shell game and defraud Universitas. (*See* Exhibit 4.)

V.     **Local Rules**

Defendant Trusts' arguments that Universitas' Motion should be denied for failure to comply with Local Rule 37 are similarly unpersuasive. First, the record makes clear that the parties have met and conferred regarding these disputes, as is required by Judge Meyer's individual rules, and numerous discovery conferences that have been held before Judge Spector. The key issue is whether the parties attempted to resolve the dispute without court intervention – which they did. *Electro-Methods, Inc. v. Adolf Meller Co*., No. 3:06 CV 686 (JBA), 2007 U.S. Dist. LEXIS 12011, at *6 n. 6 (D. Conn. Jan. 11, 2007) (finding affidavit required by Local Rule 37(a) unnecessary when documentary evidence demonstrated that counsel attempted to resolve dispute without judicial intervention). Second, even if Universitas failed to comply with Local Rule 37, which it denies, this alone is not justification to deny the motion. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Thus, because Universitas has substantially complied with the requirements set forth in Local Rule 37, this Court should not deny its motion. *See Roe v. Hogan*, No. 2:89-CV-00570 (KAD), 2019 U.S. Dist. LEXIS 184848, at *7 n. 3 (D. Conn. Oct. 25, 2019) (overlooking party's failure to comply with procedural requirements of local rules). To the extent that Universitas has failed to comply with Local Rule 37, Universitas respectfully requests that this Court grant it leave to cure its deficiencies and promptly supplement its filing with an appropriate affidavit.

## CONCLUSION

For the aforementioned reasons, Universitas respectfully requests that the Court grant Universitas' motion for sanctions against the Defendant Trusts and their trustee.

Dated: January 6, 2022

Respectfully submitted,

/S/ Joseph L. Manson III
JOSEPH L. MANSON, III
(*Admitted Pro Hac Vice*)
jmanson@jmansonlaw.com
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693

ATTORNEYS FOR PLAINTIFF
UNIVERSITAS EDUCATION, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of January, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

<u>/s/ Joseph L. Manson III</u>