UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNIVERSITAS EDUCATION, LLC

        *Plaintiff,*

v.

BENISTAR, ET AL.

        *Defendants.*

CASE NO. 3:20-cv-00738-JAM

## PLAINTIFF UNIVERSITAS EDUCATION, LLC'S RESPONSE TO DANIEL CARPENTER'S OBJECTION TO ORDER

COMES NOW, Plaintiff Universitas Education, LLC ("Universitas"), by and through counsel, and files its Response to Daniel Carpenter's ("Carpenter") Objection to Paying Any Sanctions or Attorney's Fees to Universitas ("Objection"). In support of its Response, Universitas alleges as follows:

## INTRODUCTION

This Court is familiar with Mr. Carpenter's decades-long, judicially-determined history of intentional discovery abuses and his willful failure to pay the corresponding sanctions imposed against him and/or his entities. Mr. Carpenter's Objection to this Court's Order requiring him to pay for Universitas's reasonably-incurred attorneys' fees in its attempts to force compliance with this Court's discovery orders is simply another bad-faith attempt to needlessly increase Universitas' attorneys' fees. Mr. Carpenter's Objection is truly remarkable for a number of reasons. Mr. Carpenter lies about the actions he took to comply with this Court's order; contradicts sworn testimony filed by his counsel in this matter; argues that the terms of his probation, which he is actively violating and flaunting before this Court, prevent payment; and suggests that Universitas should have taken no more than three and half hours to research, draft, and argue its motion to compel before this Court. Mr. Carpenter's Objection is frivolous, and this Court should require Mr. Carpenter to pay the full amount requested by Universitas, as well as the fees incurred responding to his frivolous objections.

## STATEMENT OF FACTS

This Court is familiar with the relevant facts underlying this discovery dispute and the sanctions imposed on Mr. Carpenter. Universitas provides only a brief statement of facts to refute certain materially false statements of fact Mr. Carpenter made in his Objection.

First, Mr. Carpenter's suggestion that he has no documents in his possession, custody, and control has already been rejected by this Court, particularly in light of his initial claim that

1

complying with the subpoena would be unduly burdensome. Moreover, his suggestion that Molly Carpenter hired a computer firm to search the BASI server in order to comply with the subpoena directed at Mr. Carpenter when he was threatened with sanctions is false and is further contradicted by sworn testimony from his Counsel.[1] As Mr. Carpenter's counsel, Jeffrey Sandberg, made clear in an affidavit submitted to this Court, the only documents produced to Universitas by Mr. Carpenter were those in Mr. Sandberg's possession, which explicitly does not include documents stored on the BASI server. (Doc. No. 202-1.) As this Court noted, Mr. Carpenter has made "no other effort to find responsive documents from any other lawyer or file system to which he has access," and noted that this Court found Mr. Carpenter to have directly managed many Benistar entities, including some named in the subpoena at issue. (Ruling on Motion for Contempt Sanctions 5-6, Doc. No. 243) (citing *United States v. Carpenter*, 190 F. Supp. 3d 260, 273 (D. Conn. 2016)).

Second, Mr. Carpenter's claims that he has no access to BASI resources or the BASI server are demonstrably false. While Mr. Carpenter claims that he is not allowed access to the server, Mr. Carpenter has been using the email address dcarpenter@usbgi.com since he has been released from prison. In fact, he has been using this email address to direct BASI employees to undertake actions and work on his behalf and on behalf of his shell companies. (Doc. No. 222, 222-1, Ex. 10-11.) Moreover, Mr. Carpenter's claims that he is prevented from accessing documents because he is complying with the terms of his supervised release is self-serving and false. As Universitas has repeatedly demonstrated, Mr. Carpenter is openly flaunting the terms of his supervised release and continuing to control numerous corporate entities and trusts. (*See* Doc. No 222 at 9-10.) Mr.

---

[1] The BASI server was searched to comply with discovery requests served upon Grist Mill Partners, LLC and the Defendant Trusts. These discovery requests were entirely distinct from the subpoena served upon Mr. Carpenter, and the reply from such parties does not constitute compliance from Mr. Carpenter.

2

Carpenter cannot openly flaunt the terms of his supervised release and then claim that these terms prevent him from complying with his legal obligations when it is convenient for him. Notwithstanding the foregoing, this Court has already rejected Mr. Carpenter's argument that he had no access to documents, and thus this argument is irrelevant. (Doc. No. 243 at 4.)

Mr. Carpenter also suggests that any fees incurred on July 14, 2021 are outside the scope of the fee award, as he was required to produce documents by July 15, 2021. Notably, Mr. Carpenter did not produce documents at that time. Rather, Mr. Carpenter submitted his written discovery responses on July 14, 2021. Those discovery responses were demonstrably false, and this Court already found that those responses were made in bad faith and were inconsistent with Mr. Carpenter's arguments in his Motion to Quash. (Doc. No. 243 at 4.) These deficient responses necessitated a response, which counsel for Universitas began researching and drafting on July 14, 2021. Mr. Carpenter continued to make demonstrably false statements and refuse to produce documents, which required continued intervention from the Court, and which required Universitas' counsel to incur fees and costs.

Finally, Mr. Carpenter's argument that Universitas failed to timely file its fee application has already been considered and rejected by this Court. (Doc. No. 243 at 6 n.21.)

## ARGUMENT

Mr. Carpenter's challenge to Universitas's requested legal fees fails because the hours expended in the discovery dispute were reasonable; the hourly rates for all attorneys are reasonable in light of the complexity of the case and the attorneys' experience and ability; and Mr. Carpenter's arguments that he should pay no fees are meritless and have already been rejected by this Court.

**I.     Legal Standard**

In order to calculate reasonable attorneys' fees, a court must calculate a "lodestar figure,"

which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case.² *Stevenson v. Flagstar Bank, FSB*, No. 3:19cv960 (JBA), 2021 U.S. Dist. LEXIS 153571, at *4-*5 (D. Conn. Aug. 16, 2021) (citing *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)); *Chabad Lubavitch of Litchfield Cty., Inc. v. Borough of Litchfield*, 2018 U.S. Dist. LEXIS 86432, at *24-*25 (D. Conn. May 23, 2018) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). The Second Circuit allows for the analysis of some variables in determining the reasonableness of a rate, such as the "novelty and difficulty of the questions and the experience, reputation, and ability of attorneys" to determine whether the fee is presumptively reasonable or if it is clear that a reasonable, paying client would have paid higher rates. *Stevenson*, 2021 U.S. Dist. LEXIS 153571 at *4-*5 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 522 F.3d 182, 191 (2d Cir. 2007)). Courts may also consider, *inter alia*, the time and labor required by the attorney, the amount of skill required to perform the legal services, the attorney's customary hourly rate, and the experience and reputation of the attorney. *Chabad*, 2018 U.S. Dist. LEXIS 86432 at *25-*26.

A district court "retains discretion to determine what constitutes a reasonable fee." *Friedman v. SThree PLC*, 2017 U.S. Dist. LEXIS 149897, at *4 (D. Conn. Sept. 15, 2017) (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011)). This discretion, however, is not "unfettered" and must be reasonable in "terms of the circumstances of each particular case." *Id.* (internal citations and quotations omitted). A district court specifically has discretion in determining the reasonableness of a rate, but should begin generally with "the prevailing market rates in the relevant community." *CSL Silicones, Inc. v. Midsun Grp. Inc.*, 2017 U.S. Dist. LEXIS 59155, at *4 (D. Conn. April 18, 2017) (quoting *Perdue*, 559 U.S. at 551)).

---

² Mr. Carpenter's suggestion that the Second Circuit no longer uses the "lodestar" method to calculate reasonable attorneys fees is incorrect.

4

Hours proffered by counsel are reasonable if "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Perez v. Lazership, Inc.*, 2015 U.S. Dist. LEXIS 166758, at *3 (D. Conn. Dec. 14, 2015) (internal citations omitted). Counsel seeking fees are not required "to record in detail how each minute of time was expended." *Stevenson*, 2021 U.S. Dist. LEXIS 153571, at *3 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). Ultimately, the Court's must do "rough justice, not [] achieve auditing perfection." *Hensley*, 461 U.S. at 437.

II.   **Argument**

a.   The Hourly Rates Charged by Counsel for Universitas are Reasonable.

The relevant hourly rates for counsel for Universitas in this matter are as follow: Joseph Manson – $600; Elizabeth Acee – $400; John McNaughton – $600; Ilan Markus – $530; and Ben Chernow – $400. All of these rates are reasonable in light of the circumstances of the case. Mr. Carpenter suggests that because this Court has previously approved hourly rates for partners of $300 and for associates of $200-$275, that any amount in excess of those rates is presumptively unreasonable and should be rejected by the Court. While this Court has found these rates to be reasonable in other cases, this Court has never suggested that those amounts are a cap on reasonable fees. In fact, this Court has found that significantly higher rates than those proffered by Mr. Carpenter to be reasonable. In *Stevenson*, this Court found that rates of $475 and $300 per hour are in line with what hypothetical clients would have paid. *Stevenson*, 2021 U.S. Dist. LEXIS 153571, at *3. The Court further noted that the District of Connecticut had found rates of $675 and $650 an hour to be reasonable for attorney's that had twenty years of experience. *Id.*

Mr. Manson and Mr. McNaughton, who serves as of-counsel to the Law Offices of Joseph L. Manson III, both have well over thirty-five (35) years of litigation experience at prestigious law

firms. Mr. Manson served as the chairperson of Verner Liipfert Bernhard McPherson and Hand LLP before it merged into DLA Piper, where Mr. Manson became a partner. Mr. Manson was also a partner at Baker Hostetler LLP before starting his own solo practice. Mr. McNaughton served as a partner at Morris Manning & Martin LLP for many years. Their experience and expertise clearly justify their $600 per hour rate. (Decl. of Joseph L. Manson III ¶¶ 5-6.) Mr. Markus and Ms. Acee are partners at Barclay Damon LLP, and are also accomplished attorneys. Their billable rates are also squarely within the reasonable parameters determined by this Court. Mr. Chernow's rate is similarly reasonable in light of the complex factual nature of the case.

To the extent that Mr. Carpenter argues that outside counsel for Universitas must overcome a presumption that Connecticut counsel should have been used exclusively, or that attorneys from the Law Offices of Joseph L. Manson III were required to reduce their rates to the lower end of the spectrum accepted by this Court, this argument also fails. To overcome such a presumption, Universitas must establish that using an out-of-state attorney would produce better results and "make a 'particularized showing' that the selection of counsel was based on experience and objective factors." *CSL Silicones*, 2017 U.S. Dist. LEXIS 59155 at *12 (internal citations omitted). Universitas easily makes this showing. As this Court is aware, this litigation has been ongoing for over a decade, and the factual record is complex, extensive, and spans multiple jurisdictions. This expansive litigation history is a direct result of Mr. Carpenter's attempts to prevent Universitas from realizing its litigation victories through, *inter alia*, bad-faith, obstruction of justice, and contempt of court. In order to properly argue the case, familiarity with the entirety of this litigation history is required, including, in this instance, Mr. Carpenter's history of discovery abuses, where other courts have considered whether he should be held in contempt for identical conduct here. Universitas could not get comparable legal representation in this forum absent a massive amount

of sunk costs associated with Connecticut counsel familiarizing itself with every aspect of the underlying case. (Manson Decl. ¶¶ 10-11.) Thus, it is clear that Universitas would reasonably pay the Law Offices of Joseph L. Manson III's rates in order to maintain a centralized litigation strategy and in order to mitigate the massive costs that would be required for every local counsel in every jurisdiction in which it is litigating to familiarize themselves with the entirety of history of this case. The use of Mr. Manson and his firm is based on these objective considerations and it is clear that this strategy achieves the best results in the most cost-effective manner.

Thus, because this Court has found the rates charged by counsel for Universitas to be reasonable under similar circumstances in other cases, and in light of the circumstances and complexities of this case, this Court should find that the hourly rates from Universitas are reasonable.[3]

b. The Hours Claimed by Universitas are Reasonable.

Mr. Carpenter suggests that the hours claimed by Universitas are improper for two reasons: (1) that the time entries are vague and should therefore be reduced and (2) because too much time was expended on the motion to hold Mr. Carpenter in contempt. First, the time entries provided by Universitas are not vague. Counsel are required keep and present records demonstrating the nature of the work done, the need to perform that work, and the amount of time expended on that work. *Rand-Whitney Containerboard L.P. v. Montville*, 2006 U.S. Dist. LEXIS 75870, at *53 (D. Conn.

---

[3]Moreover, Mr. Carpenter has been found in the District of Connecticut to an obstructionist litigant with a penchant for abusing judicial process and personally attacking his opponents. Consequently, many local attorneys will not participate in cases involving Mr. Carpenter so as to protect themselves from personal attacks and avoid dealing with a litany of unnecessary and frivolous filings and issues. (*See e.g.*, Doc. No. 101 (Carpenter letter threatening Universitas' counsel with disbarment).) Attorneys willing to litigate against Mr. Carpenter expect reasonable compensation for the harassment and nuisance involved in such cases, and if this Court would deny that compensation, it would only further empower Mr. Carpenter and his bad-faith litigation tactics.

Sept. 5, 2006) (internal citations omitted); *see also N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (finding that billing entries should specify the attorney, date, time expended, and the "nature of the work done sufficient to evaluate its appropriateness"). Every time entry provided by Universitas details the date that work was performed, the amount of time to a tenth of an hour spent on that work, the attorney that performed the work, and a description of the work performed, including the document being researched or drafted. (Doc. No. 197-7.) Mr. Carpenter provides no analysis or explanation as to why these entries, which clearly comport with the standards in this district and circuit, are vague and necessitate a rate reduction. They provide more than sufficient information for this Court to determine whether the work done was necessary and proper and to make any adjustments necessary to the lodestar amount calculated.

      Mr. Carpenter also argues that no more than three (3) hours total should have been spent on preparing the motion to hold him in contempt. Mr. Carpenter states that the memorandum recites many years of prior litigation and should simply have said "no responsive documents were provided." Mr. Carpenter's argument is meritless and made in bad faith. The litigation history recited in Universitas's motions was necessary in order to demonstrate Mr. Carpenter's prior noncompliance with discovery and sanctions, as well as to provide evidence that Mr. Carpenter did have access to responsive documents and that his discovery responses were false and made in bad faith. Absent a recitation of the history of this case, including Mr. Carpenter's control over the entities listed in the subpoena, Universitas would have no basis upon which to show Mr. Carpenter should be held in contempt because not possessing responsive document is not, by itself, sufficient to support a finding of contempt. Moreover, Universitas had to demonstrate that it was entitled to a finding of contempt by clear and convincing evidence and the imposition of sanctions, which is

a heavy burden that required ample legal and factual support, all of which had to be compiled and presented to this Court. A total of less than 43 hours over the course of three months to coordinate with Mr. Carpenter's counsel, respond to Mr. Carpenter's facially deficient and false discovery responses, attempt to coordinate with Mr. Carpenter's counsel to schedule a deposition, and draft and finalize a motion for contempt and sanctions is imminently reasonable, particularly in light of the fact that most of the work was performed by Mr. Chernow, who had the lowest billable rate among the attorneys involved. Mr. Carpenter has provided no analysis as to which time entries were excessive, nor has he suggested that any such entries were unnecessary.

Thus, because Universitas has demonstrated that both its rates and the hours expended in this matter were reasonable, Universitas has met its burden in demonstrating it is entitled to the fees it has requested. Mr. Carpenter suggests that because Universitas "lost" most of its motion to hold him in contempt, he should not have to pay fees. Universitas did not lose. This Court has found Mr. Carpenter in contempt, and it has sanctioned him, precisely as Universitas requested. Thus, this argument does not warrant any adjustments.

As none of Mr. Carpenter's arguments are persuasive, there exists no reason to make any further adjustments to the fees requested, and this court should grant Universitas $20,333 in fees and costs for the time between July 14, 2021 and September 6, 2021 for bringing the Motion for Contempt against Mr. Carpenter, and reasonable fees and costs for responding to his objections.

## **CONCLUSION**

For all the aforementioned reasons, this Court should deny Mr. Carpenter's Objection and award Universitas all $20,333 of the attorneys' fees and costs that it seeks as a sanction for Mr. Carpenter's contempt, plus all reasonable fees and costs for responding to his objections.

Dated: April 19, 2022

Respectfully submitted,

/S/ Joseph L. Manson III
JOSEPH L. MANSON, III
(*Admitted Pro Hac Vice*)
jmanson@jmansonlaw.com
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693

ATTORNEYS FOR PLAINTIFF
UNIVERSITAS EDUCATION, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of April, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

/s/ Joseph L. Manson III