**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNIVERSITAS EDUCATION, LLC

*Plaintiff,*

v.

BENISTAR, ET AL.

*Defendant*s.

CASE NO. 3:20-cv-00738-JAM

## PLAINTIFF UNIVERSITAS EDUCATION, LLC'S OPPOSITION TO DEFENDANT TRUSTS' AND GRIST MILL PARTNERS, LLC'S MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

**INTRODUCTION**…………………………………………………………….....1

**FACTUAL BACKGROUND**………………………………………………...2

   **I.**    **Universitas's Judgment and Collection Efforts**…………....................…………..2

   **II.**    **The Role of the Defendant Trusts and GMP in the Benistar Enterprise**…………5

   **III.**    **The Turnover Proceedings and Entry of Judgment Against Various Benistar Entities**......................................................................................................................6

   **IV.**    **The Third Turnover Motion**......................................................................7

   **V.**    **Procedural History**...............................................................................8

**STANDARD** ……………………….................................…………………….9

**ARGUMENT**……………………………………………......……………10

   **I.**    **Res Judicata Does Not Preclude Universitas's Alter Ego or Unjust Enrichment Claims Against GMP and the Defendant Trusts** …………….........................…10

   **II.**    **Universitas Pleads Sufficient Facts to Support an Alter Ego Claim Against the Defendant Trusts.**.....................................................................................17

   **III.**    **Universitas Pleads Sufficient Facts to Support a Claim of Unjust Enrichment Against Both the Defendant Trusts and GMP**........................................19

       a.  *Universitas has Pleaded Sufficient Facts to Support and Unjust Enrichment Claim Against GMP.*.20

       b.  *Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against the Defendant Trusts.*...............................................20

   **IV.**    **The Unjust Enrichment Claim is not Barred by the Statute of Limitations**.......21

   **V.**    **The Complaint is not an Impermissible Shotgun Pleading**...................................22

**CONCLUSION**………………………………….………………….......24

## TABLE OF AUTHORITIES

**Cases**

*Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516 (S.D.N.Y. 2014)......... 11, 16

*Aschcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 9

*Burka v. New York City Transit Auth.*, 32 F.3d 654 (2d Cir. 1994)................................. 11

*Cohen v. Schroeder*, 724 F. App'x 45 (2d Cir. 2018).................................................... 18

*Cornwall Mgmt. Ltd v. Kambolin,* 2015 NY Slip Op 30740(U) (Sup. Ct. N.Y. Cty. Apr. 19, 2015)................................................................................................................. 11

*Embree v. Wyndham Worldwide Corporation*, 779 Fed. Appx. 658 (11th Cir. 2019)................ 23

*Flowers v. Connecticut Light & Power Co.*, No. 21-860-cv, 2021 U.S. App. LEXIS 35105 (2d Cir. Nov. 29, 2021)...................................................................................... 10

*Grist Mill Capital, LLC et al. v. Universitas Educ., LLC*, Nos. 21-2690, 21-2691 (2d Cir. 2021). .......................................................................................................... 4, 13

*Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019)............................................. 9

*Hishon v. King and Spalding*, 467 U.S. 69 (1984) ....................................................... 9

*Horwitt v. Alan L. Sarroff*, 2019 U.S. Dist. LEXIS 24441325 (D. Conn. May 10, 2019)......19, 22

*In re Currency Conversion Fee Antitrust Litigation*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...... 18

*In re Ditech Holding Corp.*, No. 19-01137 (JLG), 2021 Bankr. LEXIS 2998 (Bankr. S.D.N.Y. Oct. 28, 2021)................................................................................................. 9

*In re Extended Stay, Inc.*, 2020 Bankr. LEXIS 2128 (Bankr. S.D.N.Y. 2020)........................... 17

*In re Tronox, Inc.*, 855 F.3d 84 (2nd Cir. 2017) ......................................................... 21

*Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) ........................................ 18

*Jacobson Dev. Grp., LLC v. Grossman*, 198 A.D.3d 956 (N.Y. App. Div. 2021) ...................... 10

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130 (2d Cir. 1993) ............................................ 17

*McArter & English v. Jarrow Formulas, Inc.*, No. 3:19-cv-01124 (MPS), 2020 U.S. Dist. LEXIS 155704 (D. Conn. Aug. 27, 2020 ................................................................................. 23, 24

*Mohamed v. Rajoub*, 767 F. App'x 91 (2d Cir. 2019) .................................................................. 12

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168 (2d Cir. 2008) ............................ 18

*Peacock v. Thomas*, 516 U.S. 349 (1996) .................................................................................... 12

*People ex rel. Spitzer v. Applied Card Sys. Inc.*, 894 N.E.2d 1 (N.Y. 2008) ............................... 10

*Reclaimant Corp. v. Deutsch*, 211 A.3d 976 (Conn. 2019) ................................................... 19, 22

*Schachter v. Sunrise Senior Living Mgmt.*, No. 3:18-cv-00953 (JAM), 2020 U.S. Dist. LEXIS 44964 (D. Conn. March 16, 2020) ...................................................................................... 23

*SDM Holdings, LLC et al. v. Universitas Educ., LLC*, Nos. 21-6044, 21-6049, 21-6133, 21-6134 (10th Cir. 2020) ............................................................................................................ 13

*Sierra Club v. Con-Strux, LLC*, 911 F.3d 85 (2d Cir. 2018) .......................................................... 9

*Skinner v. Chapman*, 489 F. Supp. 2d 298 (W.D.N.Y. 2007) ................................................... 9, 10

*Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375 (4th Cir. 2018) ................................................ 17

*Southern Cal. Alliance of Publicly Owned Treatment Works v. U.S. EPA*, 8 F.4th 831 (9th Cir. 2021) .......................................................................................................................... 21-22

*Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-07235 (LDH)(ST), 2022 U.S. Dist. LEXIS 60895 (E.D.N.Y. Mar. 31, 2022) .................................................................................... 11

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002) .......................................................... 10

*Teamsters Local 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds v. CRL Transp., Inc.*, No. 18-CV-2056 (KMK), 2020 U.S. Dist. LEXIS 116669 (S.D.N.Y. July 2, 2020) .......................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................................ 9

*Town of new Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592 (Conn. 2009) ..................... 19

*United States v. Town of Bolton Landing*, 946 F. Supp. 162 (N.D.N.Y. 1996)...................... 12, 13

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-005-HE (W.D. Okla.)...................... 3, 4

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS
    79295 (S.D.N.Y. June 5, 2012) ......................................................................................... 2

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS
    109077 (S.D.N.Y. Aug. 7, 2014) ....................................................................................... 7

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2015 U.S. Dist. LEXIS
    435 (S.D.N.Y. Jan. 5, 2015) ..................................................................................... 3, 5, 8, 16

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS
    37988 (S.D.N.Y. Mar. 23, 2016) ....................................................................................... 3

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS
    72268 (S.D.N.Y. Mar. 31, 2016) ....................................................................................... 3

*Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000) .................................................. 14

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ...................... 23

*Wells Fargo Bank, N.A. v. Konover*, Case No. 3:05-cv-01924-AWT (D. Conn.)....................... 23

*Wm. Passalacqua Builders, Inc.* v. *Resnick Developers S., Inc.*, 933 F.2d 131 (2d Cir. 1991) ... 11

*Zanghi v. Village of Old Brookville*, 752 F.2d 42 (2d Cir. 1985) ................................................ 13

## **Statutes**

N.Y. C.P.L.R. Section 5225(b) ............................................................................................... 6, 11

## **Rules**

Fed. R. Civ. P. 8(a)(2).......................................................................................................... 10, 22

Fed. R. Civ. P. 69 ................................................................................................... 6

Fed. R. Civ. P. 10(b) ............................................................................................. 22

Fed. R. Civ. P. 12(b)(6)....................................................................................... 9, 10

Plaintiff, Universitas Education, LLC ("Universitas"), by and through counsel, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss First Amended Complaint filed by Grist Mill Partners, LLC ("GMP") and in Opposition to the Motion to Dismiss First Amended Complaint filed by Alliance Charitable Trust, Phoenix Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, and Carpenter Charitable Trust (collectively, the "Defendant Trusts"). In support thereof, Universitas states as follows:

## INTRODUCTION

The instant proceeding is the consequence of over a decade of bad faith litigation efforts undertaken by Daniel E. Carpenter ("Carpenter") and numerous shell companies under his control to prevent Universitas from realizing the fruits of its arbitration and litigation victories against Mr. Carpenter and his companies. For decades, Mr. Carpenter has operated a criminal enterprise comprised of hundred of entities, including GMP and the Defendant Trusts. (First. Amended Compl., Doc. No. 249 ¶ 97.)  The purpose of this enterprise is simple—to render Mr. Carpenter judgment proof and proactively frustrate the judgment collection efforts of his creditors. To that end, Mr. Carpenter has placed his extensive assets into shell companies and various "charitable" trusts, using those assets to fund his personally lavish lifestyle while defrauding his creditors claiming that he remains destitute. (Doc. No. 249 ¶ 104.)

Mr. Carpenter has formed and used these entities, including GMP and the Defendant Trusts to promote fraudulent activity in a common enterprise for the benefit of himself, his family, and his other affiliates. Universitas alleges that both GMP and the Defendant Trusts are sham entities used by Mr. Carpenter to shield his personal assets from creditors. (Doc. No. 249 ¶ 110.) Universitas pleaded extensive facts demonstrating that GMP and the Defendant Trusts operate as alter egos of Mr. Carpenter within a  broader criminal enterprise, including that all Carpenter-

1

affiliated entities operated out of the 100 Grist Mill Road property owned by GMP; that the entities against which the United States District Court for the Southern District of New York entered judgment operated from that address; that the Defendant Trusts, GMP, and all the other Carpenter affiliated entities used a common pool of employees and resources; and many of these entities were directly involved in Mr. Carpenter's criminal conspiracy to steal $30 million in insurance proceeds of which Universitas was the beneficiary. Universitas also sufficiently pleaded that Mr. Carpenter's fraud unjustly enriched GMP and the Defendant Trusts, the latter of which actually received money from an adjudicated judgment debtor. ((Doc. No. 249 ¶¶ 294-315, 342-380.)

The gravamen of the Defendant Trusts' and GMP's Motions to Dismiss is that Universitas's claims are barred by *res judicata* because Universitas could have brought its claims in the 2014 turnover proceedings before the Southern District of New York. The Defendant Trusts and GMP further argue that Universitas fails to state a claim upon which relief can be granted in regard to its unjust enrichment claims. Both these arguments fail. Universitas could not have properly and in good faith have brought its current claims against GMP and the Defendant Trusts in the turnover proceeding, and Universitas has pleaded sufficient facts to state a claim for unjust enrichment.

## FACTUAL BACKGROUND

### I.    Universitas's Judgment and Collection Efforts

The litigation between Universitas and the various Benistar entities began as an arbitration over whether Nova Group, Inc. ("Nova") wrongfully denied Universitas's claim to life insurance proceeds. The arbitration was bifurcated into two phases—phase I concerted whether Universitas was entitled to the insurance proceeds and phase II concerned the liability of other entities and persons should Nova fail to satisfy an award entered in phase I. *Universitas Educ., LLC v. Nova*

*Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS 79295 (S.D.N.Y. June 5, 2012). The phase I arbitration resulted in an arbitrator award to Universitas in excess of $26.5 million. *See id.*

The Defendant Trusts and GMP, *inter alia*, are participants in a criminal enterprise referred to herein as "Benistar," which is controlled by Mr. Carpenter. (Doc. No. 249 ¶¶ 17-22.) The litigation between Universitas and the various Benistar entities began as a proceeding to confirm an arbitration award against Nova Group, Inc. ("Nova"), in which the arbitrator awarded Universitas in excess of $26.5 million. Universitas subsequently obtained a judgment against Nova when the arbitration award was confirmed on June 5, 2012. *See id.* Since the Southern District of New York entered judgment in 2012, Universitas "has been diligently trying to collect its judgment," *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 37988, at *13 (S.D.N.Y. Mar. 23, 2016), but these efforts have been thwarted by the various Benistar entities' "stubborn and baseless efforts to impede Universitas' collection of the judgment." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 72268, at *16 (S.D.N.Y. Mar. 31, 2016).

The Benistar entities' egregious conduct necessitated the filing of additional actions and post-judgment motions in order for Universitas to collect its judgment. Mr. Carpenter's and the Benistar entities' unjustifiable refusal to comply with court orders and pay the judgments against them has proliferated the post-judgment proceedings, leading to Universitas's involvement in several cases across multiple district courts. One such proceeding is a garnishment proceeding in the Western District of Oklahoma against Avon Capital, LLC, which used $6 million in funds stolen from Universitas to buy a portfolio of insurance policies. *See Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-005-HE (W.D. Okla.). Another such proceeding is a pending appeal before the Second Circuit Court of Appeals in which Mr. Carpenter and another Benistar entity

are appealing the denial of a Motion to Reconsider the judgments against them filed over six years after the entry of those judgments, based on meritless and sanctionable arguments. *Grist Mill Capital, LLC et al. v. Universitas Educ., LLC*, Nos. 21-2690, 21-2691 (2d Cir. 2021).

Mr. Carpenter and the Benistar entities, including the Defendant Trusts and GMP, have consciously hindered Universitas's collection efforts through discovery delays and "objectively unreasonable [arguments that] stood no chance of success," such as arguing (i) that the Federal Rules of Civil Procedure violated Benistar's constitutional rights, and (ii) that Universitas failed to satisfy the standard for summary judgment because Benistar's counsel did not read the evidentiary exhibits supporting Universitas' motion. ((*See* Order, *Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-005-HE (July 23, 2019 W.D. Okla.), Doc. No. 158) (affirming Magistrate Judge's decision that post-judgment discovery in accordance with the Federal Rules of Civil Procedure did not violate Benistar's due process rights)); ((Mem. Opp. Summary Judg.) *Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-005-HE (March 12, 2020 W.D. Okla.), Doc. No. 204) (disputing facts in Universitas' motion for summary judgment because "Universitas did not provide a specific page number and [Benistar]'s counsel cannot locate this testimony" in regard to three page exhibit with single page of testimony).) In the present case, Mr. Carpenter has been sanctioned for failing comply with his discovery obligations, and GMP and the Defendant Trusts needlessly delayed the production of clearly relevant documents for over five months after the deadline to produce such documents. (Doc. Nos. 243.) This was the second time Mr. Carpenter was held in contempt for refusing to produce court ordered discovery. Twelve motions filed by Benistar entities were deemed sanctionable by the District Courts, and numerous additional sanctions motions against Benistar remain *sub judice*.

The purpose of this proliferation is to further "increase[] Universitas' legal fees, delay[] Universitas' collection of the judgment and waste[] scarce judicial resources," by re-arguing matters already determined in previous proceedings, such as the applicability of the precedent set forth in *Peacock v. Thomas*. *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2015 U.S. Dist. LEXIS 435 (S.D.N.Y. Jan. 5, 2015). These actions necessitated the filing of the instant action.

## II.     The Role of the Defendant Trusts and GMP in the Benistar Enterprise

GMP is the owner of 100 Grist Mill, the location from which Benistar operated during the relevant time period covered by the Complaint. Every Carpenter-affiliated judgment debtor operated from this address, including GMP and the Defendant Trusts. (Doc. No. 249 ¶ 118.) Carpenter Financial Group, a judgment debtor of Universitas, possesses a 99% ownership interest in GMP. (Doc. No. 249 ¶ 127.)

The Defendant Trusts, nominally charitable remainder trusts, are, or at one time were, the ultimate repository for Mr. Carpenter's assets and the ultimate owners of many of the Benistar entities. Mr. Carpenter uses the Defendant Trusts to shield his assets from creditors, and he exercises complete control over their assets and operation in his capacity as trustee. (Doc. No. 249 ¶¶ 132-137.)  Mr. Carpenter therefore retains equitable ownership over all the assets present in those trusts, including the ownership interests in other Benistar companies. Mr. Carpenter has boasted that at one time the Charitable Trusts possessed assets in excess of ten million dollars. (Doc. No. 249 ¶ 137.) The Defendant Trusts received $1.76 million from Grist Mill Holdings, LLC in November of 2009. Grist Mill Holdings is a judgment debtor of Universitas in the amount of $19 million. (Doc. No. 249 ¶¶ 139-144.)

III.   **The Turnover Proceedings and Entry of Judgment Against Various Benistar Entities.**

Post-judgment discovery then revealed that Daniel Carpenter stole the insurance proceeds, laundered them through his shell companies. and ultimately used the stolen funds, *inter alia*, to purchase an extravagant beachfront vacation property. Universitas thus initially filed two turnover motions to recover the stolen proceeds from certain recipients of these funds. Mr. Carpenter was a named party, and the remaining respondents were sham companies that operated under the Benistar umbrella.

Universitas filed its motion for turnover of assets pursuant to Federal Rule of Civil Procedure 69 ("FRCP") and N.Y. C.P.L.R. Section 5225(b) seeking to invalidate monetary transfers from the Charter Oak Trust, wherein the insurance proceeds owed to Universitas were originally placed, through numerous other Carpenter-controlled Benistar entities. In the first turnover motion, Universitas sought to recover certain insurance proceeds being paid to Moonstone Partners, LLC, the sham company that purchased a beachfront vacation property for the Carpenter family with the insurance proceeds stolen from Universitas

The District Court held a bench trial on May 9, 2013 regarding the first turnover motion. Universitas then filed the second turnover motion in October of 2013. The second turnover motion sought a turnover of assets from Mr. Carpenter and several other Benistar entities, all of which had received stolen insurance proceeds. Universitas did not seek a turnover of assets from GMP or the Defendant Trusts at the time. The District Court subsequently held an evidentiary hearing on

6

November 22, 2013 in regard to a preliminary injunction motion and a hearing on the second turnover motion itself in June of 2014.[1]

GMP eventually became tangentially involved in the proceedings when Curaleaf, a prospective commercial tenant at 100 Grist Mill, requested that the Southern District of New York limit the injunction to allow it to enter into a lease with GMP.[2]

The District Court then entered judgment regarding the second turnover motion on August 7, 2014. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014). The court noted that Mr. Carpenter and the other turnover respondents were jointly and severally liable for "a sum of money equal to the portion of the Insurance Proceeds of which it was a transferee." *Id.* Numerous Turnover Respondents moved for reconsideration of the judgment on September 9, 2014, and claimed that judgment was improper because the Turnover Respondents were not served with process and the District Court lacked personal jurisdiction over the Turnover Respondents.

## IV.    The Third Turnover Motion.

Universitas filed a third turnover motion seeking to collect on life insurance policy proceeds that Grist Mill Trust, another judgment debtor, sought to pay out to the beneficiaries of those policies. The Southern District of New York determined that it could not rule on the motion because the assets sought were too attenuated from the original judgment and arbitration award.

---

[1] The District Court also granted Universitas's Motion for a Preliminary Injunction, which enjoined the transfer of assets between and among the turnover respondents, as well as other entities directly or indirectly affiliated with those Benistar entities.

[2] Notably, the Southern District of New York modified the injunction at the request of Curaleaf and with the express approval of Universitas. The Southern District of New York required that any rents paid by Curaleaf would be subject to the injunction, as GMP was broadly included in the injunction as a company in which Mr. Carpenter had a direct or indirect interest. These rents were never paid to Universitas and did not remain in the possession of GMP pursuant to the injunction.

The Southern District effectively considered the motion to be an alter ego claim, and determined that it was improper to hear the case because "a post-judgment determination that a non-party individual [is] liable for the obligation of the judgment-proof corporate debtor on the basis of veil-piercing [is] beyond the proper scope of ancillary jurisdiction in aid of judgment enforcement." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2015 U.S. Dist. LEXIS 435, *9 (S.D.N.Y. Jan. 5, 2015).

## V.   Procedural History.

Universitas commenced the instant action on May 28, 2020 seeking to impose alter ego liability and constructive trusts on numerous Benistar affiliated entities and individuals. (Compl., Doc. No. 1.) All the named defendants moved to dismiss the Complaint. On March 15, 2021, this Court issued its Memorandum Decision, which dismissed several named defendants, but not the Defendant Trusts or GMP. This Court's dismissed the other defendants because it found that Universitas's claims were barred by the doctrine of *res judicata*, or claim preclusion. On March 22, 2021, Universitas moved for reconsideration of the decision, and also moved to amend its Complaint.

During the pendency of those motions, the Defendant Trusts, GMP, and Universitas engaged in substantial discovery.

On March 16, 2022, this Court denied Universitas's motion for reconsideration, but permitted it to amend its Complaint and replead certain claims, as well as add new claims against new defendants. GMP and the Defendant Trusts now make the same arguments that the dismissed defendants made in 2020—the claims against them are precluded by *res judicata*. While this Court already determined that certain claims against other defendants could have been brought in the Southern District of New York turnover proceedings, GMP and the Defendant Trusts'

circumstances are materially different, and do not necessitate the same result. The Defendant Trusts and GMP's other predicates for dismissal—that the Amended Complaint fails to state claims upon which relief can be granted, that it is an impermissible "shotgun pleading," and that the unjust enrichment claims are simply disguised fraudulent transfer claims are meritless and do not warrant dismissal of the Amended Complaint.

## STANDARD

On a motion to dismiss pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted, the Court should grant the motion only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *E.g. Skinner v. Chapman*, 489 F. Supp. 2d 298 (W.D.N.Y. 2007) (quoting *Hishon v. King and Spalding*, 467 U.S. 69, 73 (1984). The Complaint must contain "sufficient factual matter, accepted as true" to state a "plausible claim [on] its face." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Ditech Holding Corp.*, No. 19-01137 (JLG), 2021 Bankr. LEXIS 2998, at *16-*17 (Bankr. S.D.N.Y. Oct. 28, 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a Rule 12(b)(6) motion, a Court must accept as true factual allegations, even if those allegations may not be factually correct. *E.g. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007).

In addition to the plain factual allegations on the complaint's face, a Court may also consider any documents attached as exhibits to, incorporated by reference in, or that are otherwise integral to the complaint. *See, e.g.*, *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018).

The Court may also consider public documents of which it can take judicial notice, including court filings and decisions. *See, e.g.*, *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

Courts assess the sufficiency of a complaint in light of the pleading requirements set forth in FRCP 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## ARGUMENT

### I. Res Judicata Does not Preclude Universitas's Alter Ego or Unjust Enrichment Claims Against GMP and the Defendant Trusts.

It is appropriate to determine whether a complaint is barred by *res judicata* on a Motion to Dismiss pursuant to FRCP 12(b). *E.g. Skinner*, 489 F. Supp. 2d at 302 (internal citations omitted). *Res judicata* bars future actions between the same parties on the same cause of action where a court entered a valid final judgment. *Jacobson Dev. Grp., LLC v. Grossman*, 198 A.D.3d 956, 959 (N.Y. App. Div. 2021). Under New York law, which this Court has found is applicable in the instant action for purposes of the *res judicata* analysis, *res judicata* bars successive litigation "based on the same transaction or series of connected transactions if:" (1) there "is a judgment on the merits rendered by a court of competent jurisdiction," and (2) the party "against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was . . . ." *People ex rel. Spitzer v. Applied Card Sys. Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008); *Flowers v. Connecticut Light & Power Co.*, No. 21-860-cv, 2021 U.S. App. LEXIS 35105, at *2 (2d Cir. Nov. 29, 2021). New York adheres to a "transactional analysis of res judicata," which bars later claims arising out of the same facts and circumstances as an earlier litigated claim, even where a claimant bases new claims on "different legal theories or seeks dissimilar or additional relief." *Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-07235 (LDH)(ST), 2022 U.S. Dist. LEXIS 60895, at

*12 (E.D.N.Y. Mar. 31, 2022) (quoting *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994)).

In the instant case, Universitas concedes that the Southern District of New York's decision on the merits was a valid and final decision as to the turnover respondents in that case. It is that very judgment Universitas now seeks to enforce. Universitas also concedes that GMP and the Defendant Trusts are in privity with the turnover respondents because it alleges sufficient facts to support the fact that GMP and the Defendant Trusts are alter egos of Mr. Carpenter and the other turnover respondents, which effectively render all the alter egos a single entity for purposes of *res judicata*. *E.g. Wm. Passalacqua Builders, Inc.* v. *Resnick Developers S., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991). Universitas further acknowledges that it is "well-settled" that C.P.L.R. Section 5225(b) can be used both as a "procedural mechanism for attacking a fraudulent conveyance by a judgment debtor," as well as to pierce the corporate veil or assert alter ego liability. *Teamsters Local 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds v. CRL Transp., Inc.*, No. 18-CV-2056 (KMK), 2020 U.S. Dist. LEXIS 116669, at *14 (S.D.N.Y. July 2, 2020).[3] Thus, whether *res judicata* applies depends on whether Universitas could have brought the current claims in the prior litigation and if the Southern District would have been able to hear those claims or exercised its discretion to do so.

Both GMP and the Defendant Trusts contend that Universitas had sufficient knowledge at the time it filed its turnover motions to include the Defendant Trusts and GMP as turnover

---

[3] Universitas does, however, note that there exists no procedural requirement to bring alter ego claims and fraudulent conveyance claims together in a proceeding under N.Y. C.P.L.R. Section 5225(b). Multiple courts have entertained alter ego determinations after a finding of fraudulent conveyance, particularly where plaintiffs discovered new information about alter egos in post-judgment discovery. *E.g. Cornwall Mgmt. Ltd v. Kambolin,* 2015 NY Slip Op 30740(U), at *21-*25 (Sup. Ct. N.Y. Cty. Apr. 19, 2015); *Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516, 523-24 (S.D.N.Y. 2014).

respondents, and that Universitas should have done so. Both GMP and the Defendant Trusts also suggest that the Southern District of New York would have elected to exercise jurisdiction over them based on the that court's reasoning for holding it had personal jurisdiction over the other turnover respondents. While Universitas does not dispute that the Southern District of New York did properly exercise subject matter jurisdiction over the turnover respondents, and that it could properly have exercised diversity jurisdiction had GMP and the Defendant Trusts been part of the proceeding, it does not necessarily follow that the court could have properly exercised personal jurisdiction over the entities.

Nor does it follow that Universitas actually had sufficient information to plead alter ego and fraudulent transfer claims against GMP and the Defendant Trusts in good faith. Absent certain facts that Universitas learned in post-judgment discovery, Universitas did not have a legitimate basis to seek an alter ego determination, or a turnover of moneys and assets conveyed to GMP and the Defendant Trusts by a fraudulent transfer.

First, the Defendant Trusts should be estopped from arguing that *res judicata* applies to them. *Res judicata* only applies to final decisions determined by a court of competent jurisdiction. The Defendant Trusts have previously argued in this very case Mr. Carpenter was a New York resident, which would have prevented a finding of diversity jurisdiction, and that the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996), precluded all of Universitas's turnover claims. While it is axiomatic that that courts cannot simply fabricate equitable grounds to reject the proper application of *res judicata* in a given case, *Mohamed v. Rajoub*, 767 F. App'x 91, 93 (2d Cir. 2019) (internal citations omitted), courts can certainly examine the application of *res judicata* in the context of a given case with an equitable gloss. *United States v. Town of Bolton Landing*, 946 F. Supp. 162, 169 (N.D.N.Y. 1996) ("[R]es judicata is not an inflexible doctrine, and

need not be applied by the court, even if the technical requirements of the doctrine have been met.") (internal citations omitted). Specifically, courts in the Second Circuit have found that courts should not apply *res judicata* if the issue previously decided was one "likely to be taken lightly by one or all the parties." *Bolton Landing*, 946 F. Supp. at 167 (citing *Zanghi v. Village of Old Brookville*, 752 F.2d 42, 46 (2d Cir. 1985)). While findings of jurisdiction are generally not issues to be taken lightly, the litigation actions of the Defendant Trusts and Mr. Carpenter clearly indicate that they have taken and continue to "take lightly" the court's decisions regarding *res judicata*. Currently, Mr. Carpenter and his various entities are appealing the Southern District of New York's findings regarding personal and subject matter jurisdiction in multiple forums,[4] and the Defendant Trusts' radical shift in position regarding jurisdiction makes clear that they continue to take lightly the court's determinations on jurisdiction in a bad-faith and transparent attempt to game the judicial system in their favor. The Defendant Trusts should not be rewarded for advancing their self-serving, moving-target litigation posture, particularly where Mr. Carpenter and his other alter egos refuse to do so elsewhere. While this Court cannot fabricate an equitable principle to deny the proper application of *res judicata*, it can certainly consider the fact that the Carpenter alter egos have clearly always taken their arguments and the court's findings on jurisdiction lightly, while they are making the opposite argument in multiple forums, and decline to apply *res judicata* in that context.

Second, Universitas's alter ego claim (and its unjust enrichment claim) against GMP did not have to be brought at the same time as the turnover motion because the basis for its claim is not predicated on the same transaction or occurrence as the claims against the other turnover

---

[4] *See SDM Holdings, LLC et al. v. Universitas Educ., LLC*, Nos. 21-6044, 21-6049, 21-6133, 21-6134 (10th Cir. 2020); *Grist Mill Capital, LLC et al. v. Universitas Educ., LLC*, Nos. 21-2690, 21-2691 (2d Cir. 2021).

respondents. GMP argues in conclusory fashion that the present action arose from the same underlying facts as the turnover proceeding—the facts surrounding the theft of the insurance proceeds belonging to Universitas. In determining whether two actions arise from the same transaction, a court examines whether the "underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *E.g. Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (internal citations omitted). Both GMP and the Defendant Trusts broadly contend that Universitas's knowledge of their existence and limited information about their financial assets places them in the same position as the other turnover respondents. They both further claim that the alter ego claims currently advanced by Universitas are all derivative of facts adduced in the turnover proceedings.

Universitas does not contest that the interconnected web of Carpenter's shell companies began to unravel in the turnover proceedings, where the Southern District of New York found that Mr. Carpenter exercised control over hundreds of shell entities, nor does it contest the findings that those shell companies were used to conceal assets. The relevant inquiry, however, is whether those findings are all that inform the same transaction or occurrence. They do not. Mr. Carpenter's web of shell companies was established well before he defalcated and concealed the insurance proceeds rightfully belonging to Universitas. Unraveling that organizational structure certainly provided meaningful context in the turnover motions, but it was not the relevant factual nexus. Instead, the relevant factual nexus for purposes of the turnover motion was the actual transfer and concealment of the funds after the funds were stolen.

GMP's argument that Universitas should have brought alter ego claims against it in the turnover motion is based on the fact that Universitas was aware of its existence and engaged with

GMP in the context of the Curaleaf lease. This is insufficient to suggest that claims against GMP were based on the same transaction or occurrence as those against the turnover respondents. GMP concedes it never received any of the stolen insurance proceeds. Such a broad reading of the same transaction or occurrence requirement of *res judicata* cannot be correct. If it was, then Universitas would effectively have been obligated to bring alter ego claims against every single known Carpenter entity—of which the Southern District of New York noted there were hundreds—no matter how attenuated those entities were from the transfer of the insurance proceeds, so long as Mr. Carpenter exercised control over them. This reading is also inconsistent with the requirements that the claims asserted would have formed a convenient trial unit that conformed to the parties' expectations. Such a broad and far-reaching interpretation of the relevant underlying facts explodes the limits of the case and creates a turnover proceeding including hundreds of alter ego respondents, many of which had no discernible connection to the movement of the insurance proceeds at issue in the turnover proceeding. Such a proceeding cannot be considered convenient, nor can it be said to comport with party expectations, especially where Mr. Carpenter and his alter egos have consistently claimed that they are distinct from one another and explicitly agreed to bifurcate the issue of alter ego liability into a separate phase of the proceedings. Thus, even if Universitas knew about GMP and its concealment of assets equitably owned by Mr. Carpenter, it would not have been appropriate at the time to bring claims against it.

GMP also seems to assume that the Southern District of New York would have entertained an alter ego claim against it. This assumption is misplaced. GMP's situation is much more akin to that of Grist Mill Trust in the third turnover proceeding than to the previously dismissed defendants in this matter or the turnover respondents. As Judge Swain noted, "a post-judgment determination that a non-party individual [is] liable for the obligation of the judgment-proof corporate debtor on

the basis of veil-piercing [is] beyond the proper scope of ancillary jurisdiction in aid of judgment enforcement." *Universitas Educ.*, 2015 U.S. Dist. LEXIS 435 at *9. This is precisely the determination that the court would have had to make regarding GMP, which in the absence of conveyances to it specifically, was a third-party against whom the only cause of action would have been one for veil-piercing relating to assets separate from the stolen insurance policies. Thus, it remains clear that even if an independent basis for jurisdiction existed, the Southern District of New York would likely not have exercised its discretion to hear pure alter ego claims against GMP. Thus, *res judicata* remains inapplicable to Universitas's claims against GMP.

The same holds true for the Defendant Trusts. While those trusts may have eventually received funds from another judgment debtor, it is unclear that they were similarly situated to the turnover respondents, which engaged in the movement of funds with the express purpose of concealing them from Universitas. Thus, including them in the turnover proceeding would not have comported with the same transaction requirements of litigation convenience and party expectation, and *res judicata* similarly remains inapplicable. Universitas brought claims against the turnover respondents because they were all directly involved in the theft and concealment of the insurance proceeds. While it later became clear that the entirety of the Benistar enterprise appeared to be alter egos of Mr. Carpenter and each other, that was not a given in 2013. Universitas brought the turnover proceeding against the entities directly involved in the fraudulent conveyances, which formed a convenient trial unit that comported with party expectations, and received judgments against those respondents. It was only after those respondents failed to comply and turn over the assets they possessed that Universitas was forced to seek redress through broader alter ego findings, which are permissible under New York law. *See, e.g.*, *Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516, 523-24 (S.D.N.Y. 2014). Accepting the position of GMP

and the Defendant Trusts would retroactively put an impossible burden on Universitas—initiate a turnover proceeding against hundreds of companies, no matter how attenuated their involvement was, or else be at the mercy of Mr. Carpenter and his shell entities and their open contempt for the judiciary and refusal to comply with court orders and judgments. This cannot and should not be the result.

## II.   Universitas Pleads Sufficient Facts to Support an Alter Ego Claim Against the Defendant Trusts.

This Court has already considered whether Universitas can bring an alter ego claim against the Defendant Trusts. This Court rejected the Defendant Trusts arguments regarding Universitas's alter ego claims and denied its motion to dismiss with regard to the first count. This Court has previously found that the Defendant Trusts are Delaware statutory trusts operating in Connecticut, and Delaware law would apply to the alter ego claims. (Doc. No. 110 at 13) (*quoting Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders")). This Court has also held that in addition to traditional veil piercing, an analysis of the decisions of most courts that have examined the issue signals that Delaware law supports theories of reverse veil-piercing as well. *See* (Doc. No. 110 at 12-18); *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018*); In re Extended Stay, Inc.*, 2020 Bankr. LEXIS 2128, at *118-19 (Bankr. S.D.N.Y. 2020).

Moreover, while claims of fraud are generally subject to the heightened pleading requirements of FRCP 9, that elevated pleading standard is inapplicable in the instant case. This Court has held that because Universitas's alter ego claims hinge on the fraud committed by Mr. Carpenter and his other sham entities, and not on the named Defendants', the heightened pleading requirements of Rule 9 are inapplicable. Doc. No. 110 at 16 (citing *In re Currency Conversion Fee*

*Antitrust Litigation*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003) and *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974)).

Under Delaware law, to prevail on an alter ego claim, a plaintiff must show that an entity and its owner "operated as a single economic entity such that it would be inequitable to uphold a legal distinction between them." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008). Thus, to state an alter ego claim, a plaintiff must show both the operation of a single economic entity and that the owner's actions contained "an overall element of injustice and unfairness." *Cohen v. Schroeder*, 724 F. App'x 45, 47 (2d Cir. 2018).

The entirety of the Defendant Trusts argument supporting their claim that Universitas fails to plead sufficient facts to support a claim for alter ego liability is that Count 1 "consists of only two pages and consists solely of conclusions and is devoid of facts necessary to support an alter ego theory of liability" and that the rest of the allegations "consist of restatements of unsupported legal propositions." (Doc. 257-1 at 15.) The Defendant Trusts egregiously mischaracterize Universitas's First Amended Complaint. Universitas pleads a plethora of facts throughout its First Amended Complaint that demonstrate both a single economic entity and fundamental injustice and unfairness. As to the first prong, Universitas pleads, and multiple other Courts have found, that the Benistar entities, including the Defendant Trusts; disregard corporate formalities, share a common pool of employees and resources; are mere shells that constantly claim insolvency or undercapitalization depending on Mr. Carpenter's arbitrary decisions to move money; are completely dominated by Mr. Carpenter; and that the Benistar entities, and particularly the Defendant Trusts, support Mr. Carpenter personally. (Doc. No. 249 ¶¶ 78, 80, 104, 135.) These factual allegations are more than sufficient to support a claim of alter ego liability at this stage.

18

In regard to the second prong, Universitas's First Amended Complaint is also replete with factual allegations related to the injustice and unfairness prong. Universitas has pleaded that the Defendant Trusts constitute a highly relevant part of the Benistar entity and has also pleaded that they received over $1.75 million from a judgment debtor at a time when Universitas was seeking to recover the insurance benefit. Universitas has further alleged that the Defendant Trusts have been an integral part of the network that is designed to frustrate the collection efforts of creditors, including Universitas. Thus, Universitas has pled sufficient facts to support an alter ego claim and the Defendant Trusts Motion to Dismiss based on failure to state a claim for alter ego liability must be dismissed.

### III.  Universitas Pleads Sufficient Facts to Support a Claim of Unjust Enrichment Against Both the Defendant Trusts and GMP.

A right of recovery under the theory of unjust enrichment is "essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *E.g. Town of new Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592, 609 (Conn. 2009); *Reclaimant Corp. v. Deutsch*, 211 A.3d 976, 990 (Conn. 2019) (finding that unjust enrichment is not a legal claim sounding in tort or contract, but rather an equitable claim for relief). Unjust enrichment is a broad and flexible remedy. *Id.* To recover under a theory of unjust enrichment, a "plaintiff must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for their benefits, and (3) that the failure of the payment was to the plaintiff's detriment. *Id.*; *Horwitt v. Alan L. Sarroff*, 2019 U.S. Dist. LEXIS 24441325, at *45 (D. Conn. May 10, 2019). Put differently, "the remedy of unjust enrichment provides that a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." *Horwitt*, 2019 U.S. Dist. LEXIS 241325 at *45 (internal quotations and citations omitted).

19

a. _Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against GMP._

In the instant action, Universitas has pled sufficient facts to support an unjust enrichment claim against GMP. GMP summarily argues that Universitas has failed to allege any facts that "GMP received any of the stolen life insurance proceeds or derived any benefit therefrom." Doc. No. 262 at 21. While this is correct, GMP is mistaken that this precludes a claim for unjust enrichment. Universitas has alleged that GMP holds nominal title to the property located at 100 Grist Mill, which is in fact equitably owned by Mr. Carpenter. Universitas alleged that GMP's possession of the property at 100 Grist Mill, which is really owned by Mr. Carpenter, constitutes an improper benefit at the expense of Universitas. GMP has maintained that property on Mr. Carpenter's behalf for the entire duration that Universitas has had a judgment against Mr. Carpenter, and has been collecting rents on that property for Mr. Carpenter's benefit. While collecting these rents and maintaining possession of the property, GMP has never made any payments to Universitas, nor has it conferred any other benefit or consideration to Universitas. GMP does not deny these factual allegations. Nor can it. Finally, Universitas has alleged that it has been harmed by GMP's failure to provide it with money, consideration, or other benefits because Universitas still has not recovered most of the money owed to it by Mr. Carpenter and the entities operating out of GMP's property, and has expended considerable resources in its attempts to recover.

b. _Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against the Defendant Trusts._

In the instant action, Universitas has pled sufficient facts to support an unjust enrichment claim against the Defendant Trusts. Universitas has pled facts to demonstrate that the Defendant Trusts benefitted by receiving monetary payments in excess of $1.76 million from a Benistar entity

20

that was later adjudged to be a judgment debtor of Universitas at a time that Universitas was seeking to recover the stolen insurance proceeds. The Defendant Trusts did not return this money to Universitas, and instead retained it for their own benefit, despite the fact that the trustee, Mr. Carpenter, had knowledge of Universitas's pending claims. Universitas has also pled that the Defendant Trusts failed to pay Universitas for the benefits they received. Universitas received no consideration from the Defendant Trusts for the $1.76 million deposited in the Defendant Trusts. In fact, Universitas has pled, and numerous courts have held, that the movement of funds between entities controlled by Mr. Carpenter was designed to prevent Universitas from collecting money rightfully owed to it. The Defendant Trusts point to no benefit conferred on Universitas by them in exchange for their receipt of money from a judgment debtor rightfully belonging to Universitas. Finally, Universitas has pled that the failure of the Defendant Trusts to provide consideration for their ill-gotten gains has caused it harm. Universitas still has not recovered most of the judgment entered against Mr. Carpenter or Grist Mill Holdings, which made the payments to the Defendant Trusts. Thus, Universitas plausibly asserts a claim for unjust enrichment against the Defendant Trusts.

## IV.    The Unjust Enrichment Claim is not Barred by the Statute of Limitations

This Court previously ruled that Universitas's unjust enrichment claims are not barred by any statute of limitations. (Doc. No. 240 at 8.) The Defendant Trusts nonetheless continue to argue that Universitas's unjust enrichment claims are barred by the statute of limitations—this time claiming that the unjust enrichment claims are actually veiled fraudulent transfer claims. The Defendant Trusts note that labels are not conclusive when a court evaluates a pleading and that a court must inquire into the nature of the legal claims asserted and the substance of the allegations. (Doc. No. 257-1 at 15) (citing *In re Tronox, Inc.*, 855 F.3d 84, 100 (2nd Cir. 2017) and *Southern Cal. Alliance*

*of Publicly Owned Treatment Works v. U.S. EPA*, 8 F.4th 831, 835 (9th Cir. 2021)). While this may be correct, such analysis does not necessitate a finding that Universitas's unjust enrichment claims are actually improperly brought fraudulent transfer claims. As an initial matter, fraudulent transfer claims and unjust enrichment claims are not mutually exclusive, and may be brought concurrently. *See, e.g.*, *Horwitt*, 2019 U.S. Dist. LEXIS 241325 at *41-*46 (permitting both fraudulent transfer claims and unjust enrichment claims to proceed against the defendant based on the same transactions). The Defendant Trusts fail to explain in any meaningful way or provide any legal authority that suggests that Universitas must bring a fraudulent conveyance claim instead of a claim for unjust enrichment. As explained, *supra*, Universitas has sufficiently alleged all the elements of an unjust enrichment claim against the trusts. Because claims for unjust enrichment under Connecticut law are not subject to any statute of limitations, *Reclaimant Corp.*, 211 A.3d at 990, Universitas's unjust enrichment claims against the Defendant Trusts should be allowed to proceed.

## V.     The Complaint is not an Impermissible Shotgun Pleading

The Defendant Trusts allege that the First Amended Complaint must be dismissed as an impermissible "shotgun pleading." As stated, *supra*, FRCP 8(a)(2) requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 10(b) provides a technical requirement that the claims or defenses be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Courts have found that "shotgun pleadings," which contain "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," violate these rules because they do not sufficiently apprise defendants of the claims against them or the factual bases upon which those

claims are based. *McArter & English v. Jarrow Formulas, Inc.*, No. 3:19-cv-01124 (MPS), 2020 U.S. Dist. LEXIS 155704, at *12 (D. Conn. Aug. 27, 2020 (quoting *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-22 (11th Cir. 2015). As the *McArter* court noted, "shotgun pleadings" are further "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* (internal citations omitted).

Here, the First Amended Complaint does not constitute a "shotgun pleading" that must be dismissed on that basis. At the outset, Universitas notes that this Court approved the form of the First Amended Complaint when Universitas moved to amend. Courts in this District have also approved of complaints sharing this same structure. *See e.g.*, *Wells Fargo Bank, N.A. v. Konover*, Case No. 3:05-cv-01924-AWT (D. Conn.). Moreover, while the First Amended Complaint contains hundreds of paragraphs of factual allegations and incorporates by reference the paragraphs preceding each count, this does not make the First Amended Complaint a "shotgun pleading." Each individual count sets out the material facts supporting the claim for relief in addition to incorporating the preceding paragraphs. The First Amended Complaint is also organized to describe the actions of each individual defendant, and that organizational scheme is sufficient to apprise the Defendant Trusts of the actions taken by them that constitute the substantive bases for the claims against them. Thus, the Defendant Trusts possess adequate notice of the claims against them.

The Defendant Trusts' reliance on *Schachter v. Sunrise Senior Living Mgmt.*, No. 3:18-cv-00953 (JAM), 2020 U.S. Dist. LEXIS 44964, at *17 (D. Conn. March 16, 2020), is misplaced. While Universitas included all the named defendants together in the alter ego claim, it did not do so indiscriminately, in a conclusory fashion, or without distinguishing their conduct. *Id.* (*citing Embree v. Wyndham Worldwide Corporation*, 779 Fed. Appx. 658, 661 (11th Cir. 2019)).

Universitas carefully detailed all the actions taken by each individual defendants—including noting the exact amount each of the Defendant Trusts received from Grist Mill Holdings—and thoroughly explained the intentionally designed interconnected nature of all the named Benistar defendants, which justified all those entities' inclusion in a single count. The allegations against the Defendant Trusts (as well as the other defendants) are not merely conclusory and instead detail specific actions taken by those Defendant Trusts and Mr. Carpenter. Thus, the First Amended complaint provides "[adequate notice] . . . of the legal claims alleged" against the Defendant Trusts and the "factual grounds upon which those claims rest," and therefore does not constitute an improper "shotgun pleading." *McArter*, 2020 U.S. Dist. LEXIS at *13.

## CONCLUSION

For the aforementioned reasons, Universitas respectfully requests that the Court deny the Defendant GMP's and the Defendant Trusts' motions to dismiss in their entirety.

Dated: June 1, 2022

Respectfully submitted,

/S/ Joseph L. Manson III
JOSEPH L. MANSON, III
(*Admitted Pro Hac Vice*)
jmanson@jmansonlaw.com
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (202) 674-1450

ATTORNEYS FOR PLAINTIFF
UNIVERSITAS EDUCATION, LLC

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of June, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

<u>/s/ Joseph L. Manson III</u>