**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>BENISTAR, ET AL.<br><br>*Defendant*s. | CASE NO. 3:20-cv-00738-JAM |

**<u>PLAINTIFF UNIVERSITAS EDUCATION, LLC'S OPPOSITION TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT FILED BY SEIR HILL PARTNERS, LLC; GREYHOUND PARTNERS, LLC; 1 & 3 MILL POND PARTNERS, LLC; AND BIRCH HILL PARTNERS LLC</u>**

**TABLE OF CONTENTS**

**INTRODUCTION**……………………………………………………………….....1

**FACTUAL BACKGROUND**……………………………………………………...2

    **I.**    **Universitas's Judgment and Collection Efforts**………….....................………….2

    **II.**    **The Turnover Proceedings and Entry of Judgment Against Various Benistar Entities**...............................................................................................................4

    **III.**    **The Role of the Defendants in the Benistar Enterprise**………...................…6

    **IV.**    **Procedural History**.................................................................................................8

**STANDARD** …………………………………………………...………………….9

**ARGUMENT** ……………………………………………………...………………10

    **I.**    **Res Judicata Does Not Preclude Universitas's Alter Ego or Unjust Enrichment Claims Against the Defendants** ……………......................................…10

    **II.**    **Universitas Pleads Sufficient Facts to Support an Alter Ego Claim Against the Mill Pond.**..........................................................................................................18

    **III.**    **Universitas Pleads Sufficient Facts to Support a Claim of Unjust Enrichment Against Both the Defendants**.....................................................................20

        a.    *Universitas has Pleaded Sufficient Facts to Support and Unjust Enrichment Claim Against Seir Hill.*...................................................................................21

        b.    *Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against Birch Hill.*....................................................................................22

        c.    *Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against Greyhound.*.................................................................................23

        d.    *Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against Mill Pond.*....................................................................................24

    **IV.**    **The Unjust Enrichment Claim is not Barred by the Statute of Limitations**........25

    **V.**    **The Complaint is not an Impermissible Shotgun Pleading**...................................26

**CONCLUSION**………………………………………….………………….......28

# TABLE OF AUTHORITIES

## Cases

*Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516 (S.D.N.Y. 2014)......... 11, 18

*Aschcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................ 9

*Burka v. New York City Transit Auth.*, 32 F.3d 654 (2d Cir. 1994)............................................... 10

*Cohen v. Schroeder*, 724 F. App'x 45 (2d Cir. 2018) ...................................................................... 19

*Cornwall Mgmt. Ltd v. Kambolin,* 2015 NY Slip Op 30740(U) (Sup. Ct. N.Y. Cty. Apr. 19,
    2015) ........................................................................................................................................ 11

*Embree v. Wyndham Worldwide Corporation*, 779 Fed. Appx. 658 (11th Cir. 2019) ................. 27

*Flowers v. Connecticut Light & Power Co.*, No. 21-860-cv, 2021 U.S. App. LEXIS 35105 (2d
    Cir. Nov. 29, 2021)................................................................................................................... 10

*Grist Mill Capital, LLC et al. v. Universitas Educ., LLC*, Nos. 21-2690, 21-2691 (2d Cir. 2021)  3

*Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019) ................................................................ 9

*Hishon v. King and Spalding*, 467 U.S. 69 (1984) ........................................................................... 9

*Horwitt v. Alan L. Sarroff*, 2019 U.S. Dist. LEXIS 24441325 (D. Conn. May 10, 2019)...... 21, 25

*In re Currency Conversion Fee Antitrust Litigation*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003)....... 19

*In re Ditech Holding Corp.*, No. 19-01137 (JLG), 2021 Bankr. LEXIS 2998 (Bankr. S.D.N.Y.
    Oct. 28, 2021) ............................................................................................................................ 9

*In re Extended Stay, Inc.*, 2020 Bankr. LEXIS 2128 (Bankr. S.D.N.Y. 2020)............................. 18

*In re Tronox, Inc.*, 855 F.3d 84 (2nd Cir. 2017) .......................................................................... 25

*Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) ...................................................... 19

*Jacobson Dev. Grp., LLC v. Grossman*, 198 A.D.3d 956 (N.Y. App. Div. 2021) ...................... 10

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130 (2d Cir. 1993) ............................................. 18

*McArter & English v. Jarrow Formulas, Inc.*, No. 3:19-cv-01124 (MPS), 2020 U.S. Dist. LEXIS
155704 (D. Conn. Aug. 27, 2020 ................................................................................................. 26

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168 (2d Cir. 2008) ............................ 19

*People ex rel. Spitzer v. Applied Card Sys. Inc.*, 894 N.E.2d 1 (N.Y. 2008) ............................... 10

*Reclaimant Corp. v. Deutsch*, 211 A.3d 976 (Conn. 2019) ................................................... 20, 26

*Schachter v. Sunrise Senior Living Mgmt.*, No. 3:18-cv-00953 (JAM), 2020 U.S. Dist. LEXIS
44964 (D. Conn. March 16, 2020) ............................................................................................... 27

*Sierra Club v. Con-Strux, LLC*, 911 F.3d 85 (2d Cir. 2018) ........................................................ 9

*Skinner v. Chapman*, 489 F. Supp. 2d 298 (W.D.N.Y. 2007) ................................................ 9, 10

*Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375 (4th Cir. 2018) ............................................... 18

*Southern Cal. Alliance of Publicly Owned Treatment Works v. U.S. EPA*, 8 F.4th 831 (9th Cir.
2021) ............................................................................................................................................ 25

*Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-07235 (LDH)(ST), 2022 U.S. Dist. LEXIS
60895 (E.D.N.Y. Mar. 31, 2022) ................................................................................................ 10

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002) ........................................................... 9

*Teamsters Local 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus.
Advancement & Legal Servs. Funds v. CRL Transp., Inc.*, No. 18-CV-2056 (KMK), 2020 U.S.
Dist. LEXIS 116669 (S.D.N.Y. July 2, 2020) ............................................................................. 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .............................................. 9

*Town of new Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592 (Conn. 2009) ..................... 20

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS
79295 (S.D.N.Y. June 5, 2012) ..................................................................................................... 3

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014) ............................................................. 5

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2015 U.S. Dist. LEXIS 435 (S.D.N.Y. Jan. 5, 2015) ....................................................... 3, 4, 17

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 37988 (S.D.N.Y. Mar. 23, 2016) ........................................................... 3

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 72268 (S.D.N.Y. Mar. 31, 2016) ........................................................... 3

*Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000) ............................................. 10, 12

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ...................... 26

*Wells Fargo Bank, N.A. v. Konover*, Case No. 3:05-cv-01924-AWT (D. Conn.) ........................ 27

*Wm. Passalacqua Builders, Inc*. v. *Resnick Developers S., Inc*., 933 F.2d 131 (2d Cir. 1991) ... 11

## Statutes

N.Y. C.P.L.R. Section 5225(b) .................................................................................... 4, 11

## Rules

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 9, 26

Federal Rule of Civil Procedure 69 ................................................................................ 4

FRCP 10(b) ............................................................................................................... 26

FRCP 12(b)(6) ........................................................................................................ 9, 10

Plaintiff, Universitas Education, LLC ("Universitas"), by and through counsel, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss First Amended Complaint filed by Seir Hill Partners, LLC ("Seir Hill") (Doc. No. 291); Birch Hill Partners, LLC ("Birch Hill") (Doc. No. 292); 1& 3 Mill Pond Partners, LLC ("Mill Pond") (Doc No. 293); and Greyhound Partners, LLC ("Greyhound") (Doc. No. 294) (collectively, the "Defendants"). In support thereof, Universitas states as follows:

## INTRODUCTION

The instant proceeding is the consequence of over a decade of bad faith litigation efforts undertaken by Daniel E. Carpenter ("Carpenter") and numerous shell companies under his control to prevent Universitas from realizing the fruits of its arbitration and litigation victories against Mr. Carpenter and his companies. As Universitas has explained in detail previously in this case, Mr. Carpenter controls a highly interconnected network of hundreds of disposable shell companies, which he has used to conceal assets and defraud Universitas and others. (First. Amended Compl., Doc. No. 249 ¶ 97.)  The purpose of this enterprise is simple—to render Mr. Carpenter effectively judgment proof. To that end, Mr. Carpenter has placed his extensive assets into shell companies and various "charitable" trusts, using those assets to fund his personally lavish lifestyle while defrauding his creditors claiming that he remains destitute. (Doc. No. 249 ¶ 104.)

Mr. Carpenter has formed and used these entities, including the Defendants addressed in this Opposition to promote fraudulent activity in a common enterprise for the benefit of himself, his family, and his other affiliates. Universitas alleges that the Defendants are nothing more than sham holding companies intended to hold nominal legal title to assets that are in fact beneficially and equitably owned by Mr. Carpenter and his family. (Doc. No. 249 ¶ 110.) Universitas has pleaded extensive facts demonstrating that the Defendants operate as a single economic entity that

has been unjustly enriched at the expense of Universitas, including that all Carpenter-affiliated entities operated out of the 100 Grist Mill Road property beneficially owned by Mr. Carpenter; that the entities against which the United States District Court for the Southern District of New York entered judgment operated from that address; that the Defendants and all the other Carpenter affiliated entities used a common pool of employees and resources; and many of these entities were directly involved in Mr. Carpenter's criminal conspiracy to steal $30 million in insurance proceeds of which Universitas was the beneficiary. Universitas has sufficiently pleaded facts demonstrating that. ((Doc. No. 249 ¶¶ 228-257, 275-293, 316-341, 361-380.)

The gravamen of the Defendants' Motions to Dismiss is that Universitas's claims are barred by *res judicata* because Universitas could have brought its claims in the 2014 turnover proceedings before the Southern District of New York because it knew about their existences as corporate entities in Mr. Carpenter's network. The Defendants further argue that Universitas fails to state a claim upon which relief can be granted in regard to its unjust enrichment claims, as well as a few ancillary arguments that have already been soundly rejected by this and other Courts. Mill Pond further argues that Universitas has failed to plead sufficient facts to support an alter ego claim. All these arguments fail.

**FACTUAL BACKGROUND**

Universitas has extensively briefed the factual background of this case in its prior motions and pleadings. Thus, Universitas offers a brief recitation of the facts most pertinent to the instant Motions to Dismiss.

**I.      Universitas's Judgment and Collection Efforts**

The Defendants, *inter alia*, are participants in a criminal enterprise referred to herein as "Benistar," which is controlled by Mr. Carpenter. (Doc. No. 249 ¶¶ 17-22.). The litigation between

Universitas and the various Benistar entities began as an arbitration over whether Nova Group, Inc. ("Nova") wrongfully denied Universitas's claim to life insurance proceeds on the life of Sash Spencer ("Spencer Proceeds"). *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS 79295 (S.D.N.Y. June 5, 2012).[1] The arbitration resulted in an arbitrator award to Universitas in excess of $26.5 million. *See id.* Universitas subsequently obtained a judgment against Nova when the arbitration award was confirmed on June 5, 2012. *See id.* Since the Southern District of New York entered judgment in 2012, Universitas "has been diligently trying to collect its judgment," *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 37988, at *13 (S.D.N.Y. Mar. 23, 2016), but these efforts have been thwarted by the various Benistar entities' "stubborn and baseless efforts to impede Universitas' collection of the judgment." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 72268, at *16 (S.D.N.Y. Mar. 31, 2016).

The Benistar entities' egregious conduct and unjustifiable refusal to comply with court orders necessitated the post-judgment proceedings, leading to Universitas's involvement in several cases across multiple district courts. This is one such proceeding. Another such proceeding is a pending appeal before the Second Circuit Court of Appeals in which Mr. Carpenter and another Benistar entity are frivolously appealing the denial of a Motion to Reconsider the judgments filed over six years ago, including by advancing arguments contrary to those being propagated in the instant matter. *Grist Mill Capital, LLC et al. v. Universitas Educ., LLC*, Nos. 21-2690, 21-2691 (2d Cir. 2021).

---

[1] While it is immaterial to the instant Opposition, Universitas does note that the Defendants' assertion that Nova Group, Inc. was the sponsor of an ERISA plan has been rejected both by the arbitrator and by the Southern District of New York. In fact, the Southern District of New York found this argument to be "meritless." 2012 U.S. Dist. LEXIS 79295 at *7.

Mr. Carpenter and the Benistar entities, have consciously hindered Universitas's collection efforts through discovery delays and "objectively unreasonable [arguments that] stood no chance of success. (*See* Order, *Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-005-HE (July 23, 2019 W.D. Okla.), Doc. No. 158) (affirming Magistrate Judge's decision that post-judgment discovery in accordance with the Federal Rules of Civil Procedure did not violate Benistar's due process rights)). Twelve motions filed by Benistar entities were deemed sanctionable by the District Courts, and numerous additional sanctions motions against Benistar and Mr. Carpneter remain *sub judice*.

The purpose of this proliferation is to further "increase[] Universitas' legal fees, delay[] Universitas' collection of the judgment and waste[] scarce judicial resources," by re-arguing matters already determined in previous proceedings, such as the applicability of the precedent set forth in *Peacock v. Thomas. See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2015 U.S. Dist. LEXIS 435 (S.D.N.Y. Jan. 5, 2015). The failure of Mr. Carpenter and the other judgment debtors to comply with their court-ordered obligations and to pay the judgments entered against them necessitated the filing of the instant action.

## II.     The Turnover Proceedings and Entry of Judgment Against Various Benistar Entities.

Post-judgment discovery then revealed that Daniel Carpenter stole the insurance proceeds, laundered them through his shell companies. and ultimately used the stolen funds, *inter alia*, to purchase an extravagant beachfront vacation property. Universitas filed two turnover proceedings to recover the laundered money.

Universitas filed its motion for turnover of assets pursuant to Federal Rule of Civil Procedure 69 ("FRCP") and N.Y. C.P.L.R. Section 5225(b) seeking to invalidate monetary transfers from the Charter Oak Trust, wherein the insurance proceeds owed to Universitas were

originally placed, through numerous other Carpenter-controlled Benistar entities. In the first turnover motion, Universitas sought to recover certain insurance proceeds paid to Moonstone Partners, LLC, the sham company that purchased a beachfront vacation property for the Carpenter family with the insurance proceeds stolen from Universitas.

The District Court held a bench trial on May 9, 2013 regarding the first turnover motion. Universitas then filed the second turnover motion in October of 2013. The second turnover motion sought a turnover of assets from Mr. Carpenter and several other Benistar entities, all of which had received stolen insurance proceeds. Universitas did not seek a turnover of assets from the Defendants at that time. The District Court subsequently held an evidentiary hearing on November 22, 2013 in regard to a preliminary injunction motion and a hearing on the second turnover motion itself in June of 2014.[2]

The District Court then entered judgment regarding the second turnover motion on August 7, 2014. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014). The court noted that Mr. Carpenter and the other turnover respondents were jointly and severally liable for "a sum of money equal to the portion of the Insurance Proceeds of which it was a transferee." *Id.* Numerous Turnover Respondents moved for reconsideration of the judgment on September 9, 2014 and claimed that judgment was improper because the Turnover Respondents were not served with process and the District Court lacked personal jurisdiction over the Turnover Respondents. In September of 2014, Universitas filed restraining notices against Greyhound, Seir Hill, and Birch Hill, seeking to enjoin further transfers

---

[2] The District Court also granted Universitas's Motion for a Preliminary Injunction, which enjoined the transfer of assets between and among the turnover respondents, as well as other entities directly or indirectly affiliated with those Benistar entities.

of assets among the Benistar entities. These restraining notices were renewed in September of 2015.

### III.    The Role of the Defendants in the Benistar Enterprise

Universitas alleges that all of the Defendants are sham holding companies that hold or have held nominal legal title to assets and properties which are in fact beneficially and equitably owned by Mr. Carpenter for his own benefit and the benefit of his family.

Seir Hill owns a property located at 25 Seir Hill Road in Norwalk, Connecticut. Seir Hill is nominally owned and controlled by Molly Carpenter and Caroline Financial Group, Inc., which is one of the key entities in the Benistar criminal enterprise. Seir Hill received $150,000 from Carpenter Financial Group, Inc. ("CFG") on or about December 19, 2012. CFG was the recipient of $11,140,000 of the insurance proceeds stolen from Universitas in late 2009 and is a judgment debtor of Universitas. *Universitas Educ., LLC v. Nova Group, Inc.*, 2014 U.S. Dist. LEXIS 109977, at *10, *29-*34 (S.D.N.Y. Aug. 7, 2014). As the Southern District of New York noted, there existed no credible explanation for the transfers of money to CFG. Similarly, there appears to be no credible explanation of the transfer of funds from CFG to Seir Hill. Upon information and belief, Seir Hill used the money sent by CFG to purchase the property at 25 Seir Hill Road on January 2, 2013, about two weeks after the transfer from CFG. Universitas included Seir Hill in a restraining notice filed on September 24, 2014, more than six weeks after the entry of the Second Turnover Judgment and nearly a year after the Second Turnover Motion was filed, as explained *supra.* Seir Hill operated from 100 Grist Mill Road, which is owned by Grist Mill Partners, LLC another defendant in this matter.

Birch Hill owns a property at 68 Phoenix Street in Vernon, Connecticut. On June 18, 2010, Birch Hill received a transfer of $200,000 from an unknown entity with a bank account at Webster

Bank ending in 1757. Shortly thereafter, on June 22, 2010, Birch Hill purchased property located at 68 Phoenix Street for $180,000, which is less than the amount transferred from the unknown entity. Critically, Mr. Carpenter has testified that Birch Hill was capitalized with funds from an entity he controlled. Birch Hill was established on June 8, 2010, a mere ten days before the transfer of the $200,000 dollars. Moreover, CFG paid Birch Hill $3,000 on August 8, 2010. Birch Hill also operated out of 100 Grist Mill Road. Universitas included Birch Hill in a restraining notice filed on September 24, 2014, more than six weeks after the entry of the Second Turnover Judgment and nearly a year after the Second Turnover Motion was filed

Mill Pond owns the property located at 1 & 3 Mill Pond Lane in Simsbury, Connecticut. While Mill Pond purchased the property at 1& 3 Mill Pond Lane before the defalcation of the Universitas insurance proceeds, Mill Pond itself is primarily owned by CFG, a judgment debtor controlled by Mr. Carpenter. Mr. Carpenter Mill Pond have derived a significant benefit at the expense of Universitas from the ownership if the 1 & 3 Mill Pond Lane property during the time that a judgment was outstanding against Mr. Carpenter and CFG.

Greyhound owns a property located at 84 Lawton Road in Canton, Connecticut. Greyhound purportedly purchased this property on February 28, 2011, after it was incorporated in December of 2010, from the Carpenter Family Trust. It purchased the property for $250,000. Upon information and belief, the entirety of the purchase was secured by a promissory note and the property is secured by a mortgage. Greyhound is owned and managed by Greyhound management Inc., which is jointly owned by Daniel Carpenter and his sister, who has previously attempted to help Mr. Carpenter defraud his judgment creditors. This so-called purchase occurred one month after the January 24, 2011 entry of the arbitration award against Nova Group, Inc. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS 79295

(S.D.N.Y. June 5, 2012). Universitas included Greyhound in a restraining notice filed on September 24, 2014, more than six weeks after the entry of the Second Turnover Judgment and nearly a year after the Second Turnover Motion was filed

**IV.**    **Procedural History.**

Universitas commenced the instant action on May 28, 2020 seeking to impose alter ego liability and constructive trusts on numerous Benistar affiliated entities and individuals. (Compl., Doc. No. 1.) All the named defendants moved to dismiss the Complaint. On March 15, 2021, this Court issued its Memorandum Decision, which dismissed several named defendants. This Court dismissed those defendants because it found that Universitas's claims were barred by the doctrine of *res judicata*, or claim preclusion. On March 22, 2021, Universitas moved for reconsideration of the decision, and also moved to amend its Complaint.

On March 16, 2022, this Court denied Universitas's motion for reconsideration, but permitted it to amend its Complaint and replead certain claims, as well as add new claims against the Defendants. These Defendants now make the same arguments that the dismissed defendants made in 2020— that the claims against them are precluded by *res judicata*—despite the fact that they are not similarly situated to the dismissed entities. As will be explained, *infra*, the Defendants' circumstances are materially different, and do not necessitate the same result. The Defendants' other predicates for dismissal—that the Amended Complaint fails to state claims upon which relief can be granted, that it is an impermissible "shotgun pleading," and that the unjust enrichment claims are simply disguised fraudulent transfer claims are meritless and do not warrant dismissal of the Amended Complaint.

## STANDARD

On a motion to dismiss pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted, the Court should grant the motion only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *E.g. Skinner v. Chapman*, 489 F. Supp. 2d 298 (W.D.N.Y. 2007) (quoting *Hishon v. King and Spalding*, 467 U.S. 69, 73 (1984). The Complaint must contain "sufficient factual matter, accepted as true" to state a "plausible claim [on] its face." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Ditech Holding Corp.*, No. 19-01137 (JLG), 2021 Bankr. LEXIS 2998, at *16-*17 (Bankr. S.D.N.Y. Oct. 28, 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a Rule 12(b)(6) motion, a Court must accept as true factual allegations, even if those allegations may not be factually correct. *E.g. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007).

In addition to the plain factual allegations on the complaint's face, a Court may also consider any documents attached as exhibits to, incorporated by reference in, or that are otherwise integral to the complaint. *See, e.g.*, *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018). The Court may also consider public documents of which it can take judicial notice, including court filings and decisions. *See, e.g.*, *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

Courts assess the sufficiency of a complaint in light of the pleading requirements set forth in FRCP 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

**ARGUMENT**

**I.**     **Res Judicata Does not Preclude Universitas's Alter Ego or Unjust Enrichment Claims Against GMP and the Defendant Trusts.**

It is appropriate to determine whether a complaint is barred by *res judicata* on a Motion to Dismiss pursuant to FRCP 12(b). *E.g. Skinner*, 489 F. Supp. 2d at 302 (internal citations omitted). *Res judicata* bars future actions between the same parties on the same cause of action where a court entered a valid final judgment. *Jacobson Dev. Grp., LLC v. Grossman*, 198 A.D.3d 956, 959 (N.Y. App. Div. 2021). Under New York law, which this Court has found is applicable in the instant action for purposes of the *res judicata* analysis, *res judicata* bars successive litigation "based on the same transaction or series of connected transactions if:" (1) there "is a judgment on the merits rendered by a court of competent jurisdiction," and (2) the party "against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was . . . ." *People ex rel. Spitzer v. Applied Card Sys. Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008); *Flowers v. Connecticut Light & Power Co.*, No. 21-860-cv, 2021 U.S. App. LEXIS 35105, at *2 (2d Cir. Nov. 29, 2021). New York adheres to a "transactional analysis of res judicata," which bars later claims arising out of the same facts and circumstances as an earlier litigated claim, even where a claimant bases new claims on "different legal theories or seeks dissimilar or additional relief." *Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-07235 (LDH)(ST), 2022 U.S. Dist. LEXIS 60895, at *12 (E.D.N.Y. Mar. 31, 2022) (quoting *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994)). However, for a later claim to be barred by *res judicata*, a court must determine that the "underlying facts are related in time, space, origin, or motivation, [that] they form a convenient trial unit, and [that] their treatment as a unit conforms to the parties' expectations." *E.g. Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (internal citations omitted).

In the instant case, Universitas concedes that the Southern District of New York's decision on the merits was a valid and final decision as to the turnover respondents in that case. It is that very judgment Universitas now seeks to enforce. Universitas also concedes that the Defendants are in privity with the turnover respondents because it alleges sufficient facts to support the fact that the Defendants are alter egos of Mr. Carpenter and the other turnover respondents, which effectively render all the alter egos a single entity for purposes of *res judicata*. *E.g. Wm. Passalacqua Builders, Inc*. v. *Resnick Developers S., Inc*., 933 F.2d 131, 142–43 (2d Cir. 1991). Universitas further acknowledges that it is "well-settled" that C.P.L.R. Section 5225(b) can be used both as a "procedural mechanism for attacking a fraudulent conveyance by a judgment debtor," as well as to pierce the corporate veil or assert alter ego liability. *Teamsters Local 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds v. CRL Transp., Inc.*, No. 18-CV-2056 (KMK), 2020 U.S. Dist. LEXIS 116669, at *14 (S.D.N.Y. July 2, 2020).[3] Thus, whether *res judicata* applies depends not only on whether Universitas could have brought the claims in the prior litigation, but whether doing so would have been consistent with the tenets of judicial efficiency and comported to the reasonable expectations of the parties. Universitas contends that none of these circumstances are satisfied, and it would have been improper to have included the Defendants in the Second Turnover motion as respondents.

The Defendants effectively argue that Universitas knew of their existence at the time that it filed its Second Turnover motion. Thus, according to Defendants, it follows that the mere

---

[3] Universitas does, however, note that there exists no procedural requirement to bring alter ego claims and fraudulent conveyance claims together in a proceeding under N.Y. C.P.L.R. Section 5225(b). Multiple courts have entertained alter ego determinations after a finding of fraudulent conveyance, particularly where plaintiffs discovered new information about alter egos in post-judgment discovery. *E.g. Cornwall Mgmt. Ltd v. Kambolin,* 2015 NY Slip Op 30740(U), at *21-*25 (Sup. Ct. N.Y. Cty. Apr. 19, 2015); *Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516, 523-24 (S.D.N.Y. 2014).

knowledge of their existence was sufficient to name them as turnover respondents. The Defendants also suggest that the Southern District of New York would have elected to exercise jurisdiction over them based on the that court's reasoning for holding it had personal jurisdiction over the other turnover respondents. While Universitas does not dispute that the Southern District of New York did properly exercise subject matter and personal jurisdiction over the turnover respondents, and that it could properly have exercised diversity jurisdiction had Defendants been part of the proceeding, it does not necessarily follow that the court could have properly exercised personal jurisdiction over the entities. Moreover, it certainly does not follow that Universitas would have had sufficient information at the time of the filing of the Second Turnover Motion to plead claims against the Defendants in good faith.

Universitas's unjust enrichment claims against the Defendants (and its alter ego claim against Mill Pond) did not have to be brought at the same time as the turnover motion because the basis for its claims is not predicated on the same transaction or occurrence as the claims against the other turnover respondents. The Defendants argue in conclusory fashion that the present action arose from the same underlying facts as the turnover proceeding—the facts surrounding the theft of the insurance proceeds belonging to Universitas. As explained above, a party pleading a *res judicata* defense must demonstrate that the "underlying facts [of the two claims] are related in time, space, origin, or motivation, [that] they form a convenient trial unit, and [that] their treatment as a unit conforms to the parties' expectations." *E.g. Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (internal citations omitted).

The Defendants broadly contend that Universitas's knowledge of its existence and limited information about their financial assets places them in the same position as the other turnover

12

respondents. They further claim that any unjust enrichment or alter ego claims currently advanced by Universitas are all derivative of facts adduced in the turnover proceedings.

Universitas does not contest that the interconnected web of Carpenter's shell companies began to unravel in the turnover proceedings, where the Southern District of New York found that Mr. Carpenter exercised control over hundreds of shell entities, nor does it contest the findings that those shell companies were used to conceal assets. The relevant inquiry, however, is whether those findings are all that inform the same transaction or occurrence. They do not. Mr. Carpenter's web of shell companies was established well before he defalcated and concealed the insurance proceeds rightfully belonging to Universitas. Unraveling that organizational structure certainly provided meaningful context in the turnover motions, but it was not the relevant factual nexus. Instead, the relevant factual nexus for purposes of the turnover motion was the actual transfer and concealment of the funds after the funds were stolen.

Seir Hill, Birch Hill, and Greyhound all argue that Universitas knew of their existence at the time that the Second Turnover Motion was filed and that Universitas was obligated to include them in that request for relief. This argument fails on numerous grounds. First, Seir Hill, Birch Hill, and Greyhound all allege that Universitas knew of their existence prior to the filing of the Second Turnover Motion by pointing to restraining orders submitted to them in September of 2014. Universitas filed its Second Turnover Motion in October of 2013, and Judgment was entered in August of 2014. Seir Hill, Birch Hill, and Greyhound further contend that a supplemental declaration from Universitas's counsel filed in September of 2015 renaming them as entities in the original restraining notices supports the assertion that Universitas knew of their existence in October of 2013. This is hopelessly insufficient to support a finding that the claims asserted in the instant action are barred by *res judicata*. Seir Hill, Birch Hill, and Greyhound do not offer a

scintilla of evidence that Universitas knew of their existence prior to September of 2014, nearly a year after the filing of the Second Turnover Motion. If they lack the evidence to even demonstrate Universitas's knowledge of their existence prior to 2014, they simply cannot prevail on their motion. To the extent that Seir Hill, Birch Hill, and Greyhound point to their online incorporation information, they do not allege any facts that demonstrate that Universitas was aware of this information at the time it brought its Second Turnover Motion.

Assuming, *arguendo*, that Universitas did in fact know of the existence of Seir Hill, Birch Hill, and Greyhound at the time of the initiation of the Second Turnover proceeding, this information alone does not suffice to support the claim that the instant action is barred by *res judicata*. Nor do Seir Hill, Birch Hill, and Greyhound's conclusory allegations that Universitas's unjust enrichment claims "arise[] from the same 'transaction or series of transactions[]' as those advanced in the 2014 Turnover proceeding." (*See, e.g.*, Doc. No. 292-1 at 11.) They do not. The Second turnover proceeding narrowly focused on the entities that were actual recipients of the stolen insurance proceeds, and the path of fraudulent transfers that the proceeds took through the entities in the Benistar criminal enterprise. Seir Hill, Birch Hill, and Greyhound were not a part of that chain. Instead, as explained, *supra*, they all nominally hold title to property held for the beneficial interest of other Judgment Debtors. Even if they were recipients of the Spencer Proceeds, Universitas lacked sufficient evidence to demonstrate, in good faith, that any of these entities received all or part of the Spencer Proceeds. Instead, as is demonstrated by the language of the restraining notices, the restraining notices against Seir Hill, Birch Hill, and Greyhound were predicated on the fact that "it appear[ed] that [they] owe[d] a debt to one or more of the Judgment Debtors, or are in possession of property in which one or more of the Judgment Debtors has an interest." (*E.g.* Doc. No. 291-2 at 2.) Thus, these antecedent debts or property interests are wholly

distinct from the transfer of the Spencer Proceeds through the Judgment Debtors in the Second Turnover proceeding, and do not constitute the same "transaction or series of transactions."

While Universitas appeared to have had some knowledge of Mill Pond prior to filing the Second Turnover Motion, that knowledge is insufficient to support a finding that Universitas needed to include Mill Pond in the Turnover Proceeding. In April of 2013, Universitas filed a letter from Mr. Carpenter to the Washington Trust Company which noted that Grist Mill Partners purchased the 1 & 3 Mill Pond Road property. (Doc. No 293-2 at 1.) Critically, there was no mention of 1 & 3 Mill Pond Partners as a separate limited liability company that purchased the property at 1 & 3 Mill Pond Road. The letter later states that "1 & 3 Mill Pond finances a $1,000,000 dollar mortgage, but receives over $20,000 a month in rent." (Doc. No 293-2 at 2.) Thus, it appears as though Mill Pond is a separate entity, but the letter does not make that clear. Thus, even if Universitas was aware of the letter, it does not conclusively suggest that it understood that Mill Pond was a separate entity. However, even if it did, it does not follow that it should have properly included Mill Pond as a Turnover Respondent. There is no indication that Mill Pond ever received any of the Spencer Proceeds, or that it was otherwise involved with the other Turnover Respondents. Thus, Mill Pond fails to prove that the circumstances of Mill Pond satisfied the same transaction or occurrence requirement of *res judicata*.

The impermissibly broad reading of the same transaction or occurrence requirement of *res judicata* advanced by the Defendants cannot be correct. If it was, then Universitas would effectively have been obligated to bring alter ego claims against every single known Carpenter entity—of which the Southern District of New York noted there were hundreds—no matter how attenuated those entities were from the transfer of the insurance proceeds, so long as Mr. Carpenter exercised control over them. This reading is also inconsistent with the requirements that the claims

asserted would have formed a "convenient trial unit" that conformed to the "parties' expectations." In fact, none of the Defendants suggest that including them in the Second Turnover proceeding would have furthered the interest of judicial economy or provided a convenient trial unit for the Southern District of New York to dispense with the claims against the Carpenter alter egos. Nor do the Defendants suggest that bringing all these entities (as well as the Charitable Trusts named in this matter and Grist Mill Partners, LLC) would have comported to the expectations of the parties. Nor can they, as they would have been hauled into court despite having only the most attenuated connection, if any at all, to the Spencer Proceeds. Such a broad and far-reaching interpretation of the relevant underlying facts explodes the limits of the case and creates a turnover proceeding including hundreds of alter ego respondents, many of which had no discernible connection to the movement of the insurance proceeds at issue in the turnover proceeding. Such a proceeding cannot be considered convenient, nor can it be said to comport with party expectations, especially where Mr. Carpenter and his alter egos have consistently claimed that they are distinct from one another and explicitly agreed to bifurcate the issue of alter ego liability into a separate phase of the proceedings. Thus, even if Universitas knew about the Defendants and their nominal title to assets equitably owned by Mr. Carpenter, it would not have been appropriate at the time to bring claims against them.

The Defendants also seem to incorrectly assume that the Southern District of New York would have entertained alter ego claims against them. This assumption is misplaced. The Defendants' circumstances are much more akin to that of Grist Mill Trust in a third turnover proceeding than to the previously dismissed defendants in this matter or the turnover respondents. The Southern District of New York determined that it could not rule on the Third Turnover motion because the assets sought were too attenuated from the original judgment and arbitration award.

16

The Southern District effectively considered the motion to be an alter ego claim, and, quoting *Peacock v. Thomas*, 516 U.S. 349 (1996) determined that it was improper to hear the case because "a post-judgment determination that a non-party individual [is] liable for the obligation of the judgment-proof corporate debtor on the basis of veil-piercing [is] beyond the proper scope of ancillary jurisdiction in aid of judgment enforcement." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2015 U.S. Dist. LEXIS 435, *9 (S.D.N.Y. Jan. 5, 2015).

This is precisely the determination that the court would have had to make regarding the Defendants which in the absence of conveyances to it specifically, were third parties against whom the only cause of action would have been one for veil-piercing relating to assets separate from the stolen insurance policies. Thus, it remains clear that even if an independent basis for jurisdiction existed, the Southern District of New York would likely not have exercised its discretion to hear pure alter ego claims against the Defendants. Thus, *res judicata* remains inapplicable to Universitas's claims against Defendants.

To the extent that the Defendants claim that the restraining orders entered against them and the Court orders extending those restraining orders inform this Court's determination of *res judicata*, they are also mistaken. The restraining orders at best were part of a tangential attempt at garnishment, and no final decisions on the merits were made regarding Universitas's entitlement to assets held by the Defendants against whom it sought restraining orders. Thus, these limited ancillary proceedings do not mandate a finding that further action against the Defendants is barred by *res judicata.*

Universitas brought claims against the turnover respondents because they were all directly involved in the theft and concealment of the insurance proceeds. While it later became clear that the entirety of the Benistar enterprise appeared to be alter egos of Mr. Carpenter and each other,

that was not a given in 2013. Universitas brought the turnover proceeding against the entities directly involved in the fraudulent conveyances, which formed a convenient trial unit that comported with party expectations and received judgments against those respondents. It was only after those respondents failed to comply and turn over the assets they possessed that Universitas was forced to seek redress through broader alter ego findings, which are permissible under New York law. *See, e.g.*, *Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516, 523-24 (S.D.N.Y. 2014). Accepting the position of the Defendants would retroactively put an impossible burden on Universitas—initiate a turnover proceeding against hundreds of companies, no matter how attenuated their involvement was, or else be at the mercy of Mr. Carpenter and his shell entities and their open contempt for the judiciary and refusal to comply with court orders and judgments. Once again, as explained in its Opposition to the Motions to dismiss filed by Grist Mill Partners and the Defendant Charitable Trusts, this cannot and should not be the result.

## II.   Universitas Pleads Sufficient Facts to Support an Alter Ego Claim Against the Mill Pond.

This Court has previously found that Mill Pond is a Delaware entity operating in Connecticut, and Delaware law would apply to the alter ego claims. (Doc. No. 240 at 11) (*citing Universitas Educ., LLC v. Benistar*, 2021 WL 965794, at *1–2 (D. Conn. 2021)); *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders")). This Court has also held that in addition to traditional veil piercing, an analysis of the decisions of most courts that have examined the issue signals that Delaware law supports theories of reverse veil-piercing as well. *See* (Doc. No. 110 at 12-18); *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018*); In re Extended Stay, Inc.*, 2020 Bankr. LEXIS 2128, at *118-19 (Bankr. S.D.N.Y. 2020).

18

Moreover, while claims of fraud are generally subject to the heightened pleading requirements of FRCP 9, that elevated pleading standard is inapplicable in the instant case. This Court has held that because Universitas's alter ego claims hinge on the fraud committed by Mr. Carpenter and his other sham entities, and not on the named Defendants,' the heightened pleading requirements of Rule 9 are inapplicable. Doc. No. 110 at 16 (citing *In re Currency Conversion Fee Antitrust Litigation*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003) and *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974)).

Under Delaware law, to prevail on an alter ego claim, a plaintiff must show that an entity and its owner "operated as a single economic entity such that it would be inequitable to uphold a legal distinction between them." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008). Thus, to state an alter ego claim, a plaintiff must show both the operation of a single economic entity and that the owner's actions contained "an overall element of injustice and unfairness." *Cohen v. Schroeder*, 724 F. App'x 45, 47 (2d Cir. 2018).

The entirety of Mill Pond's argument supporting their claim that Universitas fails to plead sufficient facts to support a claim for alter ego liability is that Count 1 "consists of only two pages and consists solely of conclusions and is devoid of facts necessary to support an alter ego theory of liability" and that the rest of the allegations "consist of restatements of unsupported legal propositions." (Doc. 293-1 at 8.) Mill Pond egregiously mischaracterizes Universitas's First Amended Complaint. Universitas pleads a plethora of facts throughout its First Amended Complaint that demonstrate both a single economic entity and fundamental injustice and unfairness. As to the first prong, Universitas pleads, and multiple other Courts have found, that the Benistar entities, which include Mill Pond in light of its indisputable connections to Mr. Carpenter: disregard corporate formalities, share a common pool of employees and resources; are mere shells

19

that constantly claim insolvency or undercapitalization depending on Mr. Carpenter's arbitrary decisions to move money; are completely dominated by Mr. Carpenter; and that the Benistar entities, including Mill Pond, possess assets that are actually owned and controlled by Mr. Carpenter in an attempt to shield them from his judgment creditors. (Doc. No. 249 ¶¶ 78, 80, 104, 135.) These factual allegations are more than sufficient to support a claim of alter ego liability at this stage.

In regard to the second prong, Universitas's First Amended Complaint is also replete with factual allegations related to the injustice and unfairness prong. Universitas has pleaded that the Mill Pond constitute a highly relevant part of the Benistar network and has also pleaded that it possesses valuable assets that are controlled by Mr. Carpenter and his family. In fact, during the pendency of the Motion to Amend (Doc. No. 118), Mr. Carpenter and his wife sold off the property controlled by Mill Pond, clearly for their own personal benefit. Universitas has further alleged that Mill Pond has been an integral part of the network that is designed to frustrate the collection efforts of creditors, including Universitas. Thus, Universitas has pled sufficient facts to support an alter ego claim and Mill Pond's Motion to Dismiss based on failure to state a claim for alter ego liability must be denied.

### III.   Universitas Pleads Sufficient Facts to Support a Claim of Unjust Enrichment Against All the Defendants.

A right of recovery under the theory of unjust enrichment is "essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *E.g. Town of new Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592, 609 (Conn. 2009); *Reclaimant Corp. v. Deutsch*, 211 A.3d 976, 990 (Conn. 2019) (finding that unjust enrichment is not a legal claim sounding in tort or contract, but rather an equitable claim for relief). Unjust enrichment is a broad and flexible remedy. *Id.* To

recover under a theory of unjust enrichment, a "plaintiff must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for their benefits, and (3) that the failure of the payment was to the plaintiff's detriment. *Id.*; *Horwitt v. Alan L. Sarroff*, 2019 U.S. Dist. LEXIS 24441325, at *45 (D. Conn. May 10, 2019). Put differently, "the remedy of unjust enrichment provides that a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." *Horwitt*, 2019 U.S. Dist. LEXIS 241325 at *45 (internal quotations and citations omitted).

> a. *Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against Seir Hill.*

In the instant action, Universitas has pled sufficient facts to support an unjust enrichment claim against Seir Hill. Seir Hill summarily argues that Universitas has failed to allege any facts beyond the fact that Seir Hill "received $150,000 and is a sham entity." (Doc. No. 291-1 at 17.) Seir Hill further claims that Universitas fails to address the elements of an unjust enrichment claim and does not allege that Seir Hill's possession of property was to Universitas's detriment. Seir Hill is mistaken. Universitas has alleged Seir Hill benefitted from the receipt of $150,000 from CFG in December of 2012. CFG is a judgment debtor and Universitas possesses a judgment in excess of $11 million against CFG. CFG received Spencer Proceeds before it made any payments to Seir Hill, and thus a claim against CFG was already viable at the time CFG transferred the funds to Seir Hill. Universitas further alleges that those funds were used to purchase the property at 25 Seir Hill Road, which has a mortgage guaranteed by Benistar Administrative Services, Inc. Thus, Universitas clearly alleges that Seir Hill was enriched at its expenses as it used money rightfully belonging to Universitas to purchase a property for its own benefit and the benefit of Mr. Carpenter in a scheme to divert assets and prevent Universitas from recovering. Universitas's allegations in the First Amended Complaint further make clear that Seir Hill has never made any payments to

Universitas, nor has it conferred any other benefit or consideration to Universitas. Seir Hill does not deny these factual allegations and does not provide any explanation of a benefit it conferred upon Universitas. Nor can it. Finally, Universitas has alleged that it has been harmed by Seir Hill's failure to provide it with money, consideration, or other benefits because Universitas still has not recovered most of the money owed to it by Mr. Carpenter and CFG and has expended considerable resources in its attempts to recover. Thus, Universitas has stated a plausible unjust enrichment claim against Seir Hill.

      b. _Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against Birch Hill._

In the instant action, Universitas has pled sufficient facts to support an unjust enrichment claim against Birch Hill. Universitas has pled facts to demonstrate that Birch Hill received $200,000 from an entity controlled by Mr. Carpenter in June of 2010, at a time that Mr. Carpenter was aware that Universitas was asserting its right to the Spencer Proceeds in arbitration. Birch Hill, which is controlled by Mr. Carpenter had constructive knowledge that the transfer of the funds was intended to divert assets from Mr. Carpenter and other judgment creditors. Universitas further alleges that Birch Hill benefitted from the transfer of money that was properly the subject of litigation and to which Universitas may have been entitled. Furthermore, Universitas properly alleges that Birch Hill benefitted from the acquisition of the property at 68 Phoenix Street for its own use and gain. Universitas received no consideration from Birch Hill for the $200,000 received by Birch Hill at the time that the arbitration was pending. In fact, Universitas has pled, and numerous courts have held, that the movement of funds between entities controlled by Mr. Carpenter was designed to prevent Universitas from collecting money rightfully owed to it. Birch Hill points to no benefit conferred on Universitas by them in exchange for their receipt of money from a putative judgment debtor rightfully belonging to Universitas. Finally, Universitas has pled

22

that the failure of Birch Hill to provide consideration for its ill-gotten gains has caused it harm because Universitas still has not recovered most of the judgment entered against Mr. Carpenter or the other Judgment Debtors, which on information and belief transferred the $200,000 to Birch Hill. Thus, Universitas has stated a plausible unjust enrichment claim against Birch Hill.

  *c.*  *Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against Greyhound.*

   In the instant action, Universitas has pled sufficient facts to support an unjust enrichment claim against Greyhound. Universitas has pled facts to demonstrate that Greyhound received $250,000 from the Carpenter Family Trust in February of 2012, one month after the arbitration award was entered against Nova Group, Inc. While Greyhound contends that it exists solely for the innocuous purpose of estate planning, the timing of the transfer makes clear that it was in response to the entry of the award. Mr. Carpenter's suggestion that this planning was related to the passing of his mother, is unpersuasive. The passing of Mr. Carpenter's mother in October of 2012 was certainly a tragic event, and Universitas does not suggest otherwise. However, Universitas respectfully suggests that the explanation offered by Greyhound as a prospective estate planning does not withstand scrutiny in light of the timing of the transfer and Mr. Carpenter's history of fraud. Nor does the purported involvement of his family members, who, as explained in the First Amended Complaint, have been at times complicit in Mr. Carpenter's attempts to hide assets. Thus, Universitas has plausibly alleged that Greyhound was benefitted at Universitas's expense, as it received funds controlled by Mr. Carpenter directly after the entry of the arbitration award, at a time that Mr. Carpenter knew further litigation was forthcoming from Universitas. Furthermore, Universitas properly alleges that Greyhound benefitted from the acquisition of the property at 84 Lawton Road for its own use and gain. Universitas received no consideration from Greyhound for the $250,000 received by Greyhound immediately after an arbitration award was entered. In fact,

Universitas has pled, and numerous courts have held, that the movement of funds between entities controlled by Mr. Carpenter was designed to prevent Universitas from collecting money rightfully owed to it. Greyhound points to no benefit conferred on Universitas by it in exchange for its receipt of money from a putative judgment debtor rightfully belonging to Universitas. Finally, Universitas has pled that the failure of Greyhound to provide consideration for its ill-gotten gains has caused it harm because Universitas still has not recovered most of the judgment entered against Mr. Carpenter or the other Judgment Debtors, which on information and belief transferred the $200,000 to Greyhound. Thus, Universitas has stated a plausible unjust enrichment claim against Greyhound.

   d.   *Universitas has Pleaded Sufficient Facts to Support an Unjust Enrichment Claim Against Mill Pond.*

In the instant action, Universitas has pled sufficient facts to support an unjust enrichment claim against Mill Pond. Mill Pond summarily argues that Universitas has failed to allege facts, "much less sufficient facts to support the elements of the unjust enrichment claim." (Doc. No. 293-1 at 7 (internal quotations omitted).) Mill Pond's assertions are incorrect. Universitas has alleged that Mill Pond has benefitted from its ownership of the property at 1&3 Mill Pond Lane, which Mill Pond has indicated received rent payments in excess of $20,000 at various points. Mill pond is predominantly owned by CFG, which is a judgment debtor and Universitas possesses a judgment in excess of $11 million against CFG. CFG continued to control Mill Pond during the pendency of the arbitration and subsequent litigation, and the rent payments made to Mill Pond were beneficially held on behalf of CFG and Mr. Carpenter. Thus, Mill Pond was receiving rent payments, which were in fact the property of CFG at a time when Universitas had a claim against CFG and at a time when Universitas had a judgment against CFG. Thus, Universitas clearly alleges that Mill Pond was enriched at its expenses as it received and held money rightfully belonging to

Universitas to maintain a property for its own benefit and the benefit of Mr. Carpenter in a scheme to divert assets and prevent Universitas from recovering. Universitas's allegations in the First Amended Complaint further make clear that Mill Pond has never made any payments to Universitas, nor has it conferred any other benefit or consideration to Universitas. Mill Pond does not deny these factual allegations and does not provide any explanation of a benefit it conferred upon Universitas. Finally, Universitas has alleged that it has been harmed by Mill Pond's failure to provide it with money, consideration, or other benefits because Universitas still has not recovered most of the money owed to it by Mr. Carpenter and CFG and has expended considerable resources in its attempts to recover. Thus, Universitas has stated a plausible unjust enrichment claim against Mill Pond.

IV.     **The Unjust Enrichment Claim is not Barred by the Statute of Limitations**

This Court previously ruled that Universitas's unjust enrichment claims are not barred by any statute of limitations. (Doc. No. 240 at 8.) The Defendants nonetheless continue to argue that Universitas's unjust enrichment claims are barred by the statute of limitations—this time claiming that the unjust enrichment claims are actually veiled fraudulent transfer claims. The Defendants note that labels are not conclusive when a court evaluates a pleading and that a court must inquire into the nature of the legal claims asserted and the substance of the allegations. (*E.g.* Doc. No. 293-1 at 8) (citing *In re Tronox, Inc.*, 855 F.3d 84, 100 (2nd Cir. 2017) and *Southern Cal. Alliance of Publicly Owned Treatment Works v. U.S. EPA*, 8 F.4th 831, 835 (9th Cir. 2021)). While this may be correct, such analysis does not necessitate a finding that Universitas's unjust enrichment claims are actually improperly brought fraudulent transfer claims. As an initial matter, fraudulent transfer claims and unjust enrichment claims are not mutually exclusive and may be brought concurrently. *See, e.g.*, *Horwitt*, 2019 U.S. Dist. LEXIS 241325 at *41-*46 (permitting both fraudulent transfer

claims and unjust enrichment claims to proceed against the defendant based on the same transactions). The Defendants fail to meaningfully address or provide any legal authority that suggests that Universitas must bring a fraudulent conveyance claim instead of a claim for unjust enrichment. As explained, *supra*, Universitas has sufficiently alleged all the elements of an unjust enrichment claim against the trusts. Because claims for unjust enrichment under Connecticut law are not subject to any statute of limitations, *Reclaimant Corp.*, 211 A.3d at 990, Universitas's unjust enrichment claims against the Defendants should be allowed to proceed.

**V.    The Complaint is not an Impermissible Shotgun Pleading**

The Defendants allege that the First Amended Complaint must be dismissed as an impermissible "shotgun pleading." As stated, *supra*, FRCP 8(a)(2) requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 10(b) provides a technical requirement that the claims or defenses be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Courts have found that "shotgun pleadings," which contain "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," violate these rules because they do not sufficiently apprise defendants of the claims against them or the factual bases upon which those claims are based. *McArter & English v. Jarrow Formulas, Inc.*, No. 3:19-cv-01124 (MPS), 2020 U.S. Dist. LEXIS 155704, at *12 (D. Conn. Aug. 27, 2020 (quoting *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-22 (11th Cir. 2015). As the *McArter* court noted, "shotgun pleadings" are further "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* (internal citations omitted).

Here, the First Amended Complaint does not constitute a "shotgun pleading" that must be dismissed on that basis. At the outset, Universitas notes that this Court approved the form of the First Amended Complaint when Universitas moved to amend. Courts in this District have also approved of complaints sharing this same structure. *See e.g.*, *Wells Fargo Bank, N.A. v. Konover*, Case No. 3:05-cv-01924-AWT (D. Conn.). Moreover, while the First Amended Complaint contains hundreds of paragraphs of factual allegations and incorporates by reference the paragraphs preceding each count, this does not make the First Amended Complaint a "shotgun pleading." Each individual count sets out the material facts supporting the claim for relief in addition to incorporating the preceding paragraphs. The First Amended Complaint is also organized to describe the actions of each individual defendant, and that organizational scheme is sufficient to apprise the Defendants of the actions taken by them that constitute the substantive bases for the claims against them. Thus, the Defendant Trusts possess adequate notice of the claims against them.

The Defendants' reliance on *Schachter v. Sunrise Senior Living Mgmt.*, No. 3:18-cv-00953 (JAM), 2020 U.S. Dist. LEXIS 44964, at *17 (D. Conn. March 16, 2020), is misplaced. While Universitas included all the named defendants together in the alter ego claim, it did not do so indiscriminately, in a conclusory fashion, or without distinguishing their conduct. *Id.* (*citing Embree v. Wyndham Worldwide Corporation*, 779 Fed. Appx. 658, 661 (11th Cir. 2019)). It provided ample factual backing for each individual defendant and laid out in painstaking detail the amount of money and assets each defendant received or was unjustly enriched by at the expense of Universitas. The key factual elements were restated in the counts for unjust enrichment against each of the Defendants so that it would be abundantly clear to the Defendants the exact actions of which Universitas complained. Because the First Amended Complaint suffices to provide each of

the Defendants with clear notice of the actions complained of and a clear indication of the causes of action against each Defendant, the First Amended Complaint is proper and should not be dismissed on technical and drafting grounds.

## CONCLUSION

For the aforementioned reasons, Universitas respectfully requests that the Court deny the Defendants' motions to dismiss in their entirety.

Dated: August 24, 2022

Respectfully submitted,

/S/ Joseph L. Manson III
JOSEPH L. MANSON, III
(*Admitted Pro Hac Vice*)
jmanson@jmansonlaw.com
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (202) 674-1450

ATTORNEYS FOR PLAINTIFF
UNIVERSITAS EDUCATION, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of August, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

/s/ Joseph L. Manson III