# EXHIBIT ONE

Carpenter Financial Group, Inc's. Motion to Vacate Charging
Order October 27, 2015 with Attached Memorandum and
Supportive Exhibits

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNIVERSITAS EDUCATION, LLC,** | ) | |
| Petitioner | ) | |
| | ) | **Case No. 3:14-mc-00125-RNC** |
| vs. | ) | |
| | ) | |
| **NOVA GROUP, INC., et al.,** | ) | |
| Respondent | ) | **August 18, 2022** |
| | ) | |

**MOTION TO VACATE AND/OR DISSOLVE**
**CHARGING ORDER OF OCTOBER 27, 2015**

THE PETITIONER and Judgment Debtor, Carpenter Financial Group, Inc. (hereinafter "Petitioner" or "CFG") by and through undersigned counsel, hereby moves the Court to grant this Motion to Dissolve and/or Vacate the Charging Order dated October 27, 2015 pursuant to Rule 60(b)(5) and the Second Circuit's "One Satisfaction Rule." *See Singer v. Olympia Brewing Co.*, 878 F.2d 596 (2d Cir. 1989) ("Under this rule, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant."). *Id.* at 600. Therefore, as to Petitioner, the Judgment of the Charging Order should be considered paid in full and satisfied.

In support of its Motion, Petitioner states that through payments, along with the settlements from various other Judgment Debtors and Third Parties, more than the full amount of the $11,140,000 Order has been paid, and that through the Second Circuit's "One Satisfaction Rule," any claims on Petitioner CFG have now been satisfied. In addition, the Charging Order should be vacated because: (1) it violated the three-year statute of limitations under ERISA; and (2) CFG was never properly served. In further support of its Motion, Petitioner files contemporaneously

1

herewith a Declaration of Daniel E. Carpenter, a Memorandum of Law, and a listing of several

Exhibits in support.

WHEREFORE the Petitioner and Judgment Debtor, Carpenter Financial Group, Inc.,

respectfully moves that this Motion to Dissolve and/or Vacate the Charging Order dated October

27, 2015 be granted.


Dated: August 18, 2022                        Respectfully Submitted
                                              Carpenter Financial Group, Inc.,


                                              */s/ Jonathan J. Einhorn*

                                              JONATHAN J. EINHORN
                                              129 WHITNEY AVENUE
                                              NEW HAVEN, CT 06510
                                              FEDERAL BAR NO. ct00163
                                              203-777-3777
                                              EINHORNLAWOFFICE@GMAIL.COM

2

**CERTIFICATION**

I hereby certify that on this 18th day of August, 2022, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| **UNIVERSITAS EDUCATION, LLC,** | : | |
| **Plaintiff,** | : | **Case No. 3:14-mc-00125-RNC** |
| | : | |
| **-against** | : | |
| | : | |
| **NOVA GROUP, INC., et al.,** | : | **August 18, 2022** |
| **Defendant.** | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE
AND/OR RELEASE CFG FROM CHARGING ORDER OF OCTOBER 27, 2015**

Pursuant to Federal Rules of Civil Procedure Rule 60(b)(5), Petitioner and alleged

Judgment Debtor Carpenter Financial Group, Inc. (hereinafter "CFG") respectfully submits this

memorandum in support of its Motion to Release CFG from and/or Vacate the $11,400,000

Charging Order dated October 27, 2015 because through payments, along with the settlements

from various other Judgment Debtors and Third Parties, more than the full amount of the Charging

Order has been paid, and that through the Second Circuit's "One Satisfaction Rule" any claims

against Petitioner CFG have now been satisfied.

**PRELIMINARY STATEMENT**

On October 27, 2015, this Court entered a charging order "pursuant to C.G.S. 34-171, to

charge the membership interest of the Judgment Debtor, Carpenter Financial Group ("CFG"), in

Grist Mill Partners, LLC, and in any and all other limited liability companies in which CFG may

have an interest with, with the unsatisfied portion of the Judgment entered in Universitas' favor

against CFG for Charging Order on August 12, 2014 in the Southern District of New York, and

filed with this Court on November 6, 2014."

Moreover, the Clerk's Judgment did not satisfy the clear-cut rules of F.R.C.P. Rule

58(b)(2) where, in an order that is doing more than reporting the jury verdict, it must be signed by

the District Court Judge. See Exhibit One. Recently, in an order involving the same parties dated

March 31, 2020, Judge Swain denied Universitas relief, and stated that the court did not have

subject matter jurisdiction citing the Supreme Court's ruling in *Peacock v. Thomas*, 516 U.S. 349

(1996). See Exhibit Two.

In the time since this Court's Charging Order, Universitas has been able to recover:

$12,000,000 on February 27, 2018 from WSFS Bank for Christiana Bank, which was the Insurance

Trustee for the Charter Oak Trust (see Exhibit Three); $4,487,007.81 on or about June 19, 2018

from the Grist Mill Trust (see Exhibit Four); $900,333.61 from BPETCO (see Exhibit Five); and

over $500,000 from USAA (see Exhibits Six and Seven).

Since the Clerk's Judgment was not a valid judgment pursuant to Rule 58(b) because it

was not signed by a District Court, and was void *ab initio*, and therefore could not be lodged as a

valid judgment in this Court pursuant to 28 U.S.C. §1963, therefore, the Charging Order should

be dissolved in its entirety and/or discharged pursuant to Rule 60(b)(5) for that reason; or in the

alternative, should be vacated because it was never a valid judgment in the first place, and both

Courts therefore lacked subject matter jurisdiction and personal jurisdiction over the

Petitioner/Judgment Debtor CFG pursuant to the Supreme Court's decision in *Peacock v. Thomas*,

citing the famous case from Connecticut, *H.C. Cook v. Beecher*:

> Our recognition of these supplementary proceedings has not, however, extended
> beyond attempts to execute, or to guarantee eventual executability of, a federal
> judgment. We have never authorized the exercise of ancillary jurisdiction in a
> subsequent lawsuit to impose an obligation to pay an existing federal judgment on
> a person not already liable for that judgment. Indeed, we rejected an attempt to do
> so in *H.C. Cook Co. v. Beecher,* 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910).
> In *Beecher,* the plaintiff obtained a judgment in federal court against a corporation
> that had infringed its patent. When the plaintiff could not collect on the judgment,
> it sued the individual directors of the defendant corporation, alleging that, during
> the pendency of the original suit, they had authorized *358 continuing sales of the
> infringing product and knowingly permitted the corporation to become insolvent.
> We agreed with the Circuit Court's characterization of the suit as "an attempt to

make the defendants answerable for the judgment already obtained" and affirmed the court's decision that the suit was not "ancillary to the judgment in the former suit." *Id.*, at 498–499, 30 S.Ct., at 602. *Beecher* governs this case and persuades us that Thomas' attempt to make Peacock answerable for the ERISA judgment is not ancillary to that judgment. *Peacock v. Thomas*, 516 U.S. 349, 357–58, 116 S. Ct. 862, 868, 133 L. Ed. 2d 817 (1996).

Finally, the Clerk's Judgment does not specify "which of four" Carpenter Financial Groups are subject to the Clerk's Judgment. It does not specify whether it was an LLC or an INC, or Delaware or Connecticut. Therefore, CFG respectfully submits that the Charging Order in this matter should be vacated or dissolved, or in the alternative, that CFG be released pursuant to Rule 60(b)(5) as the Judgment against Petitioner CFG has been satisfied and paid in full.

## ARGUMENT

### I.      Legal Standard

Federal Rule of Civil Procedure 60(b) codifies the post-judgment remedies available to a party seeking relief from a final judgment and specifically contemplates the situation where "the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). A court may amend its prior judgment to the extent it "has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5) dictates that when one defendant in a multi-defendant action settles, the non-settling defendants are entitled to credit the amount of the settlement against any remaining judgment. *See, e.g.*, *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 303 (2d Cir. 2003) (*citing Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)).

Notwithstanding whether a debtor expressly delegates an obligation to a third party, "a performance rendered by [a] third person that is bargained for and received by [a] claimant in satisfaction of [a] claim operates as a discharge of the debtor." 13 Corbin on Contracts §70.6; *accord Mathias v. Jacobs*, 238 F.Supp.2d 556, 571-72 (S.D.N.Y. 2002) ("[The claimant] is entitled to the benefit of only one full performance and one  satisfaction of a contractual debt; he cannot

3

collect twice to discharge the same obligation, whether payment is made by the promisor himself, by a third person, or by both."). "This common-sense precept of contract law does not require action by the debtor; if a third party negotiates with an obligee to pay the debt of an obligor, and the obligee accepts that payment, the obligor's debt is discharged. The obligee, as a matter of law and equity, is not entitled to double performance on the same contract." *In re Lehman Brothers Inc., Debtor,* 2016 WL 417594 at \*6 (S.D.N.Y. July 6, 2016). *See, e.g., Okemo Mountain, Inc. v. United States Sporting Clays Ass'n,* 376 F.3d 102, 105 (2d Cir. 2004).

## II.    The Charging Order Should Be Vacated Under Rule 60(b)(5) As The Judgment Has Been Satisfied Under the One Satisfaction Rule

A non-settling defendant is "entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages." *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989); *In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1031 (2d Cir. 1992), and 15 U.S.C. §78u-4(f)(7)(B). In such cases, the Second Circuit has applied a "One Satisfaction Rule" rather than a "proportionate responsibility rule," affording a non-settling defendant a reduction equal to the amount of a prior settlement. *Singer* at 600. *See, also, In re Facebook, Inc.,* 674 F. App'x 37, 39-40 (2d Cir. 2016).

A judgment creditor must give nonsettling defendants credit for at least the amount of **any** settlement of common damages, because if it did not, plaintiffs could recover from both the settling and nonsettling defendants for the same damages. "A plaintiff may not recover twice for the same injury." *Phelan v. Local 305*, 973 F.2d 1050, 1063 (2d Cir. 1992), *citing Ostano Commerzanstalt v. Telewide Systems*, 880 F.2d 642, 649 (2d Cir. 1989) (double recovery puts plaintiffs in better position than had they not been injured). The "One Satisfaction Rule" also requires that nonsettling defendants receive credit for any amount actually paid by settling defendants for common

4

damages. Thus, the Second Circuit has struck down a judgment reduction provision that gave credit for the lesser of the amount paid or the proportion of fault. *Masters Mates* at 1031. "Absent a showing that damages are not common, a nonsettling defendant whose rights against settling defendants are to be barred is entitled to judgment reduction at least in the amount paid by all settling parties." *Id.*

The Second Circuit's "one satisfaction rule ... prohibits a plaintiff from recovering more than one satisfaction for each injury." *Gerber* at 303 (*quoting Singer* at 600); *see also BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1277 (11th Cir. 2008)("The one-satisfaction rule ... operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury."). The Supreme Court has stated the same: "If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount. *See* Restatement (Second) of Torts §875 (1977)." *Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017).

A series of cases in the Second Circuit have explained that the "One Satisfaction Rule" requires that nonsettling defendants receive credit for settling defendants' share of common damages, that is, damages for which both the settling and nonsettling defendants are responsible. Settlements have been approved when they provided a judgment reduction formula that gave nonsettling defendants credit for the greater of (1) "the settlement amount for common damages," or (2) the "proportionate share" of the settling defendants' fault as proven at trial. *Gerber* at 303. This "capped proportionate share" formula is acceptable because it "ensures that a judgment credit is at *least* the amount of the settlement for common damages" and therefore complies with the one satisfaction rule. *Id.* (emphasis in original). *See, also, In re Facebook, Inc.,* 674 F. App'x 37 (2d Cir. 2016), In such cases, the Second Circuit has applied a "One Satisfaction Rule" rather than a

"proportionate responsibility rule," affording a non-settling defendant a reduction equal to the amount of a prior settlement. *Id.,* quoting *Singer* at 600.

A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment. Under this rule, when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant. *See, e.g., Hess Oil Virgin Islands Corp. v. UOP, Inc.,* 861 F.2d 1197, 1208 (10th Cir. 1988); *U.S. Industries, Inc.* at 1236; *see also* Restatement (Second) of Torts §885(3), comments e & f.

New York law does not permit for double recovery. *Zarcone v. Perry,* 78 A.D.2d 70, 79, 434 N.Y.S.2d 437, 443 (1980), aff'd, 55 N.Y.2d 782, 447 N.Y.S.2d 248, 431 N.E.2d 974 (1981). Accordingly, Rule 60(b)(5) may be utilized to correct a judgment to prevent double recovery. *See, e.g., Torres–Troche v. Municipality of Yauco,* 873 F.2d 499, 501 (1st Cir.1989) (finding, on Rule 60(b)(5) motion, that award should be offset by previous settlement to prevent double recovery); *Sunderland v. City of Philadelphia*, 575 F.2d 1089, 1090–91 (3d Cir.1978) (finding district court erred in denying Rule 60(b)(5) motion because "a district court does not have discretion to require two satisfactions, and the opposing party has suffered no prejudice from the moving party's delay in raising the satisfaction issue."); *see also Philips Lighting Co. v. Schneider*, No. 05-CV-4820 SLT MDG, 2014 WL 4274182, at *12 (E.D.N.Y. Aug. 28, 2014) ("To the extent that Eltron's underlying obligations, and thus Schneider's corresponding secondary obligation, has been

reduced through settlement and/or payments by Eltron, Schneider's obligations should also be reduced.").

### III. The Charging Order Violated the Three-Year Statute of Limitations under ERISA

As can be seen from the enclosed Affidavit by Sharon Siebert in the Massachusetts action Universitas brought against the Estate of Jack Robinson (see Exhibit Eight), she makes clear that Universitas knew the Charter Oak Trust was amended in January 2007 to include the 20% retention of proceeds by the Trust. As this Court knows, the Government always claimed that the Charter Oak Trust was never amended until *after* Sash Spencer died, and denied Mr. Carpenter's claims that the Trust ever did such an amendment *before* his death. In fact, and as the Affidavit unequivocally proves, the Plan Document *was* amended in January of 2007, and again in March of 2007 when Sash Spencer entered the Charter Oak Trust. The reason this is important is because Universitas has always claimed that Mr. Carpenter "stole" the funds, when it is clear from the Affidavit that the Plan was amended *prior to* Sash Spencer's death, and the Plan Documents have always shown that the primary beneficiary of all of the Charter Oak Trust policies was Grist Mill Capital. So, in acknowledging that Universitas knew about the 20% retention, this means that the claims by Universitas must also be reduced by $6 million, which is 20% of the $30 million.

The Court will also recall that this matches Mr. Carpenter's calculations submitted by the Government at trial in Government Exhibit 2225 attached as Exhibit Nine. More importantly, it is clear that the Sash Spencer applications were done some time prior to December of 2006, Mr. Carpenter was not indicted until December of 2013, and it was not until 2014 that Universitas brought its claim for getting the Charging Order issued based on the invalid Clerk's Judgment of August 12, 2014. The reason this is significant is because Sash Spencer died in 2008, and the original claims against the Charter Oak Trust were made in 2008 and 2009, which starts the three

year statute of limitations under ERISA, and as this Court knows, the Charter Oak Trust was always an ERISA welfare benefit trust.

Moreover, there is another problem with Universitas having a charging order for the Sash Spencer proceeds, as they were the illicit proceeds at the heart of the Money Laundering Counts of Mr. Carpenter's May 2014 Indictment. Therefore, if these were truly the proceeds of fraud, as determined by this Court's Verdict of June 06, 2014, then Universitas is not entitled to them because they were determined to be a fraud against Lincoln. In the alternative, if these are the proceeds of a legitimate welfare benefit trust, then bringing an action in Connecticut in 2014 was three years too late under the ERISA Statute of Limitations rule. Lastly, and as can be seen from Judge Swain's Order attached as Exhibit Two, under the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996), it would have been necessary for Universitas to establish separate grounds and separate jurisdiction for pursuing claims against whatever Carpenter Financial Group entity they were going after. Because Universitas did not do that in Connecticut or the Southern District of New York, the Charging Order is invalid as a matter of law, and should be dissolved and/or vacated for any of the above reasons.

Finally, not only did this Court determine that the Sash Spencer proceeds were the proceeds of fraud, Universitas does not come to this Court with the "clean hands" required of a suit in equity. Extensive discovery has proven that Mr. Carpenter did not amend the Charter Oak Trust document after Mr. Spencer's death (See Exhibit Eight Siebert's Aff. at ¶ 13) and that he did not use those proceeds to buy the Rhode Island Beach House as alleged by the Government in their fraudulent press releases. Discovery has also proven that not a dime of the Spencer proceeds went to fund the building at 100 Grist Mill Road, which is the subject of this invalid Charging Order. But the biggest revelation is the fact that neither Sharon Seibert (Sash Spencer's Mistress) nor her neighbor the

putative "Notary" Barbara Kniffen ever visited Sash Spencer while he was dying in the Intensive Care Unit in May 2008. This has been one big "Fraud on the Court" by Universitas and its Counsel Joseph Manson.

**IV.    The Charging Order Should Be Vacated because CFG was never properly Served**

As can be seen from Exhibit Ten, Petitioner CFG was never properly served under Rule 4(e) by hand or mailing to its official address as required by Connecticut State Law. See affidavit of service attached as Exhibit Ten showing that no CFG Entity was not served at any known address.

"A judgment obtained in the absence of *in personam* jurisdiction is void." *Orix Fin. Servs. v. Phipps,* 2009 WL 2486012, at *2 (S.D.N.Y. Aug. 14, 2009) (*quoting China Mariners Assur. Corp. v. M.T. W.M. Vacy Ash,* 1999 WL 126921, at *3 (S.D.N.Y. Mar. 9, 1999) (*citing Jaffe & Asher v. Van Brunt,* 158 F.R.D. 278, 279 (S.D.N.Y. 1994)). "Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant." *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.,* 8 F.Supp.2d 372, 375 (S.D.N.Y. 1998). A court lacks *in personam* jurisdiction where a judgment has been "obtained by defective service." *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 103 (1987). Accordingly, a judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law." *Id.* (*citing Howard Johnson v. Wang,* 7 F.Supp.2d 336 (S.D.N.Y. 1998)). Rule 4(e) governs the procedure for service of individuals. This rule states that proper service may be effected by, *inter alia,* "following state law for serving a summons ... in the state where the district court is located or where service is made." Fed. R. Civ. P. 4.

Here, Universitas purported to have served Petitioner CFG with the Charging Order Request and Affidavit. *See* Affidavit of Service attached as Exhibit Ten showing CFG was not

served by hand or at any address that CFG has had an office. Universitas did not effect proper service on Petitioner CFG as none of the addresses listed in the Affidavit are valid locations for Petitioner CFG or any other CFG Entity. Since Universitas did not effect proper service under the Rules of the State of Connecticut, this Court did not have personal jurisdiction over Petitioner and accordingly, the Charging Order should be vacated and/or dissolved. *See, e.g., United States v. Crosland,* 2018 WL 3029038 (E.D.N.Y. June 18, 2018).

Proper service of process in this case was non-existent as Petitioner CFG was never served or made aware of the filings. Even assuming Petitioner had proper notice of the action, which clearly it did not (as this Court knows that Mr. Carpenter was in prison at the time), the Second Circuit has rejected the argument that "actual notice" is sufficient to cure improper service. *See National Development Co. v. Triad Holding Corp.,* 930 F.2d 253, 256 (2d Cir. 1991); *GMA Accessories v. BOP, LLC,* 2008 U.S. Dist. LEXIS 26120, at *7 (S.D.N.Y. 2008). S*ee, also, Ins. Corp. of Ireland v. Compagnie Des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (regarding a federal court's acquisition of subject-matter jurisdiction, holding that the "consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings."). Therefore, this Court lacked personal jurisdiction and subject matter jurisdiction over CFG.

Since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, especially when the defendant was not a party to the original arbitration, a judgment is void if the defendant was not properly served because the court is powerless to enter judgment against that defendant. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-87 (1988). This Motion must be granted if service of process was insufficient because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service

of summons must be satisfied." *Omni Capital* at 104. Service of process must satisfy not only the rule under which service is made but also the constitutional requirement of due process. *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986). To satisfy due process, the serving party must provide "notice reasonably calculated*, **under all circumstances***, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 314 (1950) (emphasis added). This, clearly, did not happen because the Charging Order request and Affidavit were never properly served on Petitioner CFG or any version of CFG for that matter.

The requirement to direct the mailing to the attention of "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process is intended to ensure that the summons and complaint expeditiously reaches the appropriate decision maker in the organization." *Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)*, 2011 WL 3047692, at *2 (Bankr. S.D.N.Y. July 22, 2011). Moreover, even if Universitas provided actual notice, ***it did not cure the insufficient service of process*** and confer personal jurisdiction. *See Triad Holding Corp.* at 256 (emphasis added). But, for the sake of this Motion to Vacate and Dissolve the Charging Order of October 27, 2015, this Court need only see that Universitas has been paid well more than the $11,140,000 that the alleged Judgment Debtor CFG owes, so therefore this Court should discharge, dissolve, and vacate the Charging Order as the law of the Second Circuit is clear that no matter what third party settles with Universitas, those amounts accrue to the benefit of Petitioner as a set-off under the "One Satisfaction Rule." *See, e.g., Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 303 (2d Cir. 2003) (*citing Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)).

11

CFG submits that not only was service of process ineffective and improper in this case based on well-established Connecticut law and Second Circuit federal law, it did not occur at all. Attached as Exhibit Three is the Certificate of Service that was filed as Dkt. #7 in this case listing six address: four for Grist Mill Partners – all of which are incorrect – and two for CFG – both being the corporate agent of the company, which is not the agent for service of process for CFG. But even if they were, it still does not constitute proper service under Connecticut law. Unlike its federal counterpart, Connecticut law provides that a lawsuit is "brought" not upon the filing of the complaint, but upon service of process on the defendant. *See e.g. Kotec v. Japanese Educ. Inst.*, 321 F.Supp.2d 428, 431 (D.Conn. 2004) ("It is well settled that in Connecticut (unless otherwise specified by the legislature) a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant and that, in a federal diversity action, such state rules control and not F.R.C.P. 3."). Thus, the CPLA's limitations period is not tolled in a federal diversity action until the defendant is served with a copy of the summons and complaint. *See Converse v. General Motors Corp.*, 893 F.2d 513, 515–16 (2d Cir. 1990) (affirming the dismissal of a complaint filed before, but served after, the expiration of the limitations period and stating "**the Connecticut Supreme Court has long adhered to the rule that only actual service upon the defendant will satisfy the state statute of limitations**").

Just as in *Converse*, in this case there was no service of process at the time the complaint was filed or anytime thereafter, and therefore the complaint should be dismissed as the statute of limitations period has clearly passed. Here, CFG did not file any waiver of service form and as a result of Universitas' failure to properly serve CFG, the suit never formally "commenced" under Connecticut law and the statute of limitations governing Universitas' claims was never tolled. The three-year limitations period, which continued to run while this litigation proceeded,

has long since expired in October 2012 at the latest and therefore Universitas' claims should be dismissed.

In this case, the CFG that owns Grist Mill Partners, LLC, which in turn owns the property at 100 Grist Mill Road, is a Delaware corporation doing business in Connecticut, and an officer of the company should have been served or a mailing should have been done to a valid address. Instead, Universitas sent service to 226 Mayapple Road, which is not only the incorrect address, but it has never been the address for Mr. Carpenter, let alone CFG. Similarly, Universitas never served anything to 100 Grist Mill Road or Mr. Carpenter's home address, despite the fact that they claim CFG was a criminal enterprise that ran other criminal enterprises from 100 Grist Mill Road. The reason for this is clear: Universitas knew that as of June 2014, Mr. Carpenter had reported to prison and Curaleaf took over 100 Grist Mill Road, so they failed to send anything to 100 Grist Mill Road or Mr. Carpenter's home address and instead filed service of processes to addresses unrelated to CFG.

For this reason alone, this Court should dismiss all claims against CFG and dissolve the Charging Order because Universitas never properly served CFG in violation of the laws of Connecticut and the Second Circuit.

**CONCLUSION**

WHEREFORE, because the Petitioner has received through payments, along with the settlements from various other Judgment Debtors and Third Parties, more than the full amount of the $11,140,000 Charging Order, and that through the Second Circuit's "One Satisfaction Rule," any claims against CFG have now been satisfied, CFG moves this Court to immediately discharge and release CFG from, and/or vacate, the October 27, 2015 Charging Order which should be dissolved and/or vacated by this Court.

Dated: August 18, 2022

> Respectfully Submitted
> Carpenter Financial Group, Inc.,
>
> */s/ Jonathan J. Einhorn*
>
> JONATHAN J. EINHORN
> 129 WHITNEY AVENUE
> NEW HAVEN, CT 06510
> FEDERAL BAR NO. ct00163
> EINHORNLAWOFFICE@GMAIL.COM

**CERTIFICATION**

I hereby certify that on this 18th day of August, 2022, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.


*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------------------------
UNIVERSITAS EDUCATION, LLC,      :
Plaintiff,                       :
                                 :
-against                         :      Case No. 14-mc-00125-RNC
                                 :
NOVA GROUP, INC., et al.,        :      Hon. Robert N. Chatigny
Defendant.                       :
-------------------------------------------------
```

<u>**DECLARATION OF DANIEL E. CARPENTER**</u>

I, **DANIEL E. CARPENTER**, declare and state the following:

I have personal knowledge of the facts stated herein, and I am authorized to submit this declaration in support of Petitioner/Judgment Debtor Carpenter Financial Group, Inc.'s ("CFG") Motion to Vacate and/or Dissolve the Charging Order pursuant to Rule 60(b)(5).

1.  Attached hereto as **Exhibit One** is a copy of the Clerk's Judgment of August 12, 2014.

2.  Attached hereto as **Exhibit Two** is a copy of the March 31, 2020 Order from Judge Swain denying relief to Universitas because she lacked subject matter jurisdiction over the parties citing the Supreme Court's decision in *Peacock v. Thomas*.

3.  Attached hereto as **Exhibit Three** is a copy of a press release and Motion for Interpleader showing Universitas received $12 million from WSFS Bank paying to settle all claims on behalf of Christiana Bank, which was the Insurance Trustee of the Charter Oak Trust.

4.  Attached hereto as **Exhibit Four** is a copy of the Satisfaction of Judgment for the payments made from the Grist Mill Trust in the amount of $4,487,007.81.

5.      Attached hereto as **Exhibit Five** is a copy of an email from counsel for Universitas, acknowledging an amount of $900,333.61 paid to Universitas from BPETCO.

6.      Attached hereto as **Exhibit Six** is a copy of funds received by Universitas from USAA for $343,031.52.

7.      Attached hereto as **Exhibit Seven** is a transcript of a proceeding before the honorable Judge Laura Taylor Swain where an acknowledgment was made that funds were received by Universitas from USAA for $450,000.

8.      Attached hereto as **Exhibit Eight** is a copy of an affidavit submitted by Sharon Siebert in *Universitas v. Jack Robinson*, Case No. 15-cv-11848.

9.      Attached hereto as **Exhibit Nine** is a copy of Government Exhibit 2225 showing Dan Carpenter's Handwritten Calculations.

10.      Attached hereto as **Exhibit Ten** is a copy of the Affidavit submitted in support of the Charging Order showing that CFG was not served under Connecticut law.

Executed this 18th day of August 2022, in Simsbury, CT.

Daniel E. Carpenter

Respectfully Submitted
Carpenter Financial Group, Inc.,

*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

# EXHIBIT

# ONE

**Clerk's Order of August 12, 2014**

Case 3:20-cv-00738-JAM   Document 303-2   Filed 08/29/22   Page 23 of 59
Case 3:14-mc-00125-RNC   Document 33-3   Filed 08/18/22   Page 2 of 4
Case 1:11-cv-01590-LTS-HBP   Document 475   Filed 08/12/14   Page 1 of 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    08/12/2014
------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

               Petitioner,                 11 **CIVIL** 1590 (LTS) (HBP)
                                                  11 **CIVIL** 8726 (LTS) (HBP)
    -against-
                                                  **JUDGMENT**
NOVA GROUP, INC.,

               Respondent.
------------------------------------------------------------X

Whereas following entry of judgment in its favor in the above captioned-actions, Universitas

Education, LLC ("Petitioner") having moved seeking, pursuant to New York Civil Practice Law and

Rules ("C.P.L.R.") section 5225(b) and Federal Rules of Civil Procedure 69, the turnover of assets

by respondent Daniel E. Carpenter and his affiliated entities Grist Mill Capital, LLC, Grist Mill

Holdings, LLC, the Grist Mill Trust Welfare Benefit Plan, Avon Capital, LLC, Hanover Trust

Company, Carpenter Financial Group and Phoenix Capital Management, LLC (with Carpenter, the

"Turnover Respondents"), as well as permanent injunctive relief barring the transfer by the Turnover

Respondents of money and assets, including certain specified insurance policies, until Petitioner's

judgment against Nova Group, Inc., has been satisfied (Docket entry no. 308 in case number 11 Civ.

1590); Mr. Carpenter and certain third parties having moved to modify the temporary injunction to

allow transactions between themselves and certain of the Turnover Respondents (See docket entry

nos. 409, 412, and 448 in 11 Civ. 1590), and the matter having come before the Honorable Laura

Taylor Swain, United States District Judge, and the Court, on August 7, 2014, having rendered its

Memorandum Opinion and Order granting Petitioner's turnover motion, granting Petitioner money

judgments as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist

Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the

amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $ 11,140,000.00;

Case 3:20-cv-00738-JAM   Document 303-2   Filed 08/29/22   Page 24 of 59
Case 3:14-mc-00125-RNC   Document 33-3   Filed 08/18/22   Page 3 of 4
Case 1:11-cv-61590-ETS-HBP   Document 475   Filed 08/12/14   Page 2 of 3

against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; directing the Clerk of the Court to enter judgment against the Turnover Respondents accordingly; Liability under the judgment is joint and severally; denying as moot Petitioner's request for permanent injunctive relief; denying each of the third-party motions to modify the preliminary injunction, docket entry numbers 409, 412, and 448 in 11 Civ. 1590, as the primary injunction is hereby terminated pursuant to the provisions of the January Order, because Petitioner's motion for turnover has been resolved, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion and Order dated August 7, 2014, Petitioner's turnover motion is granted; Petitioner is hereby granted money judgments against the Turnover Respondents as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $11,140,000.00; against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; liability under the judgments is jointly and severally; Petitioner's request for permanent injunctive and other equitable relief are denied; each of the third-party motions to modify the preliminary injunction, docket numbers 409, 412, and 448 in 11 Civ. 1590 are denied as moot, as the preliminary injunction is hereby terminated pursuant

Case 3:20-cv-00738-JAM   Document 303-2   Filed 08/29/22   Page 25 of 59
Case 3:14-mc-00125-RNC   Document 33-3   Filed 08/18/22   Page 4 of 4
Case 1:11-cv-01590-LTS-HBP   Document 475   Filed 08/12/14   Page 3 of 3

to the provisions of the January Order, because Petitioner's motion for turnover has been resolved.

**Dated:** New York, New York
August 12, 2014

**RUBY J. KRAJICK**

_____

**Clerk of Court**

**BY:**

_____

**Deputy Clerk**

# EXHIBIT
# TWO

**Judge Swain March 31, 2020 Order dismissing Universitas Complaint for lack of Subject Matter Jurisdiction**

The following transaction was entered on 4/1/2020 at 9:48 AM EDT and filed on 3/31/2020

**Case Name:**        Universitas Education, LLC v. Nova Group, Inc.

**Case Number:**     1:11-cv-01590-LTS-HBP

**Filer:**

**WARNING: CASE CLOSED on 06/07/2012**

**Document Number:** 661

**Docket Text:**
**ORDER: The Court has received and reviewed in their entirety Plaintiff's March 23, 2020, letter motions requesting entry of judgment against Moonstone Partners, LLC, Benistar Admin Services, Inc. ("BASI"), and Molly Carpenter, (Docket Entry Nos. 658, 659), as well as the March 30, 2020, letter from counsel for those entities opposing entry of judgment (Docket Entry No. 660). Plaintiff's letter motions request relief that is not enumerated in NYSD Local Civil Rule 7.1(d), which describes applications which may be brought by letter motion. Accordingly, the motions are DENIED without prejudice to formal motion practice in compliance with the relevant federal, local, and individual procedural rules of Court. Any such motion must address the legal basis, if any, for the Court's exercise of personal jurisdiction over the non-party entities named in the above-referenced letter motions, whether such a motion is the appropriate procedural mechanism by which the Court can enforce its Memorandum Order confirming the arbitration award in this case (Docket Entry No. 40) against non-parties to the underlying litigation, and whether such motion practice is consistent with the limitations of ancillary jurisdiction as described in Peacock v. Thomas, 516 U.S. 349 (1996), and the Court's order interpreting Peacock and denying Plaintiff's prior turnover motion in this case. See Docket Entry No. 545. Any such motion must also address the legal and factual basis for the requested judgment amount in light of any recoveries Plaintiff has already obtained. (Signed by Judge Laura Taylor Swain on 3/31/2020) (mro)**

# EXHIBIT THREE

**WSFS Pays $12 Million to Universitas for Christiana Bank being Insurance Trustee of Charter Oak Trust**

 **WSFS** bank

Banking     Borrowing     Wealth                                      Login ▾

Business Services     About     Help & Guidance          Open an Account

🔍

# Press Release

f   8   in   t   ᔕ

<< Back

Feb 27, 2018

## WSFS Reaches Settlement with Universitas Education, LLC

WILMINGTON, Del., Feb. 27, 2018 (GLOBE NEWSWIRE) -- WSFS Financial Corporation (NASDAQ:WSFS), the parent company of WSFS Bank, announced today that it has entered into a settlement agreement with Universitas Education, LLC (Universitas), to resolve claims related to services provided by Christiana Bank & Trust Company (Christiana Trust) prior to WSFS' acquisition of Christiana Trust in December 2010. WSFS previously disclosed the claims in its quarterly filings on Forms 10-Q in 2017.

The claims relate to Christiana Trust's role as "insurance trustee" of the Charter Oak Trust Welfare Benefit Plan (Charter Oak), and Universitas' alleged loss after funds from certain life insurance benefits were misappropriated by certain individuals unaffiliated with Christiana Trust or WSFS. Universitas sought damages in excess of $54.0 million.

WSFS settled the case for $12.0 million to avoid the uncertainties of arbitration and to end the expense of ongoing litigation. Separately, WSFS will pursue all of its rights and remedies to recover this settlement payment and all related costs, including by enforcing the indemnity right in the 2010 Stock Purchase Agreement by which WSFS acquired Christiana Trust. Additionally, WSFS has already taken measures to recover expenses from various insurance carriers. WSFS intends to pursue all claims it has for full restitution for this settlement.

"We are pleased to have reached an agreement on this years-old matter involving events alleged to have occurred prior to WSFS' acquisition of Christiana Trust," said Rodger Levenson, Executive Vice President and Chief Operating Officer, WSFS Bank. "With this agreement completed, we will focus on pursuing a full reimbursement for these costs."

The settlement for $12.0 million requires WSFS to update its previously reported fourth quarter 2017 earnings, reducing reported after-tax earnings by approximately $9.3 million, or $0.29 per share for the fourth quarter. The settlement will be reflected in the upcoming filing of our 2017 Form 10-K.

**About WSFS Financial Corporation**

WSFS Financial Corporation is a multi-billion dollar financial services company. Its primary subsidiary, WSFS Bank, is the oldest and largest locally-managed bank and trust company headquartered in Delaware and the Delaware Valley. As of December 31, 2017, WSFS Financial Corporation had $7.0 billion in assets on its balance sheet and $18.9 billion in assets under management and administration. WSFS operates from 76 offices located in Delaware (46), Pennsylvania (28), Virginia (1) and Nevada (1) and provides comprehensive financial services including commercial banking, retail banking, cash management and trust and wealth management. Other subsidiaries or divisions include Christiana Trust, WSFS Wealth Investments, Cypress Capital Management, LLC, West Capital Management, Powdermill Financial Solutions, Cash Connect®, WSFS Mortgage and Arrow Land Transfer. Serving the Delaware Valley since 1832, WSFS Bank is one of the ten oldest banks in the United States continuously operating under the same name. For more information, please visit wsfsbank.com.

**Investor Contact:** Dominic C. Canuso
302-571-6833
dcanuso@wsfsbank.com

**Media Contact:** Jimmy A. Hernandez
302-571-5254
jhernandez@wsfsbank.com

 **WSFS** Financial Corporation

Case 3:20-cv-00738-JAM   Document 303-2   Filed 08/29/22   Page 30 of 59
Case 3:14-mc-00125-RNC   Document 33-5   Filed 08/18/22   Page 3 of 10
Case 1:18-cv-00219-CMH-JFA   Document 25   Filed 05/23/18   Page 1 of 8 PageID# 101

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSEPH L. MANSON III, <br> d/b/a LAW OFFICES OF <br> JOSEPH L. MANSON III <br><br> Plaintiff/Stakeholder, <br><br> v. <br><br> UNIVERSITAS EDUCATION, LLC, et al. <br><br> Defendants/Claimants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CA No. 1:18-cv-219-CMH/JFA <br> ) <br> ) <br> ) <br> ) |

## **FIRST AMENDED COMPLAINT FOR INTERPLEADER**

Interpleader-Plaintiff Joseph L. Manson, III, d/b/a Law Offices of Joseph L.

Manson III, by and through counsel, pursuant to F.R.Civ.P. 15(a)(1)(B)[1], files this First

Amended Complaint for Interpleader against Interpleader-Defendants Universitas

Education, LLC ("Universitas"); Loeb & Loeb, LLP ("Loeb"); Sturm Law PLLC

("Sturm"); and Lang & Associates, PLLC ("Lang"). This Complaint for Interpleader is

brought pursuant to Rule 22 of the Federal Rules of Civil Procedure, and, in the

alternative, pursuant to 28 U.S.C. § 1335.

As and for his Complaint, Interpleader-Plaintiff pleads as follows:

1.      Interpleader-Plaintiff is an attorney doing business as the Law Offices of

Joseph L. Manson III.  He is a citizen of Virginia.

---

[1] Rule 15(a)(1)(B) allows a party to amend a pleading within 21 days after service of a
responsive pleading or Rule 12 motion.  All defendants except Sturm filed answers on
May 18, 2018, and Sturm filed a Rule 12 motion on that same date.  Accordingly, this
amendment is timely and filed as a matter of right.

    2.      Universitas is a Delaware limited liability company with its principal place of business in New York.  Its only members, Sharon Siebert and Donna Vassar, are both citizens of New York.

    3.      Loeb is a law firm and a California limited liability partnership.  Upon information and belief at the time of the filing of the original complaint, Plaintiff understood Loeb's partners to be citizens of California, Illinois, New York, Tennessee, and Washington, D.C.  Loeb has denied these allegations in its Answer to the original Complaint, but has not specified on what grounds.

    4.      Sturm is a law firm and a Texas professional limited liability company located at 712 Main Street, Suite 900, Houston, Texas 77002.  Upon information and belief, Sturm's sole member, Charles A. Sturm, is a citizen of Texas.

    5.      Lang is a law firm and a Texas professional limited liability company located at 440 Louisiana Street, Suite 900, Houston, Texas 77002.  Upon information and belief, all Lang's members, including Shannon A. Lang, are citizens of Texas.

    6.      Universitas is the beneficiary of the proceeds of two life insurance policies issued by Lincoln Life Insurance Company ("Lincoln") on the life of Sash A. Spencer. The Charter Oak Trust (the "COT") was the beneficiary of the Spencer policies, which were held in the COT.

    7.      Mr. Spencer died in June of 2008. In May of 2009, Lincoln paid the Spencer policy proceeds, plus interest, to the COT.  The COT denied Universitas's claims to the proceeds.

    8.      Universitas subsequently commenced an arbitration against Nova Group, Inc. ("Nova"), the Named Trustee of the COT.

9.     Universitas obtained an arbitration award against Nova, which was confirmed by the United States District Court for the Southern District of New York, Case No. 1:11-cv-01590-LTS-HBP.  Nova failed to pay the award, prompting Universitas to engage in collection efforts.  Universitas was represented by Loeb in the arbitration against Nova and in the related collection efforts.

10.     On or about April 6, 2015, Universitas also commenced arbitration against Wilmington Savings Fund Society, FSB ("WSFS"), the Insurance Trustee of the COT, with the American Arbitration Association, Case No. 01-15-003-1194 (the "Arbitration"). At the time, Universitas was represented by Shannon A. Lang and Charles A. Sturm. Universitas subsequently terminated that representation and engaged the Law Offices of Joseph L. Manson III.

11.     On or about February 26, 2018, Universitas and WSFS reached a full and final settlement of the Arbitration.  Universitas agreed to dismiss its claims against with WSFS with prejudice in exchange for, among other things, compensation in the amount of Twelve Million Dollars ($12,000,000.00 USD).

12.     As described therein, the Settlement Agreement required WSFS to wire the sum of Eight Million Dollars (the "Settlement Payment") to an escrow account at Branch Bank & Trust in the name of Interpleader-Plaintiff (Account Number 0000258221575, the "Escrow Account").[2]

---

[2] The Settlement Agreement also required WSFS to wire the additional sum of Four Million Dollars ($4,000,000.000), which constitute Interpleader-Plaintiff's attorneys' fees for representing Universitas in the Arbitration, to a trust account in the name of Interpleader-Plaintiff. These funds are not the subject of this dispute.

Case 3:20-cv-00738-JAM   Document 303-2   Filed 08/29/22   Page 33 of 59
Case 3:14-mc-00125-RNC   Document 33-5   Filed 08/18/22   Page 6 of 10
Case 1.18-cv-00219-CMH-JFA   Document 29   Filed 05/23/18   Page 4 of 8 PageID# 104

13.     Within two days of receiving the Settlement Payment to the Escrow Account, the Settlement Agreement required Interpleader-Plaintiff to commence this interpleader action naming all lienholders who may have a claim to any portion of the Settlement Payment.

14.     All Defendants have asserted a claim to some portion of the Settlement Payment funds.

15.     Sturm has claimed an attorneys' lien against 35% of the proceeds, if any, recovered in the Arbitration.  As alleged by Sturm, Sturm's claim to the Settlement Payment amounts to $4,200,000.00.

16.     Loeb has also asserted a claim to the Settlement Payment.  As alleged by Loeb, Loeb's claim to the Settlement Payment amounts to at least $4,109,906.52.

17.     Lang has asserted a claim to the proceeds, if any, recovered in the Arbitration.  On information and belief, Lang's alleged claim to the Settlement Payment amounts to at least $200,000.00.

18.     On information and belief, Universitas also has a substantial claim to the Settlement Payment.

19.     Pursuant to the Settlement Agreement, on February 27, 2018, the Settlement Payment was wired to the Escrow Account.

20.     Pursuant to the Settlement Agreement, and because Interpleader-Plaintiff reasonably believes that the competing claims for payment exceed the amount of the Settlement Payment, Interpleader-Plaintiff brings this Complaint for Interpleader.

21.     Interpleader-Plaintiff believes that Interpleader-Defendants' collective claims exceed the Settlement Payment, so that any attempt to make payment may result

4

in multiple litigation and expose Interpleader-Plaintiff to conflicting and multiple
liabilities.

22.     Interpleader-Plaintiff is neutral regarding each party's entitlement to the
Settlement Payment, including the entitlement of the Interpleader-Defendants, and
therefore seeks discharge from this action and from any liability with respect to the
Settlement Payment.

## COUNT I
### (Rule Interpleader Pursuant To F.R.Civ.P. 22)

23.     Interpleader-Plaintiff incorporates the allegations of Paragraphs 1 through
22 above.

24.     In the event that there are no Interpleader-Defendants that are citizens of
Virginia by virtue of the citizenship of one of their members, this Court has jurisdiction
pursuant to 28 U.S.C. § 1332, as there is complete diversity between the Interpleader-
Plaintiff and the various Interpleader-Defendants, and the amount in controversy exceeds
$75,000.

25.     Venue is proper under 28 U.S.C. § 1391, because the property that is the
subject of this dispute, the Settlement Payment, is situated in Interpleader-Plaintiff's
escrow account in the City of Alexandria in this judicial district.

## COUNT II
### (Statutory Interpleader Pursuant To 28 U.S.C § 1335)

26.     Pleading in the alternative, Interpleader-Plaintiff incorporates the
allegations of Paragraphs 1 through 22 above.

5

27.     There are two or more adverse claimants of diverse citizenship who are claiming or may claim to be entitled to the Settlement Payment, which exceeds $500 in value.

28.     This Court has jurisdiction pursuant to 28 U.S.C. § 1335, which requires only diversity between any two of the Interpleader-Defendants (which exists, for example, between Universitas, a citizen of New York, and Lang, a citizen of Texas).

29.     In the event that an Interpleader-Defendant, such as Loeb, is a citizen of Virginia by virtue of the citizenship of one of its members, then a claimant resides in this district, and this matter may be brought in this court under 28 U.S.C. § 1379.

30.     Interpleader-Plaintiff prays the Court issue an Order granting leave to deposit the entirety of the Settlement Payment pursuant to 28 U.S.C § 1335, amounting to $8,000,000.00, into the registry of the Court.

## PRAYER FOR RELIEF

WHEREFORE, Interpleader-Plaintiff respectfully requests this Court:

a.  issue an Order requiring the Interpleader-Defendants to interplead all of their claims under or with respect to the Settlement Payment;

b.  issue an Order granting the Interpleader-Plaintiff leave to have the entirety of the Settlement Payment, amounting to $8,000,000.00, deposited into the registry of the Court, and providing that, upon such deposit, the Interpleader-Plaintiff and its employees and agents shall be discharged from all liability to the Interpleader-Defendants under or in connection with the Settlement Payment;

c.  enter a preliminary and permanent injunction enjoining the Interpleader-
    Defendants from instituting or prosecuting any action in any court, state or
    federal, against the Interpleader-Plaintiff and its agents or employees asserting
    any claims, rights, causes of action, or demands of any nature, known or
    unknown, under or in connection with the Settlement Payment;

d.  enter judgment discharging the Interpleader-Plaintiff and its agents and
    employees from all further liability relating in any way to the Settlement
    Payment or any demands that may be made in connection with the Settlement
    Payment;

e.  award to Interpleader-Plaintiff his costs and attorneys' fees; and

f.  grant any further relief as this Court may deem just and proper.


Dated: May 23, 2018


                              LAW OFFICES OF JOSEPH L. MANSON III
                              By Counsel



                              _____/dib/_____
                              David I. Bledsoe
                              VSB 29826
                              600 Cameron Street, Suite 203
                              Alexandria, VA  22314
                              703-379-9424
                              703-684-1851(fax)
                              bledsoelaw@earthlink.net

Case 3:20-cv-00738-JAM    Document 303-2    Filed 08/29/22    Page 37 of 59
Case 3:14-mc-00125-RNC    Document 33-5    Filed 08/18/22    Page 10 of 10
Case 1:18-cv-00219-CMH-JFA    Document 29    Filed 05/23/18    Page 8 of 8 PageID# 108

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2018, the foregoing was filed with the

Clerk of Court through the Court's CM/ECF system, which will then send a notice of the

filing (NEF) to all counsel of record.


_____/s/_____
David I. Bledsoe

# EXHIBIT

# FOUR

**Satisfaction of Judgment for the Grist
Mill Trust in the Amount of $4,487,007.81**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

:
:
UNIVERSITAS EDUCATION, LLC,                                  :
:
Plaintiff,                          :
:
-against-                                   :
:
NOVA GROUP, INC.,                                           :
:
Defendants.                         :
:
:
-----------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/19/18
```

No. 11-CV-01590 (LTS)(HBP)

**SATISFACTION OF JUDGMENT**
**ONLY AS TO JUDGMENT DEBTOR**
**GRIST MILL TRUST WELFARE**
**BENEFIT PLAN**

**WHEREAS**, a Judgment was entered in the above action on August 12, 2014 in favor of Judgment Creditor UNIVERSITAS EDUCATION LLC ("Universitas") and against Judgment Debtor Grist Mill Trust Welfare Benefit Plan ("GMT"), in the amount of $4,487,007.81 (the "GMT Judgment"), and said GMT Judgment having been fully paid; and it is certified that there are no outstanding executions with any Sheriff or Marshall as to said GMT Judgment; and

**WHEREAS**, to the extent Universitas issued restraining notices to third party garnishees directed at the assets of Judgment Debtor GMT, such restraining notices are hereby immediately lifted, but only insofar as such restraining notices related to the assets of GMT. **All restraining notices served by Universitas to third-party garnishees remain in full force and effect as to all Judgment Debtors, except GMT.**

**THEREFORE**, full and complete satisfaction of said GMT Judgment is hereby acknowledged, and the Clerk of the Court is hereby authorized and directed to make an entry of the full and complete satisfaction on the docket of ONLY said GMT Judgment.

Dated: June 19, 2018
New York, New York

LOEB & LOEB LLP

By: _____
Paula K. Colbath
345 Park Avenue
New York, New York  10154

STATE OF NEW YORK            )
                            ) ss.:
COUNTY OF NEW YORK           )

On the 19th day of June, 2018, before me personally came Paula K. Colbath, to me known and known to be a member of the law firm of Loeb & Loeb LLP, attorneys for Universitas Education, LLC in the above entitled action, and to be the same person described in and who executed the within satisfaction of judgment and acknowledged to me that she executed the same.

_____
Notary Public

ANTOINETTE PEPPER
Notary Public, State of New York
No. 01PE4973633
Qualified in Nassau County
Certificate filed in New York County
Commission Expires January 7, 2019

16386931.2

2

# EXHIBIT FIVE

## Email Showing Universitas Receipt of $900,333.61 from BPETCO

**From:** Paul S Samson [mailto:PSamson@riemerlaw.com]
**Sent:** Monday, December 28, 2015 5:30 PM
**To:** Elkind, Thomas I.; Tony Zelle (tzelle@zelmcd.com); tevans@zelmcd.com; 'Paula Colbath' (pcolbath@loeb.com) (pcolbath@loeb.com); Lindsay Feuer (lfeuer@loeb.com) (lfeuer@loeb.com)
**Subject:** RE: Satisfaction of Judgment

Universitas has been paid $900,333.06 as a result of the settlement and that amount will be credited against the Universitas judgment against Mr. Carpenter in accordance with Universitas' agreement with BPETCO and Mr. Carpenter.

Regards, have a happy and healthy New Year. Paul.

Paul S. Samson
(admitted in MA and NY)
Riemer & Braunstein LLP
psamson@riemerlaw.com

From: TElkind@foley.com [mailto:TElkind@foley.com]
Sent: Monday, December 28, 2015 5:25 PM
To: Tony Zelle (tzelle@zelmcd.com); tevans@zelmcd.com; Paul S Samson; 'Paula Colbath' (pcolbath@loeb.com) (pcolbath@loeb.com); Lindsay Feuer (lfeuer@loeb.com) (lfeuer@loeb.com)
Subject: Satisfaction of Judgment

Counsel:

     Attached is a copy of the Satisfaction of Judgment that was filed today in the original Cahaly action pursuant to Section 11 of the Release and Settlement Agreement.

     The settlement between the Cahalys and BPETCO has now been completed. The settlement documents have all been signed and the $125,000 payment from BPETCO has been wired to counsel for the Cahalys.

     Please let me know the total amount that is paid to Universitas, including interest, pursuant to its settlement with the Cahalys, as this is the amount that will be credited against the judgment held by Universitas against Dan Carpenter and others.

     Thank you for your cooperation regarding this matter.

Regards,

Thomas I. Elkind
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199
Tel: 617-342-4010
Fax: 617-342-4001
telkind@foley.com

1

# EXHIBIT
# SIX

**Funds Received by Universitas from USAA
in the amount of $343,031.52**

USAA NR: ▬▬
POL HOLDER: **DANIEL E CARPENTER**
LOB/CLAIM NR: **FL    / 000000**
LOSS DATE: **10/29/12**
UNIT: ▬▬

CHECK NR: ▬▬        **XXXXXX**
PAYEE: **LOEB & LOEB, ATTORNEY TRUST AC**
USAA DATE: **12/04/13**
USAA REP: ▬▬

UNITED SERVICES AUTOMOBILE ASSOCIATION
PO BOX 33490
SAN ANTONIO, TX 78265

| EXPLANATION OF PAYMENT | AMOUNT |
|---|---|
| **FLOOD BUILDING PAYMENT C/O ABRAMS, GORELICK FIEDMAN ATTN: MICHAEL GORELICK** | |
| TOTAL PAYMENT AMOUNT | $187,248.60 |

*TRUST Acct* (handwritten)



DATE OF ISSUE  12/04/13

DANIEL E CARPENTER        LOB  FL

PAY TO THE ORDER OF
LOEB & LOEB, ATTORNEY TRUST AC
ONE BATTERY PARK PLAZA, 4TH FL
NEW YORK NY 10004

NATURE OF PAYMENT
FLOOD BUILDING
PAYMENT
C/O ABRAMS, GORELICK
FIEDMAN
ATTN:
MICHAEL GORELICK

USAA NR:     Case 7:14-mc-00125-RNC   Document 33-8   Filed 08/18/22   Page 3 of 3

CHECK NR:

POL HOLDER:  DANIEL E CARPENTER                          PAYEE:   LOEB & LOEB, ATTORNEY TRUST

LOB/CLAIM NR: FL   / 000000                              USAA DATE:   12/04/13

LOSS DATE: 10/29/12                                      USAA REP:

UNIT:

| EXPLANATION OF PAYMENT | AMOUNT |
|---|---|
| FLOOD BUILDING<br>PAYMENT C/O<br>ABRAMS, GORELICK, FR<br>IEDMAN<br>ATTN:<br>MICHAEL GOERLI | |
| | |

*TRUST Acct*

| TOTAL PAYMENT AMOUNT | $155,782.92 |



Universitas 000004

# EXHIBIT
# SEVEN

**Funds Received by Universitas from USAA
in the amount of $450,000**

D59FUN1H                                    Hearing

 1      UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
 2      ------------------------------x
        UNIVERSITAS EDUCATION, LLC,
 3
                        Plaintiff,
 4
                   v.                              11 CV 1590 (LTS)
 5
        NOVA GROUP, INC. et al,
 6
                        Defendants.
 7      ------------------------------x
                                                   New York, N.Y.
 8                                                 May 9, 2013
                                                   9:30 a.m.
 9
        Before:
10                      HON. LAURA TAYLOR SWAIN,

11                                                 District Judge

12                               APPEARANCES

13      LOEB & LOEB LLP
             Attorneys for Plaintiff
14      PAULA K. COLBATH, ESQ.

15      BRYAN I. REYHANI, ESQ.
             Attorney for Plaintiff
16
        ANTHONY J. SIANO, ESQ.
17           Attorney for Defendant D. Carpenter and Moonstone Partners
        LLP
18
        HALLORAN & SAGE LLP
19           Attorneys for Defendant M. Carpenter
        DAN E. LaBELLE, ESQ.
20
        BRIEF CARMEN & KLEIMAN, LLP
21           Attorneys for Defendant Nova Group
        IRA KLEIMAN, ESQ.
22
        CAROLE R. BERNSTEIN, ESQ.
23           Attorney for Defendant Grist Mill Capital

24      ABRAMS, GORELICK, FRIEDMAN & JACOBSON, LLP
             Attorneys for Defendant USAA
25      ALEXANDRA E. RIGNEY, ESQ.

D59FUNIH                          Hearing

1    Trust to purchase of this home.

2            So the relief that we seek here is we would like the

3    insurance proceeds and we were told before we filed this

4    application, we were told by USAA, the casualty insurer

5    involved, that they were imminently ready to pay approximately

6    $450,000 to Moonstone Partners LLC and Mr. Carpenter who owned

7    the property in South Kingstown.  We also seek a turnover of

8    that property, the ownership of that property to our client

9    since our client's funds were used to purchase it.

10           Since the claim, at Mr. Carpenter's deposition he

11   advised us that he had not officially filed a claim for damage

12   yet.  We would also ask that that claim be assigned to

13   Universitas so we could step into his shoes and have direct

14   contact with the carrier in resolving that claim.

15           THE COURT:  Now, the order to show cause that I signed

16   referred to insurance proceeds in connection with, quote, "any

17   structure or property owned at any point in time by Moonstone,

18   Daniel Carpenter and/or Molly Carpenter or any entity owned by

19   the Carpenters including any properties at a Cards Pond Road

20   address in South Kingstown, Rhode Island and it seeks a

21   constructive trust on such insurance proceeds in Universitas'

22   favor.  So this is the first I'm hearing of a request that this

23   Court also order turnover of real property or an assignment of

24   the claim.

25           MS. COLBATH:  Your Honor, I believe the TRO that you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT EIGHT

**Sharon Siebert Affidavit**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

UNIVERSITAS EDUCATION, LLC

Plaintiff,

v.

JACK E. ROBINSON, III a/k/a JACK E.
ROBINSON,

Defendant.

Civil Action No.
1:15-CV-11848 (DPW)

## AFFIDAVIT OF SHARON E. SIEBERT

SHARON E. SIEBERT, under penalty of perjury, declares and says as follows:

1.    My name is Sharon E. Siebert, and I am a founder and member of Universitas
Education, LLC ("Universitas"). I have personal knowledge of the facts set forth herein.

2.    Universitas is a Delaware limited liability company, with its headquarters at 404
East 55th Street, Apartment 13A, New York, New York 10022.

3.    Universitas was previously the research and development arm of the now-defunct
Destination Foundation Universitas ("Destination Universitas").

4.    Destination Universitas was a charitable foundation based in New York.
Destination Universitas had its charitable designation administratively revoked because
Universitas was unable to continue to fund it. Universitas's hardships were a direct result of the
costly litigation efforts to enforce Universitas' judgment against the Charter Oak Trust and Nova
Group.

5.    Universitas aims to develop and provide programs for leaders and educators around
the world to support global philanthropic and humanitarian efforts.

6.    Universitas is operated by myself and my colleague, Donna Vassar.

7.    Ms. Vassar and I are Universitas' only members.

8.    In 2007, Universitas had negotiated for, and had prepared a letter of intent for the purchase of land for the development of a sanctuary on 69.59 acres in Lake Las Vegas, Nevada, for global leaders to gather and recharge during multi-day retreats.

9.    Universitas had discussed the purchase of the Lake Las Vegas property, solicited and selected a design proposal, completed a strategic development plan, and was in the process of finalizing proposals.

10.    One contributor to the project was Mr. Sash Spencer. Mr. Spencer chaired a private investment firm and was a financial partner to Universitas and Destination Universitas. Mr. Spencer died unexpectedly in June 2008. Prior to his death, he named Universitas the sole irrevocable beneficiary of two life insurance policies worth $30,000,000.

11.    Universitas has still not obtained the life insurance proceeds that Mr. Spencer endowed it.

12.    I received and reviewed the correspondence from Jack E. Robinson, Wayne Bursey, and others sent on behalf of the Charter Oak Trust ("COT") and its affiliates. I discussed these communications with Universitas' various representatives, including its attorney when appropriate.

13.    I initially believed that COT's accurately conveyed the provisions of the COT Declaration of Trust and would abide by the provisions thereof. I believed that the COT Declaration of Trust as amended in January 2007 included a provision within Section 6.01 that allowed COT to retain twenty percent of the death benefits of a participant who dies while participating in COT. However, I did not believe that the provision applied to Universitas'

2

circumstances because Mr. Spencer enrolled in COT prior to this alleged amendment, and COT never notified myself or anybody else about this alleged change in the Trust document.

14.   Universitas also undertook the arbitration against COT and its affiliates in good faith. Universitas relied upon Mr. Bursey's affidavit and Mr. Robinson's declaration asserting that COT had the assets to satisfy a judgement against it. Had I known that the proceeds from Mr. Spencer's life insurance proceeds had already been disbursed and spent on things such as a vacation home for Daniel Carpenter, Universitas would have altered its litigation strategy and would likely have sought civil remedies against Carpenter and his affiliates sooner. Universitas likewise would have adopted a much different litigation strategy had I known that the money in dispute had been improperly conveyed and used for criminal purposes. Instead, the misrepresentations and continuing bad faith by Robinson (before his death), Carpenter, and the rest of their affiliates have forced us to engage in protracted litigation that eventually contributed to the dissolution of Destination Universitas.

15.   The arbitration awarded Universitas a judgment against COT and its trustee, Nova Group, Inc. for $26,525,535.98.[1] Universitas' received this award on January 24, 2011, and the award remains largely unsatisfied.

16.   Universitas' effort to enforce its judgement has caused Universitas to become involved in numerous cases across the country. Attached as **Exhibit A** is a list of cases wherein Universitas has made filings concerning its award.

17.   The cost of this litigation has been high. To date, Universitas been billed for legal fees in excess of $10,000,000.

---

[1] This award was broadened during the subsequent litigation to confirm and enforce the award. The court provided Universitas with a money judgment on August 7, 2014. The money judgment is for $30,181,880.30, to account for interest on the unpaid judgment. The judgment is also enforceable against Daniel Carpenter and some of his companies, in addition to the original judgment debtors.

Case 3:20-cv-00738-JAM   Document 303-2   Filed 08/29/22   Page 53 of 59
Case 3:14-mc-00125-RNC   Document 33-10   Filed 08/18/22   Page 5 of 5
Case 1:13-cv-11848-DPW   Document 174   Filed 09/06/19   Page 4 of 4

18.     The judgment debtors and their affiliates have been recalcitrant and obstructive. To date, Universitas has recovered only $4,703,621.64 of its $30,181,880.30 judgment.

19.     The judgment debtors' refusal to satisfy Universitas' judgment has caused Universitas hardship. Universitas has had difficulty paying the excessive legal fees accrued in trying to recover the proceeds from the Spencer policies, and this has led to disputes with former counsel regarding fees.

Dated: New York, New York   *West Palm Beach, Fla.*
September 6, 2019

Sharon E. Siebert

Sworn to me on this 10 day
of September, 2019

Notary Public

DARLENE A. BROWN
MY COMMISSION # GG 213395
EXPIRES: May 11, 2022
Bonded Thru Notary Public Underwriters

4

# EXHIBIT

# NINE

**Government Exhibit 2225**
**Carpenter Handwritten Calculations**

| | |
|---|---|
| From: | DCarpenter US Benefits <FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCUS> |
| Sent: | Tuesday, May 26, 2009 8:55 AM |
| To: | Wayne Bursey; RobinsonEsq@aol.com |
| Cc: | Dan Carpenter US Benefits |
| Subject: | Sash Spencer |
| Attachments: | Sbizhub09052608380.pdf |

Please check my math......


Jack let's think of letter.....

100GMR_CMP_SVR1-0573283

SASH SPENCER
DEATH CLAIM

Insurance Proceeds    Policy 7305475                    Policy 7320809

Death Benefit        10,000,000              20,000,000
(80% (Section II))    8,000,000              16,000,000
of Proceeds
Premiums Paid          779,000.               1,543,105.79.

Origination Fee (2)
(20% of Premium)     155,840              @ 308,621.16

Placement Fee
(2% of Death Benefit).   N/A              @ 400,000

Placement Fee
(6% of Death Benefit)  600,000                N/A

Premium Funding Fee
(3% of Death Benefit)  300,000                N/A

Termination Fee
(1% of Death Benefit)  100,000                N/A

Total Fees and Charges  1,934,840          2,251,726.95

                      6,065,160          13,749,273.05
                                           6,065,160.00
                                          19,813,433.05

100GMR_CMP_SVR1-0573284

# EXHIBIT

# TEN

## Affidavit of Service Submitted in Support of Charging Order

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,                    :

              Plaintiff,                              :

        -against-                          : Case No. 14-mc-00125-RNC

NOVA GROUP, INC., et al.,                      : Hon. Robert N. Chatigny

           Defendant.                         :

                                            :

------------------------------------------------------X

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                       )     SS.
COUNTY OF NEW YORK  )

      TIMOTHY B. CUMMINS, being duly sworn, deposes and says:

      1.     I am not a party to this action and am over 18 years of age.

      2.     I am the Managing Clerk for the law firm Loeb & Loeb LLP, attorneys for
plaintiff in this action.

      3.     On October 16, 2015, I served true copies of the Notice of Motion for Entry of a
Charging Order Against Judgment Debtor Carpenter Financial Group in Limited Liability
Companies, the accompanying Declaration of Paula K. Colbath, dated October 16, 2015, the
accompanying Memorandum of Law, the accompanying Proposed Charging Order and Rule 7.1
Statement by Federal Express to the below listed parties:

                          Grist Mill Partners, LLC
                          1-3 Mill Pond Lane
                          Simsbury, CT  06070

Grist Mill Partners, LLC
c/o The Company Corporation
2711 Centerville Road
Suite 400
Wilmington, DE  19808
Registered Agent for
Grist Mill Partners, LLC

Grist Mill Partners, LLC
35 Tower Lane
Avon, CT  06001

Carpenter Financial Group
226 Mayapple Road
North Stamford, CT  06903

Carpenter Financial Group, Inc.
c/o The Company Corporation
2711 Centerville Road
Suite 400
Wilmington, DE  19808
Registered Agent for
Carpenter Financial Group, Inc.

Carpenter Financial Group, LLC
c/o The Company Corporation
2711 Centerville Road
Suite 400
Wilmington, DE  19808
Registered Agent for
Carpenter Financial Group, LLC

Timothy B. Cummins

Sworn to before me this
16th Day of October, 2015

Notary Public

ANTOINETTE PEPPER
Notary Public, State of New York
No. 01PE4973833
Qualified in Nassau County
Certificate filed in New York County
Commission Expires January 7, 2019

NY1373652.1
214560-10001

2