UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>BENISTAR, et al )<br>)<br>Defendants )<br>) | CIVIL ACTION NO.<br>3:20-cv-00738-JAM<br><br><br>SEPTEMBER 29, 2022 |

**CARPENTER FINANCIAL GROUP, INC'S  REPLY IN SUPPORT OF ITS MOTION TO INTERVENE AS AN INTERESTED PARTY**

Universitas's Opposition to Carpenter Financial Group, Inc.'s (hereinafter, CFG) Motion to Intervene (Doc. #317) is inaccurate as to both the law and facts of this case and continues to defame Mr. Carpenter and his family.[1] There are several misquotes of cases in the Universitas Opposition, and a simple word search of Judge Laura Taylor Swain's confirmation of the arbitration award in June 2012 mentions "ERISA" six times and "Carpenter" not even once. Mr. Carpenter and CFG are also not mentioned in the Sanctions Order of 2013 and the vacating of the Sanctions Order by the Second Circuit in 2015..

Similarly, on Page 3 of its Opposition, Universitas attributes the ERISA denial ("This argument, too, is meritless"), to Judge Chatigny's verdict against Mr. Carpenter (U.S. v. Carpenter, 190 F.Supp. 260, 281 (D. Conn. 2016). Needless to say, a simple search of the Carpenter Verdict of June 2016 finds no mention of "ERISA" anywhere in the Verdict, much less on page 281. The

---

[1] Universitas often refers to the "Carpenter crime family" in its collection efforts, which term is offensive to both lawyers and to Mr. Carpenter's family and is outside of the bounds of even aggressive draftsmanship.

1

next paragraph cites CFG's request to intervene "so that it can aid the Court in sorting through all of Attorney Manson misstatements." (See Opp. Doc. No 317 at 3, citing Doc. No. 303-1 at 2).

      Universitas claims that CFG's Motion to Intervene is untimely. But CFG chose to intervene a week after Universitas decided to sue 1 & 3 Mill Pond Partners, LLC, which was never subject to a Charging Order or even one of the multiple restraining notices. The property was sold prior to the recent First Amended Complaint to pay off the T.D. Bank loan, which was in foreclosure. This Court knows better than most how acrimonious foreclosure proceedings can be (*See e.g.* In re Dunne, No. 3:17-cv-1395(MPS) 2018 U.S. Dist. LEXIS 166192 at *19 (D. Conn. Sept 27 2018) and Coan v. Dunne, 602 B.R. 429, 435–37 (D. Conn. 2019)) and this case has proven no exception. Ironically, Universitas sued T.D. Bank in 2015, and CFG respectfully directs this Court to Judge Scheindlin's comprehensive opinion from December 2015 stating that any suit by Universitas against any party after October 2012 was time-barred by various Statute of Limitations, yet here we are 10 years later. (See Judge Scheindlin's opinion at Doc. No. \_\_\_\_ Exhibit \_\_\_\_\_. *See also Universitas Education, LLC, individually and on behalf of the Charter Oak Trust v. TD Bank*, N.A., 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015)

      As this Court knows from previous filings in this case, both 100 Grist Mill Road and 1 & 3 Mill Pond were purchased with a mortgage from T.D. Bank in 2007 before Sash Spencer died in 2008 and before the Charter Oak Trust received the funds in 2009 after Halloran & Sage sued Lincoln. Universitas conveniently leaves that part out—Lincoln was sued in 2009 by Halloran & Sage and decided to settle. Had Halloran & Sage not been successful in suing Lincoln in 2009, there would be no Sash Spencer proceeds to fight over in 2022.

      This Court also knows from previous filings that neither Grist Mill Partners (owner of 100 Grist Mill Road property) nor Mill Pond Partners (owner of 1&3 Mill Pond Lane) received any payments from the Sash Spencer proceeds, which clearly obviates any possible or even fallacious

"unjust enrichment" claim. Neither were named Judgment Debtors in the Clerk's Judgment of 2014. But in this case, Dan Labelle of Halloran & Sage had to make numerous appearances before Judge Swain just to get the lease approved at 100 Grist Mill Road for Curaleaf to move in. Not only did Judge Swain know this was a historic first—Judge Swain also knew that Caroline Financial Group, Inc. was the Managing Member of Grist Mill Partners, LLC and Carpenter Financial Group was the majority owner of Grist Mill Partners, LLC (N.B. No "Inc." or "LLC" was contained within the Restraining Notices or the Universitas filings by Michael Barnett for Carpenter Financial Group). The key here is that Caroline Financial Group was never sued by Universitas and neither 1&3 Mill Pond nor Grist Mill Partners were listed as judgment debtors in the Michael Barnett list or the CLERK'S JUDGMENT (LTS 1590-Doc. No. 475) where the Clerk copied Michael Barnett's list of debtors and amounts.

I. **CARPENTER FINANCIAL GROUP, INC'S MOTION TO INTERVENE IS JUSTIFIED**

CFG's reason for filing its Motion to Intervene is to save this Court's time and preserve scarce judicial resources. However, Attorney Manson has suggested that Judge Chatigny should hold off deciding on CFG's Rule 60(b)(5) to Vacate the Charging Order in the October 2015 case until this Court decidesis despite the fact that neither CFG nor Mr. Carpenter are parties in this case.

II. **THE CHARTER OAK TRUST WAS, IN FACT, AN ERISA PLAN**

Universitas cannot have it both ways. If the Charter Oak Trust Welfare Benefit Plan was not an ERISA Plan, then Universitas has no right to the insurance proceeds because the true

3

beneficiary of the Sash Spencer polices was Grist Mill Capital, LLC, a Connecticut domiciled LLC formed by Attorney Robert Cox of Halloran & Sage, and Attorney Cox was never served in any case at any time. GMC-CT was at all times the Power of Attorney for all Charter Oak Trust policies—including the two Spencer policies under a Split-Dollar Agreement and the Spencer Beneficiary Designation Form has been submitted several times to this Court and it clearly states that GMC-CT is the beneficiary of the policy proceeds—not Universitas. *See*, *e.g.* Doc Ex.

Sharon Siebert stated in her Affidavit of September 2019 submitted in a lawsuit against now-deceased Jack Robinson's estate that she knew about the 20% hold back provision of Section 6.01. See Seibert Affidavit attached as Exhibit ____ to Doc. No. ____. Also, in July 2008 a month after Sash Spencer's death and a year before Halloran & Sage sued Lincoln, Universitas disclaimed the entire $30,000,000 of insurance proceeds to the Widow Mary Spencer, who knew nothing about the insurance proceeds. See e.g. July 2008 Agreement attached as Exhibit ____ to Doc. No. ____.

If the Charter Oak Trust was not an ERISA Plan, but a fraud as Universitas claims, then the Sash Spencer policies were the property of Grist Mill Capital, LLC and Universitas had no right to the policy proceeds. Moreover, Judge Chatigny specifically found that the Sash Spencer proceeds were the illicit proceeds of a fraud against Lincoln, so clearly Universitas would not have a claim to those proceeds either. In fact, on page 3 of its Opposition Brief (Doc. 317) Universitas suggests that the claim of ERISA Preemption argument was mentioned in Judge Chatigny's Verdict of June 2016: According to Universitas's bried, "This argument, too, is meritless," incorrectly citing U.S. v. Carpenter, 190 F.Supp. 260, 281 (D.Conn. 2016). Suffice it to say a word search on WestLaw cannot find the word "ERISA" anywhere in Mr. Carpenter's Verdict of June 2016. However, the term "ERISA" can be found in Judge Swain's Ruling, below:t

4

So, if the Charter Oak Trust was a Multiple Employer Welfare Benefit Plan, as the federal Department of Labor and the Employee Benefits Security Administration agents testified before Judge Chatigny to justify their Raid of May 26, 2011—then clearly Judge Scheindlin was right in saying that Universitas was time-barred in suing anyone—including the alleged judgment debtors of August 2014—after October of 2012. But if the Charter Oak Trust is not an ERISA Plan as Attorney Manson now claims—then there was no "theft" here because Grist Mill Capital LLC was not just the "original" beneficiary of the insurance proceeds, it was the ONLY beneficiary of the insurance proceeds and owner of both policies under the Split-Dollar Agreement's terms, and it was Wayne Bursey of GMC that used Halloran & Sage to sue Lincoln—and it was Wayne Bursey that authorized the payment of the insurance proceeds to Grist Mill Capital as required by all of the contractual agreements. Once again—Judge Swain's June 2012 decision mentions ERISA and does not mention Mr. Carpenter or Carpenter Financial Group at all.

But Universitas continues to misunderstand the importance of *Peacock v. Thomas* 516 U.S. 349 (1996). The Supreme Court established the rule for not being able to sue the Company or the Chairman when the Pension Plan runs out of money—not under the Preemption Clause of ERISA—but under the century old decision in *H.C. Cook v. Beecher*, 217 U.S. 497 (1910) which originated in Connecticut. The Supreme Court made clear that it <u>never</u> allowed a third party to be sued if it was not already liable for the debt:

> The Court also noted that it had "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." Id. at 357, 116 S.Ct. 862. Significantly, it immediately gave definition to the phrase "person not already liable for that judgment" by describing the veil-piercing claims in *H.C. Cook Co. v. Beecher* and concluding that "Beecher governs this case." Id. at 358, 116 S.Ct. 862.

### III. **CFG SATISFIES ALL FOUR REQUIREMENTS FOR INTERVENTION**

Contrary to Universitas' tortured interpretation of the facts of this case as well as the law in general, CFG brought this Motion to Intervene very quickly after the First Amended Complaint because the only complaint as to Seir Hill is that it borrowed money from CFG (but which one of the four CFG entities?), and Universitas has sued Mr. Carpenter's daughter Caroline Meckel because she had the audacity to purchase for full value with a mortgage, a property from Birch Hill Partners, LLC; and Birch Hill Partners, LLC allegedly received some checks from CFG (but which one?).

Similarly, 1 & 3 Mill Pond Partners was owned by one of the CFGs listed in the Michael Barnett Restraining Notice of September 2014—but it there are also three Avon Capitals—Connecticut, Wyoming, and Nevada, and Attorney Barnett copied the Tax ID for the wrong Avon Capital. So clearly the CFG Motion to Intervene is both timely and necessary

There are only two parties that can describe Universitas's misstatements in great detail. Caroline Financial Group, Inc. is the Managing Member of many of the LLCs and appeared before Judge Swain in 2014. Caroline was not a judgment debtor and has not been sued. CFG on the other hand allegedly received $11,140,000 and has been dealing with an unlawful and untimely Charging Order in front of Judge Chatigny from October 2015, seven years ago. TD Bank is not just foreclosing on Grist Mill Partners, LLC and 100 Grist Mill Road—TD Bank is also suing (and threating CFG on a regular basis) so CFG needs the right to intervene in this case to vacate Universitas and its fraudulent claims on 100 Grist Mill Road, which is in the process of being sold. But clearly—no other party can represent the foreclosure danger that CFG faces from TD Bank because of the Universitas litigation.

Universitas has asked Judge Chatigny to hold off on the Rule 60(b)(5) Motion to discharge CFG's $11,140,000 Charging order because Universitas has received over $22,000,000 from various parties, even though CFG is not yet a party in this action and the Charging Order has been

6

in front of Judge Chatigny since October 2015. As the Greyhound Motion to Dismiss points out—this Court does not have diversity or subject matter jurisdiction and should dismiss the entire case immediately. Since the entire case is an illegitimate "alter ego" case, which Judge Swain stated in January 2015 are not allowed in the Second Circuit, the claims of "unjust" enrichment arebaselessand it is only CFG that faces an uncertain future from TD Bank should it not be allowed to permissively intervene.

PetitionerM

## CONCLUSION

Wherefore, the Intervenor, Carpenter Financial Group, Inc., respectfully prays that this Court grants this motion and allows CFG to proceed as an intervening Interested Party in this matter.

        Respectfully Submitted
        CARPENTER FINANCIAL GROUP, INC.

By: */s/ Jonathan J. Einhorn*
JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

## CERTIFICATION

I hereby certify that on this 28th day of September, 2022, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

By: */s/ Jonathan J. Einhorn*
JONATHAN J. EINHORN