# Exhibit A

**DAN E. LABELLE**  Direct 203 222-4303  labelle@halloran-sage.com
Also admitted in New York

March 30, 2020

**By ECF**

Hon. Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY  10007

      Re:    *Universitas Education, LLC v. Nova Group, Inc. et al.*
              11-cv-1590-LTS-HPB and 11-cv-8726-LTS-HBP

Dear Judge Swain:

      We are the attorneys for Moonstone Partners, LLC ("Moonstone"), Benistar Admin Services, Inc. ("BASI") and Molly Carpenter.  We write in response to the March 23, 2020 letter motions filed with the Court by Universitas Education, LLC ("Universitas") by Benjamin Chernow, Esq. ("the Letter Motions")  Through the Letter Motions, Universitas asks the Court to render judgments in this long ago closed case against Moonstone, BASI and Ms. Carpenter.  For the reasons discussed below, the relief sought by Universitas should be denied.

      Mr. Chernow's letter motions are improper for myriad reasons, which we discuss more fully below.  Before addressing the merits of the Letter Motions, however, we comment as a preliminary matter on counsel's assertion that "[t]he Carpenter entities have done nothing but continue their practice of obfuscation and delay, preventing Universitas from any meaningful recovery."  We are not certain who Mr. Chernow is referring to when he mentions "the Carpenter entities." but his blanket statement is purposely incomplete and therefore misleading.  For example, the undersigned counsel, on behalf of judgment debtor Grist Mill Trust ("GMT"), not only has not obfuscated or delayed recovery efforts, but has worked collaboratively with Universitas's predecessor counsel, Ms. Paula Colbath, to effect the settlement and satisfaction of the $4,487,007.81 judgment against GMT.  (Doc. 651).  Similarly, Moonstone worked collaboratively with Ms. Colbath to recover certain insurance proceeds.  Moonstone bore the expense of litigation with the insurer and split the recoveries with Universitas.

This activity by Moonstone was subsequent to and in addition to the insurance recovery which was the subject of the Court's November 20, 2013 turnover order against United States Automobile Association ("USAA"). (Doc. 340).

Turning now to the merits of the Letter Motions, the Letter Motions should be denied in the first instance because the Letter Motions seek dispositive relief which is not authorized under the Local Rules for the Southern District. Rule 7.1(d) of the Local Rules provides that "applications for extensions or adjournments, applications for a pre-motion conference, and similar non-dispositive matters" may be made by letter motion. The 2013 Committee Note issued incident to Rule 7.1(d) states specifically that "Local Civil Rule 7.1(d) is not intended to expand the types of motions that can be made by letter-motion. For example, motions to dismiss or motions for summary judgment may not be made by letter-motion." In violation of Rule 7.1(d), the Letter Motions improperly seek dispositive relief in the form of judgments against Moonstone, BASI and Ms. Carpenter. The Letter Motions also violate Section 2.c. of Your Honor's Individual Rules which provide that letter motions may be filed only if they comply with the S.D.N.Y. Local Rules.

The Letter Motions also violate the most basic rules of civil procedure and due process. Universitas has never served Moonstone, BASI or Ms. Carpenter with a summons and complaint or other plenary process by which the Court would acquire jurisdiction to adjudicate multi-million dollar claims against them. In simple terms, Universitas has never sued Moonstone, BASI or Ms. Carpenter for the claims it now asks the Court to summarily adjudicate based upon two two-page letters. Other than subpoenas related to post-judgment discovery, Universitas has served no process on BASI. The only process served by Universitas against Moonstone and Ms. Carpenter, other than subpoenas related to post-judgment discovery, was a turnover motion in which Universitas sought to intercept certain insurance proceeds destined for payment to Moonstone. (Docs. 219, 222 and 223, "the Moonstone Turnover Motion"). The only monetary relief sought in the Moonstone Turnover Motion was the payment by USAA of insurance proceeds otherwise payable to Moonstone. No monetary relief was sought against Moonstone or Ms. Carpenter and Ms. Carpenter appeared only because she had an ownership interest in Moonstone. The Moonstone Turnover Motion was fully adjudicated by the Court and resulted in an Order directing USAA to pay the insurance proceeds to Universitas. (Doc. 340).

There are 659 docket entries in this case. It is cavalier and dangerous for Universitas to ask the Court to enter judgment against parties whose names may appear in the docket without reminding the Court that the appearances by Moonstone, BASI and Ms. Carpenter were for limited purposes and that no plenary process was ever served on these parties. The danger posed by the Letter Motions is made worse by an apparent lack of candor in Mr. Chernow's request for the specific judgment amounts of $1.1 million against Moonstone and $30.6 million against BASI and Ms. Carpenter. In its decision on the Moonstone Turnover Motion, the Court made a finding

that Moonstone wrongfully received $1.1 million from the Spencer life insurance proceeds. In asking now for entry of a $1.1 million judgment against Moonstone, Mr. Chernow fails to account for the monies already paid to Universitas by USAA on Moonstone's behalf. These monies consist of the funds paid by USAA as a result of the Moonstone Turnover Motion and the additional monies recovered from USAA subsequently as described above in the second paragraph of this letter. The undersigned counsel does not know the exact amount of money paid by USAA, but the amount is estimated to be several hundred thousand dollars. Even if Universitas were entitled to a judgement against Moonstone, it is incumbent upon Universitas to inform the Court of the amount of funds already recovered so that proper credit is given and a double recovery avoided.

Mr. Chernow is even less candid with the Court in requesting the specific judgment amount of $30.6 million against BASI and Ms. Carpenter without disclosing the total amount of money Universitas has already recovered. The Court previously adjudicated the total amount of Universitas' loss as $30,600,000. Judgment in that amount entered against Daniel Carpenter and Grist Mill Capital LLC because both of those parties received the full $30.6 million amount. Lesser judgment amounts were entered against other parties who received less than the total $30.6 million. (Docs. 474 and 475). Universitas suffered a single loss for which only one recovery may be had. Before asking for the specific money judgments of $30.6 million against BASI and against Ms. Carpenter, Universitas should have informed the Court that it had already recovered *more than half of its $30.6 million loss*. Instead of telling the Court that Universitas had been "prevented from any meaningful recovery," Mr. Chernow should have expressly acknowledged the satisfaction of the $4,487,007.81 judgment against GMT (Doc. 651) and the several hundred thousand dollars paid by USAA. More significantly, Mr. Chernow should have informed the Court that Universitas *recovered $12 million* from Wilmington Savings Fund Society, FSB ("WSFS"). WSFS was the Insurance Trustee of the Charter Oak Trust at the time of the events giving rise to Universitas' claims. Attached as Exhibit 1 is a copy of an interpleader complaint filed in the U.S. District Court for the Eastern District of Virginia. The interpleader complaint documents the $12 million recovery by Universitas and the fact that Universitas was represented by Mr. Chernow's office in the arbitration which led to the recovery. Exhibit 1, ¶¶ 8-13.

We will not attempt to identify all of the defenses which Moonstone, BASI and Ms. Carpenter would mount if Universitas actually sued them and claims were litigated. Suffice it to say, however, the alter ego claims made against BASI and Ms. Carpenter are half-baked and not legally viable. Under New York law, to establish alter ego liability, "[a] party seeking to pierce the corporate veil must establish that (1) the owners exercised complete domination of the corporation <u>in respect to the transaction attacked</u>; and (2) that such domination was used to commit a fraud or wrong <u>against the plaintiff which resulted in the plaintiff's injury</u>." *Clark Rigging & Rental Corp. v. Liberty Mutual Ins. Co.,* 179 A.D.3d 1510, 1511 (N.Y.A.D. 4th Dept. 2020) (emphasis added). The

transaction which Universitas attacks in this litigation is the misappropriation of the Spencer life insurance proceeds and the resulting loss of approximately $30 million. Plaintiff's reliance upon certain litigation in Massachusetts (Doc. 659, Exhibit 1/Exhibit A and *Iantosca v. Benistar Admin. Services.*, 567 Fed. Appx. 1) ("the Cahaly Litigation") is totally misplaced. The Cahaly Litigation involved different plaintiffs and arose from tortious conduct occurring nearly twenty years ago having nothing to do with Universitas or its loss. Neither this Court nor any other has ever made an alter ego liability finding against BASI or Ms. Carpenter with respect to the transaction at issue in this litigation.

The two Orders referenced in Mr. Chernow's letter (Docs. 588 and 644) also do not support Universitas' position. The Orders do not constitute a finding by this Court of alter ego liability on the part of BASI or any other entity. The subject Orders dealt with the scope of the Restraining Notices which had been issued by Universitas, not with liability. The list of "entities adjudicated as alter egos of a judgment debtor" included in Doc. 644 was a list put together by Universitas' counsel.[1] The list is obviously taken from the Cahaly litigation and so is without legal significance for the reasons stated above. It also does not appear that the sourcing of the alter ego list in Doc. 644 was clearly explained to the Court at the time the Order was issued and the Court may well have assumed that Universitas itself had obtained alter ego findings in other fora. On one occasion, when the Court actually discussed alter ego findings, it rejected a request by Universitas to make an alter ego finding against entities allegedly affiliated with the Judgment Debtors. "Accordingly, the burden is on Universitas to establish that any entity that is not a Judgment Debtor should be treated as an alter ego of one or more Judgment Debtors, and until Universitas has obtained a determination establishing alter ego status (as it has with respect to certain entities), CPLR 5222(b) does not authorize the restraint of assets of such non-Judgment Debtor entities." (Doc. 588, ¶ 3) (emphasis added).

For all the reasons stated, it is improper and unfair to adjudicate the alleged liability of Moonstone, BASI and Ms. Carpenter in this proceeding, particularly through the flawed procedural device of the Letter Motions. Universitas has never interposed money damage claims against these parties who have made only limited appearances in this action. Moonstone, BASI and Ms. Carpenter are effectively non-parties. In another context, Your Honor has shown appropriate caution with regard to the exercise of this Court's ancillary judgment enforcement jurisdiction. We refer to the Memorandum Opinion and Order (Doc. 545) where this Court dismissed summary proceedings involving disputed legal and factual issues without prejudice to appropriate plenary proceedings in fora of competent jurisdiction with all necessary parties joined. The Letter Motions should similarly be dismissed without prejudice to appropriate plenary proceedings should Universitas choose to commence such proceedings.

---

[1] BASI is included on the list, Ms. Carpenter is not.

Very truly yours,

/s/ Dan E. LaBelle

Dan E. LaBelle

cc. All Counsel of Record Via ECF

DEL/hs