## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>BENISTAR, ET AL.<br><br>*Defendant*s. | CASE NO. 3:20-cv-00738-JAM |

## PLAINTIFF UNIVERSITAS EDUCATION, LLC'S OPPOSITION TO MOTION TO VACATE PREJUDGMENT ATTACHMENT

Plaintiff Universitas Education, LLC ("Universitas") hereby files this Opposition to Grist Mill Partners, LLC's ("GMP") Motion to Vacate Prejudgment Attachment, (the "Motion"). GMP has attempted to dissolve this prejudgment attachment once before. However, the parties came to an agreement to substitute collateral for the attachment, thereby rendering GMP's previous motion moot. GMP once again fails to assert any persuasive rationale for dissolving the Pre-Judgment Remedy ("PJR"), *to which it stipulated*. Furthermore, it fails to explain why this Court should also release the collateral, which GMP itself agreed to place in escrow, pending the resolution of this case. This renewed motion to dissolve is nothing more than a transparent attempt to take assets from the control of this court so that those assets can be concealed and further delay Universitas' recovery on its judgments. In support of its opposition, Universitas states as follows:

## FACTUAL BACKGROUND

Universitas has extensively briefed the factual background of this case in its prior motions and pleadings, and Universitas respectfully presumes this Court's knowledge of those facts. Thus, Universitas offers a brief recitation of the facts most pertinent to the instant Motion to Dissolve.

1

GMP is owned by Carpenter Financial Group, Inc. ("CFG"), which has already been found to be under the control of Daniel Carpenter. Mr. Carpenter exercises control over a myriad of shell companies, including GMP, which he largely uses to conceal assets for his own beneficial use, as well as for his family. Mr. Carpenter has gone to great pains to render himself "judgment proof," and both CFG and GMP comprise part of the structure of shell companies that hold assets for his benefit that are not in his name. These assets, including those of GMP, should be applied to satisfy the remainder of the $30.6 million judgment outstanding against Mr. Carpenter, less certain other recovery by Universitas. The instant Motion filed by GMP is nothing more than an attempt by Mr. Carpenter to further conceal potentially recoverable assets from Universitas's collection attempts.

Soon after initiating this case, Universitas filed a motion for PJR seeking to attach certain properties in the hands of the Defendants and preserve those properties in the event that Universitas was successful on its claims and acquired money judgments against GMP and the other defendants named in this case. (Doc. No. 9.) While GMP opposed the relief sought in the PJR, it eventually entered into a Stipulation for Prejudgment Attachment of Real Estate ("Stipulation"). (Doc. No. 65.) This Court subsequently entered an Order of Attachment, (Doc. No. 66), which permitted Universitas to attach, to the value of $700,000, the real property belonging to GMP located at 100 Grist Mill Road in Simsbury, Connecticut.

The Stipulation noted that it was entered into in order to avoid the costs and uncertainty of formal adjudication of Universitas' PJR Application. (Doc. No. 65 at 1.) The Stipulation further noted that the Order of Attachment was "non-modifiable" and that GMP would not "undertake any actions, directly or indirectly, which diminish the value of the attachment[]" of the property at 100 Grist Mill Road "without the prior written consent of [Universitas]."

Universitas filed its amended Complaint on April 6, 2022, and GMP moved to dismiss the Amended Complaint. GMP's Motion to Dismiss, as well as the motions to dismiss filed by the other defendants, remain pending before this Court. GMP denies that it has received any part of the stolen insurance money at issue in the case. (Doc. No. 363.) In August of 2022, GMP accepted an offer to purchase the property it owned, which appears to be its only asset, in order to satisfy a foreclosure proceeding based on non-payment of a mortgage. GMP moved to Vacate the PJR on an emergency basis. (Doc. No. 322.) GMP then moved to substitute security, in the form of the sale proceeds, for the attachment on its property. (Doc. No. 331.) On November 1, 2022, this Court granted the Motion to Substitute Security for Attachment after all parties agreed to the relief sought therein. (Doc. No. 338.) At the time, this Court noted that such relief mooted GMP's first motion to vacate the PJR. (Doc. No. 338.) On January 3, 2023, the Connecticut Superior Court overseeing the foreclosure proceeding certified the sale, and on January 4, 2023  the proceeds of the sale, approximately $630,000, were remitted to this Court pursuant to the terms of its November 1, 2022 Order. (Doc. No. 346, 347, 348, 349, and 350.)

This Motion by GMP to remove potentially recoverable assets from the control of this Court is consistent with multiple steps taken by Daniel Carpenter over the past several years to interfere with Universitas' collection efforts, which are detailed in Universitas's opposition to GMP's first motion to vacate the PJR. (Doc. No. 326, pp. 2-3.)[1] GMP effectively argues that the

---

[1] Specifically, Mr. Carpenter has attempted to threaten an entity involved in a garnishment proceeding in Oklahoma to remit all money in a bank account to one of Mr. Carpenter's known associates in order to get it out of a court-appointed receiver's control, as well as offloading property surreptitiously when he was under a continuing obligation to produce discovery related to that property in this matter. These actions are consistent with Mr. Carpenter's adjudicated history of obfuscation and litigation abuse. Mr. Carpenter and the entities under his control have unabashedly abused process before this and many other courts and more than a dozen arguments advanced by Mr. Carpenter and his entities have been found to be sanctionable. Most recently, Mr. Carpenter and his counsel were admonished by the Second Circuit for making clearly frivolous

law of this case is directly applicable to it and is trying to circumvent this Court's process for making such determinations with respect to the motions to dismiss. While certain other parties have been dismissed from the proceedings, GMP is not similarly situated to those parties, and the relevant case law makes clear that its dismissal is not a foregone conclusion. GMP should honor the PJR it agreed to enter into, as well as the modifications thereto, until this Court properly decides the pending motions to dismiss. This motion, which is a transparent attempt by Mr. Carpenter and his entities to remove collectable assets from the reach of Universitas, should be denied.

## ARGUMENT

I. Legal Standard for Prejudgment Remedies

A prejudgment remedy is "intended to secure the satisfaction of a judgment should the plaintiff prevail" in a case. *Floodbreak, LLC v. Art Metal Indus., LLC*, 520 F. Supp. 3d 167, 173 (D. Conn. 2021) (internal citations omitted). Such a remedy is appropriate if the court, "upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered in the plaintiff's favor in the amount of the prejudgment remedy . . . . *Id.* (quoting Conn Gen. Stat. Sec. 52-278d(a)). Thus, a trial court must find that there exists probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. *Savalle v. Kobyluck, Inc.*, 2001 U.S. Dist. LEXIS 24312, at *5 (D. Conn. Sept. 1, 2001) (quoting *Calfee v. Usman*, 616 A.2d 250, 253 (Conn. 1992)). Probable cause in the context of a PJR has been defined by this Court as a "flexible common sense" standard and a "bona fide belief in the existence of the facts essential under the law for the action" such that a Court can, under the circumstances, entertain the claim.

---

arguments on appeal and Mr. Carpenter has already been sanctioned for discovery abuses in the instant action.

*Floobreak*, 520 F. Supp. at 173. Probable cause does not demand that this bona fide belief be "correct or more likely true than false" nor does it require "proof by a fair preponderance of the evidence." *Id.* Instead, this Court must simply "weigh probabilities" to determine whether a PJR should issue.

A court must also consider the amount being sought after an adversarial evidentiary hearing, not simply the validity of a plaintiff's claim. *Savalle*, 2001 U.S. Dist. LEXIS 24312 at *5 (citing *Calfee*, 616 A.2d at 254.) A court does not need to determine the measure of damages with "mathematical precision, but there must be a reasonable basis for measuring the Plaintiff's loss." *Floodbreak*, 520 F. Supp. 3d at 174 (quoting *Rafferty v. Noto Bros. Constr., LLC*, 795 A.2d 1274, 1279 (Conn. App. 2002) (internal quotations omitted)). "A court is obligated to dissolve a prejudgment remedy such as an attachment upon realty if there is no probable cause to sustain the validity of the plaintiffs claim." *Good v. Paine Furniture Co.*, 35 Conn. Supp. 24, 25 (Conn. Super. Ct. 1978).

II.    Legal Standard for Res Judicata

Under New York law, which this Court has found is applicable in the instant action for purposes of the *res judicata* analysis, *res judicata* bars successive litigation "based on the same transaction or series of connected transactions if:" (1) there "is a judgment on the merits rendered by a court of competent jurisdiction," and (2) the party "against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was . . . ." *People ex rel. Spitzer v. Applied Card Sys. Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008); *Flowers v. Connecticut Light & Power Co.*, No. 21-860-cv, 2021 U.S. App. LEXIS 35105, at *2 (2d Cir. Nov. 29, 2021). New York adheres to a "transactional analysis of res judicata," which bars later claims arising out of the same facts and circumstances as an earlier litigated claim, even where a claimant bases new claims on

5

"different legal theories or seeks dissimilar or additional relief." *Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-07235 (LDH)(ST), 2022 U.S. Dist. LEXIS 60895, at *12 (E.D.N.Y. Mar. 31, 2022) (quoting *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994)). In determining whether two actions arise from the same transaction, a court examines whether the "underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *E.g. Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (internal citations omitted). Thus, whether *res judicata* applies depends on whether Universitas should have brought the current claims in the prior litigation and if the Southern District would have been able to hear those claims or exercised its discretion to do so.

While courts cannot arbitrarily refuse to apply *res judicata* in a given case, *Mohamed v. Rajoub*, 767 F. App'x 91, 93 (2d Cir. 2019) (internal citations omitted), courts have discretion to apply equitable considerations to the application of *res judicata* in the context of a given case. *United States v. Town of Bolton Landing*, 946 F. Supp. 162, 169 (N.D.N.Y. 1996) ("[R]es judicata is not an inflexible doctrine, and need not be applied by the court, even if the technical requirements of the doctrine have been met.") (internal citations omitted). As New York Courts have noted, rigid application of res judicata is to be avoided if "considerable injustice" is likely to result. *Reilly v. Reid*, 45 N.Y.2d 24, 28 (N.Y. 1978). "In properly seeking to deny a litigant two 'days in court', courts must be careful not to deprive him of one." *Id.*

III.   Universitas has Demonstrated that GMP has Harmed it and GMP's Res Judicata Arguments do Not Eliminate Probable Cause to Sustain the PJR.

Here, the entirety of GMP's argument in favor of finding that there no longer exists probable cause to maintain the prejudgment remedy of keeping the sale proceeds of the property in escrow with this Court is a conclusory claim that GMP has caused Universitas no harm and a

reiteration of its *res judicata* arguments from its Motion to Dismiss. (Doc. No. 262.) This argument is wholly insufficient to support the dissolution of the Order of Attachment and its subsequent modification, both of which were stipulated to by GMP.

GMP argues in conclusory fashion that Universitas has failed to demonstrate that it caused Universitas any harm because there is no evidence that GMP ever received any portion of the stolen funds. As a result, GMP argues that Universitas lacks Article III standing to pursue a claim under *Lujan v. Defs. of Wildlife*, 504 U.S.555, 560 (1992). GMP is mistaken. As an initial matter, Universitas has pled an alter ego claim against GMP, which is indisputably a cognizable legal claim with an element of harm to Universitas. This Court has previously found that a reverse veil-piercing claim against GMP is appropriate under Delaware law, and that the imposition of alter ego liability may be possible under that theory. Universitas has pleaded extensive facts demonstrating Mr. Carpenter's complete control over GMP and the fact that he used GMP to conceal his beneficial ownership interest in the property at 100 Grist Mill Road from putative creditors. Thus, Universitas clearly has standing to at least bring an alter ego claims against GMP, even if it has not specifically alleged that GMP received the insurance benefits stolen from Universitas because such claims do not require the tracing of stolen assets.

Nor is this alter ego claim clearly futile pursuant to the doctrine of *res judicata*. GMP hangs its hat on the fact that other parties have been dismissed in this case on *res judicata* grounds and that Universitas must have included GMP in its post-judgment turnover motions in New York because Universitas knew of GMP's existence at the time that Universitas brought those motions. While Universitas concedes that the Southern District of New York's decision on the merits was a valid and final decision as to the turnover respondents in that case; that GMP is in privity with the turnover respondents for purposes of personal jurisdiction because it alleges that GMP is an

alter ego to those respondents; and that Universitas could have theoretically brought veil-piercing or alter ego claims in a turnover proceeding, it does not follow that the claims against GMP are automatically barred by *res judicata*.

A crucial part of *res judicata* analysis under New York law is whether the key facts in a case allegedly barred by *res judicata* "form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations" with the prior case. *E.g. Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000). Here, GMP concedes that it never received any of the stolen funds and was not involved in the transfer of those funds in any way. GMP further notes that the Southern District of New York has denied Universitas's attempts to seek post-judgment remedies, including turnover, against non-parties to the New York litigation that did not have a significant connection to the Spencer Proceeds. (Doc. No. 363, p. 9); *Universitas Education, LLC v. Nova Group, Inc.*, 2015 U.S. Dist. LEXIS 435, at *10-11 (S.D.N.Y. Jan. 5, 2015).

Here, the fact that GMP was totally disconnected from the flow of the Spencer Proceeds makes clear that it would not have formed a convenient trial unit with the other Turnover Respondents, all of either received or transferred stolen funds or directed the transfer of stolen funds. Nor would it have comported with GMP's expectations to be haled into court to be a part of a Turnover Motion for stolen insurance proceeds it never received or caused to be transferred. Moreover, the Southern District of New York's previous denial of relief to Universitas under similar circumstances when Universitas attempted to recover from third parties with only an attenuated connection to the stolen insurance proceeds casts significant doubt as to whether the Southern District of New York would have entertained claims against GMP at all. Additionally, GMP assumes it is similarly situated to the other parties dismissed in this case, despite the fact that

all the dismissed entities had a more significant role in the enterprise and the theft of the proceeds.[2] This further undercuts GMP's conclusory argument that it too would have been a proper party in the turnover motion and that any claims against it are barred by *res judicata*. Finally, GMP completely neglects any equitable consideration in its analysis. Universitas has been diligently attempting to collect its judgment for over a decade and has been obfuscated at every turn by Mr. Carpenter and the entities that he controls. New York law makes clear that "rigid application of *res judicata* is to be avoided" where such rigid application would "deprive" a litigant of their day in court. *Reilly*, 45 N.Y.2d at 28. Universitas is properly seeking an alter ego determination against GMP after it has failed to collect from Mr. Carpenter and the majority of the other entities against which it has judgments after diligently attempting to do so since 2011. The equities are decisively in Universitas's favor and counsel against the suggested rigid application of *res judicata* contemplated by GMP.

For purposes of a PJR analysis, this Court need only find that there exists probable cause that a judgment will be entered against GMP to sustain the PJR and keep the Order of Attachment and its modifications in effect. As explained, *supra*, Universitas clearly pleads an alter ego claim against GMP, and that alter ego claim is not necessarily barred by *res judicata.* Thus, Universitas sustains its burden to demonstrate that probable cause exists to maintain the PJR in this case and there exists no good cause to dissolve the PJR to which the parties have stipulated.

Moreover, Universitas's judgment against Mr. Carpenter is in excess of $30 million, which far exceeds the value of the property at 100 Grist Mill Road. Because Universitas is seeking an

---

[2] Universitas respectfully maintains that the dismissal of those parties was incorrect and that this Court wrongly decided the motions to dismiss filed by those parties. However, Universitas respects that this Court's prior decision, (Doc. No. 110), remains the law of the case and that Universitas is bound by the findings contained therein.

alter ego determination, GMP would be liable for the entire judgment if found to be an alter ego of Daniel Carpenter. The parties stipulated an attachment value of $700,000, and a little over $630,000 was deposited in escrow with the Court. The amount deposited falls well short of the amount of recovery Universitas is seeking. Thus it remains clear that probable cause also remains to keep the collateral in the safe hands of this Court pending the resolution of the outstanding motions to dismiss.

Finally, Universitas notes that no adversarial evidentiary hearing for the PJR ever occurred in light of the fact that the parties stipulated to both the attachment and later the substitution of collateral. Thus, if this Court was to grant GMP any relief, it would still be appropriate to remand the proceedings for such an evidentiary hearing to give Universitas the opportunity to provide further evidence to support its request for a PJR. Barring that, GMP should wait for a determination on the merits of its Motion to Dismiss the Amended Complaint, instead of attempting to procedurally circumvent the processes of this Court with respect to that determination.

## CONCLUSION

For all the aforementioned reasons, Universitas respectfully requests that this Court deny GMP's Motion to Vacate the Prejudgment Attachment.

Dated: April 4, 2023

<div style="margin-left:40%">

Respectfully submitted,

/S/ Joseph L. Manson III
JOSEPH L. MANSON, III
(*Admitted Pro Hac Vice*)
jmanson@jmansonlaw.com
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693
ATTORNEYS FOR PLAINTIFF
UNIVERSITAS EDUCATION, LLC

</div>

10

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 4th day of April, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

<u>/s/ Joseph L. Manson III</u>