### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

UNIVERSITAS EDUCATION, LLC

*Plaintiff,*

v.

BENISTAR, ET AL.

*Defendant*s.

CASE NO. 3:20-cv-00738-KAD

### PLAINTIFF UNIVERSITAS EDUCATION, LLC'S OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(h)(3)

Plaintiff Universitas Education, LLC ("Universitas") hereby files this Opposition to the Motion to Dismiss Pursuant to Rule 12(h)(3) ("Motion to Dismiss") filed by Seir Hill Partners, LLC ("Seir Hill"), Greyhound Partners, LLC ("Greyhound"), 1 & 3 Mill Pond Partners, LLC ("Mill Pond"), and Birch Bill Hill Partners, LLC ("Birch Hill") (collectively the "LLC Defendants"). This is the third Motion filed by Mr. Carpenter and entities under his control in the span of several weeks alleging that the above-captioned action must be dismissed because Universitas lacks Article III standing to pursue its claims in its Amended Complaint.[1] This argument has been available to the LLC Defendants since April of 2022, and they are only now making a motion to dismiss based on Universitas's purported lack of standing a year after they were named in the Amended Complaint. The arguments advanced in the instant Motion to Dismiss and in the others filed before this Court are meritless. They are nothing more than a continuation

---

[1] Grist Mill Partners, LLC first made an Article III standing argument in a renewed motion to vacate the prejudgment relief to which it had stipulated for the first time in March of 2023, nearly three years after it was named in the original Complaint. (Doc. Nos. 362, 363.) Universitas addressed the meritless argument in its opposition to that motion to vacate. (Doc. No. 371.) Grist Mill Partners filed a reply brief, but tellingly did not further defend their standing argument. Daniel Carpenter made the same argument in a *pro se* motion he filed on behalf of Steven and Caroline Meckel, for which this Court admonished Mr. Carpenter. (Doc. Nos. 361, 370.)

of Mr. Carpenter's and his entities' well-known and adjudged litigation strategy of multiplying proceedings in an effort to delay and make collection proceedings prohibitively expensive for Universitas. In support of its opposition, Universitas states as follows:

## STATEMENT OF FACTS

Universitas brought its Amended Complaint on April 6, 2022. (Doc. No. 249.) It added several defendants, including the LLC Defendants, and sought to impose alter ego liability on Mill Pond, as well as liability on the other LLC Defendants on the theory of unjust enrichment. The gravamen of Universitas's Amended Complaint is that Mr. Carpenter's use of the LLC Defendants, which are sham entities intended to conceal assets that he beneficially owns, unjustly enriches these LLC Defendants because they possess property and assets which equitably belong to Universitas and that the LLC Defendants maintain that property at the expense of Universitas.

Universitas extensively pleaded facts regarding each of these LLC Defendants and their role in Mr. Carpenter's enterprise. Universitas has alleged that Seir Hill owns property in Norwalk, Connecticut, which appears to have been purchased soon after receiving at least $150,000 in funds from Carpenter Financial Group, which eventually became a judgment debtor. Seir Hill appears to maintain that property to this day for the beneficial interest of Mr. Carpenter, his family and his enterprise. (Doc. No 249, ¶¶ 147-54.)

Birch Hill similarly owned property for the benefit of Mr. Carpenter and his family. As stated in the Amended Complaint, Mr. Carpenter testified that Birch Hill was capitalized with funds from an entity that he controlled. The Amended Complaint further states that the property owned by Birch Hill was held in the company for the benefit of Mr. Carpenter and his family. (Doc. No. 249, ¶¶ 163-69.)

Universitas has alleged in its Amended Complaint that Greyhound also owns property that was purchased after Mr. Carpenter orchestrated the theft of the life insurance death benefits owed to Universitas. This property is being held for the beneficial use of Mr. Carpenter and his family at the expense of Universitas. (Doc. No. 249, ¶¶ 194-205.)

Finally, Mill Pond owned the property located at 1 & 3 Mill Pond Lane in Simsbury, Connecticut. Universitas has alleged that Mr. Carpenter controls Mill Pond and also uses it as a shell entity to conceal assets he owns in an attempt to frustrate the efforts of judgment creditors. As Universitas has since noted, Mill Pond sold off assets, with Mr. Carpenter acting as a witness for that sale, while this Court was deciding whether to permit Universitas to bring claims against Mill Pond, and which was not revealed in discovery as required by this Court. (Doc. No. 249, ¶¶ 155-62.)

In all the above cases, the LLC Defendants have been controlled by Mr. Carpenter. As alleged in the Amended Complaint, all have the same pool of employees and resources and all operated from the same building, the property at 100 Grist Mill Road, which was owned by another Defendant, Grist Mill Partners, LLC, until it was sold several months ago. The unifying theme among all the LLC Defendants is that they possess property and assets that are actually beneficially owned by Mr. Carpenter and that he has held those assets in those companies during times when he was a judgment debtor of Universitas and, in some instances, when the LLC Defendants' members were judgment debtors. (Doc. No. 249, ¶¶ 220-27.) Thus, Universitas alleges that all of the LLC Defendants have been unjustly enriched by maintaining these properties at Universitas's expense, as these properties and assets are rightly recoverable by Universitas and fairly traceable back to Mr. Carpenter, a judgment debtor. Moreover, Universitas is prosecuting a theory of alter ego liability against Mill Pond, which this Court has already found is proper under Delaware law.

(*See* Doc. Nos. 110, 240). As Universitas has explained in its prior briefings, Universitas has alleged ample facts to support an alter ego determination, including complete domination by Mr. Carpenter, disregard of the corporate form and corporate formalities, and use of shell companies to perpetrate fraud. (Doc. No. 249, ¶¶ 220-227).

## ARGUMENT

### I.     Article III Legal Standard

Article III of the constitution "confines the federal judicial power to the resolution of Cases and controversies." *Konig v. TransUnion, LLC*, No. 18 Civ. 7299 (JCM), 2023 U.S. Dist. LEXIS 68577, at *14 (S.D.N.Y. Apr. 13, 2023) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). Article III standing is a "bedrock requirement that ensures that the plaintiff has a sufficient stake in the outcome" of a lawsuit. *Konig*, 2023 U.S. Dist. LEXIS 68577 at *14 (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008)). To establish standing, a plaintiff must demonstrate that it has "(1) suffered an injury in fact, (2) that it is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1549, 1447 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Thus, the plaintiff must demonstrate an invasion of a legally protected interest that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1547-48. The Supreme Court has noted that while "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III," intangible harms and violations of procedural rights granted by statutes can constitute injuries sufficient to satisfy Article III standing requirements. *Id.* at 1549.

Where a federal court's jurisdiction is "predicated on diversity of citizenship, a plaintiff must have standing under both federal and state law in order to maintain a cause of action." *E.g. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005). Under Delaware law, standing is the "[party's] requisite interest that must exist in the outcome of the litigation at the time the action is commenced." *Schoon v. Smith*, 953 A.3d 196, 200 (Del. 2008). Unlike in federal courts, standing under Delaware law is not subject to constitutional limits, but is instead a manner for courts to apply "self-restraint to avoid the rendering of advisory opinions at the behest of the parties who are mere intermeddlers." *Id.* (internal citations and quotations omitted). Under Connecticut law, a party satisfies the standing requirement when that party "makes a colorable claim of injury he has suffered or is likely to suffer, in an individual or representative capacity." *Fort Trunbull Conservancy v. City of New London*, 265 Conn. 423, 430 (2003). Connecticut courts have found that standing for an unjust enrichment claim is satisfied by a showing that "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Gibson v. Jefferson Woods Cmty., Inc.*, 206 Conn. App. 303, 314 (2021).

A motion to dismiss for lack of Article III standing challenges a court's subject matter jurisdiction, and is properly brought under Federal Rule of Civil Procedure 12(b)(1). *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). When a motion challenging standing under Article III is based solely on the complaint and attached exhibits, a "plaintiff bears no evidentiary burden, and the district court must evaluate whether those documents allege facts that plausibly suggest that the plaintiff has standing to sue." *Id.* (citing *Carter v. HealthPort Techs, LLC*, 822 F.3d 47, 56 (2d. Cir. 2016)).

The LLC Defendants' argument that Universitas requires an affidavit to prove standing at this juncture of the case is frivolous and a deliberate attempt to mislead this Court. The LLC Defendants omit critical language from the citation to *Democratic Congretional Campaign Comm. v. Kosinski*, 614 F. Supp. 3d 20, 38 (S.D.N.Y. 2022).[2] The LLC Defendants write the quote as "[T]o establish standing, a plaintiff cannot rest on . . . mere allegations . . . but must set forth by affidavit or other evidence specific facts that establish" each of the elements of standing." However, the LLC Defendants omit crucial and dispositive language from that quote. The quote, as written in *Kosinski*, is actually "[T]o establish standing *for a preliminary injunction*, a plaintiff cannot rest on . . . mere allegations . . . but must set forth by affidavit or other evidence specific facts that establish each of the elements of standing." *Id.* (cleaned up) (emphasis added). This omission is clearly purposeful, as the LLC Defendants do not include ellipses to denote omitted words, despite the fact that they include appropriate ellipses elsewhere in their Motion to Dismiss.

Thus, the affidavit and affirmative evidence requirements are restricted to preliminary injunction applications, which have a higher evidentiary threshold than motions to dismiss. This is made clear by *Lujan*, to which the LLC Defendants cite extensively. *Liujan* holds that each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . with the manner and degree of evidence required at the successive stages of the litigation." 504 U.S. at 561.[3] The Supreme Court made clear that at "the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotations and citations omitted). As the instant

---

[2] The LLC Defendants cite to the WestLaw citation of this case instead of the published decision.

[3] Indeed, the LLC Defendants cite to this very language on page 5 of their Motion to Dismiss, and therefore must know that their argument of the need for extraneous affidavit evidence to support standing at this stage is frivolous.

motion is a motion to dismiss, there exists no requirement that Universitas provide an affidavit to support its Article III standing. The LLC Defendants know or should know that from their reading and citation of *Lujan*. The LLC Defendants' suggestions otherwise are nothing more than a bad faith attempt to mislead this Court into imposing a higher evidentiary burden than is appropriate on Universitas.[4]

## II.    Universitas Alleges Sufficient Facts in its Amended Complaint to Support Article III Standing.

Universitas has clearly met its burden to demonstrate standing. As explained, *supra*, Universitas does not require affidavits or extraneous evidence to support its contention that it possesses Article III standing to sue, contrary to the frivolous argument made by the LLC Defendants. Instead, Universitas bears a minimal evidentiary burden and need only show that it has standing based on the Amended Complaint and attached exhibits, if any. Universitas easily meets this burden.

First, it demonstrates a concrete and particularized injury with respect to its unjust enrichment claims against the LLC Defendants. It alleges that it has been harmed by the LLC Defendants' retention of property and assets that rightfully belong to Universitas, and has even specified the assets and property in question held by each of the LLC Defendants. This injury is actual, as the LLC Defendants have held on to the property and assets for the benefit of Mr. Carpenter and other judgment debtors in order to insulate it from collection. This is a clear invasion of Universitas's legally cognizable interest on recovering on its judgments and collecting money

---

[4] Universitas notes that multiple courts have found that the deliberate misquotation of case law exposes a party and its counsel to sanctions. *E.g. Precision Specialty Metals, c. v. United States*, 315 F.3d 1346, 1356 (Fed. Cir. 2003) (finding that "miscitation of relevant precedent and cropping of quotations to alter their meaning" may be sanctioned under Federal Rule of Civil Procedure 11, as well as Federal Rule of Appellate Procedure 38); *O'Connor v. City of Desert Hot Springs*, 2012 U.S. Dist. LEXIS 193948, at *4 (C.D. Cal Mar. 30, 2012) ("Plaintiff is advised that material misquotations of cases cited in his briefs may expose Plaintiff and his attorneys to sanctions under Rule 11.").

and assets that rightfully belong to Universitas or otherwise are proper assets with which to satisfy its judgments. Thus, the Amended Complaint contains sufficient well-plead allegations to demonstrate that Universitas has suffered a concrete and particularized injury.

Second, Universitas fairly traces this injury to the LLC Defendants. It demonstrates a causal connection by (1) pleading facts to show that the LLC Defendants have received money and assets from within Mr. Carpenter's enterprise, including from judgment debtors; and (2) showing that the LLC Defendants have retained possession of assets and property for the beneficial interest of Mr. Carpenter and his family in an attempt to shield those otherwise collectable assets from Universitas. Absent the efforts of the LLC Defendants to receive and conceal such property, Universitas would have collected these assets from Mr. Carpenter to satisfy its judgment.

Finally, the alleged injury is clearly redressable by judicial intervention. A favorable decision may, for instance, impose a constructive trust on the assets held by LLC Defendants for the benefit of Universitas, which would permit it to recover assets properly within the purview of its collection efforts. Or a judgment against these entities would permit Universitas to collect on the assets held by the LLC Defendants outright.

Universitas also demonstrates all the elements of unjust enrichment under Connecticut law. Universitas has already extensively briefed this issue in its oppositions to the various motions to dismiss filed in this case, but shall briefly reiterate its argument. Universitas has made sufficient well-pleaded allegations to show that (1) that the LLC Defendants were benefited through their receipt of property that is rightfully collectable by Universitas, (2) that the LLC Defendants never paid Universitas for the benefits that they received, and (3) that the failure of that payment has been to Universitas's continuing detriment, as it continues to suffer financially from an inability

to collect on its judgment. Thus, Universitas has demonstrated that it possesses standing for its unjust enrichment claims.

Universitas has also demonstrated that it possesses standing for its alter ego claim against Mill Pond. First, Universitas points to a concrete and particularized harm—the theft of the insurance benefits for which it has received multiple judgments, including against Mr. Carpenter. In an alter ego claim, that harm is imputed to the alter ego entity, in this case Mill Pond. Because all of its harms can be, and have been adjudicated to be, traceable to the actions of Mr. Carpenter, Universitas would also be able to trace such harms to Mr. Carpenter's alter egos. Finally, a finding that Mill Pond is an alter ego of Mr. Carpenter would provide Universitas redress by permitting it to collect on Mill Pond's property, or at least the proceeds of the property it surreptitiously sold while the threat of litigation was pending against it. Delaware standing law is also satisfied because Delaware precedent makes clear that alter ego claims are viable under its law and Universitas is the actual party aggrieved, and not a "mere meddler" attempting to improperly use the Courts.

As such, Universitas has clearly met its burden to demonstrate that it possesses Article III standing at this juncture of the proceedings.

## III.    The LLC Defendants' *Peacock v. Thomas* Argument is Frivolous.

The LLC Defendants also misunderstand the application of alter ego liability and its interaction with *Peacock v. Thomas*, 516 U.S. 349, 354 (1996). The LLC Defendants quote, out of context, *Ocampo v. Brown & Appel, LLC*, No. 21-2579-CV, 2022 WL 17684587, at *2 (2d Cir. Dec. 15, 2022), for the proposition that veil-piercing claims cannot be used to avoid *Peacock*. As an initial matter, *Peacock* is inapplicable here, as *Peacock* deals with a court's ancillary jurisdiction to enforce judgments. Here, the claims in the Amended Complaint are proceeding under diversity jurisdiction, which exists in this case and has been thoroughly briefed by Universitas. Thus,

*Peacock* is inapplicable *ab initio.* Carpenter-controlled entities have made *Peacock* arguments time and time again to suggest that no post-judgment collection actions may proceed absent ancillary jurisdiction. This argument has been rejected repeatedly by various courts. The assertion of the LLC Defendants that *Peacock* bars alter ego claims proceeding under a court's diversity jurisdiction is particularly concerning as the Second Circuit has explicitly rejected such arguments. In *Universitas Education, LLC v. Grist Mill Capital, LLC*, No. 21-2690, 2023 U.S App. LEXIS 4257, at \*7 (2d Cir. Feb. 23, 2023), the Second Circuit held that arguments that *Peacock* precludes post-judgment enforcement and alter ego proceedings was "frivolous under [Second Circuit] precedent, as we long ago held that *Peacock* does not negate a district court's ancillary jurisdiction over an action to collect a judgment even if the parties are non-diverse." (Internal citations and quotations omitted.) Mr. Carpenter was a party to that appeal and Mr. Einhorn, the signatory on the Motion to Dismiss, was appellate counsel. Here, the parties are diverse, and Mr. Einhorn and the LLC Defendants know that an independent basis for jurisdiction exists. Their continued attempts to make frivolous *Peacock* arguments are clearly in bad faith.

To the extent that the LLC Defendants suggest that Universitas's veil-piercing claims must fail because they are "independent" of other claims, this argument too, is meritless. In *Ocampo*, the veil-piercing claim failed because there was no underlying imposition of liability on the defendants. Thus, the Second Circuit found that the alter-ego claim was meritless because an alter-ego claim cannot exist in a vacuum. This is completely inapposite to the circumstances at bar, in which Universitas has multiple judgments in the underlying case. The cherry-picked language from *Ocampo* used by the LLC Defendants is neither dispositive nor persuasively supports the LLC Defendants' position that alter ego claims are improper here.

The LLC Defendants' argument that all collection efforts after 2012 are improper has been soundly rejected and the argument that Universitas's claims are all actually fraudulent conveyance claims has already been briefed before this Court. Universitas stands on its arguments in its oppositions to the various motions to dismiss with respect to these contentions made by the LLC Defendants.

## **CONCLUSION**

For all the aforementioned reasons, Universitas respectfully requests that this Court deny the LLC Defendants' Motion to Dismiss.

Dated: April 27, 2023

Respectfully submitted,

/S/ Joseph L. Manson III
JOSEPH L. MANSON, III
(*Admitted Pro Hac Vice*)
jmanson@jmansonlaw.com
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693
ATTORNEYS FOR PLAINTIFF
UNIVERSITAS EDUCATION, LLC

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

/s/ Joseph L. Manson III